IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Florence Division

| | | |
|---|---|---|
| **INTERESTED PARTIES:** | ) | |
| | ) | |
| HUNTINGTON MALL COMPANY, a | ) | |
| general partnership, CAFARO COMPANY, | ) | **MEMORANDUM IN OPPOSITION TO** |
| a general partnership, J. C. PENNY | ) | **PETITION FOR ORDER TO UNSEAL** |
| PROPERTIES, INC., and NATIONAL | ) | **PSYCHOLOGICAL RECORDS** |
| SECURITY CONSULTANTS, INC. | ) | |
| | ) | |
| **In re:** | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4:02-992 |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| | ) | |
| CHADRICK E. FULKS | ) | |
| _____ | ) | |
| | ) | |
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4:02-992 |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDEN L. BASHAM | ) | |

Chadrick E. Fulks, by undersigned counsel, hereby submits this Memorandum in
Opposition to the Petition for Order to Unseal Psychological Records.

## I. SUMMARY OF THE NATURE OF THE CASE

Petitioners are defendants in a civil action pending in the United States District Court for
the Southern District of West Virginia ("the Civil Action" or "the Negligence Action"). The
Civil Action states claims for negligence against the Petitioners for allegedly failing to provide
adequate security at the Huntington Mall. See Exhibit A (Complaint). The Huntington Mall is
the location where Samantha Burns was abducted by Brandon Basham prior to her robbery and
death. See United States v. Fulks, 454 F. 3d 410, 415 (4th Cir. 2006). The Complaint in the

1

Negligence Action further alleges that but for Petitioners' failure to provide adequate security, Burns would not have been abducted from the Huntington Mall.

In an alleged effort to defend the Negligence Action, Petitioners request that this Court unseal or provide them with documents involving the "psychological evaluations" of Mr. Fulks. Petition to Unseal Psychological Records at 2. Petitioners speculate that Mr. Fulks may have made certain disclosures regarding his state of mind at the time of the crime. Id. Without knowing whether this information exists, Petitioners nonetheless assert that it is critical to the defense of the Negligence Action.

The undersigned counsel has reviewed the mental health evaluation of Mr. Fulks dated March 3, 2004, which was performed at the Federal Medical Center in Butner, North Carolina. Page 8 of the evaluation clearly states that the medical staff did not ask for an account of the alleged offenses and that Fulks did not offer any details of the alleged offense. This March 3, 2004 evaluation makes no mention of Samantha Burns. Hence, the information Petitioners seek does not exist.[1]

## II.  LEGAL ARGUMENT

### A.  Legal Standard

An individual has a constitutional right to privacy which protects his interests "in avoiding disclosure of personal matters." Whalen v. Roe, 429 U.S. 589, 599 (1977). "There can be no question that … medical records, which may contain intimate facts of a personal nature are well within the ambit of materials entitled to privacy protection." United States v. Westinghouse

---

[1] Counsel has been recently appointed and is still reviewing the voluminous case documents. At this time, counsel is not aware of any other Fulks "mental health evaluation" in the record that post-dates the Burns incident. This is also the only report provided by the Clerk's office when counsel requested assistance locating any mental health evaluation in the record.

Elec. Corp., 638 F.2d 570, 577 (3d. Cir.1980). This right to privacy in personal information applies to prisoners in federal custody as well as the general citizenry. See Wolff v. McDonnell, 418 U.S. 539, 555 (1974) (noting that prison inmates do not shed all fundamental protections of the constitution at the prison gates). While some rights of inmates are limited because of legitimate penalogical interests of the corrections system, those correctional interests are not present here inasmuch as private individuals (not state actors) in civil litigation are requesting the access to sensitive personal information.

In part, because of the importance of keeping personal information confidential, district courts have authority to seal certain documents. In re Knight Pub. Co., 743 F.2d 231, 235 (4th Cir. 1984). The sealing of psychological records and related matters is common and proper in the federal system. See, e.g., United States v. Mercado, 165 Fed Appx. 641, 643 (10th Cir. 2006) ("But psychological records . . . can be sensitive documents that not uncommonly are protected from public disclosure."). Before any records can be produced, the Court must balance Petitioners' right of access to documents within the Court record with Fulks' constitutional right to privacy. See generally, In re Application and Affidavit for a Search Warrant, 923 F.2d 324, 327 (4th Cir. 1991) (balancing right of access with asserted Sixth Amendment rights). Such careful balancing reveals that Petitioners can make no showing of entitlement to any psychological records.

**B.      Petitioners cannot meet their burden because the psychological evaluations are irrelevant to the Negligence Action.**

Similar to South Carolina, under West Virginia law, a plaintiff in a negligence action must prove that the defendant failed to perform a duty owed to the plaintiff and that the failure proximately caused the plaintiff's injury. See Yeager v. Morgan, 429 S.E.2d 61, 63-64 (W. Va.

1993).  At base, the plaintiffs in the Negligence Action argue that the Petitioners owed Burns a duty to provide security, failed to take reasonable precautions to prevent her abduction, and thus proximately caused damages to the Burns and her family.

Under F.R.E. 401, relevant evidence is evidence "having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Whether the abduction was methodically planned or a spur of the moment decision is not relevant to Petitioners' failure or fulfillment of the duty to take reasonable measures to protect patrons of the Mall. Kidnapping and carjacking are not new crimes invented by Burns' attackers. The sole question is whether the Petitioners took reasonable steps to prevent these known types of crimes.  State of mind is involved only to the extent the jury considers punitive damages against Petitioners (i.e., whether <u>Petitioners' conduct</u> was willful, wanton, or reckless).

Because the state of mind of Burns' assailants does not affect the evaluation of the reasonableness of Petitioners' efforts to prevent known crimes such as kidnapping or carjacking, the Court should deny the Petition on relevancy grounds.

