**ORIGINAL FILED**

MAY 0 6 2004

LARRY W. PROPES, CLERK
COLUMBIA, S.C.

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4: 02-00992 (JFA,Jr.) |
| | ) | |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| CHADRICK EVAN FULKS | ) | |
| | ) | |

**DEFENDANT'S MEMORANDUM OF LAW REGARDING THE PROPRIETY OF A GUILTY PLEA TO COUNTS 1 AND 2 OF THE SUPERSEDING INDICTMENT UNDER THE THEORY OF VICARIOUS LIABILITY ESTABLISHED IN *PINKERTON V. UNITED STATES***

Defendant, Chadrick Evan Fulks, by and through undersigned counsel, submits this memorandum pursuant to the Court's instructions at the conclusion of the guilty plea hearing convened on May 4, 2004. In the sections that follow, defendant will address the ability of his admissions as provided to the FBI on April 21, 2003 to satisfy all necessary elements of Counts 1 and 2 of the superseding indictment under the theory of criminal liability established by *Pinkerton v. United States*, 328 U.S. 640 (1946), and its progeny. More specifically, defendant will address the Court's concerns with respect to the *mens rea* necessary to establish legal guilt of Counts 1 and 2 in light of the fact that the government is pursuing the death penalty in this case.

I.     RELEVANT LEGAL FRAMEWORK.

To accurately identify the *mens rea* requirements that must be met in this case, it is first necessary to properly conceptualize the series of findings necessary to elevate an ordinary case involving homicide to the status of a capital case in which death is a legally available punishment. The government is seeking the death penalty in this case pursuant to the Federal Death Penalty Act (FDPA), set forth at 18 U.S.C. §3591 *et seq.* The FDPA, standing alone, does not create or define

1

PA Document #35

any criminal offenses. Rather, it establishes a scheme under which the government may seek the death penalty against a defendant who stands convicted of any offense for which Congress has designated death as a possible punishment. 18 U.S.C. §3591(a)(2) (death sentence may be pursued against "[a] defendant who has been found guilty of . . . any . . . offense for which a sentence of death is provided"). Under the FDPA scheme, a defendant is not legally *eligible* for a sentence of death merely upon conviction of an offense for which such a sentence "is provided." On the contrary, conviction of such an offense merely places the defendant within the class of individuals against whom the government may *seek* death under the FDPA. If the government were to elect (as it most often does) not to proceed further by invoking the FDPA, then the defendant would – notwithstanding his violation of a statute providing for death as a possible punishment – be sentenced according to the statute under which his conviction was obtained, and the Federal Sentencing Guidelines.

Where, as in this case, the government chooses to pursue a death sentence, the FDPA requires a series of factual determinations necessary to elevate the offense of which the defendant has been convicted to the status of a death-eligible, or capital, crime. Under *Ring v. Arizona*, 122 S.Ct. 2428 (2002), each of these factual determinations "operate as 'the functional equivalent of an element of a greater offense.'" *Ring*, 122 S.Ct. at 2443 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 494, n. 19 (2000)); *see also United States v. Higgs*, 353 F.3d 281, 298 (4th Cir. 2003) ("those intent and aggravating factors which the government intends to rely upon to render a defendant death-eligible under the FDPA are the functional equivalent of elements of the capital offenses and must be charged in the indictment, submitted to the petit jury, and proved beyond a reasonable doubt").

Because the federal system for adjudicating criminal offenses, like many state systems (including South Carolina's), divides the questions of guilt of an underlying offense and eligibility

2

for a sentence of death into two distinct proceedings, *Ring*'s requirement that the sentencing-related factual determinations prescribed by the FDPA be treated as elements of a greater offense effectively requires two sequential guilt-or-innocence findings, followed by a sentencing determination. The first guilt-or-innocence determination is made when a defendant either pleads guilty to the substantive offense alleged in the indictment, or is found guilty of that offense at what is commonly referred to as the "guilt-or-innocence phase" of a trial. The second, *Ring*-compelled guilt-or-innocence determination is made during what is commonly called a "sentencing phase." At this step, the jury is required to determine the defendant's guilt or innocence of the *capital* offense by factual findings necessary to elevate the offense established by the first set of determinations to the status of a death-eligible offense as defined by the FDPA. If the jury fails to make the requisite findings, then the defendant is not guilty of the greater, capital offense, but remains guilty of the underlying offense, for which he is subject to a sentence less than death. If the jury does make the necessary findings, then it proceeds to the task of selecting between death and any lesser punishments available under law.

Because they are designed to "genuinely narrow[] the class of death eligible persons," *Lowenfield v. Phelps*, 484 U.S. 231, 244 (1988), the factual determinations at a sentencing phase conducted pursuant to the FDPA require degrees of personal intent, individual culpability, and aggravation that are not necessary to support a mere conviction on the underlying offense.[1] First, the government's proof must establish the existence of one or more of the statutory intent factors

---

[1]*See Higgs*, 353 F.3d at 298 ("A defendant does not become *eligible* for the death penalty . . . unless the jury finds at least one statutory intent factor, and at least one statutory aggravating factor. Because a defendant may be sentenced only to life imprisonment unless the jury finds the existence of at least one intent factor and one statutory aggravating factor, we have little trouble concluding that such factors increase the penalty for the crimes of first-degree murder and kidnapping resulting in death beyond the otherwise maximum sentence of life imprisonment") (internal citations omitted) (emphasis by the court).

