IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CRIMINAL NO. 4:02-992-17 |
| | ) | |
| v. | ) | |
| | ) | |
| CHADRICK EVAN FULKS | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OF THE UNITED STATES IN RESPONSE TO ISSUES
RAISED BY THE COURT IN CONNECTION WITH THE DEFENDANT'S
ATTEMPT TO PLEAD GUILTY TO THE INDICTMENT**

Comes now the United States of America and hereby submits this memorandum

concerning the law applicable to this case. This memorandum is intended to respond

to questions raised by the Court during the hearing on May 4, 2004, but also to provide

the Court guidance should the Court ultimately reject the plea tendered by the

defendant.

**I.     The federal carjacking statute and Pinkerton.**

Count 1 of this indictment charges carjacking resulting in death, a violation of

Title 18, United States Code, Section 2119. The elements of that offense are: (1) The

defendant takes a motor vehicle; (2) the motor vehicle has been transported, shipped,

or received in interstate or foreign commerce; (3) the defendant takes the motor

vehicle from the person or presence of another individual; (4) the taking is done or

1

PA Document #36

attempted by force and violence or by intimidation;  (5) in doing so, the Defendant intends to cause death or serious bodily harm; and (6) death results.[1] While the latter element had been treated as a sentencing enhancement by some courts, the United States Supreme Court held in <u>Jones v. United States</u>, 526 U.S. 227 (1999), that because the resulting death increases the maximum sentence to life imprisonment or death, it is an element of the offense.

---

[1] <u>See also</u> Eight Circuit Pattern Jury Instructions, § 6.18.2119C (notes omitted):

The crime of carjacking has five essential elements, which are:

One, the defendant(s), [took] [attempted to take] a (describe the motor vehicle, e. g., 1998 Ford Explorer, VIN #000000000000) from a [person];
Two, the defendant did so by means of [force and violence] [intimidation];
Three, the (describe motor vehicle) had been [transported] [shipped] [or] [received] in [interstate] [foreign] commerce;
Four, at the time the defendant [took] [attempted to take] the motor vehicle (he) (she) (they) intended to cause death or serious bodily injury.
Five, the death of a person resulted from [taking] [attempting to take] the (describe the motor vehicle).
"Serious bodily injury" means an injury that involves [a substantial risk of death] [extreme physical pain] [ long term and obvious disfigurement] [the long-term loss or impairment of a function of a bodily member or organ] [the long term loss or impairment of a mental function].

See <u>also</u> Pattern Criminal Jury Instr. 11th Cir. § 73 (2003):

Title 18, United Sates Code, Section 2119, makes it a Federal crime or offense for anyone to take or attempt to take a motor vehicle that has been transported, shipped or received in interstate or foreign commerce from the person or presence of another, [by force and violence] [by intimidation] with the intent to cause death or serious bodily harm.

The Defendant can be found guilty of that offense only if all of the following facts are proved beyond a reasonable doubt:

First:    That the Defendant [took] [attempted to take] a motor vehicle from the person or presence of another;
Second: That the Defendant did so [by force and violence] [by intimidation];
Third:    That the motor vehicle previously had been transported, shipped, or received in interstate or foreign commerce; and
Fourth: That the Defendant intended to cause death or serious bodily harm when the Defendant took the motor vehicle[; and]
[Fifth:   That [death] [serious bodily injury] resulted from the commission of the offense.]

Notably, the statute does not require that the defendant killed the victim under circumstances constituting murder. By contrast, 18 U.S.C. §924(i) provides for a sentencing enhancement when a person causes the death of another during the course of a violation of 18 U.S.C. §924(c). However, that statute specifically delineates a maximum punishment of life "if the killing is a murder (as defined in section 1111)." Thus, 924(i) differs from the carjacking statute in two respects. First, it requires that the defendant "caused" the death. Second, it requires that the killing be a murder. The carjacking statute does not incorporate the murder statute nor does it require that the defendant caused the death. This difference most likely results from the fact that an element of the carjacking statute is that the defendant intends to cause death or serious bodily harm at the time of the offense. Therefore, a resulting death is consistent with the defendant's original intent. Thus, it makes sense that Congress would choose to distinguish between individuals who intend to cause seriously bodily injury or death, but do not cause it, and individuals who harbor the same intent and death results, and that choice is reflected in increased maximum penalties when death results.

