IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Florence Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 4:02-992 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | The Honorable Joseph F. Anderson, Jr. |
| | ) | U.S.D.J. |
| CHADRICK E. FULKS, | ) | |
| | ) | This is a Capital Case |
| Petitioner. | ) | |

**MOTION OF CHADRICK E. FULKS FOR LEAVE TO CONDUCT DISCOVERY
AND BRIEF IN SUPPORT**

Chadrick E. Fulks, by undersigned counsel, pursuant to the Fifth, Sixth and Eighth Amendments to the United States Constitution, files his Motion for Leave to Conduct Discovery and Supporting Memorandum. Mr. Fulks has pled several claims in his motion for post-conviction relief pursuant to 28 U.S.C. §2255 that warrant discovery and further factual development. These claims include allegations of serious government misconduct, ineffective assistance of Mr. Fulks' trial counsel, and related deprivation of his constitutional right to have his capital jury consider all relevant sentencing information before deliberating.

This request for leave to conduct discovery, including requests for the production of records and evidence, and depositions, is necessary for the presentation of the constitutional claims raised in Petitioner's 28 U.S.C. §2255 motion. Discovery is authorized by Rule 6 of the Rules Governing 28 U.S.C. § 2255 Procedures. The requested discovery as set forth in more detail below is essential to guarantee Petitioner a full and fair opportunity to amend his §2255 motion as well as to ensure that this Court reviews and resolves his constitutional claims for relief with the benefit of a fully

developed factual record. Petitioner requests that any evidentiary hearing be continued until the completion of the requested discovery.

## I. MEMORANDUM OF LAW

### A. Introduction

Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts gives this Court express authority to order discovery:

> A judge may, for good cause, authorize a party to conduct discovery under the Federal Rules of Criminal Procedure or Civil Procedure,[1] or in accordance with the practices and principles of law.

Rule 6(a) incorporates the United States Supreme Court's directive that a federal habeas corpus petitioner is "'entitled to careful consideration and plenary processing of [his claims,] including full opportunity for presentation of the relevant facts.'" Harris v. Nelson, 394 U.S. 286, 298 (1969); see also Blackledge v. Allison, 431 U.S. 63, 82-83 (1977); Cf. Rules Governing Section 2254 Cases in the United States District Courts, Advisory Committee Note to Rule 6 ("Subdivision (a) is consistent with Harris v. Nelson").[2]

### B. Good Cause

This Court may grant petitioners, such as Mr. Fulks, leave to conduct discovery when "good cause" for doing so is shown. Under guiding principles of the United States Supreme Court, such "good cause" for discovery in habeas proceedings is established

---

[1] Rule 6 for §2255 proceedings differs from the corresponding discovery rule under the §2254 rules in that it includes the processes of discovery available under the Federal Rules of Criminal Procedure as well as the civil.

[2] The Advisory Committee Notes to the Rules Governing Section 2254 Cases in the United States District Courts are "fully applicable to discovery under [the analogous Rule] for Section 2255 motions." Advisory Committee Notes to Rule 6, Rules Governing Section 2255 Proceedings for the United States District Courts.

"where specific allegations before the court show reason to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is entitled to relief." Bracy v. Gramley, 520 U.S. 899, 908-909 (1997).[3]   See also Holley v. Smith,  792 F.2d 1046 (11th Cir.1986)(the rules governing discovery in ordinary civil cases are applicable to petitions for the writ of habeas corpus to the extent authorized by the court for good cause shown).

A petitioner who has (1) made specific allegations warranting relief, (2) shown why the requested information is essential to the adequate factual development of his claims, and (3) demonstrated that the requested information is likely in the hands of the party from whom discovery is sought and cannot be obtained through other means, has established "good cause" under Bracy and Rule 6.  See Quesinburg v. Taylor, 162 F.3d 273, 279 (4th Cir. 1998) ("Good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be able to demonstrate that he is entitled to relief."); see also Willis v. Newsome, 771 F.2d 1445 (11th Cir. 1985)(in federal habeas corpus actions, where specific allegations before the court show reasons to believe that the petitioner may, if the facts are fully developed, be able to demonstrate that he is confined illegally and is therefore entitled to relief, it is the duty of the court to provide the necessary facilities and procedures for an adequate inquiry); Cherrix v. Braxton, 131 F.Supp.2d 756 (E.D. Va. 2001).

