IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
Florence Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CRIMINAL NO. 4:02-992 |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | The Honorable Joseph F. Anderson, Jr. |
| | ) | U.S.D.J. |
| CHADRICK E. FULKS, | ) | |
| | ) | This is a Capital Case |
| Petitioner. | ) | |

**SUPPLEMENTAL MEMORANDUM IN SUPPORT OF PETITIONER'S
MOTION FOR LEAVE TO CONDUCT DISCOVERY**

On August 21, 2008, this Court took under advisement Petitioner's request to
conduct the deposition of Sheriff Ronald Hewitt. This Court directed Petitioner to submit
relevant record citations and argument on this matter. Petitioner, by undersigned counsel,
hereby complies with the Court's request.

## I. BACKGROUND

Based on the advice of trial counsel, Petitioner pled guilty to the death-eligible
counts of the superseding indictment. The plea itself was an oddity. Petitioner has
steadfastly asserted that he neither personally took part in the homicide of Alice Donovan
nor had any awareness of Basham's intent to commit the killing before it occurred. PTT
05/04/2004 at 67. Petitioner has also passed two polygraph tests that confirm he did not
personally take part in the killing of Donovan.

In arguing for a life sentence, the Petitioner's counsel sought to demonstrate that
Basham struck the fatal blow that killed Alice Donovan. The government vigorously
opposed Petitioner's evidence on this point. The government contended that Petitioner
had an equal role in the death of Alice Donovan and that Petitioner "intentionally killed

Alice Donovan." TT 06/29/2004 at 107 & 131. In arguments before this Court, the government was successfully able to exclude evidence that Basham, not Petitioner, actually took the life of Alice Donovan. However, in Basham's trial, the government introduced this evidence and argued to the jury that Basham made all life and death decisions and struck the fatal blow that killed Donovan.

In his Petition for Habeas Corpus, Petitioner has raised claims of due process and ineffective assistance of counsel based on the flatly inconsistent positions taken by the government regarding the death of Alice Donovan. Key to exploring these claims are statements that Basham made to Sheriff Ronald Hewitt while participating in a search for Donovan's remains in November 2002. Accordingly, Petitioner has requested leave of Court to conduct the deposition of Sheriff Hewitt to determine the facts and circumstances of the government's knowledge of Basham's admissions.[1]

## I. LEGAL ARGUMENT

### A. Basham strangled Alice Donovan with her own purse strap.

Evidence that Basham killed Donovan would have been crucial to Petitioner's defense. While Basham was in the company of Sheriff Hewitt, he demonstrated to law enforcement how Alice Donovan was allegedly strangled with a purse strap. In Petitioner's trial the government argued that Basham was demonstrating how "Chad Fulks took the purse strap and strangled" Alice Donovan. TT 06/22/2004 at 255.

At the Basham trial, the government took a contrary position about the use of the purse strap. During questioning, Sheriff Hewitt was adamant that Basham was

---

[1] Attached to this Memorandum are the relevant portions of the transcripts. <u>Attachment A</u> contains pages from a Colloquy from the Fulks trial and concerns the government's representations about the Deer Statement and the purse strap; <u>Attachment B</u> contains pages from Sheriff Hewitt's testimony in the Basham trial; and <u>Attachment C</u> contains pages from the government's closing argument in the Basham trial.

demonstrating how he – not Fulks – used the purse strap to strangle Alice Donovan. Basham TT 09/27/2004 at 10-53. In closing argument the government highlighted how Basham's demonstration was an admission that he killed Alice Donovan with her own purse strap. Basham TT 09/29/2004 at 12-80. The government further argued that a jury verdict for the death penalty had to be returned because Sheriff Hewitt testified and explained "how Branden Basham demonstrated how Alice Donovan was strangled." <u>Id.</u> at 12-81.

Thus, it is critical for Petitioner to learn when Sheriff Hewitt informed the government that Basham admitted to strangling Alice Donovan. Only two inferences are possible: (1) the government knowingly and willfully used inconsistent theories during the trials of Fulks and Basham, or (2) Sheriff Hewitt perjured himself at the Basham trial and the government used this improper testimony to get a desired verdict.

