# Attachment B

Excerpts of 6/22/04 Fulks trial transcript

1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENC DIVISION

UNITED STATES OF AMERICA,        )        CR. NO. 4:02-992
                                 )        COLUMBIA, SC
                                 )        JUNE 22, 2004
                                 )
     VERSUS                      )
                                 )
CHADRICK E. FULKS                )
          DEFENDANT.             )
_____)


BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.,
CHIEF UNITED STATES DISTRICT COURT JUDGE
JURY TRIAL
VOLUME XVI

APPEARANCES:
FOR THE GOVERNMENT:          STROM THURMOND, JR., USA
                             SCOTT SCHOOLS, AUSA
                             JONATHAN S. GASSER, AUSA
                             UNITED STATES ATTORNEY'S OFFICE
                             1441 MAIN STREET, SUITE 500
                             COLUMBIA, SC  29201
FOR THE DEFENDANT:
                             WILLIAM F. NETTLES, IV, AFPD
                             FEDERAL PUBLIC DEFENDER'S OFFICE
                             MCMILLAN FEDERAL BUILDING
                             401 WEST EVANS STREET, ROOM 240
                             FLORENCE, SC 29503

                             JOHN H. BLUME, III, ESQ.
                             BLUME AND WEYBLE
                             P. O. BOX 11744
                             COLUMBIA, SC  29211

                             SHERRI LYNN JOHNSON, ESQ.
                             1118 AUTUMN RIDGE LANE
                             ITHACA, NEW YORK 14850

COURT REPORTER:              DEBRA R. JERNIGAN, RPR, CRR
                             UNITED STATES COURT REPORTER
                             901 RICHLAND STREET
                             COLUMBIA, SC 29201

STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
*** *** *** *** ***

THE COURT: THEN, WHEN AGENT LONG WAS ON THE STAND, HE TESTIFIED THAT HE WAS PRESENT WHEN MR. FULKS HEARD THE DEBATE ON MR. BASHAM'S MOTION, AND HE SAID THAT HE OBSERVED THE DEFENDANT OBSERVING AND WHAT WAS THE WORD HE USED, IN DETAIL, GRAPHIC DETAIL. HAD AN OBJECTION; WE HAD A SIDEBAR. I THINK THAT IS AS FAR AS YOU NEED TO KNOW IN TERMS OF TELLING THE JURY ABOUT ANYTHING THAT WAS SAID AT THE HEARING. I DON'T THINK THE JURY HEARD ANYTHING ABOUT AGENT LONG'S TESTIMONY ABOUT BASHAM PUTTING ALL THE BLAME ON MR. FULKS; IS THAT RIGHT?

MR. GASSER: THAT'S RIGHT. THERE IS NOTHING THAT HAS SUBSTANTIVELY BEEN PROVIDED THROUGH ANY LETTERS OR TESTIMONY AS TO, SPECIFICALLY, WHAT BRANDON BASHAM WAS SAYING. AND THE REASON WHY, OF COURSE, THE GOVERNMENT WANTED THAT EVIDENCE IS SO THE JURY CAN WEIGH THE CREDIBILITY, VERACITY, AND BIASNESS OF MR. FULKS WHEN HE IS GIVING HIS STATEMENTS IN APRIL OF 2003 AND IN SEPTEMBER OF 2003. BUT NOTHING ACTUALLY, SUBSTANTIVE, AS TO WHAT ACTUALLY MR. BASHAM SAID.

THE COURT: LET ME TURN TO THE DEFENDANTS. WE ARE TRYING THIS CASE SEPARATELY FROM MR. BASHAM ON Y'ALL'S MOTION.

MS. JOHNSON: YES, YOUR HONOR.

