**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**Florence Division**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| | ) | |
| v. | ) | CRIMINAL NO. 4:02-992 |
| | ) | |
| | ) | |
| CHADRICK E. FULKS | ) | |
| | ) | |

**MOTION TO COMPEL THE BUREAU OF PRISONS**
**TO PROVIDE CHADRICK FULKS WITH**
**NECESSARY AND ESSENTIAL MEDICAL TREATMENT**

## I.     MOTION

Chadrick Evan Fulks, by undersigned counsel, respectfully moves the Court to compel the Bureau of Prisons to provide him necessary and essential medical treatment pursuant to the Fifth, Sixth, Eighth and Fourteenth Amendments of the United States Constitution.  At a minimum, Mr. Fulks respectfully requests that this Court compel the Bureau of Prisons have Mr. Fulks examined and treated by a qualified orthopedic physician.

## II.     STATEMENT OF FACTS

Mr. Fulks, a prisoner incarcerated on federal death row at the Special Confinement Unit at United States Penitentiary -- Terre Haute (the "SCU"), suffers from chronic, excruciating pain. Despite repeated requests and pleas for assistance, Mr. Fulks' serious injuries remain ignored and untreated.

Prior to his arrival at the SCU, Mr. Fulks was brutally attacked and beaten by prison guards

at the Lexington County Detention Center in South Carolina.[1] (Fulks Decl. ¶2.)[2] This attack

resulted in a lengthy hospital stay and left Mr. Fulks in a wheelchair several months. (*Id.*) When

Mr. Fulks entered the SCU, he suffered pain from degenerative discs and residual back and head

pain from the attack in 2003. (*Id.* at ¶3, Exh. B.) On April 1, 2008 Mr. Fulks suffered the same

fate and was attacked by a fellow inmate. Despite unambiguous separation orders, Mr. Fulks was

placed in the same area as co-defendant, Branden Basham ("Basham"). (*Id.* at ¶4.) Unexpectedly,

Basham attacked Mr. Fulks by jumping on his back and stabbing him in the head with a shank

made from a pencil. (*Id.*) In addition, once Mr. Fulks fell to the ground, Basham used his

handcuffs to gouge the back of Mr. Fulks' head. (*Id* .) Immediately upon impact, Mr. Fulks felt a

snap in the lower part of his back. (*Id.*)

Following the attack, Mr. Fulks was escorted to the examining room whereupon he was

examined briefly by the SCU's registered nurse. (*Id.* at ¶5.) At this time, his wound was cleaned

and pictures were taken. (*Id.,* Exh. C.) Despite complaints of head pain, the nurse failed to provide

any medication. (*Id.*) As a result, he submitted a sick call request later that day complaining of

back, head, mouth and ear pain. (*Id.* at ¶6, Exh. D.) The following day, nurse practitioner,

Kimberly Klink ("Klink") visited Mr. Fulks and prescribed two antibiotics to treat any potential

sexually transmitted diseases Mr. Fulks may have received as a result of being stabbed with the

shank. Klink did not, however, treat the back and head pain Mr. Fulks complained of in his sick

call request. (*Id.* at ¶7, Exh. E.)

Approximately two days later, while using the bathroom, Mr. Fulks experienced an

electrifying pain in his lower back that traveled through his lower leg. The pain was so

---

[1] A civil suit against the deputies involved in the attack has been filed in the United States District Court for the District of Indiana, Case No. 206-CV-056LSM. (Fulks Decl. ¶ 2, Exh. A.)

[2] "Fulks Decl." refers to the Declaration of Chadrick E. Fulks in Support of Motion to Compel Medical Treatment filed concurrently herewith.

excruciating that it caused Mr. Fulks to vomit. (*Id.* at ¶ 8.) Not having received treatment from his prior sick call request, on April 8, 2008 Mr. Fulks sought treatment once more by submitting another sick call request. (*Id.* at ¶9, Exh. F.) The next day, Klink responded to Mr. Fulks' sick call request but completely disregarded Mr. Fulks' increasingly severe sciatic pain. (*Id.* at ¶10, Exh. G.)

