**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION**

| | | |
|---|---|---|
| **United States of America** | ) | |
| | ) | |
| **v.** | ) | **Cr. No. 4:02-992-JFA** |
| | ) | |
| **Chadrick E. Fulks** | ) | |

**OBJECTION OF DEFENDANT CHADRICK E. FULKS TO THE UNITED STATES'
MOTION FOR PRODUCTION OF RECORDS**

The defendant, Chadrick E. Fulks, objects to the January 9, 2009 Motion of the United States

for Production of Records, in which the Government makes the blanket request that this Court order

the production of: (1) all *ex parte* applications for payment of fees in relation to the Fulks case; and

(2) all records of the Office of the Public Defender in relation to time and resources expended in

defending Mr. Fulks. In its brief, six-sentence motion, the Government offers no explanation about

why such expansive access to these materials is necessary for it to be able to respond to the

allegations in Mr. Fulks' § 2255 motion, nor what good faith basis it has to believe that there are any

specific materials contained within these requested records that are responsive to Mr. Fulks' motion.

The government has thus failed to establish good cause for its request and is simply on a "fishing

expedition." Moreover, the Government's request should be denied because it violates the attorney-

client privilege and seeks the confidential work product of Fulks' trial counsel.

**I.      The Government Has Failed to Establish "Good Cause" for its Overly Broad Request.**

Under Rule 6(a) of the Rules Governing § 2255 Proceedings, a party seeking discovery in

§ 2255 proceedings must establish "good cause" for its request. In *Bracy v. Gramley*, 520 U.S. 899

(1997), the Supreme Court discussed the contours of the Rule 6(a) "good cause" requirement,[1] holding that any such requests must relate to "specific allegations" made by the moving party that, if supported, would entitle that party to relief. Here, the moving party is the Government, so the relevant question is whether the Government's discovery request is related to a sufficiently specific allegation that, if supported, would entitle the Government to "relief," i.e., a dismissal of the § 2255 motion.

The Government's motion, however, makes no such specific allegations, nor does it explain with any degree of particularity what it reasonably believes might be in the requested materials that would be responsive to the specific allegations of ineffective assistance raised in the § 2255 motion. At a minimum, the Government should be compelled to give some rationale -- with reference to the particular allegations raised in the § 2255 motion – that justifies the breadth and scope of its request. Rule 6(a) does not permit a party to cast such a wide net in the mere hope that it might ultimately turn up something relevant and probative. Rather, the Government must narrowly tailor its discovery requests, with reference to the specific allegations at issue in the proceeding, in order to satisfy the "good cause" standard. Absent a particularized showing as to why such expansive access to these materials is necessary for it to defend itself against the specific allegations raised in the § 2255 motion, or even what reason it has to believe that these materials contain any information that is responsive to the specific allegations contained in the § 2255 motion, the Government's request should be denied outright.[2] Even if a particularized showing is made, as discussed *infra*, questions

---

[1] Although *Bracy* involved discovery in a § 2254 proceeding, the Rule 6(a) "good cause" requirement is identical for both § 2254 and § 2255 proceedings.

[2] For example, if this were the defendant making a discovery request related to a *Brady* claim, the defendant could not simply ask for "all records relating to time and resources expended

will remain as to the extent to which privileged material must be disclosed.

Additionally, the government has failed to establish the materiality of the information it seeks to obtain. To the extent that the Government is merely attempting to show that counsel expended a certain number of hours or resources on Mr. Fulks' case, such a showing is not dispositive of the specific claims alleged in Mr. Fulks' § 2255 motion. The *Strickland* standard is not satisfied upon a mere showing that counsel "put a lot of time and resources into the case." Rather, the relevant legal test is whether counsel's "investigations into mitigating evidence . . . comprise[d] efforts to discover *all reasonably available mitigating evidence* and evidence to rebut any aggravating evidence that may be introduced by the prosecutor." *Wiggins v. Smith*, 539 U.S. 510, 524 (2003) (emphasis added) (internal quotations marks and citation omitted). In other words, effective assistance cannot be proven simply by showing that counsel put a certain number of hours and resources into the case, because the number of hours expended does not reveal anything about the reasonableness of the investigation. The relevant question, therefore, is not whether counsel did enough work to uncover and present some mitigating evidence about the client, but rather whether counsel's efforts were sufficient to discover "*all reasonably available mitigating evidence*." *Id.*[3]

Here, Mr. Fulks' motion makes specific allegations regarding mitigation information which

---

by the government in prosecuting the defendant" – such a request would be overly broad, and would fail to explain what basis there is for believing that there exists within the requested materials information which would support the defendant's *Brady* claim.

