1

UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

------------------------------

CHADRICK FULKS,                          CV NO.: 2:06-980
                                         Columbia, SC
          Plaintiff                      February 26, 2009

     -vs-


James Metts, Sheriff, Lexington          TESTIMONY OF MAYRANT,
County; Bernice Mitchell, Deputy         MITCHELL, ALLEN &
Sheriff; Paula Lybrand, Deputy           LYBRAND
Sheriff; Valerie Allen, Deputy
Sheriff; Cain Mayrant, Deputy
Sheriff,

          Defendants

------------------------------

                 BEFORE HON. PATRICK MICHAEL DUFFY
                 UNITED STATES DISTRICT COURT JUDGE
                        JURY TRIAL TESTIMONY


APPEARANCES:


FOR GOVERNMENT:       J. CHRISTOPHER MILLS LAW OFFICE
                      BY:  J. CHRISTOPHER MILLS, ESQ.
                      P.O. Box 5717
                      Columbia, SC   29250

FOR DEFENDANTS        DAVIDSON & LINDEMANN
METTS, MITCHELL,      BY:  WILLIAM H. DAVIDSON, II, ESQ.
ALLEN & MAYRANT:           DANIEL C. PLYLER, ESQ.
                      P.O. Box 8568
                      Columbia, SC   29202

FOR DEFENDANT         VINTON D. LIDE & ASSOCIATES
LYBRAND:              BY:  MICHAEL S. PAULEY, ESQ.
                      P.O. Box 2198
                      Lexington, SC   29071


                                              PA #55

COURT REPORTER:          DANIEL E. MAYO, CSR, RDR
                         Certified Realtime Reporter
                         901 Richland Street
                         Columbia, SC   29201


                 STENOTYPE/COMPUTER-AIDED TRANSCRIPTION

Mayrant - Cross                                    23

Q.  All right.  One of the things in your training is that you are taught just defensive tactics, correct, with an inmate because you are not going to punch him, you are not going to take blows against him, right?

A.  No, I'm not.

Q.  Because that would be out of line, wouldn't it?

A.  Yes.

Q.  That would be improper, wouldn't it?

A.  Yes.

Q.  That would be unconstitutional conduct, wouldn't it?

MR. PAULEY:  Your Honor --

THE COURT:  I sustain that.  Go ahead.

Q.  (MR. MILLS) Now, in South Carolina when an inmate spits on an officer, or attempts to spit on an officer, that's a felony, isn't it?

A.  Yes.

Q.  It's punishable by about 15 years in jail, isn't it?

A.  Yes.

Q.  So you swore out a warrant against Mr. Fulks for doing that, right?

A.  No, I did not.

Q.  Now, I believe you testified that Officer Lybrand directed y'all to put him in the restraint chair?

A.  That's correct.

Q.  All right.  Do you recall in your deposition testifying

Mayrant - Cross                                        28

sequence just like you testified today and at that other trial, right?

A.    That's correct.

MR. MILLS:  One moment, please.

(There was a pause in the proceedings)

Q.    (MR. MILLS) Do you remember in your affidavit saying that he tried to bite you again and tried to kick Officer Allen again?

A.    Yes, I do.

Q.    All right.  But you didn't say that today.

A.    Okay.

Q.    Is that fair?

A.    That's fair.

MR. MILLS:  Thank you, Officer Mayrant.

THE WITNESS:  Thank you.

MR. PLYLER:  Real quick redirect, your Honor.

THE COURT:  All right.  Thank you.

REDIRECT EXAMINATION

BY MR. PLYLER:

Q.    When you had Mr. Fulks on the ground --

A.    Yes, sir.

Q.    -- how many -- which officers were restraining him on the ground?

A.    Myself and Officer Richbourg -- myself and Miss Allen.

Q.    Okay.  And what part of Mr. Fulks were you restraining?

Mitchell - Cross                46

Q. Do you remember in your deposition you were not there when they took the pictures from him?

A. No, I was not there. I was in the area but not in that particular -- I was in that same location but not in that specific area they was in.

Q. Yes, ma'am.

THE COURT: Mr. Mills.

MR. MILLS: Yes, sir.

THE COURT: That's what she said a moment ago.

Q. (MR. MILLS) I'm going to hand you your affidavit --

MR. MILLS: Well, Judge, should I just do the elmo?

THE COURT: Yeah, do the elmo.

