Index of Unpublished Decision
(Filed pursuant to Local Rule 7.05(a)(4))

United States v. Deluca, 203 F.3d 823, 2000 WL 1291 (4th Cir. Dec. 30, 1999)

Westlaw.

203 F.3d 823

Page 1

203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.)))**

C
NOTICE: THIS IS AN UNPUBLISHED OPINION.

(The Court's decision is referenced in a "Table of Decisions Without Reported Opinions" appearing in the Federal Reporter. See CTA4 Rule 32.1.

United States Court of Appeals, Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Marilyn S. DELUCA, Defendant-Appellant.
**No. 99-4135.**

Argued Oct. 28, 1999.
Decided Dec. 30, 1999.

Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Claude M. Hilton, Chief District Judge. (CR-98-154).
William Anthony DeStefano, Saul, Ewing, Remick & Saul, Philadelphia, PA, for appellant.

Robert Charles Erickson, Jr., Assistant United States Attorney, Alexandria, VA, for appellee.

ON BRIEF: Maura F. Ratigan, Saul, Ewing, Remick & Saul, Philadelphia, PA, for appellant. Helen F. Fahey, United States Attorney, Daniel L. Bell, II, Assistant United States Attorney, Robert W. Wiechering, Assistant United States Attorney, Alexandria, VA, for appellee.

Before NIEMEYER and WILLIAMS, Circuit Judges, and HAMILTON, Senior Circuit Judge.

OPINION

PER CURIAM.

**\*1** On September 22, 1998, Marilyn DeLuca pleaded guilty pursuant to a plea agreement to one count of mail fraud and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341. Her plea agreement contained an appellate waiver provision waiving her "right to appeal any sentence within the maximum provided in the statute(s) of conviction (or the manner in which that sentence was determined) on grounds set forth in Title 18, United States Code Section 3742 or on any ground whatever, in exchange for the concessions made by the United States" in the plea agreement. (J.A. 139). Marilyn DeLuca's plea agreement also contained a provision leaving to the government's sole discretion the decision of whether to make a motion pursuant to United States Sentencing Guidelines Manual § 5K1.1 (1998) (USSG § 5K1.1) for a reduction in her sentence based upon her substantial assistance to the government. Prior to sentencing, based upon an alleged oral promise the government made her through her counsel, Marilyn DeLuca made a motion for specific performance of the plea agreement seeking to force the government to make a USSG § 5K1.1 motion. The district court denied her motion for specific performance and sentenced Marilyn DeLuca to eighteen months' imprisonment and three years of supervised release.

On appeal, Marilyn DeLuca challenges the district court's denial of her motion for specific performance and makes a Fifth Amendment due process challenge to the district court's finding that the amount of loss for purposes of determining her offense level under United States Sentencing Guidelines Manual § 2F1.1 (1998) (USSG § 2F1.1), the fraud guideline, is $641,000. The government contends the appellate waiver provision in her plea agreement precludes Marilyn DeLuca from making either challenge. In response, Marilyn DeLuca contends the appellate waiver provision is unenforceable on the ground that she did not knowingly, intelligently, and voluntarily agree to it. Alternat-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

203 F.3d 823
203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.)))**

ively, she argues that the appellate waiver provision, by its terms, does not preclude her from challenging the district court's denial of her motion for specific performance or the district court's loss finding with respect to USSG § 2F1.1.

For reasons that follow, we hold that Marilyn De-Luca knowingly, intelligently, and voluntarily agreed to the appellate waiver provision contained in her plea agreement, and therefore, hold the provision is enforceable. We, however, hold that the appellate waiver provision does not preclude Marilyn DeLuca from challenging the district court's denial of her motion for specific performance. But on the merits of that issue, we affirm the district court. We also hold that the appellate waiver provision does not preclude Marilyn DeLuca's due process challenge, but affirm on the merits of that issue as well.

I.

