Index of Unpublished and Out-of-Jurisdiction Decisions
(Filed pursuant to Local Rule 7.05(a)(4))

Davis v. Florida, 990 So. 2d 459 (Fla. 2008)

Fudge v. Arkansas, 120 S.W.3d 600 (Ark. 2003)

Illinois v. Holman, 469 N.E.2d 119 (Ill. 1984)

Missouri v. Raspberry, 452 S.W.2d 169 (Mo. 1970)

Ramos v. McNeil, 2009 WL 36599 (N.D. Fla. Jan. 5, 2009)

Scott v. Alabama, 937 So. 2d 1065 (Ala. Crim. App. 2005)

Westlaw.

990 So.2d 459                                                    Page 1
990 So.2d 459, 33 Fla. L. Weekly S381
(Cite as: 990 So.2d 459)

Supreme Court of Florida.
Adam W. DAVIS, Appellant,
v.
STATE of Florida, Appellee.
No. SC06-1444.

June 5, 2008.
Rehearing Denied Sept. 4, 2008.

**Background:** Following appellate affirmance of first-degree murder conviction and death penalty, 859 So.2d 465, defendant sought postconviction relief. The Circuit Court, Hillsborough County, Emmett Lamar Battles, J., denied motion. Defendant appealed.

**Holdings:** The Supreme Court held that:
(1) defendant failed to demonstrate ineffective assistance in counsel's failure to present expert witness to support claim that confession was involuntary;
(2) suppression of confession made following *Miranda* warnings was not required based on officers' alleged conduct in obtaining unwarned confession prior to giving *Miranda* warnings;
(3) defendant failed to demonstrate ineffective assistance in counsel's failure to present expert witness to support voluntary intoxication defense;
(4) defendant failed to establish ineffectiveness in counsel's presentation of mitigation evidence; and
(5) defendant failed to demonstrate that counsel was ineffective in failing to rebut cold, calculated and premeditated (CCP) aggravator.

Affirmed.

West Headnotes

**[1] Criminal Law 110 €─1139**

110 Criminal Law
    110XXIV Review

110XXIV(L) Scope of Review in General
    110XXIV(L)13 Review De Novo
        110k1139 k. In General. Most Cited Cases

**Criminal Law 110 €─1158.36**

110 Criminal Law
    110XXIV Review
        110XXIV(O) Questions of Fact and Findings
            110k1158.36 k. Post-Conviction Relief. Most Cited Cases
On appeal from denial of postconviction motion alleging ineffective assistance of counsel, Supreme Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. West's F.S.A. RCrP Rule 3.851.

**[2] Criminal Law 110 €─1931**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1921 Introduction of and Objections to Evidence at Trial
                    110k1931 k. Experts; Opinion Testimony. Most Cited Cases
Defendant, claiming that his confession was involuntary, failed to establish that trial counsel rendered ineffective assistance in murder prosecution by failing to present an expert to testify as to the coercive effects that sleep deprivation and physical abuse had on him; two officers who interviewed defendant testified that he appeared coherent and not tired. U.S.C.A. Const.Amend. 6.

**[3] Criminal Law 110 €─1931**

110 Criminal Law
    110XXXI Counsel

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459
990 So.2d 459, 33 Fla. L. Weekly S381
**(Cite as: 990 So.2d 459)**

Page 2

110XXXI(C) Adequacy of Representation
   110XXXI(C)2 Particular Cases and Issues
      110k1921 Introduction of and Objections to Evidence at Trial
         110k1931 k. Experts; Opinion Testimony. Most Cited Cases
Defendant, claiming that his confession was involuntary, failed to establish that trial counsel rendered ineffective assistance in murder prosecution by failing to present an expert to testify as to the coercive effect that his age, nineteen years, had on him. U.S.C.A. Const.Amend. 6.

**[4] Criminal Law 110 ☜1931**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1921 Introduction of and Objections to Evidence at Trial
               110k1931 k. Experts; Opinion Testimony. Most Cited Cases
Defendant, claiming that his confession was involuntary, failed to establish that trial counsel rendered ineffective assistance in murder prosecution by failing to present an expert to testify as to effects his LSD use had on giving the confession; defendant failed to demonstrate that he was under the effects of LSD at his confession. U.S.C.A. Const.Amend. 6.

**[5] Criminal Law 110 ☜519(2)**

110 Criminal Law
   110XVII Evidence
      110XVII(T) Confessions
         110k519 Voluntary Character in General
            110k519(2) k. Effect of Prior Involuntary Confessions. Most Cited Cases
Suppression of confession made following *Miranda* warnings was not required based on officers' alleged conduct in obtaining unwarned confession prior to giving *Miranda* warnings, as there was no

attempt by officers to undermine defendant's *Miranda* rights.

**[6] Criminal Law 110 ☜1931**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1921 Introduction of and Objections to Evidence at Trial
               110k1931 k. Experts; Opinion Testimony. Most Cited Cases
Despite defendant's assertion that LSD prevented him from forming the specific intent that first-degree murder requires, trial counsel's failure to present expert to support his voluntary intoxication defense was not deficient assistance for purposes of ineffective assistance of counsel claim in murder prosecution; counsel's strategy was to portray defendant as merely an accomplice after the fact, and counsel had reason to be concerned that an expert would learn things that incriminated defendant as a principal. U.S.C.A. Const.Amend. 6.

**[7] Criminal Law 110 ☜1931**

110 Criminal Law
   110XXXI Counsel
      110XXXI(C) Adequacy of Representation
         110XXXI(C)2 Particular Cases and Issues
            110k1921 Introduction of and Objections to Evidence at Trial
               110k1931 k. Experts; Opinion Testimony. Most Cited Cases
Defendant failed to show prejudice resulting from trial counsel's failure to present expert to support his voluntary intoxication defense in murder prosecution, and thus such failure was not ineffective assistance of counsel, despite defendant's assertion that LSD prevented him from forming the specific intent that first-degree murder requires; expert could not identify any particular hallucination or distortion that defendant had experienced when

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459                                                                                                            Page 3
990 So.2d 459, 33 Fla. L. Weekly S381
**(Cite as: 990 So.2d 459)**

committing or planning the crime, statements about possibilities and unspecified distortions did not undermine confidence in the outcome, and expert's testimony on nature of LSD could have undermined voluntary intoxication argument that counsel was able to make based on statements of other witnesses. U.S.C.A. Const.Amend. 6.

**[8] Criminal Law 110 ☜1922**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1921 Introduction of and Objections to Evidence at Trial
                    110k1922 k. In General. Most Cited Cases
Counsel will not be deemed ineffective for failing to present evidence that would be more harmful than helpful. U.S.C.A. Const.Amend. 6.

**[9] Criminal Law 110 ☜1932**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1921 Introduction of and Objections to Evidence at Trial
                    110k1932 k. Declarations, Confessions, and Admissions. Most Cited Cases
Defendant failed to establish that trial counsel rendered ineffective assistance in murder prosecution by failing to obtain admission of codefendant's confession, as defendant failed to establish what counsel could have done differently to have the evidence admitted. U.S.C.A. Const.Amend. 6.

**[10] Criminal Law 110 ☜1961**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues

110k1958 Death Penalty
                    110k1961 k. Presentation of Evidence in Sentencing Phase. Most Cited Cases
Trial counsel's failure to use psychological expert witness to establish statutory and nonstatutory mitigation in penalty phase of capital murder prosecution was not deficient assistance for purposes of ineffective assistance of counsel claim; expert told counsel that he would have to present damaging facts to the jury if he was called to testify as to mental mitigation. U.S.C.A. Const.Amend. 6.

**[11] Criminal Law 110 ☜1961**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1958 Death Penalty
                    110k1961 k. Presentation of Evidence in Sentencing Phase. Most Cited Cases
Trial counsel's failure to more thoroughly prepare psychological expert for testimony in penalty phase of capital murder prosecution was not deficient assistance for purposes of ineffective assistance of counsel claim; counsel was concerned that if he laid out questions in detail, expert would have to reveal them when later deposed by the State. U.S.C.A. Const.Amend. 6.

**[12] Criminal Law 110 ☜1961**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1958 Death Penalty
                    110k1961 k. Presentation of Evidence in Sentencing Phase. Most Cited Cases
Trial counsel's failure to present additional mitigation evidence in penalty phase of capital murder prosecution was not ineffective assistance of counsel; counsel presented psychological expert and five additional witnesses to support theory that defend-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459
990 So.2d 459, 33 Fla. L. Weekly S381
**(Cite as: 990 So.2d 459)**

ant could be a productive, nonviolent inmate, and that society did not benefit from his execution, and decision not to inundate jury with every fact of defendant's history was trial strategy.

