**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**FLORENCE DIVISION**

| | |
|---|---|
| United States of America, | Case No.  4:02-992-JFA |
| Respondent, | |
| vs. | **WITNESS LIST AND MEMORANDUM REGARDING LIVE TESTIMONY** |
| Chadrick E. Fulks, | |
| Petitioner. | |

COMES NOW Petitioner Chadrick E. Fulks ("Mr. Fulks"), pursuant to this Court's minute entry of July 23, 2009 (Docket No. 1199), and submits his preliminary witness list for the evidentiary hearing scheduled for September 28, 2009.  Mr. Fulks also respectfully submits a memorandum regarding the necessity of live testimony of identified witnesses for proper resolution of the issues raised in Mr. Fulks's *Amended Motion Of Chadrick E. Fulks To Vacate Conviction And Sentence And For A New Trial Pursuant To 28 U.S.C.A. § 2255 And Rule 33 Of The Federal Rules Of Criminal Procedure* ("Amended Motion To Vacate"), as well as the claims set forth in Mr. Fulks's *Reply In Support of the Amended Motion To Vacate* ("Reply"), including Claim XXXIII regarding the discovery of the remains of Alice Donovan.[1]

**I.    Mr. Fulks's Evidentiary Hearing Preliminary Witness List**

Mr. Fulks identifies the following witnesses who are intended to be called live at the Evidentiary Hearing.  This list is not a commitment that any of the witnesses listed are available

---

[1] On Friday, July 24, 2009, counsel for Mr. Fulks were informed that DNA testing on the remains located by Monica Caison has confirmed that the remains are, in fact, those of Alice Donovan.  See Meg Kinnard, *Bones Identified as SC Woman Missing for 6 Years*,

or will appear at the Evidentiary Hearing. In addition to the individuals identified on this list, Mr. Fulks reserves the right to call (1) any witness to provide foundational testimony should the government contest the authenticity or admissibility of any materials to be proffered at the Evidentiary Hearing; (2) any witness identified by the government on any of their witness lists; (3) substitute witnesses, to the extent that an identified witness otherwise becomes unavailable for the Evidentiary Hearing; (4) additional witnesses to respond to issues raised after the submission of this list, such as testimony of witnesses who are discovered during the ongoing factual investigation of the claims set forth in Mr. Fulks's Amended Motion to Vacate and his Reply, including Claim XXXIII regarding the discovery of the remains of Alice Donovan; (5) any witness called by either Mr. Fulks's trial counsel or the government during the sentencing hearing; and (6) any witness for impeachment purposes. Further, Mr. Fulks expressly reserves the right to supplement this Witness List up to and during the Evidentiary Hearing.

- **John H. Blume, III, Esq.** -- Professor Blume is expected to testify generally to his representation of Mr. Fulks.

- **William F. Nettles, IV, Esq.** -- Mr. Nettles is expected to testify generally to his representation of Mr. Fulks.

- **Sherri Lynn Johnson, Esq.** -- Ms. Johnson is expected to testify generally to her representation of Mr. Fulks.

- **Monica Caison** -- Ms. Caison is expected to testify generally to her efforts to recover the remains of Alice Donovan.

- **Pete Skidmore** -- Mr. Skidmore is expected to testify generally to his efforts to conduct factual and mitigation investigation in relation to Mr. Fulks's sentencing trial, including his efforts to locate the remains of Alice Donovan.

- **Heather Roche** -- Ms. Roche is expected to testify generally to her efforts to locate the remains of Alice Donovan.

- **Sherriff Ronald Hewitt** -- Sherriff Hewitt is expected to testify generally to his understanding of Brandon Basham's so-called "deer statement" and his testimony during

MYRTLEBEACHONLINE.COM, July 24, 2009 (attached hereto as Exhibit A).

the Basham trial that Basham demonstrated how Basham -- not Mr. Fulks -- used a purse strap to strangle Alice Donovan.

- **Andrea Lyon** -- Professor Lyon is expected to testify generally to the standards set forth by the American Bar Association (ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases) regarding the performance of defense counsel, which was cited with approval by the United States Supreme Court in Wiggins v. Smith, 539 U.S. 510, 522 (2003) and in Florida v. Nixon, 543 U.S. 175, 190 (2004).

- **Seymour L. Halleck, M.D.** -- Professor Halleck is expected to testify generally to his evaluation and assessment of Mr. Fulks's cognitive deficits and mental illness in connection with presenting mitigating circumstances at Mr. Fulks's sentencing hearing. In particular, Professor Halleck is expected to testify to his opinion that (1) Mr. Fulks meets the DSM IV diagnostic requirements for polysubstance dependence, including alcohol, marijuana, and amphetamines; (2) Mr. Fulks, at times, meets the diagnostic criteria for Major Depressive Disorder or Dysthmic Disorder; and (3) Mr. Fulks should be diagnosed as having Cognitive Disorder, Not Otherwise Specified.

