IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

UNITED STATES OF AMERICA      ) Cr. No. 4:02-992-JFA
                                  )
         v.                 )
                                  )
CHADRICK E. FULKS          )

MEMO IN SUPPORT OF MOTION OF UNITED STATES TO LIMIT TESTIMONY

On July 27, 2009, Chadrick Fulks submitted a Witness List and Memorandum

Regarding Live Testimony.  Fulks proposes to call 28 witnesses to testify during his

hearing pursuant to 28 U.S.C. § 2255 on September 28, 2009.[1]   The United States asserts

that the Court should limit the witnesses whom Fulks may call based on the following:

**I.      Neither the Supreme Court nor the Fourth Circuit requires a district court to hold an evidentiary hearing and to allow live testimony in order to determine the disposition of the § 2255 claim.**

Under 28 U.S.C. § 2255(b), "[u]nless the motion and the files and records of the

case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a

prompt hearing thereon, determine the issues and make findings of fact and conclusions

of law with respect thereto."  Section 2255, however, "does not strip the district courts of

all discretion to exercise their common sense."  Marchibroda v. United States, 368 U.S.

487, 495 (1962); see also 28 U.S.C. § 2266(b)(1)(B)(noting that a hearing will be held "if

---

[1] Fulks has agreed to submit the testimony of twelve witnesses by affidavit if the Government will stipulate that "the facts averred in the witnesses' affidavits are true."  Pet.'s Mem. at 4.  The Government cannot agree to accept the statements of the affiants as "true." However, it agrees to stipulate that the statements are what the affiants would testify to if  called, with the stipulation that hearsay statements and other testimony violating any other rule of evidence would not have been allowed at the original penalty phase in June 2004.

necessary"). The Fourth Circuit Court of Appeals has opined that § 2255 and the holding

of Marchibroda make available to district courts "three possible methods, depending upon

the facts, of disposition of motions under Section 2255." Raines v. United States, 423

F.2d 526, 529 (4th Cir. 1970). Where the files and records conclusively show that a

petitioner is entitled to no relief, summary dismissal is appropriate. Id. Even when it is

not clear that a petitioner is entitled to no relief, "there is a permissible intermediate step

that may avoid the necessity for an expensive and time consuming evidentiary hearing."

Id. In such cases, it may be appropriate for a district court to proceed by requiring that the

record be expanded to include letters, documentary evidence, and, "in an appropriate

case, even affidavits." Id. at 529-530 (citing United States v. Carlino, 400 F.2d 56 (2d

Cir. 1968); Mirra v. United States, 379 F.2d 782 (2d Cir. 1967); Accardi v. United States,

379 F.2d 312 (2d Cir. 1967)); see also Jackson v. United States, – F.Supp. –, 2009 WL

1796998, *8 (W.D.N.C. June 19, 2009)(district court denied evidentiary hearing in death

penalty § 2255 action). Nonetheless, there will be some petitions requiring evidentiary

hearings in open court. Id. at 530. Whether such a hearing is necessary, and whether a

petitioner's presence is required, "is best left to the common sense and sound discretion

of the district judges." Id. (citing Machibroda, 368 U.S. at 495). Further, the trial judge,

in ruling on a § 2255 petition, may make use of his knowledge of the case and his

personal observations in ruling on attacks against convictions and sentences. See United

States v. Smith, 337 F.2d 49, 53 (4th Cir. 1964); Mira, 379 F.2d at 788.

When a petitioner submits an affidavit in support of a claim, if the information in the affidavit, even if assumed to be true, does not provide a basis for relief, then the court may properly conclude that an evidentiary hearing is not required. Mirra, 379 F.2d at 787. The standard to be used in making this determination is whether, if the evidence were offered at a hearing, it would be admissible proof entitling the petitioner to relief. Hayden v. United States, 814 F.2d 888, 892 (2d Cir 1987). Mere generalities or hearsay statements will not normally entitle a petitioner to a hearing, since hearsay would be inadmissible at the hearing. Id. When the records of a case make manifest the lack of merit of a § 2255 claim, the trial court is not required to hold an evidentiary hearing. United States v. Hughes, 635 F.2d 449 (5th Cir, Unit B, 1981).

