IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| United States of America | ) | CR. NO. 4:02-992-JFA |
| | ) | |
| v. | ) | |
| | ) | ORDER |
| Chadrick E. Fulks | ) | |
| | ) | |
| | ) | |

This matter came before the court for a hearing on August 11, 2009, to determine which of the proposed witnesses are necessary to be heard by way of oral testimony at the hearing on Petitioner's Motion to Vacate Conviction and Sentence and for a New Trial Pursuant to 28 U.S.C. § 2255 and Fed. R. Crim. P. 33 ("2255 Motion") filed June 23, 2008. After hearing from counsel, the court announced its ruling on the record. This order serves to memorialize the court's rulings on the matters addressed at the hearing. The court will begin the hearing on the 2255 Motion on Monday, October 5, 2009, at 9:30 a.m ("§ 2255 Hearing"). In light of counsel's representation at the hearing, the court directs that Petitioner appear via video conference.

I.      Witnesses Testimony

        A.      Trial Counsel

The court will hear live testimony from (1) trial counsel for Petitioner: **John H. Blume, III**, **William F. Nettles, IV**, **Sherri Lynn Johnson**, and (2) trial counsel for the government, **Johnny Gasser** and **Scott Schools**.

B.      Expert/Lay Witnesses

1.      Witnesses Concerning Search for Alice Donovan's Remains

The court maintains under advisement the need to call **Monica Caison**, **Pete Skidmore**, **Heather Roche**, whom Petitioner proposes to present as witnesses concerning efforts to conduct factual and mitigation investigation in relation to the sentencing trial, including efforts to locate the remains of Alice Donovan. The court is awaiting the government's brief opposing the anticipated testimony of these witnesses on the grounds that no testimony was presented at the sentencing trial that Petitioner obstructed the search for Ms. Donovan.

2.      Sheriff Ronald Hewitt

Petitioner proposed to offer live testimony from **Sheriff Ronald Hewitt** about what Petitioner's co-defendant Brandon Basham said to Sheriff Hewitt about the alleged use of a purse strap to kill Alice Donovan and concerning Basham's so-called "deer statement." The government filed a supplemental brief on August 13, 2009 opposing Hewitt's testimony. After considering the arguments of counsel and reviewing the briefs and record, the court finds it unnecessary to hear Sheriff Hewitt's testimony again. He has testified under oath about the purse strap twice—at Petitioner's pretrial hearing on February 25, 2004, and at Basham's trial. The information that Sheriff Hewitt can offer only marginally relates to Petitioner's habeas claim XIX that his due process rights were violated by the government's presentation of allegedly inconsistent theories in Petitioner's and Basham's trials. The court finds there is no need for additional testimony to resolve the legal issue related to the purse strap.

With respect to Petitioner's habeas claim XVIII concerning appellate counsel's alleged ineffectiveness for failing to appeal the court's refusal to admit into evidence Basham's "deer statement,"the court finds that Sheriff Hewitt's testimony has been clear both times he has testified and that additional testimony from him would not impact Petitioner's claim related to this issue. Therefore, the court will not be receiving live testimony from Sheriff Hewitt.

       3.     Andrea Lyon

At the hearing, counsel for Petitioner represented that **Andrea Lyon**, the proposed witness concerning the ABA Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases, is unavailable to testify. Therefore, the court will not be receiving live testimony from Lyon.

       4.     Mental Health Experts:

The court will hear live testimony from **Dr. Seymour L. Halleck**, whom Petitioner proposes will testify generally to his evaluation and assessment of Petitioner's cognitive deficits and mental illness in connection with presenting mitigating circumstances at Petitioner's sentencing hearing.

The court will hear live testimony from **Dr. James H. Hilkey**, whom Petitioner proposes will testify generally to his psychological evaluation and assessment of Petitioner as it pertains to the mitigating factors defined in 18 U.S.C.A. § 3592.

At the hearing, counsel for Petitioner represented that the following mental health experts will not be called live to testify:

       a)     **Margaret Melikian, D.O.**, who had been listed as expected to testify

generally to her evaluation and assessment of Petitioner's cognitive deficits and mental illness, particularly her opinion that he meets the diagnostic criteria for Axis I diagnosis of Cognitive Disorder, Not Otherwise Specified.

b) **William Alexander Morton, Jr., Pharm.D.**, who had been listed as expected to testify generally to the psychological and neurological effects of methamphetamine use and their highly addictive nature, particularly the effects methamphetamine use had on Petitioner.

