| | |
|---|---|
| United States of America, | Case No. 4:02-992-JFA |
| Respondent, | |
| vs. | **MOTION TO RECONSIDER** |
| Chadrick E. Fulks, | |
| Petitioner. | |

COMES NOW Petitioner Chadrick E. Fulks and moves for reconsideration of the order of this Court dated August 21, 2009 ("Order"). With respect to witnesses to be called at the evidentiary hearing, the Order misstates Mr. Fulks's position as to necessary witnesses. With respect to the issue of attorney-client privilege, the Order is substantially overbroad and inadequately protective of the sanctity of attorney-client communications.

**RELEVANT BACKGROUND**

Currently pending before this Court is the *Amended Motion of Chadrick E. Fulks To Vacate Conviction and Sentence and For A New Trial Pursuant To 28 U.S.C.A. § 2255 and Rule 33 of the Federal Rules of Criminal Procedure* ("Amended Motion to Vacate"). Mr. Fulks has raised 33 claims for relief, which include several claims that trial and appellate counsel were ineffective. This Court has scheduled an evidentiary hearing to begin on Monday, October 5, 2009. Mr. Fulks proposes to call multiple witnesses at the hearing, including several experts who were not called at trial and trial counsel John Blume, Sheri Johnson, and Bill Nettles.

On August 4, 2009, counsel for the government filed the "Government's Motion for a

Ruling on Waiver of the Attorney-Client Privilege …" asserting that by making ineffective-assistance claims, Mr. Fulks had waived the attorney-client privilege.  The government asserted entitlement to "production of all materials relating to Fulks' trial counsel's representation of Fulks, held by trial counsel or any of Fulks' counsel on the post-conviction motion."  Motion at 1.  Counsel for the government also sought leave to "discuss" the case with trial counsel.  Id.  Mr. Fulks opposed the motion, arguing that the unanimous view of the courts is that the waiver of attorney-client privilege in post-conviction proceedings is strictly limited to the scope of the ineffective-assistance claims actually raised by the petitioner; there is no global waiver of privilege and no general right to disclosure of the extremely broad nature sought by the government.

In late July 2009, Mr. Fulks and the government submitted witness lists to the Court.  Mr. Fulks's witness list contained, broadly speaking, three categories of witnesses:  lay witnesses, expert witnesses, and trial counsel.  At a hearing conducted on August 11, 2009, Mr. Fulks offered to rest on affidavits by the lay witnesses if the government would stipulate to the credibility of the assertions therein.  Mr. Fulks reiterated his desire to call several experts to testify live, including Drs. Hilkey, Halleck, and Melikian and attorney Andrea Lyon.  Mr. Fulks noted that the availability of Dr. Melikian and Ms. Lyon was uncertain.  Mr. Fulks also requested that former Brunswick County Sheriff Ronald Hewett be called to testify regarding co-defendant Branden Basham's confession to having strangled Alice Donovan with a purse strap.[1]

On Friday, August 21, 2009, this Court entered an order regarding witness testimony and the waiver of attorney-client privilege.  As to witnesses, the Court stated in relevant part that Dr. Melikian would not be called and that Ms. Lyon was unavailable.  Order at 3-4.  The court

---

[1] Sheriff Hewett has been convicted of obstruction of justice for tampering with a state grand

additionally stated that lay witnesses would be called live if the Court decided that live testimony was necessary. Finally, the Court denied Mr. Fulks's request for the live testimony of Sheriff Hewett, reasoning that Sheriff Hewett's testimony related "only marginally" to Claim XIX and that live testimony would not be necessary. Order at 2-3.

## ARGUMENT

I. THE ORDER OF THE COURT WITH RESPECT TO WITNESSES REQUIRES MODIFICATION

Mr. Fulks respectfully suggests that the Order entered by the Court reflects inaccurately both Mr. Fulks's position regarding certain witnesses and the rulings announced by the Court at the August 11 hearing.

### A. Fact witnesses

In his Witness List and Memorandum Regarding Live Testimony, Mr. Fulks sought to present live testimony from several identified fact witnesses, including witnesses who could testify regarding potential sexual abuse of Mr. Fulks as a child and to trial counsel's improper decision to rely on law students to conduct key portions of the mitigation investigation. In order to streamline the presentation of evidence, Mr. Fulks offered to rest on the affidavits of certain witnesses, provided the government was willing to stipulate to the credibility of the witnesses' statements. Cf. United States v. White, 366 F.3d 291, 300-01 (4th Cir. 2004) (remanding for evidentiary hearing when government contested factual assertions made in petitioner's sworn affidavit). The Memorandum argued the importance of the presentation of live testimony to the extent that any credibility determination was at issue.

