Westlaw.

--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)
**(Cite as: 2008 WL 2854805 (Ala.Crim.App.))**

Only the Westlaw citation is currently available.

NOT YET RELEASED FOR PUBLICATION.

Court of Criminal Appeals of Alabama.
Ex parte Gerald Patrick **Lewis**
(In re: STATE of Alabama
v.
Gerald Patrick **LEWIS**).
**CR-07-0022.**

July 25, 2008.

**Background:** Defendant was convicted in the Circuit Court, Baldwin County, Nos. CC-98-664, CC-98-879, and CC-98-880,Jacquelyn L. Stuart and J. Langford Floyd, JJ., of capital murder, attempted murder, attempted first degree kidnapping, attempted first degree rape, and first degree robbery, and was sentenced to death. The Court of Criminal Appeals, 889 So.2d 623, affirmed in part and remanded with directions. Defendant petitioned for postconviction relief. State's motion to quash defendant's request for subpoena duces tecum was granted by the Circuit Court, No. CC-1998-664.60,J. Langford Floyd, J. Defendant petitioned for writ of mandamus.

**Holding:** The Court of Criminal Appeals held that circuit court did not abuse its discretion in denying defendant's request for subpoena duces tecum directed to district attorney's office.

Petition granted in part and denied in part.

Shaw, J., concurred in part and concurred in the result with opinion, which Wise, J., joined.

West Headnotes

**[1] Mandamus 250 ⬥1**

250 Mandamus
    250I Nature and Grounds in General
        250k1 k. Nature and Scope of Remedy in General. Most Cited Cases
For a writ of mandamus to issue the petitioner must show: (1) a clear legal right to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no adequate remedy at law; and (4) the properly invoked jurisdiction of the reviewing court.

**[2] Privileged Communications and Confidentiality 311H ⬥168**

311H Privileged Communications and Confidentiality
    311HIII Attorney-Client Privilege
        311Hk168 k. Waiver of Privilege. Most Cited Cases
When a petitioner raises a claim of ineffective assistance of counsel in a postconviction proceeding, he waives the attorney-client privilege only with respect to **matters relevant** to his allegations of ineffective assistance of counsel; the extent of the waiver must, by necessity, depend on the scope of the ineffective assistance of counsel claims that are raised in the postconviction petition. (Per curiam, with two Judges concurring, and two Judges concurring in the result). U.S.C.A. Const.Amend. 6.

**[3] Witnesses 410 ⬥16**

410 Witnesses
    410I In General
        410k16 k. Subpoena Duces Tecum. Most Cited Cases
Subpoena duces tecum had no application to discovery in postconviction proceedings, thus circuit court did not abuse its discretion in denying defendant's request for subpoena duces tecum directed to district attorney's office. Rules Crim.Proc., Rule 17.3.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)
**(Cite as: 2008 WL 2854805 (Ala.Crim.App.))**

William Robert Montross, Jr., Atlanta, Georgia, for petitioner.

Troy King, atty. gen., and Corey L. Maze, asst. atty. gen., for respondent.

PER CURIAM.

**\*1** The appellant, Gerald Patrick Lewis, filed this petition for a writ of mandamus directing the Honorable J. Langford Floyd, a Baldwin County Circuit Judge, to set aside his rulings related to discovery in Lewis's postconviction proceeding.[FN1]

In February 2000, Lewis was convicted of the murder of Misty McGugin made capital because it occurred during the course of a kidnapping, a rape, and a robbery. Lewis was also convicted of two counts of attempted murder, two counts of attempted kidnapping, two counts of attempted rape, and two counts of robbery for offenses against Stephanie Grayson and Ashley Bitowf. The jury, by a vote of 10 to 2, recommended that Lewis be sentenced to death on the capital-murder conviction. The circuit court sentenced Lewis to death. Lewis's convictions and his death sentence were affirmed on direct appeal. See *Lewis v. State,* 889 So.2d 623 (Ala.Crim.App.2003). We issued the certificate of judgment on April 30, 2004.

