IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

UNITED STATES OF AMERICA   ) Cr. No. 4:02-992-JFA
)
v.                     )
)
CHADRICK E. FULKS        )
)

GOVERNMENT'S MEMORANDUM IN OPPOSITION
TO PETITIONER'S MOTION TO RECONSIDER

## I.    Waiver of Attorney-Client Privilege

Petitioner Chadrick E. Fulks has moved this Court to reconsider its Order of

August 21, 2009. He complains the portion of the Order regarding the waiver of

attorney-client privilege is "substantially overbroad and inadequately protective of

the sanctity of attorney-client communications." (Pet.'s Mot. at 1.) Limitations on

the scope of discovery should be based on the scope of the ineffectiveness claim,

and may vary from case to case. When an ineffectiveness claim is focused on a

specific, discrete, and limited part of trial counsels' representation, then the scope

of the waiver may be limited. However, when claims of ineffectiveness

encompass the entire representation, then the scope of the waiver should be

equally broad. Due to the wide-ranging nature of Fulks' claim of ineffectiveness

of counsel in his 197-page, 32-claim Amended Motion to Vacate, the Court's

Order is not overbroad. As discussed below, Fulks' scathing diatribe in his § 2255

Motion, accusing his trial counsel of not only ineffectiveness but also "recklessness,"[1] effectively waived his attorney-client privilege to nearly all imaginable information contained in his counsels' files.

The Fourth Circuit has observed that because the attorney-client privilege "'impedes the full and free discovery of the truth,' it must be 'narrowly construed and recognized only to the very limited extent that excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.'" In re: Grand Jury Subpoena v. Under Seal, 341 F.3d 331 (4th Cir. 2003)(quoting Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998));  see also United States v. Aramony, 88 F.3d 1369, 1389 (4th Cir. 1996)(the attorney-client privilege interferes with the truth-seeking mission of the legal process because it is in derogation of the public's right to every man's evidence).  Thus, "the privilege 'is not favored by federal courts' and 'is to be strictly confined within the narrowest possible limits consistent with the logic of its principle.'" Aramony, 88 F.3d at 1389.   "'The burden is on the proponent of the attorney-client privilege to demonstrate its applicability.  The proponent must establish . . . that the particular communications at issue are privileged and that the

---

[1]Amended Motion to Vacate, at pp. 133, 160.  At one point, Fulks accuses his trial counsel of being in a "panic" that caused "apoplexy."  Id. at 24.  Fulks also calls his counsels' actions "perplexing" and "apoplectic."  Id. at 16, 65.

privilege was not waived.'" Id. (quoting United States v. Jones, 696 F.2d 1069 (4th Cir. 1982)(per curiam)). Fulks fails to point to any specific items in counsels' files that are outside the scope of the waiver caused by his far-ranging Amended Motion to Vacate.

Fourth Circuit law regarding attorney-client privilege emphasizes the free-flow of discovery in order to reach the truth and places the burden on the proponent of the privilege to show that it applies. Referencing the Ninth and Sixth Circuits and the Alabama Court of Appeals, Fulks takes the position that a waiver of the attorney-client privilege should be construed narrowly. His assertion that the cases cited by the Government in its previous motion require a narrow tailoring based on the factual circumstances does not reflect the essence of these cases. In Johnson v. Alabama, 256 F.3d 1156, 1178 (11th Cir. 2001), the court stated:

> [A] party waives its attorney-client privilege when it injects into this litigation an issue that requires testimony from its attorneys or testimony concerning the reasonableness of its attorneys' conduct. By alleging that his attorneys provided ineffective assistance of counsel in their choice of a defense strategy, Johnson put at issue - and thereby waived - any privilege that might apply to the contents of his conversations with those attorneys to the extent those conversations bore on his attorney's strategic choices.

