| | |
|---|---|
| United States of America, | Case No. 4:02-992-JFA |
| Respondent, | |
| vs. | **RESPONSE TO CHADRICK E. FULKS'S PRO SE MOTION FOR RECONSIDERATION** |
| Chadrick E. Fulks, | |
| Petitioner. | |

Appointed counsel for Petitioner Chadrick E. Fulks, together with pro bono counsel (collectively, "counsel"), respond as follows to the pro se Motion for Reconsideration ("Motion") filed by Mr. Fulks.

## BACKGROUND

Throughout their representation of Mr. Fulks, counsel have welcomed Mr. Fulks's insight and assistance with the proceedings and have sought to keep him "in the loop" to the greatest extent possible. To this end, one or more of the undersigned converse with Mr. Fulks by telephone on a near-weekly basis regarding all aspects of his case. These conversations have become even more frequent as the evidentiary hearing approaches.

The filing of the Motion comes as a complete surprise to counsel.[1] Counsel spoke with Mr. Fulks on August 10, 2009, the day before the August 11 status conference. At that time, counsel discussed the recently filed Reply in Support of the Amended Motion to Vacate and the

---

[1] Counsel arranged a telephone conference for Friday, August 28, to discuss the Motion and this Response with Mr. Fulks. Mr. Fulks refused to accept the call.

filings by counsel and the government that had precipitated the hearing.[2] Mr. Fulks, at that time, was satisfied with the Reply and with the arguments counsel planned to make at the status conference. Counsel's next call with Mr. Fulks took place on August 19. During that call, counsel informed Mr. Fulks of the Court's oral rulings on August 11, including the Court's conclusion that Mr. Fulks would attend the hearing via videoconference and the Court's ruling that the government would be allowed to review all of trial counsel's files.[3] Mr. Fulks was understandably disappointed, but he gave no indication that he intended to file the Motion.

**ARGUMENT**

It should come as no surprise to this Court that criminal defendants, particularly those facing a sentence of death, can be challenging clients. Setbacks in litigation can be psychologically devastating events. As a preface to their response to the particular items enumerated by the Court, counsel note that Mr. Fulks's Motion for Reconsideration appears to be born of a sense of frustration and disappointment at the outcome of the August 11 status conference.

### A.     Presence at the Hearing

Counsel have advised Mr. Fulks from the outset that whether an evidentiary hearing would occur, and whether he would attend such a hearing in person, were matters within the discretion of the Court. Counsel's view as to Mr. Fulks's attendance at the hearing was informed, in part, by counsel's understanding that the videoconference system used during the trial of *Fulks v. Metts* had worked very well. During the August 19 telephone call, Mr. Fulks

---

[2] Before filing the Reply, counsel circulated two working drafts to Mr. Fulks and scheduled a telephone call to discuss the contents of the Reply. Tragically, Mr. Fulks's brother Dewayne committed suicide the week before the Reply was due, and Mr. Fulks was emotionally unable at that time to participate in the drafting process.

[3] At the time of the August 19 call, the Court had not yet issued its written ruling and counsel

informed counsel for the first time that during that trial, when Mr. Fulks was supposed to have access to a private telephone line to confer with counsel, guards insisted on being in the room at all times. The guards claimed that the presence of the television monitor showing the courtroom in South Carolina made the room in Terre Haute a "courtroom," in which they had a right to be present. As a consequence, Mr. Fulks was not able to have truly private conversations with counsel.

Undersigned counsel recognize that there are significant logistical hurdles and security concerns involved with Mr. Fulks's personal attendance at the evidentiary hearing. Counsel further recognize that whether Mr. Fulks should be transported to Columbia for the hearing is a matter within the discretion of the Court. However, Mr. Fulks is legitimately concerned that he will be unable to communicate effectively and privately with counsel if he is not physically present. At a minimum, counsel request that this Court enter an order directing that Mr. Fulks be entitled to truly private consultations with counsel during the course of the evidentiary hearing.

