**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**FLORENCE DIVISION**

| | |
|---|---|
| United States of America,<br><br>　　　　　　Respondent,<br><br>vs.<br><br>Chadrick E. Fulks,<br><br>　　　　　　Petitioner. | Case No.  4:02-992-JFA<br><br><br>**MOTION FOR STAY OF PROCEEDINGS** |

COMES NOW Petitioner Chadrick E. Fulks and moves this Court for a stay of the proceedings incident to his Amended Motion to Vacate pending before this Court until after resolution of <u>Mohawk Industries v. Carpenter</u>, 129 S. Ct. 1041 (2009), by the United States Supreme Court.  Issuance of a stay is the only means by which Mr. Fulks's undisputed right to the preservation of privileged attorney-client communications can be protected.

**BACKGROUND**

On August 4, 2009, the government filed a "Motion for a Ruling on Waiver of the Attorney-Client Privilege," asserting that by making ineffective-assistance-of-counsel claims ("IAC claims"), Mr. Fulks had waived the attorney-client privilege as to all communications with and among trial counsel.  The government asserted entitlement to "production of all materials relating to Fulks' trial counsel's representation of Fulks, held by trial counsel or any of Fulks' counsel on the post-conviction motion."  Motion at 1.  The government also sought leave to "discuss" the case with trial counsel.  <u>Id.</u>  Mr. Fulks opposed the motion, arguing that the government's requests greatly exceeded the scope of any waiver implicit in his IAC claims.

1

On August 21, 2009, this Court entered an order compelling disclosure of trial counsel's documents and directing Mr. Fulks's counsel to immediately provide the government with searchable electronic copies of all documents previously scanned by pro bono counsel, as well as an index to the scanned documents. The Court further directed counsel for Mr. Fulks to produce for government inspection "[a]ny and all materials pertaining to communications and advice passing between Petitioner and trial counsel, John Blume, Sherri Johnson, and William Nettles, pretrial and trial." Order at 7-8.

Mr. Fulks asked this Court to reconsider its ruling on August 25, 2009, which motion was denied on September 11, 2009. Mr. Fulks has noted an appeal of the August 21 and September 11 Orders.

In researching whether Mr. Fulks had the right to seek interlocutory appeal of this Court's order compelling disclosure of putatively privileged material, counsel discovered that Fourth Circuit precedent likely precludes an appeal of this Court's order compelling disclosure of privileged material. However, counsel also learned that the Fourth Circuit is in direct conflict with decisions from other circuit courts and this very question is to be presented before the Supreme Court for the October 2010 term.

On October 5, 2009 the Supreme Court will hear argument on the following question, an issue presented squarely by Mr. Fulks's case:

> Whether a party has an immediate appeal under the collateral order doctrine, as set forth in *Cohen v. Beneficial Loan Corp.,* 337 U.S. 541 (1949), of a district court's order finding waiver of the attorney-client privilege and compelling production of privileged materials?

Mohawk Industries v. Carpenter, 129 S. Ct. 1041 (2009); see Supreme Court Argument Calendar

http://www.supremecourtus.gov/orders/09grantednotedlist.pdf at 3.

Should the Supreme Court resolve the circuit split in a manner favorable to Mr. Fulks, this Court's Order—which requires production of privileged material in a manner that would potentially cause irreparable damage to Mr. Fulks's postconviction proceedings and possible retrial—will be an appealable order, and Mr. Fulks will be entitled to immediate review. Because a Supreme Court decision on this important issue is imminent, Mr. Fulks requests that this Court stay the proceedings pending the Supreme Court's decision in Mohawk Industries and, if Mohawk Industries is decided favorably to Mr. Fulks, until the Fourth Circuit has ruled on Mr. Fulks's appeal.

**ARGUMENT**

A district court has broad discretion to stay proceedings to control its own docket. Clinton v. Jones, 520 U.S. 681, 706-707 (1997). "[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants. How this can best be done calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." Landis v. North American Co., 299 U.S. 248, 254-255 (1936). Courts frequently grant stays pending review of an order compelling disclosure of putatively privileged information. See, e.g., Herbalife Int'l., Inc. v. St. Paul Fire & Marine Ins. Co., No. 5:05CV41, 2006 WL 2560271, at *4 (N.D. W.Va. Sept. 5, 2006) (staying order compelling production pending review because "the documents may be found to be protected by the attorney-client privilege and/or the work product doctrine"); Syngenta Crop Prot., Inc. v. U.S.E.P.A., 222 F.R.D. 271, 276 (M.D.N.C. 2004) (mentioning that the court had stayed an order compelling production where documents were arguably protected by attorney-client privilege and work product immunity); U.S. Surgical

Corp. v. Orris, Inc., 983 F. Supp. 963, 970 (D. Kan. 1997) (noting that the court granted a motion to stay the magistrate's order pending review of the objections).

