**IN THE DISTRICT COURT OF THE UNITED STATES**

**FOR THE DISTRICT OF SOUTH CAROLINA**

**FLORENCE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | **CR NO. 4:02-992-JFA** |
| | ) | |
| | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CHADRICK E. FULKS** | ) | |

## <u>Memorandum in Opposition to Motion to Supplement the Pleadings</u>

Based upon the discovery of a few bones of one of his victims, Fulks seeks leave to amend/supplement his petition to add a claim that the government violated his Fifth and Eighth Amendment rights by presenting materially false or misleading testimony or argument to the jury. In essence, Fulks' new claim asserts that the the discovery of his victim's bones off of Water Tower Road reveals that the government presented materially false and inaccurate information to the jury about the search for Alice Donovan's body. That recent discovery of remains, however, does nothing to impugn the truthfulness of the government's full and fair presentation to the jury. Thus, the addition of the new claim would be futile and Fulks' motion for leave to add proposed claim XXXIII should be denied.

1

**I.** **This Court should deny Fulks' motion for leave because the proposed amendment would be futile.**

Fulks' motion for leave to amend/supplement to add proposed claim XXXIII should be denied because the addition of the proposed claim would be futile. As set forth below, accepting Fulks' allegations as true[1] does not support his contention that the government presented any untruthful testimony or argument that could potentially violate Fulks' constitutional rights. At trial, the government presented testimony and argument that fully and fairly described the search for the body, including the facts that Fulks and Basham disposed of the victim's body in a location that would likely prevent or hinder its discovery and that Fulks waited months before providing information about the location where he and Basham left Alice Donovan's body.

The recent discovery of some of the remains of Alice Donovan in a wooded area near where Fulks led law enforcement in March 2004 does not support Fulks' contention that the government's presentation was somehow materially false or

---

[1]The government does not dispute that a search in January 2009 turned up several bones that have been identified as the bones of Alice Donovan. See Horry County Police Department Officer's Report attached hereto as Exhibit 1; DNA test results, dated July 23, 2009 attached hereto as Exhibit 2. These bones were discovered in the general area Fulks identified when he was brought to Horry County on March 23, 2004, to aid in the location of the body. See Trial Testimony, Vol. XI, 6/15/04, at pp. 60-63, 77-85 (trial testimony of FBI Agent Jeff Long).

misleading. The government presented neither testimony nor argument that Fulks obstructed the search for Alice Donovan's body.[2]  Nothing in the government's full, complete, and truthful description of the efforts to locate Alice Donovan's body was rendered false or misleading by the discovery of some of her remains. Without some materially false or misleading testimony or argument, Fulks' proposed amendment fails to state a claim on which any relief could be granted. See, e.g., Hernandez v. Johnson, 213 F.3d 243, 252-53 (5th Cir. 2000) (Eighth Amendment claim failed; failed to show testimony was false or material).  As the Fourth Circuit has instructed, leave to add such a futile claim should be denied. See United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000) (district court did not abuse discretion in denying motion to amend §2255 petition because proposed amended claims were "barred by statute of limitations and therefore futile")[3];

---

[2]The government was precluded from presenting evidence that on November 21-22, 2002, through his attorney in Indiana, Fulks initially led law enforcement to believe that Alice Donovan was alive and tied to a tree in the Savannah Bluff area in woods off of Wonderland Road near Conway, SC.  Trial Transcript, Vol. IX, 6/11/04, at p. 27.  See FBI 302, date of transcription 11/25/02 (Fulks, through attorney, said that "live woman taped to a tree" in woods on "Wonderland Road" near Conway, SC) (attached hereto as Exhibit 3).  See also Trial Transcript, Vol. VIII, 6/10/04, at pp. 187-201; Vol. IX, 6/11/04, at pp.4-29; Vol. XI, 6/15/04, at pp. 123-25.

[3]The factors a district court may consider in determining whether to grant leave to supplement pursuant to Fed.R.Civ.P. 15(d) are the same as those applicable to requests for leave to amend pursuant to Fed.R.Civ.P. 15(a).  Glatt v.

Johnson v. Oroweat Foods Co., 785 F.2d 503, 509 (4th Cir. 1986).

**II.    The government presented the jury with a full and accurate picture of the search for Alice Donovan's body.**

Fulks assertion in proposed claim XXXIII that the government presented materially false and inaccurate testimony and argument about the search for Alice Donovan's body and about Fulks' actions (and initial inaction) to provide information to locate the body is baseless.  The government presented no testimony or information that was false or inaccurate.  Fulks's failure to point to any testimony or argument that was actually false or misleading renders his amendment futile.  See Hernandez, 213 F.3d at 252-53 ; Fuller v. Johnson, 114 F.3d 491, 497 (5th Cir. 1997).

Contrary to Fulks' claim, the government presented truthful evidence that Fulks participated in the kidnaping, rape and killing of Alice Donovan; that Fulks drove[4] Alice Donovan to two isolated areas; that Fulks was involved in driving her

_____

Chicago Park District, 87 F.3d 190, 194 (7th Cir. 1996) (collecting cases). Therefore, "futlity" is a reason to deny leave to supplement.  See  Foman v. Davis, 371 U.S. 178, 182 (1962).

