| | |
|---|---|
| United States of America,<br><br>      Respondent,<br><br>  vs.<br><br>Chadrick E. Fulks,<br><br>      Petitioner. | Case No. 4:02-992-JFA<br><br><br>**REPLY IN SUPPORT OF MOTION TO SUPPLEMENT THE PLEADINGS** |

The government's Opposition to Mr. Fulks's Motion for Leave to Supplement the Pleadings (the "Opposition") is no opposition at all. Instead of directly addressing the straightforward issues presented by Mr. Fulks's Motion for Leave to Supplement the Pleadings (the "Motion to Supplement"), the Opposition misconstrues settled law and, more importantly, violations of Mr. Fulks's Fifth and Eighth Amendment rights.

First, ignoring the extremely liberal standard for granting motions to supplement, the government opposes the Motion to Supplement on the grounds that Claim 33 is futile. This argument contradicts the well-established rule that a motion to supplement is not an appropriate venue to consider the merits of a claim because a proper futility analysis is concerned only with whether a supplemental claim is frivolous on its face. Moreover, the government has not proffered any other basis for denial of the Motion to Supplement, such as dilatory motives, bad faith, undue delay, or undue prejudice.

Second, Mr. Fulks's claim is based on the simple premise that the Fifth and Eighth Amendments prohibit a court from imposing a death sentence recommended by a jury

that considered materially false information.  Mr. Fulks has the constitutional right to be sentenced to death only on the basis of aggravating factors that were proved beyond a reasonable doubt and only after a jury has determined that these aggravating factors outweigh any mitigating factors found by the jury.  Because Ms. Donovan's remains had not been found at the time of trial, the government was able to cast Mr. Fulks as a remorseless and reprehensible human being who had not only persisted in withholding from Ms. Donovan's family the information needed to find her remains and let her be properly laid to rest, but had led the victim's family astray in their search.  The jurors' belief that Mr. Fulks had behaved in such a manner must have colored their perception of everything else they learned about him.  For his part, Mr. Fulks was meaningfully prevented from arguing as a mitigating factor to the jury that, in addition to taking responsibility for his criminal acts by confessing and pleading guilty, he had also actively assisted in the recovery efforts by leading the government to the location of the remains more than a year before his penalty-phase trial.  As a result, the jurors heard false, aggravating evidence, the truth of which was actually mitigating.  The truth of Mr. Fulks's assistance to the recovery efforts would have undercut the government's theory that Mr. Fulks was a liar with something to hide.  The truth would also have neutralized the jury's likely view that Mr. Fulks intended to harm the Donovan family by prolonging their suffering.  But the jurors did not hear the truth; they heard falsities.

Mr. Fulks is entitled, by virtue of the Fifth and Eighth Amendments to the Constitution, to have a jury make its sentencing determination free from passion, prejudice or any other arbitrary factor.  Claim 33 asserts that the jury was presented with

information upon which to base its sentencing determination that was false, unarguably negative, and — because it was false — unduly prejudicial and arbitrary. Claim 33 also asserts that the jury was deprived of mitigating evidence that Mr. Fulks otherwise could have put before it. This claim, made in the unique circumstance of a post-conviction capital sentencing review, is clearly not futile; if Mr. Fulks is able to prove the facts underlying his claim, he is entitled to a new penalty-phase hearing.

Third, the Opposition appears to erroneously cast Claim 33 as one of prosecutorial misconduct. Mr. Fulks has never argued that the government knowingly presented false or inaccurate information to the jury. Instead, his uncontroverted argument remains that the jury received and considered material information that the parties learned was false *after* the trial because of the discovery of Ms. Donovan's remains. Consequently, what should have been mitigating evidence of his remorsefulness and acceptance of responsibility was presented for the purposes of maximizing the opportunity for the jury to return a death verdict.

Because Claim 33 is not patently frivolous, supplementation is not futile. Accordingly, because the government has failed to assert or prove any proper basis for denial of the Motion to Supplement, Mr. Fulks respectfully requests that the Motion to Supplement be granted.

I. **THE GOVERNMENT HAS NOT MET ITS BURDEN TO OVERCOME THE LIBERAL STANDARD PERMITTING SUPPLEMENTAL CLAIMS**

Leave to grant supplementation "should be freely granted." Franks v. Ross, 313 F.3d 184, 198 n.15 (4th Cir. 2002); see id. (noting that the standard applicable to a

motion to supplement is virtually the same as the standard for a motion to amend). Although the grant or denial of a motion to supplement is a matter of discretion, the clear bias in favor of supplementation means that the district court, in fact, has little discretion to deny a Rule 15(d) motion. See Dussouy v. Gulf Coast Inv. Corp., 660 F.2d 594, 597 (5th Cir. 1981) ("'Discretion' may be a misleading term, for rule 15(a) severely restricts the judge's freedom, directing that leave to amend 'shall be freely given when justice so requires.'").

