IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA


UNITED STATES OF AMERICA     ) Cr. No. 4:02-992-JFA
                                        )
           v.                 )
                                        )
CHADRICK E. FULKS           )


**Memorandum re: Supplemental Authority**

Since the Government filed its initial memorandum in opposition to Petitioner's §2255 Petition, a number of additional cases have been decided or have come to light which lend further support to the Government's position that Petitioner's claims are without merit.

Claim One (I):

Petitioner cited <u>Belmontes v. Ayers</u>, 529 F.3d 834 (9th Cir. 2008) in support of his first claim that his counsel did not present a thorough enough mitigation case, particularly additional expert witness testimony. (See Petition, at pp. 33-35, 54, 56, 65). Subsequent to the completion of briefing in this matter, the Supreme Court *summarily reversed* the Ninth Circuit's decision. <u>Wong v. Belmontes</u>, 558 U.S. ___, 130 S.Ct. 383 (2009). In <u>Wong v. Belmontes</u>, the Supreme Court held that when a "substantial"mitigation case was presented (as in Fulks' case), evidence that is merely cumulative to the humanizing evidence actually presented fails to demonstrate the prejudice necessary to meet the prejudice prong of <u>Strickland</u>. <u>Blemontes</u>, 130 S.Ct. at 387-88. It also held that in evaluating the question of whether there is reasonable probability the additional

mitigation evidence would have resulted in a different verdict, the reviewing court must consider all of the relevant evidence that the jury would have had before it, not just the mitigation evidence. The Court pointed out that the additional mitigation evidence in Belmontes' case would have opened the door for the prosecution to present evidence of a second murder Belmontes had committed. Id. at 386. The Supreme Court concluded that the jury was well acquainted with Belmontes' background and the potential humanizing features, and that additional evidence on these points would have offered an insignificant benefit. Id. at 388. As to the evidence experts could have presented to "make connections between the various themes in the mitigation case and explain to the jury how they could have contributed to Belmontes involvement in criminal activity," the court noted that the mitigating evidence was neither complex nor technical, but required only that the jury make logical connections of the kind a layperson is well equipped to make. Id.

As in Belmontes, the jury in Fulks' case did not need to hear from additional experts to understand the possible connection between Fulks' social history, his drug use and his alleged cognitive problems and his crimes. In addition to being able to use their common sense, they had already been told by other experts that there was a connection between Fulks' background and his bad behavior. Further, some of the additional information the experts state they would have provided would have potentially opened the door for testimony regarding the evidence that Fulks had physically abused his step son,

2

Miles. Fulks' trial counsel had fought to prevent the jurors from hearing (and viewing) this evidence, and this Court had made it clear that it would bar the evidence only as long as the defense did not open the door. Evidence regarding the abuse of Miles would have far outweighed any possible benefit from additional mitigation and expert testimony, which would have been mostly cumulative. Just as the Supreme Court termed "fanciful" the notion that the result would have been different for Belmontes if only there had been more witnesses or an expert to testify at his trial, Id. at 391, this court should similarly find that Fulks' notion that more experts and more mitigation witnesses would have resulted in a different verdict is "fanciful."

A week before Wong v. Belmontes, the Supreme Court issued another opinion that supports the Government's argument that Fulks did not receive ineffective assistance of counsel in investigating mitigation evidence regarding Petitioner's background. See Bobby v. Van Hook, 558 U.S. ___, 130 S.Ct. 13 (2009). In Van Hook, the Supreme Court rejected his argument that trial counsel should have found more mitigating evidence because what counsel did discover should have given them reason to suspect that much worse details existed, and the additional undiscovered evidence could have helped counsel "narrate the true story of Van Hooks childhood experiences."[1] Id. at 19. The Supreme Court observed that "there comes a point at which evidence from more

---

[1] Van Hook's background, including his history of abusive alcoholic parents and his use of drugs, appears remarkably similar to that of Fulks.

3

distant relatives can reasonably be expected to be only cumulative, and the search for it

distractive from more important duties." Id. It found that, given the evidence counsel had

already unearthed from those closest to Van Hook's upbringing and the experts who

reviewed his history, it was not unreasonable for his counsel not to identify and interview

every other living family member or every therapist who once treated his parents. Id.

Van Hook also rejects the use of the ABA Guidelines as the standard for

measuring the effectiveness of counsel.[2] While the Supreme Court based its decision on

the fact that the court of appeals had judged counsel's conduct on the basis of the ABA's

2003 Guidelines, rather than the prevailing professional practice at the time of the trial, it

made clear that it was not endorsing the ABA Guidelines as the standard for effective

representation:

> The narrow grounds for our opinion should not be regarded as accepting the
> legitimacy of a less categorical use of the Guidelines to evaluate post-2003
> representation. For that to be proper, the ABA Guidelines must reflect
> "[p]revailing norms of practice," and "standard practice," and must not be so
> detailed that they would "interfere with the constitutionally protected
> independence of counsel and restrict the wide latitude counsel must have in
> making tactical decisions." We express no views on whether the 2003 Guidelines
> meet these criteria.

