# UNITED STATES DISTRICT COURT
## DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | | |
|---|---|---|
| UNITIED STATES OF AMERICA, | ) | C/A No. 4:02-cr-992-JFA |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | |
| | ) | DECLARATION OF |
| CHADRICK E. FULKS, | ) | JEFFREY BRUNING |
| | ) | |
| Petitioner. | ) | |
| | ) | |

This declaration is prepared, pursuant to 28 U.S.C. § 1746, under penalty of perjury and I declare that the following is true and correct.

1.    At all times relevant to this declaration, I was a Special Agent with the Federal Bureau of Investigations ("FBI"). I have been a Special Agent with the FBI for the past 22 years, of which the past five years have been in a supervisory capacity.

2.    I was one of the FBI agents assigned to the investigation of the disappearance of Alice Donovan ("the investigation") and the subsequent prosecution of Chad Fulks and Brandon Basham ("the prosecution"). Fulks and Basham were indicted for carjacking, kidnapping and murdering Alice Donovan in Conway, South Carolina.

3.    At no time during the investigation and prosecution of Fulks and Basham, did I or any other FBI agent make any "deal" or make any promise to Veronica Evans, Tina Severance, Beth McGuffin or Amber Fowler in exchange for their testimony.

4.    I spoke with Veronica Evans on a number of occasions in preparation for her testifying at the trial of Chad Fulks. Ms. Evans was extremely afraid of Mr. Fulks because of his

1

Exhibit 1

prior physical and sexual abuse of her as well as the physical abuse inflicted by Fulks on Evans' young son. As the trial of Mr. Fulks approached, Ms. Evans was extremely nervous and expressed to me her great reluctance to come to Columbia, SC to testify against Mr. Fulks. Just before trial, Ms. Evans told me that she did not want to testify at Mr. Fulks' trial. I informed her that she had been subpoenaed to testify and she was required to testify. She then asked me what would happen if she did not come to testify. I informed her that if she did not come to testify that the Government could request that the Court arrest her and hold her as a material witness until it was time for her to testify. Ms. Evans came to Columbia and testified.

There was never any "deal" with Ms. Evans regarding her testimony. At no time in conversations with Ms. Evans was she ever promised that any charges would be reduced or that any conviction would be expunged in exchange for her testimony. I made no threats that she would serve 15 years for her state charges if she did not testify at the trial of Chad Fulks. My only comments to Veronica Evan regarding her testimony were for her to tell the truth.

5.      I spoke with Tina Severance on a number of occasions in preparation for her testifying at the trial of Chad Fulks. There was never any "deal" with Ms. Severance regarding her testimony. At no time was Ms. Severance ever promised that any charges would be reduced or dropped in exchange for her testimony. My only comments to Ms. Severance regarding her testimony were for her to tell the truth.

6.      On several occasions in preparation for the trials of Fulks and Basham, I and other FBI agents would transport detained witnesses to the U.S. Attorney's Office or the FBI building in Columbia, SC. As is a customary practice, if witness preparation caused the witness to miss a meal at the detention facility, I would ensure that the witness was provided with a meal, usually from a fast food restaurant. On three or four occasions, I provided fast food meals to Beth

2

McGuffin and Stacy Workman. On one occasion, I purchased a meal from the SONIC fast food restaurant on Broad River Road for Beth McGuffin and Stacy Workman. I allowed them to eat this meal at the smoking-area picnic tables behind the security fence at the FBI building in Columbia, SC. This secure area has a security camera monitoring it. I never provided a blanket for them to eat on and they did not eat on the ground.

7. On Friday, June 18, 2004, Assistant United States Attorney Johnny Gasser and I met with Amber Fowler in the lobby of the hotel where she was staying. Ms. Fowler was supposed to testify by the end of the week, but she had not. Ms. Fowler complained that she did not have money for food and clean underwear and that she was going to drive back to West Virginia. I provided Amber Fowler with $60 so she could purchase food and clothing during her stay over the weekend in Columbia, South Carolina instead of driving back to West Virginia. This payment was made in the hotel lobby and witnessed by AUSA Gasser. A copy of the receipt which was signed by Amber Fowler and witnessed by AUSA Gasser and me is attached hereto. I met Amber Fowler in the hotel lobby along with AUSA Gasser and both AUSA Gasser and I told Amber Fowler that it was important that she provide truthful testimony, whether that testimony helped or hurt the government's case. I never told Amber Fowler that she "didn't have to cry like Tammy Fay Baker, but had to show some kind of emotion." Contrary to her assertion, I never gave Amber Fowler "four one-hundred-dollar bills."

I declare under penalty of perjury that the forgoing is true and correct. Executed on October 12, 2010.

JEFFREY BRUNING
Supervisory Special Agent

Columbia, South Carolina

I, Amber Fowler received $60.00 from SA Jeffrey J. Bruning on 6-18-04 to be used for the purchase of clothing and food while in Columbia, SC as a witness at the trial of Chadrick Fulks.

_____
Amber Fowler

_____
Jeffrey J. Bruning FBI

_____
Johnny Gasser - AUSA