

**U.S. Department of Justice**

*United States Attorney*

*District of South Carolina*

| Wachovia Building | 151 Meeting Street | John L. McMillan Federal | 105 N. Spring Street |
|---|---|---|---|
| Suite 500 | Suite 200 | Building, Room 222 | Suite 200 |
| 1441 Main Street | Post Office Box 978 | 401 W. Evans Street | Post Office Box 10067 |
| Columbia, SC 29201 | Charleston, SC 29402 | Post Office Box 1567 | Greenville, SC 29603 |
| (803) 929-3000 | (843) 727-4381 | Florence, SC 29503 | (864) 282-2100 |
| FAX (803) 254-2912 | FAX (843) 727-4443 | (843) 665-6688 | FAX (864) 233-3158 |
| | | FAX (843) 678-8809 | |

Reply to:  Columbia

August 19, 2003

John H. Blume, III, Esquire
P. O. Box 11744
Columbia, SC 29211

William F. Nettles, IV, Esquire
401 W. Evans St., Room 240
Florence, SC 29503



Dear John and Bill:

We are in receipt of your letter dated August 11, 2003. Prior to Chadrick Fulks' interview by the FBI, you requested that the interview be confined to events that occurred after Fulks and Basham arrived in South Carolina. We agreed to that request in part because we felt it was important for the family of Alice Donovan that we pursue information that might lead to the discovery of her remains. When we suggested that we might need to get Fulks out of custody to conduct the search, you seemed to think that was not necessary because you both had confidence that your investigator had been to the precise location described and that Fulks' presence would contribute little. The FBI and the locals conducted a thorough search of the area with cadaver dogs without any luck. Contrary to your suggestion, we do not think that we gave Fulks' information "short shrift." The only thing missing from the search party was Fulks himself, and we had been led to believe by you that Fulks' presence would contribute little or nothing to the search effort. While we understand the offer to have Fulks personally assist that effort, we need to be enlightened about what additional information he might contribute to the effort. Since by Fulks' own statement, Basham was in the woods with Ms. Donovan and outside of Fulks' presence at least 20 minutes, the additional information that Fulks could personally offer seems to be of little use. If we are missing something, please let us know.

As your letter indicated, we had also said that we would respond to your offer to have Fulks polygraphed by the FBI. Based on the evidence that we have seen and reviewed, there are some facts that are not in dispute. First, Fulks was the "cruise

John H. Blume, Esquire
William F. Nettles, IV, Esquire
August 19, 2003
Page 2

director" for this crime spree. Basham could not drive, and the crime spree touched places that were significant to Fulks. They started in Indiana, hooked up with Fulks' girlfriend, whom Fulks convinced to help them steal firearms (for what purpose?). Then they drove to West Virginia, where Fulks had relatives and where he knew people. Then they drove to Myrtle Beach where Fulks had previously been long enough to have a domestic violence charge filed against him. There is no evidence that Basham had familiarity with any of these locations. Fulks drove Oleta Hyman's truck to the WalMart for the purpose of carjacking another victim, and then drove Alice Donovan's care from the WalMart. Fulks raped Alice Donovan. Even if we assume that Basham is the actual murderer, Fulks led him to the second kill after having, **at the very least**, knowledge of the Samantha Burns murder and the disposal of her body. Additionally, Carl Jordan is certain that both defendants shot at him as they fled his son's residence after the burglary. Thus, even if we assume that everything that Fulks says is correct, we believe that the death penalty is still an appropriate sentence for him. Given that reality, we see very little that is accomplished by administering a government polygraph. If Fulks had told us that he was unaware of the Burns' murder, then a polygraph might tell us something that would be relevant to our decision making. However, since the Fourth Circuit Court of Appeals has affirmed post-*Daubert* and *Kumho Tire* that polygraphs are not admissible, *see U.S. v. Prince-Oyibo*, 320 F.3d 494 (4[th]Cir. 2003), and given that Fulks has told his grandmother at least that he was aware of the Burns murder, then we see no utility to a government administered polygraph. With respect to your request to give Fulks the same opportunity that Basham had in regards to the polygraph, Basham was polygraphed at a time when we hoped that we might make a rescue or that remains would have significant evidentiary value. That time has clearly passed, and the utility of a polygraph at this point simply is not obvious. Furthermore, Fulks was given the same opportunity as Basham. At the time of his arrest, agents attempted to gain Fulks' cooperation. Unless Fulks' Indiana attorney pulled information out of thin air, Fulks responded to those requests by lying to his attorney in Indiana and then remaining silent. Basham chose one course of action, and your client chose another, but each of them was afforded the same opportunity.

You have offered your client's full cooperation. At this point, full cooperation requires your client's being interviewed regarding the events in Kentucky, Indiana, Michigan, Ohio, and West Virginia. If Fulks is willing to be interviewed about those events, please let us know as soon as possible so we might begin discussing the logistics. Once again, we are only interested in an interview without conditions regarding the use of the information provided.

John H. Blume, Esquire
William F. Nettles, IV, Esquire
August 19, 2003
Page 3

Finally, guys, in the future, please don't ask us to make decisions based on what "Chad believes" the Donovan family deserves. If he is sincerely remorseful, that remorse comes way too late to do her family any good. At a time when his information might have led to some peace for these folks, he remained silent, so w e h ave a very hard time believing that he is "sincerely remorseful." He participated in the kidnaping and subsequent murder of Alice Donovan, and then kept quiet for over six months until her remains would be of no evidentiary value before indicating a willingness to assist in locating her body. His suggestion that his opinion regarding what the Donovan family deserves has any relevance is outrageously presumptuous and evidences a wickedness that perhaps we had underestimated.

Sincerely,

J. STROM THURMOND, JR.
UNITED STATES ATTORNEY

SCOTT N. SCHOOLS
First Assistant United States Attorney

JONATHAN S. GASSER
Assistant United States Attorney
Chief, Violent Crimes Section