IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION


UNITED STATES OF AMERICA,          )
                                   )
              PLAINTIFF,           )
                                   )
         -VERSUS-                  )     4:02-CR-00992
                                   )     JUNE 29, 2011
BRANDON L. BASHAM,                 )     COLUMBIA, SC
                                   )
              DEFENDANT.           )
_____)


BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.
UNITED STATES DISTRICT JUDGE, PRESIDING
STATUS CONFERENCE
(DEFENDANT APPEARED THROUGH VIDEOCONFERENCE)


A P P E A R A N C E S:

FOR THE GOVERNMENT:       ROBERT F. DALEY, JR., AUSA
                          JIMMIE EWING, AUSA
                          UNITED STATES ATTORNEY'S OFFICE
                          1441 MAIN STREET, SUITE 500
                          COLUMBIA, SC  29201

FOR THE DEFENDANT:        MICHAEL L. BURKE, ARIZONA FPD
                          SARAH E. STONE, ARIZONA FPD
                          ** (STONE VIA VIDEOCONFERENCE)
                          850 W. ADAMS  #201
                          PHOENIX, AZ  85007

                          JULIA G. MIMMS, ESQ.
                          JULIA G. MIMMS LAW OFFICE
                          1001 ELIZABETH AVENUE SUITE 1A
                          CHARLOTTE, NC  28204

                          KATHLEEN RICHARDSON, RPR, CRR
                          UNITED STATES COURT REPORTER
                          901 RICHLAND STREET
                          COLUMBIA, SC 29201


STENOTYPE/COMPUTER-AIDED TRANSCRIPTION
*** *** *** ***

*THE COURT:* ALL RIGHT. THIS IS THE CASE OF UNITED STATES OF AMERICA VERSUS BRANDON LEE BASHAM. MR. BASHAM WAS CONVICTED IN THIS COURT FOR A FEDERAL CAPITAL OFFENSE AND SENTENCED TO DEATH. AFTER AN UNSUCCESSFUL APPEAL HE HAS NOW FILED A 2255 ACTION THROUGH COURT-APPOINTED COUNSEL. WE HAVE SCHEDULED A STATUS CONFERENCE TODAY TO TALK ABOUT A VARIETY OF PROCEDURAL ISSUES. THE PETITION WAS FILED JUST UNDER THE ONE YEAR DEADLINE IN EARLY -- I THINK THE FIRST DAY OF JUNE OR THEREABOUTS.

WE HAVE HERE IN THE COURTROOM MRS. JULIA MIMS, THE LOCAL ATTORNEY FOR MR. BASHAM, AND ALSO MR. MICHAEL BURKE IS PHYSICALLY PRESENT, AND YOU HAVE -- ON THE SATELLITE WE HAVE MR. BASHAM HIMSELF ALONG WITH -- DID YOU SAY THAT THAT'S MRS. SARAH STONE?

*MR. BURKE:* YES, YOUR HONOR.

*THE COURT:* AND SHE IS ANOTHER ATTORNEY IN THIS CASE.

*MR. BURKE:* SHE IS MY CO-COUNSEL, YOUR HONOR.

*THE COURT:* AND THEN THE OTHER -- THE GENTLEMAN APPEARING IS YOUR INVESTIGATOR?

*MR. BURKE:* YES, YOUR HONOR.

*THE COURT:* ALL RIGHT. THEN REPRESENTING THE GOVERNMENT WE HAVE MR. ROBERT DALEY AND MRS. SUSAN HITT -- I'M SORRY. WAIT.

*MR. DALEY:* MRS. HITT IS HERE, BUT SHE'S NOT

ACTUALLY ENTERING AN APPEARANCE AT THIS TIME.

THE COURT:  ALL RIGHT.

MR. DALEY:  AS WELL MR. JEFF JOHNSON, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO MRS. EWING IS HERE.  THE TWO OF YOU ARE THE PRINCIPAL ATTORNEYS.  YOU HAVE TWO OTHER ATTORNEYS FROM YOUR OFFICE.

MR. DALEY:  YES, YOUR HONOR.

THE COURT:  STANDBY.  ALL RIGHT.  YOU CAN BE SEATED.  ALL RIGHT.  LET ME FIND OUT -- MRS. STONE, CAN YOU HEAR US ON THE SATELLITE HOOKUP?

MRS. STONE:  YES, YOUR HONOR, WE CAN.

THE COURT:  ALL RIGHT.  MR. BASHAM, CAN YOU HEAR ME?

THE DEFENDANT:  I HEAR YOU JUST FINE.

THE COURT:  ALL RIGHT.  THERE ARE SEVERAL ISSUES WE NEED TO DISCUSS.  IN THE OTHER CASE, YOU'RE ALL AWARE I HAD ANOTHER PROCEEDING EARLIER THIS YEAR INVOLVING THE CO-DEFENDANT.  SAME BASIC SCENARIO.  THERE WAS A LENGTHY MEMORANDUM IN SUPPORT OF THE MOTION FOR COLLATERAL LEAVE UNDER 2255, ABOUT 33 OF 34 CLAIMS.  THE GOVERNMENT ASKED FOR AN EXTENSION OF TIME TO RESPOND, WHICH I GRANTED, AND I'M ASSUMING THE GOVERNMENT'S GOING TO WANT AN EXTENSION OF TIME TO RESPOND IN THIS CASE.  IS THAT CORRECT, MR. DALEY?

MR. DALEY:  YES, YOUR HONOR.

THE COURT:  ALL RIGHT.  NOW, BUT BEFORE WE GET TO

THAT WE HAVE THIS ISSUE OF THE DEFENDANT'S REQUEST THAT -- BECAUSE OF INABILITY TO GET ALL THE RECORDS IN THIS CASE THAT THE STATUTE OF LIMITATIONS BE EXTENDED. AND I THINK WE NEED TO ADDRESS THAT BEFORE WE TALK ABOUT BRIEFING SCHEDULES. SO, MR. BURKE, TELL ME -- I UNDERSTAND, I READ THE AFFIDAVIT OF YOUR PARALEGAL AND I'VE ALSO TALKED EXTENSIVELY WITH MS. FLOYD, MY DOCKET CLERK, ABOUT THIS.

NOW THAT YOU HAVE ALL THE RECORDS, ARE YOU AWARE OF ADDITIONAL CLAIMS THAT COULD HAVE BEEN BROUGHT BEFORE THE ONE YEAR RAN BUT WERE NOT BROUGHT?

*MR. BURKE:* AT THIS POINT, YOUR HONOR, I -- WE ARE NOT AWARE OF ANY ADDITIONAL CLAIMS THAT COULD HAVE BEEN BROUGHT THAT -- BASED ON THE RECORDS THAT WE NOW HAVE.

*THE COURT:* RIGHT.

*MR. BURKE:* SO I WILL CONCEDE THAT FOR THE COURT.

