IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

UNITED STATES OF AMERICA,      )      Cr. No. 4:02-992-JFA
                               )
                               )
VERSUS                         )      Columbia, SC
                               )      January 25, 2012
BRANDON LEON BASHAM,           )
                               )
     Defendant.                )
                               )
  ----------------------------)


TRANSCRIPT OF TELEPHONE CONFERENCE
BEFORE THE HONORABLE JOSEPH F. ANDERSON, JR.
UNITED STATES DISTRICT JUDGE


For the Government:      ROBERT F. DALEY, JR., ESQ.
                         JIMMIE EWING, ESQ.
                         JEFFREY M. JOHNSON, ESQ.
                         Assistant U.S. Attorneys
                         1441 Main Street, Suite 500
                         Columbia, SC  29201

For the Defendant:       MICHAEL L. BURKE, ESQ.
                         SARAH ELIZABETH STONE, ESQ.
                         Arizona Federal Public Defender
                         850 West Adams, Suite 201
                         Phoenix, AZ  85007


Court Reporter:      Gary N. Smith, CM
                     901 Richland Street
                     Columbia, SC  29201
                     (803) 256-7743

Stenotype/Computer-aided Transcription

THE CLERK:  Hello.  Who do we have on the line?

MS. STONE:  I think we have everybody except Julia.

THE CLERK:  Okay.

MR. DALEY:  For the government, Jimmie Ewing, Bob Daley, and Jeff Johnson.

MR. BURKE:  And for Mr. Basham, Michael Burke and Sarah Stone.

THE CLERK:  Okay, great.  Thank you.

THE COURT:  All right.  This is Judge Anderson, I'm in a courtroom, we have a court reporter to make a record of this conference.  We have representatives of both the government and the defendant on the phone.  We do not have Mr. Basham, but since we are going to simply discuss procedural matters, I don't think his presence is required.

I have before me the emergency motion seeking permission by the defense lawyers to gain access to the prison there so that they can sit beside Mr. Basham for this afternoon's conference call, which is scheduled for 3 o'clock Eastern time.

All I wanted to do was just hear from Mr. Basham as to whether he wants to continue with his request to drop his appeal.  There was a suggestion in the most recent filing by defense counsel that that will be his position.

If it is his position, there is no need to delay things any further, there is no need to pay any more doctors to

examine him, and we will just reactivate the briefing schedule and go forward with the case.

So, to the extent he might tell me that he does want to drop his request or continue to pursue his request, I don't understand why defense counsel has to be sitting beside him when he answers that -- when he answers my question.

So, defense counsel need to give me some authority for the need to sit beside him to give him attorney-client advice on that up-or-down, yes-or-no question.

MR. BURKE:  Your Honor, this is Michael Burke for Mr. Basham.  I would begin by saying that -- that the question is not quite so simply answered as the court is suggesting, and which is why we have asked for the status conference, and if I could give the court some background.

We filed the motion requesting the status conference for February 2nd in response to a comment from our client -- and let me, before I proceed, emphasize that Mr. Basham is represented by counsel and he is entitled to have counsel there to advise him.  And to suggest -- I think if my client were the president or the CEO of a Fortune 500 company, the court wouldn't be thinking of making them address the court without counsel.

This is a critical matter that Mr. Basham wishes to address the court on, and he has -- he has the absolute right to representation by counsel.

Now, we asked -- Mr. Basham, I can tell you this as an officer of the court, in a confidential communication Mr. Basham told me that he thought he should talk to you before you took the time and expense to come to Indianapolis, because he was having second thoughts about the motion that he had filed.

In response to that, I filed the motion so that Mr. Basham could address you.  Mr. Basham is, as you well remember from the trial, Your Honor, a severely damaged person and he is much worse than he was in 2004.

And to make him -- I will tell you that Ms. Stone and I spoke to Mr. Basham this morning.  He was up all night, nervous about the fact that he was going to have to address the court alone without us there to assist him.

