UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>-v-<br><br>BRANDON LEON BASHAM,<br><br>Defendant. | No. 4:02-992-JFA<br><br>Judge Joseph F. Anderson, Jr.<br><br>Defendant's Opposition to Government's Motion for a Ruling on Waiver of the Attorney-Client Privilege Resulting from Defendant's Motion for Post-Conviction Relief Pursuant to 28 U.S.C. § 2255, and for an Order Requiring Disclosure of Trial and Appellate Counsel's Papers and Files |

Brandon Basham, through undersigned counsel, hereby files his opposition to the Government's Motion for a Ruling on Waiver of the Attorney-Client Privilege Resulting from Defendant's Motion for Post-Conviction Relief Pursuant to 28 U.S.C. § 2255, and for an Order Requiring Disclosure of Trial and Appellate Counsel's Papers and Files ("Attorney-Client Privilege Motion").[1] (Dkt. 1456.) For the reasons set forth below, Mr. Basham opposes the Government's overbroad and legally insupportable request.

---

[1]Mr. Basham notes that, in filing its motion, the Government failed to comply with Local Civil Rule 7.02 (Duty to Consult before Filing any Motion) or Local Criminal Rule 12.02 (Consultation before Filing Motions). Mr. Basham submits that the Government's failure to comply with Local Civil Rule 7.02 is a sufficient basis, standing alone, to warrant denying the Government's motion.

## THE FULKS ORDER

In both its Motion and its Memorandum in Support, the Government reminds the Court that, in the § 2255 proceedings of Mr. Basham's co-defendant, Chadrick Fulks, it issued an order similar to the one the Government now requests. Mr. Basham, however, was not a party to that litigation, and this Court's adjudication of the issue in Mr. Fulks's case, based on the pleadings and argument before it at the time, does not prevent the Court from issuing a more narrowly crafted ruling in this case.[2]

## THE GOVERNMENT'S MOTION

The Government's motion is very specific: it asks this Court to rule that Mr. Basham "has waived the attorney-client privilege by filing his motion for post-conviction relief pursuant to 28 U.S.C. § 2255" and that, as a result, the Court grant

---

[2]In *United States v. Fulks*, Cr. No. 4:02-992-JFA, the Government raised a similar motion concerning waiver of the attorney-client privilege. In *Fulks*, however, the Government justified the broad sweep of its request by arguing that Fulks's claims of ineffective assistance of counsel "encompass[ed] the entire representation" and that "the scope of the waiver should be equally broad." (Dkt. 1227 at 1). Specifically, the Government argued that is was entitled to a wide range of documents because Fulks raised a claim that his counsel was ineffective (and in fact "reckless[]") in advising him to plead guilty. (*Id.* at 11-12). Here, however, Mr. Basham has made no such claim. As Mr. Basham explains later in this pleading, although he has raised several claims of ineffective assistance of counsel, only a handful of those claims implicate the attorney-client privilege. Accordingly, the expansive order the Government seeks is not appropriate in this case.

it access to "all materials relating to Basham's trial and appellate counsel's representation of Basham[.]" Motion at 1. This request is at once both very narrow and overly broad. First, by asking only that this Court rule on the limited issue of whether Mr. Basham has waived "the attorney-client privilege," the Government has not asked the Court to rule on the broader issues of the work product privilege or trial and appellate counsel's professional responsibility obligations to maintain their former client's confidences. Rather, the Government maintains solely that there has been a waiver of the attorney-client privilege, an evidentiary privilege. In that way, its motion is quite narrow.

The motion is overly broad, however, in the audacious scope of its requested relief. Based solely on its assertion that Mr. Basham has waived the evidentiary attorney-client privilege, the Government requests the wholesale production of "all files and records relating to Basham's trial and appellate counsel's representation of Basham." Motion at 1. A review of the Government's Memorandum in Support of its Motion, however, reveals that it cites no case—save perhaps this Court's own prior ruling in Mr. Fulks's case—in which a court has granted a party indiscriminate access to an opponent's attorney's files based solely on waiver of the attorney-client privilege. Such relief is grotesquely disproportionate to the waiver the Government claims occurred in this case, and would be in violation of controlling Fourth Circuit

authority on the issue.

