IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

UNITED STATES OF AMERICA   )      Cr. No. 4:02-992-JFA
                            )
      v.              )
                            )
BRANDON LEON BASHAM   )
                            )

MEMORANDUM IN REPLY TO PETITIONER'S OPPOSITION TO
THE GOVERNMENT'S MOTION FOR A RULING ON WAIVER OF THE
ATTORNEY-CLIENT PRIVILEGE AND FOR AN ORDER REQUIRING
DISCLOSURE OF COUNSEL'S PAPERS AND FILES

On February 24, 2012, the Government filed a motion and accompanying memorandum requesting this Court to issue (1) an order requiring disclosure of Brandon Basham's trial and appellate counsel's papers and files; (2) a ruling that Basham has waived any attorney-client privilege as to those documents; and (3) an order authorizing Basham's former trial and appellate counsel to speak with Government attorneys about Basham's claims of ineffective assistance of counsel. Dkt # 1456, at 1, 7-8. On March 12, 2012, the Court entered an order granting the Government's motion. Dkt # 1477. The same day, Basham's habeas counsel filed (1) a motion to vacate the Court's order as improvidently granted and (2) a response in opposition to the Government's motion. Dkt # 1480, 1481. The Court vacated its order and directed the Government to file a reply to Basham's response. Dkt # 1482. The Government submits this memorandum as its reply.

## I.     The Scope of the Government's Motion for Disclosure Is Comprehensive.

In its motion for disclosure, the Government requested this Court to "issue an order finding that Defendant, Brandon Leon Basham, has waived the attorney-client privilege by filing his motion for post-conviction relief pursuant to 28 U.S.C. § 2255, and directing Basham's former counsel to disclose to the undersigned counsel a copy of all files and records pertaining to their representation of Basham." Dkt # 1456, at 7. The Government's motion also requested the Court to issue an order authorizing Basham's former trial and appellate counsel to speak with Government attorneys about Basham's claims of ineffective assistance of counsel. Dkt # 1456, at 7-8. Although the Government asked the Court to rule that Basham had waived any attorney-client privilege that might cover the requested information and interviews, the Government did *not* limit its disclosure motion. Rather, the Government moved for an order directing the release of "*all* files and records" pertaining to Basham's representation and for the Court to allow former trial and appellate counsel to speak with Government attorneys about Basham's § 2255 claims.

In their response in opposition, Basham's habeas counsel contend that the Government's motion for disclosure "is at once both very narrow and overly broad." Dkt # 1481, at 3. This characterization is wrong on both counts.

Habeas counsel argue that the Government's motion is narrow because "the

2

Government has not asked the Court to rule on the broader issues of the work product privilege or trial and appellate counsel's professional responsibility obligations to maintain their former client's confidences." Id. It is not the Government's burden, however, to convince the Court that the requested information is not privileged. Instead, the burden falls on Basham, as the proponent of the privilege, to show that the privilege applies. Solis v. Food Employers Labor Relations Ass'n, 644 F.3d 221, 232 (4th Cir. 2011) ("As in the case of attorney-client privilege, the party claiming the protection bears the burden of demonstrating the applicability of the work product doctrine."); N.L.R.B. v. Interbake Foods, LLC, 637 F.3d 492, 501 (4th Cir. 2011) ("A party asserting privilege has the burden of demonstrating its applicability."). Although the Government did more than was required of it in asking the Court to rule on whether Basham has waived the attorney-client privilege, the Government did not concede or suggest that other information possessed by Basham's former attorneys is covered by any other privilege. The Government requested access to "all materials" and "all files and records" pertaining to Basham's representation, and the Government's request to talk to Basham's former counsel was not limited to subjects covered by the attorney-client privilege. Dkt # 1456, at 1, 7-8.

Habeas counsel contend that the Government's motion is "audacious" in scope and "grotesquely disproportionate to the waiver the Government claims occurred in

3

this case[.]" Dkt # 1481, at 3.  Though colorful, this portrayal fails to recognize that the Government's motion must be comprehensive because the spectrum of claims raised in Basham's § 2255 motion is correspondingly broad.  Habeas counsel note that in Fulks the Government asked for a wide range of information because Fulks's "claims of ineffective assistance of counsel 'encompass[ed] the entire representation.'" Dkt #1481, at 2 n.2.  The Government has made the same argument here.  In its disclosure motion, the Government pointed out that "Basham's claims [of ineffective assistance of counsel] are numerous and broad"; the Government then listed the many claims Basham has raised against both trial and appellate counsel. Dkt # 1456, at 4-6.   The Government further emphasized that Basham's claims "reach nearly every part of his trial" and span "the course of extended pre-trial, trial and sentencing phases[.]"  Dkt # 1456, at 6-7.  Accordingly, the Government has argued that "a review of counsel's files and  records, and interviews with counsel must be broad in scope." Dkt # 1456, at 6.

