IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| UNITED STATES OF AMERICA | ) | CR No.: 4:02-992-JFA |
|---|---|---|
| | ) | |
| v. | ) | ORDER REGARDING |
| | ) | PETITIONER'S |
| BRANDON LEON BASHAM | ) | COMPETENCY |
| | ) | |
| _____ | ) | |

This is an action initiated by Brandon Basham pursuant to 28 U.S.C. § 2255, asserting various challenges to his conviction and death sentence rendered by a jury following a trial in 2004. After several postponements and interlocutory appeals, the case was set for an evidentiary hearing beginning on Tuesday, October 9, 2012.

The petitioner is currently housed at the Federal Correctional Institution at Terre Haute, Indiana. He has a history of scuffles with guards who have accompanied him to various hearings in this court. Because of this and because the court was not convinced that his physical presence at the evidentiary hearing to assist his attorneys was needed, the court made arrangements to have Mr. Basham participate in the hearing by way a satellite conference. These arrangements were as follows: Mr. Basham was placed in a room with a satellite hookup at Terre Haute, and one of the attorneys assisting the defense team in this case was allowed to sit at a table with him. The guard who brought Mr. Basham into the room exited the room, and a telephone hookup was provided so that Mr. Basham or his remotely located defense counsel could communicate with Mr. Basham's attorneys in the courtroom in Columbia, South Carolina.

1

At the commencement of the hearing, Mr. Ken Murray requested the court's permission to authorize the guards to remove handcuffs from Mr. Basham so that he could assist by taking notes. After conferring with the security guard, the court granted this request.

Upon returning from the first lunch break on October 9, 2012, the court was informed by authorities at the Terre Haute Penitentiary that Mr. Basham had gotten into a fight with the guards who were escorting him out of the teleconference room and that as a result of the scuffle, two guards were injured and a third guard suffered bite marks.[1]

This episode prompted the court, *sua sponte*, to question the petitioner's competency to proceed. The court took a recess to confer with Dr. George Parker, a forensic psychiatrist who had examined Mr. Basham at the court's request approximately one year ago when Mr. Basham made a now-aborted attempt to drop his appeals and proceed to execution. Dr. Parker was able to rearrange his schedule to examine Mr. Basham on short notice. Having already reviewed all of Mr. Basham's medical records in connection with his earlier examination of Mr. Basham, Dr. Parker indicated that he would be able to travel from his office in Indianapolis, Indiana to the Terre Haute Penitentiary the following day, conduct an examination of Mr. Basham, and be available to testify by satellite on his findings.

When the court announced that it intended to adjourn the hearing until Dr. Parker could examine Mr. Basham, defense counsel indicated to the court that their retained expert, Dr. Thomas Hyde, a neuropsychiatrist, would be available to testify regarding the petitioner's

---

[1] It is not clear at this point whether Mr. Basham's handcuffs had been restored prior to the altercation described above.

2

competency by way of a telephone conference call. Counsel had earlier indicated to the court that Dr.Hyde would not be available for the October 9, 2012 hearing and instead would be available for a resumption of the hearing currently scheduled for December 3, 2012.

In summary, Dr. Parker reiterated and confirmed his earlier opinion that Mr. Basham is competent to proceed in this action and to assist his attorneys, and Dr. Hyde offered a contrary opinion. After hearing from both experts, the court determined that Basham was competent to proceed and the hearing was resumed. This order shall serve to memorialize the court's findings and order regarding the petitioner's competency.

*Legal Standard*

"The test for determining competency is whether a defendant 'has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . and whether he has a rational as well as a factual understanding of the proceedings against him.'" *Walton v. Angelone*, 321 F.3d 442, 459 (4th Cir. 2003) (quoting *Dusky v. United States*, 362 U.S. 402, 402 (1960)).[2]

*Dr. Parker's Testimony*

When this court asked Dr. Parker to evaluate Mr. Basham last year, Dr. Parker issued a thirteen-page report dated December 4, 2011 detailing the petitioner's history as well as Dr. Parker's own diagnosis and competence assessment of Mr. Basham. Dr. Parker found that

---

[2] The Supreme Court currently has under advisement the question of whether a state habeas corpus petitioner must be competent in order for an evidentiary hearing to go forward. *Tibbals v. Carter*, 644 F.3d 329 (6th Cir. 2011), *cert. granted*, 132 S. Ct. 1738 (Mar. 19, 2012) (No. 11-218); *Ryan v. Gonzales*, 623 F.3d 1242 (9th Cir. 2010), *cert. granted*, 132 S. Ct. 1738 (Mar. 19, 2012) (No. 10-930). For this case, the court has assumed that competence is a necessary precondition to a federal § 2255 petition hearing.

