UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>-v-<br><br>BRANDON LEON BASHAM,<br><br>Defendant. | No. 4:02-992-JFA<br><br>Judge Joseph F. Anderson, Jr.<br><br>Defendant Brandon Leon Basham's Supplemental Brief on Federal Rule of Evidence 606(b) |

Pursuant to this Court's Order for Additional Briefing of January 30, 2013, Docket No. 1570, Defendant Brandon Leon Basham hereby submits his supplemental briefing on the effect of Rule 606(b) of the Federal Rules of Evidence (Rule 606(b)) on this Court's adjudication of Claim 28 of Defendant's Motion for Collateral Relief Pursuant to 28 U.S.C. § 2255.

The Court indicated in its order that its "tentative view is that Rule 606(b) would permit admission of evidence of the fact that there were numerous phone calls between the jurors during the trial," but "would preclude any inquiry of the jurors about premature deliberations in this case." Mr. Basham respectfully submits that Rule 606(b) does not impede this Court's inquiry into Claim 28 as significantly as the Court's order suggests. At the very least, as Mr. Basham explains below, Rule 606(b) would not preclude this Court from inquiring of the jurors whether they were made aware of "extraneous prejudicial information" at

1

any time before or even during formal jury deliberations, or whether an outside influence was improperly brought to bear on them. Rule 606(b)(2). Moreover, Rule 606(b)(1) would not preclude this Court from asking jurors whether premature deliberations occurred, but it would preclude the Court from inquiring into the effect of such deliberations on their vote and from inquiring into their "mental processes concerning the verdict."

### Relevant Facts

In Claim 28 of his §2255 Motion, Mr. Basham alleged that newly discovered evidence suggests that Juror Cynthia Wilson was untruthful in her testimony to this Court when she claimed that she did not engage in any premature deliberations with other jurors. (*See* Tr. 11/23/04 at 10.) Among other evidence, Mr. Basham presented at the evidentiary hearing the declaration of Ms. Shannon Burnett, a person who shares the same name as a man who served as a juror at Mr. Basham's trial. (*See* Defendant's Exhibit 21 from § 2255 evidentiary hearing.) Ms. Burnett's declaration reveals that a telephone number called by Juror Wilson on multiple occasions during Mr. Basham's trial belonged to Ms. Burnett. Because Ms. Burnett had no connection with Mr. Basham's trial (save sharing the same name as male juror Shannon Burnett), the only reasonable conclusion to be drawn from Juror Wilson's calls to Ms. Burnett's telephone number is that Wilson was

2

attempting to contact Juror Burnett outside the jury room prior to deliberations and that she resorted to a telephone book or directory assistance in this effort.

It is undisputed that, in violation of repeated admonitions from the Court throughout the trial, Juror Wilson improperly contacted several television stations and newspapers during the penalty phase to discuss the case. Despite these contacts with outside sources (and regular communication with her husband, who was conducting his own internet research about the case), Wilson claimed that she was not exposed to any extraneous information concerning the case. (Tr. 11/23/04 at 6). With the exception of Shannon Mays of WSPA in Spartanburg, South Carolina, no representatives of the other media agencies Juror Wilson contacted provided details of her conversations with them. As a result, the Court was presented with no evidence of any extraneous prejudicial information Wilson might have obtained through her improper contacts with the other media agencies, and instead was forced to rely on Wilson's unreliable and self-serving testimony that she obtained no such information through her contacts with the media. Significantly, however, at the very least Juror Wilson called Juror Doby and attempted to call Shannon Burnett on the very same day that she contacted the news media, raising the troubling possibility that Wilson was in fact attempting to contact fellow jurors to convey prejudicial extraneous information she received from an outside source.

