UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br>-v-<br><br>BRANDON LEON BASHAM,<br><br>Defendant. | No. 4:02-992-JFA<br><br>Judge Joseph F. Anderson, Jr.<br><br>Defendant Brandon Leon Basham's Supplemental Brief on Ineffective Assistance of Counsel Concerning *Edwards v. Arizona*. |

Pursuant to this Court's Order for Additional Briefing of February 6, 2013, Docket No. 1572, Defendant Brandon Leon Basham hereby submits his supplemental briefing on the allegation that he received constitutionally ineffective assistance of counsel when his trial counsel failed to argue that Sheriff Hewett's contact with him outside the presence of his attorneys during the search conducted on Thanksgiving Day 2002 violated his Fifth Amendment right to counsel, as recognized by *Miranda v. Arizona*, 384 U.S. 436 (1966), and *Edwards v. Arizona*, 451 U.S. 477 (1981).

## Relevant Facts

On November 28, 2002, Thanksgiving Day, Mr. Basham and the two attorneys originally appointed to his case, Cameron Littlejohn and William Monckton IV, assisted in a search for Alice Donovan's body in the area of the Bee Tree Farms Hunt Club in Brunswick County, North Carolina.  Messrs. Littlejohn

1

and Monckton had been appointed by Magistrate Judge Rogers on the previous day to represent Mr. Basham. *See* Tr. 10/9/12 at 10-11. Mr. Basham had been in continuous police custody since his arrest on November 19, 2002, in Ashland, Kentucky. Throughout the Thanksgiving Day search, Attorneys Littlejohn and Monckton made it clear to the law enforcement officers, by both their words and actions, that they were Mr. Basham's attorneys, that Mr. Basham was not to be interrogated, and that he was present only to offer directions to assist law enforcement in locating Alice Donovan's body. *See, e.g.*, Tr. 10/9/12 at 44 (evidentiary hearing testimony of William Monckton); Tr. 12/4/12 at 1234, 1236 (evidentiary hearing testimony of Cameron Littlejohn).

The record leaves no doubt that Brunswick County Sheriff Ronald Hewett was aware that Mr. Basham was represented by counsel that day. In a December 3, 2002 report of an interview conducted with Sheriff Hewett about the Thanksgiving Day search, Lieutenant DA Crocker wrote: "Basham was at all times in the presence of his attorneys; he was afforded consultation to same attorneys prior to any action or statement made by Basham." Exh. 2 to Defendant's Motion for Collateral Relief Pursuant to 28 U.S.C. § 2255 at 00814 ("Hewett Report").

Contrary to the assertion in the Hewett Report, however, Mr. Basham was not "at all times in the presence of his attorneys." In fact, Sheriff Hewett himself testified at the *Jackson v. Denno* hearing that he and two other law enforcement

2

officers spoke with Mr. Basham outside the presence of his attorneys.  Tr. 2/25/04 at 66-67.  According to Hewett, during his questioning of Mr. Basham, "Cam Littlejohn and Mr. Billy Monckton were back at what I described earlier as the horseshoe circle, talking with other law enforcement officials, including Chief Hendrick of Conway."  *Id.* at 67.  Both Mr. Littlejohn and Mr. Monckton testified at the 2012 evidentiary hearing that they were unaware that Sheriff Hewett had walked off with their client without their permission.  Tr. 12/4/12 at 1242-44 (Littlejohn); Tr. 10/9/12 at 43 (Monckton).

Sheriff Hewett offered varying accounts of Mr. Basham's supposed statements to him during the interrogation outside of Basham's lawyers' presence. The report prepared on December 3, 2002, states the following:

> Sheriff Hewett states that at the end of the day (November 28[,] 2002) the van and other officers gathered at the cemetery on Bee tree Farm road.  States that at one point Basham was being descriptive to Sheriff Hewett as to what had happened and stated in response to Sheriff Hewett, "I'm trying sir (to help), but all the roads, pine trees and dirt look alike.["]  Sheriff Hewett states that while talking at the cemetery Basham stated, "we parked right there", Basham pointing at an older fence and current fence (which is a location that was consistent to a witness [sic] had earlier observed the vehicle at the cemetery).

> Sheriff Hewett states that while at the cemetery, Basham indicated how the (victims) [sic] pocketbook was used.  (Sheriff Hewett was able to determine this meant, the pocketbook strap was **used** to strangle the victim to death[.])

> Basham then walks to the left front edge of the cemetery (along with Sheriff Hewett and Conway Officers Sgt Parker and Sgt Sarvis.

