IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA | ) Cr. No. 4:02-992-JFA |
| | ) |
| v. | ) |
| | ) |
| BRANDON LEON BASHAM | ) |
| | ) |

Supplemental Brief Regarding Petitioner's Claim 2 that Trial Counsel's Preparation
for *Jackson v. Denno* Hearing and Representation during the Hearing Was Deficient

In response to the Court's request for additional briefing regarding the issue raised for

the first time during the evidentiary hearing for Brandon Basham's § 2255 petition that trial

counsel was ineffective for failing to argue at the *Jackson v. Denno* hearing that Basham's

statements to Sheriff Hewett were in violation of Edwards v. Arizona, 451 U.S. 477 (1981),

the Government submits the following:[1]

_____

[1]At the § 2255 hearing, the Government objected to habeas counsel's argument under Claim 2 that Sheriff Hewett violated Basham's right to counsel by asking him questions about the purse strap. The Government contended that the only argument raised in Claim 2 of the § 2255 petition was that Basham's trial counsel failed to effectively litigate the Jackson v. Denno hearing; specifically, Claim 2 contended that trial counsel should have challenged the voluntariness of Basham's statements to law enforcement in light of his mental deficiencies and drug use. Thus, the Government argued that this new allegation of a constitutional violation by Sheriff Hewett was untimely. Tr. 12/04/12 at 1323. Although allowing habeas counsel to present argument on this issue, this Court did observe: "I did think the argument – claim two was related to his mental capacity to make these statements and not some constitutional violation of the discussion with Sheriff Hewett." Id. at 1324. The Government stands by its objection that a claim under Edwards v. Arizona is outside the scope of the allegations raised in Claim 2. In any event, as argued in this supplemental brief, Basham's trial counsel were not ineffective for declining to raise an Edwards claim.

I.    Counsel did not render ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984).

"The benchmark for judging a claim of ineffective assistance of counsel is 'whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied upon as having produced a just result.'" Jeffers v. Leeke, 835 F.2d 522, 525 (4th Cir. 1988)(quoting Strickland, 466 U.S. at 686). To prevail on an ineffective-assistance-of-counsel claim, a defendant "must show (1) 'that counsel's performance was deficient,' and (2) 'that the deficient performance prejudiced the defense.'" Sharpe v. Bell, 593 F.3d 372, 382 (4th Cir. 2010) (quoting Strickland v. Washington, 466 U.S. 668, 687 (1984)).

"Under the first prong of Strickland," a reviewing court applies a "'strong presumption' that a trial counsel's strategy and tactics fall 'within the wide range of reasonable professional assistance.'" United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2010)(quoting Strickland, 466 U.S. at 689). "For a lawyer's trial performance to be deficient, his errors must have been so serious that he was not 'functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.'" Id. (quoting Strickland, 466 U.S. at 687). Moreover, the "reasonableness of a lawyer's trial performance must be 'evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of reasonableness is highly deferential.'" Id. (quoting Kimmelman v. Morrison, 477 U.S. 365, 381 (1986)) (other citation omitted). A court must determine, considering all of the circumstances, whether the identified acts or omissions by counsel were outside the

2

wide range of professionally competent assistance. <u>Jeffers</u>, 835 F.2d at 525. The defendant must rebut the presumption that the challenged action was sound trial strategy. <u>See</u> <u>Yarbrough v. Johnson</u>, 520 F.3d 329, 336-37 (4th Cir. 2008).

Trial counsel's decision not to move to suppress testimony about Basham's purse strap demonstration was reasonable and in conformance with the overall trial strategy. During Basham's § 2255 evidentiary hearing, Jack Swerling, one of Basham's trial attorneys, pointed out that prior to providing the demonstration to Sheriff Hewett, Basham had already told other agents and law enforcement officers that they needed to look for a strap that was used to strangle Alice Donovan.[2] Tr. 10/11/12 at 490. Mr. Swerling noted that at the time of the search Basham had had counsel since November 19, 2002, and that trial counsel had to consider all of Basham's statements made both before and after representation. After considering all of these statements, counsel adopted a strategy of trying to use Basham's statements for his advantage. Tr. 10/11/12 at 491. While Basham's current counsel may not have adopted the same strategy, they have failed to rebut the presumption that this was a sound strategy.

