UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>          Plaintiff,<br>-v-<br><br>BRANDON LEON BASHAM,<br><br>          Defendant. | No.  4:02-992-JFA<br><br>Judge Joseph F. Anderson, Jr.<br><br>Defendant Brandon Leon Basham's Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure |

Defendant Brandon Leon Basham, through undersigned counsel, moves pursuant to Fed. R. Civ. P. 59(e) to alter or amend the Court's Order Denying Petition for Relief Under 28 U.S.C. § 2255 ("Order") (Docket Number ("Dkt.") 1577) and the accompanying Judgment (Dkt.  1578).  Pursuant to Rules 7.04 and 7.05 of the Local Civil Rules for the United States District Court for the District of South Carolina, Mr. Basham's Motion to Alter or Amend Judgment is supported by the attached Memorandum in Support.

Respectfully submitted this 3rd day of July, 2013.

s/Julia Grace Mimms
Julia Grace Mimms, Esquire
Attorney for Defendant
Law Office of Julia G. Mimms, P.A.
1001 Elizabeth Avenue, Suite 1A
Charlotte, North Carolina 28204
(704) 333-1301 Telephone

1

<u>s/Michael L. Burke</u>
Michael L. Burke (Arizona Bar No. 013173)
Sarah Stone (Arizona Bar No. 022713)
Assistant Federal Public Defenders
850 West Adams, Suite 201
Phoenix, Arizona 85007
michael_burke@fd.org
sarah_stone@fd.org
Telephone: (602) 382-2818
Facsimile: (602) 889-3960

Attorneys for Defendant
Brandon Leon Basham

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br> -v- <br><br> BRANDON LEON BASHAM, <br><br> Defendant. | No. 4:02-992-JFA <br><br> Judge Joseph F. Anderson, Jr. <br><br> Memorandum in Support of Defendant Brandon Leon Basham's Motion to Alter or Amend Judgment Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure |

Defendant Brandon Leon Basham requests that the Court alter or amend its Order and Judgment of June 5, 2013. Dkt. 1577 and 1578. Mr. Basham respectfully submits that the Court's Order contains clear errors of law that undermine the Court's holdings and warrant correction by the Court.

## BACKGROUND

In September 2004 a jury convicted Mr. Basham of, among other crimes, carjacking resulting in death and kidnapping resulting in death. Tr. 9/30/04 at 56-58. In November 2004, the same jury returned verdicts of death for those two counts and this Court subsequently imposed sentences of death by lethal injection for the counts, as well as various terms of years totaling 55 years for the other crimes for which Mr. Basham was convicted. Tr. 11/2/04 at 4-14; Tr. 2/14/05 at 57-64.

The United States Court of Appeals for the Fourth Circuit affirmed Mr. Basham's convictions and sentences. *United States v. Basham*, 561 F.3d 302 (4th Cir. 2010). Mr. Basham filed his Motion for Collateral Relief Pursuant to 28 U.S.C. § 2255 ("§ 2255 Motion") on June 1, 2011 (Dkt. 1394), and this Court conducted an evidentiary hearing in October and December 2012. On June 5, 2013, it issued an order denying the § 2255 Motion in its entirety. Dkt. 1577. That order and the accompanying judgment are the subject of this motion to alter or amend.

### RULE 59(e)

The Fourth Circuit recognizes three grounds for amending a judgment pursuant to Rule 59(e) of the Federal Rules of Civil Procedure: (1) to accommodate an intervening change in the law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice. *Pacific Ins. Co. v. American National Fire Ins. Co.*, 148 F.3d 396, 403 (4th Cir. 1998). In this Motion, Mr. Basham invokes the third of these grounds. Specifically, he submits that, in the incidents identified in this Motion, the Court has either committed clear errors of law or has misconstrued the record in such a way that its ruling, if allowed to stand, will result in a manifest injustice.[1]

---

[1] Mr. Basham continues to assert that all claims set forth in his § 2255 Motion are meritorious. His decision not to address any particular claim in this motion constitutes neither a waiver nor a withdrawal of that claim. Rather, Mr. Basham