**C.**     **Even if the Burns' attacker's state of mind is relevant, the record reveals that Fulks did not participate in the abduction from the Huntington Mall.**

The evidence from trial reveals that Fulks was not involved in the actual abduction of Burns, and thus his psychological records would have no bearing on the Negligence Action.

> According to statement Fulks made to the FBI in 2003, after he and Basham left the Hollywood Motel on November 11, 2002, they smoked methamphetamine and then drove to the Barboursville Mall, near Huntington, West Virginia, intending to break into cars and steal purses. When they arrived at the Mall, they split up. The next time Fulks saw Basham, he was driving a car up and down the rows of the parking lot and yelling Fulks's name. In the passenger seat was the owner of the car, a 19-year old Marshall university student named Samantha Burns. After spotting Basham, Fulks returned to Severance's van and

followed Basham and Burns to a Foodland grocery store, where Fulks left the van and began driving Burns's car.

Fulks, 454 F.3d at 415.

As the opinion of the United States Court of Appeals for the Fourth Circuit indicates, Fulks' psychological evaluation cannot help Petitioners because he was not present when Burns' was assailed and abducted. Fulks and Basham parted ways at the Huntington Mall and Fulks did not see Basham again until after Basham has secured both Burns and her vehicle. Hence, only Basham's psychological records could possibly contain the information Petitioners seek.

Because Fulks did not abduct Burns at the Huntington Mall, his psychological records cannot (and do not) contain the information desired by Petitioners; therefore, Petitioners cannot meet their burden in unsealing Fulks' psychological records.

**D. The Court should consider the requested records in camera before entertaining Petitioners' request.**

As explained in Sections II.B & II.C, Petitioners cannot establish that their right to view court documents outweighs Fulks' right to privacy. In addition, the Petitioners candidly admit that they are merely speculating whether Fulks' psychological records contain any indicia of his state of mind. Petition to Unseal Psychological Records at 2. While Fulks believes that the Court will deny the Petition, if the Court decides that there is any merit to Petitioners' request, the Court should review the requested psychological records in camera before releasing any documents.

In Pennsylvania v. Ritchie, 480 U.S. 39 (1987), the United States Supreme Court considered a subpoena to a child protective services agency for confidential investigative files regarding child abuse. Id. at 42-43. Ritchie sought the records because he thought "the file might contain the names of favorable witnesses, as well as other, unspecified exculpatory

evidence" related to charges of rape pending against him.  Id. at 44. Ritchie was convicted, but on appeal the state supreme court vacated the conviction on Confrontation Clause grounds.  Id. at 46.  The state supreme court further held that prior to a re-trial Ritchie should be permitted to search the entire confidential investigative file for useful evidence.  Id.

The Supreme Court granted certiorari and reversed the state court's broad grant of access to confidential information.  Recognizing a significant interest in the confidentiality of files containing "sensitive information," the Court permitted an in camera court review rather than the full access demanded by Ritchie. Id. at 58.

> To allow full disclosure to defense counsel in this type of case would sacrifice unnecessarily the Commonwealth's compelling interest in protecting its child-abuse information.
>
> . . . .
>
> An in camera review by the trial court will serve Ritchie's interest without destroying the Commonwealth's need to protect the confidentiality of those involved in  child-abuse investigations.

Id. at 60 & 61.

In making its ruling, the Supreme Court was highly critical of the state court's decision to grant Ritchie access to "all of the confidential information, both relevant and irrelevant" just because Ritchie had alleged the records "might be material" to his defense.  Id. at 58.   This access, according to the Court, was unnecessary and overbroad.

Similar to Ritchie, Petitioners here have demanded blanket access to confidential information on the mere speculation that the psychological records might contain information relevant to the Negligence Action.  If the Court is inclined to consider Petitioner's request,  the Court should review the records in camera to determine if the psychological records do contain the "state of mind evidence" sought by Petitioners.   If the Court determines that the

6

psychological records would be helpful in the Negligence Action, then the records should be redacted so that only those relevant portions are provided to Petitioners for use in that proceeding.

The undersigned counsel has reviewed the Mental Health evaluation of Mr. Fulks dated March 3, 2004, and performed at the Federal Medical Center in Butner, North Carolina. This is the evaluation that Fulks assumes Petitioners seek. Page 8 of the evaluation clearly states that the medical staff did not ask for an account of the alleged offenses, and that Fulks did not offer any details of the alleged offense. Hence, an in camera review will reveal no information relating to the abduction of Samantha Burns.

### III.   CONCLUSION

For the foregoing reasons, the Court should deny the Petition. Fulks' "state of mind" is irrelevant to whether Petitioners provided reasonable security to protect Mall patrons from known crimes such as carjacking. Of course, even if such evidence is relevant, because Fulks was not involved in the actual abduction, his "state of mind" at the Huntington Mall sheds no light on the circumstances of the carjacking. Finally, if the Court is inclined to grant Petitioners access to psychological records, such access should only be after in camera review by the Court to determine if the documents actually contain the information about which Petitioners speculate. Counsel's review of the FCI Butner evaluation reveals no details or mention about the Burns incident.

Respectfully submitted,


/s/ William J. Watkins, Jr.
William J. Watkins, Jr., Federal Bar #7863
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
550 South Main Street, Suite 400
Greenville, South Carolina 29601
(864) 255-5400


Beattie B. Ashmore, Federal Bar #5215
PRICE, PASCHAL & ASHMORE, PA
644 E. Washington Street
Greenville, SC 29601
 (864) 467-1001

Attorneys for Defendant Chadrick E. Fulks


October 22, 2007

WCSR  3746611v4