3

prescribed in §3591(a)(2)(A) - (D), which look to the personal, specific *mens rea* harbored by the defendant in direct relation to the death of the decedent.[2] Satisfaction of one or more of these intent factors does not, by itself, establish death-eligibility; rather, it merely brings the defendant one step closer. Where a statutory intent factor has been proven, the government must next prove the existence of one or more of the statutory aggravating circumstances enumerated in §3592(b) or (c). *See, e.g., Higgs*, 353 F.3d at 298. From there, the government must further establish that the aggravating circumstances – both statutory and non-statutory – "sufficiently outweigh" all mitigating factors so as to "justify a sentence of death." §3593(e). It is only after each of these determinations are made that a federal jury is authorized to consider and impose a sentence of death.[3]

As the foregoing description makes clear, a defendant's guilt of an offense "for which a sentence of death is provided," §3591(a)(2), is factually and legally distinct from guilt of a "greater offense," *Ring, supra*, for which a sentence of death is authorized under the FDPA. Importantly for purposes of this memorandum, the dividing line between these levels of offenses is defined in substantial part by the *mens rea* requirements for each level and, in turn, by the ways in which those requirements may be legally satisfied.

## II. THE PROPRIETY OF A GUILTY PLEA TO COUNTS 1 AND 2 UNDER A *PINKERTON* THEORY OF LIABILITY.

Defendant proposes to plead guilty to the offenses alleged in Counts 1 through 8 of the superseding indictment. Of these offenses, Counts 1 and 2 – carjacking resulting in death, and

---

[2]As will be discussed *infra*, these intent factors are distinct from, and more focused than, the type of *mens rea* showings that will suffice for establishing Mr. Fulks' guilt of Counts 1 and 2.

[3]While the Fourth Circuit's opinion in *Higgs* may be read to suggest that the weighing of aggravating and mitigating circumstances occurs after death-eligibility has been technically reached through findings on the intent and statutory aggravating factors, defendant believes that the question remains sufficiently open to warrant further litigation. He therefore expressly reserves the right to argue that question as necessary in future proceedings.

4

kidnaping resulting in death, respectively – are "offense[s] for which a sentence of death is provided" under §3591(a)(2). As discussed *supra*, however, a guilty plea to these offenses would, for FDPA purposes, constitute nothing more than an adjudication of guilt of two ordinary, non-capital offenses. Apart from the fact that such a plea would expose defendant to further proceedings in which the government would attempt to satisfy the series of requirements necessary to elevate his offenses to the status of capital crimes, nothing about the guilty plea itself would be any different from any other guilty plea to a federal offense. As such, for purposes of a guilty plea, the *mens rea* elements of the substantive offenses may be satisfied using the methods for assigning accomplice liability that apply in other non-capital federal cases.[4]

In this case, defendant's guilty plea to Count 1 is offered under the theory of liability established by *Pinkerton v. United States, supra*, in which the Supreme Court held that "a conspirator could be held guilty of the substantive offense even though he did no more than join the conspiracy, provided that the substantive offense was committed in furtherance of the conspiracy and as a part of it."[5] *Nye & Nissen v. United States*, 336 U.S. 613, 618 (1949) (describing *Pinkerton*). As recently restated by the Fourth Circuit, "'[t]he *Pinkerton* doctrine imposes vicarious liability on a co-conspirator for the substantive offenses committed by other members of the conspiracy when the offenses are during and in furtherance of the conspiracy.'" *United States v. Carrington*, 301 F.3d

---

[4]Defendant in no way intends to suggest that the question of personal, as opposed to vicarious, intent to bring about the victim's death is irrelevant. Rather, that question is simply deferred to the sentencing phase, where it will be of central importance as the government attempts to satisfy the §3591(a)(2) intent factors necessary to elevate the offenses to capital crimes.

[5]Because Count 2 (kidnaping resulting in death) contains no express *mens rea* requirement with respect to the death of the victim, the facts as set forth in defendant's statement to the FBI are sufficient to establish his guilt of that offense without resort to *Pinkerton* or any other theory of vicarious liability. *See* 18 U.S.C. §1201(a)(1). Therefore, defendant will confine his discussion of *Pinkerton* to its application to Count 1, which expressly requires a showing of "intent to cause death or serious bodily harm." 18 U.S.C. §2119.

204, 211 (4th Cir. 2002) (quoting *United States v. Aramony,* 88 F.3d 1369, 1379 (4th Cir.1996)).