In 1994, Congress enacted the Federal Death Penalty Act (FDPA) and also amended the carjacking statute to provide that the death penalty may be imposed for a carjacking resulting in death. Violent Crime Control and Law Enforcement Act of 1994, PL 103-322, §60003 (September 13, 1994). These two statutes must be read in tandem. A capital sentencing scheme must "genuinely narrow the class of persons

3

eligible for the death penalty and must reasonably justify the imposition of a more severe sentence on the defendant compared to others found guilty of murder." Zant v. Stephens, 462 U.S. 862, 877 (1983); See also McCleskey v. Kemp, 481 U.S. 279, 303 (1987). The narrowing function may be accomplished in either of two ways: "the legislature may itself narrow the definition of capital offenses . . . so that the jury finding of guilt responds to this concern, or the legislature may more broadly define capital offenses and provide for narrowing by jury findings of aggravating circumstances at the penalty phase." Lowenfield v. Phelps, 484 U.S. 231, 246 (1988). The FDPA follows the second approach.

Therefore, once a defendant is found guilty of a carjacking resulting in death, he is not yet eligible to be sentenced to death. Rather, the jury may only impose a death sentence if it unanimously finds one of the mental states set forth in section 3591(a)(2) and one of the statutory aggravating factors enumerated in section 3592(c). The Supreme Court made clear fairly recently that these additional factors are elements of the capital offense and must be pleaded and proved. Ring v. Arizona, 536 U.S. 584 (2002).

Therefore, if this defendant pleads guilty or is found guilty of the carjacking offense, he cannot be sentenced to death unless the jury reaches the requisite findings. Therefore, the defendant's effort to plead guilty on May 4, 2004, did not expose him to the death penalty automatically. Rather, his plea preserves his ability to contest that he

4

harbored the requisite mental state to make the offense a death-eligible offense and his ability to contest the existence of an aggravating factor. Furthermore, in this instance, the defendant undoubtedly is seeking to enter a plea to enhance his argument to a jury that he is remorseful for his crimes and does not deserve to die regardless of the jury's findings.[2] After all, a jury can find the requisite mental state and the requisite aggravating factor and still decline to impose the death penalty. Clearly, therefore, the defendant's effort to enter a plea is a central component of counsel's strategy to avoid a death sentence.

In considering whether the facts to which the defendant admits are sufficient to form a factual basis for the plea, therefore, the Court should consider those facts not as the basis of making him death eligible, but rather should consider only whether those facts are sufficient to impose legal responsibility for the underlying crime–carjacking resulting in death. The government will discuss these issues as if the defendant's version of the facts is accurate. The government believes, however, that evidence strongly contradicts the defendant's denial of the intent element of the carjacking statute and other aspects of the defendant's statement. The government intends to argue during the penalty phase of this case that the defendant did harbor

---

[2]The Court has expressed concern that the facts to which the defendant has admitted do not establish his guilt of the crimes charged and concern about the appellate court's review of the plea. The government will address that concern herein. The government is equally concerned that the Court's refusal to accept a plea tendered by the defendant with the advice of counsel would result in an argument on appeal that the Court frustrated the defendant's effort to demonstrate his remorse–an effort that very well may be the defendant's best hope for convincing a jury not to impose the death sentence.

such intent even though he refuses to admit it. Counsel for the defense have been advised of the government's intention to so argue and have agreed that the Court's acceptance of this plea does not preclude the government from making that argument.

The defendant has tendered an FBI-302 report of the defendant's interview with the FBI on April 21, 2003. The FBI-302 reports that the defendant said:

> On November 14, 2003 [sic][3], FULKS and BRANDEN BASHAM were traveling in a white pick-up truck. FULKS was driving the truck. Both FULKS and BASHAM knew that they needed to steal another vehicle and FULKS drove into the Wal-Mart parking lot. FULKS used the first entrance he came to in order to enter the Wal-Mart parking lot. BASHAM was suppose [sic] to locate the car to steal. As FULKS drove the pick-up truck into the parking lot, they noticed a BMW pulling down one of the isles [sic] looking for a space. FULKS drove the pick-up truck behind the BMW and as the BMW pulled into a space, BASHAM jumped out of the still moving pick-up. FULKS continued driving the pick-up down the isle [sic] and lost sight of BASHAM. FULKS assumed that BASHAM was going to steal an unoccupied vehicle. As FULKS turned and began traveling down the adjacent isle [sic], heading back towards the store, he notice [sic] that BASHAM was waving his hand signaling FULKS to drive over to his location. BASHAM was leaning into the driver's side of the BMW sitting on the female driver. FULKS pulled the pick-up truck in front of the BMW and watched BASHAM crawl over to the front passenger seat. Donovan drove the BMW from the parking space to a location near the rear area of the parking lot. FULKS followed the BMW, parked the pick-up and entered the BMW in the rear seat. Donovan was told to drive the car and the BMW traveled out of the parking lot. The BMW continued South on Highway 501 towards Myrtle Beach. At the intersection of Highway 501 and Highway 378, the BMW turned left onto Highway 378. . . . Donovan was ordered to stop the vehicle. . . . Donovan moved to the back seat . . . . FULKS began driving the BMW.
> . . . BASHAM was armed with a 22 revolver.