It should also be noted that in a §2255 case, like all civil cases, discovery necessarily precedes resolution of claims on summary judgment. To be entitled to

---

[3] By contrast, the Supreme Court has indicated that such good cause is absent when the petitioner's allegations are patently frivolous (*i.e.*, the product of "fantasy which has its basis in the paranoia of prison rather than fact." Harris, 394 U.S. at 300).

discovery, Petitioner need not conclusively establish his entitlement to relief on the merits of his claims. Payne v. Bell, 89 F.Supp.2d 967, 971 (W.D. Tenn. 2000)(good cause to grant discovery is not as high as the standard for granting relief or even that for granting an evidentiary hearing).

### C. McClesky v. Zant

In McCleskey v. Zant, 499 U.S. 467, 489 (1991), the United States Supreme Court held that a habeas petitioner "abuses the writ" of habeas corpus "by raising a claim in a subsequent petition that he could have raised in the first, regardless of whether the failure to raise it stemmed from a deliberate choice." The petitioner who "abuses the writ" is not entitled to review of his claim, unless he can either show "cause and prejudice" for his actions, or demonstrate that failure to decide his claim will constitute a "fundamental miscarriage of justice." Id. at 498. In deciding whether a habeas petitioner has abused the writ, "the question is whether petitioner possessed, or by reasonable means could have obtained a sufficient basis to allege a claim in the first petition and pursue the matter through the habeas process, see 28 U.S.C. §2254 Rule 6 (Discovery); Rule 7 (Expansion of Record); Rule 8 (Evidentiary Hearing)." Id. at 497. A federal habeas petitioner must include in his initial petition "what petitioner knows or could discover upon reasonable investigation. . . ." Id. Otherwise, he will not later be able to present his claims.

Having "obtained a sufficient basis to allege his claims," Mr. Fulks now seeks to make a "reasonable investigation" into all such claims and to "pursue the matter through the habeas process" of discovery under Rule 6, the procedure expressly articulated by the Supreme Court in McCleskey. Having placed an affirmative duty upon those seeking habeas relief to raise all claims in their initial petition, McCleskey has placed a

concomitant duty upon the federal courts to provide petitioners with the necessary tools to meet this obligation, including discovery and services necessary for counsel to effectively utilize these discovery devices. Because this is Mr. Fulks' first §2255 motion and he sets forth below a sufficient basis for alleging possible deprivations of his constitutional rights, McCleskey entitles him to discover evidence which could prove that he is entitled to relief.

### D. Discovery Is Especially Warranted in a Capital Case

The policies favoring discovery are even stronger in capital cases than in noncapital cases because the "finality" of death and its "qualitative[] differen[ce] from a sentence of imprisonment, however long," magnifies the "need for reliability" and, accordingly, the need for reliable fact-determination procedures. Woodson v. North Carolina, 428 U.S. 280, 305 (1976); McFarland, v. Scott, 512 U.S. 849, 855 (1994).

Because this is a death penalty case, broad discovery is necessary to ensure that extra measure of process which is demanded in capital cases. "[I]f death is involved, the petitioner should be presented every opportunity possible . . . to present facts relevant to his constitutional claims." Wilson v. Butler, 825 F.2d 879, 883 (5th Cir. 1987). In fact, the capital petitioner who fails to request full discovery in his initial habeas petition may lose his life because he failed to investigate his case earlier. Tucker v. Kemp, 819 F.2d 978, 981 (11th Cir. 1987)(on eve of execution, court found abuse of the writ and denied relief, where capital petitioner failed to seek discovery during first habeas proceeding). Given the gravity of this capital case, Mr. Fulks requests this Court's leave to conduct discovery which will enable him to fully investigate, develop, and present any and all relevant constitutional claims for relief in his initial capital §2255 motion.