**B. The "Deer Statement" was an admission that Basham killed Donovan.**

On November 28, 2002, Branden Basham met with law enforcement representatives in Brunswick County, North Carolina. The purpose of this excursion was to look for the remains of Alice Donovan. Basham was accompanied by Sheriff Ronald Hewitt, FBI Agent Jeff Long, an unidentified police officer, and two of Mr. Basham's attorneys. While driving along Highway 17, a doe jumped in front of the van. At that time Branden Basham said to Sheriff Hewitt, "you know, I could never kill a deer and here I have . . . ." Basham was stopped from completing his sentence by attorney Bruce Littlejohn. Hewitt interview, 12/03/02 (Contained in *PA, document # 37*, at ¶3).

During Petitioner's trial, Petitioner's counsel sought to introduce this statement as a declaration against penal interest or an excited utterance. TT 06/22/2004 at 247-48.

3

Petitioner's counsel argued that this statement was evidence that Basham, and not Petitioner, was the actual killer of Alice Donovan. Petitioner's counsel emphasized that this statement was made contemporaneously at the time Basham was attempting to put all the blame on Fulks for the death of Alice Donovan.

The government argued against admission of the statement. According to the government, Petitioner's counsel was taking the statement "out of context." TT 06/22/2004 at 250. The government further argued that the statement had "no meaning." Id. Instead of being an admission to killing Alice Donovan, the government argued that Basham could have meant "I helped Chad hide these bodies." Id. at 251. The government vociferously argued that the statement "doesn't say he killed her, it doesn't say that." Id. at 253. Branden Basham "could have been talking about anything." Id. at 253. This Court accepted the government's arguments and did not permit the defense to introduce the statement. Id. at 255-54.

Just months later during the Basham trial, the government introduced through Sheriff Hewitt Basham's statement about the deer. Basham TT, 09/27/2004 at 10-24 through 10-25. In closing argument of the Basham trial, the government specifically argued that this statement about the deer was an admission that Basham killed Alice Donovan:

> Do you remember what Branden Basham's comments were? He sees that doe and he says to himself, spontaneously, "here I couldn't even kill a deer, and I have," and his lawyer, Mr. Littlejohn stops him. "Here, I couldn't even kill a deer, and here I have" – what do you think he is thinking about? Here I have smoked a joint? Here I have stolen a car?

Basham TT, 9/29/2004 at 12-79.

Petitioner's direct appeal was not heard by the Fourth Circuit Court of Appeals until May 23, 2006—approximately 18 months after the Basham trial. Petitioner's

appellate counsel should have known of the government's inconsistent use of the deer statement and should have raised this issue on appeal. The government misled this Court when it argued that the deer statement was meaningless and it successfully obtained a ruling excluding the statement. This statement was a key piece of evidence showing that Fulks did not strike the fatal blow that killed Alice Donovan. This would have been powerful testimony during the Fulks trial and would likely have led the jury to a different conclusion about Petitioner's moral responsibility for Donovan's death.

Accordingly, the deposition of Sheriff Hewitt is necessary to determine what he reported about the statement, to whom he reported it, when he reported it, and what his perception was at the time the statement was made.

### III. CONCLUSION

This Court should grant Petitioner leave to conduct the deposition of Sheriff Hewitt. As the attached transcripts demonstrate, Petitioner has raised serious issues regarding the government's use of inconsistent theories and positions and thus has demonstrated good cause. In the Fourth Circuit, "good cause is shown if the petitioner makes a specific allegation that shows reason to believe that the petitioner may be entitled to relief." Quesinberry v. Taylor, 162 F.3d 273, 279 (4th Cir. 1998). Under this standard, the Court should order the Sheriff's deposition.

Respectfully submitted,


/s/ William J. Watkins, Jr.
William J. Watkins, Jr., Federal Bar #7863
WOMBLE CARLYLE SANDRIDGE & RICE, PLLC
550 South Main Street, Suite 400
Greenville, South Carolina 29601
(864) 255-5400

Beattie B. Ashmore, Federal Bar #5215
PRICE, PASCHAL & ASHMORE, PA
644 E. Washington Street
Greenville, SC 29601
(864) 467-1001

Attorneys for Defendant Chadrick E. Fulks

August 27, 2008