THE COURT: WE ARE ON WITNESS 134. PROBABLY 80 PERCENT OF THOSE ARE FROM DISTANT PLACES, AS THE GOVERNMENT PREDICTED. AND THAT MOTION FOR A SEVERANCE WAS PREMISED ENTIRELY ON THE PROPOSITION THAT MR. BASHAM WOULD EXERCISE THE

FIFTH AMENDMENT AND WOULD NOT TESTIFY, AND YOUR CLIENT WOULD EXERCISE THE FIFTH AMENDMENT AND NOT TESTIFY, AND WE LOSE THE OPPORTUNITY TO PRESENT THEIR SIDES OF THE STORY.  SO, WE SEVERED THE CASES.  AND NOW THE DEFENDANT WANTS TO ISOLATE ONE PRECISE,  NOT EVEN A STATEMENT, JUST A FRACTION OF A SENTENCE SAID BY MR. BASHAM BUT DISALLOW ALL THE REST OF IT FROM COMING IN.  YOU TELL ME WHY THAT WOULD BE FAIR.

MR. GASSER:  YOUR HONOR, BEFORE SHE RESPONDS TO THAT, THERE IS ANOTHER THING THE COURT NEEDS TO BE AWARE OF WHAT EVIDENCE HAS BEEN ADMITTED.  AND I KNOW THIS COURT HAS STRUGGLED.  AND I KNOW BOTH SIDES RESPECT THE FACT THAT YOU HAVE STRUGGLED TO TRY TO BE FAIR AND BALANCED IN YOUR DECISION-MAKING.  THE GOVERNMENT CHOSE TO INTRODUCE THOSE LETTERS FOR SPECIFIC REASONS.  BUT THE DEFENSE HAS ALSO GOTTEN A SIGNIFICANT AMOUNT OF AMMUNITION IN THE LETTERS. BECAUSE, IN EVERY ONE OF THOSE LETTERS,  CHAD FULKS IS GIVING HIS VERSION OF EVENTS WHICH IS,  I HAD NOTHING TO DO WITH THIS, BRANDON BASHAM IS THE ONE THAT DID THE KILLING,  I WAS JUST ALONG FOR THE RIDE.

THE COURT:  ALL RIGHT.

MR. GASSER:  THE COURT HAS HEARD MULTIPLE OCCASIONS OF MR. FULKS'S VERSION IN ALL OF THESE LETTERS, WHICH WILL BE BACK IN THE JURY ROOM, IS THAT I WAS JUST ALONG FOR THE RIDE. I EVEN PUBLISHED THAT PORTION OF IT WITH MS. FOWLER'S TESTIMONY YESTERDAY ALONG WITH, I WAS IN COURT LAST WEEK AND

YOU WON'T BELIEVE WHAT HE IS DOING.   BUT HE IS ALSO WRITING, I CAN'T BELIEVE I AM IN THIS BIG TROUBLE.   I CAN'T BELIEVE I AM LOOKING AT THE DEATH PENALTY WHEN ALL I DID WAS DRIVE THE CAR.   HE HAS GOTTEN IN VIRTUALLY ALL OF THESE LETTERS TO MS. FOWLER AND MS. SEVERANCE HIS VERSION OF FACTS, HE IS NOT THE TRIGGER MAN OR KILLER.

MS. JOHNSON:   YOUR HONOR, THAT COULD BE THEIR VERSION OR MISVERSION OF THE EVENTS.   IN FACT, THE DEFENDANT OBJECTED. WE OBJECTED TO THE ADMISSION OF ALL OF THOSE LETTERS.   THEY WANTED ALL OF THOSE LETTERS IN.   WE DIDN'T WANT THOSE LETTERS IN.   WE DIDN'T BRING UP ANY OF THAT EXTRA INFORMATION.   IN FACT, WE DIDN'T ASK ANY QUESTIONS ABOUT ADDITIONAL MATERIALS IN WHICH HE DENIED ANYTHING.   THAT IS, TOTALLY, WHAT THEY ASKED THE WITNESSES.