About one week later, on April 17, 2008, Mr. Fulks again reached out for medical treatment complaining of back, head and neck pain. (*Id.* at ¶11.) On April 23, 2008 Klink attempted to visit Mr. Fulks, who was out of his cell in a legal consultation. (*Id.* at ¶12, Exh. H.) Still suffering from excruciating back pain, Mr. Fulks submitted yet another sick call request on May 1, 1008. (*Id.* at ¶13.) He never received a response to this sick call request. (*Id.*) A month had passed since the attack by Basham and Mr. Fulks continued to experience insufferable pain. The pain had become so severe that Mr. Fulks learned to cope by forcing himself to throw up after every meal to minimize the frequency of bowel movements. (*Id.* at ¶14.) When a bowel movement was necessary, Mr. Fulks would ingest a large amount of laxatives to ameliorate the pain and pressure caused by the passing of his stool. (*Id.*)

After nearly one month had passed since the prior visit, Mr. Fulks received a visit from Klink which resulted in a prescription of ibuprofen to alleviate the pain in his head and a prescription renewal of Bisocadyl -- a laxative -- to assist with the pain caused by the bowel movement. (*Id.* at ¶15.) Mr. Fulks resorted to purchasing additional ibuprofen from the canteen because the prescription proved inadequate to alleviate the severe pain he experienced. (*Id.*)

Desperate for medical treatment for his sciatic pain at any cost, Mr. Fulks resorted to starvation. On June 28, 2008 Mr. Fulks refused to eat knowing that it was the SCU policy to visit an inmate on a daily basis if that inmate decline food. (*Id.* at ¶16.) This effort lasted for three days

and proved ineffective.  Although Mr. Fulks was seen each day by Klink, his sciatic pain was not addressed at any of these visits.  (*Id.*)  On July 2, 2008 Mr. Fulks sought medical treatment by submitting another sick call request -- this time complaining of back pain, dizziness and panic attacks.  (*Id.* at ¶17, Exh. J.)   Over the course of the two months since his attack, Mr. Fulks became fearful of additional attacks.  (*Id.*).  In addition, Mr. Fulks moved to a different cell and had to move all his boxes, which only further exacerbated his back injuries.  (*Id.*)  Two weeks later, Klink visited Mr. Fulks and talked to him through his cell door.  (*Id.* at ¶18.)  Without examining the areas he complained of, she merely prescribed another dose of ibuprofen and suggested "stretching" exercises.  (*Id.*, Exh. K.)

By late July 2008, three months after the attack, Mr. Fulks had lost 25 pounds and was sleeping only two to three hours at a time.  (*Id.* at ¶¶19, 20.)  Mr. Fulks sought medical attention once more on July 24, 2008.  (*Id.* at ¶19, Exh. L.)  On August 6, 2008 Klink came to Mr. Fulks and again prescribed another course of ibuprofen despite Mr. Fulks' pleas that something else be done to treat his injury.  (*Id.* at ¶21.)  On August 10, 2008 Mr. Fulks requested that he be seen by a psychologist.  (*Id.* at ¶22, Exh. M.)  The following day a psychologist visited Mr. Fulks diagnosed him with Post Traumatic Stress Disorder.  (*Id*. at ¶23.)  Three days later, on August 14, 2008, Klink came to Mr. Fulks' cell to check the scar on his head.  She checked Mr. Fulks' blood pressure and weight but disregarded, yet again, his back pain.  (*Id.* at ¶24.)

On August 17, 2008 Mr. Fulks submitted another sick call request to see an orthopedic doctor and obtain an x-ray of his lower back.  (*Id.* at ¶25, Exh. N.)  He knew that, based on his degenerative discs and his ruptured tailbone, he needed more than ibuprofen and stretching exercises.  Mr. Fulks' hopes were crushed, however, when he received Klink's response stating that there was only one doctor and that "it may be awhile."  (*Id.* at ¶26, Exh. O.)