[3] *See also Outten v. Kearney*, 464 F.3d 401 (3d Cir. 2006) (reversing death sentence and finding counsel ineffective for failing to put on *additional* evidence of childhood abuse, despite the fact that similar evidence was presented at trial; given the discrepancy in depth and detail between the trial evidence and the habeas evidence, the court held that the trial presentation omitted reasonably available mitigation information and thus failed to give the jury a comprehensive understanding of the abuse).

trial counsel unreasonably failed to discover and/or present. *See*, *e.g.*, Amended § 2255 Motion and Memorandum in Support at 29-62 (trial counsel unreasonably failed to discover and/or present reasonably available mitigation information regarding Mr. Fulks' mental health problems, cognitive deficiencies and repeated exposure to sexual trauma); id. at 70-84 (trial counsel unreasonably failed to discover and/or present reasonably available mitigation information regarding Mr. Fulks' extensive abuse and neglect at the hands of his parents, including physical and sexual abuse, filthy living conditions, Mr. Fulks' subsequent dependence on alcohol and drugs as a form of self-medication for the trauma he experienced); id. at 138-44 (trial counsel unreasonably failed to discover and/or present reasonably available mitigation evidence regarding co-defendant's Basham's leadership and manipulation of Mr. Fulks to establish Mr. Fulks' lesser culpability); id. at 144-50 (trial counsel unreasonably failed to discover and/or present reasonably available mitigation evidence regarding Mr. Fulks' ability to adapt to a prison setting and low risk of committing future violence in prison). The fact that counsel may have expended time and resources on other aspects of the case is simply not responsive to Mr. Fulks' specific allegations regarding the unreasonableness of counsel's failure to discover and/or present mitigation information on these matters. Thus, the Government has failed to show good cause for why its discovery request should be granted.

## II.  Granting The Government's Blanket Request Would Violate the Attorney-Client Privilege and Invade Confidential Work Product.

Under the South Carolina Rules of Professional Conduct ("SCRPC"),[4] counsel are ethically

---

[4] The South Carolina Rules of Professional Conduct govern attorney conduct in the District of South Carolina. *See* Local Civil Rules for the District of South Carolina, Rule 83.I.08 – Rule of Disciplinary Enforcement IV(b).

obligated not to disclose confidential information relating to the representation of a client. *See* SCRPC Rule 1.6 ("Confidentiality of Information"). This rule protects both the attorney-client privilege and the work product doctrine. *See* Comment to Rule 1.6 at ¶ 5. This duty of confidentiality continues even after counsel's representation of the client has terminated. *See* SCRPC Rule 1.9 ("Duties to Former Clients"); Comment to Rule 1.6 at ¶ 22. The Government's request violates the attorney-client privilege and the work product doctrine, as it explicitly seeks to disclose materials relating to the representation of Mr. Fulks by his counsel, which remain privileged and confidential despite the termination of trial counsel's representation of Mr. Fulks. Therefore, the Government's discovery request should be denied.

Moreover, although counsel may exercise discretion to disclose confidential information in order to respond to claims made against counsel, both the Rules of Professional Conduct and extant caselaw establish that the scope of any such disclosure must be *narrowly tailored* so as not to exceed the scope of the relevant allegation. *See* Comment to Rule 1.6, ¶ 19 ("the lawyer must make every effort practicable to avoid unnecessary disclosure of information relating to a representation, to limit disclosure to those having the need to know it, and to obtain protective orders or make other arrangements minimizing the risk of disclosure"). As the Sixth Circuit has noted:

> The implied waiver in habeas proceedings has typically been the result of a petitioner's assertion of his own counsel's ineffectiveness.
> . . .
> *Implied waivers are consistently construed narrowly. Courts must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.* A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.

*In re: Gregory Lott*, 424 F.3d 446, 453 (6th Cir. 2005) (internal quotation marks and citation omitted) (emphasis added). The Government's expansive and overly broad request clearly exceeds

the scope of such a narrowly tailored disclosure, and therefore should be denied.

**II.     The Authority Cited by the Government Does Not Support its Request**.

The Government relies on *Byram v. Ozmint*, 339 F.3d 203 (4th Cir. 2003), and *United States v. Challoner*, 00-cr-00482, 2008 WL 4211103 (D. Colo. 9/10/08), for the proposition that the court should provide it with copies of all *ex parte* applications for payment of fees in relation to the Fulks case.  Neither of these cases supports the Government's request.

First,  *Byram*  simply does not stand for the proposition that a court may order the clerk's office and/or the public defender's office to disclose to the government all confidential information relating to the representation of a client for purposes of defending against a habeas petition.  Rather, in *Byram*, the Fourth Circuit merely noted that "the record" developed in the habeas proceeding[5] showed that trial counsel billed for a substantial amount of pre-trial work, visited the client frequently, and retained mental health experts as part of its trial preparation.  339 F.3d at 209-10. There is no indication that this information was obtained by the state pursuant to an order opening up all of the *ex parte* filings in the clerk's office and/or all of trial counsel's records in relation to time and resources expended in defending the petitioner.  Rather, it appears that the information was received at an evidentiary hearing, as the *Byram* opinion makes specific reference to testimony given by trial counsel regarding her representation of the petitioner.  As such, the *Byram* case does not serve as authority for the Government's request here.[6]

---

[5] *Byram* involved a § 2254 proceeding.  The opinion, however, is unclear whether the "record" to which the court refers was the record developed in a state post-conviction proceeding, or at a hearing in federal court once the § 2254 petition was filed.