Q. (MR. MILLS) You told me that you put the spit mask on him after he was in the restraint chair, right?

A. Yes, sir.

Q. Okay. And did you write up this affidavit?

MR. PLYLER: Objection, your Honor. This affidavit is not an exhibit. He can show it to her.

THE COURT: Well, I was trying to save time. Show it to her, see if that refreshes your recollection.

(There was a pause in the proceedings)

THE WITNESS: Yes, sir, I remember this.

Q. (MR. MILLS) All right. Did you write this affidavit?

A. I think I did, sir.

Q. Okay. So this is something that you wrote up yourself?

Mitchell - Cross                                        47

A.  I didn't write it, sir, but I swore to it.

Q.  So you swore at that time that what you said in this affidavit was true, right?

A.  Yes, sir.

Q.  Okay.  And in this affidavit, I believe on the third page, on 13, you indicated that as they were taking him to a holding cell you put a spit mask on him to prevent him from spitting and kicking, isn't that right?

A.  Yes, sir.  That's what it says in 13.

Q.  I mean, that's what you swore to at that time, right?

A.  Yes, sir.

Q.  And then you later on say he continued to struggle and remain combative while we put him in a restraint chair.

A.  Yes, sir.

Q.  So he was fighting with y'all as he was trying to go into the restraint chair, right?

A.  Yes, sir.

Q.  He was not compliant.

A.  No.

Q.  Correct?  He didn't just sit down in it and not give you any problems, correct?

A.  To my recollection is that I remember inmate still being combative.

Q.  Do you remember him being placed in a cell and kicking the door?

Mitchell - Cross                                    48

A.  Yes, sir.

Q.  You don't say it in your affidavit, do you?

A.  No, sir.

Q.  You didn't say it in your testimony today, did you?

A.  No, sir.

Q.  You didn't say it in your deposition, did you?

A.  No, sir.

Q.  You didn't say it in the trial testimony against Mr. Fulks, did you?

A.  I can't remember.

Q.  You're just now admitting it because I'm asking you for the first time on cross-examination, right?

A.  Yes, sir.

Q.  And you're just agreeing what you heard the other defendants say, aren't you?

A.  I'm recalling what I remember, sir.

Q.  You are not just backing up your other officers.

A.  It's what I remember.

Q.  Now, in a correctional setting it's essential that every officer back up the other officer, right?

A.  Yes, sir.

Q.  You've got to have each others' back, right?

A.  Yes, sir.

Q.  You've got to protect each other and y'all are a unit because you're faced with oftentimes some difficult and unruly

Allen - Cross                                    68

a show of force, three officers on one inmate.  To gain compliance, right?

A.  Correct.

Q.  Now, if you wanted to have a real determined effect for those other inmates so they wouldn't act up, three officers taking free shots at an inmate on the ground sure would teach them a lesson, wouldn't it?

A.  There were no shots being served.

Q.  Did you file any workers' comp for this kick you got on your leg?

A.  No, sir, I did not.

Q.  Now, when you testified at that trial you were testifying for the government, right?

A.  Correct.

Q.  And the government was trying to have Mr. Fulks sentenced to death.

A.  I don't know.

Q.  You don't know.

A.  I don't know what they were trying to get him sentenced to.

        MR. MILLS:  Okay.  Thank you.

        THE COURT:  Anything else?

        MR. PLYLER:  Real brief redirect.

        THE COURT:  All right.

                    REDIRECT EXAMINATION

Lybrand - Cross                                          90

understand that you then walked up into the booking area and went to the phone?

A.   I dealt with some other inmates and let -- like I said, I can't remember if I talked to Richbourg or if I told Sergeant Mitchell that I need to get the pictures back.  They complied with my request.  I handled some inmates, walked back up into the booking desk.  When the tussle started and I got on the phone and I called the United States Marshals Service.

Q.   Could it have been that you dealt with the other inmates and then you came back and discovered the pictures were missing?

A.   I believe I said that.

Q.   Okay.  Well, all right.  I guess -- I'm trying to get the sequence straight.  Did you deal with the photographs, go do the other inmates and come back and discover they were missing?

A.   Yes.

Q.   Okay.  So what you just said about going to deal with other inmates was not correct.

A.   I placed his photos on his personal property of his bin. On the other side of his bin he had his legal papers.  I had set the pictures on his personal property, told him he could fill out envelopes and mail them out and have them sent back into whatever facility he was going into.  At that time he refused to give them to me.  I notified I believe it was Sergeant Mitchell or Officer Richbourg that he had the photos,