On July 16, 1998, a federal grand jury in the Eastern District of Virginia returned a forty-five count indictment charging Robert DeLuca, his wife Marilyn DeLuca, their son Mark DeLuca, and other employees of American Property Services with various substantive offenses, including mail fraud, allegedly committed in connection with the operation of American Property Services. The indictment also charged the same defendants with conspiracy to commit various substantive offenses, including mail fraud. Robert and Marilyn DeLuca (the DeLucas) owned and operated American Property Services, which also employed their son Mark.

**\*2** Shortly after the grand jury returned the indictment, the government offered Marilyn DeLuca an opportunity to plead guilty to being "willfully blind" to the activities alleged in Count Twenty Five of the indictment in return for the dismissal of all other counts in which she was charged and the dismissal of all counts against her son. Count Twenty-Five charged all of the defendants in the indictment with mail fraud and aiding and abetting mail fraud in violation of 18 U.S.C. §§ 2 and 1341.

Marilyn DeLuca entered into a plea agreement with the government on September 16, 1998. The plea agreement incorporated by reference a stipulated statement of facts as the factual basis for Marilyn DeLuca's plea. The stipulated statement of facts outlined a fraudulent scheme whereby Robert De-Luca caused $641,000 to be diverted from Principal Mutual Life Insurance Corporation (Principal Mutual) to him. From June 1986 until September 1990, Principal Mutual made mortgage loans totaling $56.9 million to businesses owned by the DeLucas. The loans were secured by commercial property owned and managed by the DeLucas. As part of the mortgage agreement, the DeLucas agreed to forfeit their rights to collect rents due on these commercial properties in favor of Principal Mutual in the event their businesses defaulted on the loans.

By July 1994, the DeLucas' businesses had defaulted on the loans. Soon thereafter, Principal Mutual rightfully exercised its option to collect rent from the commercial properties owned by the DeLucas by notifying the DeLucas and the tenants of those properties that all rent due should be paid to Principal Mutual.

Thereafter, Robert DeLuca organized and led a scheme intended to defraud Principal Mutual [of $641,000 as agreed in the stipulated statement of facts] by persuading the tenants to pay all rents due Principal Mutual directly to him and his wife. Robert DeLuca, his agents, and employees fraudulently informed the tenants that the DeLucas would forward the rents they collected to Principal Mutual. After obtaining the rents from the tenants, Robert DeLuca, his agents, and employees converted the rents to the DeLucas' own uses. Marilyn De-Luca admitted that from July 1994 until June 1995,"through her willful blindness she took part" in this scheme to defraud Principal Mutual. (J.A.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

203 F.3d 823

203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.)))**

148). Marilyn DeLuca acknowledged that, pursuant to this scheme to defraud, "the use of the United States mail in furtherance of the scheme was reasonably foreseeable by her."(J.A. 150).

On September 22, 1998, the district court conducted a hearing pursuant to Federal Rule of Criminal Procedure 11 to accept Marilyn DeLuca's guilty plea to Count Twenty Five of the indictment pursuant to the September 16, 1998 plea agreement. After Marilyn DeLuca pleaded guilty, the government debriefed her about the scheme to defraud Principal Mutual, but did not believe that she gave truthful statements. The government also did not believe that Marilyn DeLuca was forthcoming with respect to every matter discussed during her debriefing. Because the government did not believe that Marilyn DeLuca had been truthful and forthcoming with respect to every matter discussed during the debriefing, the government decided in its sole discretion not to make a motion for a reduction in her sentence pursuant to USSG § 5K1.1 for rendering substantial assistance to the government.[FN1] On September 30, 1998, Robert DeLuca pleaded guilty pursuant to a plea agreement to Count One of the indictment, which charged conspiracy to commit various substantive offenses and to defraud the United States.

> FN1. The terms of the plea agreement left to the government's sole discretion the decision of whether to make a motion for a reduction in Marilyn DeLuca's sentence pursuant to USSG § 5K1.1.