**[13] Criminal Law 110 ☜➝1961**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1958 Death Penalty
                    110k1961 k. Presentation of Evidence in Sentencing Phase. Most Cited Cases
Defendant failed to establish that trial counsel rendered ineffective assistance in penalty phase of capital murder prosecution by failing to rebut cold, calculated and premeditated (CCP) aggravator; many of defendant's statements to expert psychological witness were potentially harmful to defendant's case, defense counsel did not want to elicit harmful testimony from witness, and defendant failed to demonstrate that proposed witness testimony would have helped his case. U.S.C.A. Const.Amend. 6.

**[14] Criminal Law 110 ☜➝1961**

110 Criminal Law
    110XXXI Counsel
        110XXXI(C) Adequacy of Representation
            110XXXI(C)2 Particular Cases and Issues
                110k1958 Death Penalty
                    110k1961 k. Presentation of Evidence in Sentencing Phase. Most Cited Cases
Trial counsel will not be held to be deficient when she makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony. U.S.C.A. Const.Amend. 6.

**\*461** Bill Jennings, Capital Collateral Regional Counsel, and Peter J. Cannon, Assistant CCR Counsel, Middle Region, Tampa, FL, for Appellant.

Bill McCollum, Attorney General, Tallahassee, Florida, and Carol M. Dittmar, Assistant Attorney General, Tampa, FL, for Appellee.

PER CURIAM.

Adam W. Davis was convicted of first-degree murder and sentenced to death for the murder of Vicki Robinson. We affirmed his conviction and sentence on direct appeal. *Davis v. State,* 859 So.2d 465 (Fla.2003). Thereafter, Davis filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.851. We have jurisdiction. *See* art. V, § 3(b)(1), Fla. Const. For the reasons discussed below, we affirm the order of the postconviction court.

We stated the facts of this case in full in Davis's direct appeal, *see Davis,* 859 So.2d at 468-70, but we summarize them again here. At the time of the murder, Adam Davis, then nineteen, and Valessa Robinson, then fifteen, were dating. The two also spent time with Jon Whispel, Davis's friend. Late in the evening of June 26, 1998, the trio met at Denny's, where they all consumed LSD. As they sat at Denny's, Valessa proposed that they kill her mother, Ms. Robinson. Davis suggested that they do so by injecting Ms. Robinson with enough heroin to cause a fatal overdose. The three agreed and left Denny's.

The trio could not acquire heroin, so they instead bought a syringe. They then went to Ms. Robinson's home, where Davis suggested that they inject Ms. Robinson with bleach and an air bubble. After filling the syringe, Davis and Valessa quietly entered Ms. Robinson's room; however, Ms. Robinson woke up. Davis and Valessa retreated to Valessa's room, where Ms. Robinson confronted Valessa.

After this confrontation, Davis put Ms. Robinson in a "sleeper" hold attempting to render her unconscious. Valessa and Davis then held Ms. Robinson

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459                                                                                                Page 5
990 So.2d 459, 33 Fla. L. Weekly S381
**(Cite as: 990 So.2d 459)**

down and injected her with the bleach while Whispel stayed in another room. Ms. Robinson was then stabbed and left for dead. Shortly thereafter, however, Davis heard Ms. Robinson moaning. Davis then left the room with the knife. He later told Whispel that he stabbed Ms. Robinson twice and tried to break her neck. After the final two stab wounds, Davis, Valessa, and Whispel cleaned up the scene and hid the body to conceal the murder.

Eventually, the trio left Tampa, taking Ms. Robinson's credit cards, cash, and ATM cards with them and intending to go to Phoenix, Arizona. On July 2, they were apprehended in Texas. Lieutenant John Marsicano and Detective James Iverson, who had been investigating the case in Florida, interviewed Valessa, Whispel, and Davis in Texas. The officers interviewed *462 Davis around 5:30 a.m. They first spoke to him for approximately eight to ten minutes. The officers then administered Davis's *Miranda*[FN1] warnings, obtained a signed written waiver of rights, and had Davis draw a map indicating where Ms. Robinson's body could be found. The officers then used a tape recorder to record Davis's confession. In that confession, Davis described the planning and commission of the murder and stated that he had stabbed Ms. Robinson.

> FN1. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

Davis was tried and convicted of first-degree murder, grand theft, and grand theft of an automobile. The jury recommended that Davis be sentenced to death, and the trial court followed this recommendation. The court found three aggravating factors, one statutory mitigating factor, and four nonstatutory mitigating factors.[FN2] *State v. Davis,* No. 98-CF-011873 (Fla. 13th Cir. Ct. order filed Dec. 17, 1999). Davis appealed his first-degree murder conviction and sentence of death to this Court, raising nine issues.[FN3] On direct appeal, we denied relief on all nine of Davis's asserted claims and affirmed both the conviction for first-degree

murder and the sentence of death. *Davis,* 859 So.2d 465.

> FN2. The aggravating factors were: (1) Davis was on felony probation when the crime was committed; (2) the crime was heinous, atrocious, or cruel (HAC); and (3) the crime was committed in a cold, calculated, and premeditated manner (CCP). The statutory mitigating factor was the defendant's age at the time of the crime. The nonstatutory mitigating factors were: (1) Davis was under the influence of LSD at the time of the offense; (2) Davis had no prior convictions for assaultive behavior; (3) Davis had a deprived childhood and suffered hardships during his youth; and (4) Davis is a skilled writer and artist and can be expected to make a contribution to the prison community.

> FN3. Davis argued that the trial court erred by (1) denying his motion to suppress statements in his confession; (2) denying his motion to strike venirepersons for cause; (3) excluding Valessa's confession; (4) admitting an autopsy photograph of Ms. Robinson; (5) failing to give an instruction to the jury that it could consider Davis, Whispel, and Valessa's disproportionate sentences as mitigation; (6) finding that the HAC aggravator applied; and (7) finding that the CCP aggravator applied. Davis also argued (8) that imposing the death sentence based on a seven-to-five recommendation was unconstitutional, and (9) that Florida's death penalty scheme is unconstitutional.

In February of 2005, Davis filed a rule 3.851 motion for postconviction relief, primarily attacking the performance of guilt-phase counsel Charles Traina and penalty-phase counsel Rick Terrana.[FN4] The postconviction court held an evid-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459                                                                                                 Page 6
990 So.2d 459, 33 Fla. L. Weekly S381
(Cite as: 990 So.2d 459)

entiary hearing, received evidence on all claims now appealed, and denied relief. Davis now appeals that denial to this Court, raising seven claims. We consider each below.

> FN4. In addition to those claims discussed in this opinion, Davis also argued to the postconviction court the following: (1) trial counsel was ineffective for failing to ensure that the jury would be able to follow the law; (2) trial counsel was ineffective for failing to provide the proper information to the mental health examiner and for failing to ensure that Davis received a proper evaluation under *Ake v. Oklahoma,* 470 U.S. 68, 105 S.Ct. 1087, 84 L.Ed.2d 53 (1985); (3) Davis's right to confront witnesses was denied when hearsay was used to establish one or more of the aggravators; and (4) Davis was denied a reliable sentence when the jury's role was diminished in violation of *Caldwell v. Mississippi,* 472 U.S. 320, 105 S.Ct. 2633, 86 L.Ed.2d 231 (1985). Davis initially filed but later withdrew one additional claim. Davis does not raise any of these claims in this appeal.

## I. INEFFECTIVENESS OF COUNSEL IN SUPPRESSION HEARING

[1] Following the United States Supreme Court's decision in *Strickland v. *463 Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), this Court has held that for ineffective assistance of counsel claims to be successful, two requirements must be satisfied:

First, the claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. Second, the clear, substantial deficiency

shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.

*Maxwell v. Wainwright,* 490 So.2d 927, 932 (Fla.1986). If a defendant fails to establish either requirement, we need only address that unmet prong. *Strickland,* 466 U.S. at 697, 104 S.Ct. 2052 ("[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one."). Because both prongs of the *Strickland* test present mixed questions of law and fact, this Court employs a mixed standard of review, deferring to the circuit court's factual findings that are supported by competent, substantial evidence, but reviewing the circuit court's legal conclusions de novo. *See Sochor v. State,* 883 So.2d 766, 771-72 (Fla.2004).