- **Margaret Melikian, D.O.** -- Doctor Melikian is expected to testify generally to her evaluation and assessment of Mr. Fulks's cognitive deficits and mental illness, particularly her opinion that Mr. Fulks meets the diagnostic criteria for Axis I diagnosis of Cognitive Disorder, Not Otherwise Specified.

- **James H. Hilkey, Ph.D.** -- Dr. Hilkey is expected to testify generally to his psychological evaluation and assessment of Mr. Fulks as it pertains to the mitigating factors defined in 18 U.S.C.A. § 3592. In particular, Dr. Hilkey is expected to testify to his opinion that Mr. Fulks suffers multiple, significant, psychological and biological problems, resulting in diagnoses of polysubstance abuse, dysthmic disorder, and Cognitive Disorder, Not Otherwise Specified.

- **William Alexander Morton, Jr., Pharm.D.** -- Professor Morton is expected to testify generally to the psychological and neurological effects of methamphetamine use and their highly addictive nature, particularly the effects methamphetamine use had on Mr. Fulks.

- **Monica Wolowinski** -- Ms. Wolowinski is expected to testify generally to her personal knowledge of Mr. Fulks's upbringing, particularly her concerns that Mr. Fulks was sexually abused by his father when he was a child.

- **Elvin Taylor** -- Mr. Taylor is expected to testify generally to his personal knowledge of Mr. Fulks's behavior at the Westville Correctional Facility during the time Mr. Fulks was an inmate at that facility.

- One of the following two experts on future dangerousness:

    o **Mark D. Cunningham, Ph.D., ABPP** -- Dr. Cunningham is expected to testify generally to the high likelihood that Mr. Fulks will not engage in violent acts during a natural life term in the Federal Bureau of Prisons.

    o **James E. Aiken** -- Mr. Aiken is expected to testify generally to his opinion that Mr. Fulks will not likely present a risk to other prisoners, staff, the public, and his ability to adjust and adapt favorably to confinement.

- One of the following two former students of John Blume:

    o **Tim Kane** -- Mr. Kane is expected to testify generally to his role and experience as a student working as a member of Mr. Fulks's trial team under the direction of John Blume.

    o **Matthew Rawlings** -- Mr. Rawlings is expected to testify generally to his role and experience as a student working as a member of Mr. Fulks's trial team under the direction of John Blume.

In the interest of streamlining the issues during the evidentiary hearing and economizing judicial and attorney resources, Mr. Fulks is willing to submit testimony of the following witnesses via affidavit upon stipulation by the government that the facts averred in the witnesses' affidavits are true.

- **Mark Thompson** -- Mr. Thompson is expected to testify generally to his personal knowledge of Mr. Fulks's family life, particularly Mr. Fulks's propensity to act as a follower and not a leader.

- **Mark Fulks** -- Mr. Fulks is expected to testify generally to the lack of preparation by trial counsel prior to being called as a witness at Mr. Fulks's sentencing trial.

- **Martha Floyd** -- Ms. Floyd is expected to testify generally to the lack of preparation by trial counsel prior to being called as a witness at Mr. Fulks's sentencing trial.

- **Tracy Graybeal** -- Ms. Graybeal is expected to testify generally to her personal knowledge of Mr. Fulks's upbringing, particularly Mr. Fulks's admission of being sexually abused by his sister when he was a child.

- **Ronnie Fulks** -- Mr. Fulks is expected to testify generally to the lack of preparation by trial counsel prior to being called as a witness at Mr. Fulks's sentencing trial.

- **Linda Adkins** -- Ms. Adkins is expected to testify generally to the lack of preparation by trial counsel prior to being called as a witness at Mr. Fulks's sentencing trial.

- **Andrea Roddy** -- Ms. Roddy is expected to testify generally to her experience with agents of the Federal Bureau of Investigation prior to Mr. Fulks's sentencing trial.

- **Nathan Fulks** -- Mr. Fulks is expected to testify generally to his personal knowledge of Mr. Fulks's family life, including allegations that Chad Fulks was sexually abused when he was a child.

- **Harry Tyree** -- Mr. Tyree is expected to testify generally to his personal knowledge of Mr. Fulks's family life, particularly his observations of Mr. Fulks's behavior during Sunday School.

- **Sharon Dotson** -- Ms. Dotson is expected to testify generally to her personal knowledge of Mr. Fulks's family life, particularly allegations of physical abuse suffered by Mr. Fulks's mother, Diane Fulks.

- **Beth McGuffin** -- Ms. McGuffin is expected to testify generally to her personal knowledge of Mr. Fulks's family life.