**II.     The holdings of <u>Wiggins v. Smith</u>, 539 U.S. 510, 522 (2003); <u>Williams v. Taylor</u>, 529 U.S. 362 (2000); and <u>Rompilla v. Beard</u>, 545 U.S. 374 (2005) do not support Fulks' assertion that this Court must hear live testimony to compare evidence that was presented during Fulks' trial with evidence he now claims should have been presented.**

Fulks states that the "Supreme Court has instructed that the question of whether Mr. Fulks was prejudiced by trial counsel's ineffectiveness can only be answered by comparing the testimony and evidence actually presented at trial with the testimony and evidence that should have been presented." (Pet.'s Mem. at 8.) In addition to assuming that Fulks' counsel was ineffective, this statement appears to misstate the law. The Government is aware of no case, and Fulks has cited no case, requiring an evidentiary hearing to allow a petitioner to present evidence he claims should have been presented at

trial.  This would essentially allow a defendant to have a second trial to see if a different strategy would have resulted in his acquittal.  Such is not the purpose of 28 U.S.C. § 2255.

Fulks' attempt to compare his case with Wiggins, Williams, and Rompilla misses the point of those cases, in which trial representation was very different from the representation received by Fulks.  The overarching theme in all three cases was that trial counsel's failure to investigate was shocking.  In Wiggins v. Smith, 539 U.S. 510, 522 (2003), the Supreme Court stated: "[O]ur principal concern in deciding whether [trial counsel] exercised 'reasonable professional judgment,' is not whether counsel should have presented a mitigation case.  Rather, **we focus on whether the investigation supporting counsel's decision not to introduce mitigating evidence of [the defendant's] background was itself reasonable**."  (Emphasis provided.)  In Wiggins, trial counsel not only failed to introduce any evidence of the defendant's life history, which was horrendous, they did not bother to retain a forensic social worker to investigate.  Id. at 515-517.  The court held that "counsel's **decision not to expand their investigation** beyond the PSI and the DSS records fell short of the professional standards" that prevailed in their state at the time of the trial.  Id. at 523(emphasis provided).   In Wiggins, it was not until the defendant sought postconviction relief that a licensed social worker prepared an elaborate social history report containing evidence of the severe physical and sexual abuse the defendant suffered at the hands of his mother

and while he was in the care of a series of foster parents.  Id. at 516.

In Williams v. Taylor, 529 U.S. 362 (2000), trial counsel did not begin preparing for the sentencing phase of the proceeding until a week before the trial.  They **failed to conduct an investigation** that would have uncovered extensive records graphically describing Williams nightmarish childhood, not because of any strategic calculation but because they incorrectly thought that state law barred access to such records.  Id. at 395.  Counsel failed to introduce available evidence that Williams was "borderline mentally retarded."  Id. at 396.  They failed to seek prison records indicating that Williams had been commended for helping crack a prison drug ring and for returning a guard's wallet.  The court held that trial counsel did not fulfill their obligation to conduct a thorough investigation of the defendant's background.  Id.

In Rompilla v. Beard, 545 U.S. 374 (2005), defense counsel knew that the prosecution intended to seek the death penalty by proving Rompilla had a significant history of felony convictions involving the use or threat of violence, an aggravating factor under state law.  Id. at 383.  Yet defense counsel did not look at the prior convictions file until the day before the sentencing phase of the trial began.  Id. at 383.  Even then, he apparently failed to examine anything other than a transcript.  Id. at 385.  The court concluded that counsel's failure to adequately examine the file was unreasonable.  Id.  at 388.  In turning to the prejudice prong of Strickland, the court found that had defense counsel looked in the file, they would have found a range of mitigation leads that no other