5. Lay Witnesses Petitioner Will Not Call Live, But By Affidavit

At the hearing, counsel for Petitioner represented that the following lay witnesses will not be called live to testify, but via affidavit, where applicable. The court will receive the affidavits with the government's stipulation that the testimony is what the witnesses would have testified to if called live, but not that the facts averred in the affidavits are necessarily true. Should the court find that live testimony is necessary from any of these witnesses, the court will resume the hearing on October 21, 2009 to receive the same.

a) **Monica Wolowinski** is expected to testify generally to her personal knowledge of Petitioner's upbringing, particularly her concerns that he was sexually abused by his father as a child.

b) **Elvin Taylor** is expected to testify generally to his personal knowledge of Petitioner's behavior at the Westville Correctional Facility during the time Petitioner was an inmate at that facility.

c) Either **Dr. Mark D. Cunningham** or **James E. Aiken**. Petitioner expects to present testimony from either Dr. Cunningham generally to the high likelihood

that Petitioner will not engage in violent acts during a natural life term in the Federal Bureau of Prisons, or from James E. Aiken generally to his opinion that Petitioner will not likely present a risk to other prisoners, staff, the public, and his ability to adjust and adapt favorably to confinement.

d) Either **Tim Kane** or **Matthew Rawlings,** one of whom Petitioner expects to testify generally to their role and experience as students working as members of Petitioner's trial team under the direction of John Blume.

e) **Mark Thompson** is expected to testify generally to his personal knowledge of Petitioner's family life, particularly his propensity to act as a follower and not a leader.

f) **Mark Fulks, Martha Floyd, Ronnie Fulks**, and **Linda Adkins** are expected to testify generally to the lack of preparation by trial counsel prior to being called as witnesses at Petitioner's sentencing trial.

g) **Tracy Graybeal** is expected to testify generally to her personal knowledge of Petitioner's upbringing, particularly Petitioner's admission of being sexually abused by his sister when he was a child.

h) **Andrea Roddy** is expected to testify generally to her experience with agents of the Federal Bureau of Investigation ("FBI") prior to Petitioner's sentencing trial.

i) **Nathan Fulks** is expected to testify generally to his personal knowledge of Petitioner's family life, including allegations that Petitioner was sexually abused when he was a child.

j) **Harry Tyree** is expected to testify generally to his personal knowledge

of Petitioner's family life, particularly his observations of Petitioner's behavior during Sunday School.

 k) **Sharon Dotson** is expected to testify generally to her personal knowledge of Petitioner's family life, particularly allegations of physical abuse suffered by his mother, Diane Fulks.

 l) **Beth McGuffin** and **Christina Kirkman** are expected to testify generally to their personal knowledge of Petitioner's family life.

 C. Rebuttal Witnesses

The court will permit the government to call as potential rebuttal witnesses FBI agents **Jeff Bruning** and **Jeff Long**, as well as mental health experts **Dr. Ralph Newman** and **Dr. Edward E. Landis**.

II. Petitioner has Waived the Attorney-Client Privilege

At the hearing, the court granted the government's motion [dkt. # 1205] for an order ruling that Petitioner has waived the attorney-client privilege by filing his motion for post-conviction relief pursuant to 28 U.S.C. § 2255. The government seeks to compel the production of all materials relating to Petitioner's trial counsel's representation, which the government claims is necessary for its preparation for the § 2255 Hearing. The government further seeks a court ruling that Petitioner's waiver permits his former trial counsel to discuss their representation with counsel for the government.

It is well-settled that when a defendant moves to vacate his conviction by claiming ineffective assistance of counsel, he waives the attorney-client privilege. See e.g., Johnson v. Alabama, 256 F.3d 1156 (11th Cir. 2001); Tasby v. United States, 504 F.2d 332, 336 (8th

Cir. 1984); <u>Laughner v. United States</u>, 373 F.2d 326 (5th Cir. 1967).  The court agrees with the government that by attacking the representation of his trial counsel, Petitioner has publicly assailed counsel's competence and put at issue privileged communications with them.  At the hearing, Petitioner's habeas counsel conceded that the government is entitled to interview Petitioner's trial counsel.

The court is persuaded by the authorities cited by the government that there has been a waiver of the attorney-client privilege in this case in view of the claims that have been asserted in the § 2255 Motion, such that trial counsel's documents need to be produced for government counsel's review prior to the § 2255 Hearing.  The court wishes to avoid a situation in which trial counsel is on the stand and claims he does not remember and the court is forced to then take a recess and to allow the government and trial counsel to look through the documents and then resume the hearing.  Judicial economy and efficiency are better served by having the document production in advance of the § 2255 Hearing.

Therefore, in accordance with the court's ruling at the hearing, Petitioner's counsel is ordered to provide immediate production to the government of the disks of scanned documents in counsel's possession, together with the index to said scanned documents. The scanned documents are to be produced in their native form so that they are searchable.  To the extent that counsel has been able to determine which documents were not scanned from the file boxes, counsel is directed to provide this information and the unscanned documents to the government.

Any and all materials pertaining to communications and advice passing between Petitioner and trial counsel, John Blume, Sherri Johnson, and William Nettles, pretrial and

trial, are ordered to be produced to the government immediately, whether the notes have been scanned or not.

Once the government has had an opportunity to review the electronic production and the notes produced, the court will be available for another hearing prior to the § 2255 Hearing to determine whether the order of production should be expanded.

IT IS SO ORDERED.

Joseph F. Anderson, Jr.
United States District Judge

August 20, 2009
Columbia, South Carolina