At the hearing on August 11, counsel for Mr. Fulks reiterated their view that Mr. Fulks could not receive a fair hearing unless one of two things occurred with respect, at least, to fact

---

jury investigation of his office. He is currently in federal prison serving a 16-month sentence.

witnesses: (1) the witnesses were allowed to testify live, or (2) the statements in the witnesses' declarations were accepted as credible. The government refused to stipulate to the witnesses' credibility but also argued that Mr. Fulks should not be allowed to present any live testimony. The Court left the question of live testimony open, noting that it would revisit the issue of live, fact witness testimony if requested to do so by Mr. Fulks or the government, or if the Court itself determined that live testimony was necessary in order to make a credibility determination. However, the Order provides that fact witnesses will be called to testify live only if "the court find[s] that live testimony is necessary." Order at 4.

Mr. Fulks respectfully asks that the Court clarify the Order to specify that Mr. Fulks has not abandoned his desire for live testimony of fact witnesses and that the Court has left open the opportunity for further argument from counsel regarding the necessity of live testimony. Alternatively, Mr. Fulks urges the Court to proceed on the premise that the factual allegations of the fact witnesses' affidavits are credible.

### B. Andrea Lyon

At the August 11 hearing, counsel for Mr. Fulks noted some uncertainty regarding Ms. Lyon's availability but at no point indicated that Mr. Fulks did not desire to present her testimony if, in fact, she were available. Mr. Fulks can now advise the court that counsel have spoken to Ms. Lyon and she has indicated her availability to testify on Mr. Fulks's behalf. Ms. Lyon, who has tried numerous death penalty cases and has received "life" verdicts in all of them, can testify cogently to reasonable tactical and strategic approaches to capital litigation and can identify areas in which trial counsel's performance fell short. She is, simply, a critical witness for Mr. Fulks. Mr. Fulks therefore requests that the Order be modified to reflect that Ms. Lyon will testify at the evidentiary hearing.

**C.     Margaret Melikian**

The Order entered by the Court indicates that Dr. Melikian will not testify.  In fact, Mr. Fulks desires to present Dr. Melikian's testimony but cannot verify her availability at this time.  During the hearing, the Court indicated that the question of whether Dr. Melikian would be allowed to testify would be left open until Mr. Fulks had obtained information regarding her availability.  See Transcript (Aug. 11, 2009) at 35.  Mr. Fulks asks the Court to modify its order to reflect that the question of Dr. Melikian's testimony remains open.

**D.     Sheriff Hewett**

Sheriff Hewett testified at the Basham trial that Basham demonstrated to him how he strangled Alice Donovan with her purse strap.  This confession was not revealed to the Fulks trial team before Mr. Fulks's trial, which occurred first.  In denying Mr. Fulks's request for Sheriff Hewett's testimony, the Court stated that Sheriff Hewett's testimony "only marginally relates to Petitioner's habeas claim XIX that his due process rights were violated by the presentation of allegedly inconsistent theories in Petitioner's and Basham's trials."  Order at 2.  This statement is erroneous in two respects.

First, Sheriff Hewett's testimony is far more than "marginally" related to Claim XIX.  Mr. Fulks has argued that "the actual killer of Alice Donovan was Branden Basham and the Government knew this but failed to disclose this fact prior to Mr. Fulks's trial.  The Government presented inconsistent facts as well as theories."  Reply in Support of Amended Motion to Vacate at 66.  Mr. Fulks's claim is that it is "the Government's duty to disclose the exculpatory evidence applies to evidence material either to guilt or to punishment" and that the failure to disclose the Basham confession violated Brady v. Maryland, 373 U.S. 83, 87 (1963).  Reply at 67.