On April 25, 2005, Lewis filed a postconviction petition pursuant to Rule 32, Ala.R.Crim.P., attacking his capital-murder conviction and sentence of death. Lewis filed his first discovery motion in August 2005 and filed a "Superceding Motion for Discovery" in June 2006. In the motions Lewis requested that he be given access to his Department of Corrections ("DOC") records maintained by the States of Alabama, Georgia, and Massachusetts; jail records from various facilities in Alabama, Georgia, and Massachusetts in which he had been incarcerated; mental-health records maintained by the States of Alabama, Georgia, and Massachusetts; Board of Pardons and Paroles records maintained in Alabama and Georgia; Department of Human Resource records maintained by the States of Alabama, Georgia, and Massachusetts; Youth Services Department records from Massachusetts and Georgia; police and sheriff's department records from many jurisdictions in Alabama, Georgia, and Massachusetts; the Mobile County District Attorney's office files related to his arrest and the investigation of the offenses; records from the United States Department of Human Services and the Social Security Administration; and his military records.

In June 2006, while the discovery motions were still pending Lewis filed 14 requests for subpoenas duces tecum. One of those subpoenas was directed to the Mobile County District Attorney's Office. The State moved to quash the subpoena. On September 20, 2007, after entertaining numerous motions on this issue Judge Floyd quashed the subpoena directed to the Mobile County District Attorney's Office. At this same time Judge Floyd also directed that the State be given access to Lewis's trial attorney's entire case file.[FN2]

Initially, we note that this case is correctly before this Court by way of mandamus petition. See *Ex parte Land,* 775 So.2d 847 (Ala.2000).

[1] For a writ of mandamus to issue the petitioner must show: (1) a clear legal right to the relief sought; (2) an imperative duty upon the respondent to perform, accompanied by a refusal to do so; (3) no adequate remedy at law; and (4) the properly invoked jurisdiction of the reviewing court. See *State v. Williams,* 679 So.2d 275 (Ala.Crim.App.1996).

**\*2** In *Ex parte Land,* the Alabama Supreme Court set out the standard for discovery in postconviction proceedings and stated:

"We agree with the Court of Criminal Appeals that 'good cause' is the appropriate standard by which to judge postconviction discovery motions.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 3

--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)
**(Cite as: 2008 WL 2854805 (Ala.Crim.App.))**

In fact, other courts have adopted a similar 'good-cause' or 'good-reason' standard for the postconviction discovery process. See [*State v.]* *Marshall,* [148 N.J. 89, 690 A.2d 1 (1997) ]; *State v. Lewis,* 656 So.2d 1248 (Fla.1994); *People ex rel. Daley v. Fitzgerald,* 123 Ill.2d 175, 121 Ill.Dec. 937, 526 N.E.2d 131 (1988). As noted by the Illinois Supreme Court, the good-cause standard guards against potential abuse of the postconviction discovery process. See *Fitzgerald,* supra, 123 Ill.2d at 183, 121 Ill.Dec. 937, 526 N.E.2d at 135. We also agree that New Jersey's *Marshall* case provides a good working framework for reviewing discovery motions and orders in capital cases. In addition, we are bound by our own rule that 'an evidentiary hearing must be held on a [petition for postconviction relief] which is meritorious on its face, *i.e.,* one which contains matters and allegations (such as ineffective assistance of counsel) which, if true, entitle the petitioner to relief.' *Ex parte Boatwright,* 471 So.2d 1257, 1258 (Ala.1985).