Fulks correctly points out that the district court in Johnson originally attempted to hold an evidentiary hearing to determine what Johnson had told his counsel about

his role in the crime in order to assess the reasonableness of trial counsel's tactical and strategic choices, and that the Eleventh Circuit stayed the district court's order and directed it to first conduct an *in camera* hearing to determine the extent to which communications were protected by the attorney-client privilege. 256 F.3d at 1168 n.4. Indeed, this Court is attempting to use a similar process to determine which communications might be protected by the attorney-client privilege. At the status conference on August 11, 2009, the Court explained the new proposed Rule 502 of the Federal Rules of Evidence :

> [I]t provides that in discovery, if you have a court order, the producing party can turn over everything it has got, and then when the receiving party identifies what they want to use at trial, the producing party can look at those — that smaller disk and then claim the privilege, and the judge rules on the privilege. And if it's deemed to be privileged, it goes back.

Tr. at p. 8. The Court recognized that another conference prior to the evidentiary hearing may be necessary. Tr. at p. 16. Clearly, the Court is attempting to avoid a situation similar to that in Johnson, footnote 4, by allowing the Government to determine what it believes is pertinent to Fulks' claims and included in the attorney-client privilege waiver, and then giving Fulks the opportunity to re-assert the privilege, with this Court making the final determination.

The opinion in Johnson quotes with approval the holding of Laughner v. United States, 373 F.2d 326 (5th Cir. 1967), which also supports the Government's

belief that Fulks has waived his privilege to nearly all of his communications with counsel and documents in his files:

> Having demanded and obtained a factual judicial inquiry into his claim that the attorney appointed to render him the assistance of counsel for his defense failed to discharge his responsibilities properly, appellant now proposes to invoke the privilege accorded confidential communications between an attorney and his client to eliminate the one source of evidence likely to contradict his allegations. We are unable to subscribe to this proposition. The privilege is not an inviolable seal upon the attorney's lips. It may be waived by the client; and where, as here, the client alleges a breach of duty to him by the attorney, we have not the slightest scruple about deciding that he thereby waives the privilege as to all communications relevant to the issue.

Johnson, 256 F.3d at 1178-1179. The Eleventh Circuit concluded: "Simply put, when a habeas petitioner such as Johnson launches an attack on the reasonableness of his attorney's strategy in conjunction with a claim of ineffective assistance of counsel, he puts at issue his communications with counsel relating to those strategic choices." Id. at 1179.

Contrary to Fulks' argument, the holding of Tasby v. United States, 504 F.2d 332, 336 (8th Cir. 1975), supports the conclusion that Fulks has waived the attorney client privilege regarding most of his communications with his trial counsel. Regarding the privilege, the court stated:

> [T]hat privilege is waived when a client attacks his attorney's competence in giving legal advice, puts in issue that advice and ascribes a course of action to his attorney that raises the specter of ineffectiveness or incompetence. . . .

5

Surely a client is not free to make various allegations of misconduct and incompetence while the attorney's lips are sealed by invocation of the attorney-client privilege. Such an incongruous result would be inconsistent with the object and purpose of the attorney-client privilege and a patent perversion of the rule. **When a client calls into public question the competence of his attorney, his privileged is waived.**

Id. at 336 (emphasis provided).[2]

Fulks has called into public question the competence of his trial attorneys, thereby waiving his attorney-client privilege. He not only criticizes his attorneys' choices as far as the investigation and strategy pursued, but proposes to have another attorney testify as to why his attorneys' choices reflect incompetence.

**Fulks has not carried his burden of showing that any of his**

---

[2] Additionally, Fulks cites a number of cases to argue the importance of the attorney-client privilege. One such case observes that "underlying the attorney-client privilege is the policy of encouraging full and frank communications between an attorney and client, without the fear of disclosure, so as to aid in the administration of justice." In re Ford Motor Company, 110 F.3d 954, 963 (3d Cir. 1997). The difference between the Ford case and Fulks' case is that Ford was defending itself in a products liability case in which disclosure of privileged information would have directly impacted its current case. Fulks' criminal trial has ended, and he now claims that he did not receive a fair trial due to the lack of proper investigation, poor decisions, and incompetence of his counsel. Cases such as Ford are simply inapplicable to Fulks' case. In Ford, the issues involved the functioning of a product and the decisions of the company regarding the product. The company needed to be free to discuss these matters with current counsel without fear of disclosure. In Fulks' current case, the issue is whether his former counsel were ineffective. Therefore, the decisions his counsel made at his criminal trial are essentially the issue. Had Ford been suing its attorneys for malpractice, the court may well have found that the documents were not protected because the privilege was waived by the assertion of malpractice.