**B.     Mr. Fulks's Request To "Speak Freely" And To Personally Question Monica Wolowinski, Nathan Fulks, And Christina Kirkman**

Throughout their representation of Mr. Fulks, counsel have endeavored to be sensitive to Mr. Fulks's concerns while at the same time providing him with the best representation possible. At times, these two goals have conflicted. Such a conflict exists with respect to the testimony of Monica Wolowinski, Nathan Fulks, and Christina Kirkman and Mr. Fulks's request to be allowed to speak at the evidentiary hearing, which counsel believe concerns the same issue. In the Amended Motion to Vacate and the Reply, counsel assert that trial counsel's failure to uncover and present evidence that Mr. Fulks was sexually abused is a critical aspect of Mr. Fulks's entitlement to post-conviction relief. Mr. Fulks, perhaps understandably, is reluctant to

---

had not yet made the determination to move for reconsideration.

have these matters aired publicly. Importantly, however, Mr. Fulks has been an active participant in the drafting of the Motion to Vacate, the Amended Motion, and the Reply. With particular regard to the allegations regarding trial counsel's failure to uncover evidence of sexual abuse, counsel and Mr. Fulks have discussed the importance of raising these claims on a number of occasions.

An evidentiary hearing on a motion to vacate sentence is not a criminal trial; accordingly, Mr. Fulks does not have a constitutional right to testify on his own behalf. While counsel welcome input from Mr. Fulks regarding the presentation of his claims, they are frankly concerned that Mr. Fulks's statements to the Court might be detrimental to his case and counter to the efforts counsel have made to present the best possible case for Mr. Fulks. Simply put, Mr. Fulks's testimony—or the informal allocution that Mr. Fulks's Motion appears to propose—has never been a part of counsel's plan for the presentation of Mr. Fulks's claims.

**C.      Mr. Fulks's Assertion That He "Does Not Need Counsel" And His Claim That The Amended Motion To Vacate Was Filed "Without [His] Permission"**

At certain points in his Motion, Mr. Fulks appears to assert that the Amended Motion to Vacate was filed without his consent; he also asserts that he does not need the assistance of counsel. As this Court is no doubt aware, several times since his sentencing Mr. Fulks has indicated a desire to withdraw his appeals and proceed to execution. Each time, upon reflection and after the emotion of the moment has passed, Mr. Fulks has realized that pursuing relief is in his best interest and he has re-engaged in the proceedings.

Mr. Fulks's statements in the Motion are by no means a clear articulation of a desire to cease pursuit of his appeals, and counsel do not suggest that the statements be taken as such. Rather, counsel believe that Mr. Fulks's statements stem from his disappointment at the Court's rulings on August 11. It does not appear that Mr. Fulks truly desires to abandon the proceedings.

**CONCLUSION**

Mr. Fulks is, as he notes in his Motion, fighting for his life. Counsel have the utmost respect for the difficulty of Mr. Fulks's position and have done their best to be sensitive to Mr. Fulks's feelings and concerns. What counsel cannot do is shield Mr. Fulks from the frustration and disappointment that come as a consequence of adverse rulings by the Court. Counsel respectfully suggest that the Court view Mr. Fulks's Motion as Mr. Fulks's emotional reaction upon learning of the Court's rulings at the August 11 status conference, and respond accordingly.

/s/ Kirsten E. Small

Kirsten E. Small        Fed ID No. 10005
NEXSEN PRUET, LLC
55 East Camperdown Way (29601)
Post Office Drawer 10648
Greenville, South Carolina 29603-0648
PHONE: 864.370.2211
FACSIMILE: 864.282.1177
KSmall@nexsenpruet.com

/s/ Beattie B. Ashmore

Beattie B. Ashmore
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, SC 29601
PHONE: 864.467.1001
Beattie@beattieashmore.com

Pro bono counsel
Amy Laurendeau
David Dalke
Kymberleigh Damron-Hsiao
Danielle Oakley
Stephanie Noble

Attorneys for Petitioner

August 31, 2009
Greenville, South Carolina