**I.      A STAY IS NECESSARY TO PREVENT AN IRRETRIEVABLE LOSS OF MR. FULKS'S RIGHT NOT TO DISCLOSE PRIVILEGED MATERIAL**

The attorney-client privilege is "one of the oldest recognized privileges for confidential communications." Swidler & Berlin v. United States, 524 U.S. 399, 403 (1998). It exists in order to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." Upjohn Co. v. United States, 449 U.S. 383, 389 (1981). The Supreme Court has long acknowledged that the attorney-client privilege arises from "the necessity, in the interest and administration of justice, of the aid of persons having knowledge of the law and skilled in its practice, which assistance can only be safely and readily availed of when free from the consequences or the apprehension of disclosure." Hunt v. Blackburn, 128 U.S. 464, 470 (1888); Blackburn v. Crawfords Lessee, 3 Wall. (70 U.S.) 175, 192-93 (1865) ("If the privilege did not exist at all, every one would be thrown upon his own legal resources. Deprived of all professional assistance, a man would not venture to consult any skilful person, or would only dare to tell his counsel half his case."). At its core, the attorney-client privilege provides a right not to disclose privileged information. See Hunt, 128 U.S. at 470; Kelly v. Ford Motor Co. (In re Ford Motor Co.), 110 F.3d 954, 963 (3rd Cir. 1997) ("[U]nderlying the attorney-client privilege is the policy of encouraging full and frank communications between an attorney and client, *without the fear of disclosure,* so as to aid in the administration of justice." (emphasis added)).

There is no dispute here that the attorney-client privilege may be implicitly waived when a client places the lawyer's performance at issue in litigation. However, it is equally beyond question that such an implied waiver is "no broader than needed to ensure the fairness of the

proceedings." Bittaker v. Woodford, 331 F.3d 715, 718-720 (9th Cir. 2003) (en banc). The rationale underlying the doctrine of implied waiver is one of fairness — to prevent a party from abusing the privilege by asserting claims that cannot be adequately refuted by the opposing party without access to the privileged materials. Id. at 719. This rationale "only supports a waiver broad enough to serve that purpose." Id. at 720.

The scope of the implied waiver thus depends on the content of the claims of ineffective assistance. See Johnson v. Alabama, 256 F.3d 1156, 1179 (11th Cir. 2001) ("[T]he precise boundaries of the waiver will vary from case to case, and in many instances will require careful evaluation by the district court."). Further, courts have "consistently construed [implied waivers] narrowly," In re: Lott, 424 F.3d 446, 453 (6th Cir. 2005), and have "closely tailored the scope of the waiver to the needs of the opposing party in litigating the claim in question," Bittaker, 331 F.3d at 720; see Johnson, 256 F.3d at 1168 & n.4 (requiring *in camera* hearing in order to determine "whether and to what extent appellant's communication presumptively protected by the attorney-client privilege is relevant to the specific ineffective assistance of counsel claims raised by appellant in his habeas petition" (internal quotation marks omitted)); Waldrip v. Head, 532 S.E.2d 380, 387 (Ga. 2000) (holding that an ineffectiveness claim is not an absolute waiver, but rather a limited waiver and that the government "is entitled only to counsel's documents and files relevant to the specific allegations of ineffectiveness"). In fact, even when the petitioner's attack on trial counsel's representation is "rather broad-ranging and extensive in nature," an unlimited waiver is still not appropriate. State v. Taylor, 393 S.E.2d 801, 805 (N.C. 1990). The waiver may be correspondingly broad, but is still limited to materials relevant to the claims asserted. See id. Thus, even in the most extreme cases, the government is not entitled to discovery of trial counsel's *entire* file.

Once information subject to the attorney-client privilege is disclosed, this right of non-disclosure is lost forever and cannot be repaired.  See United States v. Philip Morris Inc.. 314 F.3d 612, 619 (D.C. Cir. 2003) ("In this case, the right sought to be protected – BATCo's privilege – would be destroyed if interlocutory appeal is not allowed.").  See also In re Ford, 110 F.3d at 963 (holding that "once putatively protected materials is disclosed, the very 'right sought to be protected' has been destroyed.").