[4]The evidence was overwhelming that Fulks did all the driving throughout the crime spree that he engaged in with Basham.  See United States v. Fulks, 454 F.3d 410, 426 (4th Cir. 2006) ("[T]hroughout the crime spree, Fulks and Basham only traveled to places with which Fulks was familiar, and they did so with Fulks behind the wheel.").  Additionally, the evidence was clear that Fulks was the only one familiar with the rural areas in South Carolina where he drove.  See Trial

to the last place before she was killed in a remote rural area; that Fulks waited

several months after the disappearance of Alice Donovan before he agreed to

provide law enforcement with any information regarding the possible location of

Ms. Donovan's body; that Fulks' provided information about the possible location

of Ms. Donovan's body and participated in the search for her body; and that

multiple searches for the body occurred.[5]   The presentment of this truthful

information did not violate Fulks' Fifth and Eighth Amendment rights.  Fulks'

attempt to recharacterize what the government presented and argued to the jury

cannot change the fact that the government presented no materially false

information to the jury regarding Fulks' participation in the crime, his providing of

information about the location of Ms. Donovan's body or the various searches for

her body.

Fulks asserts that the government focused on and argued to the jury that

---

Testimony, Vol. XI, 6/15/04, p. 85 (Fulks lived in Conway and Horry County for a period of time).

[5]The government presented this evidence of the various searches "to show the jury that [the government] exhausted every avenue possible to find the body so that the jury [would not] wonder if" the government had tried hard enough to find the body.  Trial Testimony, Vol. VIII, 6/10/04, p. 197.  This Court correctly noted that "the jury might hold it against the government that they didn't find a body and have all the forensic testing."   Trial Testimony, Vol. IX, 6/11/04, pp. 13-14.

Fulks obstructed the search for Ms. Donovan's body.  See Proposed Claim

XXXIII, at p. 1 (arguing that the government "through both witnesses and

argument–argued to the jury that Mr. Fulks had purposefully obstructed its search

efforts by providing the government with false information"); id. at 2 (asserting

that the government argued that Fulks "actively sabotaged efforts to locate Ms.

Donovan's remains")  Id. at 2.  Fulks' assertions are incorrect, unsupported and

meritless.

**A.**      **The government presented a full, complete and truthful
        description of the efforts to locate Alice Donovan's body.**

The government presented a complete and accurate description of the search

for Alice Donovan's body.  In particular, the government presented detailed

testimony of the search for Alice Donovan's body through FBI Agent Jeff Long.

In his testimony, Agent Long recounted the various searches for Alice Donovan's

body and Fulks' providing of information to help locate the body.

Agent Long first noted that law enforcement searched two locations in

North and South Carolina.  Trial Testimony, Vol. X, 6/14/04, at pp. 171-85.

Based upon information provided by Fulks' co-defendant Basham in November

2002, the search initially focused on the "Savannah Bluff" area near Conway, SC,

Id. at 175-85.  Also, "based on . . . Shallotte (NC) Amoco video, . . .  The phone

call pinging off the cell tower there off of highway 17, and the hunters at Bee Tree Farms describing a blue BMW," the search focused on the Bee Tree Farm area in Brunswick County, NC. Id. at 184-85, 178-81. Later, Basham gave information that led to a further search of Bee Tree Farm area. Id. at 186. Basham was later brought to the Bee Tree Farm area during the search. Id. at 188-92, 194-97. These searches did not turn up any evidence relevant to the investigation. Id. at 197.

Agent Long next testified about Fulks' April 21, 2003 statement to the FBI. In this statement, Fulks for the first time (more than five months after the disappearance of Alice Donovan) gave information about the carjacking, kidnaping, raping, killing and disposal of Alice Donovan. Id. at 202-07, 213-33, 235-42. In this statement, Fulks told the FBI that: (1) Fulks and Basham kidnaped Alice Donovan from a Wal-Mart parking lot in Conway, SC in her BMW, (2) Fulks drove the BMW (with Basham and Donovan in the back seat) up Highway 90 into North Carolina, (3) Basham and Fulks both raped Donovan, and (4) Fulks then drove the BMW (with Basham and Donovan in the backseat) south on Highway 90 and eventually turned down a dirt road near an IGA store.

In his statement, Fulks said that it was dark when he turned down the dirt road. Id. at 237. Fulks stated that he drove past a dock, turned around just past

the dock and pulled onto the right side of the road.  Id. at 238.  Fulks then said that Basham got out of the BMW with Alice Donovan, that Alice Donovan asked Fulks to convince Basham to leave his gun in the car since Basham was supposedly only going to tie her up, but Basham would not leave the gun in the car.  Basham then walked to the front of the car holding Donovan by the elbow with a gun in her side.  Id.  Basham first began walking to the right side then he walked to the left.  Fulks last saw Basham and Alice Donovan walking into the woods, to the left side of the road.  Id. at 239.  Fulks then said that twenty minutes later Basham "returned to the front of the BMW . . . holding [Alice] Donovan's panties and tennis shoes."   The "shoes had clumps of dirt and mud on them." Fulks said that "Basham smelled badly and had dirt and mud on his shoes and lower part of his pants."  Fulks said that he drove back onto Highway 90 and turned right and then turned back around and headed back toward Conway.  Id. Fulks drove the entire time.  Id. at 240.

After this April 21, 2003 statement, law enforcement conducted additional searches for Alice Donovan's body.  Trial Testimony, Vol. XI, 6/15/04, at p. 18. Almost immediately after the interview, Agent Long was informed that the defense team had been out to the general area described by Fulks as the area where Alice Donovan was walked into the woods off Highway 90.  Agent Long met with

defense counsel and defense investigator Skidmore and surveyed the area the defense said their "cadaver dogs had hit on." Id. at 19.  They then decided on a date to "get more law enforcement searchers out there" to do a more complete sweep of the area.  Id. at 19.