The Supreme Court has delineated a non-exhaustive list of factors to consider in making a Rule 15 determination:

> In the absence of any apparent reason such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc., the leave sought should, as the rules require, be "freely given."

Foman v. Davis, 371 U.S. 178, 182 (1962). In considering these factors, the Fourth Circuit has noted that the list embodies "a principle which focuses on prejudice or futility or bad faith as the only legitimate concerns in denying leave to amend, since only these truly relate to protection of the judicial system or other litigants." Davis v. Piper Aircraft Corp., 615 F.2d 606, 613 (4th Cir. 1980).

Notably, the government has *not* alleged in the Opposition that the Motion to Supplement has caused it any prejudice or has been brought in bad faith. This is simply because it cannot do so. Thus, the government is left with no alternative but to attempt to manufacture an argument that Claim 33 is futile. Even this argument, however, fails.

4

**A.** **The Government Ignores The Stringent Requirements For Denying Supplementation On Grounds Of Futility.**

Leave to amend should only be denied on the basis of futility "when the proposed amendment is clearly insufficient or frivolous on its face." Johnson v. Oroweat Foods Co., 785 F.2d 503, 510 (4th Cir. 1986 ). "[E]ven where the possibility of relief is remote, amendment must be permitted because it is the possibility of recovery, not its likelihood, that guides the court's analysis." Gallegos v. Brandeis School, 189 F.R.D. 256, 259 (E.D.N.Y. 1999). Thus, as cases from this district demonstrate, denial of leave to supplement for futility is reserved for those rare cases in which a proposed claim "is clearly frivolous or legally insufficient on its face." Id. (internal quotation marks omitted); see Alonso v. McAllister Towing, 595 F. Supp. 2d 645, 652-53 (D.S.C. 2009) (amendment futile because plaintiff completely failed to plead special damages and because of intracorporate conspiracy doctrine); Rutland v. Sanders, No. 8:09-1754-SB, 2009 WL 4906587, at *4-5 (D.S.C. Dec. 18, 2009) (amendment futile because claim barred by collateral estoppel and because petitioner's conclusory allegations were contradicted by overwhelming documentary evidence).

Additionally, the Fourth Circuit has opined that "conjecture about the merits of the litigation should not enter into the decision whether to allow the amendment." Davis, 615 F.2d at 613. Ignoring the Fourth Circuit's admonition, the government improperly engages in "conjecture about the merits of the litigation" by repeatedly recounting the litany of well-known facts relating to the search efforts in urging this Court to conclude that "Fulks' assertions are incorrect, unsupported and meritless." (Opposition at 6.)

5

In an effort to demonstrate the futility of Claim 33, the government contends that, "[w]ithout some materially false or misleading testimony or argument, Fulks' proposed amendment fails to state a claim on which any relief could be granted" and is, therefore, futile. (Opposition at 3.) Contrary to the government's insinuation, Mr. Fulks need not prove that the government intentionally presented materially false information in order to avoid dismissal on the grounds of futility. The Motion to Supplement presents facts that directly contradict the government's evidence that Mr. Fulks deliberately steered authorities away from the location of Ms. Donovan's remains. The burden of proving the futility of the Motion to Supplement rests squarely with the government and cannot be met.

The cases cited by the government to support its futility argument are wholly inapposite. In <u>Hernandez v. Johnson</u>, 213 F.3d 243, 252-253 (5th Cir. 2000) (cited in Opposition at 3), the Fifth Circuit Court of Appeals rejected a request for a Certificate of Appealability challenging a district court decision that denied federal habeas relief to a petitioner who alleged that two state expert witnesses had testified falsely against him at trial, resulting in violations of his constitutional rights. The district court, reviewing a state-court conviction and applying the highly deferential post-AEDPA standards of Section 2254, had earlier denied relief because it determined that the statements made by these witnesses were either true or were not material to the outcome of trial.[1]

---

[1] One expert, a pathologist, testified as to the cause of death, which Hernandez contested. The Fifth Circuit concluded that, assuming Hernandez's factual claims were true, these claims failed to establish that the pathologist lied about whether he had personally inspected the decedent's heart. As this fact would not have changed the pathologist's