Id. at 17, n.1 (internal citations omitted). Justice Alito, in a concurring opinion, expressed

even more forcefully his opinion that the ABA Guidelines have no special relevance in

---

[2] Petitioner also used ABA Guidelines to support his argument that his counsel failed to properly investigate and present an adequate case in mitigation. (See Petition, at pp. 30).

determining whether an attorney's performance meets the standard required by the Sixth Amendment.  Id. at 20.  He noted that the ABA is a private organization with limited membership, and added: "It is the responsibility of the courts to determine the nature of the work that a defense attorney must do in a capital case in order to meet the obligations imposed by the Constitution, and I see no reason why the ABA Guidelines should be given a privileged position in making that determination."  Id.

 Claim Eight (VIII):

Fulks has complained that his trial counsel were ineffective because important pieces of information could not be used by the jury because trial counsel failed to request that the statutory catch-all factor or the statutory minor participation factor be included on the verdict form.  (See Petition at p. 108.)  In United States v. Basham, 561 F.3d 302, 337 (4th Cir. 2009), Fulks' co-defendant made a similar argument - that "the absence of [a catch-all] mitigator from the special verdict form created a reasonable likelihood that jurors, in fact, believed that they were precluded from considering 'other factors' in mitigation."  The Fourth Circuit rejected this argument.  Id. at 337-38.  It stated that a district court's "explicit instruction" could overcome any ambiguity or confusion caused by a verdict form, and pointed out that in Basham's case the district court had explicitly instructed jurors that "other factors" could be considered as a statutory mitigator and "any mitigating factors" could be considered.  Id. at 337.  As discussed in the Government's Response to Fulks' Petition, the Court in this case also carefully instructed the jurors that

5

there was no limit to the number and types of factors they could consider as mitigating. (Government's Response at p. 83.)

In Basham's case, the Fourth Circuit also found that his argument "runs into the 'strong policy against retrials . . . where the claimed error amounts to no more than speculation'" 561 F.3d at 338 (internal citation omitted). It noted that a capital sentencing proceeding is not inconsistent with the Eighth Amendment if there is only a possibility that the jury applied a challenged instruction in a way that prevented the consideration of mitigating evidence. Id. However, it concluded that there was no such possibility in Basham's case, and that the omission of the "other factors" mitigator from a special verdict form listing thirty-six statutory and non-statutory mitigating factors does not raise a "reasonable likelihood" that mitigating evidence was withheld from the jury. Id.

Claim Sixteen (XVI):

In Claim XVI, Fulks complains that his trial counsel was ineffective because they failed to ask potential juror Sylvia Allison why she left a question blank which would have revealed that her husband had been murdered in 1971. (Petition at pp. 158-159.) In Gardner v. Ozmint, 511 F.3d 420, 426 (4th Cir. 2007), the Fourth Circuit held that counsel's alleged deficient performance in failing to exercise a peremptory challenge to strike a juror did not result in prejudice under Strickland because the Fourth Circuit held that the state court did not err in concluding that the juror was not biased. Likewise, in Fuller v. Johnson, 158 F.3d 903, 907 (5th Cir. 1998), the Fifth Circuit held that any

6

alleged deficient performance by counsel in failing to discover that a juror had a pending criminal charge did not result in prejudice under <u>Strickland</u> because there was no showing that the juror's participation affected the reliability or the fairness of the trial. Similarly, Fulks has made no showing that juror Allison's participation affected the fairness or the reliability of his trial. In fact, the Fourth Circuit specifically found that this Court had not abused its discretion in finding that Allison was not biased. <u>United States v. Fulks</u>, 454 F.3d 410, 432-433 (4th Cir. 2006).

<u>Claim thirty-one (XXXI):</u>

Fulks' 31st claim in his amended § 2255 Petition is that the alleged errors made by his counsel and the trial court constitute reversible cumulative error. (Petition at pp. 195-196.) The Fourth Circuit addressed the issue of cumulative error in its opinion regarding former co-defendant Brandon Basham:

> [I]f a court "determines . . . that none of [a defendant's] claims warrant reversal individually," it will "decline to employ the unusual remedy of reversing for cumulative error." To satisfy this requirement, such errors must "so fatally infect the trial that they violated the trial's fundamental fairness." "When none of [the] individual rulings work[ ] any cognizable harm, . . . [i]t necessarily follows that the cumulative error doctrine finds no foothold."
> In the instant case, given the overwhelming evidence against Basham, and the fact that neither the admission of Basham's drug use nor the admission of Fulks' car chase "individual[ly] work[ ] any cognizable harm" and were mere blips in a presentation that included eighty-nine witnesses and countless exhibits, we have little difficulty concluding that cumulatively there is no error.

<u>United States v. Basham</u>, 561 F.3d 302, 330 (4th Cir. 2009)(internal citations omitted).

Such should also be the conclusion in Fulks' case.

Respectfully submitted,

KEVIN F. MCDONALD
Acting United States Attorney


s/Robert F. Daley, Jr.
Robert F. Daley, Jr.  (ID No. 6460)
Jimmie Ewing (ID No. 7292)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, South Carolina  29201
(803) 929-3000

February 15, 2010