*THE COURT:* ALL RIGHT. WELL, THAT'S GOOD BECAUSE I -- YOU KNOW, THERE'S A WELL-SETTLED BODY OF LAW THAT ESTOPPEL AND WAIVER DOES NOT RUN AGAINST THE GOVERNMENT, AND I DON'T KNOW THAT A FELLOW EMPLOYEE CAN BY CONDUCT WAIVE THE STATUTE OR TOLL THE STATUTE SO TO SPEAK. I'M CERTAINLY AMENABLE TO LIBERAL BRIEFING SCHEDULES ON BOTH SIDES. AND JUST AS I PROBABLY GIVE THE GOVERNMENT MORE TIME, IF YOU WANT MORE THAN A NORMAL TIME TO FILE A REPLY, I'M CERTAINLY AMENABLE TO THAT.

*MR. BURKE:* WELL, AND IF I MAY, YOUR HONOR. WE --

WE PRESENTED THAT ARGUMENT IN THE PETITION MORE AS A CAUTIONARY MATTER. IF IN THE EVENT WE DISCOVER THAT WE NEEDED TO AMEND THE PETITION AND THE GOVERNMENT ARGUED THAT THE STATUTE OF LIMITATIONS BARRED OUR AMENDMENT, WE AT LEAST WANTED TO PRESENT THAT ARGUMENT AS POTENTIAL FOR STATUTORY TOLLING OF THE STATUTE OF LIMITATIONS. AND 2255 DOES PROVIDE FOR STATUTORY TOLLING IF IT IS NECESSARY.

AT THIS POINT, YOUR HONOR, WE DON'T BELIEVE THAT THE COURT NEEDS TO MAKE ANY RULING REGARDING THE STATUTE OF LIMITATIONS.

*THE COURT:* ALL RIGHT.

*MR. BURKE:* THE ONLY INSTANCE WHERE IT WOULD ARISE IS IF WE WERE TO SEEK TO AMEND MR. BASHAM'S PETITION AND THEN THE GOVERNMENT WERE TO ARGUE IN THE RESPONSE THAT ANY AMENDMENTS WERE BARRED BY THE STATUTE OF LIMITATIONS.

*THE COURT:* MR. DALEY, ARE YOU SATISFIED WITH THAT?

*MR. DALEY:* THAT WOULD BE FINE, YOUR HONOR.

*THE COURT:* ALL RIGHT. VERY GOOD. NOW WE ARE BACK TO THE BRIEFING SCHEDULE. HOW LONG DOES THE GOVERNMENT NEED?

*MR. DALEY:* YOUR HONOR, I LOOKED BACK AT WHAT WE HAD DONE IN THE FULKS CASE, AND IT LOOKED LIKE WE INITIALLY ASKED FOR 90 DAYS AND THEN ASKED FOR A COUPLE OF ADDITIONAL EXTENSIONS. WITH THAT IN MIND AS WELL AS THE FACT THAT I KNOW THAT THE FULKS APPEAL BRIEF IN THE FOURTH CIRCUIT WILL BE FILED ON JULY 20TH, AND ALTHOUGH WE HAVE A DEPARTMENT OF

JUSTICE LAWYER WORKING CLOSELY WITH US, WE'LL BE INTIMATELY INVOLVED IN THAT, I WOULD RESPECTFULLY REQUEST THAT WE BE GIVEN UNTIL THE END OF SEPTEMBER TO FILE OUR ANSWER AND INITIAL RESPONSE TO THE 2255.

I WOULD HOPE WE WOULD BE ABLE TO HAVE THAT TO YOU BY THE END OF SEPTEMBER.  IT IS POSSIBLE DEPENDING UPON WHAT THE BRIEF ACTUALLY LOOKS LIKE IN THE FULKS CASE THAT I MAY COME FOR SOME SMALL ADDITIONAL AMOUNT OF TIME, BUT...

*THE COURT:*  LET ME ASK THIS.  I SHOULD HAVE ASKED. I HAVE READ THE PETITION ONCE, BUT -- AND SKIMMED IT ONCE AND READ IT ONCE, BUT HOW MANY ISSUES OVERLAP THIS CASE TO THE FULKS CASE?  NOT MANY?

*MR. DALEY:*  THERE ARE A FEW ISSUES.  I WOULD SAY MAYBE THREE OR FOUR ISSUES --

*THE COURT:*  RIGHT.  THAT--

*MR. DALEY:*  -- MAYBE A COUPLE MORE, BUT MOST OF THEM ARE -- ARE UNIQUELY...

*THE COURT:*  RIGHT.  THE POINT IS IT WOULD SERVE NO USEFUL PURPOSE TO WAIT ON THE FULKS APPEAL TO BE DECIDED TO RESOLVE THOSE THREE ISSUES.

*MR. DALEY:*  I WOULDN'T THINK THERE WOULD BE ANY REASON TO SLOW DOWN THE BRIEFING IF SOME DECISION CAME OUT IN THE FULKS CASE.

*THE COURT:*  RIGHT.

*MR. DALEY:*  IN ALL LIKELIHOOD IT WOULD BE ONE OF

THE MATTERS OF LAW, A COURT INSTRUCTION OR THE INCONSISTENT THEORY CLAIM THAT IS REALLY BASICALLY IDENTICAL IN BOTH CASES.

*THE COURT:* RIGHT.

*MR. DALEY:* SO, I DON'T SEE ANY -- ANY GOOD REASON TO STAY ANY KIND OF BRIEFING IN THE MEAN TIME, YOUR HONOR.

*THE COURT:* MR. BURKE, WHAT ABOUT THAT?

*MR. BURKE:* I WOULD AGREE, YOUR HONOR.  I DO THINK THAT THOUGH -- ALTHOUGH THERE IS SOME OVERLAP ON A FEW OF THE CLAIMS, THERE ARE SOME FACTUAL DISTINCTIONS WITH REGARD TO THOSE CLAIMS.

*THE COURT:* RIGHT.

*MR. BURKE:* FOR EXAMPLE, SOME OF THE JURY INSTRUCTIONS ARE -- THEY HAVE DISTINCT ISSUES IN MR. BASHAM'S CASE.  I WOULD LIKE TO ADDRESS ONE THING ABOUT SCHEDULING THAT MAY ASSIST THE GOVERNMENT.  WHEN -- I RECOGNIZE THAT OUR PLEADING IN THIS CASE IS LENGTHY.  IT WAS A LENGTHY TRIAL WITH MANY, MANY ISSUES.  WE ATTEMPTED TO COMPLY WITH THE RULES FOR THE FILING OF 2255 PETITIONS AND KEPT OUR LEGAL ARGUMENTS TO AS MUCH OF THE MINIMUM AS WE COULD.

WE WERE GOING TO REQUEST LEAVE FROM THE COURT TO FILE A LEGAL MEMORANDUM IN SUPPORT OF OUR CLAIMS BEFORE THE GOVERNMENT WAS REQUIRED TO ANSWER SO THAT WE COULD AT LEAST FLESH OUT THE LEGAL BASIS FOR OUR CLAIMS AND THE CASES THAT SUPPORT OUR POSITION.  SO IF THE COURT WERE TO ALLOW US TO DO

THAT, THAT WOULD OBVIOUSLY PUSH THE GOVERNMENT--

THE COURT:  I THOUGHT THIS WAS THE LEGAL MEMORANDUM.