He has not slept and he is, in plain terms, a mess. He has given us the right to tell the court the following statement.  This is a statement that I took down from Mr. Basham and he has approved us to say this to the court -- this is all that I can tell the court at this point.

Mr. Basham told me this morning, "I am stressed out. I am on the verge of a nervous breakdown.  I have been off my meds for a long time.  The only thing I am asking for is an order that I can be properly medicated so I can be coherent and level headed during my proceedings.  I can't think clearly."

Mr. Basham -- Your Honor, another reason that

Ms. Stone and I wanted to be present with Mr. Basham is, we are not -- we understand that there is a possibility, as the court ruled in the co-defendant Fulks' case, that it does not have authority to order that Mr. Basham be properly medicated.

We have concerns about our client's well being, his physical well being, and whether he might cause harm to himself if he were to be informed by the court that medication was not a possibility. And we felt that we needed, for his safety, to be with him to advise and counsel him following any hearing.

I frankly, with all due respect, Your Honor, I feel that this has created a firestorm that was unnecessary. We wanted to notify the court in advance of the hearing, but we have every right to advise our client, and there is no way that we can do it in the method that the court has proposed. And so that was the reason for calling this hearing.

We have advised our client to try and get some sleep in the event that this hearing goes forward this afternoon, although we would express again our objection to having it go forward without us being there to be with and advise our client.

THE COURT: Mr. Burke, let me ask this, you proposed we do this February 2nd. I was thinking that was a little further down the road than it is. Do you want to have a satellite hearing with Mr. Basham on the satellite and someone sitting beside him on February 2nd?

MR. BURKE:  Yes, Your Honor.

THE COURT:  Why do we have to wait that long to do it?  Why can't we do it tomorrow?

MR. BURKE:  If the court orders it, I will get on a plane today and go.  I would have left last night so we could have done it, but I did not get an order.  So if you want to do it sooner, we can, I just need an order directing the prison to let me in to set this up.

THE COURT:  Well, let me say, are y'all aware of the Fourth Circuit's 450-day rule in capital cases?

MR. BURKE:  I am, Your Honor.  I have a couple of thoughts on that, Your Honor.  First is that the Fourth Circuit is the only circuit that has such a rule and it --

THE COURT:  I know it's the only circuit, but it's the circuit I'm in.  My only point being -- let me -- I hate to interrupt you, Mr. Burke, but let me just say, I don't want this exercise to unnecessarily delay resolving this case one way or the other.

And if Mr. Basham is going to vacillate back and forth, as you say he is, I'm prepared to simply go forward and reactivate the briefing schedule and let's hear the case.  I don't want this to be an on-again, off-again thing like it was with Mr. Fulks who filed this motion four times and withdrew it four times.

And that's why I said, if we get him on the phone

this afternoon, if we go forward, and he tells me that he thinks he wants to withdraw it, that's all I need to hear, it's withdrawn and we will go forward.  But you seem to say you don't know what he's going to say.

MR. BURKE:  Well, Your Honor, what I said to you was the statement from him.  It is critical for Mr. Basham that he -- he is not being medicated for serious medical issues. He's having seizures, he's severely depressed, and he needs to be medicated.

He's incapable, Your Honor, of working with the prison in order to be medicated in the way that he needs to be, and we cannot work with our client to go forward.  We have made every diligent effort, Your Honor, to move this case along and to bring our client to this point.

But he is incapable, emotionally and mentally, of working with us and working with the court in the state that he is currently in.

It's my belief, and this is solely my belief -- I said to you what Mr. Basham has said I could say -- but I believe that Mr. Basham is not in a position to make this decision to waive or not waive, and that were he properly medicated he would want to go forward.  We are not attempting to delay the proceedings in this case in any way.

THE COURT:  Well, let me ask, does the government have any objection to me just deeming this request to be

withdrawn and reactivating the briefing schedule to the way it used to be and hearing the case?

MR. DALEY:  Your Honor, if that is what Mr. Basham tells you we don't have any problem with that, but our whole point would be that it has to be Mr. Basham's decision.