The Fourth Circuit Court of Appeals has observed that the attorney-client privilege generally applies only to "*communications* from a client to his attorney made in confidence and concerning legal advice sought from his attorney." *United States v. Tedder*, 801 F.2d 1437, 1441 (4th Cir. 1986) (emphasis added). More specifically, the attorney-client privilege is defined as follows:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) *the communications* relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or the legal adviser, (8) except the protection be waived.

*Tedder*, 801 F.2d at 1441 (*citing NLRB v. Harvey*, 349 F.2d 900, 904 (4th Cir. 1965) (emphasis added)).

It is beyond question that the "'protection of the [attorney-client] privilege extends only to *communications* . . . .'" *Upjohn Co. v. United States*, 449 U.S. 383, 395 (1981) (*quoting Philadelphia v . Westinghouse Elec. Corp.*, 205 F. Supp. 830, 831 (D.C. Pa. 1962)) (emphasis in original). Moreover, Fourth Circuit authority makes clear that the privilege applies only to communications made "by the client." *Tedder*, 801 F.2d at 1441. Thus, even if this Court finds, as the Government wishes it to, that Mr. Basham has waived his attorney-client privilege with regard to each of his trial and direct appeal attorneys, all this will mean is that the Government is

entitled to know the substance of confidential *communications* Mr. Basham made to his attorneys during the course of his prosecution and appeal. Such a waiver would in no way justify the indiscriminate disclosure of confidential materials that the Government requests in its motion.

### IMPLIED WAIVER OF THE ATTORNEY-CLIENT PRIVILEGE IN THIS CASE

Mr. Basham concedes that, by raising a claim of ineffective assistance of counsel, a criminal defendant can impliedly waive the attorney-client privilege. *See, e.g., United States v. Pinson*, 584 F.3d 972, 978 (10th Cir. 2009). Such a waiver, however, is not categorical. Instead, "the court must impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker v. Woodford*, 331 F.3d 715, 720 (9th Cir. 2003) (en banc); *see also United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010) (relying on the "cogently explained" analysis of *Bittaker*). Accordingly, in adjudicating the Government's motion, the Court must "closely tailor[] the scope of the waiver to the needs of the opposing party *in litigating the claim in question*." *Bittaker*, 331 F.3d at 720 (emphasis added). In other words, this Court must determine the specific subject matter areas for which Mr. Basham has impliedly waived his attorney-client privilege with his various lawyers. To do so, it must closely analyze the particular claims of ineffective assistance of counsel alleged

in Mr. Basham's § 2255 motion to ascertain the precise areas in which his communications with his attorneys are relevant to resolving the claims currently before the Court. *See Kerr v. United States District Court*, 426 U.S.394, 405 (1976) (discussing importance of opportunity for *in camera* review before granting order requiring disclosure of privileged documents). *See also Johnson v. Alabama*, 256 F.3d 1156, 1179 (11th Cir. 2001) ("Although the precise boundaries of the waiver will vary from case to case, and in many instances will require careful evaluation by the district court, there should be no confusion that a habeas petitioner alleging that his counsel made unreasonable strategic decisions waives any claim of privilege over the contents of *communications* with counsel *relevant to assessing the reasonableness of those decisions in the circumstances*.") (emphasis added); *United States v. Jones*, 696 F.2d 1069, 1072 (4th Cir. 1982) (limiting attorney-client privilege to those "communication[s] relat[ing] to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding").

A careful analysis of the ineffective assistance of counsel claims raised in Mr, Basham's § 2255 Motion reveals that very few of those claims concern Mr. Basham's confidential communications with his various defense attorneys. Accordingly, it

6

would be inappropriate for this Court, by judicial ruling, to force an unlimited waiver of Mr. Basham's attorney-client privilege.

Of the thirty-four claims Mr. Basham raises in his § 2255 Motion, twenty-one deal with claims of ineffective assistance of counsel. Of those, one claim, Claim 9, was withdrawn in Mr. Basham's reply to the § 2255 motion filed March 2, 2012. To determine how broad a brush stroke to apply to the implied waiver of attorney-client privilege in this case, the Court must look at the remaining twenty claims to determine to what extent those claims impliedly waive Mr. Basham's ability to protect confidential communications with his attorneys.