To be clear, the Government has not restricted its disclosure request to documents or information covered by the attorney-client privilege.  Nor has the Government conceded that the work product privilege or any other privilege protects counsel's files in this § 2255 proceeding.  The Government has asked for comprehensive discovery of Basham's counsel's files and to interview former counsel on the wide range of claims in the § 2255 motion due to the wide-ranging nature of

4

Basham's claims. To the extent that habeas counsel have raised the work product privilege as a defense to the Government's disclosure motion, the Government will now show that the privilege does not apply and that full disclosure of counsel's files and interviews of former counsel are necessary for a fair and just adjudication of Basham's claims.

## II.    The Scope of Basham's Waiver of the Work Product Privilege is Comprehensive.

In its memorandum in support of its motion for disclosure, the Government explained how Basham has made the broadest of allegations of ineffective assistance on the part of his trial and appellate attorneys. Dkt # 1456, at 4-6. The Government also indicated that a comprehensive review of Basham's counsel's files is necessary to respond to these allegations. Id. In their response, habeas counsel have spilled much ink contending that most of Basham's § 2255 claims do not involve communications between Basham and his attorneys and, therefore, are not covered by any waiver of the attorney-client privilege. Dkt # 1481, at 3-12. As explained above, however, the Government has not limited its motion to attorney-client communications. Although habeas counsel announce their intention to invoke the work product privilege "to the full, legal extent," Dkt # 1481, at 12, they do not offer further explanation or argument on why the privilege applies to the trial and appeal files in this context. To the extent that habeas counsel have raised the work product

privilege as to Basham's counsel's files and interviews of former counsel, the privilege does not apply because Basham has waived it.  Basham has waived the work product privilege by making broad claims of ineffective assistance of counsel and by intentionally releasing to the Government selected parts of the files.

A.     Basham has waived the work product privilege due to the scope of his claims of ineffective assistance of counsel.

Basham's § 2255 motion encompasses claims of ineffective assistance of counsel from the pretrial stage of his case all the way through the appeal.  By alleging that his trial and appellate attorneys rendered deficient performance in so many aspects of his case, Basham has waived any work-product or other privilege he may have as to counsel's files.  Those files and interviews of former counsel are the only source of information regarding many of the claims Basham has raised, and the Government needs to review the files and interview counsel to address these claims.

1.     A § 2255 petitioner waives the work product privilege to the extent that review of the work product is necessary to respond to petitioner's claims of ineffective assistance of counsel.

"It has long been the rule in the federal courts that, where a habeas petitioner raises a claim of ineffective assistance of counsel, he waives the attorney-client privilege as to all communications with his allegedly ineffective lawyer."  Bittaker v. Woodford, 331 F.3d 715, 716 (9th Cir. 2003) (*en banc*); see also Dunlap v. United States, 2011 WL 2693915, at *2 (D.S.C. 2011) (Harwell, J.) (citing cases for same

6

proposition).  This rule "applies equally to the work product privilege[.]"  Bittaker, 331 F.3d at 722 n.6; see also Alvarez v. Woodford, 81 F. App'x 119, 120 (9th Cir. 2003) (unpublished) ("As to the work product doctrine, we explained in Bittaker that the same concerns that dictate waiver of the attorney-client privilege by a habeas petitioner raising an ineffectiveness claim also dictate the waiver of the work product protection."); United States v. Paiz, 2010 WL 5399216, at *8 (N.D. Cal. 2010)(having asserted her claim of ineffective assistance of counsel, petitioner has impliedly waived her work product privilege, just as she has the true attorney-client privilege). The scope of the waiver, however, should not exceed "what is needed to litigate the claim of ineffective assistance of counsel in federal court.  A waiver that limits the use of privileged communications to adjudicating the ineffective assistance of counsel claim fully serves federal interests."  Bittaker, 331 F.3d at 722.

> 2.    The Government needs to review all of trial and appellate counsel's files to litigate Basham's claims of ineffective assistance.