Mr. Basham has the following psychiatric issues: attention deficit hyperactivity disorder (ADHD); history of oppositional defiant disorder (ODD); history of conduct disorder; antisocial personality disorder; borderline intellectual functioning; cannabis dependence, in remission in a controlled environment; inhalant abuse, in remission in a controlled environment; and cocaine dependence, in remission in a controlled environment. In his report, Dr. Parker noted Mr. Basham's "history of lying or conning others in order to benefit himself," and he further noted Mr. Basham's "history of impulsive behavior . . ., which was of course strongly related to his ADHD." (ECF No. 1423, p. 10). Dr. Parker gave particular attention to past diagnoses by other professionals of the petitioner as having bipolar disorder or schizoaffective disorder, finding that although Mr. Basham has a history of unstable mood and problems with quick anger, these characteristics "do not suffice to make a diagnosis of bipolar disorder, particularly when the unstable mood and irritability can be explained by other conditions, such as ADHD, ODD, conduct disorder, antipersonality disorder, or addictions." (ECF No. 1423, p. 11). Dr. Parker's conclusion after evaluating Mr. Basham was that he was competent to withdraw his appeals (which was the issue before this court at the time Dr. Parker issued his opinion).

Dr. Parker met with Mr. Basham for about an hour on October 10, 2012 (the day after his scuffle with the Terre Haute guards) to evaluate his competency for purposes of the § 2255 hearing. Dr. Parker first confirmed the diagnostic impression that he gave in his December 4th report, opining that "[t]he primary clinical picture now is that of ADHD, along

4

with the antisocial personality disorder that accompanies it."[3] Dr. Parker went on to explain that although Mr. Basham does well with his normal routine at Terre Haute, events like court hearings or visits from lawyers or family are stimulating, and these events "bring[] to the surface essentially all of his ADHD symptoms." Dr. Parker explained that the stimulation of the hearing the morning of October 9, 2012 overwhelmed and frustrated Mr. Basham, and, as a result, "he was easily set off and asserted himself into a discussion that he didn't need to, which is pretty classic for ADHD and antisocial personality." Despite the stimulation of the § 2255 hearing, Dr. Parker found Mr. Basham "competent to proceed."

As to Basham's ability to consult with his lawyers, Dr. Parker explained that the relationship between Mr. Basham and his counsel is "a little bit more complicated than one would expect because Mr. Basham has made requests that his counsel have opposed."[4] However, Dr. Parker indicated that the petitioner is capable of consulting with his attorneys, and, in fact,

> [h]e might communicate rather more than the attorneys are ready to handle . . . . Because he has relatively low impulse control, he's going to want to talk when he wants to talk. . . . But to my mind [symptoms resulting from ADHD and antisocial personality] do not prevent a person from assisting one's attorney or understanding what's going on. It just makes it more difficult . . . .

On the issue of how well Basham understands the § 2255 proceeding, Dr. Parker

---

[3] The full official transcript of the § 2255 hearing is not yet available. The court has obtained rough transcripts from the hearing to provide quotations for this order. Though substantially correct, these quotations from the rough transcripts may vary slightly from the official transcripts that will eventually be filed.

[4] There appears to be a strong disagreement between Mr. Basham and his current counsel over whether he should drop all appeals in his case.

5

stated that "Mr. Basham does not understand the nuances of this litigation." Dr. Parker pointed out that "Because of [Basham's] ADHD, he has trouble following court proceedings because to him they are immaterial and boring. . . . [A]s a result he's prone to being confused about events that have taken place." Though the court already denied Mr. Basham's request to drop his appeals after he expressed some hesitancy on the matter, Mr. Basham expressed a desire to waive his appeals to Dr. Parker. According to Dr. Parker, Mr. Basham seemed to understand that "the judge had turned down the request to waive the appeals. And so he's now made at the judge and is working with his attorneys in part to make Judge Anderson's life difficult with filling up his basket with appeals." When asked by the government whether Mr. Basham "understands it's more than just waiving his appeals in this case, correct," Dr. Parker responded, "He understands that's the heart of the current proceedings regarding his appeals. I don't know that he knows more than that at this point in time."