3

Finally, at a post-trial hearing conducted on November 18, 2004, Juror Robertson attempted to inform the Court of comments that Juror Wilson made to her during formal deliberations. (Tr. 11/18/04 at 48.) In an apparent good-faith attempt to comply with Rule 606(b), the Court informed Robertson that it could not inquire into "any discussions between jurors during deliberations." (*Id.* at 49.) It is unclear, however, whether Juror Robertson was attempting to convey to the Court that Wilson had conveyed *extraneous* information to her during jury deliberations, in which case Juror Robertson's testimony would have been permissible pursuant to Rule 606(b)(2).

## Discussion

Although Rule 606(b) imposes specific limitations on the admissibility of juror testimony or evidence concerning the validity of a verdict, it would not, as the Court suggests in its order, preclude *"any* inquiry of the jurors about premature deliberations in this case." Dkt. 1570 (emphasis added). Pursuant to Rule 606(b)(1), a juror is prohibited from providing evidence only about (1) "any statement made or incident that occurred during the jury's deliberations;" (2) "the effect of anything on that juror's or another juror's vote;" or (3) "any juror's mental processes concerning the verdict or indictment." Certain areas of testimony, however, are expressly exempted from this prohibition. Specifically, pursuant to Rule 606(b)(2), a juror *may* testify about, among other things, whether

"extraneous prejudicial information was improperly brought to the jury's attention" or whether "an outside influence was improperly brought to bear on any juror." Thus, even if a juror was exposed to extraneous prejudicial information during formal deliberations, Rule 606(b)(2) would permit the Court to hear testimony about that incident. *See* Rule 606(b)(2)(A).

Moreover, when a case presents an issue of *premature* jury deliberations, a district court is not precluded by Rule 606(b) from inquiring into the substance of the conversations. By its very language, Rule 606(b)(1) only precludes testimony "about any statement made or incident that occurred *during the jury's deliberations*." (Emphasis added.) The rule does not speak to premature jury deliberations. Although the rule would prohibit the Court from inquiry concerning the *effect* of the premature deliberations on the jury's ultimate verdict, it does not foreclose inquiry into the specifics of improper premature deliberation.

### A. Rule 606(b)(2)

Despite the restrictions of Rule 606(b)(1), a juror may always testify about his or her exposure to "extraneous prejudicial information" or improper "outside influence." *See* Rule 606(b)(2). The two cases cited by the Court in its order do not hold to the contrary. *See United States v. Logan*, 250 F.3d 350, 380 (6th Cir. 2001) ("if the case involves an extraneous or external influence on the jury, then a post-verdict interrogation of jurors is permitted in order to adequately protect the

5

defendant's constitutional rights"); *United States v. Siegelman*, 561 F.3d 1215, 1241 n.34 (11th Cir. 2009) ("[t]he only exception to the rule is to permit the sort of examination of jurors conducted by the district court in this case to determine whether the jury considered extrinsic information to the defendant's prejudice").

Thus, for example, Juror Robertson could have permissibly testified about statements Juror Wilson made to her, even during formal jury deliberations, *if* those statements involved "extraneous prejudicial information" conveyed by Wilson. Further, although the Court questioned the jurors in a series of post-verdict hearings, significant gaps exist in the areas explored. For example, Jurors Hartsoe and Doby, both of whom exchanged numerous telephone calls with Juror Wilson during the trial, were never questioned about the substance of those conversations. Pursuant to Rule 606(b), this Court can (and, Mr. Basham submits, must) inquire of those jurors whether Juror Wilson conveyed any "extraneous prejudicial information" to them during any of her numerous conversations with them.

Further, pursuant to Rule 606(b)(2), all of the jurors should be questioned about whether, during formal deliberations, Juror Wilson introduced any "extraneous prejudicial information" to the jury. Although such an inquiry would not necessarily be appropriate in every case, because of Juror Wilson's inappropriate contact with several media sources during the trial, the only way this

Court can adequately protect Mr. Basham's rights to a fair trial and to confront the "witnesses" against him is to insure that the jury was not tainted by any extrajudicial information Wilson may have obtained and subsequently conveyed to the jury. *See, e.g., Sassounian v. Roe*, 230 F.3d 1097, 1108 (9th Cir. 2000) ("A juror's communication of extrinsic facts implicates the Confrontation Clause. The juror in effect becomes an unsworn witness, not subject to confrontation or cross-examination.") (citation omitted); *Weinstein's Federal Evidence* § 606.04[5][c] (2d. ed. 2012).