3

Basham demonstrates (visually) how he afterwards threw the strap into the wood line at the cemetery. Basham indicated that the strap was 16 to 20 inches in length and was a leather type. Basham also showed an area to the left of the cemetery and again stating [sic] "check in those trees and over there.["] Basham appeared to be breathing heavy and stated it was "a Liz Claiborne pocketbook". Sheriff Hewett asked Basham directly, is this where it happened and Basham replied, "yes, this is it".

Hewett Report at 00818 (emphasis in original).

Sheriff Hewett also testified at the *Jackson v. Denno* hearing about his questioning of Mr. Basham:

Q.   You previously indicated to the court that you were having many discussions with Mr. Basham, to include a purse strap?

A.   Yes.

Q.   Do you recall that testimony?

A.   I do.

Q.   And did you want to know more information about that purse strap and how it was used and where it might be located?

A.   I did.

Q.   Wanting that to occur, tell the judge what you did with Mr. Basham.

A.   Mr. Basham and myself and the two Conway sergeants, which was Sergeant Parker and Sarvis, I believe, we walked back down to the cemetery. Branden Basham, he was shackled at his hands, belly chained around the waist, and shackled at his feet. He walked down to the cemetery, he got tears in his eyes and tears rolled down his cheek. He showed me the length of the strap –

Q.   How did he do that?

A.    May I demonstrate?

Q.    Certainly.

A.    Like this.  Because he couldn't pull his hand very – very far apart, he was shackled.  He showed me the length of the strap.  Says that he believed it to be a Liz Claiborne strap, and that he had thrown it in the woods.  He then demonstrated the manner in which he threw it in the woods.

Q.    Would you stand up and do that for the court so the record is complete as well?

A.    Yes, sir, I will.  We were standing at the corner of the cemetery, Branden Basham is chained. I said, "Branden, how did you do that?" And he said, "Like that.  And I threw it over there."

Tr. 2/25/04 at 66-67.

Later, at trial, Sheriff Hewett would provide an additional piece of information allegedly garnered from his questioning of Mr. Basham outside his lawyers' presence.  Specifically, Hewett would testify for the first time that Mr. Basham had implicated himself as Ms. Donovan's actual killer:

Q.    There is nothing in your notes, nor is there anything in Lieutenant Crocker's notes that indicate that Brandon Basham told you that he used the [purse] strap, is there?

A.    No sir.  He did not tell me he used the strap.  He demonstrated, though.

Q.    He demonstrated?

A.    Yes, sir.

Tr. 9/27/04 at 53-54.

5

The Government relied on Sheriff Hewett's comments in its closing arguments at both the guilt and penalty phases of Mr. Basham's trial. During guilt-phase closing, the prosecutor, after improperly reminding the jury "how fair Sheriff Hewett was," argued:

> And later on, at the end of that day when they get to that cemetery, he is pulled out of that van and he is in shackles. What does he tell the sheriff? He tells the sheriff that it was right there by that gate. He tells – he not only tells, he demonstrates. He demonstrates for that sheriff a Liz Claiborne purse strap was used to kill Alice Donovan. Then what does he say? I threw it in the woodline. Mr. Swerling asks Sheriff Hewitt [sic] says he didn't say I killed Alice Donovan. Sheriff Hewitt says he didn't say I killed Alice Donovan. Sheriff Hewitt said to you in this courtroom in front of you, the jury, no, he demonstrated it.

Tr. 9/29/04 at 79-80. At the penalty-phase closing, the prosecutor went even further, describing Mr. Basham's demonstration of how the purse strap was used as a demonstration of "Brandon Basham's strangling of Alice Donovan." Tr. 11/1/04 at 57.

This powerfully incriminating evidence and argument all derives from one source: Sheriff Hewett's questioning of Mr. Basham outside the presence of his attorneys while in the cemetery during the Thanksgiving Day search. The interrogation, however, occurred in direct and blatant violation of *Miranda v. Arizona* and *Edwards v. Arizona*. As Mr. Basham explains below, because his trial attorneys Jack Swerling and Greg Harris never attempted to preclude this evidence,

despite its clearly unconstitutional source, he was deprived of his Sixth Amendment right to the effective assistance of counsel.

## Discussion

In Claim 2 of his Motion for Collateral Relief Pursuant to 28 U.S.C. § 2255, Mr. Basham argued that he was denied the effective assistance of counsel guaranteed by 18 U.S.C. § 3006(A), 18 U.S.C. § 3599, and the Sixth Amendment to the United States Constitution when his trial attorneys failed to prepare for and/or effectively litigate the *Jackson v. Denno* hearing in his case. Among other aspects of their deficient performance with regard to the *Denno* hearing, trial counsel failed to seek suppression of the statements and physical demonstrations identified above, all of which were purported to have been made by Mr. Basham while outside the presence of his attorneys during the Thanksgiving Day search.