Further, counsel's decision not to move to suppress under <u>Edwards</u> must be viewed based on the information he had available at the time of the <u>Jackson v. Denno</u> hearing.

---

[2] While it does not appear that Basham actually said that the purse strap they should look for had been used to strangle Alice Donovan, that was certainly the implication, because, as discussed later, Basham mentioned the strap in the context of helping officers search for Alice Donovan's body.

Sheriff Hewett's testimony at the <u>Jackson v. Denno</u> hearing was more limited than his testimony on cross-examination during Basham's trial. As this Court observed during the § 2255 hearing, Sheriff Hewett testified at the <u>Jackson v. Denno</u> hearing that he asked Basham "How did you do that?" and Basham responded by demonstrating with the strap and describing how he threw it into the woods. Tr. 12/04/12 at 1328; see also Tr. 02/25/04 at 66-67, 77-78. And as this Court also observed, the Sheriff's question of "How did you do that?" could have been relevant to the search for Alice Donovan's body because the strap's location along the woodline would have depended on the manner in which Basham threw it (e.g. "with his wrist" or "like a baseball pitch"). Tr. 12/04/12 at 1330. It was not until Basham's trial, upon cross-examination by defense attorney Greg Harris, that Sheriff Hewett's account became somewhat more open-ended. When challenged with the fact that there was nothing in his notes indicating that Basham said he had used the strap, Sheriff Hewett answered: "No, Sir. He did not tell me he used the strap. He demonstrated, though." Trial Tr. Vol. 10 at 53-54. So at both the pre-trial hearing and at trial, Sheriff Hewett testified that Basham made a demonstration with the strap. Hewett did not say that Basham admitted to strangling Donovan himself, although he testified that Basham admitted throwing the strap into the woods. Even though Sheriff Hewett's trial testimony might be more susceptible to the inference that Basham demonstrated how he personally strangled Donovan, this testimony did not come out at the <u>Jackson v. Denno</u> hearing. The only testimony adduced at that pre-trial hearing was that Basham made a demonstration in response to the question of "How did

4

you do that?" There was no clear indication *at any time* that Sheriff Hewett asked Basham a question outside the scope of providing directional information in the search for Donovan's body, and Hewett's pre-trial testimony provided even less of a basis for trial counsel to argue that he violated Basham's right to counsel.

As Mr. Swerling suggested at the evidentiary hearing, and as discussed below, there was no Edwards violation. Further, even if this Court finds that there was an Edwards violation, Basham, nonetheless, received effective assistance of counsel as contemplated by the Sixth Amendment, because counsel's decision not to move to suppress Basham's purse strap demonstration did not "undermine the proper functioning of the adversarial process" such that Basham's trial cannot be "relied upon as having produced a just result."

II.    Sheriff Hewett's request during the Thanksgiving Day search for Basham to show him how he threw the purse strap was not in violation of *Edwards v. Arizona.*

A.    The facts in *Edwards* are significantly different from those in Basham's case.

In Edwards v. Arizona the Supreme Court held that when an accused has invoked his right to have counsel present during custodial interrogation, he cannot be subjected to further interrogation by law enforcement until counsel has been made available to him, unless the accused initiates further communication, exchanges, or conversations with law enforcement. 451 U.S. at 484-485. This holding is based on a set of facts readily distinguishable from the facts in Basham's case. After Edwards was arrested, he was informed of his rights pursuant to Miranda v. Arizona, 384 U.S. 436 (1966). 451 U.S. at 478. He initially agreed to submit to questioning, but later said he wanted an attorney. Id. at 479. At that point, questioning

ceased. Id. However, the next morning, two detectives came to the jail and asked to see Edwards. Id. When the detention officer informed Edwards that the detectives wished to speak with him, he replied that he did not want to talk to anyone. Id. The guard told Edwards that he "had to" talk, and took Edwards to the detectives. Id. The detectives identified themselves and informed Edwards of his Miranda rights. Id. Edwards stated that he was willing to talk, but he first wanted to hear the taped statement of his alleged accomplice. Id. After listening to some of the tape, Edwards implicated himself in the crime of which he was accused. Id. The trial court denied Edwards' motion to suppress his statement. Id. at 479-480.