4

**ARGUMENT**

**Claim 11**

Mr. Basham alleged in Claim 11 of his § 2255 Motion that the Government violated its due process obligations under *Napue v. Illinois*, 360 U.S. 264 (1959), and *Giglio v. United States*, 405 U.S. 150 (1972), when it failed to correct testimony from Sheriff Ronald Hewett that it knew or should have known to be false. *See, e.g.*, Dkt. 1465 at 62-72. In its Order of June 5, 2013, the Court found Claim 11 to be procedurally defaulted and, in the alternative, to be meritless. Dkt. 1577 at 46-50. Mr. Basham respectfully submits that the Court's analysis of Claim 11 is premised on a clear error of law and must be reconsidered.

As a threshold matter, the Court's characterization of Claim 11 as a claim concerning the "Government's alleged inconsistent positions regarding the strap statement," Dkt. 1577 at 46, reflects a crucial misunderstanding of the nature and constitutional basis of Mr. Basham's allegation. Claim 11 does not concern the conflicting positions the Government adopted in the Fulks and Basham trials concerning who wielded the purse strap used to strangle the victim. Rather, it addresses the Government's indisputable obligation to correct testimony it knew or should have known was false.

---

addresses in this motion claims in which the Court has committed a clear error of law that should be corrected before this case is reviewed on appeal.

This Court's analysis of Mr. Basham's *Napue/Giglio* claim commits clear error in at least two aspects. First, it mistakenly limits *Napue*'s scope to the Government's *knowing* use of false testimony. *See* Dkt. 1577 at 48 ("*Napue* prohibits the government from using testimony known to be false in a criminal case."). *Napue* and *Giglio* impose a higher burden on the prosecution than simply prohibiting the affirmative use of perjured testimony. While it is true that "[a] conviction acquired through the knowing use of perjured testimony by the Government violates due process," *United States v. Kelly*, 35 F.3d 929, 933 (4th Cir. 1994) (citing *Napue*, 360 U.S. at 269), due process is violated "regardless of whether the Government solicited testimony it knew or *should have known* to be false or *simply allowed such testimony to pass uncorrected*." *Id.* (emphasis added) (citing *United States v. Agurs*, 427 U.S. 97, 103 (1976); and *Giglio*, 405 U.S. at 153).

This Court expressly found in its Order that "the government . . .shied away from the opportunity to ask Hewett to be more specific." Dkt. 1577 at 33. The Government may not, consistent with due process, "shy away" from the truth in a criminal prosecution when it has reason to believe, or should have reason to believe, that a witness has presented false testimony. Mr. Basham submits that the only reasonable explanation for the Government's failure to ask Sheriff Hewett "to be more specific" was its concern that Hewett perjured himself when, contrary to

all other evidence in the case, he testified that Mr. Basham physically demonstrated how he (Basham) strangled the victim.  The Government, however, could not constitutionally allow such false testimony "to pass uncorrected."  *Kelly*, 35 F.3d at 933.  By limiting its review of Mr. Basham's *Napue/Giglio* claim to the question of the Government's *knowing* use of false testimony, Dkt. 1577 at 48, the Court thus committed clear error.

Second, and more troubling, although the Court acknowledges Mr. Basham's reliance on *Napue* and *Giglio*, it fails to apply those cases to the issue presented.  Instead, the Court conducts an analysis of the unrelated issue of whether the Government presented contradictory or inconsistent theories at the Basham and Fulks trials.  *See* Dkt. 1577 at 49-50.  The issue presented by Claim 11, however, is not whether the Government presented inconsistent theories at the two trials, but whether it sat by in silence at Mr. Basham's trial when Sheriff Hewett presented testimony that the Government knew or should have known to be false.