"Federal courts consistently have followed *Pinkerton* in affirming convictions for substantive offenses committed in the course of and in furtherance of a conspiracy, based on the defendant's knowledge of and participation in that conspiracy." *United States v. Chorman*, 910 F.2d 102, 110 (4th Cir. 1990) (citing *United States v. Alvarado*, 898 F.2d 987, 993 (5th Cir.1990); *United States v. LeFaivre*, 507 F.2d 1288, 1298-1299 (4th Cir.1974)). While *Pinkerton* appears most often in federal cases involving drug-related conspiracies, its application is by no means limited to that context. *See, e.g., United States v. Bonetti*, 277 F.3d 441 (4th Cir. 2002) (defendant liable under *Pinkerton* for serious bodily injury inflicted on illegal alien by defendant's wife by virtue of membership in conspiracy to harbor the illegal alien); *Aramony, supra* (applying *Pinkerton* in fraud case). Indeed, *Pinkerton* itself was a tax fraud case.

Under the facts as set forth in defendant's statement to the FBI, his liability under *Pinkerton* for carjacking resulting in death is clear. The carjacking statute provides as follows:

> Whoever, with the intent to cause death or serious bodily harm takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall
> —
>
> (3)  if death results, be fined under this title or imprisoned for nay number of years up to life, or both, or sentenced to death.

18 U.S.C. §2119. Defendant has admitted the facts necessary to establish his membership in a conspiracy with Mr. Basham, and submits that a reasonable jury would conclude both that the carjacking – which was initiated by Basham – and the subsequent murder of Mrs. Donovan – which was committed by Basham without defendant's prior knowledge – were accomplished in furtherance of that conspiracy. Moreover, although the Fourth Circuit's decisional law is not clear on the question whether a co-conspirator's acts must have been "reasonably foreseen as a necessary or

6

natural consequence of the unlawful agreement," *Pinkerton*, 328 U.S. at 648, in order for *Pinkerton* liability to attach,[6] defendant further submits that, under the circumstances he has admitted, this requirement would likewise be satisfied. *See United States v. Luskin*, 926 F.2d 372, 376 (4th Cir. 1991) (government need not prove defendant's knowledge of substantive offense committed by co-conspirator in order to establish liability under *Pinkerton*).

In sum, the guilty plea defendant proposes to enter is in all respects identical to the non-capital guilty pleas entered by federal defendants across the nation every day. The fact that he intends to admit his guilt solely under the *Pinkerton* theory of vicarious liability in no way detracts from the legal efficacy of the plea, nor does it affect the government's pursuit of the death penalty. On the contrary, because the FDPA proceedings that are expected to follow the guilty plea mandate specific inquiry into defendant's personal *mens rea* as part of the death-eligibility determination, the government will remain free to offer proof that defendant is directly, rather than simply vicariously, liable for the death of the victim. Should the government be successful in that pursuit, nothing about the theory under which defendant's guilty plea was entered would in any way preclude the jury from lawfully returning the findings necessary to render him eligible for a sentence of death.

---

[6]*Compare Aramony*, 88 F.3d at 1381 ("the district court did not abuse its discretion in omitting the 'reasonably foreseeable' language from the *Pinkerton* instruction") *with United States v. Gray*, 47 F.3d 1359, 1368 (4th Cir. 1995) ("In order to hold a conspirator criminally liable for the acts of other members of the conspiracy, the Supreme Court has held that the acts must be 'reasonably foreseen as a necessary or natural consequence' of the conspiracy").

7

## IV.   CONCLUSION.

WHEREFORE, for all of the foregoing reasons, this Court should permit defendant's proposed

plea of guilty to go forward each of the eight counts alleged in the superseding indictment.

Respectfully submitted,

**JOHN H. BLUME, Fed. I.D. #1360**
**KEIR WEYBLE, Fed. I.D. #7888**
1247 Sumter Street, Suite 202
Columbia, S.C. 29202
(803) 765-1044

**WILLIAM NETTLES, IV**
Federal Public Defender's Office
401 W. Evans Street, Room 240
Florence, S.C. 29503

**SHERI L. JOHNSON**
Cornell Law School
Myron Taylor Hall
Ithaca, NY 14853
(607) 255-6478

BY: _____
COUNSEL FOR CHADRICK FULKS

May 6, 2004.

8

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4:02-992 |
| | ) | |
| | ) | |
| v. | ) | CERTIFICATE OF SERVICE |
| | ) | |
| | ) | |
| CHADRICK EVAN FULKS, *Defendant.* | ) | |
| | ) | |

I do hereby certify that I have served upon the attorney for the government defendant's Defendant's Memorandum of Law Regarding Liability under *Pinkerton V. United States* for Counts 1 and 2 of the Superseding Indictment by depositing one (1) copy of same in the United States Mail, first-class postage pre-paid, and addressed as follows:

Strom Thurmond, Jr.
Scott Schools
Johnny Gasser
United States Attorney's Office
1441 Main Street
Suite 500
Columbia, SC 29201

This the 6th day of May, 2004.

_____
KEIR M. WEYBLE

9