---

[3]The date should be November 14, 2002.

While the defendant's statement does not discuss the second element of the case, the government will prove that the car was manufactured in Germany, thus the second element of the offense is satisfied. The facts in the 302 establish elements 1, 3 and 4 of the carjacking statute. The defendant admits that he (1) took a motor vehicle, (3) from the person or presence of another individual, (4) by force and violence or by intimidation.

The 302 reports that Fulks admitted that after carjacking Alice Donovan, they drove to an area in North Carolina where both Basham and he raped Donovan. The 302 then reports that Fulks said:

> Donovan remained naked in the back seat and was told by BASHAM that she could not put any of her clothes back on. At some point Donovan put her panties and tennis shoes on. . . . BASHAM wanted FULKS to begin looking for dirt roads off of Highway 90. FULKS turned down the first dirt road he came to, but quickly turned around after seeing several houses and barking dogs. FULKS turned down several other dirt roads but found that they all had houses on them. FULKS continued to drive down Highway 90 when he recalled seeing a wildlife sign on the side of the road. FULKS passed the dirt road which the wild life sign pointed to and turned around at a small grocery store, possibly an IGA. FULKS drove back and turned right onto a dirt road. It was dark at this time and FULKS noticed that Donovan's wrists were taped together. . . .
>
> FULKS continued driving down the dirt road and recalled seeing a long, wooden dock with a green security fence. FULKS turned the BMW around just after passing the dock and pulled up to the right side of the road. . . .
>
> BASHAM told Donovan that he did not intend to hurt her, but only tie her up and leave her in the woods. BASHAM got out of the car. While BASHAM was out of the car, Donovan asked BASHAM to leave the gun in the car since he was only going to tape her up. BASHAM would not leave the gun in the car. BASHAM signaled FULKS to back

7

up the BMW and shut the headlights off. BASHAM took Donovan out of the car and walked to the front of the BMW. BASHAM was holding Donovan by the elbow and had a gun in her side. BASHAM began walking to the right side but for some reason quickly walked back to the left. . . . FULKS last saw BASHAM and Donovan walking into the woods, possibly to the left side. BASHAM returned approximately twenty minutes later and appeared by the front of the BMW. BASHAM was holding Donovan's panties and tennis shoes. BASHAM . . . told FULKS to get out of there.

. . . BASHAM told FULKS that he had killed Donovan by choking/strangling her and taping her to a tree.

Thus, Fulks has likewise admitted that Alice Donovan's death resulted from the carjacking–the sixth element of the crime.

Therefore, the only element of the offense that Fulks fails expressly to admit in his interview with the FBI is that he intended to cause death or serious bodily harm. The government believes that Fulks' statement can be interpreted to admit that element. Clearly, raping an individual causes serious bodily harm. Secondly, Fulks' willingness to find a secluded place for Basham to tie Alice Donovan naked to a tree presumably to die or to suffer the consequences of November weather until she could free herself or was found evidences a willingness to cause serious bodily harm. However, counsel for the defense has indicated that the defendant does not admit that element of the offense although he arguably admits facts that establish that element.

The government also believes that the defendant has admitted aiding and abetting the offense of carjacking because the facts he admit prove that he was aware that Basham intended to cause death or serious bodily injury to Donovan by tying her

8

naked to a tree to be exposed to elements. Fulks admits that he drove the car looking for a secluded place to dispose of Donovan, that he was aware that Basham intended at least to tie Donovan to a tree, that he knew Basham had a gun, and that he saw Basham put the gun to Donovan's side. These facts establish that Basham had the intent to cause serious bodily harm, and that Fulks acted to assist him in accomplishing that objective. See United States v. Pasquantino, 336 F.3d 321, 335 (4th Cir. 2003) ("[I]n order 'to be convicted of aiding and abetting, participation in every stage of an illegal venture is not required, only participation at some stage accompanied by knowledge of the result and intent to bring about the result.'") The government is not clear whether the defendant admits his liability on this theory, so will proceed to discuss the theory on which the defendant relies for his plea to Count 1.