## II. <u>DISCOVERY REQUESTS</u>

Mr. Fulks requests the process of this Court to secure the following evidence in support of his 28 U.S.C. §2255 claims:

**CLAIM XIV**      **PETITIONER'S TRIAL COUNSEL WERE INEFECTIVE FOR FAILING TO OFFER ADDITIONAL AND READILY DISCOVERABLE EVIDENCE OF BASHAM'S LEADERSHIP AND MANIPULATION THAT WOULD HAVE FIRMLY ESTABLISHED PETITIONER'S MINOR PARTICIPATION.**

**CLAIM XX**      **PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BY THE GOVERNMENT'S PRESENTATION OF INCONSISTENT THEORIES.**

At Petitioner's sentencing hearing, the government portrayed him as the leader of the criminal activity occurring in November 2002. The government repeatedly described Petitioner's co-defendant, Brandon Basham, as a puppet who was easily influenced by Petitioner. Argument and evidence, however, introduced in Basham's trial reveals just the opposite. The government presented evidence to the jury and argued to the jury that Basham took the life of Alice Donavan and made all the life and death decisions in November 2002. Based on the government's prosecution of Basham, Petitioner was at most a follower in the events of November 2002. Relevant to the above claims, Petitioner requests leave to conduct the following discovery:

> 1.      The government be required to produce to Petitioner's counsel, for inspection and photocopying, all information within its possession, or at its disposal, regarding exculpatory, inculpatory, or mitigating statements made by co-defendant Basham during his incarceration prior to Petitioner's trial about Petitioner's role in the crimes for which Petitioner and Basham were indicted.

Said production shall include any evidence that Petitioner's role in this offense was limited or differed from that argued by the government at Petitioner's trial.

2. The government be required to produce to Petitioner's counsel for inspection and photocopying, all information within its possession, or at its disposal, regarding co-defendant Basham's role in the crime spree occurring in November 2002. Said production shall include any evidence that Basham's role in this offense was limited or differed from that argued by the government at Petitioner's trial.

3. The government be required to produce to Petitioner's counsel, for inspection and photocopying, all information within its possession, or at its disposal, intending to show that Petitioner had a lesser role in the crime spree during November 2002 than was argued by the government at Petitioner's trial.

4. The government be required to produce to Petitioner's counsel, for inspection and photocopying, all information within its possession, or at its disposal, tending to support the government's statement in the Basham trial that "in fact, probably better evidence [exists] to suggest that Brandon Basham was the killer than that Chad Fulks was the killer."

5. The government be required to produce for Petitioner's counsel, for inspection and photocopying, all evidence within its files, or at its disposal, concerning any mitigating evidence which questions the jury's verdict in any manner and was not presented during Petitioner's trial.

7

**CLAIM XIX**        **PETITIONER'S APPELLATE COUNSEL WERE INEFFECTIVE FOR FAILING TO APPEAL THIS COURT'S FAILURE TO ADMIT STATEMENTS BY BASHAM TENDING TO SHOW THAT BASHAM KILLED ALICE DONOVAN.**

**CLAIM XX**        **PETITIONER'S DUE PROCESS RIGHTS WERE VIOLATED BY THE GOVERNMENT'S PRESENTATION OF INCONSISTENT THEORIES.**

As described in the Petition, Mr. Fulks' trial counsel sought to admit a statement that Basham made to Sheriff Ronald Hewitt: "You know, I could never kill a deer and here I have …" The government during Petitioner's trial argued that this statement was meaningless and did not tend to show that Basham was the killer of Alice Donovan. The government accused Petitioner's trial counsel of taking this statement out of context.

Just months later during the Basham trial, the government introduced through Sheriff Hewitt Basham's statement about the deer. In closing argument of the Basham trial, the government specifically argued that this statement about the deer was an admission by Brandon Basham that he took the life of Alice Donovan. Had the deer statement been allowed in during the Fulks trial, it would have been powerful testimony that likely would have led the jury to a different conclusion about Petitioner's moral responsibility for Donovan's death.

Relevant to the above claims, Petitioner request leave to conduct the following discovery:

      6.     A deposition of Sheriff Ronald Hewitt be taken to establish what he told the government about the deer statement and/or Basham's admission that he took the life of Alice Donovan.

7.     The government be required to produce to Petitioner's counsel, for inspection and photocopying, all information within its possession or at its disposal, regarding Sheriff Hewitt's knowledge about the "deer statement" and/or other admissions made by Brandon Basham.

8.     The government be required to produce to Petitioner's counsel, for inspection and photocopying, all information within its possession or at its disposal, tending to show that Basham killed Alice Donovan and/or Samantha Burns.