AND I ALSO WOULD LIKE TO POINT OUT,   YOUR HONOR, THAT, IN FACT, THIS IS NOT THE ONLY STATEMENT IN WHICH MR. BASHAM HAS SAID INCULPATORY THINGS.   HE HAS SAID INCULPATORY THINGS TO A RANGE OF SNITCHES, AS WELL.   WITH RESPECT TO THE PEOPLE IN THE PRISON,   IT IS TRUE THAT HE SAID A VARIETY OF THINGS THAT ARE CONFLICTING THINGS.   AND WE ARE NOT ASKING, AT THIS TIME, FOR ALL OF THOSE STATEMENTS TO COME IN.   I AM JUST ALERTING YOUR HONOR, TO THE FACT THAT THERE ARE ACTUALLY OTHER INCULPATORY STATEMENTS, AS WELL.   BUT THOSE ARE MORE OF A TYPE FOR WHICH THERE ARE ALSO EXCULPATORY STATEMENTS.

THIS STATEMENT WAS MADE TO A LAW ENFORCEMENT OFFICER.

COLLOQUY

THERE IS NO DISPUTE ABOUT WHAT WAS SAID. THERE IS SOME DISPUTE ABOUT WHAT IT MEANT, ALTHOUGH, AS I POINTED OUT TO YOUR HONOR EARLIER, THE GOVERNMENT, ITSELF, WAS ARGUING THAT ITS MEANING WAS CLEAR ENOUGH IT SHOULD BE ABLE TO GO TO THE JURY IN MR. BASHAM'S TRIAL. IF ITS MEANING IS CLEAR FOR MR. BASHAM'S TRIAL, IT IS CLEAR IN THIS TRIAL. OR IT IS CLEAR ENOUGH FOR THE JURY TO WAIT FOR WHATEVER ALLEGATION --

THE COURT: THE GOVERNMENT ARGUED IT IS INCULPATORY TO MR. BASHAM. IT DIDN'T MEAN IT WAS EXCLUSIVELY GIVEN ON THE PART OF MR. BASHAM. HE COULD HAVE SAID, HERE I HAVE KILLED A DEER, HERE I AM, I HAVE HELPED MR. FULKS KILL THIS LADY.

MS. JOHNSON: THEY CAN ARGUE THAT TO THE JURY NOW, JUST LIKE THEY CAN ARGUE TO THE JURY LATER.

THE COURT: WHY SHOULD I BE SELECTIVE AND ADMIT PART OF WHAT MR. BASHAM SAID HERE AND NOT ALL OF IT?

MS. JOHNSON: BECAUSE YOU LET IN INFORMATION THAT HAS TOLD THE JURY THAT MR. BASHAM IS BLAMING MR. FULKS.

THE COURT: THAT IS A CHANGE OF COURSE. THAT IS AFTER I RAISED THAT ARGUMENT EARLIER TODAY BECAUSE THAT WAS NOT THE BASIS ON WHICH YOU SOUGHT TO HAVE IT ADMITTED EARLIER.

MS. JOHNSON: WELL, YOUR HONOR, IT IS NOT THE BASIS ON WHICH WE SOUGHT TO HAVE IT ADMITTED, THAT IS CLEARLY TRUE. THE BASIS ON WHICH WE SOUGHT TO HAVE IT ADMITTED, IT IS A DECLARATION AGAINST PENAL INTEREST. IT MIGHT BE EXCITED

UTTERANCE, AS WELL.   THE BASIS ON WHICH WE ASKED TO HAVE IT ADMITTED IS THAT IT IS ADMISSIBLE EVIDENCE.

BUT YOUR HONOR IS RIGHT IN CONSIDERING HOW TO BALANCE ALL OF THESE THINGS.   THE FACT THAT THIS INFORMATION CAME IN OVER THE DEFENDANT'S OBJECTION THAT MR. BASHAM WAS BLAMING MR. FULKS, MAKES IT A ROUNDER PICTURE TO LET THAT INFORMATION, THAT ONE STATEMENT IN, AS WELL.