On August 25, 2008, more than four months after being attacked by Basham, Dr. Thomas A. Webster, Clinical Director at SCU, visited Mr. Fulks. (*Id.* at ¶27.) Dr. Webster, typically responsible for conducting semi-annual exams on inmates, ignored Mr. Fulks' request that x-rays be taken of his back to determine if additional treatment might be warranted. In fact, Dr. Webster specifically said that examining Mr. Fulks' back was not the purpose of the visit. (*Id.*)

Returned to his cell in the exact same condition and with the exact same excruciating pain he had been experiencing for over nearly five months, Mr. Fulks submitted another sick call for his back pain and dizziness. (*Id.* at ¶28, Exh. P.) Mr. Fulks had recently received a visit from his counsel, William Watkins, who, upon witnessing first hand his client's pain and the impact it had on his physical appearance and every day activities, wrote a letter to Warden Marberry requesting immediate medical attention for Mr. Fulks. (*Id.* at ¶29, Exh. Q.; Watkins Decl. ¶¶2-4, Exh. A.)[3] On September 23, 2008 Warden Marberry responded to Mr. Watkins stating that an investigation revealed Mr. Fulks had been adequately treated. (Watkins Decl. at ¶5, Exh. B.) Warden Marberry claimed that Mr. Fulks' head pain had been properly treated and that Mr. Fulks' back pain, which was allegedly caused solely by lifting boxes, had also been addressed by Klink. Warden Marberry further instructed Mr. Fulks to utilize the sick call procedure for additional treatment. (*Id.*). In accordance with the Warden's recommendation, on September 30, 2008 Mr. Fulks submitted his tenth sick call request seeking medical attention for his back pain. (Fulks Decl. ¶31, Exh. R.)

Despite a few visits from the nurse practitioner, some of which consisted of talking at him through the cell door, Mr. Fulks' attempts to seek medical treatment for his head and back have proven fruitless. To date he continues to suffer from debilitating back pain. He has lost weight and continues to force himself to vomit to avoid bowel movements, which now occur approximately

---

[3] "Watkins Decl." refers to the Declaration of William J. Watkins In Support of Motion to Compel Medical Treatment filed concurrently herewith.

once every eight days.  (*Id.* at ¶33.)  Mr. Fulks no longer sleeps through the night, and when he does sleep at all he lays on a stack of storage boxes propped up by a chair to avoid movement and shooting pain from his back through his leg.  (*Id.* at ¶34.)  Mr. Fulks has also forfeited his privileges to go to the inside or outside Rec because his pain is so severe.

These deplorable conditions have left Mr. Fulks with no alternative but to seek medical treatment by and through the filing of this Motion to Compel.

## III.  MEMORANDUM OF LAW

### A.  Mr. Fulks Suffers From A Serious Medical Condition.

The injuries Mr. Fulks has sustained have had a significant impact on his life.  A serious medical condition is "the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992).*  Moreover, a serious medical need has been defined as "one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."  *Mata v. Saiz,* 427 F.3d 745, 753 (10th Cir. 2005).

Mr. Fulks' sick call requests are replete with descriptions detailing the severity of his back and head pain.  Shortly after the attack Mr. Fulks wrote, "[I]m [sic] also still having really bad back pain to where I have to hold my head just to lay down."  (Fulks Decl. ¶9, Exh. G.)  Mr. Fulks continued to request medical treatment through May and June, and when the SCU continued to ignore his back injury, he became so desperate he resorted to starvation to obtain medical attention for the chronic back pain.  In July, he put the SCU on notice once again of the severity of his back pain by writing:

I really need to be seen.  My back is really messed up!  I tried to move a

legal box during cell moves and it felt like lightning hit me and it hurt so bad that I threw up and I've gotta be seen! This is like my 15th request with no medical attention and I just don't understand why your [sic] leaving me this way. Please see me or just kill me and get it over with!