[6] If anything, *Byram* merely demonstrates that there are less intrusive means by which the Government can obtain the information it seeks.

In *Challoner*, a non-capital § 2255 case, the movant generally alleged, *inter alia*, that trial counsel failed to investigate or prepare for trial. In ruling on this claim, the district court *sua sponte* unsealed the *ex parte* applications filed by trial counsel, reasoning that such pleadings were no longer confidential given that the appellate proceedings had concluded. *Challoner*, 2008 WL 4211103 at *6 & n.1. The district court's action, however, appears to have violated written judicial policy regarding the procedures for the release of information pertaining to activities under the Criminal Justice Act. *See* VII Administrative Office of the U.S. Courts' Guide to Judiciary Policies and Procedures, Chapter V, § 5.01(A) ("Procedures for the Release of Information Pertaining to Activities Under the Criminal Justice Act and Related Statutes") (available at http://www.uscourts.gov/defenderservices/Chapter_5.cfm). As Guideline 5.01 makes clear, CJA documents that are placed under seal are to remain under seal until "all judicial proceedings" in the case have been completed. *See* Guideline 5.01 (A) at ¶ 3 ("documents pertaining to activities under the CJA and related statutes maintained in the clerk's open files, which are generally available to the public, may be judicially placed under seal or otherwise safeguarded *until after all judicial proceedings*, including appeals, *in the case are completed* and for such time thereafter as the court deems appropriate.") (emphasis added). Because "a motion under § 2255 is a further step in the movant's criminal case rather than a separate civil action," 1976 Advisory Committee Notes to Rule 1 of the Rules Governing Section 2255 Proceedings, the *Challoner* court erred in reasoning that disclosure was appropriate upon the completion of the direct appeal proceedings. Rather, "all judicial proceedings" are not completed until the § 2255 proceedings are also completed. *See Valentine v. United States*, 488 F.3d 325, 343 n.4 (6th Cir. 2007) ("The legislative history of section 2255 supports the view that 2255 actions are part of the criminal proceedings and that the conviction

or sentence is not 'final' until disposition of the habeas petition.") (internal quotation marks and citation omitted); *United States v. Rivera*, 376 F.3d 86, 92 (2d Cir. 2004) ("a motion under the current version of § 2255 is indeed made in the same criminal case").

Additionally, these Guidelines explicitly state that: "<u>Documentation submitted in support of, or attached to payment claims, is not covered by the law and need not be disclosed at any time.</u>" Guideline 5.01 (B) (emphasis in original).[7] Also, in determining whether attorney payment vouchers should be disclosed upon completion of a trial, the Guidelines identify specific "interests that may require limiting disclosure" that must be considered before such disclosure is made, including safeguarding the defendant's 5th Amendment right against self-incrimination; 6th Amendment right to effective assistance of counsel; the attorney-client privilege; and the work product privilege of the defendant's counsel. Guideline 5.01 (B)(2)(a). None of these interests were considered and/or discussed by the district court in *Challoner* prior to its disclosure of confidential CJA information. Because the *Challoner* court improperly failed to adhere to established judicial policy regarding the release of such information, it should not be relied upon as authority in the instant case. Moreover, given the extensive policy considerations articulated in the Administrative Office of the U.S. Courts' Guide to Judiciary Policies and Procedures, it is respectfully submitted that none of the *ex parte* filings in Mr. Fulks' case should be disclosed until his § 2255 proceeding is concluded.

_____

[7] The reference to "the law" appears to be to 5 U.S.C. § 552 and 5 U.S.C. § 552a. As noted in the AO Guide: "Neither the Freedom of Information Act (5 U.S.C. § 552 ) nor the Privacy Act (5 U.S.C. § 552a) applies to the Judiciary and neither is applicable to requests for release to the public of records and information pertaining to activities under the Criminal Justice Act (CJA) and related Statutes." *See* VII Administrative Office of the U.S. Courts' Guide to Judiciary Policies and Procedures, Chapter V, § 5.01(A). At the very least, this demonstrates both a strong judicial and legislative presumption in favor of maintaining the confidentiality of CJA records, and against disclosure of such materials.

Respectfully submitted,

/s/ Beattie B. Ashmore
Beattie B. Ashmore #5215
Price, Ashmore & Beasley, P.A.
644 East Washington Street
Greenville, SC 29601

/s/ Kirsten E. Small
Kirsten E. Small #10005
Nexsen Pruet, LLC
PO Box 10648
Greenville, US 29603

9

/