**\*3** Upon learning the government intended not to make a motion pursuant to USSG § 5K1.1 on her behalf, Marilyn DeLuca filed a motion for specific performance seeking to compel the government to make such a motion. According to Marilyn DeLuca, the government orally promised as part of the plea agreement to make a USSG § 5K1.1 motion if she pleaded guilty to Count Twenty-Five, allowed herself to be debriefed, and her husband pleaded

guilty. Marilyn DeLuca argued that she met her end of this bargain, and therefore, the government should be forced to meet its end of the bargain. The government denied making the oral promise claimed by Marilyn DeLuca regarding making a USSG § 5K1.1 motion and opposed the motion on the ground that the plea agreement, which contained an integration clause, left to the government's sole discretion the decision of whether it would make a motion for a reduction in her sentence pursuant to USSG § 5K1.1. The government also opposed the motion on the alternative ground that in its good faith view, Marilyn DeLuca failed to render substantial assistance to the government. Following the submission of extensive briefs and sworn affidavits regarding the government's plea negotiations with Marilyn DeLuca, the district court held a hearing on Marilyn DeLuca's motion for specific performance on February 4, 1999. At the conclusion of the hearing, the district court denied the motion on the ground that the unambiguous terms of the plea agreement left to the government's sole discretion the decision of whether to make a motion pursuant to USSG § 5K1.1, which discretion the government exercised in good faith.

The district court sentenced Marilyn DeLuca the next day. At the sentencing hearing, the district court determined Marilyn DeLuca's sentencing range under the Sentencing Guidelines to be eighteen to twenty-four months based upon a total offense level of fifteen and a criminal history category of I. For purposes of determining Marilyn DeLuca's specific offense characteristics under USSG § 2F1.1(b)(1), the district court found that the amount of intended loss under the fraudulent scheme was $641,000. The district court sentenced Marilyn DeLuca to eighteen months of imprisonment and three years of supervised release. This timely appeal followed.

II.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

203 F.3d 823

203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.)))**

We begin our analysis with Marilyn DeLuca's contention that she did not knowingly, intelligently, and voluntarily agree to the appellate waiver provision in her plea agreement. Her argument is without merit.

"A defendant may waive her right to appeal, if that waiver is the result of a knowing and intelligent decision to forgo the right to appeal." *United States v. Broughton-Jones,* 71 F.3d 1143, 1146 (4th Cir.1995) (internal quotation marks omitted). In order to determine whether Marilyn DeLuca knowingly, intelligently, and voluntarily agreed to the appellate waiver provision contained in her plea agreement, we must examine "the particular facts and circumstances surrounding [the] case, including the background, experience and conduct of the accused."*Id.* (internal quotation marks omitted) (alteration in original).

**\*4** Based upon the record before us, we have no trouble in concluding that Marilyn DeLuca knowingly, intelligently, and voluntarily agreed to the appellate waiver provision contained in her plea agreement. At her hearing pursuant to Federal Rule of Criminal Procedure 11, the district court established that Marilyn DeLuca was a sophisticated person with respect to understanding agreements, was represented by counsel at the time she entered into the plea agreement, and had discussed with her counsel the nature of Count Twenty-Five. Marilyn DeLuca personally indicated during the Rule 11 colloquy that she understood the maximum penalties to which she could be subject, understood that any sentence imposed upon her would be affected by the Sentencing Guidelines, and understood that if she did not plead guilty to Count Twenty-Five she would have certain constitutional guarantees such as the right to a speedy and public trial on all counts in the indictment. When the district court specifically questioned her as to whether she understood that under the appellate waiver provision in her plea agreement she was waiving any right to appeal the sentence imposed upon her, she indicated that she did. Furthermore, when the district court specifically questioned her as to whether she had reviewed the entire plea agreement and as to whether the agreement reflected the entire understanding that she had with the government, she responded yes to both questions. Finally, when the district court specifically questioned Marilyn DeLuca regarding the voluntariness of her plea, she denied that anyone had made any promise or threat to induce her to plead guilty.