In Davis's first claim, he argues that his counsel was ineffective for failing to present expert testimony during the suppression hearing. Davis argues that testimony such as that given by his postconviction experts, Dr. Robert Lee Smith and Dr. Janice Stevenson, established that Davis did not knowingly and voluntarily waive his rights or give his confession to the officers in Texas. Specifically, Davis argues that his experts' testimony established that the coercive combination of sleep deprivation, physical abuse, Davis's age, and Davis being under the influence of LSD made his confession involuntary. Because his confession was not voluntarily given, Davis argues that it should have been suppressed and that trial counsel was ineffective for failing to call an expert to achieve this result.

The postconviction court denied this claim based on a review of the testimony from the evidentiary hearing and explained:

The experts' testimony presented at the evidentiary hearing fails to support the argument that Mr.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459
990 So.2d 459, 33 Fla. L. Weekly S381
(Cite as: 990 So.2d 459)

Page 7

Traina's decision to not have an expert for his motion to suppress was deficient. Dr. Smith testified that [Davis] could have had perceptual distortions [from his use of LSD] that could have affected his ability to understand *Miranda* warnings; however, [Dr. Smith] could not explain those distortions. Additionally, Dr. Smith testified that sleep deprivation could have significantly diminished [Davis's] ability to knowingly waive his rights; however, Dr. Smith also admitted that he did not know how much sleep [Davis] had had. Dr. Smith also testified that the effects of LSD generally last for twelve hours, but law enforcement interviewed [Davis] approximately fifteen hours after his arrest. Unless [Davis] consumed LSD while in police custody, he would no longer have felt the effects of LSD when law enforcement interviewed him. Dr. Stevenson testified that [Davis] was at the "mercy of his impulses and his emotions and unable to make a clear and conscious decision" and that he made his confession "so that he wouldn't be alone." However, the fear of being alone does not negate one's ability to comprehend and knowingly waive *Miranda* rights.

*State v. Davis,* Case No. 98-CF-011873 (Fla. 13th Cir. Ct. order filed June 21, **\*464** 2006) (Postconviction Order) at 8. Further, the postconviction court found that Davis had not demonstrated prejudice even if his counsel's performance was in fact deficient, stating:

If Davis's confession had been suppressed, there is no reasonable probability that the results of [his] trial would have been different. *See Wainwright v. State,* 896 So.2d 695, 700 (Fla.2004) [ (finding no prejudice because in addition to defendant's confession to police, State introduced defendant's confession to two inmates and DNA evidence linking defendant to crime) ]. At [Davis's] trial, the State presented the testimony of ... Jon Whispel, who was present during Vicki Robinson's murder. Additionally, Leanna Hayes, an inmate

who was transported back to Florida with Defendant after his arrest, testified at [Davis's] trial that while they were being transported, he told her he had " 'cut her up' meaning the lady he killed."

Postconviction order at 8-9 (record citations omitted). We affirm the postconviction court's denial of relief on this claim.

[2] Davis first alleges that his trial counsel should have presented an expert to testify as to the coercive effects that sleep deprivation and physical abuse had on him. However, we find no error in the postconviction court's determination that Davis was not entitled to relief on these claims. The two officers who interviewed Davis testified that he appeared coherent and not tired. Accordingly, we affirm the postconviction court's denial of relief on these claims.

[3] Next, Davis alleges that counsel should have presented an expert to testify as to the coercive effect of his age, nineteen. To the very limited extent that Davis's experts addressed his age, we find no error in the postconviction court's declining to find counsel ineffective for not arguing that Davis's age of nineteen rendered his confession involuntary. We affirm the denial of this claim.

[4] Finally, Davis argues that his counsel should have presented an expert to testify as to the effects his LSD use had on giving the confession. However, the testimony at the postconviction hearing does not support Davis's claim that he was under the effects of LSD. The postconviction court found that "law enforcement interviewed [Davis] approximately fifteen hours after his arrest." Postconviction Order at 8. This finding is supported by competent, substantial evidence, as both Detective Iverson and trial counsel Traina testified that Davis had been in jail for approximately fifteen hours before his interview. Dr. Smith, however, testified that the effects of LSD generally last only twelve

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459
990 So.2d 459, 33 Fla. L. Weekly S381
**(Cite as: 990 So.2d 459)**

Page 8

hours. Thus, the testimony of Davis's LSD expert failed to support Davis's claim that he was under the effects of LSD when he was questioned. Because Davis has not demonstrated that he was under the effects of LSD at his confession, he did not establish that LSD had a coercive impact on his confession or that counsel was deficient in declining to call an expert to so testify. Accordingly, as with Davis's sleep deprivation, physical abuse, and age claims, we affirm the denial of relief on this claim.

## II. *MISSOURI V. SEIBERT*[FN5] AND FALSE TESTIMONY

> FN5. 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004).

In Davis's second claim, he argues that his confession was taken in violation of the Fifth and Fourteenth Amendments to the United States Constitution as applied in *Missouri v. Seibert,* 542 U.S. 600, 124 S.Ct. 2601, 159 L.Ed.2d 643 (2004). Because *465 *Seibert* was decided after Davis's proceedings, he urges us to apply *Seibert* retroactively. Davis further claims that the State committed violations of *Giglio v. United States*[FN6] and *Napue v. Illinois*[FN7] by knowingly introducing false evidence during the suppression hearing. We affirm the denial of relief on these claims.[FN8]

> FN6. 405 U.S. 150, 92 S.Ct. 763, 31 L.Ed.2d 104 (1972).
>
> FN7. 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1959).
>
> FN8. Davis also argues that if this Court declines to apply *Seibert* retroactively, it should still apply *Seibert* to his case because of *Fiore v. White,* 531 U.S. 225, 121 S.Ct. 712, 148 L.Ed.2d 629 (2001). However, as discussed below, Davis is not entitled to relief under *Seibert* even if

*Seibert* is applicable. Accordingly, we deny this claim.

### A. *Seibert*

[5] The postconviction court denied relief on this claim, explaining:

> [E]ven if *Seibert* applied retroactively, it does not entitle Defendant to relief. In *Seibert,* the United States Supreme Court stated that "[t]he threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function 'effectively' as *Miranda* requires." *Seibert,* 542 U.S. at [611, 124 S.Ct. 2601]. The Florida Supreme Court considered the voluntariness of Defendant's confession on direct appeal and concluded that,

> he circumstances surrounding Davis's warned confession properly 'cured' the condition that rendered the unwarned statement inadmissible. [*Oregon v. Elstad,* 470 U.S. 298, 311, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985) ].... The officers in no way attempted to downplay the significance of Davis's *Miranda* rights.

> *Davis,* 859 So.2d at 472. Based on the Florida Supreme Court's reasoning under *Elstad,* which was the law in effect at the time of Defendant's direct appeal, analysis under *Seibert* would render the same result. It is reasonable to find that the warnings [Davis] received functioned "effectively" as *Miranda* requires.

Postconviction Order at 10-11.

We agree with the postconviction court that our direct appeal decision in this case is consistent with the opinions of the majority of justices in *Seibert* and that application of *Seibert* would not result in the suppression of Davis's confession. In *Seibert,* a plurality opinion, the United States Supreme Court

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459
990 So.2d 459, 33 Fla. L. Weekly S381
(Cite as: 990 So.2d 459)

held that when an officer intentionally questioned a suspect without giving *Miranda* warnings in order to elicit an unwarned confession and then used that unwarned confession to elicit a second warned confession, *Miranda* was violated. The plurality explained:

'The inquiry is simply whether the warnings reasonably 'conve[y] to [a suspect] his rights as required by *Miranda.*' " The threshold issue when interrogators question first and warn later is thus whether it would be reasonable to find that in these circumstances the warnings could function "effectively" as *Miranda* requires.

*Seibert,* 542 U.S. at 611-12, 124 S.Ct. 2601 (citation omitted) (quoting *Duckworth v. Eagan,* 492 U.S. 195, 203, 109 S.Ct. 2875, 106 L.Ed.2d 166 (1989)).

Concurring in result only, Justice Kennedy stated that he would apply a narrower test than the plurality. Instead of subjecting all question-first procedures to the plurality's test, he would apply that test "only in the infrequent case, such as [in *Seibert* ], in which the two-step interrogation*466 was used *in a calculated way to undermine* the *Miranda* warning." *Id.* at 622, 124 S.Ct. 2601 (Kennedy, J., concurring in the judgment) (emphasis added). Otherwise, Justice Kennedy stated that he would apply the Court's earlier decision in *Oregon v. Elstad,* 470 U.S. 298, 105 S.Ct. 1285, 84 L.Ed.2d 222 (1985), as the four dissenters in *Seibert* stated they would do in all cases. *Seibert,* 542 U.S. at 620, 124 S.Ct. 2601 ("In my view, *Elstad* was correct in its reasoning and its result.") (Kennedy, J., concurring in the judgment); *id.* at 628, 124 S.Ct. 2601 ("I would analyze the two-step interrogation procedure under the voluntariness standards ... reiterated in *Elstad.*") (O'Connor, J., dissenting, joined by Rehnquist, C.J., and Scalia and Thomas, JJ.).