- **Christina Kirkman** – Ms.Kirkman is expected to testify generally to her personal knowledge of Mr. Fulks's family life.

**II.     Whether Mr. Fulks Was Prejudiced By Trial Counsel's Ineffectiveness Can Only Be Determined With Live Witness Testimony**

A fair evidentiary hearing requires live testimony from the witnesses Mr. Fulks intends to call. The Supreme Court's recent decisions in <u>Wiggins</u>,[2] <u>Williams</u>,[3] and <u>Rompilla</u>[4] demonstrate that in order to determine whether Mr. Fulks was prejudiced by trial counsel's failure to present readily available evidence at the penalty-phase proceedings, this Court must compare the evidence that was presented at the original proceedings with the evidence that should have been introduced. In each of these cases, the petitioner was allowed to develop mitigation and mental health evidence at a post-conviction evidentiary hearing, and the Supreme Court conducted its <u>Strickland</u> prejudice analysis by comparing the mitigation case that trial counsel presented with the mitigation case that trial counsel could have presented. The mitigation case that could have

---

[2] <u>Wiggins v. Smith</u>, 539 U.S. 510 (2003).
[3] <u>Williams v. Taylor</u>, 529 U.S. 362 (2000).
[4] <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005).

been presented was determined by the evidence, including live testimony of expert witnesses, presented at the post-conviction hearing.  See Wiggins, 539 U.S. at 516, 534-38 (comparing the evidence adduced at trial with the evidence presented at the habeas proceeding, including expert testimony, in finding that trial counsel's failure to investigate and present evidence regarding the petitioner's "excruciating life history" resulted in Strickland prejudice); see also Rompilla, 545 U.S. at 391-93 (comparing the evidence presented at sentencing with the mitigation evidence and testimony, including expert testimony, presented at a post-conviction hearing to conclude that the undiscovered mitigation evidence "might well have influenced the jury's appraisal of [the defendant's] culpability" and led to a different sentencing decision (internal quotation marks omitted)); Williams, 529 U.S. at 397-98 (holding that the Strickland prejudice determination must take into account mitigation evidence adduced in post-conviction proceedings).  Similarly, in order for Mr. Fulks to have a fair and just determination of his Strickland claims, this court must compare the evidence introduced at the original penalty-phase proceedings with the evidence that should have been introduced.

The comparison required by Rompilla, Wiggins, and Williams mandates that the evidence that should have been introduced must be presented to this Court in the same manner as it would have been introduced at the original proceedings:  by live testimony subject to direct and cross-examination.  Only by considering live testimony can this Court accurately assess the impact a witness' testimony would have had on the jury.  See, e.g., Rivera Alicea v. United States, 404 F.3d 1, 4 (1st Cir. 2005) (per curiam) (holding that in the absence of a hearing "it is difficult to gauge what [the uncalled witnesses] actually would have said under the prodding of direct and cross-examination" and "it is nearly impossible to assess wither their credibility *or the impact that their testimony might have had on the jury*" (emphasis added)); United States v.

Dawson, 857 F.2d 923, 930 (3rd Cir. 1988) ("The credibility of these witnesses and the force of their testimony must be determined in court."); cf. United States v. White, 366 F.3d 291, 302 (4th Cir. 2004) ("[W]here the ultimate resolution [of a post-conviction proceeding] rests on a credibility determination, an evidentiary hearing is especially warranted." (citation omitted)).

Witnesses should be called live because "contested fact issues ordinarily may not be decided on affidavits alone, unless the affidavits are supported by other evidence in the record." United States v. Hughes, 635 F.2d 449, 451 (5th Cir. Unit B Jan. 1981). Courts have consistently warned against deciding § 2255 motions based solely on witness affidavits. See Machibroda v. United States, 368 U.S. 487, 494-495 (1962) (requiring an evidentiary hearing because "[t]he factual allegations contained in the petitioner's motion and affidavit … related primarily to purported occurrences outside the courtroom and upon which the record could, therefore, cast no real light"); id. at 495 ("Not by the pleadings and the affidavits, *but by the whole of the testimony*, must it be determined whether the petitioner has carried his burden of proof and shown his right to a discharge." (emphasis added)); Raines v. United States, 423 F.2d 526, 530 (4th Cir. 1970) ("When the issue is one of credibility, resolution on the basis of affidavits can rarely be conclusive, but that is not to say they may not be helpful."); Indeed, the Fourth Circuit has identified "a category of petitions, usually involving credibility, that will require an evidentiary hearing in open court." Raines, 423 F.2d at 530. Because the credibility of several witnesses on Mr. Fulks's witness list will play an important role in the weight to be afforded to that testimony, the witnesses ought to be called live.