source had opened up.  Id. at 390.  The same records contained records of Rompilla's imprisonment which revealed his childhood and mental health were very different from anything else trial counsel had heard or seen.   It also revealed test results pointing to schizophrenia, and would have "destroyed the benign conception of Rompilla's upbringing and mental capacity defense counsel had formed" from talking with Rompilla and some family members.  Id. at 391.   Defense counsel would have discovered that Rompilla's parents were severe alcoholics, that his mother drank during her pregnancy with him, that his father had a vicious temper and beat his mother, leaving her bruised and black-eyed, that his parents fought violently, that he was abused by his father, who beat him with his fists, leather straps, belts, and sticks, that there were no expressions of love or affection, that Rompilla's father locked him and his brother in a small wire mesh dog pen filled with excrement, that he was not allowed to visit with other children, and that the children were not given clothes.  Id. at 392.  Although mental health experts had examined Rompilla prior to his trial, they were not aware of this information, and did not find anything helpful to Rompilla's case.  Id.  Yet Rompilla's post-conviction mental health experts, seeing the red flags indicated by his background, performed further tests which revealed that he suffered from organic brain damage.  Id. at 393.  School records showed that Rompilla's IQ was in the mentally retarded range.  Id.  The Supreme Court found that the undiscovered mitigation evidence, taken as a whole, might have influenced the jury's appraisal of Rompilla.

As indicated by Wiggins, Williams, and Rompilla, in deciding the performance prong of Strickland, a court's focus is on whether the investigation supporting counsel's decision not to introduce particular mitigating evidence was reasonable. See Wiggins, 539 U.S. at 523. There can be no doubt that the investigation of mitigating evidence by Fulks' counsel was reasonable. In fact, it far exceeded what is required. The trial record shows that counsel obtained a social history and opinions from two mitigation experts and opinions by prison security experts, psychologists, neurologists, and psychiatrists, including the ones Fulks claims should appear as witnesses at an evidentiary hearing. *See* Attch. A, Defendant's Summary of Testimony That Defense Counsel Intends to Use under Rule 702, 703, or 705 of the Federal Rules of Evidence Pursuant to Rule 16(b)(1)(C)(submitted in part)[2]; see also Attch. B, Excerpts of Trial Testimony on Feb. 25, 2009, Testimony of Drucie Glass (Ms. Glass met with Fulks a number of times to gather his life history and develop his social history. She and Dr. Andrews , another mitigation investigator spent a lot of time in West Virginia and Indiana interviewing Fulks family and friends.)

Additionally, the Court has access to vouchers and information provided to support them, thus providing further information regarding the extent of the investigation

---

[2] Interestingly, attached to Fulks' Summary of Testimony is Dr. James Hilkey's letter dated Jan. 5, 2004 to John Blume in which he states "While Chad has a significant elevation of Scale 4 (psychopathic -deviant ) Antisocial Personality Disorder is his [Fulks'] primary problem." In Dr. Hilkey's subsequent Declaration (dated June 2, 2008) in support of Fulks § 2255 Petition, PA Doc. 4, ¶ 17, Dr. Hilkey states that Fulks did not present with indicators of Antisocial Personalty Disorder.

accomplished by trial counsel.[3]  See Jackson v. United States, -- F.Supp. –, 2009 WL 1796998, *13 (W.D.N.C. June 19, 2009)(court reviewed attorney vouchers to determine that trial attorney had adequate time to prepare for trial); id. at *16 ("As noted from [trial counsel's] attorney vouchers and the contemporaneous pretrial motions, the quantity of work done in preparation for trial is grossly understated by the Petitioner, trial counsel, and habeas counsel.")  Thus, the Court can determine from the record that trial counsel fulfilled its obligation to conduct a reasonable and thorough investigation to determine what mitigation evidence and testimony should be presented at trial.

While the Government believes that Fulks' § 2255 Motion can be decided on the performance prong of Strickland, if the Court chooses to make a determination regarding the prejudice prong, the Court has a record of what the testimony of the proposed witnesses would be.  Unlike the situations in Wiggins, Williams, and Rompilla, the evidence was fully developed prior to Fulks' trial.

Based on the above, under Raines, it is appropriate for the Court to take the intermediate step as to Fulks' claims regarding counsel's failure to present mental health and prison security expert testimony.  Therefore, the Government requests the Court to deny Fulks' proposal to call Drs. Hilkey, Halleck, Melikian, and Morton, and James

---

[3]  It is the Government's understanding that the Court, however, does not have a record of the hours worked by counsel Bill Nettles, and any expenditures by the Public Defender's office in preparation for Fulks' trial.