Second, the testimony of Sheriff Hewett regarding Basham's confession supports a number of his claims in addition to Claim XIX. For example, the very decision to plead guilty may have been different had Mr. Fulks and trial counsel known of the Basham confession, and the Court may not have accepted the plea had it been timely advised of Basham's confession to strangling Ms. Donovan. Therefore, the existence of the confession supports Claims IX, X, XI, and XII. Claim XIII deals with the issue of whether Mr. Fulks was a minor participant in the offense; the disclosure of the Basham confession prior to Mr. Fulks's trial would have put that issue to rest. Further, the confessional nature of the "deer statement" referenced in Claim XVIII, when read in context with the confession revealed in the Basham trial, becomes crystal clear, lending support to Mr. Fulks's claim of ineffective assistance for failure to appeal the exclusion of this statement. Claim XXVIII is likewise implicated by the Basham confession, as trial counsel could have made a stronger argument that Mr. Fulks's guilty plea demonstrated his acceptance of responsibility in light of the fact that his co-defendant had confessed to actually committing the murder. Finally, Claim XXXI of the Amended Motion to Vacate makes clear that all of Mr. Fulks's claims are interrelated and that each claim supports the other.

In light of the foregoing, Mr. Fulks asks the court to reconsider its decision not to allow Sheriff Hewett to testify. Sheriff Hewett's testimony is important to many of Mr. Fulks's claims and should be presented at the evidentiary hearing.

II. THE ORDER OF THE COURT REGARDING INSPECTION OF TRIAL COUNSEL'S FILES IS IMPROPER AND SHOULD BE RECONSIDERED

This Court ruled that by raising several claims of ineffective assistance of counsel in the Amended Motion to Vacate, Mr. Fulks has waived the attorney-client privilege "such that trial counsel's documents need to be produced for government counsel's review prior to the § 2255 hearing." Order at 7. The Court ordered counsel for Mr. Fulks to immediately provide the

6

government with searchable electronic copies of all documents previously scanned by pro bono counsel, as well as an index to the scanned documents. The Court further directed counsel for Mr. Fulks to produce for government inspection "[a]ny and all materials pertaining to communications and advice passing between Petitioner and trial counsel, John Blume, Sherri Johnson, and William Nettles, pretrial and trial." Order at 7-8.

Mr. Fulks's Amended Motion to Vacate alleges discrete claims regarding the manner in which trial counsel rendered ineffective assistance. To the extent that a claim of ineffective assistance of counsel waives the attorney-client privilege, it is an implied waiver, and the scope of that waiver must be narrowly tailored so that only communications which are directly germane to the factual basis of the ineffective assistance claims are subject to disclosure. This Court's Order, however, has treated the allegation of ineffective assistance as an express and unlimited waiver of the attorney-client privilege; the Court made no attempt to limit the scope of the disclosure. The Order fundamentally misconstrues the doctrine of implied waiver, and Mr. Fulks respectfully requests that the Court reconsider its Order.[2]

An express waiver of the attorney-client privilege occurs when a disclosure of privileged matter is made to a third party who is not bound by the privilege. In such an instance, "the courts have no role in encouraging or forcing the disclosure—they merely recognize the waiver after it has occurred." Bittaker v. Woodford, 331 F.3d 715, 719 (9th Cir. 2003) (en banc). Conversely,

---

[2] Mr. Fulks notes that on October 5, 2009, the Supreme Court will hear argument on the following question:

> Whether a party has an immediate appeal under the collateral order doctrine, as set forth in Cohen v. Beneficial Loan Corp., 337 U.S. 541 (1949), of a district court's order finding waiver of the attorney-client privilege and compelling production of privileged materials?

Mohawk Indus., Inc. v. Carpenter, 129 S. Ct. 1041 (2009). Among the issues relevant to the availability of an interlocutory appeal under Cohen is whether the appellant can be afforded adequate relief after final judgment. For the reasons set forth in this memorandum, Mr. Fulks

7

a waiver resulting from a claim of ineffectiveness of counsel is considered under the doctrine of

implied waiver:

> The doctrine of implied waiver allocates control of the privilege between the judicial system and the party holding the privilege. The court imposing the waiver does not order disclosure of the materials **categorically**; rather, the court directs the party holding the privilege to produce privileged materials *if* it wishes to go forward with its claims implicating them. The court thus gives the holder of the privilege a choice: If you want to litigate this claim, then you must waive your privilege to the extent necessary to give your opponent a fair opportunity to defend against it.