"We emphasize that this holding-that postconviction discovery motions are to be judged by a good-cause standard-does not automatically allow discovery under Rule 32, Ala. R.Crim. P., and that it does not expand the discovery procedures within Rule 32.4. Accord *Lewis,* supra, 656 So.2d at 1250, wherein the Florida Supreme Court stated that the good-cause standard did not affect Florida's rules relating to postconviction procedure, which are similar to ours. By adopting this standard, we are only recognizing that a trial court, upon a petitioner's showing of good cause, may exercise its inherent authority to order discovery in a proceeding for postconviction relief. In addition, we caution that postconviction discovery does not provide a petitioner with a right to 'fish' through official files and that it 'is not a device for investigating possible claims, but a means of vindicating actual claims.' *People v. Gonzalez,* 51 Cal.3d 1179, 1260, 800 P.2d 1159,

1206, 275 Cal.Rptr. 729, 776 (1990), *cert. denied,* 502 U.S. 835, 112 S.Ct. 117, 116 L.Ed.2d 85 (1991). Instead, in order to obtain discovery, a petitioner must allege facts that, if proved, would entitle him to relief. Cf. *Porter v. Wainwright,* 805 F.2d 930, 933 (11th Cir.1986) ('a hearing [on a habeas corpus petition] is not required unless the petitioner alleges facts which, if proved, would entitle him to federal habeas relief'), *cert. denied,* 482 U.S. 918, 919, 107 S.Ct. 3195, 96 L.Ed.2d 682 (1987). Furthermore, a petitioner seeking postconviction discovery also must meet the requirements of Rule 32.6(b), Ala. R.Crim. P., which states:

" 'The petition must contain a clear and specific statement of the grounds upon which relief is sought, including full disclosure of the factual basis of those grounds. A bare allegation that a constitutional right has been violated and mere conclusions of law shall not be sufficient to warrant any further proceedings.'

*3 "That having been said, we must determine whether Land presented the trial court with good cause for ordering the requested discovery. To do that, we must evaluate Land's basis for the relief requested in his postconviction petition and determine whether his claims are facially meritorious. Only after making that examination and determination can we determine whether Land has shown good cause."

775 So.2d at 852-53 (footnote omitted).

I.

Lewis argues that the circuit court abused its discretion in allowing the State access to his trial attorney's entire file. Lewis agrees that he has waived his attorney-client privilege, in part, by raising various claims of ineffective assistance of counsel. However, he contends that the circuit court erroneously concluded that the scope of his waiver in-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)
**(Cite as: 2008 WL 2854805 (Ala.Crim.App.))**

Page 4

cluded the disclosure of his trial attorney's entire case file.

Rule 1.6, Alabama Rules of Professional Conduct, addresses the attorney-client privilege; it provides:

"(a) A lawyer shall not reveal information relating to representation of a client unless the client consents after consultation, except for disclosures that are impliedly authorized in order to carry out the representation, and except as stated in paragraph(b).

"(b) A lawyer may reveal such information to the extent the lawyer reasonably believes necessary:

"(1) to prevent the client from committing a criminal act that the lawyer believes is likely to result in imminent death or substantial bodily harm; or

"(2) to establish a claim or defense on behalf of the lawyer in a controversy between the lawyer and the client, to establish a defense to a criminal charge or civil claim against the lawyer based upon conduct in which the client was involved, or to respond to allegations in any proceeding concerning the lawyer's representation of the client."

Rule 502, Ala.R.Evid., specifically provides, in pertinent part:
"(d) Exceptions. There is no privilege under this rule:

"....

"(3) *Breach of Duty by an Attorney or Client.* As to a communication relevant to an issue of breach of duty by an attorney to the client or by a client to the client's attorney."

The Advisory Committee's Notes to Rule 502 state:

"While no prior Alabama cases specifically state

this exclusion, it is consistent with those cases holding that the client may waive the privilege. *Dewberry v. Bank of Standing Rock,* 227 Ala. 484, 494, 150 So. 463, 471 (1933). Consistent with those cases, the client may be viewed as waiving the privilege either by breach of duty to the attorney or by charging that the attorney breached the duty owed to the client."