**communications with his counsel have not been waived by his numerous and expansive complaints, which cover the mitigation investigation, juror selection, advice to provide a statement to the FBI and to plead guilty, and many other areas.** See Aramony, 88 F.3d at 1389. Fulks complains that his attorney-client communications contain trial counsel's impressions about a range of matters related to their representation of him that "go beyond any of the claims raised in the § 2255 motion." (Pet.'s Mot. at 14.) He has not specified what these "matters" are, and it is difficult to imagine that there is much that he has not waived. Under the holdings of the Fourth Circuit, Fulks must show what part of the communications at issue are still protected by the attorney-client privilege, because the broad net Fulks has cast with his Amended Motion to Vacate includes claims relating to almost every aspect of the litigation.

For example, Fulks complains that his counsel were ineffective for failing to present a meaningful mental health case in mitigation: "Counsel's failure to present a meaningful mental health case was a result of their failure to investigate, prepare, coordinate, and present readily available testimony through numerous witnesses, both lay and expert, about Petitioner's life and the development and course of his mental illness." (Amended Mot. to Vacate, p. 41.) Thus, he has waived the privilege as to any information in counsels' files regarding a mental

health strategy.  In order to respond completely, the Government needs to review any documents, including, but not limited to, correspondence, reports, and discussions regarding Fulks' mental health and the decisions regarding his defense related to mental health.

Not only does Fulks complain that his trial counsel failed to present a meaningful mental health case in mitigation, he broadens the claim to include <u>any mitigation</u> by arguing that his trial counsel "were ineffective for failing to undertake an adequate and meaningful mitigation investigation."  (Amended Mot. to Vacate, p. 70.)  Fulks later complains of his trial counsels' supposed "lax efforts to collect mitigation evidence."  <u>Id.</u> at 108.  He complains that his counsel "failed to present an empathetic and accurate picture of Petitioner's life because their investigation was inadequate."  <u>Id.</u>  Thus, Fulks has waived the attorney-client privilege regarding any communication and investigation information prepared or received by his trial counsel regarding Fulks' life and the strategies regarding presentation of this information to the jury.[3]  It is quite likely that counsels' files will contain trial notes taken during the sentencing that reflect reasons why certain

_____

[3] Any mitigation investigation material in the forty four boxes would be subject to Fulks' waiver.  It is clear from Drucie Glass's testimony at Fulks' civil trial that she was an active participant, along with Dr. Arlene Andrews, in Fulks' mitigation investigation.  Therefore, Fulks has waived his attorney-client privilege regarding this information.

mitigation evidence was not presented.  The files may also contain counsels' impressions of how certain testimony hurt or helped the defense during the sentencing trial.  All this information would be relevant to why certain witnesses were and were not called.

Next, Fulks claims his trial counsels' strategy was ineffective for a number of reasons.  He incorrectly asserts that his trial counsel argued that Petitioner was not the leader during the crime spree and that trial counsel "believed that they had no reason to anticipate the testimony of Ward and Bruning."  (Amended Mot. to Vacate, p. 67.)  Thus, Fulks has waived the attorney-client privilege regarding any information, thought processes, discussions, and strategy regarding the possible testimony related to the incident and telephone call regarding Amy Ward.

Fulks also complains that trial counsel "were ineffective by using untrained and unsupervised law students to conduct key aspects of the investigation." (Pet.'s Mot. at 84.)  He claims that, as a result, "key witnesses such as Monica Wolowinski, Nathan Fulks, and Tracey Graybeal" were missed, who would have provided "testimony relating to the shocking childhood of Petitioner."[4]  (Amended

---

[4] In addition to waiving the attorney-client privilege by claiming ineffectiveness on the part of his trial counsel, Fulks has waived the privilege as to some communications because he has communicated information to third parties. For instance, Tracey Graybeal's Affidavit states that in early 2007, Fulks wrote her a letter in which he stated that his older sister molested him when he was a child.

Mot. to Vacate, p. 89-90.)  Consequently, he has waived his attorney-client

privilege regarding all information relating to or provided by law students during

the investigation and presentation of his case, and, also, any information obtained

from other sources relating to the aspects of Fulks' childhood he claims should

have been presented.[5]

Fulks' also accuses his trial counsel of being ineffective for advising him to

give a statement to the FBI when no proffer letter or plea agreement was in place.