This is plainly true in the present case.  Once Mr. Fulks's counsel disclose "any and all materials pertaining to communication and advice passing between Petitioner and trial counsel," Order at 7-8, Mr. Fulks will irretrievably lose the protections afforded by the attorney-client privilege.  The government will have enjoyed the opportunity to review and consider the privileged communications and the legal impressions of its adversary trial counsel.  Indeed, for any litigant, there could hardly be any worse recipient of attorney-client privileged information than his or her adversary.  This information could not be effectively recovered on appeal from a final judgment, since there is no way to force the government to forget what it learned from the privileged communications.[1]  See In re Ford, 110 F.3d at 963 ("'Attorneys cannot unlearn what has been disclosed to them in discovery'; they are likely to use such material for evidentiary leads, strategy decisions, or the like.")

A post-judgment appeal resulting in a reversal of this Court's Order would be manifestly useless in vindicating the right against disclosure that Mr. Fulks seeks to protect, since by that point, "the cat is already out of the bag" and there is "no way to unscramble the egg scrambled

---

[1] The harm of such a violation is potentially even greater in a criminal case, such as Mr. Fulks's, than in the civil cases discussed herein.  Disclosure of privileged information in Mr. Fulks's case implicates unique constitutional concerns because of the applicability of the Fifth Amendment in criminal cases.

by the disclosure." In re Ford, 110 F.3d at 963. The attorney-client privilege is not simply an evidentiary privilege that prohibits use of protected information at trial. Rather, when properly invoked, the privilege provides an absolute right not to disclose the privileged information in the first place. While privileged communications often contain facts – facts the government has alternative avenues to discover – attorney-client communications also contain trial counsel's impressions about a range of matters related to their representation of Mr. Fulks that go beyond any of the claims raised in the Amended Motion to Vacate. These mental impressions cannot be recovered on appeal after disclosure and final judgment, nor can the harm occasioned by their improper disclosure be undone.

Moreover, if the government were to have access to privileged material that the reviewing court was to subsequently rule was inappropriately ordered disclosed, it would require the recusal of the AUSAs in any subsequent proceeding. Indeed, the importance of protecting privileged confidential material is reflected in the extensive use of "firewalled" attorneys and so-called "taint teams" at the outset to prevent precisely this sort of problem from occurring. See, e.g., U.S. v. Lentz, 524 F.3d 501 (4th Cir. 2008); U.S. v. Howard, 540 F.3d 905 (8th Cir. 2008); U.S. v. Hoffecker, 530 F.3d 137 (3d Cir. 2008); U.S. v. Ary, 518 F.3d 775 (10th Cir. 2008). Such protections are so fundamental that, in certain situations, prophylactic measures have been adopted by Congressional act. See, e.g., Fed. R. Crim. Pro. Rule 12.2 (forbidding disclosure to any attorney for the government of the results and reports of mental health examinations unless the defendant is found guilty of one or more capital crimes and the defendant confirms an intent to offer during sentencing proceedings expert evidence on mental condition).

Should Mr. Fulks be forced to unnecessarily reveal privileged and/or work product material to the government, no easy remedy can rectify the harm. Indeed, in one Fourth Circuit

7

case where government counsel inadvertently reviewed privileged material, the district court found no other option than disqualifying counsel:

> From the foregoing the court concludes that the remedy suggested by the United States, namely, no further use by the government of the privileged documents and their return to counsel for the [appellees], will not adequately maintain the integrity of the confidential attorney-client privilege, and cannot insure that those who have viewed the documents will not, even subconsciously, be affected by knowledge gained thereby in pursuing the investigation of the [appellees]. The court further concludes that the only adequate appropriate remedy is disqualification of the Assistant United States Attorney and two agents from further participation in the investigation.

U.S. v. Under Seal, 757 F.2d 600, 602 (4th Cir. 1985) (quoting district court).

**II.     A STAY IS NECESSARY IN ORDER TO DETERMINE WHETHER MR. FULKS HAS A RIGHT TO IMMEDIATE REVIEW OF THIS COURT'S ORDERS**

As a general rule, discovery orders are not final orders and are not subject to interlocutory appeals.  Church of Scientology of Ca.v. U.S., 506 U.S. 9, n. 11 (1992).  A specific class of discovery orders, however, fall within a narrowly defined exception, the "collateral order doctrine," established by the Supreme Court in Cohen v. Beneficial Industrial Loan Corp., 337 U.S. 541 (1949).  The collateral order doctrine creates an exception to the requirement of a final order and allows an order to be appealed where it: (1) conclusively determines the disputed question; (2) resolves an important issue completely separate from the merits of the action; and (3) is effectively unreviewable on appeal from a final judgment.   See Coopers & Lybrand v. Livesay, 437 U.S. 463, 468 (1978).