On May 1, 2003, a full-scale search was conducted.  Based on Fulks' statement, the defense team led the searchers to an area off of Long Bay Road.  Id. at 20-32, 84.  Nothing of evidentiary value was found.  Id. at 32.

Agent Long testified later about a subsequent search conducted off of Highway 90 on March 23, 2004, where Fulks was present during the search.  Id. at 60.  During this search, the "goal was not to lead Mr. Fulks in any way" but to "let him show [law enforcement] where to go."  Id. at 61-62.  This time, the searchers turned on Water Tower Road off of Highway 90.[6]  At the intersection with Long Bay Road, the searchers (at Fulks' direction) continued on Water Tower Road.  Id. at 62, 77.  At Fulks' direction, the searchers drove past a boat dock[7] and turned around.  Fulks then directed them to search a general area off of Water Tower Road above the intersection with Long Bay Road.  Id. at 63.  This search area off

_____

[6]Both Water Tower Road and Long Bay Road are off of Highway 90.  These roads intersect off of Highway 90.  Id. at 62.

[7]This dock runs the entire distance between Water Tower Road and Long Bay Road.  Id. at 62-63, 77.

of Water Tower Road was approximately one (1) mile from the area previously searched off of Long Bay Road. Id. at 78. Agent Long testified that law enforcement and the defense team searched the area. Id. Agent Long testified that the terrain of the area searched "was extremely thick, and the briars, the bushes, it was very, very difficult to even break in through the treeline based on the positioning of where we figured the BMW would have been." Id. at 80. Although the searchers were trying to go in as deep as 50 feet[8] into the area, Agent Long testified that he "probably made it in maybe 25, 30 feet . . . It was that thick." Id. The searchers then moved up to other areas where the brush was not quite as thick. Id. at 81. The search turned up nothing. Id.

Eventually, the searchers moved up to a second search area off of Water Tower Road closer to the intersection with Long Bay Road. Fulks said "I think this could be it." Id. In this second search area off of Water Tower on March 23, 2004, the terrain was "a little more open" and the searchers "were able to walk well over 50 feet into the woods." Id. at 82-83. This second search on March 23, 2004, turned up nothing. Id. at 83, 85. At the end of his testimony, Agent Long testified that despite the search efforts, he could not tell how Alice Donovan died

_____

[8]Fulks had told law enforcement that Donovan had been taken approximately 50 feet into the woods on the night she was killed. Id. at 79-80.

or where her remains were located.

Despite Fulks' contrary assertions, everything testified to by Agent Long was truthful and none of it was false or misleading. Agent Long simply gave a detailed explanation of the various search efforts for Alice Donovan's body and Fulks' role in providing information to help locate the body.

**B.     The government's statements in opening statement were truthful and not misleading.**

Fulks complains about certain statements the government made in opening statements (proposed claim XXXIII, at pp. 10-11). This complaint is without merit.

The United States made appropriate and true statements in its opening statement to the jury. Nothing in the opening statement was materially inaccurate or false. In the government's opening statement, which spans more than 50 pages in the transcript (Trial Transcript, Vol. I, 6/1/04, at pp. 51-103), the government made the following comments about what the evidence would show:

> So, ladies and gentlemen of the jury, you must be wondering to yourself how is it? What are the facts that allow Chad Fulks to deny his intent? Well, ladies and gentlemen, you will hear, and the evidence will demonstrate, and just as you would imagine, that when two individuals seek to conduct criminal activity, they don't do it in plain view. They look for secluded places, and that is what the evidence will show here. So, there are no eyewitnesses to how Samantha Burns and Alice Donovan were killed. The only two people who know how that happened who are still with us are

Chad Fulks and Brandon Basham.

You will also hear evidence, ladies and gentlemen, that despite extensive searches in West Virginia, South Carolina, and North Carolina, neither Samantha Burns nor Alice Donovan's remains have been recovered. In West Virginia, thousands of man-hours were spent by Samantha Burns' friends, family, law enforcement, every manner of search and rescue team combing the woods around Huntington, looking for Samantha. They even dragged the Guyandotte and Ohio Rivers looking for her remains hoping to give her family some closure. They found nothing.

(Trial Transcript, Vol. I, 6/1/04, at pp. 55-56).

On April 21, 2003, six months and a week after Alice Donovan disappeared, Chadrick Evan Fulks directed law enforcement to a location where he claimed Alice Donovan's remains would be. His investigators looked, law enforcement officers looked, they found nothing. On September 8, 2003, three days short of ten months after Samantha Burns' disappearance, Chadrick Evan Fulks directed law enforcement to a location where he claimed Samantha Burns' remains would be. His investigators looked, law enforcement looked, they found nothing.

You see, ladies and gentlemen, if we had been able to locate the remains of Alice Donovan and Samantha Burns, we might have an idea about what happened. But the fact that they successfully concealed the remains allows Fulks to blame Basham.

(Trial Transcript, Vol. I, 6/1/04, at p. 57).

Despite Fulks' protests, nothing that the government said in its opening statement was false or misleading. Fulks' contention that the government's assertion that Fulks and Bashams' concealment of Ms. Donovan's body in a remote location was somehow inappropriate, false or misleading is simply wrong.