The claim made in Mr. Fulks's Motion to Supplement stands in stark contrast to Hernandez. Where the false testimony given by one expert in Hernandez would not have affected his ultimate conclusions and the testimony given by the second expert was not even proven false, the information supplied to the jury in Mr. Fulks's case — that he had repeatedly misdirected search teams — was determined post-trial to be undisputedly false. In addition, this information is central (*i.e.*, material) to the question of whether Mr. Fulks was remorseful and trying to aid, rather than obstruct, the search efforts for Ms. Donovan's remains. The recovery of Ms. Donovan's remains confirms that Mr. Fulks did not mislead law enforcement but instead provided accurate information consistent with a sense of remorse and acceptance of responsibility. Thus, Mr. Fulks can prove that the information presented at trial was both false and material.[2]

The government's reliance on United States v. Pittman is equally misplaced. In Pittman, the Fourth Circuit properly denied petitioner's motion to amend because the

conclusion and the state court credited the post-conviction testimony of two pathologists who verified the findings of the original pathologist in state post-conviction hearings, the Fifth Circuit found that even if the pathologist had made the false statement that Hernandez alleged, it would not have been material. A second expert, testifying about Hernandez's future dangerousness, misstated the number of times he had previously found defendants not to be dangerous. As to this witness, the court determined that his testimony had been exhaustively attacked by five defense witnesses and there was substantial additional testimony from the state that petitioner was in fact dangerous. As a result, the false testimony was not material.

[2] Moreover, because Hernandez was decided in the context of a 28 U.S.C. § 2254 proceeding, the district court there was required to defer to the findings of the state court. In contrast, this Court will be the first court hearing evidence on this matter. This Court, therefore, has no other court's fact findings that it must, or can, defer to. For purposes of this Motion to Supplement, this Court must accept as true the facts pled in the Motion to Supplement. See DiCicco v. Willow Grove Bank, 308 F. Supp. 2d 528, 532 (E.D. Pa.

statute of limitations had run. <u>United States v. Pittman</u>, 209 F.3d 314, 317 (4th Cir. 2000) (noting that an amendment "may be futile and therefore can be denied" when the statute of limitations bars the claim). The court not only determined that Pittman was aware of the deficiencies in his § 2255 motion when it was initially filed but also concluded that Pittman could have easily included the proposed claims in his original motion. <u>Id</u>. at 318. Here, the government does not and cannot credibly argue that Claim 33 is somehow barred by the statute of limitations. The remains of Ms. Donovan were found on January 18, 2009, and Fulks filed the Motion to Supplement less than a year later, on July 17, 2009. <u>See</u> 28 U.S.C. § 2255(f)(4) (providing that a claim must be filed within one year of "the date on which the facts supporting the claim … could have been discovered through the exercise of due diligence"); Transcript of Hearing (Aug. 11, 2009) (Statement of the Court that "[t]he discovery of the remains is truly a new event that could not have really been raised earlier.") Accordingly, because Claim 33 is not barred by the statute of limitations, the Motion to Supplement cannot be deemed futile on this basis.

Accordingly, because Rule 15 so strongly favors resolution of claims on their merits, because Claim 33 will bring the action up to date, and because the government is unable to demonstrate undue delay, undue prejudice, bad faith, or futility, the Motion to Supplement should be granted.

---

2004).

**B.** **The Government Cannot Deny The Clear and Convincing Evidence Demonstrating That Mr. Fulks Correctly Identified the Location Of The Remains Before Trial And That Its Claim That He Was Trying To "Conceal" The Body Was Therefore False.**

In an attempt to minimize the significance of the discovery of Ms. Donovan's remains and further buttress its assertion that Claim 33 is futile, the government asserts that "the actual information put before the jury regarding the search efforts for Ms. Donovan's remains was true at the time of the sentencing and is still true today …. His actions prevented the discovery of the body and greatly hindered the search for the body." (Opposition at 25.) The government's assertion is untenable. The evidence unequivocally shows that Fulks truthfully pointed the government to the location of the remains in early 2003. Notwithstanding this clear and convincing evidence, the government maintains its position that it was Mr. Fulks's "actions [that] prevented the discovery of the body." (Id.)