MR. BURKE:  THAT'S OUR 2255 PETITION, YOUR HONOR. AND AS WE STATED AT THE BEGINNING, THE RULES OF THE CASES GOVERNING 2255 PETITIONS URGE THAT LEGAL ARGUMENTS AND LEGAL CITATION BE KEPT TO A MINIMUM, THAT THE FACTS OF THE CLAIMS BE SET FORTH WITH AS MINIMAL AMOUNT OF LEGAL ARGUMENT AS POSSIBLE, WHICH IS WHAT WE ATTEMPTED TO DO IN THIS PETITION. THERE ARE--

THE COURT:  HOLD UP.  WE LOST THE SATELLITE.  STAND AT EASE FOR JUST A MINUTE.

(WHEREUPON, THERE WAS A PAUSE.)

THE COURT:  ARE WE BACK AND UP AND RUNNING ON THE SATELLITE?

MRS. STONE:  YOUR HONOR, THIS IS SARAH STONE.  WE CAN HEAR AND SEE YOU AGAIN.

THE COURT:  ALL RIGHT.  VERY GOOD.  ALL RIGHT. MR. BURKE, YOU WERE SAYING YOU WANT SOME ADDITIONAL TIME TO FILE A LEGAL MEMORANDUM.  I'M AMENABLE TO THAT, BUT YOU PROBABLY KNOW I'M UNDER A MANDATE FROM THE FOURTH CIRCUIT TO HAVE A DECISION OUT IN THIS CASE WITHIN X NUMBER OF DAYS AFTER IT WAS FILED, AND I CAN'T REMEMBER WHAT THAT DEADLINE IS.  DOES ANYBODY KNOW?

MR. DALEY:  THERE ARE A COUPLE DIFFERENT DEADLINES.

ONE IS 360 DAYS OR 450 DAYS, YOUR HONOR.  WE ARE WAY AHEAD OF THAT THOUGH BECAUSE ONE OF THE THINGS YOU DID IN THE FULKS CASE IS THAT YOU GAVE THEM FOUR ADDITIONAL MONTHS TO FLESH OUT A LITTLE MORE OF THEIR CLAIMS.

THE COURT:  RIGHT, BECAUSE OF THE -- THAT THEY DISCOVERED THE REMAINS, AND THAT WAS NEWLY DISCOVERED EVIDENCE AND...

MR. DALEY:  THIS IS ACTUALLY BECAUSE YOU APPOINTED SOME FOLKS MAYBE AFTER THE CERT HAD BEEN DENIED.  THE REMAINS ISSUE WAS BRIEFED MUCH LATER BECAUSE THAT'S WHEN IT CAME TO LIGHT THAT THOSE WERE THE REMAINS OF ALICE DONOVAN, SO...

THE COURT:  RIGHT.  RIGHT.  BUT HERE I GAVE MR. BURKE AND HIS TEAM KIND OF A RUNNING START, SO TO SPEAK, BECAUSE I SIGNALED MY INTENTION TO APPOINT YOU FIVE OR SIX MONTHS BEFORE THE DEADLINE -- BEFORE THE CLAIM WAS RIPE ACTUALLY.

MR. BURKE:  WELL, YOUR HONOR, IF I -- WE MAY BE ABLE TO RESOLVE THIS ANY WAY.  I WANT TO MAKE IT CLEAR THAT WE ARE NOT ASKING FOR AN EXTENSION OF TIME.  WE ATTEMPTED TO COMPLY WITH WHAT THE RULES REQUIRED OF US --

THE COURT:  RIGHT.

MR. BURKE:  -- WHICH IS WHY WE FILED THE PLEADING THAT WE DID.  I JUST SPOKE WITH MR. DALEY, HOWEVER, AND IT'S MY UNDERSTANDING THAT WE CAN REACH THE AGREEMENT THAT IF THE GOVERNMENT WERE JUST TO RESPOND TO THE PLEADING THAT WE HAVE

FILED, THAT WE IN OUR REPLY COULD THEN RESPOND WITH WHATEVER ADDITIONAL LEGAL ARGUMENTS, LEGAL CASE--

THE COURT: THAT'S FINE WITH ME.

MR. DALEY: I DON'T SEE ANY REASON TO SLOW IT DOWN, YOUR HONOR.

THE COURT: ALL RIGHT.

MR. DALEY: MY EXPERIENCE IN THE FULKS CASE TAUGHT ME THAT THERE'S REALLY -- NO DELAY ENDS UP HELPING ANYBODY.

THE COURT: ALL RIGHT. SO YOU WANT TILL THE END OF SEPTEMBER AND THEN YOU ARE HAPPY -- YOU ARE HAPPY WITH THE DEFENDANT, THE PETITIONER, THEN COMING BACK WITH ADDITIONAL AUTHORITIES IN HIS REPLY BRIEF.

MR. DALEY: RIGHT. I MEAN, THEY CAN'T EXPAND OBVIOUSLY THEIR, YOU KNOW, WHAT THEIR CLAIMS ARE, BUT I DON'T MIND THAT.

THE COURT: THAT'S FINE. AND THEN IF THERE'S ANYTHING IN THERE THAT YOU THINK YOU NEED TO REPLY TO, I MIGHT GIVE YOU A ITTY BITTY AMOUNT OF TIME TO REPLY TO THAT. LET'S PROCEED ON THAT BASIS. SO YOU WANT STILL SEPTEMBER 30TH?

MR. DALEY: WHATEVER DAY THAT ACTUALLY IS, YOUR HONOR. I SHOULD HAVE ACTUALLY SEEN IT. YES, SIR. YES, SIR.

THE COURT: ALL RIGHT. HOW LONG DOES THE DEFENDANT NEED AFTER THAT?

MR. BURKE: YOUR HONOR, I'M SORRY TO BREAK THE

FLOW, BUT I DO FEEL I NEED TO ADDRESS THE COURT ABOUT A COLLATERAL MATTER WHICH IS MR. BASHAM, AS YOU ARE AWARE, FILED A MOTION WITH THIS COURT--

THE COURT:  I PLAN ON TAKING THAT UP THIS MORNING. WE ARE GOING TO TAKE THAT UP.

MR. BURKE:  OKAY.  ALL RIGHT.  THEN I--

THE COURT:  BUT I -- WELL, LET'S STOP AND TALK ABOUT THAT RIGHT NOW.

MR. BURKE:  BEFORE WE PROCEED--

THE COURT:  MR. FULKS FILED A IDENTICAL MOTION FOUR TIMES AND WITHDREW IT EACH TIME.  AND WHEN HE FILED THE FIRST ONE, I WAS GEARING UP TO APPOINT A MEDICAL PROFESSIONAL TO EXAMINE HIM, AND BEFORE I COULD SECURE THAT PERSON HE WITHDREW IT AFTER A VISIT FROM HIS COURT-APPOINTED TEAM OF LAWYERS WHO FLEW OUT TO TALK WITH HIM AND THEN SUBMITTED A VOUCHER FOR TALKING WITH HIM, WHICH WAS FINE.  SO AFTER THAT EXPERIENCE, THE NEXT THREE TIMES I JUST SAT ON IT AND I SAT ON IT LONG ENOUGH THAT HE EVENTUALLY WITHDREW IT.