THE COURT:  Well, Mr. Burke is going to say he's not medicated and so if he's not medicated we can't trust his answer, and then y'all can litigate that for the next year and-a-half.

MR. DALEY:  Right, and I understand your -- I understand that quandary, Your Honor --

THE COURT:  Mr. Burke, let me go back, you indicated at first you had a right to sit beside your client, I asked for some authority for that.  It seems to me you have been appointed by the court to help him challenge his conviction and sentence, and then I have allowed you to participate in the question of whether he is competent by employing a medical professional to go out there and examine him.

But as to the up or down question of whether he wants to drop his appeals or not, it seems to me that you may be even adverse to your client on that and I'm not sure you have a right to sit beside him when he answers that question.

MR. BURKE:  Your Honor --

THE COURT:  Give me some authority for your -- do you have any authority on the facts of this case?

MR. BURKE:  Well, we did cite the appointment statute, Your Honor, but I would also say that there is a common law right to attorney-client communication and my client has expressed his desire to have us there.  I tell you that as an officer of the court.  I would not misrepresent that to the court, Your Honor --

THE COURT:  Well, let's just say this, I'm going to postpone this afternoon's hearing and we are going to reschedule it as soon as possible to -- whether it's tomorrow, Friday, Monday, whenever the prison tells me that they can set it up.  And counsel needs to be available from tomorrow forward, because as soon as we can set it up to get the defense lawyers in the prison to sit by Mr. Basham, I would like to have this hearing.  All right?

MR. BURKE:  Yes, Your Honor.

THE COURT:  Meanwhile, I'm going to go back and revert back to the original briefing schedule, because there is no need to postpone that any further.  I can tell right now, it doesn't look like this request is going to go anywhere and I have got this 450-day rule staring me in the face.

So, the defense lawyers need to get busy writing that brief.  All right?

MR. BURKE:  Yes, Your Honor.

THE COURT:  And we will have Ms. Floyd notify you as soon as we get a date and time from the prison when --

Gary N. Smith, CM
Columbia, SC

Mr. Burke, what was the problem with letting you in now?

MR. BURKE:  The prison had no -- they -- I couldn't make an appointment for a visitation.  And the other problem was because it was set up as a telephonic conference, they do those in the prisoner's cell and I would not have access to the prisoner's cell.

THE COURT:  Are all of you available tomorrow or Friday if we can set it up with the prison with the satellite?

MS. STONE:  Your Honor, this is Sarah Stone, I have a hearing at 8:30 Friday morning in state court on a case that is under execution warrant, so I would not be available Friday morning.

THE COURT:  Who is this now?

MS. STONE:  Sarah Stone for Mr. Basham.

THE COURT:  All right.  How about after lunch on Friday?

MS. STONE:  After lunch on Friday I would be available by phone and Mr. Burke can be with Mr. Basham --

THE COURT:  I'm going to ask the prison if we can do it at 1:30 on Friday afternoon Eastern time.  That doesn't do you any good, though, does it?

MS. STONE:  I may still be in the hearing at that point, Your Honor.

THE COURT:  Three hours difference or two hours?

MS. STONE:  Two hours.

THE COURT:  So, if we said 2 o'clock that will give you until 12 noon, can you finish by 12 noon, do you think?

MS. STONE:  I'm quite confident I will be done by then.

THE COURT:  All right.  I'm going to try to set it up for 2 o'clock on that Friday.  And Ms. Floyd will be back in touch with you about whether we can set it up then.  All right?

MR. BURKE:  Thank you, Your Honor.

THE COURT:  All right, thank you very much.

MR. DALEY:  Thank you, Your Honor.

(Thereupon, the proceedings were adjourned.)

* * * * * * * * * * * * * * * * * * * * * * * * *

CERTIFICATE OF REPORTER

I certify that the foregoing is a correct transcript from my stenographic notes in the above-entitled matter.

s/ Gary N. Smith                    February 7, 2012
_____    _____

Gary N. Smith, CM
Official Court Reporter
United States District Court
District of South Carolina