Most of the ineffective-assistance claims in Mr. Basham's § 2255 motion deal exclusively with failures on the part of defense counsel that require no waiver of attorney-client privilege to resolve. For example, Claim 30 involves trial attorney Jack Swerling's refusal to turn Mr. Basham's files over to appellate counsel. This failing on trial counsel's part involved no communication between Mr. Basham and counsel that would be appropriate to disclose in the investigation of this claim. The same analysis applies to Claim 14, alleging that Mr. Swerling was hindered by a personal conflict of interest. This claim has nothing to do with privileged communications between Mr. Basham and his attorneys, and the attorney-client privilege is thus not impliedly waived as to this claim.

Claims 2, 15-18, and 23-25 variously involve trial counsel's failures to (1) raise appropriate and timely objections, (2) effectively cross-examine Government witnesses, and (3) move for the admission of exculpatory evidence. Similarly, Claim 21 involves an allegation of ineffective assistance of counsel for failure to move for an order trifurcating Mr. Basham's trial. Even under the Government's theory that these various, alleged failings by trial counsel were in fact strategic choices, no *privileged communications* between Mr. Basham and his counsel could possibly be relevant to the adjudication of these claims. *See, e.g., Hicks v. United States*, 2010 WL 5441679 at *5 (S.D.W.V. 2010) ("When a response to allegations of ineffective assistance of counsel is necessary, the government is often able to rely upon transcripts to refute the claims, and need not contact defense counsel.") Accordingly, the Court cannot properly find that Mr. Basham has impliedly waived the attorney-client privilege as to these claims. *See Bittaker*, 331 F.3d at 720 ("[T]he court must impose a waiver no broader than needed to ensure the fairness of the proceedings . . . [and] closely tailor[] the scope of the waiver to the needs of the opposing party in litigating the claim in question."); *see also In re Lott*, 424 F.3d 446, 454 (6th Cir. 2005) ("Implied waivers are consistently construed narrowly.").

In Claims 5 and 10, respectively, Mr. Basham alleged that his trial counsel rendered ineffective assistance of counsel when they failed to recognize numerous

indications prior to and during trial that Mr. Basham was incompetent and erroneously ignored his request to leave the courtroom. These claims, which concern Mr. Basham's competency to stand trial, primarily involve information already in the Government's possession. For example, prior to trial, this Court ordered defense counsel to disclose to the Government and Government doctors at Butner the very evidence that put counsel on notice of Mr. Basham's serious mental health issues. Further, at trial, the Government was able to observe evidence of Mr. Basham's incompetency, as demonstrated by his behavior in the courtroom.

Mr. Basham disclosed as exhibits to his reply to the § 2255 motion handwritten notes prepared by trial counsel reflecting Mr. Basham's inability to communicate with counsel during trial because of his mental illnesses. (*See* Reply Exhibits 1-5.) To the extent that the disclosure of these notes, which memorialize communications between Mr. Basham and trial counsel, has waived the attorney-client privilege as to Claim 5 or 10, undersigned counsel can provide trial counsel's notes to the Court for *in camera* inspection to determine whether any additional portion of those notes, not already disclosed to the Government, contain information "for which [the Government has] so far shown a true need and without which they may be unfairly prejudiced in their defense." *Greater Newburyport Clamshell Alliance v. Pub. Serv. Co.*, 838 F.2d 13, 22 (1st Cir. 1988). *See also United States v. Zolin*, 491 U.S. 554,

574 (1989) (authorizing district court *in camera* review of documents subject to contested claim of attorney-client privilege).

Claim 9 concerns trial counsel's deficient performance in conceding guilt and death eligibility.  The Government is in possession of all relevant evidence concerning this claim, including on-the-record statements by Mr. Basham and Mr. Swerling about their discussion of Swerling's intention to concede Mr. Basham's guilt.  (Tr. 9/13/04 (Ex Parte Hrg) at 2-3.)  A wholesale disclosure of all of defense counsel's records would in no way further the Government's defense of this claim.