As will be discussed in more detail below, Basham's claims of ineffective assistance are so sweeping that the Government must review the entire trial and appeal files to prepare an adequate response.  Also, the Government must be able to interview trial and appellate counsel about all of Basham's claims.

"[T]o ensure the fairness of the proceedings before it," a court ruling on the scope of an attorney-client or work-product waiver must impose a waiver broad

7

enough "to be fair to the opposing side" but "no broader than needed." Bittaker, 331 F.3d at 720. Thus, it is appropriate for courts to protect privileged information by limiting review to matters relevant to the habeas petitioner's claims. Id. at 720-21; see, e.g., United States v. Garcia, 2010 WL 144860, at *3-5 (E.D.Cal. 2010) (authorizing an affidavit from former counsel but denying comprehensive review of petitioner's counsel's files where petitioner raised three discrete claims of relief regarding a failure to file a suppression motion, failure to acquire an interpreter, and failure to advise petitioner of alternatives to trial); Mason v. Mitchell, 293 F.Supp.2d 819, 829 (N.D.Ohio 2003) (ineffective assistance of counsel claim limited to penalty phase and respondent therefore precluded from obtaining documents from trial counsel's files relating to the guilt phase of petitioner's trial).

Habeas counsel fault the Government for citing "no case—save perhaps this Court's own prior ruling in Mr. Fulks's case—in which a court has granted a party indiscriminate access to an opponent's attorney's files based solely on waiver of the attorney-client privilege." Dkt # 1481, at 3. Again, the Government's request is not "based solely" on Basham's waiver; it is based on the scope of Basham's claims. And although habeas counsel seem to dismiss or discount the precedential value of this Court's similar order in Fulks, that order does in fact serve as precedent in this district for a disclosure order that was issued under similar circumstances — an exhaustive § 2255 petition brought by a capital defendant who raised numerous claims of

ineffective assistance of trial and appellate counsel.  See United States v. Fulks, Case No. 4:02-cr-00992-JFA, Dkt # 1222, at 6-8.  In that order, this Court ruled that Government counsel must be afforded the ability to interview the petitioner's former counsel about claims of ineffective assistance, and that judicial economy and efficiency would be well-served by ordering document production in advance of the § 2255 hearing.  Id. at 7.  Habeas counsel have not cited (and the Government has not found) a similar case in which a district court denied review of counsel's files in the face of such a wide-ranging § 2255 petition.

Instead of taking issue with a few discrete decisions by his former attorneys, Basham has challenged the performance of his trial and appellate counsel at nearly every stage of the proceedings.  To respond to these allegations, it is important for the Government to review the full trial and appellate files.

For example, Basham claims that trial attorney Jack Swerling had a conflict of interest in representing Basham because Swerling was himself the victim of a robbery and kidnapping (Claim 14).  Basham contends that Swerling's status as a victim and witness in his kidnapper's criminal trial hindered him from zealously advocating Basham's interests — such as distracting him from preparing adequately for the Jackson v. Denno hearing.  See Dkt # 1464, at 77-84.  But this is not merely a claim that Swerling's conflict of interest caused him to perform deficiently at the Jackson v. Denno hearing; Basham has challenged his attorneys' performance in that regard

in other claims in his petition. Rather, Basham makes the much broader claim that Swerling was ineffective *per se* because he suffered from a fundamental conflict of interest. A review of trial counsel's files would shed light on the overall time and attention Swerling actually devoted to Basham's case.

In another claim, Basham alleges that his trial counsel should have recognized that he was incompetent to stand trial; he specifically claims that there were "numerous indications" of his incompetency "prior to and during trial" (Claim 5). Dkt # 1464, at 40. A review of counsel's files is needed to respond to Basham's contention that "his defense attorneys were aware that he was unable to communicate with them about his case in a rational manner." Dkt # 1464, at 44. To address this claim, the Government needs to interview counsel and review their notes and records concerning their conversations with and observations of Basham.

In Claim 9, Basham argues that his trial attorneys lacked a reasonable strategy in conceding all of the elements against him except for the intent to cause death or serious bodily harm. Dkt # 1464, at 51. In making this claim, Basham contends that trial counsel's fundamental theory of the case lacked any merit. To formulate a meaningful response to this claim, the Government needs to talk to trial counsel about their trial strategy and must review the information counsel had at that time. No doubt, a review of counsel's files will likely include emails, memos, handwritten notes and other communications that would bear directly on this issue.