As previously stated, Dr. Parker found Mr. Basham competent to participate in the § 2255 hearing, stating "He may be difficult to deal with, but he's not incompetent." In order to decrease Mr. Basham's frustration, Dr. Parker suggested taking the § 2255 proceedings in small parts, speculating that "breaks somewhere every 20 to 30 minutes would probably be about as long as he could handle at any one time." On the issue of different medication for the petitioner, Dr. Parker testified that "there are medications for ADHD, [but] those are rarely prescribed in correctional settings because they are almost all stimulants and those have a high abuse potential and so they are not used in prisons or jails." Dr. Parker opined that Mr. Basham was receiving adequate care at Terre Haute and that a medical facility was

not really appropriate for his conditions, as such facilities are reserved for mental illnesses like schizophrenia or bad bipolar disorder.

## *Dr. Hyde's Testimony*

The court did not have the benefit of Dr. Hyde's written report for the competency hearing, as he is scheduled to testify during the second part of the § 2255 hearing in December, and he had not yet composed his written report at the time of the impromptu competency hearing. Nevertheless, the court was able to get an understanding of Dr. Hyde's diagnostic impression of Mr. Basham based on the questioning from counsel and from the court. Dr. Hyde testified that it is his belief that Mr. Basham is "incompetent on the basis of both neurological and psychiatric problems." According to Dr. Hyde,

> Basham suffers from . . . static encephalopathy, which basically is a generic term [that] means he's brain damaged and that brain damage is of significant proportion. The brain damage manifests itself both in neurological findings, cognitive impairment, and behavioral abnormalities . . . .

Dr. Hyde believes that Mr. Basham's brain damage is irreversible but manageable with appropriate medications and therapy. Dr. Hyde further opined that Mr. Basham "has psychiatric problems which compound his brain damage from his neurological issues. On a psychiatric basis he has a mood disorder, [and is] clearly suffering from bipolar disorder with psychotic features at times."

On the issue of medication, Dr. Hyde expressed his belief that Mr. Basham is grossly under-medicated. Dr. Hyde attributed the scuffle between Mr. Basham and the guards, in part, to that under-medication though he also stressed that the petitioner needs therapy or counseling in addition to increased medication.

Similar to Dr. Parker's findings, Dr. Hyde believes that Mr. Basham "has a limited mental capacity, he gets frustrated very easily, he's confused very easily, especially around complex legal proceedings." However, unlike Dr. Parker, Dr. Hyde concluded that Mr. Basham's "behavior is classic for a disinhibited individual suffering from bipolar disorder with concurrent brain damage, and his behavioral outbursts in a setting of great stress, like court proceedings, that he cannot process and understand is almost to be expected, especially when he is unmedicated or under-medicated . . . ."

*The Court's Discussion with Mr. Basham*

Based on the testimony of Dr. Parker and Dr. Hyde, the court decided to speak with Mr. Basham regarding the nature of the § 2255 proceedings. After briefly summarizing the petitioner's previous attempt to drop his appeals, the court explained,

> [T]he issue of whether you can drop your appeals has come and gone. What we are here to look at today is the petition filed by your court appointed counsel raising a total of 34 errors that they say occurred in your trial. They have withdrawn two of those claims so we're now down to 32 claims of error, and I'm supposed to hear evidence on those claims and then determine whether any error occurred and, if so, whether a new trial should be ordered.

The court stressed to Mr. Basham that it wanted to be sure that he understood why everyone was convened for the § 2255 hearing. In response, Mr. Basham launched into an explanation about his earlier attempt to drop his appeals. He told the court that in his earlier attempt to drop his appeals he wavered in his position after his attorneys asked him if he would still want to be executed if he could see his family and if he could be on different medication. The court then stopped Mr. Basham to inform him that everything he was saying was being taken down by a court reporter and to inform him that Mr. Basham's presence at the § 2255

proceeding was not required. At that point, Mr. Basham expressed a desire to exit, and he did so.

*Conclusion*

After reviewing the testimony of both doctors and reflecting on the behavior that this court has witnessed during both Mr. Basham's death penalty trial and his § 2255 hearing and after considering the legal standard for competency, this court concludes that Mr. Basham is competent. The court is well aware of the petitioner's mental and behavioral issues; however, the court is persuaded by Dr. Parker's opinion that Mr. Basham is competent. In the court's own colloquy with Mr. Basham, he was able to articulate the reason that he wavered in his earlier attempt to drop his appeals. This court finds that Basham is capable of consulting with his lawyers and that he understands the nature of these proceedings even if it is only a simple understanding of the complex legal proceeding now going on. Thus, Mr. Basham is competent to proceed with this § 2255 hearing.

IT IS SO ORDERED.

November 5, 2012  
Columbia, South Carolina

Joseph F. Anderson, Jr.  
United States District Judge