## B. Premature Deliberations

In its order of January 30, 2013, the Court expressed concern that Rule 606(b) "would preclude *any* inquiry of the jurors about premature deliberations in this case." Dkt. 1570 (emphasis added). Mr. Basham respectfully disagrees.

As a threshold matter, the language of Rule 606(b)(1) bans inquiries only into "any statement made or incident that occurred *during the jury's deliberations*." (Emphasis added.) The Rule does not expressly address *premature* discussions among jurors. Accordingly, at least one circuit court of appeals has recently suggested that the prohibitions of Rule 606(b)(1) do not apply to a district court's inquiry into premature discussion of evidence among jurors, as opposed to "the formal deliberations that occur[] once the presentation of evidence conclude[s]." *United States v. Jadlowe*, 628 F.3d 1, 20-21 (1st Cir. 2010).

Applying the reasoning of *Jadlowe*, Mr. Basham submits that this Court would not be precluded from inquiring into the substance of any communications between and among the jurors that occurred prior to their formal penalty-phase deliberations.

Such an interpretation of Rule 606(b) makes sense. To preclude a court from questioning jurors post-verdict about the substance of premature deliberations would improperly insulate such improper behavior from any remedy by the Court. Of course, because Rule 606(b)(1) would plainly preclude the Court from asking the jurors the *effect* the premature deliberations had on them or from asking about their mental processes concerning the verdict, the Court's inquiry would be limited solely to the *substance* of the premature deliberations. Once aware of the substance of any premature deliberations, the Court could decide whether those deliberations were presumptively prejudicial to the defendant. *See generally United States v. Morales*, 655 F.3d 608, 631 (7th Cir. 2011) (suggesting that a court might be able to conduct a post-verdict inquiry into the existence of premature deliberations but would be unable to grant relief unless prejudice could be presumed without inquiring of the jurors as the effect of the premature deliberations on their verdict).

**Conclusion**

For the foregoing reasons, Mr. Basham respectfully submits that the Court is in error when it suggests that Rule 606(b) would preclude "any inquiry of the jurors about premature deliberations in this case." If those deliberations involved exposure to extraneous prejudicial information, Rule 606(b)(2) would plainly allow the jurors to testify about them. Moreover, even if the Court's inquiry of the jurors revealed that none of them were exposed to extraneous prejudicial information, the Court could still determine whether the substance of the premature deliberations was presumptively prejudicial to defendant, without inquiring of the jurors whether the premature deliberations had any effect on them.

Accordingly, Mr. Basham requests that the Court conduct an evidentiary hearing at which the jurors are permitted to testify about (1) whether premature deliberations occurred in this case; (2) the substance of any such deliberations; (3) whether they were exposed to any extraneous prejudicial information at any time before or during deliberations; and, if so, (4) the nature of that information.

Respectfully submitted this 13th day of February, 2013.

s/Julia Grace Mimms
Julia Grace Mimms, Esquire
Attorney for Defendant
Law Office of Julia G. Mimms, P.A.
1001 Elizabeth Avenue, Suite 1A
Charlotte, North Carolina 28204
(704) 333-1301 Telephone

s/Michael L. Burke
Michael L. Burke (Arizona Bar No. 013173)
Sarah Stone (Arizona Bar No. 022713)
Assistant Federal Public Defenders
850 West Adams, Suite 201
Phoenix, Arizona 85007
michael_burke@fd.org
sarah_stone@fd.org
Telephone: (602) 382-2818
Facsimile: (602) 889-3960

Attorneys for Defendant
Brandon Leon Basham

**Certificate of Service**

I hereby certify that on February 13, 2013 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this document through the Court's system.

Stephanie Bame
Legal Assistant
Capital Habeas Unit