In its Order of February 6, 2012, this Court indicated its desire to receive briefing on (1) whether a violation of *Edwards v. Arizona*, 451 U.S. 477 (1981), occurred in this case; and (2) if so, whether trial counsel rendered ineffective assistance under *Strickland v. Washington*, 466 U.S. 668 (1984), in failing to raise the *Edwards* argument. The answer to both questions is "yes."

### A. The *Edwards v. Arizona* Violation

In *Miranda v. Arizona*, 384 U.S. 436, 474 (1966), the Supreme Court held that, if a suspect states that he wants an attorney, "interrogation must cease until an

attorney is present." Once the attorney has been provided, "the individual must have an opportunity to confer with the attorney and to have him present during any subsequent questioning." *Id.* In *Edwards v. Arizona*, the Supreme Court "reconfirm[ed]" these rules "and, to lend them substance, emphasize[d] that it is inconsistent with *Miranda* and its progeny for the authorities, at their instance, to reinterrogate an accused in custody if he has clearly asserted his right to counsel." 451 U.S. at 485. "The Fifth Amendment right identified in *Miranda* is the right to have counsel present *at any custodial interrogation*." *Id.* at 485-86 (emphasis added). "[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights." *Id.* at 484.

Moreover, the Supreme Court has emphasized that *Edwards* and its progeny imposes a strict requirement that counsel be actually present during any post-invocation interrogation:

> Our emphasis on counsel's *presence* at interrogation is not unique to *Edwards*. It derives from *Miranda*, where we said that in the cases before us "[t]he presence of counsel . . . would be the adequate protective device necessary to make the process of police interrogation conform to the dictates of the [Fifth Amendment] privilege. His presence would insure that statements made in the government-established atmosphere are not the product of compulsion."

8

*Minnick v. Mississippi*, 498 U.S. 146, 152 (1990) (quoting *Miranda*, 384 U.S. at 466).  Thus, in *Minnick*, the Supreme Court emphasized "that a fair reading of *Edwards* and subsequent cases demonstrates that we have interpreted the rule to bar police-initiated interrogation unless the accused has counsel with him at the time of questioning."  498 U.S. at 153.

The record in Mr. Basham's case reveals unequivocally that an *Edwards* violation occurred in this case.  There is absolutely no indication anywhere in the record that Mr. Basham *initiated* the conversation with Sheriff Hewett that took place in the cemetery.   Rather, "want[ing] to know more information about that purse strap and how it was used and where it might be located," Sheriff Hewett and two other law enforcement officers took the shackled Basham for a "walk[] back down to the cemetery."  Tr. 2/25/04 at 66.  Because Hewett "want[ed] to know more information," he began to question Basham.   Neither of Mr. Basham's attorneys was aware that their client was being taken off by law enforcement for questioning outside their presence. Moreover, there is no indication in the record whatsoever that Mr. Basham consented to Sheriff Hewett's violation of his right to counsel.  *See Edwards*, 451 U.S. at 484 ("we now hold that when an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to

further police-initiated custodial interrogation even if he has been advised of his rights").

Had this Court been presented with argument from trial counsel that Sheriff Hewett's surreptitious questioning of Mr. Basham outside the presence of his attorneys violated the Fifth Amendment, as interpreted by *Edwards*, it would have been compelled to suppress the evidence obtained as a result of that illegal interrogation. That evidence includes both verbal statements Mr. Basham is alleged to have made to Sheriff Hewett and testimony concerning his non-verbal demonstrations of how the purse strap was used to strangle the victim and how it was thrown into the nearby woods.[1]

### B. The *Strickland v. Washington* Violation

Despite the indisputable nature of the *Edwards* violation in this case, this Court was never given the opportunity to rule on the admissibility of the evidence Sheriff Hewett unlawfully obtained from Mr. Basham because Basham's trial attorneys chose to present no evidence at the *Jackson v. Denno* hearing. *See, e.g.*, Tr. 2/24/04 (a.m.) at 11-12 ("[W]e think it's prudent to go ahead and have the court

---

[1] The Supreme Court has long recognized that the Fifth Amendment's privilege against self-incrimination applies to both verbal and non-verbal communications. For example, in *Schmerber v. California*, the Court held "that the privilege protects an accused only from being compelled to testify against himself, *or otherwise provide the State with evidence of a testimonial or communicative nature*." 384 U.S. 757, 761(1966) (emphasis added); *accord Doe v. United States*, 487 U.S. 201, 211 n.10 (1988).

pass on the voluntariness of the statements without us necessarily arguing vigorously that they are not voluntary."). In Claim 2 of his Motion for Collateral Relief Pursuant to 28 U.S.C. § 2255, Mr. Basham argues that his attorneys rendered constitutionally ineffective assistance of counsel in this regard. A critical component of that claim is trial counsel's failure to bring the *Edwards* violation to the Court's attention.