The Supreme Court found that Edwards did not validly waive his right to counsel. Id. at 482. The decision turned on the fact that despite Edwards' invocation of his right to counsel, law enforcement later initiated questioning without ever providing Edwards with counsel. In Basham's case, he had counsel when he demonstrated the use of the purse strap, and he initiated the conversation with law enforcement which resulted in the demonstration.

B.    Basham had the benefit of counsel at all times during the Thanksgiving Day search.

Unlike the defendant in Edwards, Basham had the benefit of counsel when he provided the demonstration. Testimony at the time of trial and during the § 2255 evidentiary hearing reveals that counsel were available to Basham at all times during the Thanksgiving Day search. During trial, on September 27, 2004, Sheriff Hewett testified that throughout the day, Basham was allowed to talk to his lawyers anytime he wanted to do so, and that no

one threatened Basham. TT, Vol. 10 at 26, 41-42. He said that when Basham was in the van next to his attorney, Basham whispered to his attorney, who advised Basham to give law enforcement the information. Id. Basham then told the agents and officers that they should look for a Liz Claiborne purse strap at the cemetery. Id. at 27-28.

At the § 2255 evidentiary hearing, Cameron Littlejohn, one of Basham's counsel the day of the search, testified that Basham conferred with him regarding the purse strap prior to telling law enforcement about the strap. Tr., Dec. 12/04/12 at 1256-1257. Mr. Littlejohn told agents that if they found the purse strap, they would know they were in the right place. Id. at 1257. He explained: "[I]t was directional." Id. Mr. Littlejohn said they were all looking for the purse strap, and that Basham may have wandered off in the same direction with Sheriff Hewett, but the area within which they were all searching was "not much bigger than [the] courtroom," so he was sure he never let Basham out of his sight. Id. at 1265-1266.

Mr. Littlejohn attempted to put his interaction with Basham during the search into context:

> We got out of the van several times to try to look for something that might be familiar with - - for Brandon, okay? One of the things that came up was a thing about the purse strap. And Brandon had said, well, if I recall, the purse strap went out of the car at a cemetery location. If you can find the purse strap then, you know, this must be the right place. And so we canvassed the cemetery area there to see if we could find a purse strap.
>
> Now, whether Brandon walked off with one of the officers or not, he was always within my sight. I can't say he was always within my hearing. But we are trying to find that strap. He might have wandered off with Sheriff Hewett for a few moments but, you know, he wasn't too far away from me at any time.

Id. at 1243-1245.

Thus, unlike the defendant in Edwards, Basham was in the presence of counsel at all times. Unlike in Edwards, nobody ever told Basham he was required to talk with law enforcement. Instead, Basham initiated the search and urged that it continue even when law enforcement became frustrated. Consequently, there was no violation of Basham's right to counsel based on the holding of Edwards v. Arizona, 451 U.S. 477 (1981).

> C.   If the Court were to determine that Basham was without counsel when he provided the purse-strap demonstration, then the Court should find that Basham waived his right to counsel.

Basham clearly had the benefit of counsel when he told law enforcement that they should look for a Liz Claiborne purse strap. However, even if the Court were to determine that Basham did not have the benefit of counsel when he demonstrated what was done with the purse strap, it is clear that there was no Edwards violation.

The Supreme Court has directed courts to make two determinations when deciding whether law enforcement obtained a statement in violation of Edwards. Smith v. Illinois, 469 U.S. 91, 94 (1984). First, a court must determine whether the defendant actually invoked his right to counsel. Id. Second, if he invoked his right to counsel, the court must determine (a) whether the defendant initiated further discussions with law enforcement and (b) whether he knowingly and intelligently waived the right he had invoked. Id.

In Edwards, the Supreme Court noted that once a defendant initiates contact with law enforcement, a verbal exchange will likely ensue, and that a trial court should consider the

totality of the circumstances to determine whether the defendant waived his right to counsel

prior to making an incriminating statement:

> If, as frequently would occur in the course of a meeting initiated by the accused, the conversation is not wholly one-sided, it is likely that the officers will say or do something that clearly would be "interrogation." In that event, the question would be whether a valid waiver of the right to counsel and the right to silence had occurred, that is, whether the purported waiver was knowing and intelligent and found to be so under the totality of the circumstances, including the necessary fact that the accused, not the police, reopened the dialogue with the authorities.