Here, the understanding of both the prosecution and its case agent, FBI Agent Jeffrey Long, was that, during the Thanksgiving Day search, Mr. Basham implicated his co-defendant, Chadrick Fulks, as the actual killer of the victim.  For example, as Mr. Basham has previously noted, under direct examination by AUSA

Johnny Gasser before the Grand Jury on April 22, 2003, Agent Long testified as follows:

> AUSA Gasser:     And Mister Basham – Mister Basham's version of Ms. Donovan's death indicated who actually killed Mister Fulks, through Mister Basham's version of events?
>
> Agent Long:     Chaddrick [sic] Fulks.
>
> AUSA Gasser:     And did Mister Basham, though his various version of events provide different means or methods that Mister Fulks may have killed Ms. Donovan?
>
> Agent Long:     Yes
>
> AUSA Gasser:     And how were they?
>
> Agent Long:     Strangulation by a purse strap and then possibly a – a throat slashing.

(Tr. 4/22/03 at 71-72.)

At Mr. Basham's trial, Sheriff Hewett testified for the first time that Mr. Basham had demonstrated that he (Basham) was the actual killer.  Hewett's testimony was contrary to all other evidence in the case, and the Government had a due process obligation not to allow it to stand uncorrected.  *Kelly*, 35 F.3d at 933. By doing nothing when presented with testimony from Hewett that it had reason to know was false, the Government violated Mr. Basham's guarantee of due process, and by failing to address Mr. Basham's claim within the context of *Napue* and *Giglio*, this Court committed clear error.

The Court makes much of the supposed ambiguity of Sheriff Hewett's testimony concerning Mr. Basham's alleged demonstration concerning use of "the strap." *See, e.g.*, Dkt. 1477 at 31-34. For example, the Court focuses on Hewett's use of the passive, rather than the active, voice as a factor contributing to the statement's ambiguity. *Id.* at 32. Of course, the statement was spoken by Hewett in court, and the jury (as well as the prosecution) would have been able to hear vocal inflections that almost certainly would have dispelled any ambiguity as to Hewett's intent in the statement. Nevertheless, the alleged ambiguity of the statement cannot immunize the Government from its obligations under the Due Process Clause. If, as the Court concludes, Sheriff Hewett's "strap" testimony was ambiguous as to whether Mr. Basham, contrary to the parties' previous understanding of the evidence, implicated himself as Alice Donovan's actual killer, the Government had an obligation to investigate the veracity of Hewett's testimony on this point. "When a prosecutor suspects perjury, the prosecutor has a duty to at least investigate. The duty to act 'is not discharged by attempting to finesse the problem by pressing ahead without a diligent and good faith attempt to resolve it." *Morris v. Ylst*, 447 F.3d 735, 744 (9th Cir. 2006) (quoting *Northern Mariana Islands v. Bowie*, 243 F.3d 1109, 1118 (9th Cir. 2001)).

The Court's Order, however, fails to address this important aspect of the Government's due process obligation. By focusing instead on whether the

Government "adopted" Mr. Basham's "self-serving statement that Fulks was the killer," Dkt. 1577 at 49, the Court applies an incorrect legal standard. It is irrelevant to the due process claim before the Court in Claim 11 whether or not the prosecution believed Mr. Basham's statements to law enforcement officers that Fulks was the actual killer. The issue is whether the Government knew or had reason to know the Sheriff Hewett was presenting false testimony when he testified, contrary to all other evidence in the case, that Basham had implicated himself as the actual killer. Moreover, it is not sufficient for the Court to conclude that the Government could not have been *certain* whether Hewett committed perjury. The Government had an affirmative obligation to investigate this issue to determine whether Hewett testified falsely. It could not, as the Court found that it did, simply "sh[y] away" from the issue. Dkt. 1577 at 33.