The defendant contends that the facts he described to the FBI render him legally responsible for the offense under Pinkerton v. United States, 328 U.S. 640 (1946). He is clearly correct. In Pinkerton, two brothers, Walter and Daniel Pinkerton were charged with conspiracy to violate the internal revenue laws and with substantive violations of those laws. Both were convicted. Daniel Pinkerton appealed his conviction contending *inter alia* that there was no evidence that he had participated in the substantive offenses and that his convictions for those crimes could not stand. To frame the issue presented, the Court said:

> There is, however, no evidence to show that Daniel participated directly in the commission of the substantive offenses on which his conviction

9

> has been sustained, although there was evidence to show that these substantive offenses were in fact committed by Walter in furtherance of the unlawful agreement or conspiracy existing between the brothers. The question was submitted to the jury on the theory that each petitioner could be found guilty of the substantive offenses, if it was found at the time those offenses were committed petitioners were parties to an unlawful conspiracy and the substantive offenses charged were in fact committed in furtherance of it.

Id. at 1183. The Fifth Circuit Court of Appeals affirmed Daniel's conviction, and the Court granted *certiorari* to resolve a conflict between the Fifth Circuit's decision and United States v. Sall, 116 F.2d 745 (3d Cir. 1940). In Sall, the court held:

> Here the government seeks to charge one of the conspirators with a substantive offense-- concealment of alcohol. Although that offense may in fact have been committed in the course of the conspiracy it is still necessary to prove that the defendant, even though he had joined the conspiracy, had also joined, at least to the extent which we have indicated, in the concealment of alcohol which constituted the substantive offense with which he is charged. It is the act of concealment with criminal intent, and not the previous agreement, which is the gist of that offense. To hold otherwise would be to ignore the difference in character between the crime of conspiracy and the substantive crimes which may result from it and to enable the government through the use of the conspiracy dragnet to convict a conspirator of every substantive offense committed by any other member of the group even though he had no part in it or even knowledge of it.

Sall, 116 F.2d at 747-48.

The Supreme Court resolved the conflict by affirming Daniel's conviction and rejecting Sall. Pinkerton, 328 U.S. at 646. The Court held:

> The governing principle is the same when the substantive offense is committed by one of the conspirators in furtherance of the unlawful project. Johnson v. United States, 9 Cir., 62 F.2d 32, 34. The criminal intent to do the act is established by the formation of the conspiracy.

10

Each conspirator instigated the commission of the crime. The unlawful agreement contemplated precisely what was done. It was formed for the purpose. The act done was in execution of the enterprise. The rule which holds responsible one who counsels, procures, or commands another to commit a crime is founded on the same principle. *That principle is recognized in the law of conspiracy when the overt act of one partner in crime is attributable to all.* An overt act is an essential ingredient of the crime of conspiracy under § 37 of the Criminal Code, 18 U.S.C. § 88, 18 U.S.C.A. § 88. *If that can be supplied by the act of one conspirator, we fail to see why the same or other acts in furtherance of the conspiracy are likewise not attributable to the others for the purpose of holding them responsible for the substantive offense.*

Id. at 647 (Emphasis added).

The Court's rejection of Sall and its acceptance of the ruling below makes clear that the rule to emerge from Pinkerton is that coconspirators act as each other's agents and when a co-conspirator commits a crime or act that furthers the conspiracy, then all conspirators are liable for the substantive violation even if they did not directly participate in it.

The Fourth Circuit Court of Appeals set forth its understanding of this rule in United States v. Aramony, 88 F.3d 1369 (1996). In that case, the court set out the lower court's entire instruction on the Pinkerton theory of liability. The instruction read:

Now, a member of a conspiracy who commits another crime during the existence or life of a conspiracy and commits this other crime in order to further or somehow advance the goals or objectives of the conspiracy, may be found by you to be acting as the agent of the other members of the conspiracy. The illegal actions of this person in committing this other crime may be attributed to other individuals who are then members of the conspiracy.

11

Under certain conditions, therefore, a defendant may be found guilty of this other crime even though he or she did not participate directly in the acts constituting the offense.