**CLAIM XXI**     **THE PROSECUTION'S ATTEMPTS TO INFLUENCE WITNESS TESTIMONY WERE INAPPROPRIATE AND RENDERED THE RESULTING VERDICT A DENIAL OF DUE PROCESS.**

**CLAIM XXII**     **THE GOVERNMENT VIOLATED ITS OBLIGATIONS UNDER *BRADY V. MARYLAND* BY FAILING TO DISCLOSE TO PETITIONER INFORMATION MATERIAL TO HIS ABILITY TO PREPARE AND PRESENT A DEFENSE AT TRIAL AND SENTENCING DENYING PETITONER HIS RIGHTS UNDER THE FIFTH, SIXTH, AND EIGHTH AMENDMENTS TO THE UNITED STATES CONSTITUTION.**

The undersigned counsel have discovered evidence that the government committed grave misconduct by attempting to intimidate and improperly shape the testimony of key witnesses.  In her declaration, Ms. Andrea Roddy indicated how FBI agents repeatedly attempted to force her to testify that Chad Fulks threatened her life and the life of Tina Severance during the events of November 2002.  Roddy insisted that Fulks did no such thing, but the agents would not relent.

Moreover, undersigned counsel has discovered a letter written by officials from the Myrtle Beach Police Department in which they indicate all charges against Tina

Severance were dropped because of her cooperation in the Fulks case. The government did not disclose this information to trial counsel.

Relevant to the above claims, Petitioner requests leave to conduct the following discovery:

9.    The government be required to produce to Petitioner's counsel, for inspection and photocopying, all information within its possession, or at its disposal, regarding promises or deals made with witnesses in exchange for their testimony at Petitioner's capital trial. See Giglio v. United States, 405 U.S. 150 (1972).

10.    The government be required to produce to Petitioner's counsel, for inspection and photocopying, all correspondence regarding any and all witness who testified at Petitioner's trial.

11.    The government be required to produce to Petitioner's counsel, for inspection and photocopying the rough drafts of reports or notes made by government agents pertaining to the investigation and prosecution of Mr. Fulks, including, but not limited to, those notes or reports kept on the "I-drive" of the FBI's computer system.

12.    The government be required to produce to Petitioner's counsel any evidence that any government witness who testified at Petitioner's trial was biased or prejudiced against Petitioner or had a motive to falsify or distort his/her testimony.

13.    The government be required to produce to Petitioner's counsel any and all documents of the personnel file of any federal agent involved in the

investigation and/or interviewing of witnesses in this case tending to show that the agent(s) have been reprimanded, disciplined, or reported for attempts to influence witness testimony.

**CLAIM XXV      THE GOVERNMENT ENGAGED IN SERIOUS MISCONDUCT BY ASSERTING THAT PETITONER HAD BEEN ARMED WITH A .45 CALIBER REVOLVER.**

**CLAIM XXVI     TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO QUESTION RONNIE FULKS ABOUT THE .45 CALIBER REVOLVER.**

On June 18, 2004, trial counsel for Petitioner filed a Motion to Compel a Grant of Immunity for Ronnie Fulks. Petitioner's counsel indicated in the motion that Petitioner left a .45 caliber revolver with Ronnie on November 8 or 9, 2002. Because Ronnie is a convicted felon, counsel observed that immunity was necessary so Ronnie could fully and accurately testify about possession of the weapon without exposing himself to criminal liability. This testimony about the weapon was important because it would eliminate the possibility that the firearm was used in either the Burns or Donovan homicides. It would also eliminate the resulting inference that Petitioner disposed of the murder weapon at some point prior to his arrest. This testimony would also establish that the only operational firearm in the possession of Petitioner and Basham was a .22 caliber revolver. Myriad witnesses testified that Basham was never without this .22 caliber revolver.

Despite being put on notice that Petitioner gave the .45 caliber revolver to his brother, the government argued at trial that Petitioner was in possession of this weapon throughout the crime spree and fired this weapon with the intent to inflict injury. The government knew better and should not have made such improper arguments to the jury.

11

These improper arguments misled the jury and the prosecution offered evidence it knew to be false.

With relation to these claims, Petitioner requests the following:

14. The government be required to produce to Petitioner's counsel, for inspection and photocopying, all information within its possession, or at its disposal, regarding the .45 caliber revolver that Petitioner gave to his brother.

15. The government be required to produce to Petitioner's counsel, for inspection and photocopying, all information within its possession, or at its disposal, indicating that the government knew or should have known that a weapon was disposed of by Petitioner or Ronnie Fulks prior to any encounter with Burns and/or Donovan.