THE COURT:   LET ME READ A SENTENCE FROM Y'ALL'S MOTION TO SEVER THESE CASES.

"ACCOMPLICE CONFESSIONS ORDINARILY ARE INHERENTLY UNTRUSTWORHTY BECAUSE, PRECISELY, THEY ARE NOT UNAMBIGUOUS TO THE PENAL DECLARANT." QUOTING FROM THE LILLIE CASE OUT OF THE SUPREME COURT.   THAT IS FROM Y'ALL'S BRIEF.

MS. JOHNSON:   YES.

THE COURT:   YOU SAID THESE CONFESSIONS WERE INHERENTLY UNTRUSTWORTHY.

MS. JOHNSON:   THOSE THAT ARE ACTUALLY PINNING BLAME ON THE CODEFENDANT.   AND THIS ONE HAS THOSE INDICIA RELIABILITY.   IT IS A STATEMENT AGAINST PENAL INTEREST.   IT DOESN'T BLAME MR. FULKS AT ALL BY ITS TERMS.   THAT IS WHAT TAKES IT OUTSIDE OF THOSE KIND OF REMARKS.

ALSO, THE OTHER PROBLEM WITH THOSE IS, ALL OF THOSE

COLLOQUY

STATEMENTS ARE MADE FROM THE COURT ARE MADE IN THE CONTEXT OF WHEN THE GOVERNMENT WISHES TO ADMIT A STATEMENT THAT IS OF MIXED VALUE.   HERE, IT IS A COMPLETELY DIFFERENT SITUATION. THE DEFENDANT IS PROFFERING A STATEMENT THAT, APPARENTLY, BOTH THE GOVERNMENT AND THE DEFENDANT THINK IS ENTIRELY UNFAIR BOTH TO MR. FULKS AND UNFAVORABLE TO MR. BASHAM.   UNFAVORABLE TO BOTH.

MR. BLUME:  JUST ONE ADDITIONAL FACT.   I DIDN'T MEAN TO INTERRUPT YOU, SCOTT.   TO CLARIFY ONE THING.   THE GOVERNMENT SAID MAYBE YOU CAN DRAW A DIFFERENT INTERPRETATION FROM THAT.   BUT I THINK WHEN AGENT LONG TESTIFIED, WHILE IT WAS -- HE WAS SAYING, YEAH,  IT WAS GRAPHIC, HE DIDN'T GET THE DETAIL OF IT, THE ONLY LOGICAL INFERENCE THE JURY COULD HAVE DRAWN FROM THE TESTIMONY IN ITS ENTIRETY IS MR. BASHAM WAS DUMPING THE BLAME ON MR. FULKS.  WHAT AGENT LONG ACTUALLY SAID WAS -- IN TESTIMONY WAS, WELL, I WAS WATCHING MR. FULKS REALLY CLOSE BECAUSE I WANTED TO SORT OF SEE WHAT HIS REACTION WOULD BE.   AND HOW HE WAS GOING TO REACT BECAUSE THE TESTIMONY WAS,  I DON'T REMEMBER IF HE SAID GRAPHIC,  I REMEMBER WE GOT IN A DISPUTE ABOUT THAT.   THAT WAS THE GIST OF IT.   SO,  I THINK IN ITS ENTIRETY, THE ONLY CONCLUSION YOU COULD DRAW FROM THAT,  YOU KNOW,  I WAS WATCHING HIM REAL CLOSE.   THIS WAS SOME PRETTY GRAPHIC INFORMATION.   I WANTED TO SEE WHAT HE DID.   I THINK ANY LOGICAL PERSON WOULD ASSUME THAT WHAT THAT MEANT WAS,  YOU KNOW,  BASHAM WAS PUTTING HEAT AND

COLLOQUY

THE BLAME ON MR. FULKS. SO, WHILE I AGREE WITH MR. GASSER'S ACCOUNT OF WHAT WAS ACTUALLY SAID, I THINK, IN TOTAL, IT WAS BEING CLAIMED THAT MR. BASHAM WAS PUTTING THE BLAME ON MR. FULKS.