(*Id.* at ¶17, Exh. J.) Mr. Fulks continued his plea for help by informing the SCU about the impact of his back pain, and on July 24, 2008 wrote:

I don't know what else to do! Ive [sic] put in sick call after sick call and you don't [sic] help me at all! Im [sic] in so much pain that I cant even poop! I've passed out twice from trying to use the restroom so now its [sic] less painful to puke my food back up and doing that takes all the energy from me! What do I have to do to in order to get help? Ill [sic] drop my appeal so you can execute [me] but please give me some medication until then. Please! Please! Please! I cant [sic] deal with this anymore.

(*Id.* at. ¶19, Exh. L.) Willing to barter his life for immediate medical treatment also proved futile so Mr. Fulks again submitted a sick call request specifying what type of treatment he sought -- a thorough examination by a doctor and x-rays of his lower back. (*Id.* at ¶25, Exh. N.) He further informed the SCU:

The pain keeps me from exercising or really from doin [sic] anything. Its [sic] hard to eat, sleep or do every day activities so will you please see me as soon as you can. The pain is so bad that I would rate it a [sic] 8 out of 10....

(*Id.*)

If Mr. Fulks' sick call requests were insufficient to place the SCU on notice of his serious medical condition, which they weren't, Mr. Fulks' refusal to leave his cell (with the exception of attending legal consults), refusal to eat, forced vomiting, weight loss, and sleeping conditions all signified the existence of his chronic, excruciating back pain. The physical manifestations resulting from Mr. Fulks' pain coupled with the dramatic change in Mr. Fulks' daily activities and lifestyle clearly constitute a serious medical condition worthy of a doctor's attention.

**B.** **The Government Has Not Met Its Obligation Of Providing Mr. Fulks With Adequate Medical Treatment.**

To date, despite occasional visits by the nurse practitioner and examinations "through the cell door," the SCU has not met its obligation of providing Mr. Fulks with adequate medical treatment. "The government has an obligation under the Eighth Amendment to provide medical care for those whom it punishes by incarceration." *Lopez v. Smith,* 203 F.3d 1122, 1131 (9th Cir. 2000)(loss of 22 pounds signified a serious medical condition that remained untreated). Indeed, courts have stated that the denial of medical care is inconsistent with contemporary standards of decency. *Estelle v. Gamble,* 429 U.S. 97, 103 (1976)(holding that a prisoner's rights may be violated when prison personnel deny or delay access to needed medical care); *see also Boretti v. Wiscomb,* 920 F.2d 1150 (2nd Cir. 1991)(denying summary judgment for defendant and finding that a prisoner who suffers pain needlessly has a cause of action against those who have deliberately failed to provide medical care); *see also Edwards v. Duncan,* 355 F.2d 993 (4th Cir. 1966)(finding the prison staff wilfully deprived inmate of necessary medical care resulting in irreparable physical damage); *see also Jones v. Lockhart,* 484 F.2d 1192, 1193-94 (8th Cir. 1973)(concluding a prisoner who sustained back injury and was provided pills at the infirmary but denied a visit to the doctor stated a claim of deliberate indifference violating his constitutional rights).

The Bureau of Prisons has deprived Mr. Fulks of basic medical care.. Over the course of the last six months Mr. Fulks has submitted ten sick call requests. Despite the visits he has received in response to some of these requests, no member of the medical staff has addressed Mr. Fulks' back pain, which as detailed, is agonizing and unbearable. The documentation by the medical staff is demonstrative of the complete failure to treat Mr. Fulks' back injury. All documentation related to Mr. Fulks' medical visits have addressed his headaches, yet repeatedly, in every sick call request, Mr. Fulks has begged the SCU to examine and treat his back pain.