Viewing all of these circumstances under which Marilyn DeLuca entered her plea, we conclude that her agreement to the appellate waiver provision was knowing, intelligent, and voluntary. Our decision in *Broughton-Jones,* 71 F.3d at 1146, compels this conclusion. In *Broughton-Jones,* the defendant challenged the validity of the appellate waiver provision contained in her plea agreement on the ground that she did not knowingly, intelligently, and voluntarily agree to it. *See id.*The Rule 11 colloquy in *Broughton-Jones* was identical in all material respects to the Rule 11 colloquy in this case except that in *Broughton-Jones* the district court did not specifically question the defendant about the appellate waiver provision as the district court did in this case. *See id.*Under the circumstances in *Broughton-Jones,* we concluded that the defendant's agreement to the appellate waiver provision contained in her plea agreement was knowing, intelligent, and voluntary. *See id.*The fact that Marilyn DeLuca personally indicated in response to questioning by the district court that she understood that under the appellate waiver provision in her plea agreement she was waiving any right to appeal the sentence imposed upon her is just additional evidence, not present in *Broughton-Jones,* of the knowing, intelligent, and voluntary nature of her waiver. In sum, we hold that Marilyn DeLuca's agreement to the appellate waiver provision contained in her plea agreement was knowing, intelligent, and voluntary. Therefore, the provision is enforceable.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

203 F.3d 823
Page 5

203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.)))**

III.

**\*5** Having concluded that the appellate waiver provision contained in Marilyn DeLuca's plea agreement is enforceable, we next address the government's argument that the same provision precludes her from challenging the district court's denial of her motion for specific performance. Without deciding whether a defendant can ever validly waive in a plea agreement his or her right to make a motion for specific performance to force the government to perform its obligations under a plea agreement, we hold that the language of the appellate waiver provision in Marilyn DeLuca's plea agreement does not preclude her from challenging the district court's denial of her motion for specific performance.

Our interpretation of Marilyn DeLuca's plea agreement is guided by contract law. *See United States v. McQueen,* 108 F.3d 64, 66 (4th Cir.1997); *United States v. Peglera,* 33 F.3d 412, 413 (4th Cir.1994). Thus, we next examine the language of the appellate waiver provision contained in Marilyn DeLuca's plea agreement to determine whether it precludes her from challenging the district court's denial of her motion for specific performance. *See id.*

The language at issue in the plea agreement is as follows:

The defendant is aware that Title 18, United States Code, Section 3742 affords a defendant the right to appeal the sentence imposed. Acknowledging all this, the defendant knowingly waives the right to appeal any sentence within the maximum provided in the statute(s) of conviction (or the manner in which that sentence was determined) on the grounds set forth in Title 18, United States Code, Section 3742 or on any ground whatever, in exchange for the concessions made by the United States in this plea agreement.

(J.A. 139). When examined carefully, this language, while broad in scope, does not preclude Marilyn DeLuca from challenging the district court's denial of her motion for specific performance on the part of the government. Critically, her agreement to waive her right to appeal any sentence imposed is in exchange for the concessions made by the government in the plea agreement. Here, Marilyn DeLuca seeks to enforce what she contends is one of those concessions-*i.e.,* the government's alleged oral promise as part of the plea agreement to make a motion for a reduction in her sentence pursuant to USSG § 5K1.1 if she pleaded guilty, allowed herself to be debriefed about the fraudulent scheme, and her husband pleaded guilty. Thus, the appellate waiver provision does not prevent her from seeking to enforce this alleged obligation of the government under the agreement. *See United States v. Hicks,* 129 F.3d 376, 380 (7th Cir.1997) (recognizing that when a plea agreement contains an appellate waiver provision with respect to a defendant's sentence, the "defendant should be allowed to appeal on the narrow issue of whether the government has breached its responsibilities under the plea agreement").

IV.

Having concluded that the appellate waiver provision does not preclude our review of the district court's denial of Marilyn DeLuca's motion for specific performance, we now address that issue on the merits. USSG § 5K1.1 provides:

**\*6** Upon motion of the government stating that the defendant has provided substantial assistance in the investigation or prosecution of another person who has committed an offense, the court may depart from the guidelines.