On Davis's direct appeal, we held that "[t]he officers in no way attempted to downplay the signi-

ficance of Davis's *Miranda* rights."*Davis,* 859 So.2d at 472. Thus, we have already held that the officers did not use the question-first method "in a calculated way to undermine the *Miranda* warning," as Justice Kennedy required. Because this is not a situation where Justice Kennedy agreed the plurality's test would apply, *Elstad* applies, as the four dissenting justices and Justice Kennedy stated. We specifically relied upon *Elstad* on direct appeal and under it denied Davis's claim. *Davis,* 859 So.2d at 471-72. Accordingly, Davis is not entitled to relief under *Seibert.*

Davis further maintains that we should not reject his claim based on our holding in *Davis* because he has brought pertinent facts to this Court's attention that we were not aware of in his direct appeal. We disagree. The record does not support this claim, and despite repeated invitations to do so at oral argument, Davis's counsel could not identify any circumstances surrounding his confession of which this Court was unaware in *Davis.* Accordingly, we affirm the denial of this claim.[FN9]

> FN9. Because Davis is not entitled to relief under even a retroactive application of *Seibert,* we do not decide whether *Seibert* should be retroactively applied.

### B. *Giglio* and *Napue*

Next, Davis alleges that Detective Iverson's testimony at the original suppression hearing was fundamentally untrue and that the State knowingly allowed this false testimony to remain on the record. Davis alleges that this act was a violation of *Giglio* and *Napue.*

The postconviction court denied relief under this claim. First, the court observed the standard for*Giglio*and *Napue*violations: "To establish a *Giglio* violation, one must show that '(1) some testimony at trial was false; (2) the prosecutor knew that testimony was false; and (3) the testimony was

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459
990 So.2d 459, 33 Fla. L. Weekly S381
**(Cite as: 990 So.2d 459)**

material.' " Postconviction Order at 11 (quoting *Suggs v. State,* 923 So.2d 419, 426 (Fla.2005)); *see also Guzman v. State,* 941 So.2d 1045, 1050 (Fla.2006) (stating the requirements of *Giglio* ). The court then considered Iverson's allegedly false testimony from the suppression hearing:

> Q. [TRIAL COUNSEL] Is there any strategy de-cision or procedure you were following in that case to avoid [giving *Miranda* warnings]?
>
> A. [IVERSON] No, sir, I just didn't think it was necessary during that initial time. If I was going to use what he said at that point in time against him, you know, then I probably would have needed to do that.
>
> Q. [TRIAL COUNSEL] So it was never your in-tention to use the initial portion of the interview then?
>
> *467 A. [IVERSON] That's correct.

Postconviction Order at 9-10.

The postconviction court concluded that Davis had not established that Iverson's testimony at the sup-pression hearing was false. We agree. Iverson testi-fied at the postconviction hearing that he was only trying to establish a rapport with Davis and that he was not trying to avoid giving Davis his *Miranda* warnings. This testimony is consistent with Iver-son's above-quoted testimony from the suppression hearing. Thus, Davis did not establish that Iverson testified falsely. Further, Davis did not establish that the prosecutor knew any testimony was false. Instead, the prosecutor testified at the postconvic-tion hearing that it was "absolutely not the case" that the State knowingly presented false testimony. Postconviction Order at 12. To establish a *Giglio* or *Napue* violation, Davis had to show that some testi-mony was false and that the prosecutor knew it was false. *Guzman,* 941 So.2d at 1050. Davis did not do so. Accordingly, we affirm the denial of this claim.

## III. INEFFECTIVENESS AS TO VOLUNTARY INTOXICATION

[6][7] In Davis's third claim, he argues that counsel Traina was deficient for failing to present an expert to support his voluntary intoxication defense. Davis states that the testimony of his expert, Dr. Smith, establishes that LSD prevented him from forming the specific intent that first-degree murder requires. Davis therefore argues that Traina was deficient for failing to call a witness to substantiate his voluntary intoxication defense. As stated above, to establish ineffective assistance of counsel under *Strickland,* Davis must show that counsel was deficient and that this deficiency prejudiced him.

The postconviction court denied this claim, stating:

> At the evidentiary hearing, Dr. Smith repeatedly testified that Defendant's LSD ingestion would not negate his ability to plan or act purposefully. Dr. Smith testified that Defendant's actions would be based on "distorted perceptions." However, Dr. Smith could not testify as to what the distor-tions would be or give any specific information about the distortions.
>
> Trial counsel's performance in presenting the vol-untary intoxication defense was not deficient. Trial counsel's testimony at the evidentiary hear-ing establishes that given the problems with the plausibility of the defense, counsel presented the defense as best he could. Trial counsel ques-tioned the State's witness about Defendant's LSD use on the night of the murder. Additionally, he argued voluntary intoxication during closing ar-gument and even received a voluntary intoxica-tion jury instruction.... Additionally, trial counsel testified that if he had retained an expert, he was concerned that the State would learn damaging information about [Davis] when the State de-posed the expert.... The record supports the con-clusion that trial counsel made a strategic de-cision not to call an expert to testify about the

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459
990 So.2d 459, 33 Fla. L. Weekly S381
(Cite as: 990 So.2d 459)

voluntary intoxication defense and that the decision was reasonable under the circumstances. Furthermore, Dr. Smith's testimony that [Davis's] LSD use would not affect [his] ability to plan and act purposefully would have negated the voluntary intoxication defense that trial counsel was able to present to the jury. Thus, it cannot be said that trial counsel's performance was deficient.

Postconviction Order at 18 (record citations omitted). We affirm the denial of relief on this claim.

**\*468** First, competent, substantial evidence supports the postconviction court's finding that Traina made a strategic decision not to call an expert. The postconviction court noted that one of the reasons Traina did not call an expert was that Traina was afraid that the expert would learn things that incriminated Davis as a principal. Traina had good reason to fear Davis would make such comments to an expert, as Davis had made such comments to Traina. Traina stated that the defense's strategy was to portray Valessa as the murderer and Davis as just helping her after the fact. If Davis told an expert that he was involved in the crime itself and the State elicited such testimony at trial, it would directly contradict this defense strategy; in Traina's words, the expert would "blow up in his face." Traina considered retaining an expert and chose not to based on his assessment of the situation. This evidence supports the postconviction court's conclusion that Traina's decision was strategic.

Similarly, we find no error in the postconviction court's determination that Traina's strategic decision was reasonable. The strategy at trial was to portray Davis as involved only in the murder after the fact. Traina was concerned that the statements Davis had made to him would be the same statements that a retained expert would hear; those statements could incriminate Davis as a principal. Traina was concerned that the expert, when later deposed, would have to reveal the statements and thereby cripple their trial strategy. Accordingly, we agree that

counsel's performance was not deficient.

Additionally, we find no error in the postconviction court's conclusion that Davis has not demonstrated that he was prejudiced by Traina's alleged deficiency. Dr. Smith's testimony would not have substantially helped Davis. Dr. Smith could not identify any particular hallucination or distortion that Davis had experienced when committing or planning the crime. He could only testify that it was "a definite possibility" that this crime would not have occurred but for Davis's LSD use. These statements about possibilities and unspecified distortions do not undermine our confidence in the outcome. *See Maxwell,* 490 So.2d at 932 ("[T]he clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.").

[8] Further, Dr. Smith's testimony could have hurt Davis. Dr. Smith noted that LSD "does not impair an individual's ability to make a plan, to act purposefully" and would not prevent someone from "form[ing] intent." These statements could have undermined the voluntary intoxication argument that Traina was able to make based on Whispel's testimony. Counsel will not be deemed ineffective for failing to present evidence that would be more harmful than helpful. *Johnson v. State,* 921 So.2d 490, 501 (Fla.2005) ("Counsel cannot be deemed ineffective for failing to present evidence that would open the door to damaging cross-examination and rebuttal evidence that would counter any value that might be gained from the evidence."). We affirm the denial of relief on this claim.