Several courts of appeal, including the Fourth Circuit, have remanded cases where the district court denied a request for an evidentiary hearing and decided a post-conviction proceeding based solely on submitted affidavits. See, e.g., Bruce v. United States, 256 F.3d 592,

7

599 (7th Cir. 2001) (remanding a § 2255 motion for an evidentiary hearing because the district court relied on trial counsel's affidavit in denying the motion); United States v. Witherspoon, 231 F.3d 923, 926-27 (4th Cir. 2000) (reversing and remanding for an evidentiary hearing because factual questions could not be resolved by affidavits); Koskela v. United States, 235 F.3d 1148, 1149 (8th Cir. 2001) (holding that the district court abused its discretion by concluding, without an evidentiary hearing, that affidavits lacked credibility).

The Supreme Court has instructed that the question of whether Mr. Fulks was prejudiced by trial counsel's ineffectiveness can only be answered by comparing the testimony and evidence actually presented at trial with the testimony and evidence that should have been presented at trial. Such a comparison should be apples-to-apples, not apples (live testimony) to oranges (affidavits). Only through consideration of live testimony can this Court accurately assess the credibility of the uncalled witnesses and the impact their testimony would have had on the jury.

Respectfully submitted,


/s/ Kirsten E. Small
Kirsten E. Small (Fed. ID No. 10005)
NEXSEN PRUET, LLC
55 East Camperdown Way (29601)
Post Office Drawer 10648
Greenville, SC  29603-0648
PHONE:  864.370.2211
KSmall@nexsenpruet.com

/s/ Beattie B. Ashmore
Beattie B. Ashmore (Fed. ID No. 5215)
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, SC 29601
PHONE:  864.467.1001
Beattie@beattieashmore.com

Attorneys for Petitioner
Chadrick E. Fulks

July 27, 2009
Greenville, South Carolina

9



Back to web version

# Bones identified as SC woman missing for 6 years

By MEG KINNARD
Associated Press Writer

Human remains found in South Carolina have been positively identified as belonging to a woman missing for more than six years, a woman who lead the search effort said Friday.

"They didn't think it was going to be this soon," Monica Caison, founder of Community United Effort - Center for Missing Persons, said about Alice Donovan's two adult daughters. "I think it's caught them both off guard."

Caison said authorities called her Friday to say the results of DNA tests conducted at the University of North Texas confirmed that remains discovered near a dirt road in January belonged to Donovan.

Donovan, a 44-year-old Galivants Ferry woman, was last seen pulling into a Wal-Mart parking lot in Conway, just north of Myrtle Beach, in November 2002.

Her kidnapping - captured on a security camera - and killing were the last major crimes of two convicts during a two-week spree that started when they broke out of a jail in Madisonville, Ky.

Authorities said Chadrick Fulks and Brandon Basham also carjacked a Kentucky man and left him tied to a tree in frigid temperatures in Indiana, shot a South Carolina man who refused to give them his vehicle, and attacked police officers in Kentucky and Ohio.

Both men were convicted in Donovan's death and are on federal death row. They also pleaded guilty to killing Samantha Burns, a 19-year-old Marshall University student, in West Virginia.

The discovery announced Friday might not have been possible without Fulks' help. Caison wrote to him on federal death row in Terre Haute, Ind., after one of Donovan's daughters approached her at a fundraiser marking the sixth anniversary of her mother's disappearance. The daughter was carrying a letter the convicted killer had written to a local newspaper saying he'd help find the body.

When Fulks wrote back, Caison left her Wilmington, N.C., home almost immediately to organize a search. At his direction, Caison plunged deep into a wooded area in Horry County, near the North Carolina line.

"His instructions were very specific," Caison said in January, as the search wrapped up. "He told me, 'You have to push forward. You have to go deeper. Go into the thicket, no one wants to search there.'"

Donovan's daughters joined in, trolling the dirt road in search of clues that would lead them to their mother's remains. A police technician swabbed their cheeks for DNA for comparison, in case they found something.

On Jan. 18, after about seven hours, dozens of volunteers and four dogs found bones in thick brush and thorns. Searchers later found remains in five different locations, about 15 miles from where Donovan disappeared.

Fulks has also tried to help locate Burns' remains in southwest West Virginia, but to no avail.

Angie Gilchrist, one of Donovan's daughters, told The Associated Press earlier this year she and her sister started planning their mother's funeral as soon as the first bone fragments were found. Now, Caison said the sisters are planning a memorial to thank the public for not giving up hope their mother would be found.

"I'm just glad they were able to get the identification of what we recovered," she said. "And now they can put their mom to rest."

© 2009 MyrtleBeachOnline.com and wire service sources. All Rights Reserved. http://www.myrtlebeachonline.com

Exhibit A

7/27/2009