Aiken[4] and Mark Cunningham as witnesses during the evidentiary hearing on September

28, 2009.

**III.    The Court must decide whether the representation provided by Fulks' trial counsel satisfies the requirements set forth in <u>Strickland</u>, and the testimony of a legal expert regarding American Bar Association standards would be of limited value.**

Fulks states that Andrea Lyon

> is expected to testify generally to the standards set forth by the American Bar Association (ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases) regarding the performance of defense counsel, which was cited with approval by the United States Supreme Court in <u>Wiggins v. Smith</u>, 539 U.S. 510, 522 (2003) and in <u>Florida v. Nixon</u>, 543 U.S. 175, 190 (2004).

Pet.'s Mot. at 3.  The Supreme Court has stated that prevailing norms of practice as

reflected in the ABA Standards are "guides to determining what is reasonable, but they

are **only guides**."  <u>Strickland v. Washington</u>, 466 U.S. 668, 688 (1984)(emphasis added).

While the Supreme Court has referenced ABA standards in decisions subsequent to

<u>Strickland</u>, it has never held that they are anything more than "guides."  <u>See</u> <u>Rompilla v.

Beard</u>, 545 U.S. 374, 400 (2005)(Scalia, J., dissenting)("while we have referred to the

ABA Standards for Criminal Justice as a useful point of reference, we have been careful

to say these standards 'are only guides' and do not establish the constitutional baseline for

effective assistance of counsel.")[5]  <u>Strickland</u> recognized that specific guidelines beyond

---

[4]  James Aiken testified at the trial of Brandon Basham.

[5]  The ABA Guidelines "certainly cannot be dispositive in and of themselves."  <u>Meyer v. Branker</u>, 506 F.3d 358, 372 (4th Cir. 2007).

"an objective standard of reasonableness. . . . are not appropriate." 466 U.S. at 688. The

Court observed:

> No particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant. Any such set of rules would interfere with the constitutionally protected independence of counsel and restrict the wide latitude counsel must have in making tactical decisions. Indeed, the existence of detailed guidelines for representation could distract counsel from the overriding mission of vigorous advocacy of the defendant's cause.

Id. at 688-689. The Supreme Court has made clear that Strickland continues to provide

"sufficient guidance for resolving virtually all ineffective-assistance claims." Williams v.

Taylor, 529 U.S. 362, 363 (2000).

Opinion testimony that states a legal standard or draws a legal conclusion by

applying law to the facts is generally inadmissible. The United States does not dispute

that what is contained in Ms. Lyon's affidavit is her opinion of what is required in order

for counsel to provide effective representation in a death-penalty case. However, the

Supreme Court, as discussed above, has made it clear that there is no one set of standards

applicable to all cases. Even if Ms. Lyons attempted to apply her opinion to the facts of

Fulks' case, such an opinion would be of little value. The reasonableness of a strategic

decision is a question of law to be decided by the Court, not a matter subject to factual

inquiry and evidentiary proof. See Newland v. Hall, 527 F.3d 1162, 1208 (11th Cir.

2008)("it would not matter if a petitioner could assemble affidavits from a dozen

attorneys swearing that the strategy used at his trial was unreasonable"); Provanzano v.

Singletary, 148 F.3d 1327, 1332 (11ᵗʰ Cir. 1998). One of the purposes of the enactment of

§ 2255 was to make use of the trial judge's knowledge of the case in ruling on an attack

by a petitioner on his conviction. See Mira, 379 F.2d at 788. Thus, it is this Court, being

intimately familiar with Fulks' case, who should determine whether Fulks received

reasonable representation, and Ms. Lyons' opinion regarding the application of the ABA

standards would be of limited value.

**IV.     The record regarding Sheriff Ronald Hewett's knowledge has been fully
          developed, and additional testimony would serve no purpose.**

Whether appellate counsel was ineffective in not arguing that the Court erred in

refusing to allow Sheriff Hewett's testimony during trial is a question of law, not fact.