Id. at 720 (internal quotation marks & citation omitted; first emphasis added). As the Bittaker

court further cautioned:

> [T]he court must impose a waiver **no broader than needed** to ensure the fairness of the proceedings before it. Because a waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose. Courts . . . that have imposed waivers under the fairness principle have therefore **closely tailored the scope of the waiver** to the needs of the opposing party in litigating the claim in question.

Id. (emphasis added). Indeed, as the Sixth Circuit has also noted:

> **Implied waivers are consistently construed narrowly. Courts must impose a waiver no broader than needed to ensure the fairness of the proceedings before it.** A broad waiver rule would no doubt inhibit the kind of frank attorney-client communications and vigorous investigation of all possible defenses that the attorney-client and work product privileges are designed to promote.

In re: Lott, 424 F.3d 446, 453 (6th Cir. 2005) (internal quotation marks & citations omitted;

emphasis added).

In light of the above, this Court's broad statement that "when a defendant moves to

vacate his conviction by claiming ineffective assistance of counsel, he waives the attorney-client

privilege," Order at 6, is an incorrect statement of the law because it presumes that an allegation

of ineffective assistance waives the privilege in its entirety. Indeed, even the cases to which the

---

believes that he cannot obtain adequate relief from a post-judgment review of the Order.

government cited for this proposition, and upon which this Court relies—<u>Johnson v. Alabama</u>, 256 F.3d 1156 (11th Cir. 2001), <u>Tasby v. United States</u>, 504 F.2d 332, 336 (8th Cir. 1984), and <u>Laughner v. United States</u>, 373 F.2d 326 (5th Cir. 1967)—do not support the conclusion reached by the Court.

In <u>Johnson</u>, the petitioner alleged that trial counsel were ineffective for failing to pursue a "third-man" theory—*i.e.*, that he was the "third robber" present at the scene of a robbery and murder, but that he did not intend that the victim be killed—rather than the "flimsy" alibi defense they presented at trial. <u>Johnson</u>, 256 F.3d at 1177. The issue before the Eleventh Circuit was whether specific communications between trial counsel and the petitioner client that pertained to the factual basis of this claim were waived by the allegation of ineffective assistance. The Eleventh Circuit did not hold that merely raising a claim of ineffective assistance of counsel operates as a blanket waiver of the attorney-client privilege. Rather, the court ruled that any waiver must be narrowly tailored to the scope of the factual circumstances of the claim at issue:

> Although **the precise boundaries of the waiver will vary from case to case, and in many instances will require careful evaluation by the district court**, there should be no confusion that a habeas petitioner alleging that his counsel made unreasonable strategic decisions waives any claim of privilege over the contents of communications with counsel relevant to assessing the reasonableness of **those decisions in the circumstances**.

256 F.3d at 1179 (emphasis added).

Indeed, in <u>Johnson</u>, the district court originally attempted to hold an evidentiary hearing regarding "what petitioner told counsel about the crime and his role in it in order to assess whether their strategic and tactical choices were reasonable in the light of the information known to them." <u>Id.</u> at 1168 n.4. The Eleventh Circuit, however, stayed the district court's order and directed the court to conduct first an *in camera* hearing in order "to determine whether and to what extent appellant's communication presumptively protected by the attorney-client privilege

is relevant to the specific ineffective assistance of counsel claims raised by appellant in his habeas petition." Id. Thereafter, the district court conducted an *in camera* hearing regarding communications between the petitioner and his lawyers, and subsequently directed trial counsel to file materials that contained these communications under seal. Id. at 1168. This demonstrates the court's extraordinary concern that an adequate process be in place such that none of the parties could inadvertently violate the attorney-client privilege.

In Tasby, the movant took the stand in his own defense at trial, after trial counsel put on the record that he had advised the movant not to testify and explained to the movant the possible consequences of taking the stand. In his § 2255 motion, the movant alleged that he did not want to testify at his own trial, that trial counsel had never advised him not to take the stand, and that trial counsel had actually coerced the movant into taking the stand by telling him that he would get a sentence of 25 years to life if he did not testify. At an evidentiary hearing on his § 2255 motion, trial counsel was called to testify about this allegation. The Eighth Circuit held that trial counsel's testimony on this subject did not violate the attorney-client privilege because the testimony was directed to "the truth or falsity" of the movant's claims about the substance of his communications with trial counsel about whether or not to testify. Tasby, 504 F.2d at 336. As in Johnson, the Eighth Circuit did not hold that the claim of ineffective assistance operated as a blanket waiver of the attorney client privilege, but rather only as a limited waiver as to the substance of the communications pertaining to the claim at issue—*i.e.*, counsel's advice to the movant about testifying in his own defense.