The United States Court of Appeals for the Eleventh Circuit in *Johnson v. Alabama,* 256 F.3d 1156 (11th Cir.2001), recognized that the attorney-client privilege is waived in a habeas corpus proceeding when a defendant asserts a claim of ineffective assistance of counsel.[FN3] The court stated:

"[W]hen a habeas corpus petitioner such as Johnson launches an attack on the reasonableness of his attorney's strategy in conjunction with a claim of ineffective assistant of counsel, he puts at issue his communications with counsel relating to those strategic choices. As *Strickland [v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984),] itself emphasizes, the 'reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, ... on information supplied by the defendant... [and]... inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's ... litigation decisions.' 466 U.S. at 691, 104 S.Ct. at 2066; *see also Chandler [v. United States* ], 218 F.3d [1305] at 1318-19 [ (11th Cir.2000) ] ('Because the reasonableness of counsel's acts ... depends critically upon information supplied by the [petitioner] or the [petitioner's] own statement or actions, evidence of a petitioner's statements and acts in dealing with counsel is highly relevant to ineffective assistance claims.' (citations and internal quotation marks omitted)). Although the precise boundaries of the waiver will vary from case to case, and in many instances will require careful evaluation by

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 5

--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)
**(Cite as: 2008 WL 2854805 (Ala.Crim.App.))**

the district court, there should be no confusion that a habeas corpus petitioner alleging that his counsel made unreasonable strategic decision waives any claim of privilege over the contents of communications with counsel relevant to assessing the reasonableness of those decisions in the circumstances."

*4 256 F.3d at 1179. See also *State v. Buckner,* 351 N.C. 401, 412, 527 S.E.2d 307, 314 (2000) ("To defend against ineffective assistance of counsel allegations, the State must rely on information provided by defendant to trial counsel, as well as defendant's thoughts, concerns, and demeanor.").

"[W]here the petitioner who has alleged unprofessional conduct on the part of his former trial defense counsel testifies, or otherwise introduces evidence to establish the same, then a reinvocation of the attorney-client privilege operates to place the respondent in an untenable position. The law allows the privilege to be a shield, but not a sword. '[T]he holder of the privilege may preserve the confidentiality of the privileged communications by choosing to abandon the claim that gives rise to the waiver condition. Cf. *Lyons v. Johnson,* 415 F.2d 540, 541-42 (9th Cir.1969) (affirming dismissal of plaintiff's complaint after she persisted in hiding behind the privilege against self-incrimination by refusing to answer any deposition questions or to submit to discovery)' *Bittaker v. Woodford,* 331 F.3d 715, 721 (9th Cir.2003)."

*Breton v. Commissioner of Correction,* 49 Conn.Supp. 592, 601, 899 A.2d 747, 753 (2006).

Our research shows that the overwhelming majority of courts that have addressed this issue hold that the waiver of the attorney-client privilege should be narrowly applied. The Georgia Supreme Court in *Waldrip v. Head,* 272 Ga. 572, 532 S.E.2d 380 (2000), stated:

"Although we have never expressly addressed the scope of the waiver of the attorney-client privilege when a habeas petitioner asserts an ineffective assistance of counsel claim, we have previously limited any implied waiver of the attorney-client privilege. In *Felts v. State,* [244 Ga. 503, 260 S.E.2d 887 (1979),] the defendant argued that his attorney-client privilege was violated when the state impeached him concerning his testimony at a previous trial that he had lied to his attorney. We held that Felts had waived his privilege concerning his lie that someone gave him the murder weapon at the scene of the shooting by testifying without objection about the matter at his earlier trial, but limited the waiver to that statement. Similarly, when a habeas petitioner claimed that she was not informed of the consequences of her guilty plea, her attorney was permitted to testify concerning the information he gave her regarding the plea. The rationale for these decisions is that the client waives the privilege to the extent necessary to allow the attorney to defend his or her own conduct against the charges of misconduct.

"Other states addressing the waiver issue provide persuasive authority for a rule limiting waiver of any privilege to communications related to the specific claims on ineffectiveness. When faced with the same issue, the North Carolina Supreme Court held that the defendant waived the benefits of both the attorney-client privilege and work product doctrine on **matters relevant** to the allegations of ineffective assistance of counsel. Despite the defendant's broad-ranging attack on counsel's representation at trial, that court concluded that the trial court exceeded its authority in directing the defendant to provide the state access to all files related to the case.