(Amended Mot. to Vacate, pp. 104-107.)   He cites statements by attorney Andrea

Lyon criticizing the advice of his trial counsel.  Fulks has stated that he intends to

call Andrea Lyon to testify at his evidentiary regarding the strategic choices trial

---

Thus, Fulks has waived the privilege as to any information regarding sexual
molestation which he may have conveyed to his counsel or agents of counsel, such
as Drucie Glass.  See Sheet Metal Workers International Associan v. Sweeney, 29
F.3d 120, 125 (4th Cir. 1994)(any disclosure inconsistent with maintaining the
confidential nature of the attorney-client relationship waives the privilege not only
as to the specific communication disclosed, but often as to all other
communications relating to the same subject matter); United States v. Oloyede,
982 F.2d 133, 141 (4th Cir. 1992)(Any voluntary disclosure by the client to a third
party waives the privilege not only as to the specific communication disclosed, but
often as to all other communication related to the same subject matter).

[5] While Fulks cloaks part of his argument with a claim that his counsel
failed to train the law students as to how to conduct a mitigation investigation, all
information regarding the students' participation and information provided by the
students is necessary in order to respond to both the performance and the prejudice
prongs of Strickland.

counsel should have made.  Therefore, it is important for the Government to review the information Fulks' counsel had available to them upon which to base their advice, and, also, any notes, e-mails, and correspondence which may have led to or addressed the strategies used in Fulks' case.  Fulks' trial counsel are highly-respected for their knowledge and expertise.  Two head the Capital Litigation Clinic at Cornell University School of Law.  The third trial counsel, Bill Nettles, is a very experienced and forceful assistant federal public defender.  Consequently, they undoubtedly formed a well-reasoned basis for their advice during their representation of Fulks.  Yet Fulks intends to have another capital litigation attorney professor testify as to the supposed deficient representation provided by Fulks' three trial counsel.  Therefore, Fulks has waived his attorney-client privilege to anything that may have affected his counsels' decisions and advice to him.

Similarly, the Government should be allowed access to trial counsel's files in order to refute Fulks' claim that his counsel was ineffective for advising him to plead guilty, and that counsel's advice was based on a "grossly inaccurate analysis of the <u>Pinkerton</u> doctrine," which they provided to Fulks.  (Amended Mot. to Vacate, pp. 112-133.)  Fulks asserts that his counsel **"recklessly pushed his client for a plea."**  (Amended Mot. to Vacate, p. 133.)  Fulks now claims that his

guilty plea was not knowing and voluntary, that had he been adequately informed,

he would not have pled guilty, and that he was actually innocent of the carjacking

charge because he did not have the requisite intent. (Amended Mot. to Vacate, pp.

120, 125-26, 128, 130, 135.) Thus, by claiming that his counsel was ineffective in

advising him to enter a guilty plea, Fulks has waived his attorney-client privilege

to all facts tending to show his guilt or providing a defense based on innocence.[6]

Additionally, trial counsels' files likely reflect discussions regarding the merits of

pleading guilty. It is a near certainty that counsel spent significant time discussing

the pros and cons of pleading guilty. Inquiry into counsels' conversations with

Fulks and each other will likely be critical to a proper assessment of counsel's

litigation decisions. See Strickland v. Washington, 466 U.S. 668, 691 (1984).

Thus, Fulks has waived the privilege to documents regarding these strategic

considerations and decisions.

Fulks has further waived the privilege regarding any information his

counsel had as to Fulks' and Basham's participation in the crimes, since he argues

that his attorney was ineffective for not attempting to provide the jury with a

comparative analysis between his and Basham's participation in the crimes.

---

[6] The Government will honor its commitment that it will not use evidence, if any, in counsels' file that Fulks "struck the fatal blow" in the death of Alice Donovan.