The federal circuits have split in deciding whether discovery orders which compel disclosure of potentially privileged material fall within the collateral order doctrine.  At the heart of the split lies a determination of whether an appeal from a final judgment provides the review necessary to remedy improper disclosure of privileged material.  Several circuits have opined that appellate review of the final judgment does provide sufficient protection and, if the

8

reviewing court "determines that privileged documents were wrongly turned over to the plaintiffs and were used to the detriment of defendants at trial, [the court] can reverse any adverse judgment and require a new trial." Boughton v. Cotter Corp., 10 F.3d 746, 749 (10th Cir. 1993); see also Quantum Corp. v. Tandon Corp., 940 F.2d 642, 644 (Fed. Cir. 1991).

Other circuits, however, recognize that once privileged material is disclosed, reversing on appeal is inadequate to rectify the harm. See, e.g., Kelly v. Ford Motor Co., 110 F.3d 954, 963 (3rd Cir. 1997) ("Once putatively protected material is disclosed, the very 'right sought to be protected' has been destroyed. Appeal after final judgment cannot remedy the breach in confidentiality occasioned by erroneous disclosure of protected materials. At best, on appeal after final judgment, an appellate court could send the case back for re-trial without use of the protected materials. At that point, however, the cat is already out of the bag.").

Current Fourth Circuit law may bar Mr. Fulks from pursuing an interlocutory appeal of this Court's order finding a waiver of privilege. In United States v. Search of 235 South Queen Street, 319 Fed. Appx. 197 (4th Cir. 2008) (unpublished), the district court issued an order compelling disclosure of putatively privileged material finding, in part, that the appellant had impliedly waived the privilege under the crime fraud exception. Id. at 198-99. On appeal, the Fourth Circuit held that the district court's order did not constitute a final order and lacked the necessary elements to fall within an exception to the bar on immediate appeals of non-final orders. In refusing to consider the district court's order compelling disclosure of arguably privileged material, the Fourth Circuit has apparently aligned itself with the other circuit courts precluding interlocutory appeals of orders compelling disclosure of potentially privileged material.

Mr. Fulks submits that a stay is required to prevent unnecessary complications in his postconviction proceedings. If the Supreme Court rules in <u>Mohawk Industries</u> that appellate jurisdiction exists, Mr. Fulks's appeal will be heard by the Fourth Circuit. If, in the meantime, the government has been allowed to view material which is ultimately deemed privileged, this Court cannot easily remedy the violation. In fact, should the Supreme Court reverse the Eleventh Circuit in <u>Mohawk Industries</u>, it is likely that the decision would endorse the view of some of the lower courts that improper disclosure of privileged material allows opposing counsel an improper advantage which cannot be rectified. <u>See</u> <u>In re Ford,</u> 110 F.3d at 963 ("'[A]ttorneys cannot unlearn what has been disclosed to them in discovery'; they are likely to use such material for evidentiary leads, strategy decisions, or the like."). As discussed above, the only appropriate action in such circumstances would be disqualifying counsel who viewed the privileged documents and relitigating the case with new opposing counsel. To avoid such drastic action, Mr. Fulks respectfully requests that this Court grant a stay of his proceedings until the Supreme Court rules in <u>Mohawk Industries</u>.

## CONCLUSION

For the above-mentioned reasons, Mr. Fulks respectfully requests that this Court stay his proceedings pending the Supreme Court's decision in <u>Mohawk Industries</u> so that he may be able to avail himself of the appellate remedy a favorable decision would mandate. Mr. Fulks submits that staying the current proceedings until the Supreme Court resolves the issue presented in <u>Mohawk Industries</u> is the most efficient means of preserving both Mr. Fulks's ability to protect his right not to disclose privileged material and preserving this Court's judicial resources.

Respectfully submitted,

/s/ Kirsten E. Small
Kirsten E. Small  (Fed ID No. 10005)
NEXSEN PRUET, LLC
55 East Camperdown Way (29601)
Post Office Drawer 10648
Greenville, SC  29603-0648
PHONE:  864.370.2211
KSmall@nexsenpruet.com

Beattie B. Ashmore  (Fed ID No. 5215)
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, SC 29601
PHONE: 864.467.1001
Beattie@beattieashmore.com

Attorneys for Petitioner

September 15, 2009
Greenville, South Carolina