12

There can be no argument that Alice Donovan was driven to a remote location by Fulks and disposed of in a heavily wooded swampy area so that she would not be found. This is proven by the fact that her body was not found prior to trial despite exhaustive search efforts. There could be no better example of criminals' attempts to conceal a body than Fulks' and Basham's disposal of Alice Donovan's body in a remote rural area of Horry County. Disposing of a body in a remote location as Fulks and Basham did is "concealment" of that body. See State v. Murrell, 362 N.C. 375, 665 S.E.2d 61, 85 (N.C. 2008) (abandoning victim's body in remote location is a "considerable step[] to conceal" involvement in murder); Ernst v. Kentucky, 160 S.W.3d 744, 757 (Ky. 2005) (placing victim's body in remote location is "evidence of attempted concealment of the crime"). By choosing a remote location, Fulks cannot now claim that this fact should not have been mentioned by the prosecution. Likewise, Fulks cannot change the fact that he waited several months before deciding to provide any information about the possible location of Alice Donovan's body.

Fulks' decision to wait several months before giving any information about the possible location of Ms. Donovan's body is a relevant fact that the prosecution could mention in its opening statement. See State v. Langley, 711 So.2d 651, 659 (La. 1998) (not improper for prosecutor to note that defendant hid victim's body in

13

a closet for three days while a search for the child victim was underway; such action may be fairly characterized as remorseless). The fact that a few of Ms. Donovan's remains have been discovered more than six years after she was killed does not change the fact that Fulks chose a remote location where Alice Donovan's body could not be found prior to trial. This fact also does not make anything that the government argued in opening statements false. Nothing the government stated in the opening statements violated Fulks' Fifth and Eighth Amendment rights.

### C. The government's statements in its initial closing argument were truthful and not misleading.

Likewise, the United States made appropriate arguments tied to the evidence in its closing argument to the jury.[9] Nothing in the closing arguments was materially inaccurate or false. In the government's initial closing argument, which spans 115 pages in the transcript (Trial Transcript, Vol. XXI, 6/29/04, at pp. 18–132), the government argued that Fulks and Basham made sure to take their victims to "an isolated area." (Trial Transcript, Vol. XXI, 6/29/04, at p. 26). The prosecutor noted that Fulks and Basham were "responsible for disposing of [Ms. Donovan's] body." (Trial Transcript, Vol. XXI, 6/29/04, at p. 65). The

---

[9]Fulks complains about the government's closing argument comments at pages 9, 12 and 13 of his proposed claim XXXIII.

prosecution later made the true and accurate statement that Chad Fulks was the one responsible for driving Ms. Donovan to the remote location where she was killed: "If Chad Fulks doesn't pull off a highway, Alice Donovan is alive today. If Chad Fulks, this is in the light most favorable to Chad Fulks, if you believe his version, if he doesn't pull down a dirt road, Alice Donovan is alive today. If he doesn't stop in that rural, isolated area, Alice Donovan is alive today." (Trial Transcript, Vol. XXI, 6/29/04, at p. 70).

The prosecution then noted that Alice Donovan's body was disposed of in a remote location:

> And to add insult to injury, they dispose of her body. Think of the thousands and thousands of man hours in North and South Carolina trying to find Alice Donovan's body to bring her home to her final resting place. What possibly could Chad Fulks and Brandon Basham have done to the bodies of Samantha Burns and Alice Donovan? What could they have possibly done with those two women that they wanted to dispose of them so we would never know what they did and how they died?[10]

(Trial Transcript, Vol. XXI, 6/29/04, at p. 119). The prosecution then asked the following: "And Chad Fulks wants you to believe that, for the first time in his entire life, for the first time, that he is telling you the truth. I didn't rape Samantha

---

[10]Fulks' own investigator admitted on the stand that locating evidence, particularly human remains, quickly is important. He also admitted that there are forensic aspects of human remains that will be lost over time. He admitted that with the passage of time, evidence of a physical injury, a flesh wound, and sexual assault can be lost. Trial Transcript, Vol. XIX, 6/25/04, pp. 49-50.

Burns.  I didn't kill Samantha Burns.  I didn't kill Alice Donovan.  And I had nothing to do with getting rid of their bodies.  Do you believe that?  Are you going to accept that?"  (Trial Transcript, Vol. XXI, 6/29/04, at p. 125).  Nothing in these comments was inappropriate.  Nothing in these comments was inaccurate or misleading.

The prosecution then noted that Fulks waited until "April of 2003, five months after Alice Donovan is abducted" to "sit[] down with the police and his lawyers" and "say[] where Alice Donovan's body may be."  Id. at 126.  In describing the various searches, the prosecution stated the fact that no bodies of the victims had ever been found:

> Let's talk about the searches.  First, with regards to the searches, Chad Fulks knew in April of 2003, he knew they had been searching the Savannah Bluff area, didn't find the body in November.  Knew they had been searching Bee Tree Farm area up in North Carolina, no body found.  So he sends them to another location.  Does that make it true?  No.  What about the searches in West Virginia when he gives the statement in September to the FBI in West Virginia, some ten months after Samantha Burns[11] is abducted and killed, in front of his lawyers?  You heard that through, early on, Brandon Basham's lawyers.  He knew they didn't find a body.  So, he is telling them he is taking them to a spot on the Ohio River.  Does it make it true?  No.