Incredibly, the government further claims that its repeated statements that Mr. Fulks "successfully concealed" Ms. Donovan's body is somehow materially different from stating that he "purposefully obstructed" or led the Government on a "wild goose chase." The irrefutable fact, however, is that the government asserted throughout the sentencing phase that Mr. Fulks continued to thwart its efforts to recover the remains. The jurors were told that numerous searches had been conducted, that thousands of hours were spent searching, that Mr. Fulks directed searchers to a specific location and that nothing was found. (Opposition at 15 citing to TT, Vol. XXI, 6/29/04, at p. 119 ("Think of the thousands and thousands of man hours in North and South Carolina trying to find

Alice Donovan's body to bring her home to her final resting place. What possibly could Chad Fulks and Brandon Basham have done to the bodies of Samantha Burns and Alice Donovan? What could they have possibly done with those two women that they wanted to dispose of them so we would never know what they did and how they died?"); id. at 16 citing to TT, Vol. XXI, 6/29/04, at p. 126 ("So he [Fulks] sends them to another location. Does that make it true? No."); id. at 9 citing to TT, Vol. XI, 6/15/04 at 60-62 ("Agent Long testified later about a subsequent search conducted off of Highway 90 on March 23, 2004, where Fulks was present during the search. During this search, the 'goal was not to lead Mr. Fulks in any way' but to 'let him show [law enforcement] where to go.'"); id. at 10-11 ("At the end of his testimony, Agent Long testified that despite the search efforts, he could not tell how Alice Donovan died or where her remains were located.").)

The government also urged the jurors to believe that the inability to recover Donovan's remains was due to Mr. Fulks's successful concealment:

- "the fact that they successfully concealed the remains allows Fulks to blame Basham" (Opposition at 12 (citing TT, Vol. I, 6/1/04, at p. 57).)

- "So he sends them to another location. Does that make it true? No." (Opposition at 16 (citing TT, Vol. XXI, 6/29/04, at p. 126).)

- "They knew they would take Alice Donovan to an isolated spot. Take that body where nobody would know how to find it." (Opposition at 17 (citing TT, Vol. XXI, 6/29/04, at p. 119).)

- "Why is it that the government has no body? Whose fault-at whose is it that the government has no body? *The reason* the government doesn't have Alice Donovan's body…is because of the actions, of Chad Fulks…" (Opposition at 19 (citing TT, Vol. XXI, 6/29/04, at pp. 220-221) (emphasis added).)

- "The fact that they successfully disposed of her body so that the victims will not be able to bury her and so that the government is barred from providing you, jurors, a total picture." (Id.)

- "Should Chad Fulks and Brandon Basham be rewarded because they successfully were able to conceal the body of Alice Donovan?" (Opposition at 22 (citing TT, Vol. XXI, 6/29/04, at pp. 220-21).)

The recovery of Ms. Donovan's remains in the location identified by Mr. Fulks *prior to commencement of the sentencing trial* indisputably reveals as false the government's claim at trial that Mr. Fulks had "successfully concealed" them by establishing that he was truthful and sincere in his pre-trial efforts to locate Ms. Donovan's body.

The government adamantly declares that nothing is changed by the recovery of Ms. Donovan's remains based on maps and directions provided by Mr. Fulks directing searchers to the same location he identified prior to trial. In reality, this discovery demonstrates that material information presented to the jury during the sentencing trial was patently false. The government's claim of "truth" is therefore insufficient to warrant a denial of the Motion to Supplement on grounds of futility.

## II. THE GOVERNMENT'S PROTESTATIONS THAT IT KNOWINGLY PRESENTED NO MATERIALLY FALSE INFORMATION TO THE JURY MISS THE MARK

Claim 33 is not about prosecutorial misconduct, nor is it about information presented to the jury that was known to be false *at the time* of its presentation. Nevertheless, the government urges this Court to adopt an improper test to analyze whether Mr. Fulks's Fifth and Eighth Amendment rights were violated.