SO I GUESS I NEED TO FIND OUT FROM MR. BASHAM IF HE IS SINCERE AND WANTS TO PROCEED WITH THIS.  IF HE DOES, I'M AMENABLE TO GOING FORWARD AND APPOINTING A FORENSIC PSYCHIATRIST OR WHOEVER THE PROPER PERSON IS TO EXAMINE HIM TO SEE IF HE'S COMPETENT TO MAKE THIS DECISION, BUT I DON'T WANT TO SLOW DOWN THE BRIEFING SCHEDULE IN THIS CASE.  I'D LIKE FOR IT TO RUN ON PARALLEL TRACKS.  YOU ABOUT TO SUGGEST

WE NEED TO JUST PUT EVERYTHING ON ICE HERE UNTIL WE RESOLVE THIS?

*MR. BURKE:* NO, YOUR HONOR. I JUST WANTED TO MAKE SURE THAT YOU WERE AWARE OF THAT SITUATION.

*THE COURT:* I'M AWARE. LET'S GO AHEAD AND TALK ABOUT THAT. MR. BASHAM, CAN YOU HEAR ME?

*THE DEFENDANT:* YEAH, I HEAR YOU.

*THE COURT:* ALL RIGHT. THE MOTION THAT YOU FILED TO DROP YOUR APPEALS AND FOREGO ANY FURTHER CHALLENGES TO YOUR CONVICTION AND YOUR SENTENCE, YOU FILED IT PRO SE, WHICH MEANS THAT YOU DID NOT HAVE AN ATTORNEY REPRESENTING YOU. IT LOOKS AS THOUGH YOU HAD SOME HELP, THOUGH, BECAUSE IT CITES A GOOD MANY LEGAL AUTHORITIES. HAVE YOU THOROUGHLY CONSIDERED YOUR ACTIONS IN THIS REGARD?

*THE DEFENDANT:* YEAH, I HAVE, YOUR HONOR. THE WHOLE THING IS IS I UNDERSTAND YOU HAD A PROBLEM WITH FULKS AND I THINK THAT JUST BY THE TIME I WAS IN TRIAL, YOU SHOULD KNOW I'M NOT FULKS. ALL RIGHT. AND I'VE BEEN HERE, I KNOW WHAT I'M SENTENCED FOR, I KNOW WHAT YOU -- WHAT I -- WHAT I'M ACCUSED OF, I KNOW WHAT I HAVE GOT TO DO, AND MY THING IS THIS RIGHT HERE. I DON'T EVEN WANT TO GET OUT OF BED IN THE MORNING, YOU KNOW WHAT I'M SAYING.

I MEAN -- I MEAN, THIS IS NOT MY SENTENCE. MY SENTENCE IS NOT LIFE IN PRISON. MY SENTENCE IS DEATH, AND I WOULD LIKE TO HAVE THAT CARRIED OUT. THAT'S MY -- THAT'S MY -- AND

NO, I DIDN'T -- I DIDN'T -- I DON'T KNOW THE LEGAL STUFF. YOU KNOW I DON'T. I DIDN'T EVEN STAY AWAKE IN THE TRIAL. I SLEPT THE WHOLE TIME BECAUSE I DIDN'T WANT TO HEAR THE SHIT. SO THE WHOLE THING IS IS WITH ALL DUE RESPECT, YES, I HAD THIS TYPED UP BY ANOTHER FELLOW INMATE IN HERE BECAUSE HE UNDERSTANDS THE LAW BETTER THAN I DO, AND YES, I DID OVERSEE IT, AND THIS IS MY REQUEST AND -- AND BUT IN THIS IT SAID THAT I DIDN'T WANT MY LAWYER. HE TYPED SOME THINGS IN HERE. I JUST WENT AND WENT ALONG WITH IT. IT SAYS THAT I DIDN'T WANT NO LAWYER.

I DON'T -- I DON'T CARE WHETHER I HAVE LAWYERS OR NOT TO BE HONEST WITH YOU. I MEAN, I LIKE THE LAWYERS THAT I HAVE GOT. IF I NEED A LAWYER TO HELP ME GO THROUGH WITH THIS, THAT'S FINE. IF I DON'T, THAT'S FINE, TOO. THEY WORK REAL WELL WITH ME. I HAVE A GOOD, YOU KNOW, THEY ARE -- THEY'RE -- THEY'RE -- THEY'RE STRAIGHT-FORWARD, THEY, YOU KNOW, DO THE THING, AND I UNDERSTAND THAT THEY ARE STILL -- ARE TRYING TO, YOU KNOW, GET ME RELEASED. WELL, THAT'S THEIR JOB. THAT'S WHAT THEY ARE SUPPOSED TO DO. BUT WHATEVER, RIGHT? I'M JUST DONE, MAN. I'M DONE TIRED, YOU KNOW. THAT'S MY -- AND I AM NOT GOING TO CHANGE MY MIND. AND THAT'S -- THAT -- AND I'M SITTING HERE TELLING YOU, YOU KNOW, THAT'S JUST THE WAY IT IS.

*THE COURT:* ALL RIGHT. WELL MR. BASHAM, WHEN -- SINCE YOUR PETITION CAME IN, WE'VE RESEARCHED THE LAW AND

I'M -- BEFORE I PROCEED TO EVEN LOOK AT YOUR REQUEST, I'M REQUIRED TO APPOINT A MEDICAL PROFESSIONAL TO EXAMINE YOU TO BE SURE YOU'RE COMPETENT TO TAKE THIS STEP. AND I'M SURE YOU CAN APPRECIATE THE REASON FOR THAT. THE SUPREME COURT HAS HELD THAT THE STATE CANNOT -- THE GOVERNMENT CANNOT EXECUTE SOMEONE WHO IS NOT MENTALLY COMPETENT. AND I DON'T MEAN TO SUGGEST THAT YOU AREN'T MENTALLY COMPETENT, BUT I'M REQUIRED TO APPOINT SOMEONE TO EXAMINE YOU.

THE QUESTION OF WHETHER I'M REQUIRED TO APPOINT ANOTHER TEAM OF LAWYERS TO REPRESENT YOU ON THIS ISSUE IS NOT VERY CLEAR. BUT I DON'T THINK WE NEED TO DECIDE THAT TODAY. I DO THINK THAT I WILL APPOINT SOMEONE TO EXAMINE YOU. SO I DON'T KNOW IF THE FACILITY THERE WHERE YOU ARE HAS SOMEONE ON STAFF, AND IF THEY I DO, I DON'T KNOW WHETHER IT WOULD BE BETTER FOR ME TO GO OUTSIDE THE PRISON AND GET SOMEBODY ELSE.

MR. BURKE, YOU HAVE AN OPINION ON THAT?