Claim 20 concerns counsel's failure to develop a competent defense team and Claim 27 addresses counsel's failure to adequately investigate rogue juror, Cynthia Wilson.  Again, it is impossible to argue that privileged communications made by Mr. Basham to his trial attorneys could, in any fashion, be relevant to these claims.  Mr. Basham was not involved in the assembling or supervision of the defense team, nor was he involved in the investigation of Ms. Wilson.  There has been no implied waiver of the attorney-client privilege with regard to these claims.

Finally, Claim 19 addresses counsel's failure to investigate and develop mitigating evidence in preparation for the penalty phase of Mr. Basham's trial.  Mr. Basham concedes that, by alleging that his trial attorneys rendered ineffective assistance of counsel in investigating and developing mitigating evidence, he has

waived the attorney-client privilege as to statements he made to his attorneys or their mitigation investigators concerning matters pertinent to mitigation. This waiver, however, is not as broad as the Government would have this Court believe. Rather, to the extent the Court concludes that Mr. Basham has impliedly waived the attorney-client privilege as to Claim 19, the Government would be entitled to know the substance of confidential communications Mr. Basham made to his attorneys that either (a) should have led them to investigate areas of mitigation that they did not, or (b) would have led them to believe that certain areas of mitigation investigation would have been fruitless or were prohibited by Mr. Basham. Because this Court must narrowly tailor that attorney-client privilege waiver to those specific communications that are directly related to the factual basis of the ineffective assistance of counsel claim, this Court cannot grant the Government the unfettered access to the entirety of the defense file that it seeks.

Thus, a careful review of the ineffective-assistance claims raised by Mr. Basham reveals only three claims "for which [the Government has] so far shown a true need and without which they may be unfairly prejudiced in their defense." *Greater Newburyport Clamshell Alliance*, 838 F.2d at 22. Those claims are: Claim 5 (alleging failure to recognize Mr. Basham's incompetence), Claim 10 (alleging ineffective assistance by ignoring Mr. Basham's request to leave the courtroom), and

11

Claim 19 (alleging failure to investigate and develop mitigating evidence). Although Mr. Basham concedes that he impliedly waived his attorney-client privilege as to those three claims, the Government's overreaching request for "all files and records relating to Basham's trial and appellate counsel's representation of Basham," Motion at 1, is in no way "narrowly tailored" to provide the Government the information to which it is entitled.

THE GOVERNMENT'S REQUEST TO INTERVIEW PRIOR COUNSEL

Mr. Basham does not oppose the Government's request to interview prior counsel, provided that Mr. Basham's current counsel are present for any and all interviews. As this pleading demonstrates, Mr. Basham retains the attorney-client privilege as to much of his communications with his prior counsel. In addition, the Government has not asked this Court to rule on the scope of Mr. Basham's work-product privilege in this case, and he intends to assert that privilege to the full, legal extent. To protect Mr. Basham's well-recognized rights under both privileges, Mr. Basham's current counsel must be present at any interview of prior counsel to ensure that the privileges are not violated.

Moreover, aside from the evidentiary privileges by which they are bound, Mr. Basham's prior counsel owe him a broad duty of confidentiality. *See, e.g.*, South Carolina Rule of Professional Responsibility 1.6(a). Although Rule 1.6(b) permits

counsel to reveal confidential information to the extent necessary "to respond to allegations in any proceeding concerning the lawyer's representation of the client," that rule does not permit wholesale or indiscriminate disclosure of confidential information, even when the disclosure occurs in the context of a judicial proceeding. As the Official Comment to Rule 1.6 states: "If the disclosure will be made in connection with a judicial proceeding, the disclosure should be in a manner that limits access to the information to the tribunal or other persons having a need to know it or appropriate protective orders or other arrangements should be sought by the lawyer to the fullest extent practicable." To ensure that his prior attorneys honor their professional responsibility obligations toward him, Mr. Basham has the right to have his current attorneys present for any interviews or communications between the Government and prior counsel.