10

Similarly, the Government needs to review trial counsel's work product and interview former counsel to address Basham's claims that his attorneys had no reasonable strategy in:

- permitting him to speak with law enforcement officers while Basham was supposedly assisting law enforcement in locating Alice Donovan's body on Thanksgiving Day 2002 (Claim 1);

- failing to prepare for or litigate effectively the Jackson v. Denno hearing (Claim 2);

- ignoring Basham's requests to leave the courtroom (Claim 10);

- failing to argue that Basham's statements to law enforcement were involuntary (Claim 13);

- failing to object to prior act evidence (Claim 15);

- failing to move for the admission of statements made by Government counsel in the Fulks trial (Claim 16);

- failing to cross-examine Clifford Jay effectively or to call witnesses to rebut his testimony (Claim 17);

- failing to cross-examine Sheriff Hewett effectively (Claim 18);

- failing to request that the Court trifurcate Basham's trial (Claim 21);

- failing to object to the Government's use of allegedly inconsistent trial theories (Claim 23);

- failing to object to the Government's closing argument (Claim 24);

- failing to object to the Court's jury instructions (Claims 25 and 26);

- failing to investigate statements made by juror Cynthia Wilson (Claim 27).

11

Basham makes still other claims that his attorneys were ineffective, claims that necessitate review of counsel's work product and interviewing counsel. In Claim 19, Basham contends that his trial attorneys failed in their investigation, development, and presentation of mitigating evidence at sentencing. Dkt # 1464, at 106. It is impossible to respond to this allegation without talking to counsel about this issue and reviewing their files to see what investigations they conducted and what mitigating evidence they considered. Likewise, in Claim 20, Basham argues that trial counsel failed to assemble or supervise a competent defense team; specifically, he contends that counsel were ineffective in their selection and supervision of investigator Carlisle McNair and mitigation specialist Paige Tarr. Dkt # 1464, at 113. Again, the Government cannot respond to this allegation without resort to trial counsel's work product, including background information on these (and any other) defense team members, communications with and about these defense team members, and reports generated by these defense team members. Review of counsel's files and interviews with former counsel will reveal the scope and extent of the defense efforts in investigating and preparing a defense in the guilt and sentencing phases of Basham's trial.

Basham also contends that his attorneys failed him on appeal. He argues that Jack Swerling failed to turn over documents to the appellate lawyers (Claim 30). Dkt # 176. This claim calls for review of communications and documents passed between

12

the trial and appellate teams.  And Basham contends that his appellate lawyers failed to raise important issues on appeal (Claims 3, 7, 12, 15, 23, 24, 25, 26), claims that call for review of the appellate file to determine what issues Basham's attorneys considered and what research and preparation they conducted.[1]

In summary, this is not a case involving only a few discrete claims which can be addressed by consulting isolated portions of the attorneys' files.  Instead, Basham has raised many wide-ranging claims of ineffective assistance on the part of his trial and appellate attorneys.  The alleged ineffective assistance spans every part of Basham's case, from the pretrial stage through jury selection and the guilt and sentencing phases of trial and ending with claims regarding the handling of his appeal.  Meaningful litigation of Basham's claims cannot happen unless the Government is able to review all the attorneys' files and interview former counsel. A disclosure order like the one this Court entered in the Fulks case is appropriate.

B.     Basham has waived the work product privilege under Federal Rule of Evidence 502 by intentionally disclosing portions of trial and appellate counsel's files.

In addition to waiving the work product privilege by bringing sweeping claims of ineffective assistance of counsel, Basham has waived the privilege by intentionally disclosing significant portions of counsel's files to the Government in this

---

[1]There is no doubt that such documents exist.  For example, Basham has attached to his reply one research memorandum (Exhibit 6) prepared by appellate counsel.

proceeding. Habeas counsel have attached 31 exhibits to their reply in opposition to the Government's disclosure motion. See Dkt # 1464-1. A majority of these exhibits consist of defense materials that would otherwise be potentially privileged as attorney work product. Six of these exhibits consist of handwritten notes by Jack Swerling (Exhibits 1-5, 10). Another seven exhibits consist of e-mails about Basham's case authored by Jack Swerling or Melissa A. Meister, an attorney with Basham's appellate team (Exhibits 14, 25-27, 29-31). Exhibit 6 consists of an internal memorandum authored by Erik Haren, another member of Basham's appellate team. Exhibit 9 consists of hourly worksheets documenting Jack Swerling's time spent on Basham's case in January and February of 2004. Exhibits 21 and 22 are memoranda authored by defense investigator Carlisle McNair, while Exhibit 23 is an e-mail written by McNair. Habeas counsel cannot cherry-pick portions of counsel's files to support Basham's claims and then invoke the work-product privilege when the Government requests to see the files in their entirety. See generally In re Lott, 424 F.3d 446, 453 (6th Cir. 2005) ("[T]he attorney-client privilege cannot at once be used as a shield and a sword.").