"To establish ineffectiveness, a 'defendant must show that counsel's representation fell below an objective standard of reasonableness.'" *Williams v. Taylor*, 529 U.S. 362, 390-91 (2000) (quoting *Strickland*, 466 U.S. at 688). "To establish prejudice, he 'must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" *Id.* (quoting *Strickland*, 466 U.S. at 694).

### 1. Deficient Performance

The record in this case establishes that Mr. Basham had a meritorious claim under *Edwards v. Arizona* that Sheriff Hewett's interrogation of him at the cemetery violated his Fifth Amendment privilege against self-incrimination. At the evidentiary hearing conducted in this § 2255 proceeding, Basham's standard-of-care expert, Larry Hammond, testified that a reasonably competent attorney would have vigorously challenged the admissibility of any incriminating evidence

obtained by Sheriff Hewett during the interrogation of Basham outside his lawyers' presence. Tr. 10/16/12 at 848-49. The Government offered no expert testimony to the contrary. Rather, the Government has maintained throughout these proceedings that trial counsel's failure to meaningfully litigate the *Jackson v. Denno* hearing was a strategic decision on the part of Mr. Basham's attorneys. The parties have already briefed and argued the general merits of the Government's "strategy" theory, but the weakness of this argument in the context of the *Edwards* violation is particularly telling and deserves special attention.

As a threshold matter, the evidentiary hearing testimony of Mr. Basham's lead trial attorney, Jack Swerling, plainly suggests that the real reason he did not challenge the illegally obtained statements about which Hewett testified was because he erroneously believed that those statements were merely duplicative of other evidence in the case:

> Q. Sitting here today does – had you known at trial, or assume at the *Jackson v. Denno* hearing the Sheriff Hewitt [sic] had testified that he took Brandon away and walked off alone with him after being informed that he could not contact or could not communicate with Mr. Basham outside the presence of counsel, he testified he in fact did so and Mr. Basham ended up making statements that became critical to the government in their case in Mr. Basham's trial.
>
> A. It's been characterized that way, yeah. My understanding was the sheriff said he was not saying that Basham said he strangled her but that it was the way she was strangled. But I mean –
>
> Q. Either way, is that –

> A.     Let me say this to you, that it had already been out there.  I mean, Basham had already put in or they had already put in the fact that there was a strap.  They were looking for a strap that was used to strangle her.  So you are leaving out those very important facts that had nothing to do with any statement that Basham made to Hewett.  They were looking for the strap that had been used to strangle Miss Donovan.

Tr. 10/11/12 at 490.

As Sheriff Hewett's testimony at both the *Jackson v. Denno* hearing and trial revealed, however, the incriminating evidence allegedly obtained from Mr. Basham by Hewett during the uncounseled interrogation was unlike any evidence otherwise obtained by law enforcement.  Specifically, the Hewett Report (*see* Exh. 2 to Defendant's Motion for Collateral Relief Pursuant to 28 U.S.C. § 2255 at 00818) states that Mr. Basham physically demonstrated how Alice Donovan was strangled, told Hewett specifically where he and Fulks had parked the car, demonstrated how and where he threw the purse strap, and in direct response to Hewett's question, stated that they were at the specific site where the murder occurred.

Swerling was thus plainly in error in his belief that the Hewett report and testimony were merely cumulative of other evidence in this case.  Moreover, given that any "strategy" Swerling allegedly developed was necessarily premised on this erroneous belief, such a strategy would itself be unreasonable.  Even if trial counsel would have been strategically justified in failing to challenge some of Mr.

Basham's post-arrest statements, no justification exists for failing to suppress the specific evidence allegedly obtained by Sheriff Hewett during the illegal interrogation at the cemetery. Trial counsel's performance in this regard clearly fell below an objective standard of reasonableness.