Id. at 486 n.9. Waiver must be made knowingly and voluntarily, though it need not be

express, but may be implied from a defendant's actions and words. United States v.

Cardwell, 433 F.3d 378, 389 (4th Cir. 2005)(citing North Carolina v. Butler, 441 U.S. 369,

373 (1979)). In assessing knowingness, courts ask whether the defendant had "full

awareness of both the nature of the right being abandoned and the consequences of the

decision to abandon it." Id. (quoting Moran v. Burbine, 475 U.S. 412, 421 (1986)). In

assessing voluntariness, courts ask whether the defendant's statement was "the product of

a free and deliberate choice [or the result of] intimidation, coercion, or deception." Id.

> 1.     Basham voluntarily waived his right to counsel.

Basham's demonstration of how Alice Donovan was killed was clearly the product

of a free and deliberate choice. The environment during the search was not threatening or

coercive. It was always cordial. Tr. 02/25/04 at 60, 69-70. Basham spoke with his counsel

throughout the day, and breaks were taken. Tr. 12/04/12 at 1256. Testimony revealed that

during the search for the purse strap counsel was close enough to Basham that he could have

been by Basham's side within seconds. Tr. 12/04/ 12 at 1265 ("we were all there in an area not much bigger than this courtroom"). The record shows that Basham was never hesitant to make his desires and needs known, and he usually did not hesitate to say or do what he wanted, without prompting, with or without counsel by his side. So there is no reason to believe that Basham was intimidated or coerced into not seeking counsel prior to the demonstration.

Further, Basham was not asked, much less coerced, to demonstrate how Alice Donovan was killed. At Basham's trial, Sheriff Hewett testified that after the vans returned to the cemetery, Basham wanted to walk toward the woodline to show him the area where the strap was thrown. Tr. 09/27/04 at 38. Thus, Basham initiated the subsequent exchange regarding the purse strap. Sheriff Hewett testified that as he and Basham walked toward the woodline, Basham pointed out where they had parked the BMW. Id. He said Basham started to breathe heavier, his lips quivered, his eyes welled up with tears, and he continued talking. Id. at 39. Hewett testified at trial that Basham then "took his hands together and did this (indicating)," and said "'then I threw it over there. Check in those trees over there.'" Id. While Hewett's testimony at the Jackson v. Denno hearing suggests that the demonstration of the use of the purse strap occurred after Sheriff Hewett asked Basham: "[H]ow did you do that?", there is nothing in the record to suggest the question was intended to elicit anything other than how Basham threw the purse strap. "That" obviously referred to something Basham had said. Since Basham had wanted to show Hewett where the strap was

thrown, the logical inference is that "that" referred to the throwing of the strap.

The conversation predicating Hewett's question involved the throwing of the strap. How Basham threw the strap - whether it was slung, thrown overhanded or underhanded - would obviously have affected the direction in which the strap sailed. The fact that Basham may have included a demonstration of how Alice Donovan was strangled prior to demonstrating how he threw the purse strap is no indication that Hewett was asking Basham to tell him how the purse strap was used.[3] As Basham's counsel stated: "Brandon, when we rode around in the car, said some things that were not the result of any interrogation. I mean, he would just speak out." Tr., Oct. 9, 2012 at 37. Thus, Basham's demonstration was given voluntarily and of his own free will.

### 2.    Basham's waiver was knowing.

Basham's waiver was also knowing. Between November 19th and 25th, he had been advised of his Miranda rights at least four times. Tr. 09/24/04 at 134-135, 160, 188, 223-224, 240, 255; Tr. 09/27/04 at 74. So, he was well aware that he had a right to have counsel present, and he agreed to waive his rights and to speak with agents. Tr. 09/24/04 at 135. Attorney Richard Hughes, who was appointed to represent Basham in Kentucky, told agents that Basham wanted to help find Alice Donovan. Tr. 12/04/12 at 1230-1231. Pursuant to

---

[3] In order to argue that testimony about the demonstration should be suppressed, trial counsel would have had to assert that Sheriff Hewett was, indeed, asking Basham how he killed Alice Donovan. Trial counsel may not have wanted to risk this development of the record for fear that an Edwards motion would be denied. Thus, leaving the record ambiguous was likely a sound tactical decision by trial counsel.