Mr. Basham acknowledges that the Court's merit analysis of his *Napue/Giglio* claim is offered as an alternative ruling to its primary conclusion that the claim is procedurally defaulted. *See* Dkt. 1577 at 48. Nevertheless, the Court's apparent misunderstanding of Claim 11, and its misstatement of the controlling constitutional standard, necessarily informs the Court's corollary ruling that Mr. Basham has failed to establish cause and prejudice. Specifically, the Court concludes that all of the issues raised in Mr. Basham's direct appeal "were superior to the issue asserted in Claim 11." *Id.* Yet, the Court premises its procedural

default ruling on an analysis of the merits of Claim 11 that is clearly erroneous. Until this Court conducts an appropriate analysis of the merits of Mr. Basham's *Napue/Giglio* claim, it cannot reasonably conclude that that claim is less meritorious than those raised in his direct appeal.

**Claim 15**

In Claim 15 of his § 2255 Motion, Mr. Basham alleged that his trial attorneys rendered ineffective assistance of counsel when they failed properly to object to the admission of extensive and unfairly prejudicial prior act evidence concerning the kidnapping of Samantha Burns in West Virginia. Dkt. 1394 at 60-67. Mr. Basham argued that no justifiable strategy could have supported trial counsel's utter failure to limit, in any respect, the extensive and frequently emotional testimony of several witnesses who testified about the life and disappearance of Ms. Burns. *See id.*; *see* also Dkt. 1465 at 85-88. At the evidentiary hearing, Mr. Basham presented the testimony of his legal standard-of-care expert, Larry Hammond, who opined that the performance of trial counsel in this regard fell below the minimal standards of competence expected of a federal capital trial attorney. Tr. 10/16/12 at 863-66. The Government offered no expert testimony to counter Mr. Hammond's opinion.

In its Order denying Mr. Basham relief, however, the Court entirely fails to address Claim 15 as a claim of ineffective assistance of counsel. *See* Dkt. 1577 at

122-29. This failure constitutes a clear error of law that this Court must remedy. Mr. Basham alleged a claim of ineffective assistance of counsel and provided uncontradicted expert testimony in support of that claim. The Court, however, inaccurately describes Claim 15 as addressing merely "evidence regarding the kidnapping and death of Samantha Burns." Dkt. 1577 at 122. Although the Court initially acknowledges that Mr. Basham "argues that his trial attorneys rendered ineffective assistance of counsel when they failed to properly object to the admission of unfairly prejudicial prior act evidence during the guilt phase of trial," Dkt. 1577 at 122, in the subsequent seven pages of its analysis, it fails to cite *Strickland v. Washington*, 466 U.S. 668 (1984), or any other decision concerning ineffective assistance of counsel. Likewise, it fails to conduct any deficient performance or prejudice analysis, as is required by *Strickland* and its progeny. Indeed, the entirety of the Court's ruling on Claim 15 is committed to an analysis of whether testimony from Samantha Burns's family and friends was properly admitted at Mr. Basham's trial.

Ironically, in examining the propriety of the testimony from Samantha Burns's family and friends, the Court (apparently as a justification for its admission of the evidence) notes several times in its analysis that trial counsel *failed to object to the evidence*. *See* Dkt. 1577 at 123, 123 n.52, and 129. Yet that is precisely the point of Claim 15. Mr. Basham alleged that his trial counsel

rendered deficient performance in failing to object to the extent and scope of the evidence concerning Samantha Burns's disappearance. The Court's Order fails to address the legal basis of Claim 15: ineffective assistance of counsel. The Court's failure to address Mr. Basham's Sixth Amendment claim constitutes clear error.

Moreover, even if Claim 15 had been merely a generic challenge to the Court's admission of the extensive testimony concerning Samantha Burns, the Court's explanation for why the evidence was admissible and not unfairly prejudicial does not withstand even cursory scrutiny. The Court maintains that "it was necessary for the government to provide for the jury the precise details relating to Burns's disappearance" so that it could "disabuse the jury of any notion that Burns was a renegade teenager who might have run away from home, eloped with a boyfriend, or disappeared for reasons of her own." Dkt. 1577 at 125.