If you find that the Government has proven a defendant guilty of conspiracy as charged in count one of the indictment, you may also find him guilty of the crimes alleged in any other counts of the indictment in which he is charged provided you find that the essential elements of these counts as defined in these instructions have been established beyond a reasonable doubt.

And further, that you also find beyond a reasonable doubt that, one, the substantive offense . . . [was] committed by *a member* of the conspiracy.

Two, the substantive crime was committed during the existence or life of and in furtherance of the goals of the conspiracy.

And third, that at the time this offense was committed the defendant was a member of the conspiracy.

Id. at 1380 (Emphasis added). The Fourth Circuit Court of Appeals approved this instruction and held that it was not necessary that the government prove that the commission of the substantive offense was foreseeable to the defendant. Id. at 1381 ("[W]e conclude that the Pinkerton instruction here was proper.").

The defendant clearly admitted to membership in a conspiracy with Basham. His actions in driving Basham to the Wal-Mart to steal a car, driving Donovan's car after she was forced into the back seat, using Donovan's ATM, raping Donovan, driving Basham to the location where Alice Donovan was abandoned, driving him away from that scene, driving him back to the hotel to retrieve their belongings and then to West Virginia clearly evidence that he was still a member of the conspiracy. Furthermore, Fulks admitted that he used Alice Donovan's ATM card after she was abandoned by Basham. Basham's action in killing Alice Donovan clearly furthered

12

the conspiracy by giving the defendant's permanent and exclusive control of Alice Donovan's car and prohibiting Donovan from reporting to law enforcement the activities and whereabouts of the defendants, which was critical to the continuation of the conspiracy particularly where the defendants were escapees.

In United States v. Mothersill, 87 F.3d 1214 (11th Cir. 1996), two conspirators in a narcotics conspiracy were stopped by a highway patrolman. The highway patrolman arrested the driver for operating without a license and then undertook to search the car. When the officer opened a microwave oven inside the car, a pipe bomb, rigged to explode when the door opened, killed him. The driver, passenger and others were charged in a drug conspiracy and also charged with the substantive crime of murdering the police officer. The jury convicted the defendants of the murder after the district court gave a Pinkerton instruction. Relying on evidence regarding the scope of the conspiracy, the quantity of drugs distributed and the value of those drugs, the court of appeals concluded that there was ample evidence to hold co-conspirators liable for the substantive offense of murder even though they were not present when the murder was committed and the murder was not the object of the conspiracy. Interestingly, the court of appeals concerned itself only with the issue of reasonable foreseeability–an element of Pinkerton not required in the Fourth Circuit. Nonetheless, even under the stricter Eleventh Circuit iteration of Pinkerton liability, the court found that even non-present conspirators were properly held liable for the murder of the police officer.

13

Mothersill is not the only case to hold that individuals can be held liable for murder under the Pinkerton theory. See United States v. Alvarez, 755 F.2d 830 (11th Cir. 1985); United States v. Thomas, 34 F.3d 44 (2d Cir. 1994); United States v. Walker, 142 F.3d 103 (2d Cir. 1998). In the case before this Court, the defendant is not charged with murder. The government cites those cases only to show the breadth of Pinkerton's reach. Rather, this defendant is charged with an offense the result of which was death. Even under the stricter standard of other circuits, this defendant is liable under a Pinkerton theory. When Basham, after Fulks and he both raped Donovan and knowing that they needed her car to continue their crime spree, took Alice Donovan into the woods at gun point to *at best* tie her to a tree and abandon her naked in the woods, it was certainly foreseeable to Fulks that Basham would kill her or cause her serious bodily harm. Therefore, his participation in a conspiracy renders him criminally responsible for the substantive offense he claims Basham alone committed.

## II.     The kidnapping charge

Count 2 charges the defendant with kidnapping resulting in death. The elements of that offense are (1) the defendant unlawfully seized, confined, inveigled, decoyed, kidnapped, abducted, or carried away the victim; (2) the defendant held the victim for ransom, reward, or otherwise; (3) the defendant willfully transported the victim in interstate commerce; and (4) death results. Again, the federal kidnapping statute does

14

not incorporate the federal murder statute but simply provides as an element that the kidnapping resulted in death.

The facts the defendant admitted to the FBI establish his guilt of this crime independent of any vicarious liability theories. The defendant admits that Alice Donovan was taken against her will. While the defendant's 302 does not expressly state that Basham and he took Donovan against her will, any other conclusion based on the facts he relates is preposterous. They did not know Donovan, Basham jumped into the driver's side of the car on top of Donovan, Basham had a gun, after driving for a while, Fulks forced Donovan into the back seat and drove the car himself. There is simply no evidence to indicate that Donovan voluntarily drove the car away from the Wal-Mart. Thus, Fulks admits the first element of the offense.