16. The government be required to produce to Petitioner's counsel, for inspection and photocopying, all information within its possession, or at its disposal, about the interrogation, investigation, or arrest of Ronnie Fulks, which proceeded Ronnie's transfer or extradition to Indiana authorities.

**CLAIM I**      **PEITIONER'S TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO PRESENT A MEANINGFUL MENTAL HEALTH CASE IN MITIGATION INASMUCH AS THEY DID NOT CALL CRTICAL EXPERT WITNESSES WHO WERE PREPARED TO EDUCATE THE JURY ON PETITIONER'S MULTIPLE IMPAIRMENTS.**

**CLAIM III.**     **PETITIONER'S TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO UNDERTAKE AN ADEQUATE AND MEANINGFUL MITIGATION INVESTIGATION.**

In his first and third grounds for review, Petitioner contended that there was extensive evidence of Mr. Fulks' abuse and impairment that trial counsel either did not discover or did not produce for the jury. As explained in the Petition for Habeas Corpus,

12

the mitigation evidence presented by trial counsel did not come close to capturing the essence of Petitioner's childhood. Had a proper mitigation investigation been conducted, witnesses would have been discovered who could have painted a compelling picture for the jury – a picture that would have accurately depicted Petitioner's life, especially the horrendous cycle of mental illness, addiction and abuse, including sexual abuse.

Furthermore, mental health evidence existed that could have explained to the jury the significance of parental mistreatment of Petitioner, the chaotic family environment, drug and alcohol abuse, sexual abuse, and many other deprivations. The jury could have learned about the depression that Petitioner suffered from since childhood, the substance abuse dependence, the impaired ability to process and store information, the limited reasoning and problem solving skills, anxiety, dependent personality, fragile self-image, and misperception of events.

Through discovery, Petitioner seeks to establish the existence of strong and compelling mitigating evidence. Such evidence is directly related to Petitioner's moral blame worthiness for the crime for which he plead guilty. Petitioner also seeks to establish the effect of the failure to present such evidence at trial. With relation to these claims, Petitioner would request the following discovery:

17. The government be required to produce for Petitioner's counsel, for inspection and photocopying, all evidence within its files, or at its disposal, concerning any physical, mental or sexual abuse suffered by Petitioner or other members of his family.

18. The government be required to produce for Petitioner's counsel, for inspection and photocopying, all evidence within its files, or at its disposal,

13

concerning any mental or psychological illness or impairment suffered by Petitioner or other members of his family.

### III. CONCLUSION

Given the gravity of this capital case, Petitioner requests leave to conduct the requested discovery, including production of records and evidence, which will enable him to fully investigate, develop, and present any and all relevant constitutional claims. As the foregoing establishes, there is "good cause" for the discovery. By making this request at this time, Mr. Fulks does not waive his right to seek additional discovery in the future, in the form of further requests for access to relevant documents and records, as well as depositions of relevant witnesses that come to light through the disclosure of such relevant documents and records.

If the government alleges that any information Petitioner seeks via discovery is privileged and/or constitutes attorney work product, Petitioner requests the Court to require the government to produce such information for in camera inspection and review. If the government submits any such material, and the Court refuses to allow Petitioner and/or his counsel access to such material, Petitioner then further requests the Court to copy the undisclosed material and maintain it in the record under seal for purposes of any potential subsequent appeal in this proceeding.

Petitioner also requests that any evidentiary hearing be delayed until the completion of the requested discovery, and that he be allowed to amend his § 2255 motion in light of newly uncovered information from the discovery, if any, and from investigative leads produced from such discovery. He also requests leave to seek

14

additional discovery as development of the facts and issues, in light of further discovery, may warrant.

For all the reasons set forth above and in his accompanying § 2255 motion, incorporated herein by express reference, Mr. Fulks respectfully requests that this Court grant him the requested discovery and other relief set forth in this motion.

Respectfully submitted,

/s/ William J. Watkins, Jr.
William J. Watkins, Jr., Federal Bar #7863
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
550 South Main Street, Suite 400
Greenville, South Carolina 29601
(864) 255-5400

Beattie B. Ashmore, Federal Bar #5215
PRICE, PASCHAL & ASHMORE, PA
644 E. Washington Street
Greenville, SC 29601
(864) 467-1001

Attorneys for Defendant Chadrick E. Fulks

July 22, 2008

WCSR 3941341v2