THE COURT: MR. SCHOOLS.

MR. SCHOOLS: YOUR HONOR, IF WE WERE TO STAND UP IN BRANDON BASHAM'S TRIAL AND ATTEMPT TO OFFER THE TESTIMONY OF SHERIFF HEWITT WITH RESPECT TO THAT ONE STATEMENT AND NOT OFFER THE REST OF THAT CONFESSION, AND THEN ARGUE THAT MR. HARRIS AND MR. SWERLING COULD NOT OFFER, UNDER THE RULE OF COMPLETENESS AS A RESULT OF FAIRNESS, AND YOU AGREED WITH US ON THAT, THAT CASE WOULD COME SCREAMING BACK FROM THE FOURTH CIRCUIT SO FAST IT WOULD KNOCK US ALL BETWEEN THE EYES. THE REASON IS IS THAT STATEMENT IS TAKEN OUT OF CONTEXT, FIRST OF ALL. IT HAS NO MEANING. IT DOESN'T CONTRAINDICATE. IT DOESN'T CONTRADICT THE TESTIMONY BECAUSE, IN CONTEXT, YOU HAVE TO PUT IT IN CONTEXT. AND WHAT THEY WANT TO USE THAT STATEMENT TO PROVE, APPARENTLY, IS THAT MR. BASHAM WASN'T PUTTING ALL THE BLAME ON MR. FULKS WHEN, CLEARLY, HE WAS. I MEAN, IT DOESN'T CONTRADICT THAT TESTIMONY UNLESS YOU TAKE IT OUT OF CONTEXT AND GIVE IT A MEANING IT DIDN'T HAVE IN CONTEXT. THAT IS THE ONLY WAY THAT IT COULD EVEN POSSIBLY DO WHAT THEY SUGGEST IT DOES.

THE COURT: THAT IS WHAT I SAID EARLIER. HE MIGHT HAVE BEEN PREPARING TO SAY, I HAVE NEVER EVEN KILLED A DEER,

BUT HERE I HAVE.

MR. SCHOOLS:   I HELPED CHAD HIDE THESE BODIES.

THE COURT:   HERE, I HAVE HELPED MY CODEFENDANT KILL ONE, I HELPED BURY A DEAD BODY, I HELD THE WOMAN DOWN WHILE SHE WAS KILLED.   HE COULD HAVE SAID A NUMBER OF THINGS THAT STILL INCULPATED MR. FULKS.

MR. SCHOOLS:   ALSO, THAT TESTIMONY WAS ADMITTED FOR A VERY LIMITED PURPOSE.   IT WASN'T ADMITTED EXCEPT TO SHOW THE INFORMATION WAS AVAILABLE TO MR. FULKS AT THE TIME HE MADE HIS CONFESSIONS, WHICH AFFECTED, OBVIOUSLY, THE ABILITY OF HIM TO FASHION A STORY THAT WAS DIFFERENT THAN BRANDON BASHAM IN A MEANINGFUL WAY.   BECAUSE, AT THAT POINT, THE GOVERNMENT HAS THEORIZED ALL ALONG, MR. FULKS WAS TRYING TO.   THE MENTALITY IS HE HAS TO TELL A STORY DIFFERENT THAN THE STORY BRANDON BASHAM TOLD.   THE COURT HAS ALLOWED TESTIMONY TO COME IN WITH RESPECT TO THIS.   MR. FULKS HEARD MYSELF AND OTHERS CHARACTERIZE MR. BASHAM'S STATEMENTS AS TO SOME EXTENT DEMONSTRABLY, DEMONSTRABLY FALSE.   COULD PROVE FACETS OF THEM FALSE.

THE COURT:   SUCH AS SLASHING THE THROAT IN THE TRUNK, AND AFTER TESTING, AND NO BLOOD IN THE TRUNK.