The medical records demonstrate the SCU's deliberate indifference to Mr. Fulks' back pain.

| Date | Comments From Medical Staff |
|---|---|
| April 2, 2008 | • No rash, clear speech, 3 cm laceration on back of head. (Fulks Decl. ¶7, Exh. E.) |
| April 9, 2008 | • No acute distress, clear speech, steady gait, no rash or lesions. (*Id.* at ¶10, Exh. G.) |
| June 28, 2008 | • Missed meal, respiratory easy, good skin. (*Id.* at ¶16, Exh. I.) |
| June 29, 2008 | • Perform daily weight and vital signs during Mr. Fulks' refusal to eat. (*Id.*) |
| June 30, 2008 | • Speech clear and understandable, vitals and weight taken, advise Mr. Fulks that he needs to drink water. (*Id.*) |
| July 16, 2008 | • Interview and limited physical examination performed through Mr. Fulks' locked door; suggested elevation and ice for swelling and pain control. (*Id.* at ¶18, Exh. K.) |

The SCU's continued ignorance and neglect of Mr. Fulks' excruciating back pain is further delineated in Warden Marberry's response to William Watkins dated September 23, 2008. Warden Marberry stated her investigation revealed that Mr. Fulks' back pain was the direct result of Mr. Fulks carrying heavy boxes during his cell move. (Watkins Decl. ¶5, Exh. B.) Warden Marberry's position on its medical treatment to date regarding Mr. Fulks' severe back pain indicates that the SCU has completely discounted, if not blatantly ignored, Mr. Fulks' repeated cries for assistance. Time and time again, Mr. Fulks has informed the SCU medical staff that ibuprofen in the prescribed dosage is ineffective in treating his pain. Furthermore, merely examining Mr. Fulks through the cell door, a small window pane to be exact, does not constitute adequate medical treatment.

The SCU's overt and unapologetic refusal to acknowledge and adequately treat Mr. Fulks'

serious medical condition infringes on Mr. Fulks' fundamental constitutional rights. *See Estelle v. Gamble,* 429 U.S. 97, 104 (1976)(concluding that a prison official's deliberate indifference to an inmate's serious medical needs is a violation of the Eighth amendment's prohibition against cruel and unusual punishment); *accord Mata v. Saiz,* 427 F.3d 745, 751 (10th Cir. 2005)(opining that a delay in medical care where the delay results in substantial harm also constitutes an Eighth Amendment violation)(citation omitted). In *Estelle,* the inmate injured his lower back while working. The prison failed to treat his back pain and even disciplined him for his refusal to work. The Court held that the government is under an obligation to provide medical care to those punished by incarceration. *Id.* at 103. Moreover, the Court asserted that "[a]n inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met…[S]uch a failure may actually produce physical 'torture or a lingering death.'" *Id.* Specifically, the Court agreed with the lower court that "an X-ray of the [inmate's] lower back might have been in order and other tests conducted that would have led to appropriate diagnosis and treatment for the daily pain and suffering he was experiencing." *Id.* at 107.

Mr. Fulks requests nothing more than the court's suggestion in *Estelle* - that he be seen by an appropriate specialist (presumably an orthopedic doctor) and that he undergo appropriate tests and x-rays to diagnose and appropriately treat his back pain. Failure to provide immediate medical treatment could result in, if not already has resulted in, substantial harm.[4] *See Mata,* 427 F.3d at 751 (stating that the substantial harm requirement may be satisfied "by lifelong handicap, permanent loss, or considerable pain.")(citation omitted); *see also Edwards,* 355 F.2d at 994 (refusing to comply with the inmate's special diet and exemption from physical exercise resulted in irreparable physical damage).

---

[4] Mr. Fulks has been forcing himself to vomit for over five months. The damage to Mr. Fulks' internal organs, esophagus and digestive system might be irreparable.

**IV.     <u>CONCLUSION</u>**

For all the foregoing reasons, and because Mr. Fulks remains in constant, excruciating pain, he respectfully urges this Court to grant his Motion to Compel Medical Treatment and compel the Bureau of Prisions to provide immediate medical treatment pursuant to his fundamental constitutional rights and in accord with the basic standards of decency this society demands.

Respectfully submitted,

<u>/s/ Beattie B. Ashmore, Federal Bar #5215</u>
Beattie B. Ashmore, Federal Bar #5215
PRICE, PASCHAL & ASHMORE, PA
644 E. Washington Street
Greenville, South Carolina 29601
(864) 467-1001

Attorneys for Chadrick E. Fulks

October 17, 2008