(a) The appropriate reduction shall be determined by the court for reasons stated that may include, but are not limited to, consideration of the fol-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

203 F.3d 823
203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.)))**

lowing:

(1) the court's evaluation of the significance and usefulness of the defendant's assistance, taking into consideration the government's evaluation of the assistance rendered;

(2) the truthfulness, completeness, and reliability of any information or testimony provided by the defendant;

(3) the nature and extent of the defendant's assistance;

(4) any injury suffered, or any danger or a risk of injury to the defendant or his family resulting from his assistance;

(5) the timeliness of the defendant's assistance.

*Id.*

As a general matter, the decision whether to make a motion for a reduction in a defendant's sentence pursuant to USSG § 5K1.1 for rendering substantial assistance to the government is committed to the unbridled discretion of the government, and no amount of substantial assistance standing alone will obligate the government to make such a motion. *See United States v. Dixon,* 998 F.2d 228, 230 (4th Cir.1993). We have recognized two limitations, however, on the discretion afforded the government under USSG § 5K1.1: (1) the government may not withhold a USSG § 5K1.1 motion for an unconstitutional reason; and (2) it may not withhold a USSG § 5K1.1 motion that it is obligated to make by the terms of a valid contractual agreement with the defendant. *See United States v. Wallace,* 22 F.3d 84, 87 (4th Cir.1994). The burden of establishing that the government's refusal to make a USSG § 5K1.1 motion violates one of these two limitations on its discretion is on the defendant who seeks to compel the government to make such a motion. *See id.; Dixon,* 998 F.2d at 230.

Marilyn DeLuca does not argue that an unconstitutional reason motivated the government's refusal to make a USSG § 5K1.1 motion on her behalf. Instead, she seeks to enforce an alleged oral promise by the government under the plea agreement, attested to by her counsel in an affidavit, that the government would make a USSG § 5K1.1 motion if she pleaded guilty, allowed herself to be debriefed about the fraudulent scheme, and her husband pleaded guilty. The government denies it made such a promise.

We reject as being without merit Marilyn DeLuca's challenge to the district court's denial of her motion for specific performance. Under our circuit precedent, if the language in a plea agreement " 'is unambiguous as a matter of law, and there is no suggestion of government overreaching of any kind, the agreement should be interpreted and enforced accordingly.' " *United States v. Garcia,* 956 F.2d 41, 43 (4th Cir.1992) (quoting *United States v. Harvey,* 791 F.2d 294, 300 (4th Cir.1986)). Here, Marilyn DeLuca's written plea agreement unambiguously states that it constituted the complete agreement between the United States, her, and her counsel, and that the United States had made no promises or representations except as set forth in writing in her plea agreement. Furthermore, the record contains no evidence of overreaching on the part of the government with respect to the plea negotiations between Marilyn DeLuca and the government. The record also does not contain any evidence of bad faith on the part of the government in refusing to make a USSG § 5K1.1 motion on behalf of Marilyn DeLuca. Finally, when specifically questioned by the district court at her Rule 11 hearing as to whether the plea agreement reflected the entire understanding that she had with the government, she responded affirmatively. Under these circumstances, we must enforce the plea agreement as written, *see Garcia,* 956 F.2d at 43, which left to the government's sole discretion the decision of whether to make a USSG § 5K1.1 motion for a reduction of

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

203 F.3d 823
203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.)))**

her sentence. Because Marilyn DeLuca has failed to establish an enforceable promise on the part of the government to make a USSG § 5K1.1 motion on her behalf, we affirm the district court's denial of Marilyn DeLuca's motion for specific performance.

V.

**\*7** Lastly, Marilyn DeLuca challenges the district court's setting the loss amount at $641,000 for purposes of sentencing her pursuant to USSG § 2F1.1 on the ground that it violated her Fifth Amendment due process right not to be sentenced upon materially false information. She makes such a challenge despite the fact that she stipulated the fraudulent scheme involved an actual loss to Principal Mutual of $641,000. She explains that at the time she stipulated to this figure, neither she nor the government knew that the amount of actual loss suffered by Principal Mutual was offset by amounts totaling approximately $400,000 that she and her husband spent maintaining the commercial properties involved. If the loss figure is set at $200,000 for purposes of USSG § 2F1.1, Marilyn DeLuca's sentencing range would decrease from eighteen to twenty-four months' imprisonment to ten to sixteen months' imprisonment.