## IV. INEFFECTIVENESS AS TO CODEFENDANT'S CONFESSION

[9] In Davis's fourth claim, he alleges that counsel was ineffective for failing to introduce Valessa Robinson's statement at trial under section 90.804,

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459
990 So.2d 459, 33 Fla. L. Weekly S381
(Cite as: 990 So.2d 459)

Florida Statutes (1999). Davis argues that trial counsel should have established Valessa's unavailability by subpoenaing her and thereby forcing her to invoke her privilege against *469 self-incrimination. Davis claims that this failure to establish her unavailability constituted ineffective assistance under *Strickland.* As stated above, the elements of ineffective assistance under *Strickland* are deficiency and prejudice.

The postconviction court denied this claim. The court began by noting Traina's testimony that he spoke to Valessa's attorney, who stated that if Valessa did testify it "certainly wouldn't be something that would be consistent with [Davis's] defense. It would be adverse to Adam Davis." Postconviction Order at 21. Traina testified that based on these statements, he concluded Valessa either would not testify if subpoenaed or, if she did, her testimony would be harmful to Davis. The postconviction court also noted that Traina stated that he could not have admitted Valessa's statement because Traina did not have the corroborating evidence that section 90.804(2)(c) required. *See* § 90.804(2)(c), Fla. Stat. (1999) ("A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is inadmissible, unless corroborating circumstances show the trustworthiness of the statement."). The postconviction court then concluded:

> Mr. Traina made a strategic decision not to subpoena Valessa Robinson to testify at [Davis's] trial and that decision was reasonable under the circumstances. Additionally, trial counsel testified that he had no corroborative information to have Valessa Robinson's statement admitted into evidence, which Florida Statutes Section 90.804(2)(c) requires. Thus, trial counsel's decision did not amount to ineffective assistance of counsel.

Postconviction Order at 22.

We affirm the postconviction court. Davis's argument in his instant brief is exclusively that counsel should have established Valessa's unavailability. The trial judge in Davis's original trial did not state or even discuss Valessa's unavailability as a basis for denying Traina's attempt to introduce Valessa's statements through the two officers who took her confession. Thus, Davis's claim is meritless. Additionally, as the postconviction court noted, Traina testified that he had no corroborative evidence with which to introduce Valessa's statement under the provisions Davis now cites. Davis has not alleged that any such corroboration exists. Because Davis has not established what Traina could have done differently to have the evidence admitted, he has not established that Traina was deficient. Accordingly, we affirm the postconviction court's denial of relief on this claim.

## V. ALTERNATING THEORIES OF PROSECUTION

In this claim, Davis argues that the State used inconsistent theories in the trials of Valessa and Davis, advocating in each trial that the respective defendant was the actual murderer. The postconviction court denied this claim in brief, stating:

> [A] review of the State's opening and closing statements in Valessa Robinson's trial, as well as the direct examination of Jon Whispel in Valessa Robinson's trial, reveals that the State never argued that Valessa Robinson stabbed her mother. Rather, during Valessa Robinson's trial, the State maintained that Adam Davis had actually stabbed Vicki Robinson. Therefore, the State did not alternate between inconsistent theories of prosecution.

Postconviction Order at 22-23 (record citations omitted).

We affirm the postconviction court's denial of this claim. A review of the record in Valessa's trial demonstrates that the *470 State's theory was that Valessa was a principal to the murder of Ms.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459
990 So.2d 459, 33 Fla. L. Weekly S381
(Cite as: 990 So.2d 459)

Robinson, not the primary perpetrator. In the State's opening statement, the prosecutor argued that Davis inflicted the final, fatal stab wounds. The State later called Jon Whispel to testify and elicited testimony showing that Davis committed the murder with Valessa's assistance. In closing arguments, the State continued its theme of Valessa as principal by making statements such as: "[Valessa] had Adam Davis wrapped right around here. He would do anything for her, anything. He did do anything for her. He murdered Vicki Robinson." The prosecutor also stated: "I want you to remember this. This is probably the most important law that applies to this situation, this principal instruction." The State consistently argued that Davis was the actual murderer and Valessa was a principal. Accordingly, we affirm the denial of this claim.

## VI. INEFFECTIVENESS AS TO PENALTY-PHASE PERFORMANCE

In Davis's sixth issue, he raises several conclusory subclaims centered on penalty-phase counsel Terrana's effectiveness. First, Davis argues that Terrana should have used Dr. Gamache to establish statutory and nonstatutory mitigation. Next, Davis argues that Terrana ineffectively prepared Dr. Gamache and that as a result, Dr. Gamache did not accurately testify about Davis's history. Finally, Davis argues that Terrana should have presented additional mitigation evidence.

After analyzing the testimony at the evidentiary hearing, the postconviction court denied all of Davis's subclaims together, explaining:

> The testimony elicited during the evidentiary hearing fails to support that Mr. Terrana was ineffective.... Dr. Gamache testified that he spoke with Mr. Terrana on several occasions and that had he needed additional information from Mr. Terrana, he would have requested it. Although Mr. Terrana did not discuss specific questions

with Dr. Gamache, Mr. Terrana's decision was a strategic one. Dr. Gamache's testimony fails to support the argument that he should have been used to establish statutory and non-statutory mitigators. Additionally, Mr. Terrana was not ineffective for failing to prepare Dr. Gamache or using him to establish statutory and non-statutory mitigators. Mr. Terrana called five additional witnesses to testify on Defendant's behalf. Defendant also states that he has secured witnesses who could testify regarding many relevant facts that could have been brought out during the penalty phase; however, the fact that Defendant's postconviction counsel presented two experts with "more favorable" reports during Defendant's evidentiary hearing does not render Mr. Terrana's performance deficient. *See Davis v. State,* 875 So.2d 359, 372 (Fla.2003); *Asay v. State,* 769 So.2d 974, 986 (Fla.2000). As such, Defendant is not entitled to relief as to [this claim].

Postconviction Order at 28-29. We affirm the postconviction court.

[10] First, Davis argues that Terrana should have used Dr. Gamache to establish statutory and non-statutory mitigation. The postconviction court noted that Dr. Gamache testified in Davis's penalty phase to much of the mitigation that Davis's postconviction experts emphasized. We agree with the postconviction court that Davis did not elicit testimony or introduce evidence at the evidentiary hearing demonstrating that Dr. Gamache should have established additional statutory or nonstatutory mitigation. Instead, the unrefuted testimony at the hearing was that Davis *471 had no history of diagnosis or treatment for any psychological disorders. Additionally, when given psychological assessment tests by Dr. Gamache to address this weakness, Davis attempted to fake mental illness. Dr. Gamache testified at the evidentiary hearing that the results of Davis's tests suggested that Davis was "grossly [exaggerating] problems of a mental health and mental illness nature."Dr. Gamache told Terrana

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459                                  Page 14
990 So.2d 459, 33 Fla. L. Weekly S381
**(Cite as: 990 So.2d 459)**

that he would have to present these damaging facts to the jury if he was called to testify as to mental mitigation. These facts demonstrate that Terrana's decision to use Dr. Gamache in only a limited fashion was both strategic and reasonable. Thus, Davis has not demonstrated that Terrana's use of Dr. Gamache was deficient, and we affirm the denial of this subclaim.

[11] Next, Davis argues that Terrana ineffectively prepared Dr. Gamache. We disagree. Both Terrana and Dr. Gamache testified that they met several times and discussed aspects of Davis's case and how they would approach his defense. They also testified that they had experience working together from prior cases. Finally, the night before trial, Dr. Gamache thoroughly discussed Davis's history and case in a lengthy deposition. These facts do not support Davis's allegation that Terrana was deficient.

However, even assuming Dr. Gamache could have been more effectively prepared by counsel, Terrana testified that he had a strategic reason for not doing so-to avoid the risks inherent in a deposition. Terrana testified that he was concerned that if he laid out questions in detail, Dr. Gamache would have to reveal them when Dr. Gamache was later deposed by the State. Terrana also believed that based on working with Dr. Gamache on several prior cases, they did not need to discuss such strategy. Finally, Dr. Gamache and Terrana both testified that they felt they had sufficient information going into the deposition and trial. The postconviction court found that Terrana's decision not to prepare Dr. Gamache in detail was a strategic decision. Competent, substantial evidence supports this finding. Given these circumstances, we agree that it was also reasonable of Terrana to act as he did. We affirm the denial of relief on this subclaim.