Therefore, there is no basis for such testimony at an evidentiary hearing. The Court has

heard arguments and testimony regarding this issue, and is completely familiar with the

facts, which are contained in legal memos and transcripts of arguments. (Tr. of Hrng. on

February 25, 2004, pp. 14-22; Hrng. on June 22, 2004, pp. 246-256; Basham TT, Aug. 27,

2004, pp. 24-28; Response of the United States to Pet.'s Supp. Mem. In Supp. of his Mot.

for Leave to Conduct Discovery, Docket Entry # 1110.)

On September 18, 2008, in ruling on Fulks' Motion for Leave to Conduct

Discovery (Docket Entry #1115), the Court stated:

> [T]he court has reviewed the transcripts from petitioner's trial and from his co-
> conspirator's trial, as well as the parties' briefs, and the court concludes that
> allowing petitioner to depose the sheriff would not likely enable petitioner to
> develop facts demonstrating that he is entitled to relief.
> [T]here is little to no dispute regarding the substance of the sheriff's testimony,

which has been given under oath numerous times. The dispute instead relates to the inference to be drawn from the co-conspirator's statement and to what petitioner alleges is an inconsistency in the Sheriff's testimony. . . . These are issues on which additional testimony by the sheriff would shed no additional light. . . . to the extent the testimony or the Government's position regarding the testimony at the two trials was consistent or inconsistent, the record must speak for itself.

Fulks has provided no reason why the Court should now alter its opinion. Consequently, the Court should deny Fulks' request to allow testimony by Sheriff Hewett.

### IV.     Proposed testimony by Monica Wolowinski is either cumulative or would not have been admissible during Fulks' trial.

Fulks states that Monica Wolowinski would testify "to her personal knowledge of Mr. Fulks's upbringing, particularly her concerns that Mr. Fulks was sexually abused by his father when he was a child." Ms. Wolowinski's Affidavit states that Fulks' childhood home was filthy, that his mother cursed at him, that both parents physically abused him that he was often hungry, and that he did not have proper clothing. Pet.'s Mot. at 2. As discussed in the Government's response to Fulks' § 2255 motion, trial counsel presented witnesses who testified to all of these conditions during Fulks' trial. In fact, all twelve jurors found that Fulks' lived in a filthy house, that he was subjected to physical abuse, that his parents gave him little attention, and that he did not have adequate clothing.

Fulks has failed to show that Wolowinski would be able to present any significant testimony that he was sexually abused. Ms. Wolowinski's affidavit states that Ronnie Fulks, when he was a child, told her that Fulks suffered sexual abuse from his father. Ronnie Fulks could have testified to this at trial, if it were true, but he did not testify to

any sexual abuse by Fulks' father. Such testimony by Wolowinski would have been inadmissible hearsay at trial. Thus, testimony by Wolowinski would not show that Fulks' trial counsel's representation was unreasonable because they failed to discover and present Ms. Wolowinski's testimony.

**V.     Proposed testimony by Elvin Taylor would not indicate that trial counsel's representation was unreasonable or that Fulks was prejudiced by counsel's failure to interview him or to present testimony by him**.

Fulks states that Elvin Taylor would testify regarding Fulks' behavior while he was at the Westville Correctional Facility in 2001. Based on Taylor's Affidavit, trial counsel's representation was not unreasonable due to their failure to interview Mr. Taylor and call him as a witness. His testimony would have also been undermined by testimony by Tina Severance, who was a guard at Westville Correctional Facility when Fulks was an inmate. (TT, Vol. III at 27.) Severance's testimony and Government exhibits show that during the time Fulks was involved in a highly structured and "stringent" program in which Taylor was a counselor, Fulks was attempting to convince Severance to violate prison rules and to smuggle contraband into the prison to him. (TT, Vol. III at 208-215.)