In Laughner, the government called trial counsel as a witness at the evidentiary hearing on the § 2255 motion. The issue in that case was whether trial counsel competently advised the petitioner to plead guilty, and counsel's testimony at the hearing concerned the substance of the

10

communications he had with the petitioner advising him to enter a guilty plea. As the Fifth Circuit noted, the allegation of ineffective assistance did not operate as a blanket waiver, but merely permitted counsel to testify narrowly as to the discussions with his client concerning the factual underpinnings of the "guilty plea" ineffective assistance of counsel claim: "There is no contention nor any indication in the record that the testimony elicited from the attorney in this case exceeded the scope of that waiver." Laughner, 373 F.2d at 327.

The above cases are consistent with the universally recognized principle that an implied waiver of the attorney-client privilege must be construed *narrowly*.[3] See also State v. Lewis, ___ So.2d ___, 2008 WL 2854805, at *15 (Ala. Crim. App. July 25, 2008) (per curiam) ("When a petitioner raises a claim of ineffective assistance of counsel in a postconviction proceeding he waives the attorney-client privilege *only* with respect to matters relevant to his allegations of ineffective assistance of counsel. The extent of the waiver must, by necessity, depend on the scope of the ineffective-assistance-of-counsel claims that are raised in the postconviction petition. Moreover, the circuit court should conduct an in camera inspection of the attorney's file to determine whether any portions of the file are not related to the ineffective-assistance claims that are raised in the postconviction petition."); Waldrip v. Head, 532 S.E.2d 380, 387 (Ga. 2008) ("[W]e reject the state's contention that the filing of an ineffectiveness claim is an

---

[3] It should be noted that in each of the cases upon which this Court relies, the privilege issue arose in the context of either a hearing or a deposition, where the petitioner could object to the government's question and the district court had to make a ruling on the privilege issue. In other words, the prosecution was not simply given unfettered access to privileged materials. Rather, inquiries into the privileged matters were conducted at a formal hearing, where the petitioner was able to assert the attorney-client privilege so as to preclude any inadvertent violation of the privilege before that violation might take place. None of these cases support the approach advanced by government, and adopted by this Court, to simply hand over trial counsel's files for the government's review without any process by which Mr. Fulks can assert the privilege *ex ante* and seek a ruling from the court on the matter, including the opportunity for *in camera* review of the privileged material, before it is disclosed to the government.

absolute waiver that entitles it to the complete file of former trial and appellate counsel. Instead, we hold that a habeas petitioner who asserts a claim of ineffective assistance of counsel makes a limited waiver of the attorney-client privilege and work product doctrine and the state is entitled only to counsel's documents and files relevant to the specific allegations of ineffectiveness."). This Court's Order, requiring production of "[a]ny and all materials pertaining to communications and advice between Petitioner and trial counsel," is simply inconsistent with well-established law. The only disclosure of privileged materials that is warranted under the doctrine of implied waiver is disclosure of *specific* communications that are directly relevant to *specific* allegations of ineffective assistance of counsel made by Mr. Fulks.

To the extent that this Court suggests in its order that mere issues of judicial economy supersede Mr. Fulks's right to maintain the attorney-client privilege, see Order at 7, there is simply no support for this position in the law. The attorney-client privilege is "one of the oldest recognized privileges for confidential communications." Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998); see Upjohn Co. v. United States, 449 U.S. at 389. The Supreme Court has long acknowledged that the attorney-client privilege arises from "the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." Hunt v. Blackburn, 128 U.S. 464, 470 (1888); Blackburn v. Crawford's Lessee, 70 U.S. (3 Wall.) 175, 192-93 (1865) ("If the privilege did not exist at all, every one would be thrown upon his own legal resources. Deprived of all professional assistance, a man would not venture to consult any skilful person, or would only dare to tell his counsel half his case." (internal quotation marks omitted)). At its core, the attorney-client privilege provides a right not to disclose privileged information. See Hunt, 128