*5 "Based on this persuasive authority, our prior decisions, and the reason for finding an implied waiver, we reject the state's contention that the filing of an ineffectiveness claim is an absolute waiver that entitles it to the complete file of former trial and appellate counsel. Instead, we

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)
**(Cite as: 2008 WL 2854805 (Ala.Crim.App.))**

hold that a habeas petitioner who asserts a claim of ineffective assistance of counsel makes a limited waiver of the attorney-client privilege and work product doctrine and the state is entitled only to counsel's documents and files relevant to the specific allegations of ineffectiveness."

272 Ga. at 578-79, 532 S.E.2d at 387-88. See also *State v. Taylor,* 327 N.C. 147, 152, 393 S.E.2d 801, 805 (1990) ("By alleging in his amended motion for appropriate relief that his court-appointed attorney ... rendered ineffective assistance of counsel during the trial and direct appeal of these cases, the defendant waived the benefits of both the attorney-client privilege and the work product privilege, but *only* with respect to **matters relevant** to his allegations of ineffective assistance of counsel."); *Petition of Dean,* 142 N.H. 889, 890-91, 711 A.2d 257, 258 (1998) ("We hold that claims of ineffective assistance of counsel, whether brought in a motion for new trial or in a habeas corpus proceeding, constitute a waiver of the attorney-client privilege to the extent relevant to the ineffectiveness claim, the waiver is a limited one."); *United Jersey Bank v. Wolosoff,* 196 N.J.Super. 553, 567 n. 3, 483 A.2d 821, 828 n. 3 (1984) ("[O]ur law compelled disclosure of communications otherwise protected by the attorney-client privilege to the extent that they were pertinent to the question of reasonable reliance.... This limited disclosure, however, extends no further than that particular subject matter."); *State v. Buckner,* 351 N.C. 401, 411-12, 527 S.E.2d 307, 314 (2000) ("If the superior court orders disclosure, and there is disagreement about whether the order covers certain questionable documents or communications, the superior court must conduct an *in camera* review to determine the extent of the order as to those documents or communications."). Compare *Reed v. State,* 640 So.2d 1094, 1097 (Fla.1994) (waiver of the attorney-client privilege is broad when claim of ineffective assistance of counsel is raised and allows the state to inspect the trial attorney's entire file.).

[2] We join the majority of other jurisdictions that have addressed this issue and hold that when a petitioner raises a claim of ineffective assistance of counsel in a postconviction proceeding he waives the attorney-client privilege "*only* with respect to **matters relevant** to his allegations of ineffective assistance of counsel." [FN4] *State v. Taylor,* 327 N.C. at 152, 393 S.E.2d at 805. The extent of the waiver must, by necessity, depend on the scope of the ineffective-assistance-of-counsel claims that are raised in the postconviction petition. Moreover, the circuit court should conduct an in camera inspection of the attorney's file to determine whether any portions of the file are not related to the ineffective-assistance claims that are raised in the postconviction petition. In this case Lewis raised a multitude of claims concerning the performance of his trial attorney in his 309-page petition; [FN5] thus, his waiver is broader than a petitioner who asserts only one claim of ineffective-assistance-of-counsel.

II.

*6 [3] Lewis also argues that the circuit court erred in quashing the subpoena duces tecum directed to the Mobile County District Attorney's Office. Lewis was given access to the Baldwin County District Attorney's file on the case-the district attorney for the county in which he was prosecuted and convicted of murdering Misty McGugin. However, Lewis was first arrested in Mobile County for murdering Kathleen Bracken. When he was questioned by Mobile police he told police that he had information concerning the murder of Misty McGugin in Baldwin County. He confessed to murdering McGugin. In the Rule 32 proceeding, Lewis sought discovery of the Mobile County District Attorney's Office file related to the Bracken murder. The State argues that a subpoena duces tecum has no application to postconviction proceedings.