12

(Amended Mot. to Vacate, pp. 138, 141.)  Fulks argues that his counsel should have called several prison personnel to testify regarding Basham's aggressiveness and should have shown that Basham was the primary actor.   Id. at 142-143. Fulks' claim that Basham was the leader is contrary to how his counsel portrayed Fulks' and Basham's roles to the Court.  Consequently, the Government should be allowed access to anything in trial counsels' files relating to the investigation of Fulks' and Basham's roles in the crimes and potential witnesses regarding the matter.

Fulks' claims of ineffectiveness also extend to the jury-selection process. He accuses his trial counsel of failing to read juror questionnaires and examine prospective jurors, and of "willingly" placing "automatic death" veniremen on the jury.  (Amended Mot. to Vacate, pp. 156, 159, 162.) He refers to counsel's seating of certain jurors as "reckless."  Id. at 160.  Thus, Fulks has clearly waived his attorney-client privilege regarding any of trial counsel's notes, records, and information as to juror selection.

Fulks further complains that his counsel was ineffective for failing to object to the prosecution's comment at closing that "they raped" Samantha Burns. (Amended Mot. to Vacate, p. 181, 184.)  He asserts: "Trial counsel failed to object to this outright lie."  Id.  Consequently, Fulks has waived the attorney-client

13

privilege as to any information in trial counsels' records tending to show that Fulks assisted with or participated in the rape of Samantha Burns. Fulks further complains that trial counsel was ineffective for failing to call Ronnie Fulks to testify regarding a .45 caliber gun Fulks allegedly gave to Ronnie. Id. at 186. Therefore, he has waived the privilege as to any notes or correspondence regarding the possible testimony of Ronnie Fulks.

Fulks has cited Bittaker v. Woodford, 331 F.3d 715 (9th Cir. 2003), to support his argument against waiver of the attorney-client privilege. (Pet.'s Mot., pp. 7-8.) The issue in that case, however, was whether the waiver extended "only to litigation of the federal habeas petition, or is the attorney-client privilege waived for all time and all purposes - including the possible retrial of the petitioner, should he succeed in setting aside his original conviction or sentence?" Id. at 717. The Government would stipulate that it will not use information received from Fulks' trial counsel in any re-prosecution of Fulks in the highly unlikely event that his sentence is vacated.

Finally, Fulks makes the suggestion that the government should employ a taint team to review trial counsels' files. Fulks' reference to United States v. Lenz, 524 F.3d 501, 516 n.3 (4th Cir. 2008), to support the possible use of a "taint team" to review documents is misplaced. The prosecution's taint team in that case

14

involved the review of a telephone conversation between Lenz and his attorney during the active litigation of Lenz's criminal case. It did not involve a claim by Lenz that his attorney was ineffective. Rather, it involved a telephone conversation between Lenz and his attorney that could be used to support additional charges against Lenz. Id. The use of a taint team was appropriate in that case. To do so in this § 2255 action would be cumbersome, unnecessary, and unprecedented.

For all the foregoing reasons, the government requests that it be allowed to proceed with the review of the forty-four boxes of trial counsels' files in the possession of habeas counsel and review any other trial counsel files in the possession of trial counsel. The government agrees it will not use information received from Fulks' trial counsel in any re-prosecution of Fulks in the highly unlikely event that his sentence is vacated. Furthermore, the government will not use (and will not make copies of) any material or information in trial counsels' files that is not related or relevant to a claim in Fulks' Amended Motion to Vacate.

## II Witnesses

Fulks challenges the Court's Order with respect to the witnesses who may be called at the evidentiary hearing scheduled to begin October 5, 2009. The Government responds as follows:

A. Fact Witnesses

At the recent hearing, the Court determined, and parties agreed, that "we are going to start the hearing with the affidavits of fact witnesses. Once we get into them one by one, at any point petitioner's counsel can suggest that we really need the witness here, or the government can suggest we really need the witness here, or might on my own motion decide to bring in a warm body, so to speak. All right?" Transcript of 8/11/09 Status Conference/Motion Hearing, at p. 30. The Court's Order, however, notes that the determination of which fact witnesses might be called live rests solely with the Court: "Should the court find that live testimony is necessary from any of these witnesses, the court will resume the hearing on October 21, 2009 to receive the same." Order dated 8/21/09, at p. 4. Although the Court's Order reflects a change regarding who will decide whether the fact witnesses will need to be called live, the Court's Order is supported by Fourth Circuit law that the decision whether to accept affidavits in lieu of live testimony is best left to this Court's common sense and sound discretion. See Raines v. United States, 423 F.2d 526, 529-30 (4th Cir. 1970). In any event, the government agrees with the Court's Order that any affidavits received by the Court should and will be "with the government's stipulation that the testimony is what the witnesses would have testified to if called live, but not that the facts

averred to in affidavits are necessarily true." Order, at 4.