(Trial Transcript, Vol. XXI, 6/29/04, at p. 126).  The prosecution argued that the evidence suggested that Fulks and Basham had a plan:

---

[11]Samantha Burns' body has never been recovered.

16

On November 14th, 2002, Brandon Basham and Chad Fulks had a plan. Their plan involved kidnaping and carjacking a woman in order to get her car, at that point. That is what their plan was. And that plan evolved. That plan then included rape and murder. Chad Fulks and Brandon Basham knew there would be no eyewitnesses. They knew they would take Alice Donovan to an isolated spot. Take that body where nobody would know how to find it. They accomplished that very same plan before, 72 hours before, with a 19-year-old girl in Huntington, West Virginia.

(Trial Transcript, Vol. XXI, 6/29/04, at p. 119).

Despite Fulks' attempts to characterize this closing argument as suggesting that Fulks: (1) obstructed the search for Ms. Donovan's and Ms. Burns' remains and (2) sent law enforcement on a "wild goose chase," the government never argued either of these points to the jury. Contrary to Fulks' assertions, the prosecution's closing argument did nothing more than describe exactly what the evidence demonstrated: Fulks and Basham disposed of Ms. Donovan's and Ms. Burns' bodies in remote areas where it would be extremely difficult to find the bodies. The fact that it took over six years to discover a few remains of Alice Donovan's body demonstrates this fact. Additionally, the prosecution appropriately noted that Fulks waited more than five months to provide any accurate information about the possible location of Alice Donovan's body and ten months before he provided any information about the possible location of Ms. Burns' body.

17

**D.** **The government's statements in its reply closing argument were truthful and not misleading.**

Similarly, the United States made appropriate arguments tied to the evidence in its reply closing argument to the jury. Nothing in the reply closing argument was materially inaccurate or misleading. In the government's reply closing argument, which spans 20 pages in the transcript (Trial Transcript, Vol. XXI, 6/29/04, at pp. 218–238), the prosecutor simply replied to the comments in the defense closing argument. In particular, the defense argued that the government could not prove the necessary intent for imposition of the death penalty because Ms. Donovan's body was never found.

After the defense closing argument (in which the defense argued that "several of the government witnesses . . . said they had absolutely no idea how Alice Donovan died" and, therefore, the intent element to impose the death penalty was lacking (Trial Transcript, Vol. XXI, 6/29/04, at pp. 154, 155)), the prosecution in its reply argued the following:

> Before I even get to some of the defense experts, a couple of points I need to address that [were] brought up by Mr. Blume in his closing argument. Mr. Blume made the statement that one of the reasons why he argues to you jurors to vote for life without parole is that he states that the government has no body. He said that the government has no idea how Alice Donovan died. That the government cannot tell you how Alice Donovan died. And because of that, he asks you and he argues to you that life without parole is the most appropriate punishment.

18

I want you to think about that for a moment, ladies and gentlemen. Why is it that the government has no body?  Whose fault–at whose is it that the government has no body?  The reason the government doesn't have Alice Donovan's body, the reason why we can't put her and take her to a morgue and have a pathologist autopsy her and come in and take that witness stand and tell you jurors that she was raped, that her throat was cut, or that she was shot, is because of the actions, of Chad Fulks and Brandon Basham.  Don't you think it is a little bit unfair?  Don't you think it is unfair that somehow the government–it should be held against the government for not producing a body because the actions and the conduct of Chad Fulks and Brandon Basham have been successful?  Under that theory, ladies and gentlemen, you could never seek the death penalty in a case in which somebody successfully hid or destroyed the body.

Think of the logic there.  So much of what we do in life, so much of the law is based on logic, simple logic.  Should Chad Fulks and Brandon Basham be rewarded because they successfully were able to conceal the body of Alice Donovan?  Should, somehow, you sentencing jurors and Brandon Basham's sentencing jurors go back there and hold that against the government because of the actions and conduct of Brandon Basham and Chad Fulks?  Is that fair?  Is that just?

I submit to you, that that is what makes this crime more aggravating.  More aggravating.  The fact that they successfully disposed of her body so that the victims will not be able to bury her and so that the government is barred from providing you, jurors, a total picture.  The government should not be held accountable for that.

(Trial Transcript, Vol. XXI, 6/29/04, at pp. 220-221).

Nothing in this closing argument was false or misleading.  The evidence supported each statement made in this closing argument.  Fulks kidnaped and carjacked Alice Donovan with Basham.  Fulks drove Ms. Donovan to remote areas.  Fulks, 454 F.3d at 426 (crime spree committed "with Fulks behind the

19

wheel"). Fulks raped Ms. Donovan. Fulks drove Ms. Donovan to the remote location where she was killed and her body was disposed of. Fulks waited several months before he gave any information regarding where Ms. Donovan's body might be. Ironically, the fact that Fulks provided information and directions to the remote location where a few of Ms. Donovan's bones were eventually located more than six years after the killing demonstrates just how successful he and Brandon Basham were in the initial concealment of her body. Because of their choice of where to kill Alice Donovan and dispose of her body, it took literally thousands of hours of searching to locate any of her remains. This argument was not improper. See People v. Nowicki, 385 Ill.App.3d 53, 92, 894 N.E.2d 896, 932 (2008) (finding rebuttal argument not improper: "No body in this case? Blame [the defendant]. He's the one who decides the scene of the crime, the time of death, the place of death, the disposal of the body."). It was not inappropriate or misleading for the prosecution to argue that Fulks' decisions were the reasons Alice Donovan's body was not found.