Instead of addressing whether the death sentence "might have been different" had the ***jury*** not considered false and misleading information, <u>United States v. Tucker</u>, 404 U.S. 443, 448 (1972) (emphasis added),[3] the government focuses on its own behavior, arguing that it presented appropriate testimony during the penalty-phase proceedings. (<u>See</u> <u>e.g.</u>, Opposition at 11 ("The United States made appropriate and true statements in its opening statement to the jury."); <u>id.</u> at 14 ("Likewise, the United States made appropriate arguments tied to the evidence in its closing argument to the jury."); <u>id.</u> at 16 ("Nothing in these comments was inappropriate."); <u>id.</u> at 20 ("It was not inappropriate or misleading for the prosecution to argue that Fulks' decisions were the reasons Alice Donovan's body was not found.").)  If Claim 33 argued that the government engaged in prosecutorial misconduct, proof of the truthfulness of the testimony and arguments would be appropriate.  But Mr. Fulks's Fifth and Eighth Amendment rights in this context do not hinge upon whether the government knew of the falsity of the information or whether the government acted improperly.  Simply put, the government's intent and knowledge are irrelevant for the purposes of Claim 33.  <u>See</u> <u>Shukwit v. United States</u>, 973 F.2d 903, 904 (11th Cir. 1992) (per curiam) ("[D]ue process protects the right not to be sentenced on the basis of false information."); <u>see also</u> <u>Stewart v. Erwin</u>, 503 F.3d 488, 498 (6th Cir. 2007) (noting existence of "clearly established[] due process protection against sentencing determinations that rest in part upon materially false information").  What was discovered *after* the trial — that the information regarding Ms. Donovan's remains that

---

[3]  <u>See also</u> <u>Johnson v. Mississippi</u>, 486 U.S. 578, 590 (1988) (finding an Eighth Amendment violation where the capital jury "was allowed to consider evidence that has

Mr. Fulks provided to the government (and other search parties) was accurate all along — shows without question that certain representations to the jury were false. The government neglects to acknowledge this critical distinction.

III. **THE GOVERNMENT IGNORES THE FUNDAMENTAL PROTECTIONS AFFORDED BY THE CONSTITUTION**

In a final attempt to persuade the Court to deny the Motion to Supplement, the government endeavors to distinguish the case law cited in the Motion to Supplement and Claim 33 by highlighting factual distinctions between those cases and this case. But, the cases Fulks relies upon are applicable because they illustrate fundamental constitutional tenets. See United States v. Tucker, 404 U.S. 443, 448 (1972) (holding that due process is implicated if the sentencer's decision "*might* have been different" had it not considered false information (emphasis added)); United States v. Deluca, 203 F.3d 823, 2000 WL 1291, at *7 (4th Cir. Dec. 30, 1999) (per curiam) (unpublished opinion) (holding that "[t]he Fifth Amendment's Due Process Clause affords a criminal defendant the right not to be sentenced on materially false information"); Stewart, 503 F.3d at 491 (recognizing that "there *is* a clearly established federal due process protection against a trial court's reliance on materially false information at sentencing"). Irrespective of the factual context in which a constitutional right arises, its purpose is overarching. Mr. Fulks seeks protection of his due process rights, i.e., "the right not to be sentenced on the basis of false information," Shukwit, 973 F.2d at 904.

been revealed to be materially inaccurate").

13

Mr. Fulks also seeks protection of his Eighth Amendment rights. Courts have repeatedly held that the consideration of false information at sentencing violates the Eighth Amendment's requirement of heightened reliability in capital cases. <u>See</u> <u>Caldwell v. Mississippi</u>, 472 U.S. 320, 329 (1985) (explaining that in death penalty cases heightened reliability is required in the sentencing process); <u>see</u> <u>also</u> <u>Johnson v. Mississippi</u>, 486 U.S. 578, 590 (1988) (finding an Eighth Amendment violation where the capital jury "was allowed to consider evidence that has been revealed to be materially inaccurate"); <u>see also</u> <u>Eddings v. Oklahoma</u>, 455 U.S. 104, 114-15 (1982) (holding that sentencers "may determine the weight to be given relevant mitigating evidence. But they may not give it no weight by excluding such evidence from their consideration"). No distinction or factual predicate alters the rights guaranteed to Mr. Fulks by the Constitution.

## IV.   <u>CONCLUSION</u>

For the foregoing reasons, and the reasons set forth in the Motion to Supplement and Claim 33, Mr. Fulks respectfully submits that the Motion to Supplement be granted.

Respectfully submitted,


/s/ Kirsten E. Small  (Fed. ID No. 10005)
NEXSEN PRUET, LLC
55 East Camperdown Way (29601)
Post Office Drawer 10648
Greenville, SC  29603-0648
PHONE:  864.370.2211
KSmall@nexsenpruet.com


/s/ Beattie B. Ashmore (Fed. ID No. 5215)
BEATTIE B. ASHMORE, P.A.
650 E. Washington Street
Greenville, SC 29601
PHONE: 864.467.1001
Beattie@beattieashmore.com

January 11, 2010
Greenville, South Carolina

Attorneys for Petitioner
Chadrick E. Fulks