*MR. BURKE:* I DO, YOUR HONOR. THANK YOU. IT'S OUR POSITION THAT ONE OF THE REASONS THAT MR. BASHAM IS IN THE SITUATION HE IS IS FOR THE LAST SEVERAL YEARS SINCE HE HAS BEEN AT TERRE HAUTE, HE HAS BEEN DENIED ALL MEDICATION. AND AS YOUR HONOR IS AWARE, WHEN MR. BASHAM WAS AT TRIAL HE WAS RECEIVING CONSIDERABLE AMOUNTS OF MEDICATION TO DEAL WITH SEVERAL ISSUES INCLUDING ADHD. HE HAS NOW LIVED FOR SEVERAL YEARS WITHOUT ANY MEDICATION, ANY MEDICATION WHATSOEVER. THAT'S DUE IN LARGE MEASURE TO THE MEDICAL FACILITIES AND THE

MEDICAL TEAM THAT THEY HAVE AT THE PRISON IN TERRE HAUTE.

SO, IF THE COURT IS INCLINED TO APPOINT A DOCTOR TO EVALUATE MR. BASHAM, WE WOULD ASK EITHER THAT HE BE TRANSPORTED TO A FACILITY SUCH AS BUTNER OR -- BUTNER OR SOME PLACE -- I BELIEVE THERE'S A PLACE IN MISSOURI AS WELL SO HE COULD BE EVALUATED BY COMPETENT PROFESSIONALS OR IN THE ALTERNATIVE ALLOW THE PARTIES TO AGREE ON A -- AN EXPERT WHO COULD EVALUATE MR. BASHAM AT THE FACILITY IN TERRE HAUTE.

*THE COURT:* SEEMS LIKE TO ME THE SAFEST OPTION WOULD BE TO APPOINT ONE FROM OUTSIDE OF TERRA HAUTE TO GO TO TERRE HAUTE AND EXAMINE HIM THERE RATHER THAN MOVING HIM SOMEWHERE.

*MR. DALEY:* YOUR HONOR, I DON'T KNOW ANY OF THE DETAILS OF WHAT WOULD NEED TO HAPPEN, BUT I WOULD THINK THAT JUST THE LITTLE DISCUSSION WE HAD ABOUT POTENTIALLY TRANSPORTING MR. FULKS HERE FOR THE HEARING CREATED GRAVE CONCERNS. I THINK THAT THE BOP IN ALL LIKELIHOOD WOULD BE VERY -- THAT THEY WOULD STRONGLY SUGGEST TO THE COURT THAT THEY WOULD WANT TO KEEP MR. BASHAM IN TERRE HAUTE AND BRING IN -- PROBABLY BRING IN A FORENSIC PSYCHIATRIST IF THE COURT ORDERED IT FROM ANOTHER FACILITY, WHETHER THAT BE BUTNER OR MISSOURI OR I DON'T KNOW WHAT SOME OF THE--

*THE COURT:* DOES IT HAVE TO BE A GOVERNMENT DOCTOR? CAN'T I APPOINT A PRIVATE PHYSICIAN, PRIVATE PRACTITIONER?

*MR. DALEY:* YOUR, HONOR I THINK YOU CAN -- YOU HAVE

16

A GREAT DEAL OF DISCRETION IN WHO YOU APPOINT AND HOW IT'S CARRIED OUT. I JUST--

THE COURT: I WOULD FEEL MORE COMFORTABLE APPOINTING SOMEONE FROM COLUMBIA, SOUTH CAROLINA WHO I HAVE DEALT WITH IN THE PAST. BUT LET'S TALK ABOUT THAT RIGHT NOW. OF ALL THE -- HAVE ALL -- HAVE THE LOCAL PEOPLE HERE EXAMINED HIM ALREADY? I THINK SOME OF THEM HAVE.

MR. BURKE: WELL, DR. SCHWARTZ-WATTS EVALUATED HIM, DR. MORGAN EVALUATED HIM, DR. CAPART FROM BUTNER EVALUATED HIM, AND THERE MAY BE OTHERS THAT ARE ESCAPING MY MEMORY RIGHT NOW, BUT THOSE ARE THE THREE PRIMARY PSYCHIATRISTS WHO EVALUATED HIM, AND IT'S OUR OPINION THAT YOU WOULD NEED TO HAVE A PSYCHIATRIST DO THE EVALUATIONS AS--

THE COURT: IS THAT WHAT WE NEED, A FORENSIC PSYCHIATRIST?

MR. BURKE: PSYCHIATRIST, YOUR HONOR, YES.

THE COURT: WELL, DR. SCHWARTZ-WATTS AND DR. MORGAN ARE THE TWO THAT I SEE MOST FREQUENTLY HERE IN COLUMBIA, AND THEY ARE OUT.

MR. BURKE: AND YOUR HONOR, YES--

THE COURT: I MEAN, ARE THEY OUT OR ARE THEY JUST--

MR. BURKE: THEY ARE OUT SIMPLY BECAUSE THEY WERE ALSO MEMBERS OF THE DEFENSE TEAM AT TRIAL. THAT ALONE I THINK WOULD DISQUALIFY THEM FROM ACTING AS AN INDEPENDENT EXPERT.

*THE COURT:* MRS. MIMMS, DO YOU KNOW ANYBODY IN CHARLOTTE WE COULD GO TO? OF COURSE, IF WE GO OUTSIDE COLUMBIA, THERE'S NO REASON TO LIMIT IT TO ANYWHERE.

*MRS. MIMMS:* THAT'S CORRECT.

*MR. DALEY:* YOUR HONOR, I KNOW THAT THERE ARE OTHER FOLKS IN COLUMBIA, BUT YOU KNOW, YOU HAVE A GREAT DEAL OF DISCRETION I THINK IN DETERMINING...

*THE COURT:* WELL, LET ME THINK ABOUT THAT. I WON'T APPOINT SOMEONE WITHOUT VENTING IT WITH YOU FIRST. HOW ABOUT THAT? VENTING WITH IT YOU FIRST. OKAY?

*MR. BURKE:* EXCUSE ME, YOUR HONOR. COULD I SUGGEST THAT PERHAPS MR. DALEY AND I COULD CONFER WITH POSSIBLE NAMES? I COULD SPEAK WITH DR. SCHWARTZ-WATTS. SHE MAY HAVE RECOMMENDATIONS AS WELL.

*THE COURT:* ALL RIGHT.

*MR. BURKE:* AND THEN WE COULD PROVIDE THE COURT WITH THREE OR FOUR POSSIBLE NAMES FROM SOUTH CAROLINA?

*THE COURT:* ALL RIGHT. ALL RIGHT. LET'S DO THAT. Y'ALL CONSULT, GET BACK WITH ME. I WILL BE LOOKING AROUND AS WELL, AND I WON'T APPOINT SOMEONE OFFICIALLY WITHOUT RUNNING IT BY BOTH OF YOU AND HEARING FROM YOU.

NOW, ON THE SECOND ISSUE OF WHETHER NEW COUNSEL IS NECESSARY, DOES THE DEFENSE TEAM HAVE A POSITION ON THAT?

*MR. BURKE:* YOUR HONOR, WITHOUT GOING INTO PRIVILEGED ATTORNEY-CLIENT DISCUSSIONS, AND SINCE WE ARE IN

OPEN COURT I'M SOMEWHAT LIMITED.  OUR POSITION AT THIS POINT IS CONSISTENT WITH MR. BASHAM'S.  WE HAVE A GOOD RELATIONSHIP WITH MR. BASHAM.  AND I THINK IF THE COURT IS GOING TO TAKE THE STEPS TO HAVE HIM EVALUATED AT THIS POINT, UNLESS MR. BASHAM DISAGREES, I DON'T THINK YOU NEED TO APPOINT OTHER COUNSEL TO REPRESENT HIS INTERESTS.  WE ARE TRYING TO DO THAT AS BEST WE CAN.