### THE APPROPRIATE SCOPE OF THE COURT'S POTENTIAL ORDER

The Government has asked this Court to rule only on the narrow question of whether Mr. Basham has waived the attorney-client privilege. Motion at 1, 7. Unlike the Government in its motion, Mr. Basham has provided the Court with a considered analysis of the actual scope of the implied waiver of the attorney-client privilege in this case. This Court must now "impose a waiver no broader than needed to ensure the fairness of the proceedings before it." *Bittaker*, 331 F.3d at 720 ("Because a

13

waiver is required so as to be fair to the opposing side, the rationale only supports a waiver broad enough to serve that purpose.").

Mr. Basham concedes that fairness requires that the Government have access to confidential communications made by him to his attorney relevant to (1) Claim 5 (concerning counsel's failure to recognize Mr. Basham's incompetence); (2) Claim 10 (concerning counsel's failure to respond to Mr. Basham's request to leave the courtroom); and (3) Claim 19 (concerning the investigation and development of mitigating evidence). Plainly, however, wholesale disclosure of all defense files is not "narrowly tailored" to place the Government in a fair position to defend against these claims. Accordingly, Mr. Basham proposes that the Court should order:

(1)    that the Government may depose or interview in the presence of undersigned counsel Mr. Basham's trial attorneys (and where relevant, mitigation investigators) concerning Mr. Basham's confidential statements to them relevant to his competency to stand trial (Claim 5), his request to absent himself from the courtroom during trial (Claim 10), and the investigation and development of mitigating evidence (Claim 19); and

(2)    that undersigned counsel provide to the Court, for *in camera* inspection to determine the scope of the attorney-client waiver, all notes or memoranda created by trial counsel memorializing confidential communications made by

Mr. Basham relevant to Claims 5, 10 and 19.

Moreover, pursuant to the Fourth Circuit's directive in *United States v. Nicholson*, 611 F.3d 191, 217 (4th Cir. 2010), and consistent with the avowals made in the Government's motion (*see* Motion at 8), this Court should issue a protective order prohibiting the Government from using for any purpose other than the current § 2255 litigation privileged information revealed by the above disclosure and depositions or interviews.

### PRELIMINARY ORDER REQUIRED

As Mr. Basham discussed in his § 2255 Motion, an attorney "must deliver to [a] client or former client . . . such originals and copies of other documents possessed by the lawyer relating to the representation as the client or former client reasonably needs." (Dkt. 1394 at 140.)  This rule derives from the fact that a client, not counsel, "owns his file," and therefore counsel, not the client, must "bear the expense of retaining a copy."  *Averill v. Cox*, 761 A.2d 1083, 1092 (N.H. 2000); *see also Resolution Trust Corp. v. H—, P.C.*, 128 F.R.D. 647, 648 (N.D. Tex. 1989) ("[A]ny materials which [former counsel] wish to keep are copied at their own expense.").

In order to effectuate any order this Court may grant in response to the Government's motion concerning waiver of the attorney-client privilege, this Court must first order all of Mr. Basham's prior counsel to turn over the originals of their

15

files in Mr. Basham's case to Mr. Bsaham's current counsel.  The Court should also order that any copies of those files that prior counsel wish to make be made at their own expense.

## CONCLUSION

For the foregoing reasons, Mr. Basham respectfully requests that, with three narrow exceptions, the Court deny the Government's motion for a finding that Mr. Basham has waived his attorney-client privilege.  The three exceptions at issue concern Claims 5, 10 and 19.  With regard to those three claims, Mr. Basham asks that the Court, consistent with controlling Fourth Circuit authority, issue a limited order consistent with the procedures discussed in this pleading.

Respectfully submitted this 12th day of March, 2012.

s/Julia Grace Mimms
Julia Grace Mimms
Law Office of Julia G. Mimms, P.A.
1001 Elizabeth Avenue, Suite 1A
Charlotte, North Carolina 28204
Telephone: (704) 333-1301
Facsimile: (704) 333-1290

s/Michael L. Burke
Michael L. Burke (Arizona Bar No. 013173)
Sarah Stone (Arizona Bar No. 022713)
Assistant Federal Public Defenders
850 West Adams, Suite 201
Phoenix, Arizona 85007
michael_burke@fd.org

sarah_stone@fd.org
Telephone: (602) 382-2818
Facsimile: (602) 889-3960

Attorneys for Defendant
Brandon Leon Basham