Federal Rule of Evidence 502(a) provides that when a "disclosure is made in a federal proceeding . . . and waives the attorney-client privilege or work-product protection, the waiver extends to an undisclosed communication or information in a federal or state proceeding only if: (1) the waiver is intentional; (2) the disclosed and

14

undisclosed communications or information concern the same subject matter; and (3) they ought in fairness to be considered together.

Under Rule 502(a), Basham's habeas counsel have waived any privilege as to the undisclosed portions of former counsel's files. First, the waiver of the disclosed documents was clearly intentional, as habeas counsel invited the Court to consider those materials as exhibits in support of Basham's claims. Second, the disclosed and undisclosed portions of counsel's files concern the same subject matter: Basham's representation by his trial and appellate attorneys. Third, the disclosed and undisclosed portions of counsel's files ought in fairness to be considered together. Without seeing all of counsel's files in context, it is impossible to determine if the exhibits submitted by habeas counsel accurately reflect the work that Basham's attorneys did.

The following are several examples of how review of the entire file will help put Basham's exhibits in context. As part of their claim that trial counsel should have recognized that Basham was incompetent to stand trial, habeas counsel cite Jack Swerling's handwritten observations of Basham's behavior and demeanor. Dkt # 1464, at 31, 33, 70 (citing Exhibits 1, 2, 10). Just as habeas counsel cite these notes to support their argument that Basham's deficiencies should have been obvious, Swerling's file may contain other notes demonstrating Basham's competency. As part of their claim that trial counsel had a conflict of interest and failed to prepare for

the Jackson v. Denno hearing, counsel submit excerpts of Jack Swerling's time worksheets. Dkt # 1464, at 81 (citing Exhibit 9). The rest of Swerling's worksheets may indicate that he in fact spent considerable time researching and preparing for Basham's case. Habeas counsel represent that Swerling's e-mail to a federal trials listserve is the "only evidence" that he "gave any thought to the upcoming *Jackson* hearing," Dkt # 1464, at 83 (citing Exhibit 13), but a full and fair litigation of this issue cannot rest solely on habeas counsel's assessment of the file. Likewise, habeas counsel cite selected memoranda from appellate counsel, documents authored by investigator Carlisle McNair, and correspondence between Swerling and appellate counsel to show that these members of Basham's team failed in their duties. See, e.g., Dkt # 1464, at 49, 120-21, 177, 180. The Government is entitled to review the full file in its preparation for the § 2255 hearing so the Court can be presented with all pertinent information regarding these claims.

Habeas counsel suggest that to the extent that disclosure of Jack Swerling's notes has waived the privilege attached to those documents, counsel "can provide trial counsel's notes to the Court for *in camera* inspection to determine whether any additional portion of those notes, not already disclosed to the Government, contain information 'for which [the Government has] so far shown a true need and without which they may be unfairly prejudiced in their defense.'" Dkt # 1481, at 9 (quoting Greater Newburyport Clamshell Alliance v. Pub. Serv. Co., 838 F.2d 13, 22 (1st Cir.

16

1988)).

Habeas counsel's offer of *in camera* inspection does not address the comprehensive waiver they have made regarding trial and appellate counsel's files. As explained above, Basham has waived the attorney-client and work-product privileges as to the entire file, not just Jack Swerling's notes. Moreover, an *in camera* review of the file would be impractical and would not preserve the Government's ability to respond to Basham's claims. As habeas counsel note, Swerling's trial file alone "encompass[es] 77 boxes of materials[.]" Dkt # 1464, at 179 n.19.[2] Habeas counsel further note that "[e]ven a cursory review of the file" in Swerling's office "took five days." Id. Habeas counsel claim that Swerling hindered Basham's appellate attorneys in their preparation because Melissa Meister "was afforded only one day to conduct a similar review and was able to cull only two boxes of documents . . . evidence that Swerling's obfuscation rendered Mr. Basham's appellate attorneys ineffective." Id. If lack of access to the trial file rendered Basham's appellate attorneys ineffective, it is difficult to understand how habeas counsel expect the Government to prepare for the § 2255 hearing without access to the file. Furthermore, habeas counsel cannot expect this Court to spend an extraordinary amount of time sifting through the voluminous material looking for documents that

---

[2]There is no doubt that other trial counsel and appellate counsel's files and documents will also consist of voluminous material, too.

might be relevant to Basham's claims. Because Basham has waived any privilege attached to his former counsel's files, the more efficient and just course is to allow the Government to conduct a comprehensive review of the files in defending Basham's conviction and sentence.