### 2. Prejudice

Prejudice exists under *Strickland* when there is a "reasonable probability" that, but for counsel's unprofessional errors, the result of the proceeding would have been different. 466 U.S. at 694. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

Mr. Basham has demonstrated that he has a meritorious claim under *Edwards v. Arizona* that, had this Court been presented at the *Jackson v. Denno* hearing with the facts and law now before it, it would have suppressed the evidence unlawfully obtained by Sheriff Hewett during his interrogation of Basham at the cemetery. The question thus becomes whether a reasonable probability exists that the result of Mr. Basham's trial and sentencing would have been different absent trial counsel's errors. In other words, is there a reasonable probability that Mr. Basham's convictions or sentences would have been different had the jury not heard Sheriff Hewett's testimony regarding his interrogation of Basham at the cemetery? A reasonable probability need only be one that "undermine[s] confidence" in the outcome. *Strickland*, 466 U.S. at 694. The

14

Court, however, cannot make this determination in a vacuum; it must consider the totality of the circumstances. Thus, in determining whether trial counsel's failure to seek suppression of Basham's illegally obtained statements resulted in prejudice, this Court must consider the effect the Hewett testimony had on a jury already tainted by the numerous other errors identified in Mr. Basham's § 2255 Motion.

With that context in mind, Mr. Basham submits that, at the very least, a reasonable probability exists that, absent the Hewett testimony, the jury would not have sentenced him to death. Relying on Sheriff Hewett's testimony, the Government argued to the jury at penalty phase that Mr. Basham was the actual killer of Alice Donovan:

> What does Brandon Basham say in the presence of Sheriff Hewitt [sic]? It is not really what he says, it is what he does. He is shackled. He describes a purse strap, and he demonstrates, he demonstrates to Sheriff Hewitt how Alice Donovan was strangled. And then he tells Sheriff Hewitt, "I threw the purse strap into the woods." He has demonstrated. He even has his arms down. You saw Sheriff Hewitt stand up there and show . . . . Now, *does that mean Brandon Basham's strangling of Alice Donovan is the only hand that caused Alice Donovan's death?*

Tr. 11/01/04 at 57 (emphasis added; paragraph break deleted).[2]

Although the jury was not required to find that Mr. Basham was the actual killer in order to sentence him to death, such an inflammatory accusation—based

---

[2] The Government similarly argued in closing during the guilt phase that the jury would have to "disregard" Sheriff Hewett's testimony to not find "that Brandon Basham, himself, killed Alice Donovan." Tr. 9/29/04 at 173.

entirely on Hewett's improper testimony—unquestionably altered the jury's opinion of the extent of Basham's personal culpability. Certainly a reasonable probability exists that the mitigating evidence presented to the jury would have carried greater weight had the jury not been told by the Government that Mr. Basham killed Alice Donovan with his own hands. Absent the Hewett testimony that Mr. Basham was the actual killer, a reasonable probability exists that at least one juror might have voted for life. *See, e.g.*, *Duncan v. Ornoski*, 528 F.3d 1222, 1245 (9th Cir. 2008) (penalty-phase prejudice found when jury deprived of evidence that capital defendant might not have been actual killer).

In light of trial counsel's error in failing to identify and rectify the *Edwards v. Arizona* violation in this case, this Court cannot be confident in the jury's verdicts of death. The Court's concern over the effect of the Hewett evidence on Mr. Basham's death sentences can only be compounded by the fact that, pursuant to Federal Rule of Evidence 606(b), the Court can never know whether the jurors' sentencing decisions were influenced by Hewett's improper testimony and the Government's improper reliance on that testimony to argue that Mr. Basham was the actual killer. Knowing that a jury charged with deciding whether a man should live or die was exposed to constitutionally unsound evidence that may well have affected its verdicts certainly must give rise to a lack of confidence in that jury's verdicts.

## Conclusion

For the foregoing reasons, Mr. Basham respectfully requests that the Court grant him relief on Claim 2 of his § 2255 Motion.

Respectfully submitted this 20th day of February, 2013.

> s/Julia Grace Mimms
> Julia Grace Mimms, Esquire
> Attorney for Defendant
> Law Office of Julia G. Mimms, P.A.
> 1001 Elizabeth Avenue, Suite 1A
> Charlotte, North Carolina 28204
> (704) 333-1301 Telephone
>
> s/Michael L. Burke
> Michael L. Burke (Arizona Bar No. 013173)
> Sarah Stone (Arizona Bar No. 022713)
> Assistant Federal Public Defenders
> 850 West Adams, Suite 201
> Phoenix, Arizona 85007
> michael_burke@fd.org
> sarah_stone@fd.org
> Telephone: (602) 382-2818
> Facsimile: (602) 889-3960
>
> Attorneys for Defendant
> Brandon Leon Basham

## Certificate of Service

I hereby certify that on February 20, 2013 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this document through the Court's system.

Stephanie Bame
Legal Assistant
Capital Habeas Unit