11

his request, Basham was brought to South Carolina to assist during the Thanksgiving Day search. This necessarily required Basham to communicate with law enforcement. Id. As his counsel pointed out, there had to be some communication back and forth, because "it's hard to find a body without talking." Tr., 10/10/12 at 218-219. Mr. Littlejohn testified during the evidentiary hearing: "[O]ur purpose was to go and try and find Miss Donovan." Tr. 12/04/12 at 1234. To that end, counsel permitted Basham to talk directly to law enforcement because Mr. Littlejohn "didn't want to run the risk of him saying something to me and me getting it wrong and then not finding Miss Donovan." 12/04/12 at 1238.

Basham knew that by talking with agents in an effort to find Alice Donovan's body, he was implicating himself in the murder. However, Basham's counsel believed the Thanksgiving Day search would provide the only opportunity for Basham to assist in finding Alice Donovan's body. Tr. 10/10/12 at 222. In counsel's view, time was of the essence, and there was an urgent need to find Alice Donovan, with Basham's assistance. Tr. 12/04/12 at 1252. Counsel knew Basham's best, and probably only, hope for avoiding the death penalty would be for him to assist in finding Alice Donovan. Tr. 12/04/12 at 1252-1253; Tr. 10/09/12 at 35; Tr. 10/10/12 at 219. Thus, the record shows Basham was fully aware of his rights and the consequences of a decision to abandon them.

III.   Even if the Court were to find that counsel were deficient for failing to raise the _Edwards_ issue, this Court should find there was no prejudice.

Even if Basham could show that counsel's performance was deficient because they did not move to suppress his demonstration of the use of the purse strap, Basham cannot

12

show that the deficiency so prejudiced his defense as to deprive him of a fair trial.   Under Strickland, to demonstrate prejudice, Basham must show a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 694.

As discussed in the Government's Response to Basham's § 2255 Motion, Basham could not have been prejudiced by the purse strap demonstration because he had already admitted his involvement in the murder.  Indeed, Basham could not have credibly denied his involvement in the murder of Alice Donovan, since his abduction of her was on videotape. To make matters worse for him, Basham's intended victims of a similar kidnapping attempt on the night Basham was apprehended had identified him.  In an apparent effort to help himself, Basham requested to be transported to South Carolina to help find Alice Donovan's body.  At the Jackson v. Denno hearing Mr. Littlejohn pointed out the dilemma this posed: "Now, the fact that he was going to attempt to point out the location where Ms. Donovan's body was, obviously there was no way to keep this from being evidence later on, and hopefully it would be evidence in Brandon's favor."  Mot. Hrng. Tr. 02/25/04 at 137. Basham's admission that he knew where the body was located implicated him in the murder. Prior to demonstrating the use of the purse strap, Basham also told agents that he and Fulks had drug Alice Donovan's body about 50 feet and had covered it with leaves.  02/25/04 at 76, 79.   Consequently, when Basham momentarily walked to the cemetery's edge with officers, he revealed nothing more to them than had already been provided - that he was a full

participant in the abduction and murder of Alice Donovan.

Further, subsequent to the search, Basham called his former teacher's aide and admitted: "We killed them." Tr. 09/27/04 at 228-229. Basham's verbal admission to someone outside law enforcement that he and Fulks had killed Alice Donovan was additional direct evidence of Basham's involvement. With this admission, plus the mountain of evidence against Basham, he would have been convicted and sentenced to death even if the testimony regarding his demonstration of the use of the purse strap had been suppressed. The quantity and the nature of the evidence were simply too great. Therefore, there was not a reasonable probability that counsel's failure to move to suppress the demonstration would have changed the result of the proceeding.

Respectfully submitted,

William N. Nettles
United States Attorney


By: s/Jimmie Ewing
Jimmie Ewing (ID No. 7292)
Robert F. Daley, Jr. (ID No. 6460)
Jeffrey Mikell Johnson (ID No. 10587)
William Witherspoon (ID No. 5945)
Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, South Carolina 29201
(803) 929-3000

February 20, 2013