Yet, as the Court most certainly knows, the Government informed the jury as early as its opening statement that Samantha Burns was dead. Tr. 9/13/04 at 27 (stating that Burns's decision to go shopping on November 11, 2002, "cost her her life"), 28 (stating that Basham and Fulks "chose to kill her"), 29 (referencing "Samantha Burns's death"). Moreover, Mr. Basham's own attorney stated to the jury in opening statements that his "heart [went] out to the family of Samantha Burns for what happened to her," which he described as "horrible" and "despicable." *Id.* at 62-63.

The possibility that Samantha Burns had voluntarily "run away" or "eloped" was never put forth by the defense and was never suggested to the jury. To the contrary, the jury heard ample evidence (both through testimony and stipulation) to convince it that Ms. Burns was dead. For example, the Government presented testimony that law enforcement, acting on information received from the FBI after Mr. Basham's arrest, searched for Samantha Burns's body in the Guyandotte River in West Virginia. Tr. 9/23/04 at 31-50. The jury similarly heard testimony and saw photographic evidence indicating that a Caucasian male in a ski mask had attempted to use Samantha Burns's ATM card on the night she disappeared. Tr. 9/23/04 at 89-93. Mr. Basham's trial counsel *stipulated* with the Government that the person depicted in those photographs was Mr. Basham's co-defendant, Chadrick Fulks. *Id.* at 93. Further, the jury heard testimony from Sergeant Arthur Arnold of the West Virginia State Police that, based on statements Mr. Basham made to law enforcement officers after his arrest, he had informed Samantha Burns's parents that she was dead. *Id.* at 108-09. Moreover, one of Mr. Basham's prior attorneys, Richard Hughes, testified that Mr. Basham had authorized him to inform law enforcement that Samantha Burns was dead. *Id.* at 232-34. In fact, the Government concluded its examination of Mr. Hughes with the following:

> Mr. Schools:     And once again, Mr. Hughes, based on the information that you were authorized to provide, no question about it, Samantha Burns is dead?

Mr. Hughes:          No question.

Tr. 9/ 23/04 at 239.

Thus, it is insupportable for the Court to conclude that it was "necessary" for the Government to call to the stand the multiple family members and close friends of Ms. Burns to establish that her disappearance was involuntary. Dkt. 1577 at 125. Plainly, the voluntariness of Ms. Burns's disappearance was never at issue in Mr. Basham's trial.

Mr. Basham respectfully submits that the Court committed clear error in its adjudication of Claim 15. First, it entirely failed to analyze the claim as a Sixth Amendment claim of ineffective assistance of counsel. Second, its conclusion that "it was necessary for the government to provide for the jury the precise details relating to Burns's disappearance" so that it could "disabuse the jury of any notion that Burns was a renegade teenager who might have run away from home, eloped with a boyfriend, or disappeared for reasons of her own," Dkt. 1577 at 125, is plainly unsupported by the record. Samantha Burns's kidnapping and murder were never contested by the defense, and the jury was informed from the very outset of the case that Ms. Burns was dead. The Court's justification for the admission of this evidence is clearly erroneous.

## CONCLUSION

For the foregoing reasons, Mr. Basham requests that the Court alter or amend its Order and Judgment in this case and grant Mr. Basham appropriate relief.

Respectfully submitted this 3rd day of July, 2013.

s/Julia Grace Mimms
Julia Grace Mimms, Esquire
Attorney for Defendant
Law Office of Julia G. Mimms, P.A.
1001 Elizabeth Avenue, Suite 1A
Charlotte, North Carolina 28204
(704) 333-1301 Telephone

s/Michael L. Burke
Michael L. Burke (Arizona Bar No. 013173)
Sarah Stone (Arizona Bar No. 022713)
Assistant Federal Public Defenders
850 West Adams, Suite 201
Phoenix, Arizona 85007
michael_burke@fd.org
sarah_stone@fd.org
Telephone: (602) 382-2818
Facsimile: (602) 889-3960

Attorneys for Defendant
Brandon Leon Basham

## Certificate of Service

I hereby certify that on July 3, 2013 a copy of the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. All other parties will be served by regular U.S. mail. Parties may access this document through the Court's system.

Stephanie Bame
Legal Assistant
Capital Habeas Unit