In United States v. Childress, 26 F.3d 498, 503 (4th Cir. 1994), the court held:

> [T]he Supreme Court and the courts of appeals have broadly interpreted the Federal Kidnapping Act's requirement that the kidnapped person be "held for ransom or reward or otherwise." United States v. Crosby, 713 F.2d 1066, 1070 (5th Cir.), *cert. denied*, 464 U.S. 1001, 104 S.Ct. 506, 78 L.Ed.2d 696 (1983). Thus, to satisfy the Act's requirement, it is sufficient for the government to show that the defendant acted for any reason which would in any way be of benefit.

The defendant admitted that Basham and he needed another car. He also admits that he used Alice Donovan's ATM card to obtain cash. Obtaining cash is particularly important to escapees who cannot engage in legitimate activities to earn funds.

15

Clearly, access to Donovan's car and her bank account establish a reason for the kidnapping that would benefit the defendant, so he has admitted to the second element of the kidnapping charge.

Next, the defendant stated that he forced Donovan to stop the car near the Conway City maintenance facility in South Carolina. He then admits that he began driving the car and admits that he drove the car with Donovan in it to North Carolina. Therefore, he has admitted the third element of the offense.

Finally, Fulks admitted that Basham told him that he killed Donovan after she was kidnapped and while she was still being held against her will. Therefore, it is clear that Fulks has admitted that death resulted from the kidnapping.

## III.   Conclusion

The government understands that the pending penalty phase of this case presents some unique considerations with respect to the issues addressed herein. However, establishing guilt of the underlying crimes that may support a death penalty is simply the first step in a death penalty case. The defendant's effort to plead guilty to carjacking under the Pinkerton theory appears to be his attempt to accept responsibility for his crimes without admitting facts that with certainty expose him to the death penalty. The evidence of at least one aggravating factor is virtually undisputed, to wit that the death of Alice Donovan occurred during a kidnapping, 18 U.S.C. § 3592(c)(1). Therefore, the defendant is seeking to pursue a strategy that

allows him to dispute the statutory intent elements in 18 U.S.C. §3591. A plea to the carjacking statute that has as an element the specific intent to commit serious bodily injury or death would virtually preclude any argument that the jury cannot legally impose a death sentence. Therefore, the government understands the defendant's legal strategy. While the government contends that the facts related by Fulks significantly understate his actual role in these crimes and his state of mind, the government believes that those facts at a minimum establish his vicarious liability for Count 1 of the indictment and his direct liability for Count 2.

Respectfully submitted,

J. STROM THURMOND, JR.
UNITED STATES ATTORNEY

By:

Scott N. Schools (#4985)
First Assistant U.S. Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201
803-929-3071

May 5, 2004

17

IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA          )          CRIMINAL NO. 4:02-992-17
                                  )
            v.                    )
                                  )
CHADRICK EVAN FULKS               )
                                  )
            Defendants.           )

CERTIFICATE OF SERVICE

The undersigned hereby certifies that she is an employee in the Office of the United

States Attorney for the District of South Carolina and is a person of such age and discretion

as to be competent to serve papers.

That on May 5, 2004, she served copies of the attached

**MEMORANDUM OF THE UNITED STATES TO ISSUES RAISED BY THE
COURT IN CONNECTION WITH THE DEFENDANT'S ATTEMPT TO
PLEAD GUILTY TO THE INDICTMENT**

by e-mailing to the individuals listed below and by placing said copies in a postpaid envelope

addressed to the person(s) hereinafter named, at the place(s) and address(es), and by depositing

said envelope and contents in the United States Mail at U.S. Attorney's Office, 1441 Main

Street, Suite 500, Columbia, SC 29201:

Addressee(s):
William F. Nettles, IV, Esquire          John H. Blume, III, Esquire
Federal Public Defender's Office          P. O. Box 11744
401 W. Evans St., Room 240                Columbia, SC 29211
Florence, SC 29503

Gregory P. Harris, Esquire                Jack B. Swerling, Esquire
1720 Main Street, Suite 301               1720 Main Street, Suite 301
Columbia, SC 29201                        Columbia, SC 29201

GAIL M. BAKER
Legal Secretary