MR. SCHOOLS:   THAT IS MUCH MORE EFFECTIVE REBUTTAL. THE REASON WHY THE EVIDENCE WAS ADMITTED INSTEAD OF SOME OUT OF CONTEXT STATEMENT THAT SUGGESTS THAT BRANDON BASHAM DID SOMETHING THAT BRANDON BASHAM DID NOT DO, BRANDON BASHAM HAS

NEVER SAID, I KILLED THOSE WOMEN.   HE SENT A LETTER TO BETH MCGUFFIN.   HE SAID HE WAS SORRY HE HELPED CHAD TO DO THAT STUFF.   HE HAS NEVER SAID, I KILLED THOSE WOMEN.

THE COURT:   PUT THIS REFERENCE TO KILLING THE DEER IN CONTEXT FOR ME.   THIS WAS ALMOST CONTEMPORANEOUSLY AT THE TIME HE WAS PUTTING ALL OF THE BLAME FOR THE ACTUAL DEATH ON MR. FULKS,   RIGHT?

MR. SCHOOLS:   IT WAS THE SAME DAY.

THE COURT:   IT IS NOT AS THOUGH HE CAME IN ONE DAY AND HAD A CHANGE OF HEART AND SAID, I WILL DO A 180-DEGREE TURN, SAY I DID IT.

MR. SCHOOLS:  HE PREVIOUSLY PUT,  AS YOU WILL RECALL, HIS STORY EVOLVED.  IT WENT FROM MR. FULKS TAKING ALICE DONOVAN SOMEWHERE AND LEAVING HER IN A LOCATION THAT MR. BASHAM WAS UNAWARE OF.   IT CHANGED TO MR. FULKS TAKING ALICE DONOVAN SOMEWHERE WHERE MR. BASHAM MAY HAVE BEEN PRESENT FOR PART OF IT.   THEN HE WAS TAKING US OUT ON THE SEARCH DURING WHICH HE WAS INSTRUCTED NOT TO TALK ABOUT ANYTHING OTHER THAN LOCATION OF REMAINS.   AND THEN IT WAS, AT THE END OF THAT DAY, IN THAT CONTEXT, THAT HIS LAWYERS ADVISED THAT THE FULL STORY FROM MR. BASHAM WAS THAT MR. FULKS HAD SLIT ALICE DONOVAN'S THROAT IN THE BACK OF THE CAR OR AT LEAST SLIT IT AND PUT HER IN THE BACK OF THE CAR.   THE SEQUENCING OF ALL OF THAT IS NOT ALL THAT CLEAR.   BUT THE FACT THAT MR. FULKS HAD SLIT ALICE DONOVAN'S THROAT WAS CLEAR.   THAT IS PART OF WHAT

HE WAS SAYING.

I JUST CAN'T IMAGINE HOW, IF THESE SHOES WERE ON BETTER FEET, THE GOVERNMENT WAS TRYING TO DO THIS, THIS WOULD BE SUCH AN EASY ISSUE FOR THE COURT. WHAT WE WOULD BE TRYING TO DO IS CREATE AN INFERENCE THAT IS NOT TRUE. AND MS. JOHNSON KEEPS SAYING THAT, WELL, THE GOVERNMENT SUGGESTED IT WAS INCRIMINATING, AND IT WAS. BUT YOU HAVE TO PUT ALL OF THAT IN THE CONTEXT. WE WOULD NEVER DREAM ABOUT SEEKING TO DO WHAT THEY ARE TRYING TO DO RIGHT NOW BECAUSE IT WOULDN'T, IT JUST WOULDN'T BE FAIR BECAUSE WE WOULD REALIZE THAT, WHILE THAT COMMENT MAY SPEAK TO SOME LEVEL OF CULPABILITY ON MR. BASHAM'S BEHALF, IT DOESN'T DO ANYTHING MORE THAN THAT. IT DOESN'T SAY HE KILLED HER, IT DOESN'T SAY THAT. IT WASN'T FEELING TERRIBLY ABOUT HAVING SOME OTHER ROLE IN THE OFFENSE. I MEAN, AFTER ALL, THE EVIDENCE IS CLEAR THAT MR. BASHAM IS THE ONE THAT CLIMBED IN ALICE DONOVAN'S CAR AT GUNPOINT, FORCED HER TO DRIVE OUT OF THAT PARKING LOT. HE COULD HAVE BEEN TALKING ABOUT THAT. HE COULD HAVE BEEN TALKING ABOUT ANYTHING. THE PROBLEM IS, THE DEFENDANT WANTS TO LIMIT TO THAT ONE SINGLE INFERENCE, WHICH IS TAKING IT OUT OF CONTEXT.