The Fifth Amendment's Due Process Clause affords a criminal defendant the right not to be sentenced on materially false information, *see United States v. Lee,* 540 F.2d 1205, 1210-11 (4th Cir.1976), and "a defendant's agreement to waive appellate review of his sentence is implicitly conditioned on the assumption that the proceedings following entry of the plea will be conducted in accordance with constitutional limitations." *United States v. Attar,* 38 F.3d 727, 732 (4th Cir.1994). Thus, to the extent Marilyn DeLuca is alleging a violation of her Fifth Amendment due process right not to be sentenced upon materially false information, we may review her challenge despite the appellate waiver provision contained in her plea agreement. *Cf. id.* at 732-33

(holding appellate waiver provision did not preclude defendants from challenging their sentences on ground that the proceedings following entry of their guilty pleas, including their sentencing hearings, were conducted in violation of their Sixth Amendment right to counsel).

USSG § 2F1.1(a) provides a base offense level of six. For losses exceeding $2,000, USSG § 2F1.1(b)(1) provides an enhancement which is dependant upon the greater of (1) the amount of intended loss or (2) the amount of actual loss. *See*USSG § 2F1.1, comment. (n.8) (providing that for purposes of USSG § 2F1.1(b)(1)"if an intended loss that the defendant was attempting to inflict can be determined, this figure will be used if it is greater than the actual loss.").

The record shows that in setting the loss figure at $641,000 for purposes of USSG § 2F1.1(b)(1), the district court did not rely upon materially incorrect information. From our review of the transcript of the sentencing hearing, we have no doubt that the district court found that the *intended* loss to Principal Mutual amounted to $641,000 and sentenced Marilyn DeLuca under USSG § 2F1.1(b)(1) on that basis. The district court's intended loss finding is amply supported by the stipulated fact contained in the plea agreement by Marilyn DeLuca that "[i]t was part of the scheme to defraud that defendant ROBERT R. DELUCA *would...* obtain approximately $641,000 from Principal Mutual and the said DeLuca tenants by knowingly and fraudulently persuading the tenants to pay rents directly to the DeLucas or their business enterprises instead of them paying them directly to Principal Mutual."(J.A. 148). Because Marilyn DeLuca does not challenge the accuracy of this stipulated fact concerning her husband's activities and was willfully blind to the scheme, we cannot conclude that the district court relied upon materially false information in sentencing Marilyn DeLuca.[FN2]

    FN2. To the extent Marilyn DeLuca chal-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

203 F.3d 823
203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.))
**(Table, Text in WESTLAW), Unpublished Disposition**
**(Cite as: 203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.)))**

lenges the district court's use of the "intended loss" figure as opposed to the alleged lesser "actual loss" figure for purposes of sentencing her under USSG § 2F1.1, this challenge to the district court's application of the Sentencing Guidelines is squarely foreclosed by the appellate waiver provision in her plea agreement.

VI.

**\*8** In sum, we hold: (1) Marilyn DeLuca knowingly, intelligently, and voluntarily agreed to the appellate waiver provision in her plea agreement; (2) the appellate waiver provision in her plea agreement does not prevent this court from reviewing her challenge to the district court's denial of her motion for specific performance; (3) the district court did not err in denying Marilyn DeLuca's motion for specific performance; (4) Marilyn DeLuca's due process challenge to the loss amount found by the district court for purposes of sentencing her pursuant to USSG § 2F1.1 is not precluded by the appellate waiver provision contained in her plea agreement; and (5) the district court's finding that the intended loss of the scheme to defraud Principal Mutual is not based upon materially false information. Accordingly, we affirm the judgment of the district court.

*AFFIRMED.*

C.A.4 (Va.),1999.
U.S. v. Deluca
203 F.3d 823, 2000 WL 1291 (C.A.4 (Va.))

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.