[12] Finally, Davis argues generally that Terrana should have presented additional mitigation evidence. However, Terrana testified that it was his

strategy to not inundate the jury with every fact from Davis's history. Terrana instead emphasized that Davis could be a productive, nonviolent inmate, and that society did not benefit from his execution. He called Dr. Gamache and five additional witnesses to support this strategy. We have rejected ineffective assistance claims in similar contexts where counsel focused on humanizing the defendant. *See, e.g., Rutherford v. State,* 727 So.2d 216, 222-23 (Fla.1998). After a careful review of the record, we agree with the postconviction court that Terrana's performance was not deficient.

However, even if Terrana's performance was deficient, Davis has not established that he was prejudiced by it. Much of the evidence that Davis now alleges should have been introduced was testified to by Dr. Gamache in Davis's penalty phase. To establish prejudice, Davis had to show that counsel's ineffectiveness "deprived [him] of a reliable penalty phase proceeding." *Asay,* 769 So.2d at 985 (quoting *Rutherford,* 727 So.2d at 223). Davis did not do so. Accordingly, we affirm the postconviction court's denial of relief on this final subclaim.

## VII. INEFFECTIVENESS AS TO CCP AGGRAVATOR

[13] In Davis's final claim, he argues that Terrana was ineffective for failing to *472 rebut the CCP aggravator and establish the substantially diminished capacity mitigator.[FN10] As in the prior claims, the standard for ineffective assistance is an analysis of deficiency and prejudice under *Strickland.*

> FN10. We deny Davis's claim that an expert should have been used to establish the substantially diminished capacity mitigator because, as discussed above, Davis did not establish that additional mental mitigation was viable in his case.

The postconviction court denied this claim, quoting

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

990 So.2d 459                                                                                                      Page 15
990 So.2d 459, 33 Fla. L. Weekly S381
**(Cite as: 990 So.2d 459)**

at length from Terrana's testimony at the evidentiary hearing. In that testimony, Terrana explained that he did not have Dr. Gamache rebut the CCP aggravator because Dr. Gamache had been deposed the night before trial. Terrana stated that Dr. Gamache gave "at least 20 to 30 pages of [deposition testimony] which [we]re some of the most bone-chilling testimony from [Davis] to [Dr. Gamache] that you've ever heard." Postconviction Order at 31. Terrana was thus concerned that putting Dr. Gamache on the stand to testify to the CCP aggravator would have allowed the prosecutors to cross-examine Dr. Gamache on those thirty pages of negative testimony. Terrana believed that "[i]f that would have happened, there's no doubt in my mind ... that the vote would have been 12-0 for death. And you may even [have] had the alternate[s] upset that they couldn't cast a vote for death." *Id.*

Based on Terrana's testimony, the postconviction court concluded that Terrana's decision was strategic. Competent, substantial evidence supports this finding. Several of Davis's statements to Dr. Gamache were revealed in Dr. Gamache's deposition, and many of these statements were potentially harmful to Davis's case. For example, Davis told Dr. Gamache that he choked Ms. Robinson into unconsciousness after Davis got angry when she said something negative about his father. Davis also told Dr. Gamache that he thought Valessa was joking when she proposed killing her mother but that Davis cooperated with Valessa's proposal because he thought that they would buy the heroin and then back out before using it on Ms. Robinson. He believed that he could then use the heroin for himself.

[14] Terrana reasonably did not want the State to elicit this testimony from Dr. Gamache on the stand. Such testimony would further cement Davis's role in the murder in the mind of the jurors and would portray Davis as manipulative. Davis's ability to ascertain that Valessa was not serious and his ability to formulate a plan to play along in order to

acquire heroin for his own use would also undercut any argument that Davis was impaired cognitively. "Trial counsel will not be held to be deficient when she makes a reasonable strategic decision to not present mental mitigation testimony during the penalty phase because it could open the door to other damaging testimony." *Gaskin v. State,* 822 So.2d 1243, 1248 (Fla.2002). Thus, we agree with the postconviction court that Terrana's performance was not deficient.

Finally, Davis has not demonstrated that Dr. Smith's testimony would have helped his case. Dr. Smith testified that he believed LSD use would preclude a finding that the CCP aggravator applied, but Dr. Smith expressly declined to state whether LSD prevented premeditation. Dr. Smith also testified that LSD use would not prevent an individual from planning things or forming intent to act. Dr. Smith also could not explain what perceptual or emotional distortions Davis suffered from that foreclosed application of the CCP aggravator. These facts undercut the strength of his testimony that CCP *473 did not apply. For all of these reasons, we conclude that Davis has not established prejudice. Accordingly, we affirm the postconviction court's denial of this final claim.

### VIII. CONCLUSION

For the forgoing reasons, we affirm the order of the postconviction court denying relief on each of Davis's claims.

It is so ordered.

LEWIS, C.J., and WELLS, ANSTEAD, PARIENTE, QUINCE, CANTERO, and BELL, JJ., concur.
Fla.,2008.
Davis v. State
990 So.2d 459, 33 Fla. L. Weekly S381

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

Westlaw.

120 S.W.3d 600

Page 1

354 Ark. 148, 120 S.W.3d 600
**(Cite as: 354 Ark. 148, 120 S.W.3d 600)**

Supreme Court of Arkansas.
James C. FUDGE
v.
STATE of Arkansas.
**No. CR 02-826.**

Sept. 25, 2003.

Following affirmance of defendant's conviction for the capital murder of his wife, and sentence to death, 341 Ark. 759, 20 S.W.3d 315, defendant filed petition for postconviction relief. The Circuit Court, First Division, Pulaski County, Marion A. Humphrey, J., denied the petition. Defendant appealed. The Supreme Court, Donald L. Corbin, J., held that: (1) trial court's failure to make specific written findings of fact and conclusions of law with respect to issues raised by defendant's petition concerning ineffectiveness of trial and appellate counsel required remand, and (2) as an issue of first impression, the trial court was obligated to evaluate services of defendant's appellate counsel, and documents presented by defendant to show that appellate counsel had a conflict of interest, rather than defer issue to the Supreme Court.

Reversed and remanded.

Glazed, J., dissented and filed opinion.

West Headnotes

**[1] Criminal Law 110 ☞1660**

110 Criminal Law
   110XXX Post-Conviction Relief
     110XXX(C) Proceedings
       110XXX(C)3 Hearing and Determination
         110k1660 k. Findings. Most Cited Cases

**Criminal Law 110 ☞1661**

110 Criminal Law
   110XXX Post-Conviction Relief
     110XXX(C) Proceedings
       110XXX(C)3 Hearing and Determination
         110k1661 k. Decision or Order. Most Cited Cases
Postconviction procedures for death-penalty cases are different from other criminal cases; in a death-penalty case it is the petitioner who determines the issues that must be addressed by the trial court in a written order, while in other criminal cases, it is the trial court that determines the issues and then makes specific written findings of fact and conclusions of law with respect to the issues. Rules Crim.Proc., Rules 37.3(c), 37.5(i).

**[2] Criminal Law 110 ☞1181.5(6)**

110 Criminal Law
   110XXIV Review
     110XXIV(U) Determination and Disposition of Cause
       110k1181.5 Remand in General; Vacation
         110k1181.5(3) Remand for Determination or Reconsideration of Particular Matters
           110k1181.5(6) k. Counsel for Accused. Most Cited Cases

**Criminal Law 110 ☞1660**

110 Criminal Law
   110XXX Post-Conviction Relief
     110XXX(C) Proceedings
       110XXX(C)3 Hearing and Determination
         110k1660 k. Findings. Most Cited Cases
Trial court's findings in post-conviction proceeding in death-penalty case, that State conceded that first-degree battery charge was reduced to robbery, and that exhibit concerning that charge was not published to jurors, were insufficient to address defendant's allegation that trial counsel was ineffective

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

120 S.W.3d 600
354 Ark. 148, 120 S.W.3d 600
**(Cite as: 354 Ark. 148, 120 S.W.3d 600)**

Page 2

during penalty phase because he failed to object to introduction of purported prior conviction for first-degree battery, warranting remand to trial court to make specific written findings of fact and conclusions of law with respect to the issue. U.S.C.A. Const.Amend. 6; Rules Crim.Proc., Rule 37.5(i).