That Fulks was able to convince Mr. Taylor that he was a model prisoner and at the same time violate prison rules highlights Fulks' ability to manipulate and con prison personnel. This ability was also demonstrated when he was incarcerated in Myrtle Beach and convinced a fellow inmate's mother to provide him with bond money and a car so he could go to West Virginia, where his wife, baby girl, and mother-in-law were supposedly

13

dead or dying after a collision with a tractor-trailer.  Further, testimony by Taylor that

Fulks was an ideal prisoner would have had little credibility in light of the evidence that,

subsequent to his incarceration at Westville, Fulks escaped from the Hopkins County Jail,

and that while he was incarcerated at Lexington County Jail and Just Care, he refused to

follow orders to the point of biting and kicking officers.   Thus, it is clear that testimony

by Elvin Taylor would not assist Fulks in satisfying either prong of the Strickland

standard.  Consequently, testimony by Taylor would serve no purpose.

**VI.     Additional testimony regarding the search for Alice Donovan's remains would not go toward the issue of whether Fulks was provided effective assistance of counsel.**

Fulks proposes to call Pete Skidmore, Monica Caison, and Heather Roche to

testify regarding their efforts to locate the remains of Alice Donovan.  Pet.'s Mot. at 2.

Mr. Skidmore and Ms. Roache both testified at Fulks' trial regarding the extensive search

for Alice Donovan's remains.  (TT, Vol. XIX at 8-24, 41-44.)  There has been no

allegation that Fulks' trial counsel failed to conduct a reasonable investigation regarding

this matter, and any such allegation would be refuted by the record.  To the Government's

knowledge, Monica Caison recently became involved in the efforts to locate Ms.

Donovan's remains.   Fulks has not shown how testimony by these three witnesses would

show that he is entitled to relief.[6]

---

[6]  The Government intends to file a memorandum in opposition to Fulks' motion to amend his § 2255 motion to add a proposed claim XXXIII regarding the recent discovery of a few bones that have been identified as the remains of Alice Donovan.

14

**VII.** **There are no material factual disputes, so testimony by anyone other than Fulks' trial counsel would not assist in the disposition of Fulks' Motion.**

Even if habeas allegations are not subject to summary dismissal, this does not necessarily entitle a petitioner to an evidentiary hearing.  United States v. White, 366 F.3d 291, 297 (4th Cir. 2004).  "[O]ften, after discovery, a court may determine that no material facts are disputed, and so can resolve even non-frivolous allegations on summary judgment."  Id.  However, if the parties produce evidence disputing material facts with respect to non-frivolous habeas allegations, a court must hold an evidentiary hearing to resolve those disputes.  Id.  (citing 28 U.S.C. 2255; United States v. Magini, 973 F.2d 261, 264 (4th Cir. 1992)).

Experts are not fact witnesses.  They have offered their opinions based on their expertise in certain areas and, in some cases, based on their examination of Fulks.[7]  This does not provide a situation where the Court needs to observe the demeanor of the witnesses to determine their credibility, which might be the case where there are material factual disputes.

As to the proposed fact witnesses, most of what they could have testified to at trial would have been cumulative, and they have provided no additional facts that if believed would have changed the outcome of the trial.  Similarly, Fulks has failed to show any reason why the testimony of counsel's former law students would show that he received

_____

[7] Some of the reports refer to statements made by Fulks.  While Fulks' statements may have affected the opinions of the experts, they can be taken for nothing more.

15

ineffective assistance of counsel.  Defense counsel's failure to call certain witnesses is not a sufficient ground for granting a § 2255 claim.  Hughes, 635 F.2d at 453.  "Counsel for a criminal defendant is not required to pursue every path until it bears fruit or until all conceivable hope withers."  Id. (citing Lovett v. State of Florida, 627 F.2d 706, 708 (5th Cir. 1980)).  This Court is not required to hold an evidentiary hearing to allow every potential witness whom Fulks' counsel did not present at his trial to now testify to confirm the testimony given at trial or to add a few additional and non-material details.

CONCLUSION

The Court should deny Fulks' request for testimony by all proposed witnesses except  John H. Blume, William F. Nettles, IV, and Sherri Lynn Johnson.

Respectfully submitted,

W. WALTER WILKINS
United States Attorney

BY: s/Robert F. Daley. Jr.
ROBERT F. DALEY, JR. (#6460)
Assistant United States Attorney

BY: s/Jimmie Ewing
JIMMIE EWING (#7292)
Assistant United States Attorney

August 7, 2009

16