12

U.S. at 470; <u>Kelly v. Ford Motor Co. (In re Ford Motor Co.)</u>, 110 F.3d 954, 963 (3rd Cir. 1997) ("[U]nderlying the attorney-client privilege is the policy of encouraging full and frank communications between an attorney and client, *without the fear of disclosure,* so as to aid in the administration of justice." (emphasis added)). Once information subject to the attorney-client privilege is disclosed, this right of non-disclosure is lost forever and cannot be repaired. <u>See United States v. Philip Morris Inc.</u>. 314 F.3d 612, 619 (D.C. Cir. 2003) ("In this case, the right sought to be protected—BATCo's privilege—would be destroyed if interlocutory appeal is not allowed."); <u>see also</u> <u>In re Ford Motor Co.</u>, 110 F.3d at 963 (holding that "once putatively protected material is disclosed, the very 'right sought to be protected' has been destroyed.").

This is plainly true in the present case, as once Mr. Fulks discloses to the government "any and all materials pertaining to communication and advice passing between Petitioner and trial counsel," Mr. Fulks will irretrievably lose the protections afforded by the attorney-client privilege. The government will have enjoyed the opportunity to review and consider the privileged communications and the legal impressions of its adversary trial counsel. Indeed, for any litigant, there could hardly be any worse recipient of attorney-client privileged information than his or her adversary. This information could not be effectively recovered on appeal from a final judgment, since there is no way to force the government to forget what it learned from the privileged communications. <u>See</u> <u>In re Ford Motor Co.</u>, 110 F.3d at 963 ("Attorneys cannot unlearn what has been disclosed to them in discovery; they are likely to use such material for evidentiary leads, strategy decisions, or the like." (internal quotation marks & alterations omitted)). The only remedy—to the extent there is one at all—would be the recusal of every member of the United States Attorney's office who either reviews trial counsel's files or who has discussions with any such person.

A post-judgment appeal resulting in a reversal of this Court's Order would be manifestly useless in vindicating the right against disclosure that Mr. Fulks seeks to protect, since by that point, "the cat is already out of the bag" and there is "no way to unscramble the egg scrambled by the disclosure." In re Ford Motor Co., 110 F.3d at 963. The attorney-client privilege is not simply an evidentiary privilege that prohibits use of protected information at trial. Rather, the privilege is an absolute right not to disclose the privileged information in the first place. While privileged communications often contain facts—facts the government has alternative avenues to discover—attorney-client communications also contain trial counsel's impressions about a range of matters related to their representation of Mr. Fulks that go beyond any of the claims raised in the § 2255 motion. These mental impressions cannot be recovered on appeal after disclosure and final judgment, nor can the harm occasioned by their improper disclosure be undone.[4]

Moreover, if the government were to have access to privileged material that the reviewing court was to subsequently rule was inappropriately ordered disclosed, it would require the recusal of the AUSAs in any subsequent proceeding. Indeed, the importance of protecting

---

[4] At the August 11, 2009 hearing, this Court suggested that under Federal Rule of Evidence 502, Mr. Fulks could simply litigate the issue of whether the government received materials beyond the scope of the waiver after the fact, that is, after the government had already had access to the privileged materials. Apart from the fact that such a process would be a patently insufficient remedy for the reasons articulated above, undersigned counsel have located no authority which suggests that Rule 502 is applicable in the present context. Mr. Fulks has been unable to find any cases in which such a procedure has been used in a habeas proceeding, or for that matter, in any criminal matter where privileged materials might also implicate potential Fifth Amendment concerns. Indeed, a review of both the Advisory Committee Notes accompanying Rule 502, as well as the Senate Report prepared in conjunction with the proposed rule change, indicate that the rule was intended for the entirely different context of electronic discovery in civil litigation involving corporations and businesses with voluminous electronic records. See S. Rep. No. 110-264, at 2 (Feb. 25, 2008) ("With the routine use of email and other electronic media in today's business environment, discovery can encompass millions of documents in a given case, vastly expanding the risks of inadvertent disclosure. The rule proposed by the Standing Committee is aimed at adapting to the new realities that accompany today's modes of communication, and reducing the burdens associated with the conduct of diligent electronic discovery.").