Rule 17.3, Ala.R.Crim.P., specifically addresses the issuance of subpoenas duces tecum and provides:

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 7

--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)
**(Cite as: 2008 WL 2854805 (Ala.Crim.App.))**

"(a) *Production of Books, Papers, etc.* A subpoena may command the person to whom it is directed to produce the books, papers, documents, or other objects which may be designated therein.

"(b) *Production Prior to Trial and for Inspection.* The court may direct that books, papers, documents, or other objects designated in the subpoena be produced before the court at a time prior to the trial or prior to the time when they are to be offered in evidence. Upon their production, the court may permit the parties and their attorneys to inspect them, or portions thereof."

The Committee Comments to this Rule state:

"This rule is not intended to be a discovery device because Rule 16 provides for discovery. This rule is to be used to inspect evidence held by witnesses and to require its production at trial or prior to trial."

In *State v. Reynolds,* 819 So.2d 72 (Ala.Crim.App.1999) (on return to remand), we discussed the distinction between discovery and a subpoena duces tecum and stated:

"In *People v. Morrison,* 148 Misc.2d 61, 66-67, 559 N.Y.S.2d 1013, 1017-18 (N.Y.City Crim.Ct.1990), the court discussed the difference between a subpoena duces tecum and discovery:

" 'A fundamental distinction exists between a defendant's right to discovery ... and a defendant's right to compel the production of evidence by subpoena .... The right to discovery is the right to receive information and documents from the prosecution and its agents concerning the case. A defendant's right to discovery is governed and limited by statute [in Alabama, by rule] .... The specific material that is required to be disclosed is specified in the statute and the timing of its disclosure is, likewise, governed by statute.

" 'The right to compulsory process, on the other hand, is the right to compel witnesses to come into court pursuant to subpoena and give testimony or produce documentary or other physical evidence. The right to compulsory process has its roots in constitutional principles which recognize that a defendant must be able to compel the production of evidence in the proceedings relating to the case in order to present a defense to the charges if he or she chooses to do so. However, based on constitutional analysis set forth above and decisional law, the right to compulsory process is not an unlimited and unrestricted right to compel the production of any documents sought by a defendant. Rather, it is a restricted right, the exercise of which must satisfy certain relevancy and evidentiary standards and which is subject to other procedures for obtaining the material sought.

\*7 " '... The right to compel material pursuant to subpoena is, therefore, limited to the compulsion of "evidence" and is not a right to compel the production of documents that refer to evidence or that provide leads that will assist in the identification of evidence or to ascertain the existence of witnesses or evidence.'

"Alabama courts have often said that a subpoena duces tecum is not a method of discovery. As this Court stated in *Sale v. State,* 570 So.2d 862, 863 (Ala.Cr.App.1990),

" 'It appears to this Court that the defendant was seeking to use the subpoenas duces tecum as a method of discovery. In Alabama, a subpoena duces tecum does not "embrace[ ] discovery as one of its purposes," *Ex parte Anniston Personal Loans, Inc.,* 266 Ala. 356, 359, 96 So.2d 627, 630 (1957); *Williams v. State,* 383 So.2d 547, 559 (Ala.Cr.App.1979), affirmed, 383 So.2d 564 (Ala.), cert. denied, 449 U.S. 995, 101 S.Ct. 534, 66 L.Ed.2d 293 (1980), and should not be employed as a "fishing expedi-

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)
**(Cite as: 2008 WL 2854805 (Ala.Crim.App.))**

tion," *Ex parte Darring,* 242 Ala. 621, 624, 7 So.2d 564, 566 (1942).'

'Other states have followed this rationale. See *State v. Watson,* 726 A.2d 214 (Me.1999); *Decrosta v. State Police Laboratory,* 182 A.D.2d 930, 581 N.Y.S.2d 938 (N.Y.App.Div.1992); *People v. Warden,* 175 A.D.2d 821, 572 N.Y.S.2d 939 (N.Y.App.Div.1991); *People v. Ramirez,* 129 Misc.2d 112, 492 N.Y.S.2d 906 (N.Y.Sup.Ct.1985); *People v. Cannon,* 127 Ill.App.3d 663, 469 N.E.2d 375, 82 Ill.Dec. 841 (1984).