B. Andrea Lyon

Defense attorney Andrea Lyon's testimony is not necessary or appropriate. To the extent she will testify regarding the American Bar Association's Guidelines for Appointment and Performance of Defense Counsel in Death Penalty Case (Rev. Ed. 2003), these guidelines are available to the Court through the internet. See http://www.fjc.gov/public/pdf.nsf/lookup/DPen0709.pdf/$file/DPen0709.pdf.

To the extent Ms. Lyon is called to testify as an expert about whether Fulks' trial counsel were ineffective, this is not proper testimony. "The reasonableness of a strategic choice is a question of law to be determined by the court, not a matter subject to factual inquiry and evidentiary proof. Accordingly, it would not matter if a petitioner could assemble affidavits from a dozen attorneys swearing that the strategy used at his trial was unreasonable. The question is not one to be decided by plebiscite, by affidavits, by deposition, or by live testimony. It is a question of law to be decided by [the courts], each in its own turn." Provenzano v. Singletary, 148 F.3d 1327, 1332 (11th Cir. 1998); see also Newland v. Hall, 527 F.3d 1208 (11th Cir. 2008); Jackson v. United States, ___ F.Supp.2d ___, 2009 WL 17969988, at *18-19 (W.D.N.C. 2009). In a recent death penalty § 2255 action, the district court determined that attorney experts' opinions were not appropriate:

"An expert witness cannot give an opinion as to his or her legal conclusions; i.e., an opinion on an ultimate issue of law. Opinion testimony that states a legal standard or draws a legal conclusion by applying law to the facts is generally inadmissible. That is precisely what each attorney has done in his or her affidavit by opining that trial counsel rendered ineffective assistance of counsel. As a result, the undersigned will exclude these affidavits." Jackson v. United States, ___ F.Supp.2d ___, 2009 WL 17969988, at *7 (W.D.N.C. 2009) (citations omitted). For these reasons, the Court should decline to allow Ms. Lyon to testify.

C. Margaret Melikian

At the hearing before the Court, Fulks' counsel made the following representation: " think Dr. Melikian is sailing, Your Honor, the high seas. Don't know of her availability." Transcript of 8/11/09 Status Conference/Motion Hearing, at p. 30. In response to a question about whether Fulks intended to call Dr. Melikian, counsel responded: "Your Honor, she's simply out of communication. If I can contact her, if it appears that we would want to use her, I will contact Mr. Daley and we will contact the court, Your Honor, and ask you to rule on her appearance." Id. at 35.

D. Sheriff Hewett

This Court has already twice examined whether Sheriff Hewett should

18

testify for a third time about Basham's "deer statement" and demonstration of how a purse strap was allegedly used to strangle Alice Donovan. The Court has determined "it is unnecessary to hear Sheriff Hewett's testimony again." Order dated 8/21/09, at p. 2. As noted previously, Sheriff Hewitt has testified consistently both before Fulks' trial at a pre-trial hearing (at which Fulks' trial counsel were present) and at Basham's trial. Additionally, an "Interview Report" of Sheriff Hewett was provided in discovery which is also consistent with Sheriff Hewett's testimony–it recorded both the "deer statement" and that Basham demonstrated how the purse strap was used to strangle Alice Donovan. For all the previous reasons set forth in the government's memoranda and in this Court's Orders dated 9/18/08 and 8/21/09, there is no reason for Sheriff Hewett to testify.

## III. Conclusion

For the above-stated reasons, the Government opposes Fulks' Motion to Reconsider.

Respectfully submitted,

**W. Walter Wilkins**
**United States Attorney**

S/<u>Robert F. Daley, Jr.</u>
Robert F. Daley, Jr. (ID No. 6460)
Jimmie Ewing (ID No. 7292)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina 29201

August 28, 2009