Fulks' attempt to characterize the statements in the reply argument as arguing that "Mr. Fulks was a remorseless and callous person who intended to do whatever it took to conceal the remains of Alice Donovan, even if doing so meant toying with the Donovan family by leading them to an incorrect location,"

Proposed Claim XXXIII, at p. 9, must fail because it does not find support in the record. A close reading of the entire transcript of trial testimony and arguments in front of the jury reveals that Fulks' proposed claim XXXIII is just not supported by the record. Likewise, Fulks' hyperbolic claims that the government supposedly argued to the jury that Fulks led them on a wild goose chase, purposefully obstructed search efforts, and actively sabotaged efforts to locate Ms. Donovan's remains (see Proposed Claim XXXIII, at pp. 1-2) fail to find support in the record.[12]

A clear reading of the opening statements and closing arguments demonstrate that Fulks' fifth and eighth amendment rights were not violated. Nothing in the opening statement and closing argument caused the jury to consider materially false information in sentencing him to death.

There are a number of critical facts that exist today just as they did at the time of the sentencing. Ms. Donovan's body[13] was never recovered because of

_____

[12]The term "wild goose chase" was used at a bench conference outside the presence of the jury. Trial Transcript, Vol. XI, 6/15/04, at pp. 113-28. In that bench conference, it was noted that Fulks' actions early in the investigation caused the search in the Savannah Bluff area to be intensified. Trial Transcript, Vol. XI, 6/15/04, at pp. 124, 126.

[13]Only a few bones were recently recovered. Obviously, the passage of time has had a significant impact on Ms. Donovan's remains.

Fulks' (and Basham's) actions. They carjacked and kidnaped her from a crowded Wal-Mart parking lot. Fulks drove (along with Basham) Ms. Donovan to a secluded area where locating someone would be difficult in the best of conditions. Because of this fact, the prosecution appropriately argued in closing argument: "Should Chad Fulks and Brandon Basham be rewarded because they successfully were able to conceal the body of Alice Donovan?" Vol. XXI, 6/29/04, at pp. 220-21. Disposing of a body in a remote location is "concealment" of that body. See State v. Murrell, 362 N.C. 375, 665 S.E.2d 61, 85 (N.C. 2008) (abandoning victim's body in remote location is a "considerable step[] to conceal" involvement in murder); Ernst v. Kentucky, 160 S.W.3d 744, 757 (Ky. 2005) (placing victim's body in remote location is "evidence of attempted concealment of the crime").

Because of the remote locations Fulks (and Basham) chose to take Ms. Donovan to rape and kill her, they were responsible for the near impossibility in locating her remains. Furthermore, there is no dispute that Fulks waited several months to even begin to provide information to help locate Ms. Donovan's remains. See State v. Langley, So.2d 651, 659 (La. 1998) ("hiding body in closet for three days while a search for child victim was underway, may be fairly characterized as remorseless").

**E.** **The testimony of FBI Agent Jeff Long presented complete and accurate information about the search for Alice Donovan's body.**

Fulks also complains that "[t]estimony regarding the failed search efforts for Ms. Donovan's remains spanned the entire trial. Witness after witness was called to testify about the search efforts in order to drive home the point that the remains were not recovered notwithstanding Mr. Fulks insistence that they were located in a particular area."[14] Proposed Claim XXXIII, at p. 11. Fulks' complaint ignores the fact that the government presented complete and truthful information regarding the search for the bodies and remains of Ms. Donovan and Ms. Samantha Burns. No information was presented that was false or materially misleading.

The government presented a number of witnesses to describe the search for the bodies of Samantha Burns and Alice Donovan. Fulks points to no testimony regarding the searches that was false or materially misleading. The only testimony that Fulks points to that he complains about regarding the search for Alice

---

[14]This claim overstates Fulks' "helpfulness." First, it fails to acknowledge that Fulks initially led searchers to intensify their search in the Savannah Bluff area near Conway. Second, it fails to take into account that Fulks waited more than five months before he provided any information about the possible location of Alice Donovan's body. Third, Fulks' own investigator admitted that Fulks provided information that led the defense and its various searchers to first look on the Long Bay Road side of the area. Only several months later, when Fulks was brought to the site did he direct the searchers to the other side, the Water Tower Road side. Trial Testimony, Vol. XIX, 6/25/04, pp.42-44, 50-57. See also testimony of Heather Roche (defense cadaver dog handler), Id. at 8-16, 23.

Donovan's body is the following testimony of FBI Agent Jeff Long:

> AUSA Gasser: Despite these thorough and exhaustive efforts by law enforcement, as you sit there in this witness box today, can you tell this jury how Alice Donovan died?
>
> Agent Long: No, I can't.
>
> AUSA Gasser: Can you tell this jury where the remains of Alice Donovan are?
>
> Agent Long: No, I can't.

(Trial Transcript, Vol. XI, 6/15/04, at p. 86). It is unclear how this testimony can be seen as misleading or false.

Fulks makes the remarkable claim that this testimony "dr[o]ve home the point to the jury that Mr. Fulks must have purposefully obstructed the search efforts." Proposed Claim XXXIII, at p. 11. A plain reading of this testimony reveals that these concluding statements by Agent Long do <u>not</u> present false or misleading information. In fact, the testimony was truthful and accurate–the remains of Alice Donovan were not recovered prior to trial despite exhaustive search efforts.