AS AN EXAMPLE, THAT WAS WHY WE FILED THE PETITION EVEN THOUGH HE HAD ASKED THAT IT NOT BE FILED, TO PRESERVE HIS RIGHTS, SO I THINK AT THIS POINT THE COURT DOES NOT NEED TO APPOINT SEPARATE COUNSEL TO REPRESENT HIM.

*THE COURT:*  ALL RIGHT.  I'M NOT GOING TO APPOINT SOMEBODY RIGHT NOW, BUT THAT'S AN OPTION DOWN THE ROAD.  AS I SAID, I HAVE HAD MY LAW CLERK RESEARCH IT, AND IT'S JUST -- WE ARE KIND OF IN UNCHARTERED WATERS HERE ON THE FEDERAL LEVEL.

*MR. DALEY:*  RIGHT.  I MEAN, IN SOME CASES IT APPEARS THAT SEPARATE COUNSEL HAVE BEEN APPOINTED.  THERE'S ALSO A NUMBER OF CASES WHERE THERE WAS NO COUNSEL APPOINTED SEPARATELY.

*THE COURT:*  THE ONLY CASE I KNOW ABOUT IS THE CELEBRATED CASE, THE NOTEWORTHY CASE OF TIMOTHY MCVEIGH.  DO YOU KNOW IF HE WAS APPOINTED COUNSEL, SEPARATE COUNSEL?

*MR. BURKE:*  IT'S OUR UNDERSTANDING THAT HE WAS, YOUR HONOR.  HE WAS APPOINTED TWO TEAMS OF COUNSEL.

THE COURT: RIGHT. ALL RIGHT. WELL, WHAT I SAID, THOUGH, I'D LIKE TO JUST KEEP THAT ON A PARALLEL TRACK. I DON'T WANT TO INTERRUPT THE BRIEFING SCHEDULE ON A PETITION TO DEAL WITH THIS OTHER ISSUE. MR. BASHAM, I'M GOING TO MOVE AHEAD ON YOUR REQUEST AND APPOINT SOMEONE TO EXAMINE YOU. I MAY OR MAY NOT APPOINT ANOTHER TEAM OF LAWYERS TO REPRESENT YOU ON THIS ISSUE, BUT I ASSURE YOU I'M NOT GOING TO LET IT SIT ON MY DESK AND GROW SOME MOSS ON IT WHILE WE ARE WAITING ON THIS OTHER PART TO HAPPEN.

SO, WE ARE GOING TO GO AHEAD BRIEFING ON YOUR CASE, BUT WE'RE GOING TO ALSO MOVE AHEAD ON YOUR REQUEST AS WELL AND...

THE DEFENDANT: ALL RIGHT. WELL, I APPRECIATE--

THE COURT: KEEP THE CASE MOVING ALONG ON BOTH TRACKS.

THE DEFENDANT: THAT'S FINE. I APPRECIATE IT. I'M JUST, YOU KNOW, I'M JUST READY. I'M TIRED OF THIS FOR REAL. HOWEVER -- HOWEVER NEED TO BE DONE -- IF IT WAS -- IF I HAD MY WAY ABOUT IT, IF I COULD JUST SIGN SOMETHING, I MEAN, I'M STANDING HERE TALKING TO YOU. I'M COMPETENT, BUT YOU KNOW, IF WHATEVER -- WHATEVER STEPS IT TAKES, I'M JUST READY TO GET IT OVER WITH. THANK YOU.

THE COURT: ALL RIGHT.

MR. DALEY: YOUR HONOR, I WOULD MAKE A POINT -- I MEAN, I TELL YOU, I WASN'T SURE WHAT ARGUMENT I WOULD MAKE. I -- COMPETENCY NEVER ENDED UP BEING RAISED. HE'S NEVER BEEN

FOUND INCOMPETENT. IN FACT, IT WAS WITHDRAWN FOR STRATEGIC PURPOSES AT A MINIMUM IN HIS TRIAL. HE APPEARS TO BE VERY ABLE TO ARTICULATE WHY HE WANTS TO DO IT. HE DOESN'T SEEM TO HAVE ANY PROBLEM WITH THAT.

I -- YOU KNOW, I UNDERSTAND WHY YOU WANT TO BE ULTRA CAUTIOUS ABOUT IT, BUT I WOULD JUST TELL THE COURT THERE ARE INSTANCES WHERE IF COMPETENCY IS NOT AN ISSUE, IF HE APPEAR -- IF HE APPEARS TO BE ABLE TO CLEARLY ARTICULATE WHY HE WANTS TO DO IT--

THE COURT: WELL, HE'S ARTICULATED IT, BUT THE FIRST SIX ISSUES IN THE BRIEF -- IN THE PETITION RELATE TO HIS COMPETENCY.

MR. DALEY: WELL, IF YOU NOTICE IN THOSE ISSUES, NOTICE THOSE CLAIMS, THERE'S NO DOCTOR THAT'S EVER FOUND HIM INCOMPETENT. NOBODY THAT EXAMINED HIM HAS FOUND HIM TO BE INCOMPETENT.

THE COURT: WELL, I UNDERSTAND YOUR POSITION, BUT IT'S SUCH A DRASTIC STEP, I JUST THINK I'D RATHER ERR ON THE SIDE OF CAUTION.

MR. DALEY: I UNDERSTAND, YOUR HONOR.

THE COURT: ALL RIGHT. SO BACK TO THE BRIEFING SCHEDULE. SEPTEMBER 30TH FOR THE GOVERNMENT?

MR. DALEY: YES, SIR.

THE COURT: MR. BURKE?

MR. BURKE: YOUR HONOR, WE JUST LEARNED YESTERDAY

THAT MRS. STONE HAS AN EVIDENTIARY HEARING IN ANOTHER 2255 CAPITAL CASE IN OCTOBER.  COULD WE HAVE UNTIL LATE NOVEMBER TO FILE OUR REPLY?

*MR. DALEY:*  THAT WOULD BE FINE WITH US, YOUR HONOR. AND THERE IS A POSSIBILITY -- AND AGAIN, I WANT TO JUST LEAVE IT OUT THERE -- THAT IF THE FULKS CASE ENDS UP BEING A 250 PAGE BRIEF WITH 29 OR 30 ISSUES, IT MAY TAKE US -- IT MAY CONSUME A LOT OF THE SAME FOLKS THAT ARE HERE TODAY.

*THE COURT:*  DO YOU KNOW YET IN THAT CASE HOW MANY OF THE -- THERE WERE 33 ISSUES BEFORE ME.  WERE ALL OF THEM REASSERTED ON APPEAL OR WAS SOME OF THEM...

*MR. DALEY:*  WELL, I THINK YOU GRANTED CERTIFICATES OF APPEALABILITY ON 29 OF THEM.

*THE COURT:*  RIGHT.