### III.  The Government Agrees That a Protective Order Is Appropriate.

When requiring disclosure of counsel's files in habeas proceedings, courts may enter protective orders preventing the Government from using the disclosed information for any purpose other than responding to the petition. See Bittaker, 331 F.3d at 721-28. The Government submits that this Court can craft a protective order that will sufficiently protect counsel's files from being used for any purpose other than the Government's response to Basham's § 2255 petition.

The Government will not go into any discussions with trial counsel regarding matters that are not subject to attack in Basham's § 2255 petition. Additionally, the Government will not make use of any of trial counsel's documents that do not relate to any of Basham's §2255 claims. See United States v. Nicholson, 611 F.3d 191, 217 (4th Cir. 2010). Furthermore, the Assistant United States Attorneys who receive access to this information will not be involved in subsequent litigation should Basham prevail on his claims. It is clear that other courts have found such assurances to be sufficient. See e.g., Bittaker, 331 F.3d at 727-28 ("We are comforted in our conclusion by the fact that the parties have failed to bring to our attention—and we

have been unable to find—very many cases where the prosecution has even attempted

to use privileged information obtained as a result of federal discovery procedures in

a defendant's retrial. . . . Fortunately, district courts have ample tools at their disposal

to ensure compliance with any limitations they impose on the dissemination of

confidential materials."); Wharton v. Calderon, 127 F.3d 1201, 1206 (9th Cir. 1997)

(noting "there is no evidence here that the [government] attorneys would seek to

induce [Petitioner's] former attorneys to violate their ethical duties to [the petitioner]

during the proposed interviews").

Accordingly, the Government respectfully requests that this Court rule that (1)

any attorney-client, work-product, or other privilege[3] has been waived to the extent

---

[3]Habeas counsel indicate that "aside from the evidentiary privileges by which they are bound, Mr. Basham's prior counsel owe him a broad duty of confidentiality." Dkt # 1481, at 12. Habeas counsel suggest that Basham has the right to have his current attorneys enforce the professional responsibility obligations of Basham's former counsel. Dkt # 1481, at 13. As an initial matter, the Government submits that Basham's former counsel will independently honor their professional obligations, and habeas counsel have no authority to instruct or monitor former counsel as to those obligations. Moreover, habeas counsel concede that Rule 1.6(b) of the South Carolina Rules of Professional Responsibility permits an attorney to reveal confidential information to the extent necessary "to respond to allegations in any proceeding concerning the lawyer's representation of the client[.]" Dkt # 1481, at 12-13. As detailed at length in this memorandum, Basham's claims of ineffective assistance make it necessary for his former attorneys to provide information regarding those claims, and the Government will take steps to ensure that the information will be used only in response to those claims. Thus, the Government asks this Court to authorize Basham's former counsel to make themselves and their files available for interviews and inspection, respectively.

Basham has asserted that his trial and appellate counsel were ineffective, (2) the Government may interview Basham's trial and appellate attorneys regarding the allegations set forth in Basham's Motion to Vacate pursuant to 28 U.S.C. § 2255, and (3) the Government may inspect and copy the files of trial and appellate counsel *provided* that the Government will not be allowed to make use of any documents or information that do not relate to any of Basham's § 2255 claims; the Government will not use the disclosed information for any purpose other than responding to the petition; and the Assistant United States Attorneys who receive access to this information will not be involved in subsequent litigation should Basham prevail on his claims.

<div style="margin-left:45%">

Respectfully submitted,

William N. Nettles
United States Attorney

s/Robert F. Daley, Jr.
Robert F. Daley, Jr. (ID No. 6460)
Jimmie Ewing (ID No. 7292)
Jeffrey Mikell Johnson (ID No. 10587)
William K. Witherspoon (ID No. 5945)
Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, South Carolina  29201
(803) 929-3114

</div>

March 19, 2012