MS. JOHNSON: I WILL BE BRIEF. I WANT TO MAKE TWO FACTUAL POINTS. ONE OF WHICH IS THE RULE OF COMPLETENESS DOESN'T APPLY HERE. THIS IS THE ONLY THING THAT MR. BASHAM, HIMSELF, SAID. OTHER THINGS WERE SAID TO HIS LAWYERS HOURS SEPARATED IN TIME. AND THE SECOND --

COLLOQUY

THE COURT:    OTHER THINGS WERE SAID WHAT?

MS. JOHNSON:    BY HIS LAWYERS WHICH WERE IN THIS HYPOTHETICAL FORM AT ANOTHER TIME.    THIS IS A SINGLE STATEMENT MADE IN THE CAR BY MR. BASHAM, AND IT IS INTERRUPTED.    AND SO, THERE ISN'T ANY RULE OF COMPLETENESS ISSUE HERE.

THE SECOND THING I WANTED TO SAY IS THAT, WHILE YOU CAN SAY, YOU KNOW, THERE ARE OTHER THINGS SAID ABOUT MR. BASHAM, THERE IS A DEMONSTRATION THAT SOME THINGS WERE FALSE.    THE CRUCIAL QUESTION IS NOT WHETHER SOME THINGS WERE FALSE.    THE CRUCIAL QUESTION IS, DO WE KNOW WHO KILLED OR PARTICIPATED IN THE KILLING OF ALICE DONOVAN?    AND WITH RESPECT TO THAT, THE STATEMENT, I HAVE NEVER KILLED A DEER AND NOW I HAVE, DOES NOT SUGGEST, NOW I HAVE KIDNAPED A WOMAN.    IT SUGGESTS, NOW I HAVE KILLED A WOMAN.

NOW, A JURY MIGHT NOT DRAW THAT INFERENCE.    THEY MIGHT DRAW AN INFERENCE OF, NOW I HAVE HELPED KILL A WOMAN. NOTHING SAID TO THE JURY THUS FAR HAS MADE IT CLEAR THAT MR. BASHAM HAS EVER SAID THAT HE PARTICIPATED IN THE KILLING OF THE WOMEN.    AND THIS STATEMENT MAKES THAT CLEAR.    AND IT DOES JUST ROUND OUT THE PICTURE, AS YOUR HONOR SAID EARLIER.

MR. GASSER:    YOUR HONOR, JUST FACTUALLY, MS. JOHNSON IS INCORRECT.    IF YOU RECALL THE JACKSON VERSUS DENNO HEARING, SHERIFF HEWITT WAS MY WITNESS.    SHERIFF HEWITT TOOK THE WITNESS STAND AND TESTIFIED TO THIS COURT AT THE

COLLOQUY

SUPPRESSION HEARING.   SHERIFF HEWITT TOOK DETAILED NOTES AND DESCRIBED THE STATEMENTS OF WHICH THE COURT HAS NOT RULED ON YET.

THE COURT:  I THOUGHT THERE WERE SOME DIRECT STATEMENTS.