**[3] Criminal Law 110 ⌲1181.5(6)**

110 Criminal Law
  110XXIV Review
      110XXIV(U) Determination and Disposition of Cause
         110k1181.5 Remand in General; Vacation
            110k1181.5(3) Remand for Determination or Reconsideration of Particular Matters
               110k1181.5(6) k. Counsel for Accused. Most Cited Cases

**Criminal Law 110 ⌲1660**

110 Criminal Law
  110XXX Post-Conviction Relief
    110XXX(C) Proceedings
      110XXX(C)3 Hearing and Determination
         110k1660 k. Findings. Most Cited Cases
Mere finding in postconviction proceeding involving death-penalty case, that trial counsel's failure to present evidence of defendant's alcoholism was a matter of trial strategy, did not address counsel's alleged failure to present evidence of remaining mitigating factors during penalty phase of trial, warranting remand for specific findings of fact and conclusions of law in connection with counsel's alleged failure to present the other factors; other mitigating evidence included defendant's alleged abuse as a child, allegation that defendant's propensity for violence resulted from genetic condition or learned behavior, and defendant's positive qualities and attempts to better himself. U.S.C.A. Const.Amend. 6; Rules Crim.Proc., Rule 37.5(i).

**[4] Criminal Law 110 ⌲1517**

110 Criminal Law
  110XXX Post-Conviction Relief
    110XXX(B) Grounds for Relief
      110k1511 Counsel
         110k1517 k. Conflict of Interest. Most Cited Cases

**Criminal Law 110 ⌲1660**

110 Criminal Law
  110XXX Post-Conviction Relief
    110XXX(C) Proceedings
      110XXX(C)3 Hearing and Determination
         110k1660 k. Findings. Most Cited Cases
Trial court's finding in postconviction proceeding involving death-penalty case, that the alleged representation of a witness by a member of trial counsel's office did not create a conflict, because it was too remote in time and was unrelated to defendant's case, did not permit inference that there was no conflict with regard to appellate counsel, who were from same office; exacting requirements of rule governing postconviction proceedings in death-penalty cases did not permit such inference, but required specific written findings of fact, and it was not clear from pleadings or transcript of hearing that appellate counsel's alleged conflict of interest was same as that alleged against trial counsel. U.S.C.A. Const.Amend. 6; Rules Crim.Proc., Rule 37.5(i).

**[5] Criminal Law 110 ⌲1403**

110 Criminal Law
  110XXX Post-Conviction Relief
    110XXX(A) In General
      110k1401 Constitutional, Statutory, and Regulatory Provisions
         110k1403 k. Purpose. Most Cited Cases
The purpose of the exacting requirements of the rule governing postconviction proceedings in death-penalty cases is to provide a comprehensive state-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

120 S.W.3d 600
354 Ark. 148, 120 S.W.3d 600
**(Cite as: 354 Ark. 148, 120 S.W.3d 600)**

Page 3

court review of a defendant's claims and, therefore, eliminate the need for multiple postconviction actions in federal court. Rules Crim.Proc., Rule 37.5(i).

**[6] Criminal Law 110 ⟲1181.5(6)**

110 Criminal Law
 110XXIV Review
  110XXIV(U) Determination and Disposition of Cause
   110k1181.5 Remand in General; Vacation
    110k1181.5(3) Remand for Determination or Reconsideration of Particular Matters
     110k1181.5(6) k. Counsel for Accused. Most Cited Cases

**Criminal Law 110 ⟲1655(6)**

110 Criminal Law
 110XXX Post-Conviction Relief
  110XXX(C) Proceedings
   110XXX(C)3 Hearing and Determination
    110k1651 Necessity for Hearing
     110k1655 Particular Issues
      110k1655(6) k. Counsel. Most Cited Cases
Postconviction trial court was obligated in death-penalty case to evaluate services of murder defendant's appellate counsel, and documents presented by defendant to show that appellate counsel had a conflict of interest, rather than defer issue to the Supreme Court, where issue was raised by defendant in petition, warranting remand to trial court to make specific written findings of fact and conclusions of law with respect to the conflict of interest claim. U.S.C.A. Const.Amend. 6; Rules Crim.Proc., Rule 37.5(i).
**\*\*601 \*150** Craig Lambert, Little Rock, for appellant.

Mark Pryor, Att'y Gen., by: Jeffrey A. Weber, Ass't Att'y Gen., Little Rock, for appellee.

DONALD L. CORBIN, Justice.

Appellant James C. Fudge was convicted in the Pulaski County Circuit Court of the capital murder of his wife Kimberly Fudge, for which he was sentenced to death by lethal injection. This court affirmed his conviction and sentence in *Fudge v. State,* 341 Ark. 759, 20 S.W.3d 315 (2000). Thereafter, the United States Supreme Court denied Fudge's **\*151** petition for a writ of certiorari. *See Fudge v. Arkansas,* 531 U.S. 1020, 121 S.Ct. 585, 148 L.Ed.2d 500 (2000). Following the Supreme Court's ruling, Fudge filed a petition for postconviction relief pursuant to Ark. R.Crim. P. 37. The trial court denied the petition, and this appeal followed. Our jurisdiction is pursuant to Rule 37 and Ark. Sup.Ct. R. 1-2(a)(8). For reversal, Fudge raises six points of error, the first of which is that the trial court's order does not comply with the requirements of Ark. R.Crim. P. 37.5(i). We agree that the order is incomplete, and we reverse and remand.

[1] Rule 37.5 sets out the postconviction procedures for death-penalty cases. Subsection (i) provides in part that the circuit court shall "make specific written findings of fact with respect to each factual issue raised by the petition and specific **\*\*602** written conclusions of law with respect to each legal issue raised by the petition." In *Echols v. State,* 344 Ark. 513, 519, 42 S.W.3d 467, 470 (2001), this court held that this provision imposes a "more exacting duty" on the trial court than that found in Ark. R.Crim. P. 37.3, which provides postconviction procedures for non-death-penalty cases. Under Rule 37.5(i), it is the petitioner who determines the issues that must be addressed by the trial court in a written order, while Rule 37.3(c) provides that the trial court is to determine the issues and then make specific written findings of fact and conclusions of law with respect to those issues. *Id.*

The State concedes that the order entered by the trial court in this case falls short of the exacting re-

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

120 S.W.3d 600
354 Ark. 148, 120 S.W.3d 600
(Cite as: 354 Ark. 148, 120 S.W.3d 600)

Page 4

quirements of Rule 37.5(i). The State contends, however, that on remand, the trial court need only make specific findings of fact and conclusions of law with respect to those claims raised below and currently being pursued on appeal. We agree that this is a correct statement of law. This court concluded in *Echols,* 344 Ark. 513, 42 S.W.3d 467, that the trial court's duties on remand are limited to making factual findings and legal conclusions only as to the issues raised on appeal, because all other claims raised below but not argued on appeal are considered abandoned. *See also Kemp v. State,* 347 Ark. 52, 60 S.W.3d 404 (2001); *McGehee v. State,* 344 Ark. 602, 43 S.W.3d 125 (2001). Nonetheless, we disagree with the State's assertion that only one issue need be addressed on remand in this case.

[2] From our review of the trial court's order, we conclude that there are three issues that the trial court's order does not sufficiently address. The first is Fudge's allegation that trial counsel, **\*152** Tammy Harris, was ineffective during the penalty phase for failing to object to the introduction of Fudge's purported prior conviction for first-degree battery. During the hearing below, Fudge argued that the documents presented by the State as State's Exhibit 56 fell short of demonstrating that he was actually convicted of the offense of first-degree battery. Ms. Harris admitted at the Rule 37 hearing that she had not objected to the State's proffer of the first-degree-battery conviction. She stated that she had reviewed the documents beforehand, and that it had not crossed her mind that they might not be sufficient.

The trial court's order does not contain any findings of fact or conclusions of law regarding the allegation that trial counsel provided ineffective assistance of counsel for failing to object to the first-degree-battery conviction. However, the order does contain a finding that "[t]he State concedes that the first-degree battery charge was reduced to robbery [.]" The only other factual finding concerning Exhibit 56 is that it was not published to the jurors.

Neither of these findings addresses the allegation that trial counsel was ineffective for failing to object to the sufficiency of the exhibit as proof of a prior violent felony conviction. Moreover, the trial court's order contains no conclusion of law on this issue. Accordingly, we remand this issue to the trial court to make specific findings of fact and conclusions of law regarding this claim.

[3] The second area of deficiency in the trial court's order pertains to Fudge's allegation that trial counsel failed to investigate and present evidence in mitigation during the penalty phase of his trial. During the hearing below, Fudge argued that there were six mitigating factors that should have been presented by trial counsel: (1) Fudge's history of alcoholism; (2) the history of alcoholism in Fudge's family; (3) Fudge's abuse as a child at the hands of his mother; (4) Fudge's propensity for violence, particularly toward women, which either resulted from a genetic condition or **\*\*603** is behavior that was learned from his male role models; (5) Fudge's positive qualities, namely that he is a talented artist, poet, sculptor, and auto-body repairman and a loving father to his children; and (6) that Fudge had tried to better himself over the years leading up to the murder. The trial court's order only contains the ruling that trial counsel's decision not to present evidence of Fudge's alcoholism was a matter of trial strategy. The order does not address the failure to present evidence of the remaining five mitigating factors **\*153** offered by Fudge. The State concedes that the trial court did not make any findings of fact or conclusions of law on these five mitigating factors. We thus remand on this claim.