privileged confidential material is reflected in the extensive use of "firewalled" attorneys and so-called "taint teams" at the outset to prevent precisely this sort of problem from occurring.  See, e.g., U.S. v. Lentz, 524 F.3d 501, 516 & n.3 (4th Cir.) (describing creation of "taint team" to review potentially privileged conversations between defendant and trial counsel), cert. denied, 129 S. Ct. 303 (2008); U.S. v. Howard, 540 F.3d 905, 906 (8th Cir. 2008) (describing process by which "taint team" reviewed and redacted communications, then forwarded non-privileged materials to the prosecution team), cert. denied, 129 S. Ct. 1391 (2009); U.S. v. Ary, 518 F.3d 775, 780 (10th Cir. 2008) (describing "taint team" review of potentially privileged computer files).  These protections are so fundamental that, in certain situations, prophylactic measures have been adopted by Congressional act.  See, e.g., Fed. R. Crim. Pro. Rule 12.2 (forbidding disclosure to any attorney for the government of  the results and reports of mental health examinations unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition).

Should Mr. Fulks be forced to unnecessarily reveal privileged and/or work product material to the AUSAs litigating this case, no easy remedy can rectify the harm.  Indeed, in one Fourth Circuit case where AUSAs inadvertently reviewed privileged material, the district court found no other option than disqualifying the acting AUSAs:

> From the foregoing the court concludes that the remedy suggested by the United States, namely, no further use by the government of the privileged documents and their return to counsel for the [appellees], will not adequately maintain the integrity of the confidential attorney-client privilege, and cannot insure that those who have viewed the documents will not, even subconsciously, be affected by knowledge gained thereby in pursuing the investigation of the [appellees]. The court further concludes that the only adequate appropriate remedy is disqualification of the Assistant United States Attorney and two agents from further participation in the investigation.

U.S. v. (Under Seal), 757 F.2d 600, 602 (4th Cir. 1985) (quoting district court).

For all the foregoing reasons, the undersigned respectfully request that this Court reconsider its Order regarding the extent of the waiver of the attorney-client privilege. Consistent with the authority cited above, any materials which the government seeks ought to be properly restricted to specific communications pertaining to specific allegations of ineffective assistance of counsel alleged in Mr. Fulks's § 2255 motion. Moreover, any such disclosure ought to occur in a forum in which Mr. Fulks can properly assert the privilege *ex ante* and seek a ruling from the court on the matter, including the opportunity for *in camera* review of the privileged material, before it is disclosed to the government.

In light of the critical importance of the attorney-client privilege and the clearly established law regarding the limited nature of the implied waiver in post-conviction proceedings, Mr. Fulks's right to preserve the confidentiality of his communications with trial counsel must be preserved. Mr. Fulks therefore asks the Court—as he has requested from the outset—to allow current counsel to conduct a pre-production review of trial counsel's files and produce only those documents that are within the scope of the implied waiver, *i.e.*, communications and work product concerning the specific claims of ineffective assistance of counsel raised in the Amended Motion to Vacate.

As an alternative, the Court could employ a "taint team" review procedure similar to that employed in Lentz, Howard, and Ary. Under such a procedure, the government would be required to designate an attorney or attorneys to a taint team that would conduct an initial review of trial counsel's files and identify documents asserted to be within the scope of the waiver. Present counsel would then review these documents and indicate whether they claim applicability of attorney-client privilege; any disputes that cannot be resolved by the taint team

16

and Mr. Fulks's counsel will be referred to the Court. Once a final set of non-privileged documents has been identified, the documents will be place under seal with the court pending a formal declaration by Mr. Fulks regarding whether he wishes to proceed with the claims to which the documents relate. After such a declaration, responsive documents will be released to the government attorneys responsible for this litigation. In setting forth this option, however, Mr. Fulks reiterates his view that pre-production review is both more protective of Mr. Fulks's rights and a more efficient use of judicial and attorney resources, and thus is by far the preferable method.

**CONCLUSION**

For the reasons set forth above, Mr. Fulks respectfully requests that the Court reconsider the Order of August 21, 2009.

/s/ Kirsten E. Small
Kirsten E. Small  (Fed ID No. 10005)
NEXSEN PRUET, LLC
55 East Camperdown Way (29601)
Post Office Drawer 10648
Greenville, SC  29603-0648
PHONE:  864.370.2211
KSmall@nexsenpruet.com

/s/ Beattie B. Ashmore
Beattie B. Ashmore  (Fed ID No. 5215)
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, SC 29601
PHONE: 864.467.1001
Beattie@beattieashmore.com

Attorneys for Petitioner

August 25, 2009
Greenville, South Carolina