"Here, Reynolds attempted to use the subpoena duces tecum as a means to search the victim's files for any possible exculpatory evidence. 'A subpoena duces tecum may not be used "in the hope of finding something helpful to [the] defense." ' *People v. Magliore,* 178 Misc.2d 489, 493, 679 N.Y.S.2d 267, 270 (N.Y.City Crim.Ct.1998), quoting *Decrosta,* 182 A.D.2d at 931, 581 N.Y.S.2d at 939. 'Generally, a subpoena duces tecum may not be used as a fishing expedition for the purpose of discovery or to ascertain the existence of evidence....' *Decrosta,* 182 A.D.2d at 931, 581 N.Y.S.2d at 939.' "

819 So.2d at 78-79.

We agree with the State that based on Alabama law a subpoena duces tecum would have no application to discovery in postconviction proceedings. The circuit court did not abuse its discretion in denying the request for a subpoena duces tecum directed to the Mobile County District Attorney's Office.

Moreover, there is a pending discovery motion that relates to this same matter. Apparently, the circuit court has yet to dispose of that motion. Therefore, any action by this Court as it relates to this pending motion would be premature. If that discovery motion is denied Lewis may then file another petition for a writ of mandamus with this Court.

Accordingly, this petition for a writ of mandamus is granted in part. As discussed in Part I of this opinion the circuit court is directed to conduct an in camera inspection of Lewis's trial attorney's case file to determine the extent of the file that should be disclosed to the State of Alabama. Any other relief requested in this petition is denied.

**\*8 PETITION GRANTED IN PART AND DENIED IN PART.**

McMILLAN and WELCH, JJ., concur. SHAW, J., concurs in part and concurs in the result, with opinion, which WISE, J., joins. BASCHAB, P.J., recuses herself.SHAW, Judge, concurring in part and concurring in the result.

Although I agree with most of the analysis in Part I of the main opinion, I note that, in my view, this Court's holding is dictated by *State v. Click,* 768 So.2d 417, 421 (Ala.Crim.App.1999), in which we held that "[a] postconviction petitioner who raises a Sixth Amendment claim of ineffective assistance of counsel 'waives the attorney-client privilege as to matters reasonably related to the claim of inadequate representation.' " In *Click,* this Court, quoting Charles W. Gamble, *McElroy's Alabama Evidence,* § 394.01(3) (5th ed.1996), went on to state:

" 'If the client charges the attorney with misconduct, the privilege is lifted insofar as is necessary to enable the attorney to combat the charge. This would necessarily mean that the client could not base a lawsuit against the attorney upon the negligence of the attorney's advice and then object when the attorney attempts to testify as to the attorney's own version of what was said. This would open the door, of course, to only so much of the privileged matter that is relevant and necessary to the attorney's defense." '

768 So.2d at 422. Therefore, I concur in the result as to part I.

I concur as to Part II.

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)
**(Cite as: 2008 WL 2854805 (Ala.Crim.App.))**

WISE, J., concurs.

> FN1. Lewis filed two mandamus petitions on the same date. We have consolidated those petitions.

> FN2. Apparently, the bulk of the discovery has already been completed, and this petition concerns only the circuit court's rulings made on September 20, 2007.

> FN3. A federal habeas corpus proceeding is similar to our Rule 32, Ala.R.Crim.P., proceeding.

> FN4. The majority view is consistent with our holding in *State v. Click,* 768 So.2d 417, 421 (Ala.Crim.App.1999), where we stated: "A postconviction petitioner who raises a Sixth Amendment claim of ineffective assistance of counsel 'waives the attorney-client privilege as to matters reasonably related to the claim of inadequate representation.'"

> FN5. Lewis asserted approximately 60 different claims of ineffective assistance of counsel.

Ala.Crim.App.,2008.
State v. Lewis
--- So.2d ----, 2008 WL 2854805 (Ala.Crim.App.)

END OF DOCUMENT

© 2009 Thomson Reuters. No Claim to Orig. US Gov. Works.