As for Agent Long's exhaustive testimony at trial (Trial Transcript, Vol. X, 6/14/04, at pp. 159-257 & Vol. XI, 6/15/04, at pp. 13-166), it was a straight-forward description of the statements given by Fulks five months and ten months

after the crime spree and the resulting searches for Alice Donovan's and Samantha Burns' bodies.  See discussion of testimony of Agent Long regarding the searches at pp. 6-11 above.  Fulks points to no evidence presented by the government regarding the search for Alice Donovan's body that was false or misleading.

Fulks' argument overlooks critical facts the government presented at the sentencing hearing that were true at the time of trial and have been true ever since.  Most importantly, the actual information put before the jury regarding the search efforts for Ms. Donovan's remains was true at the time of the sentencing and is still true today.  Fulks cannot escape the consequences of his actions, particularly in driving Alice Donovan to a remote location to be disposed of in a heavily wooded swampy area and his failure to provide any information regarding the location of her body for several months after Ms. Donovan's disappearance.  His actions prevented the discovery of the body and greatly hindered the search for the body.  In the presentment of testimony and in argument, the prosecution set forth facts about the various attempts to locate Ms. Donovan's body and Fulks' role in providing information to locate the body.  Despite Fulks' assertions, nothing the government presented to the jury was false or misleading.

**F.   The Government Presented Appropriate Victim Impact Testimony.**

Fulks also complains about two comments made in the victim impact testimony.  See Proposed Claim XXXIII, at p. 12.  Fulks complains that one of Ms. Donovan's daughters (Angie Warner) was asked, "[w]hat impact has this had on you, emotionally, the fact that you can't even take your mother's remains, her body, and do what your family plans were?"  In response she said, "I am not the same person I was a year and a half ago."  Trial Transcript, Vol. XV, 6/21/04, at p. 265.  Fulks also complains about the brief testimony of Ms. Donovan's husband (Barry Donovan) in which he said, "I have tried to carry Alice in my heart all the time.  And if it ever happens that we can find her remains, it will put some sort of resolution to it, but definitely not closure."  Trial Transcript, Vol. XVI, 6/22/04, at p. 82.  Fulks complains that this evidence was somehow improper.

It is clear that this fleeting[15] testimony was not improper.  In allowing nearly identical victim impact testimony, one court noted:  "Committing a murder and disposing of the body such that it is not located and thus depriving the surviving family of the ability to bury the decedent certainly seems to be a factor in

---

[15]The total victim impact testimony covered nearly 100 pages in the trial transcript.  See   Trial Transcript, Vol. XV, 6/21/04, at pp. 241-69 & Vol. XVI, 6/22/04, at pp. 37-103.

assessing one's moral culpability." <u>McDuff v. State</u>, 939 S.W.2d 607, 620 (Tex. Crim. App. 1997). The fact that a few bones of Alice Donovan have recently been recovered does not change the propriety of the testimony from Alice Donovan's daughter and husband that their inability to bury their mother and wife at the time of trial had a significant impact on their lives. This testimony was entirely appropriate. Alice Donovan's body was not recovered for more than six years because of the actions of Fulks in concert with Basham. That was true in November 2002. It was true at the time of trial in June 2004. It is true today. Fulks was responsible for driving behind Alice Donovan's BMW. Fulks participated in the carjacking and kidnaping of Alice Donovan. Fulks raped Alice Donovan. Fulks drove Alice Donovan to a remote location where her body was disposed of. Fulks waited more than five months to give any information about the possible location of Alice Donovan's body. Nothing in the victim impact testimony of which Fulks complains was false or misleading. Fulks' fifth and eighth amendment rights were not violated by this testimony.

Fulks incorrectly claims that because "the facts that were presented to the jury concerning the search for Alice Donovan's remains have since been proven to be false" and were used as "primary support for the 'Victim Impact' non-statutory aggravator," the death sentence rendered violated the due process clause.

(Proposed Claim XXXIII, at pp. 20-21). This argument rests on three false premises. First, the testimony about the inability of her family to bury Alice Donovan was a very small portion of the overall victim impact testimony. It was only a few lines in almost 100 pages of victim impact testimony. Second, no facts "presented to the jury concerning the search for Alice Donovan's remains have since been proven to be false." Third, the victim impact aggravator did not rest upon evidence regarding Fulks' supposed obstruction of the search for Alice Donovan's body. Fulks has not presented a single line of testimony from the victim impact testimony to support this assertion. Therefore, this argument fails.

Additionally, Fulks ignores this Court's actual jury instruction regarding victim impact as a non-statutory aggravating factor: "The third nonstatutory aggravating factor alleged by the government is the effect of Chadrick Evan Fulk's offenses on Alice Donovan and her family, including the extent and scope of the injuries and losses suffered by Alice Donovan and her family. The effect of the offenses on Alice Donovan and her family means the harm to Alice Donovan and her family caused by the Defendant's action." Trial Transcript, Vol. XXI, 6/29/04, at p. 272. This jury instruction about the non-statutory victim impact aggravator, read to the jury at the close of the sentencing hearing, does not reference the search for Alice Donovan's body and demonstrates how little focus was put on

28

this factor in the victim impact aspect of the case.