*MR. DALEY:*  OR 30.  I WOULD BE VERY SURPRISED IF EACH OF THOSE ISSUES WERE NOT RAISED.  AND--

*THE COURT:*  BUT YOU DON'T KNOW YET HOW MANY ISSUES YOU'RE GOING TO HAVE TO DEAL WITH.

*MR. DALEY:*  DON'T KNOW, YOUR HONOR, DON'T KNOW. AND THEY HAVE GOTTEN TWO EXTENSIONS ALREADY.  THE BRIEF IS NOW DUE JULY 20TH, AND I--

*THE COURT:*  ALL RIGHT.

*MR. DALEY:*  THEY MAY TRY TO GET ONE MORE EXTENSION.

*THE COURT:*  WE WILL SAY SEPTEMBER 30TH WITH THE UNDERSTANDING THAT IF YOU GET BOMBARDED WITH WORK ON THE

FOURTH CIRCUIT, WE'LL -- I'LL BE -- I'LL HEAR WHAT YOU HAVE TO SAY ABOUT EXTENDING IT.

MR. DALEY:  THANK YOU.

THE COURT:  AND THEN I'LL GIVE THE PETITIONER UNTIL THE END OF NOVEMBER, NOVEMBER 30TH, TO FILE A REPLY.

MR. BURKE:  THANK YOU.

THE COURT:  AND THEN WE WILL SCHEDULE -- HOW MUCH OF AN EVIDENTIARY HEARING DO WE NEED?  HOW MANY OF THESE ISSUES REQUIRE EVIDENTIARY DEVELOPMENT?

MR. BURKE:  AT THIS POINT, YOUR HONOR, I'M -- I'M NOT ABLE TO GIVE YOU A COMPLETE ANSWER ON THAT.  I WOULD SAY PROBABLY SOMEWHERE BETWEEN ONE THIRD AND ONE HALF OF THE CLAIMS WE HAVE ALLEGED WOULD REQUIRE EVIDENTIARY DEVELOPMENT OF ONE SORT OR ANOTHER.  WHAT WE WOULD ASK IS THAT AFTER THE MERITS BRIEFING IS DONE -- OR WE COULD DO IT AS PART OF OUR REPLY, WE COULD FILE A REQUEST FOR EVIDENTIARY DEVELOPMENT AT THAT TIME.  WE CAN FILE IT CONCURRENTLY OR A FEW WEEKS LATER.

BUT AT THIS POINT I CAN'T HONESTLY TELL YOU WHICH OF THE CLAIMS WE NEED EVIDENTIARY DEVELOPMENT ON.  BUT AS YOU -- YOU REVIEWED THE PLEADING, IT'S -- AND IT HAS A LOT OF CLAIMS THAT ARE BASED SOLELY ON THE RECORD ITSELF, SO -- BUT ANY IAC CLAIM WOULD NEED EVIDENTIARY DEVELOPMENT CLEARLY.

THE COURT:  ALL RIGHT.  WE HAD THE FULKS HEARING IN FEBRUARY, I BELIEVE.  WE GET THE BRIEFING COMPLETED IN NOVEMBER.  FEBRUARY SOUNDS LIKE A GOOD -- Y'ALL WANT TO JUST

KIND OF TENTATIVELY THINK IN TERMS OF FEBRUARY FOR A HEARING?

MR. DALEY: PERHAPS, YOUR HONOR. YOU KNOW, WE ARE GOING TO WANT TO TALK TO THE ATTORNEYS. THOSE ARE THE MAIN FOLKS I THINK WE'D NEED TO TALK TO, THOSE ARE THE DEFENSE LAWYERS. I WILL TELL YOU THAT MR. SWERLING ASKED TO HAVE SOME MATERIALS SENT TO HIM, TRANSCRIPTS AND THINGS LIKE THAT, WHICH I SENT OVER A COURTESY COPY TO HIM SO HE CAN REVIEW THOSE. THAT WAS ACTUALLY YESTERDAY.

SO, YOU KNOW, I HAVEN'T ACTUALLY BEEN IN CONTACT AT ALL AS FAR AS SUBSTANTIVE ISSUES YET BECAUSE I'M GOING TO MAKE SOME SORT OF MOTION I THINK TO -- I ASSUME THAT THERE WOULD BE SOME NEED TO AT LEAST GET THE COURT TO ALLOW ME TO TALK TO THOSE FOLKS IN THE SAME WAY WE DID IN THE FULKS CASE.

THE COURT: WELL, WE WON'T SET A HEARING DATE YET. WE'LL FIGURE THAT OUT LATER.

MR. BURKE: YOUR HONOR, I WOULD ASK THAT THE COURT MAKE AN ORDER PROHIBITING PRIOR COUNSEL FROM COMMUNICATING WITH THE GOVERNMENT FREELY WITHOUT OUR INVOLVEMENT IN THE CASE. THE -- THERE ARE RECENT CASES I COULD CITE FOR THE COURT INCLUDING -- THAT FOLLOW FROM AN ABA OPINION THAT WAS ISSUED LAST SUMMER THAT STATE THAT A LAWYER REPRESENTING A CLIENT HAS AN ONGOING ETHICAL OBLIGATION TO HIS CLIENT EVEN IF THERE IS A CLAIM OF INEFFECTIVE ASSISTANCE OF COUNSEL.

AND TO CONSIDER THE FACT THAT MR. SWERLING VOLUNTARILY CONTACTED THE GOVERNMENT IN THIS CASE WHILE HE STILL HAS AN

ETHICAL OBLIGATION TO MR. BASHAM CONFIRMS MANY OF THE ISSUES WE RAISED IN OUR PETITION.

*MR. DALEY:* ALL HE ASKED FOR WAS A COPY OF THE PETITION AND THE TRANSCRIPT. I HAVEN'T ACTUALLY TALKED TO HIM. I DROPPED OFF THE MATERIALS THAT HE WOULD WANT TO LOOK AT IN RESPONDING TO THE INEFFECTIVE ASSISTANCE CLAIMS. I HAVE NOT HAD ANY CONVERSATION WITH HIM, HAVEN'T TALKED TO HIM. HE SENT A LETTER ASKING IF HE COULD GET A HOLD OF THOSE THINGS. I SENT THEM OVER TO HIM. THAT'S ALL I DID.

THE TRUTH IS, YOUR HONOR, IF WE GET INTO AN INTERVIEW THING, SITUATION, I HAVE NO DOUBT THEY'LL BE THERE RIGHT NEXT TO -- JUST LIKE WE DID IN THE FULKS CASE.

*THE COURT:* YOU AGREE THAT IF YOU INTERVIEW MR. SWERLING, THE DEFENSE TEAM HAS A RIGHT TO BE THERE.