MR. GASSER:  TALKING ABOUT LEADING DOWN THE WAY, SHOWED PHOTOGRAPHS,  TALKED ABOUT THE PURSE STRAP,  TALKED ABOUT CHAD.  HE DEMONSTRATED -- REMEMBER SHERIFF HEWITT DEMONSTRATING, BECAUSE HE WAS IN HANDSHACKLES, DEMONSTRATING HOW BRANDON BASHAM SAID THAT CHAD FULKS TOOK THE PURSE STRAP AND STRANGLED.   SO,  THIS WAS NOT THE ONLY STATEMENT THAT WAS PROVIDED BY BRANDON BASHAM TO LAW ENFORCEMENT.   CERTAINLY, THE ONLY HYPOTHETICAL SITUATION OCCURRED AT THE END OF THE DAY WHEN THEY GOT BACK TO THE CEMETERY.   ALL OF THE OTHER CONVERSATIONS WEREN'T COMING THROUGH MR. LITTLEJOHN OR MR. MONCKTON, THEY WERE COMING FROM THE MOUTH OF BRANDON BASHAM. AND HE WAS WHOLLY CONSISTENT IN ALL OF THOSE STATEMENTS THAT DAY THAT THE PERSON THAT ACTUALLY KILLED ALICE DONOVAN WAS CHAD FULKS.

MS. JOHNSON:  YOUR HONOR,  IF YOU WANT TO HEAR ANYTHING MORE OR NOT.

THE COURT:   I WILL NOT ALLOW THE STATEMENT TO BE INTRODUCED.   I JUST THINK IT IS IMPROPER UNDER THE BALANCING TEST ESTABLISHED BY THE STATUTE.   I FIND THIS DANGER OF CONFUSING THE ISSUES SUBSTANTIALLY OUTWEIGHS ITS PROBATIVE

VALUE. IN ADDITION TO THE OTHER REASONS I HAVE INDICATED EARLIER.

THIS CASE IS BEING TRIED SEPARATELY ON THE DEFENDANT'S MOTION FOR SEVERANCE. WE HAVE TRIED TO DIVORCE THE STATEMENTS OF THE TWO DEFENDANTS FROM EACH OTHER. THE ONLY STATEMENTS I HAVE ALLOWED IN SO FAR ABOUT MR. BASHAM PUTTING THE BLAME ON MR. FULKS CAME FROM MR. FULKS'S LETTERS THAT HE WROTE HIMSELF, SO THERE IS NO CONFRONTATION CLAUSE PROBLEM THERE. AND I DON'T THINK THAT OPENS THE DOOR TO THIS STATEMENT ABOUT KILLING A DEER.

I RESERVE THE RIGHT TO PUT ALL OF THIS IN A WRITTEN OPINION, IF I DEEM IT NECESSARY. BUT I WILL SUSTAIN THE GOVERNMENT'S OBJECTION TO THE REFERENCE BY MR. BASHAM TO KILLING A DEER AND DOT DOT DOT. IN OTHER WORDS, UNFINISHED SENTENCE.

WE STILL HAVE THE, STILL WAITING ON SOME INPUT FROM THE GOVERNMENT REGARDING JURY INSTRUCTIONS. JUST WHEN YOU GET TO IT. STILL WAITING TO HEAR ABOUT THE POLYGRAPH DECLARATIONS.

MR. SCHOOLS: YOUR HONOR, AGENT BRUNING SPOKE WITH JEFF NEWTON OF THE FBI TODAY. HE SAID MR. NEWTON IS SUBSTANTIALLY IN AGREEMENT WITH THE POLYGRAPHER OF THE DECLARATION OF MR. WILLIAMS, OF WHICH I HAD SOME CONCERN. WITH RESPECT TO THAT DECLARATION, WE DON'T HAVE ANY OBJECTION WITH THE COURT, SPECIFICALLY, WITHOUT CROSS-EXAMINATION.

THE COURT: SAY WHAT?