Additionally, the trial court's order does not contain any findings of fact or conclusions of law regarding the allegation that trial counsel failed to conduct an appropriate investigation for mitigating evidence. This point was raised below and is being pursued on appeal. Therefore, the trial court must address this issue on remand.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

120 S.W.3d 600                                                                                          Page 5
354 Ark. 148, 120 S.W.3d 600
**(Cite as: 354 Ark. 148, 120 S.W.3d 600)**

[4] The third area of deficiency in the trial court's order involves Fudge's allegation that his counsel on direct appeal had a conflict of interest. During the hearing below, Fudge argued that his two trial counsel and appellate counsel had conflicts of interest in representing him. All three counsel were from the Pulaski County Public Defender's Office. Fudge alleged that his trial counsel had a conflict because another attorney from the public defender's office had previously represented one of the State's witnesses, Jerome Jones.[FN1] On this allegation, the trial court found that the representation of Jones did not create a conflict because it was too remote in time and was unrelated to the case against Fudge. The trial court also found that the issue of conflict was not raised at trial. There is no similar ruling on the conflict claim against appellate counsel.

> FN1. Fudge also raised a claim concerning the representation of Joseph Norris, but he conceded during the hearing below that there was no conflict with regard to Norris.

[5] The State argues that we should infer from this ruling that the trial court must have concluded that there was no conflict with regard to appellate counsel, as all three counsel were from the same office. We are not persuaded by this argument for two reasons. In the first place, Rule 37.5(i) does not permit such an inference. To the contrary, the rule requires the trial court to make *specific* written findings of fact and *specific* written conclusions of law. The purpose of the exacting requirements of Rule 37.5 is to provide a comprehensive state-court review of a defendant's claims and, therefore, eliminate the need for multiple postconviction actions in federal court. *Echols,* 344 Ark. 513, 42 S.W.3d 467. Were we to infer the trial court's ruling on one issue as being sufficient to dispose of another issue, we would be defeating the plain purpose of Rule 37.5(i).

[6] *154 In the second place, it is not entirely clear from the pleadings or the transcript of the hearing

that the conflict of interest alleged against appellate counsel is the same as that alleged against trial counsel. Moreover, Fudge alleged below that the issue of appellate counsel's conflict was raised in a timely manner to both the trial court and this court and that, as such, he was entitled to an immediate hearing on the issue under the Supreme Court's holdings in *Holloway v. Arkansas,* 435 U.S. 475, 98 S.Ct. 1173, 55 L.Ed.2d 426 (1978), *Wood v. Georgia,* 450 U.S. 261, 101 S.Ct. 1097, 67 L.Ed.2d 220 (1981), and *Mickens v. Taylor,* 535 U.S. 162, 122 S.Ct. 1237, 152 L.Ed.2d 291 (2002). The trial court declined the invitation to rule on this issue, concluding that such a ruling could only **604 come from this court. To better understand this issue, it is necessary to address Fudge's second point on appeal, that the trial court erred in refusing to admit certain documents as evidence of this claim.

The record reflects that during the Rule 37 hearing, while Fudge was testifying, defense counsel, Mr. Lambert, asked Fudge whether he had complained about his appellate counsel. Fudge indicated that he had complained about appellate counsel to both the trial court and this court. Mr. Lambert then attempted to introduce proof of Fudge's testimony, in the form of multiple letters to the trial court, a letter to appellate counsel, and a supplemental *pro se* brief sent to this court.[FN2] The State objected to the documents on the ground that they were not relevant, because they were written while his appeal was pending, and jurisdiction over his appellate counsel's conduct belonged to this court. The deputy prosecuting attorney, Mr. McCormick, explained: "I think once the appeal's lodged or at that time there's an issue about conflict, with all due respect to this Court, it would be up to [the] Supreme Court to relieve counsel if there's an issue of conflict."

> FN2. This court denied Fudge's motion to file this *pro se* supplemental brief on the grounds that he was represented by counsel qualified to represent defendants in capital cases and that he had not demonstrated any

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

120 S.W.3d 600
354 Ark. 148, 120 S.W.3d 600
(Cite as: 354 Ark. 148, 120 S.W.3d 600)

Page 6

good cause to permit him to serve as co-counsel or to file a supplemental *pro se* brief. *See Fudge v. State,* 341 Ark. 652, 19 S.W.3d 22 (2000) (*per curiam* ).

The trial court then asked Mr. Lambert to explain how the documents were relevant to his postconviction claims. Mr. Lambert stated that they were relevant to show that Fudge had notified the trial court, this court, and "everybody that he could" that appellate counsel had a conflict of interest. He explained further that they were relevant to his claims that appellate counsel was ineffective and that appellate counsel had a conflict of interest. The *155 trial court then asked: "Are you saying that my duty here today is to evaluate the service of his appellate counsel?" Mr. Lambert responded:

> We're saying that under the *Wood v. Georgia* test and under *Holloway v. Arkansas,* once the defendant puts the Court on notice that he believes his attorney has a conflict of interest, the Court has a duty to make a searching inquiry into that question. And the fact that he did put this Court and the appellate court on notice that he was raising that issue that kicks in the *Wood v. Georgia* and the *Holloway v. Arkansas* test. And these letters are relevant to that.

Mr. McCormick countered that these documents would only be relevant before the appellate court. The trial court agreed and sustained the State's objection, stating that this matter was the business of the appellate court.

Initially, we note that the trial court understood that it had a duty to evaluate the services of appellate counsel, to an extent, as the order contains a ruling on the issue of appellate counsel's ineffectiveness for failing to pursue a suppression issue on appeal. Thus, it is clear that the trial court only declined to rule on whether this court was timely notified of the conflict claim and whether this court should have made an inquiry under the prevailing case law. We

appreciate the trial court's hesitancy to rule on an issue that it believed was solely within the jurisdiction of this court. Furthermore, this issue appears to be one of first impression in our courts. Nonetheless, we must agree with Fudge that it was error not to make findings and conclusions on this issue, as it was raised in his postconviction petition.

**605 Under Rule 37.5(i), the trial court is charged with the duty of making "specific written findings of fact *with respect to each factual issue raised by the petition* and specific written conclusions of law *with respect to each legal issue raised by the petition.*" (Emphasis added.) Thus, as stated above, it is the petitioner, not the trial court, who determines the issues that must be addressed in a written order. It is not disputed that Fudge raised the claim of appellate counsel's conflict of interest in his petition. He further made the allegation that either this court or the trial court was required to make an inquiry on this claim. Accordingly, Rule 37.5(i) mandates the trial court to make specific written findings and conclusions on these issues. We thus reverse the trial court's *156 refusal to admit the documents offered by Fudge, and remand this matter for the trial court to consider the evidence in light of our ruling today.

In sum, the trial court's order does not comply with the more exacting requirements set out in Rule 37.5. Of the issues pursued by Fudge on appeal, the trial court's order does not contain specific written findings of fact and conclusions of law on three of those issues. We thus remand this matter to the trial court to make such specific findings and conclusions. To avoid any lengthy delay in this matter, we direct the trial court to complete the order within sixty days from the date the mandate is issued. We will then consider the issues raised on appeal.

Reversed and remanded.

GLAZE, J., dissents.
THORNTON, J., not participating.

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.

120 S.W.3d 600
354 Ark. 148, 120 S.W.3d 600
**(Cite as: 354 Ark. 148, 120 S.W.3d 600)**

Page 7

TOM GLAZE, Justice, dissenting.
I dissent for the reasons set out in the dissenting opinion in *Echols v. State,* 344 Ark. 513, 520-23, 42 S.W.3d 467, 471-73 (2001). *See also McGehee v. State,* 344 Ark. 602, 606, 43 S.W.3d 125, 128 (2001) (Glaze, J., dissenting); *Kemp v. State,* 347 Ark. 52, 61, 60 S.W.3d 404, 410 (2001) (Glaze, J., dissenting).

Ark.,2003.
Fudge v. State
354 Ark. 148, 120 S.W.3d 600

END OF DOCUMENT

© 2009 Thomson Reuters/West. No Claim to Orig. US Gov. Works.