**III. The cases relied upon by Fulks illustrate the futility of his proposed claim for a violation of his Fifth and Eighth Amendment rights.**

The cases relied upon by Fulks help illustrate the futility of his claim that the government's presentation at trial violated his Fifth and Eighth Amendment rights. Fulks relies primarily upon United States v. Tucker, 404 U.S. 443 (1972) and Johnson v. Mississippi, 486 U.S. 578 (1988). In both of those cases, the challenged sentence had been based, in part, upon prior convictions that were invalidated, rendering the government's previous presentation of that conviction to be false. By contrast in this case, the location of certain remains of one of Fulks victims does nothing to change, invalidate, or falsify the testimony and presentation made by the government.

In Tucker, an armed bank robbery case, the district court gave "explicit attention" to three previous felony convictions in sentencing the defendant. 404 U.S. at 444. Several years later, two of the prior felony convictions were determined to be invalid because they had been obtained without the benefit of counsel as required by Gideon v. Wainwright, 372 U.S. 335 (1963). Tucker, 404 U.S. at 444-45. The Supreme Court determined that because the "sentence [was] founded at least in part upon misinformation of constitutional magnitude," the

29

case must be remanded for resentencing.  Tucker, 404 U.S. at 447.

The present case is easily distinguishable from Tucker.  Instead of dealing with a sentencing court's reliance on prior convictions later determined to be constitutionally invalid-- "misinformation of constitutional magnitude"-- the present case deals with a sentencing jury hearing correct information.  This correct information included Fulks' participation in the kidnaping, rape and killing of Alice Donovan, Fulks' driving Alice Donovan to a remote area of Horry County, Fulks' several-month delay in providing information about the death of Alice Donovan and where she was killed, and the extensive search efforts to locate Alice Donovan's body.  All of this information was true at the time of trial, and the recent discovery of a few remains of Alice Donovan has not made any of these facts incorrect or misleading.

Johnson v. Mississippi also does not help Fulks.  Johnson involved a death sentence under Mississippi law. Before imposing the death penalty, a Mississippi jury had to determine whether aggravating circumstances outweighed mitigating circumstances.  486 U.S. at 580.  In Johnson, the jury found three aggravating circumstances: (1) the defendant had previously been convicted of a violent felony; (2) the defendant had committed the capital murder for the purpose of avoiding arrest or effecting an escape from custody; (3) the capital murder was

especially heinous, atrocious, and cruel. Id. The sole basis for the first aggravating circumstance was a document showing that the defendant had been convicted in New York of second-degree assault with intent to commit first-degree rape. After weighing the aggravating and mitigating circumstances, the jury concluded that the three aggravating circumstances outweighed the mitigating ones and the death penalty was imposed. Id. at 580-81.

Thereafter, the New York conviction was reversed because his confession was coerced. Johnson then sought post-conviction relief on the ground that the New York conviction was invalid and could not be used as an aggravating circumstance. Id. at 583. The Supreme Court ultimately reversed the death sentence, noting that the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in determining that death is the appropriate punishment. Id. at 584. The Johnson Court noted that to allow a jury to consider evidence that was materially inaccurate was error. Id. at 590.

The present case does not parallel the situation addressed in Johnson. Fulks does not claim that the Government presented evidence of a materially inaccurate criminal conviction. Rather, he alleges false or materially inaccurate testimony. Notwithstanding the difference, Fulks must establish that some

testimony (or argument) was both false and material. <u>See</u>, <u>e.g.</u>, <u>Hernandez</u>, 213

F.3d at 252-53.[16]  For all the reasons set forth above, Fulks cannot meet this

burden.

## IV.    Conclusion

For the foregoing reasons, Fulks' motion for leave to supplement should be

denied as the addition of proposed claim XXXIII is futile.  Even if this Court were

---

[16]Fulks is also not helped by his reliance upon the *per curium* Eleventh Circuit opinion in <u>Shukwit v. United States</u>, 973 F.2d 903 (11th Cir. 1992).  (<u>See</u> proposed Claim XXXIII, at pp. 2 & 17-18).  Fulks quotes from <u>Shukwit</u> that "due process protects the right not to be sentenced on the basis of false information." <u>Id.</u> at 904.  This case, however, has no relevance to the present §2255 death penalty case and certainly is not a case upon which to rest proposed claim XXXIII. <u>Shukwit</u> involved a methamphetamine guilty plea where the district court failed to make specific findings of fact relating to disputed information in a presentence investigation report issued by the probation office.   The Eleventh Circuit held that when a defendant challenges a factual assertion in a presentence investigation report, the district court is obligated under Fed. R. Crim. P. 32(c)(3)(D) either to make a factual finding as to the allegation or to determine that no such finding is necessary because the matter controverted will not be taken into account in sentencing.  <u>Id.</u> at 904.  Because the district court failed to make such a finding or to make an express determination that no finding was necessary, the Eleventh Circuit remanded the case for compliance with Rule 32(c)(3)(D).  <u>Id.</u> at 905.  The present case has nearly nothing in common with <u>Shukwit</u>.  It certainly does not control the outcome in Fulks' case.

to allow Fulks to amend his motion to vacate to add proposed claim XXXIII, this claim is without merit and should be dismissed.

Respectfully Submitted,

W. WALTER WILKINS
UNITED STATES ATTORNEY

S/Robert F. Daley, Jr.
Robert F. Daley, Jr. (Fed. Bar #  6460)
Jimmie Ewing (Fed. Bar # 7292)
Assistant United States Attorney
District of South Carolina
1441 Main Street, Suite 500
Columbia, South Carolina 29201
(803) 929-3000

Dated: December 17, 2009