*MR. DALEY:* I HAVEN'T HAD ANY SUBSTANTIVE DISCUSSIONS ABOUT ANY OF THE CLAIMS UNTIL WE HAVE TALKED THROUGH IT IN FRONT OF YOU AND YOU HAVE GIVEN SOME SORT OF CLEARANCE. AND THE ABA OPINION IS AN ADVISORY OPINION THAT MANY -- WE HAVE ALREADY HAD A NUMBER OF EXPERIENCES WITH THAT OPINION, AND UNIVERSALLY THE COURTS HAVE GIVEN US ACCESS TO THE DEFENSE COUNSEL. IN THIS -- IN THIS SETTING I DON'T HAVE ANY DOUBT THAT--

*THE COURT:* I STARTED GETTING REQUESTS IN CRIMINAL CASES WHERE A DEFENDANT COMES UP WITH A 2255 AND THE GOVERNMENT NEEDS AN AFFIDAVIT FROM THE PRIOR ATTORNEY ABOUT

WHETHER HE WAS ASKED TO TAKE AN APPEAL OR SOMETHING LIKE THAT, AND NOW THE FORMER ATTORNEY WANTS A ORDER FROM ME AUTHORIZING THAT, BUT I HAVE ALWAYS GRANTED IT BECAUSE I THINK THAT ATTORNEY-CLIENT PRIVILEGE IS CLEARLY WAIVED WHEN THAT CLAIM IS MADE.

*MR. DALEY:* AND MR. SWERLING--

*THE COURT:* BUT I TELL YOU, IT HAS -- IS THAT ABA OPINION IS WHAT'S CAUSED THAT?

*MR. DALEY:* RIGHT. THAT'S WHAT'S CAUSED THAT, THAT MANY CRIMINAL DEFENSE ATTORNEYS -- SOME HAVE THOUGHT IT -- THEY DIDN'T REALLY CARE BECAUSE THEY THINK IT'S NOT REALLY VERY -- IT'S NOT BINDING, BUT A BUNCH OF CRIMINAL -- A DEFENSE COUNSEL HAVE ASKED US TO GET AN ORDER BECAUSE THEY WANT TO PROTECT THEMSELVES, AND I DON'T HAVE ANY DOUBT THAT MR. SWERLING WOULD WANT TO HAVE THAT IN PLACE, AND I DON'T WANT TO GET INTO ANY DISCUSSIONS WITH MR. SWERLING OR HARRIS OR MR. LITTLEJOHN UNTIL WE--

*THE COURT:* YOU STILL NEED AN ORDER?

*MR. BURKE:* NO, YOUR HONOR. AS LONG AS WE HAVE THE GOVERNMENT'S WORD THAT THEY WON'T SPEAK TO COUNSEL WITHOUT OUR PRESENCE.

*MR. DALEY:* WITH THE CAVEAT IF THEY WANT LIKE A TRANSCRIPT OR THE PETITION ITSELF, I FEEL LIKE, YOU KNOW, THEY DON'T WANT -- I THINK PART OF IT IS THEY DON'T WANT TO PAY TO HAVE THE PHOTOCOPYING DONE. EVEN IF I GAVE THEM A

COPY, SO I'M JUST SENDING THEM...

MR. BURKE:  THEY ARE PERFECTLY CAPABLE OF CONTACTING US AND WE CAN PROVIDE THEM WITH EVERYTHING, ANYTHING THAT THEY MIGHT NEED, SO I DON'T BELIEVE THAT THAT'S NECESSARY FOR THE GOVERNMENT TO CONTACT THEM.  AND IF THEY FEEL THAT THEY SHOULD, IT'S ALSO VERY EASY FOR THE GOVERNMENT TO COPY US ON ANY CORRESPONDENCE THEY MIGHT HAVE WITH PRIOR COUNSEL.

MR. DALEY:  I WILL BE HAPPY TO.  I DON'T PLAN TO CONTACT ANYONE, BUT I HAVE NO DOUBT THAT THEY ARE GOING TO CONTINUE TO BE CONTACTING ME BECAUSE THE ALLEGATIONS OF THE INEFFECTIVE ASSISTANCE WERE MADE BY THESE ATTORNEYS.  IT'S -- IT IS IN MY EXPERIENCE 100 PERCENT OF THE TIME THE ATTORNEY WHO HAS BEEN ALLEGED TO BE INEFFECTIVE CONTACTS THE PROSECUTOR WHO IS GOING TO DEFEND THEIR HONOR IN COURT.  I HAVE NEVER HEARD OF IT HAPPENING THE OTHER WAY, SO -- BUT I -- AGAIN, I'LL MAKE SURE THAT IF I HEAR IT FROM ANYBODY ELSE, THAT I COPY THEM ANY CORRESPONDENCE.

THE COURT:  I HAD ONE -- I HAD -- LONG TIME AGO WHEN I WAS FIRST APPOINTED I HAD A STATE HABEAS CASE WHERE THE FORMER ATTORNEY CAME IN AND FELL ON THE SWORD, SAID YEAH, I WAS INEFFECTIVE.

MR. DALEY:  THERE ARE THOSE EXCEPTIONS.  YOU'RE RIGHT, YOUR HONOR.  YEAH.  BUT WHERE THEY ARE DEFENDING WHERE THEY THINK THEY HAVE DONE WHAT THEY WERE SUPPOSED TO DO, THEY

ALWAYS CONTACT US, YOUR HONOR.

THE COURT:  ALL RIGHT.  SO WE HAVE AN UNDERSTANDING ON THAT?

MR. BURKE:  I BELIEVE SO, YOUR HONOR.

THE COURT:  OKAY.  MAKING GOOD PROGRESS HERE.  ALL RIGHT.  ANYTHING ELSE FROM THE GOVERNMENT?

MR. DALEY:  I DON'T BELIEVE SO.  NOT AT THIS TIME YOUR HONOR.

THE COURT:  MR. BURKE?

MR. BURKE:  YOUR HONOR, WE'LL TRY AND CONTACT YOU WITHIN THE NEXT TWO WEEKS WITH THE FOUR OR THREE OR FOUR NAMES THAT THE COURT CAN CONSIDER.

THE COURT:  OKAY.  MRS. STONE, IS THERE ANYTHING THAT YOU NEED TO SAY ON BEHALF OF MR. BASHAM FROM OUT THERE?

MRS. STONE:  NO, YOUR HONOR.  THANK YOU.

THE COURT:  ALL RIGHT.  MR. BASHAM, ANYTHING ELSE YOU WANT TO SAY?

THE DEFENDANT:  NO, JUST -- NO, THAT'S IT I GUESS. THANK YOU FOR HEARING MY MOTION, AND I APPRECIATE JUST GET EVERYTHING, YOU KNOW, KIND OF TAKEN CARE OF QUICK AS POSSIBLE.

THE COURT:  ALL RIGHT.

THE DEFENDANT:  THAT'S ABOUT IT.  I MEAN...

THE COURT:  ALL RIGHT.  THANK YOU, SIR.

THE DEFENDANT:  THANK YOU.

THE COURT: ALL RIGHT. I GUESS THAT'S ALL WE CAN DO THIS MORNING.

MR. BURKE: THANK YOU, YOUR HONOR.

MRS. MIMMS: THANK YOU.

MR. DALEY: THANK YOU.

THE COURT: THANK YOU VERY MUCH. WE'LL BE IN RECESS.

(END OF HEARING.)

* * *

I CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.


S/KATHLEEN RICHARDSON

_____    JULY 19, 2011

KATHLEEN RICHARDSON, RPR, CRR