IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Cr. No. 4:02-992-JFA |
| | ) | |
| v. | ) | |
| | ) | |
| BRANDON LEON BASHAM | ) | |

**MEMORANDUM IN RESPONSE TO PETITIONER'S MOTION
TO ALTER OR AMEND JUDGMENT PURSUANT TO RULE 59(e)
OF THE FEDERAL RULES OF CIVIL PROCEDURE**

The United States respectfully requests the Court deny Petitioner Brandon Leon Basham's ("Basham") Motion to Alter or Amend Pursuant to Rule 59(e) of the Federal Rules of Civil Procedure based on the following.

I.   Law Governing Rule 59(e)

Reconsideration of a judgment is an extraordinary remedy that should be used sparingly. Pac. Ins. Co. v. Am. Nat'l Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998). A motion to alter or amend a judgment may be granted for only three reasons: (1) to follow an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent a manifest injustice. Id. "Rule 59(e) permits a court to alter or amend a judgment, but it may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment." Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n. 5 (2008). It is not a vehicle for re-

1

argument of the very issues a district court has previously decided.  Delong v. Thompson, 790 F.Supp. 594, 618 (E.D.Va. 1991).   Mere disagreement with a district court's ruling does not support a Rule 59(e) motion.  Rivas v. United States, 2009 WL 4800772 (W.D.N.C. 2009)(citing Hutchinson v. Staton, 994 F.2d 1076 (4th Cir. 1993)).

   II.  The Court did not commit clear error in rejecting Claim 11.

Basham alleged in Claim 11 of his §2255 motion that the Government engaged in misconduct, and violated its due process obligations under Napue v. Illinois, 360 U.S. 264 (1959), and Giglio v. United States, 405 U.S. 150 (1972), when it failed to correct testimony by Sheriff Ronald Hewett which Basham alleges to be false.  Dkt. Entry No. 1393 at 54.  The Court found Claim 11 to have no merit.  In order to prevail on this claim, Basham needed to demonstrate that: (1) the testimony was false; (2) the Government knew the testimony was false; and (3) there is a reasonable probability that the false testimony could have affected the verdict.  United States v. Roane, 378 F.3d 382, 400 (4th Cir. 2004)(internal citations omitted).   The Court did not clearly err in rejecting Claim 11.

   A.   The Court understood and addressed the issue raised by Basham in Claim  11.

Basham asserts that the Court's captioning of Claim11 in its order denying relief "as a claim concerning the 'Government's alleged inconsistent positions

regarding the strap statement,' reflects a crucial misunderstanding of the constitutional basis of Mr. Basham's allegations." Pet.'s Mem. at 5. Basham states: "The issue is whether the Government knew or had reason to know that Sheriff Hewett was presenting false testimony when he testified, contrary to all other evidence in the case, that Basham had implicated himself as the actual killer." Id. at 10.

The Court's caption in its order, however, reflects the basis Basham sets forth for his argument. Basham's entire claim is based on an allegation that Sheriff Hewett's testimony was false, and that the "evidence" of this falsity, and of the Government's knowledge of it, is that the Government took "inconsistent positions" regarding whether Fulks or Basham used a purse strap to kill Alice Donovan. In his Reply to the Government's Response to his § 2255 Motion, Basham argued: "The Government cannot have it both ways. Either the Government misrepresented Sheriff Hewett's testimony to the Court at Fulks's trial, or they misrepresented it here." He further complained that the Government's closing argument relied on "the testimony of Sheriff Hewett that is in direct contradiction to the Government's position at Fulks's trial that Hewett testified that Basham showed how Fulks strangled Alice Donovan." Dkt. Entry No. 1465 at 70-71. Thus Basham's complaint that the Court mischaracterized his claim, and that

"Claim 11 does not concern conflicting positions the Government adopted at the Fulks and Basham trials . . . ." is incorrect.

The Court understood and completely addressed Basham's claim. First, the Court's Order stated Basham's claim as he presented it. Order at 46. It addressed the basis of Basham's claim, discussing the application of the case law argued by Basham to the facts presented by Basham: "Napue prohibits the government from using testimony known to be false in a criminal case. Here, it is argued that Sheriff Hewett's testimony regarding Basham's demonstration of how Basham allegedly used the strap to strangle Donovan was false and that the government knew it." Order at 48. The Court proceeded to address what Basham presented as "proof" that the Government allowed false testimony by Sheriff Hewett - Agent Long's grand jury testimony and AUSA Gasser's statement during a sidebar conference at Fulks' trial.

In Claim 11, Basham argued that because F.B.I. Agent Jeff Long testified before the grand jury that, during the search at Bee Tree Farms, Basham stated that Fulks strangled Alice Donovan, the Government knew Sheriff Hewett was being untruthful when he demonstrated at trial how Basham demonstrated how a purse strap was used to strangle Alice Donovan. Pet.'s § 2255 Mot., Dkt. No. 1393 at 54-55  In response to Basham's argument, the Court observed: "Long's 302 report was not introduced as an exhibit at Basham's trial and merely memorialized

Basham's self-serving statements during the investigation.  In no way does it reveal an inconsistent position or false testimony employed by the government at Basham's trial."  Order at 50.

The Court's order also discussed Basham's argument that during a sidebar discussion at Fulks' trial, the prosecutor stated that Basham had said that Fulks strangled Alice Donovan.  Basham argued in his Reply to the Government's Response to his § 2255 motion that the Government's position regarding the purse strap during this sidebar contradicted its position at Basham's trial.  Reply, Dkt. No. 1465, at 65, 71.  The Court pointed out that the prosecutor was arguing that the rule of completeness would require the Court to allow testimony regarding all of Basham's statements, most of which inculpated Fulks, if it allowed testimony regarding Basham's "deer statement."[1]  See Order at 49.  The Court found that the prosecutor's reliance on the rule of completeness during debate over an evidentiary issue does not require a finding that the Government adopted Basham's self-serving statement that Fulks was the killer.  Order at 49.

Thus, the Court discussed the basis for Claim 11 - that Sheriff Hewett allegedly lied, as evidenced by Agent Long's grand jury testimony and AUSA

---

[1]  The "deer statement" was an incomplete sentence Basham blurted out during the Bee Tree Farms search.  Basham was stopped mid-sentence by his counsel.  Fulks had wanted to use the partial statement as evidence that Basham was the actual killer of Alice Donovan.

5

Gasser's sidebar remark.  Having found no merit to the basis, there was nothing more to address. Simply put, Basham offered no evidence that Sheriff Hewett's testimony was perjured, so he failed to satisfy the threshold first prong of the Fourth Circuit's three-prong test.

> B.     The Court did not limit the scope of *Napue's* holding.

Basham claims that the Court mistakenly limited Napue's scope to the Government's knowing use of false testimony.  He asserts that the Fourth Circuit, in United States v. Kelly, 35 F.3d 929, 933 (4th Cir. 1994), held that due process is violated if the Government allows to go uncorrected testimony that it should have known to be false.  The Government notes that in Claim 11 of Basham's § 2255 petition, he, himself, did not include the "should have known" language found in Kelly.[2]  Dkt. Entry 1393 at 54-57.  He only cited to Kelly when he replied to the Government's response to Claim11.  See Reply at 62.  However, it is irrelevant whether the Court considered the standard as stated in Kelly, because Basham has failed to satisfy the threshold requirement to show that the testimony of which he complains was false.  A defendant seeking to vacate a conviction

---

[2]  In Kelly, the Fourth Circuit vacated the conviction because the Government failed to furnish evidence in its possession which would have been highly damaging to the credibility of its main witness.  The court noted that were it not vacating Kelly's conviction on that basis, that it would have remanded the case to the district court to make a factual determination as to whether the main Government witness perjured herself, since factual disputes must be resolved by the district court.  35 F.3d at 935.

based on allegedly perjured testimony must show that the testimony was perjured. United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987)(citing Napue v. Illinois, 360 U.S. 264, 269 (1959)). There is nothing in the record to indicate that Hewett testified falsely. Basham has pointed to no case that requires the Government to take extraordinary measures to try to reveal a supposed falsehood in its witnesses' testimony.

      C.     Basham failed to show evidence of perjured testimony.

Basham complains that the Court failed to apply the holdings of Napue and Giglio. As discussed above, the Court addressed the bases of Basham's argument. Basham failed to carry his burden under Napue. It is the defendant's burden to show that the Government deliberately used false testimony to obtain his conviction. United States v. Griley, 814 F.2d 967, 971 (4th Cir. 1987); United States v. Verser, 916 F.2d 1268, 1271 (7th Cir. 1990). Mere inconsistencies in testimony by Government witnesses do not establish the Government's knowing use of false testimony. Griley, 814 F.2d at 971. Not every testimonial inconsistency that goes uncorrected by the Government establishes a constitutional violation.[3] 916 F.2d at 1271.

---

[3] The Government is not suggesting that Hewett's testimony was inconsistent. His testimony at Basham's trial was consistent with his testimony during the Jackson v. Denno hearing that Basham demonstrated how the purse strap was used.

Basham has presented nothing, and the Government is aware of nothing, to show that Hewett testified falsely.  Basham's only support for his claim that the Government allowed perjured testimony is based on his own self-serving statements made to investigators during the Bee Tree Farms search.  Agent Long's hearsay testimony before the grand jury regarding Basham's statements set forth in a report was not evidence.  AUSA Gasser's paraphrasing, during a sidebar conference, of Basham's statements as related by Sheriff Hewett was not evidence.  That these statements may have been in conflict with other statements made by Basham in no way proves that Sheriff Hewett's testimony was false or that the Government should have suspected that it was false.  See Grose v. United States, Crim. Action No. 5:05-0261, 2011 WL 7461902, *10 (S.D.W.Va. Dec. 19, 2011)(discrepancies or inconsistencies in testimony of government witness's testimony did not establish knowing use of perjured testimony, but, rather go to the credibility of the witness).

After he was apprehended in West Virginia, Basham changed parts of his story several times.  Thus, Basham's statements that Fulks was the killer would not have been cause for the Government to believe, or even suspect, that Sheriff Hewett was being untruthful when he testified that Basham showed him how the purse strap was used, especially since other evidence at Basham's trial tended to

confirm Sheriff Hewett's testimony.   Indeed, the evidence suggests that both Basham and Fulks participated in the actual killing of Alice Donovan.

Tina Severance testified that Basham and Fulks were like "two peas in a pod." Tr. Sept. 14, 2004 at 2-247.  She said they were always talking "amongst themselves," and that they did everything together. Id. at 2-249.  Clifford Jay testified that Basham admitted to him:  "We killed them."  Information that came to light after Basham's trial supports Sheriff Hewett's, Tina Severance's and Clifford Jay's testimony.  During its investigation of Basham's claims of ineffective assistance of counsel, the Government discovered that Basham had told Richard Hughes, his attorney in West Virginia, regarding Samantha Burns' murder, that he "grabbed one end of Samantha Burns' backpack strap and Fulks grabbed the other and **they simultaneously strangled her**.  Basham later recounted that they took her lifeless body and rolled [it] into the river."  See  § 2255 Evidentiary Hearing, Gov't Exhibit 12 at p 5.    Just as evidence showed that Basham and Fulks had a pattern in the manner they kidnapped their female victims - three times grabbing, or attempting to grab, them from mall parking lots - evidence, along with information obtained in preparation for the § 2255 motion hearing, suggests a possible pattern in the manner in which Basham and Fulks killed their victims.  Together, they strangled them.

In summary, there was, and is, no reason for the Government to suspect that Hewett testified falsely. His testimony was corroborated by Clifford Jay's testimony. Defense counsel attempted to raise doubts regarding Sheriff Hewett's account of events by pointing out inconsistencies or gaps in the record. Defense was aware of all evidence in the Government's possession, and more. None of it established that Hewett was lying.

D.     Credibility of the witnesses is the province of the jurors.

Basham challenges the Court's characterization of Sheriff Hewett's testimony as "ambiguous." He asserts that the Court, the jurors, and the prosecution would have heard "vocal inflections that almost certainly would have dispelled any ambiguity as to Hewett's intent in the statement." Memo in Support at 9.

Those present at the trial were certainly in a better position than anyone to determine whether Hewett's testimony was ambiguous. Basham's trial counsel could have questioned Hewett further. For good reason, as discussed in the Court's Order, trial counsel chose not to continue to question Hewett regarding the strap testimony. Further, trial counsel had reason to believe that Basham may have indeed participated in the strangling of Alice Donovan. At the time, the Government was not privy to the highly-incriminating information. Basham has pointed to no case requiring the Government to attempt to impeach its witness's

10

testimony elicited in cross examination or to attempt to resolve ambiguities on redirect examination. Just as Basham's counsel had valid reasons for not asking more questions about the purse-strap demonstration, the prosecution may have had valid, if different, reasons for not asking additional questions.

Ultimately, it was up to the jurors to determine the significance of voice inflections, testimony gaps, and ambiguities. Credibility determinations are the province of jurors. See United States v. Thomas, 987 F.2d 1298, 1300 (7th Cir. 1993)("we see little merit in an argument that would force the prosecutor or trial judge to replace the jury as the arbiter of [the witness's] credibility"). It was up to the jurors to decide whether to believe any, some, or all of Hewett's testimony, and to determine how much weight to give it.[4] It is not known how much weight, if any, the jurors gave to Hewett's testimony. What is clear is that Basham has presented nothing to support his claim that Sheriff Hewett gave perjured testimony. As Basham has failed to show perjured testimony, he cannot show any error under Napue.

---

[4] Since the jurors refrained from finding that Basham actually killed Alice Donovan, it is as likely that they found Hewett's testimony regarding the purse strap demonstration to be ambiguous, or, if they did not find it ambiguous, that they may have discounted Hewett's testimony. Obviously, they did not need to find (nor did they find) that Basham's hands killed Alice Donovan in order to find him deserving of the death penalty.

11

III.     The Court did not clearly err in rejecting Claim 15.

Basham contends that the Court committed "clear error" in two ways when it rejected Basham's Claim 15.  First, he claims that the Court failed to analyze the claim as one for ineffective assistance of counsel.  Second, Basham argues that the Court's rejection of Claim 15 was wrong because the voluntariness of Burns's disappearance was never at issue and, therefore, it was unnecessary for the government to establish that her disappearance was involuntary.  Memo in Support at 11-15.   Both these contentions fail.

A. The Court correctly rejected Claim 15 because Basham suffered no prejudice from any alleged ineffective assistance.

Basham argues first that the Court failed to address Claim 15 as one that asserted ineffective assistance of counsel.  Memo in Support at 11-12.  This initial assertion is incorrect.

In addressing Claim 15, this Court noted at the outset that "Basham argues that his trial attorneys rendered ineffective assistance of counsel when they failed to properly object to the admission of unfairly prejudicial prior act evidence during the guilt phase of his trial."  Order at 122.  The Court also noted that Basham contended "that appellate counsel were ineffective in failing to raise this issue on appeal."  Id.   Clearly, this Court analyzed Claim 15 as one that asserted ineffective assistance of counsel.

It is clear that this Court reviewed Claim 15 and determined there was no prejudice resulting from any alleged ineffective assistance of counsel because the Court determined that it did not err in allowing the admission of the evidence relating to Samantha Burns's disappearance. See Order at 123-24 (noting Fourth Circuit found admission of evidence regarding Burns's kidnapping, murder and death was not error); p. 124 (noting that admission of evidence appropriate to show intent); pp. 125-28 (finding admission of evidence was "relevant to Basham's case" and not "designed to improperly appeal to sympathy of the jurors"). Such an approach--addressing the prejudice prong of Strickland v. Washington first in analyzing an ineffective assistance claim--is completely acceptable and, in fact, sanctioned by the Supreme Court:

> [A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.

Strickland v. Washington, 466 U.S. 668, 697 (1984) (court need not determine if counsel's performance was deficient before examining alleged prejudice). Unless the defendant meets the burden of proving prejudice, the court need not consider the performance prong under Strickland. Fields v. Attorney General, 956 F.2d 1290, 1297 (4th Cir. 1992). This Court's determination that the evidence was admissible necessarily demonstrated that counsel's performance was not deficient

13

and that there was no resulting prejudice.  <u>Hough v. Anderson</u>, 272 F.3d 878, 898 (7th Cir. 2001) ("An ineffective assistance claim based on a failure to object is tied to the admissibility of the underlying evidence. If evidence admitted without objection was admissible, then the complained of action fails both prongs of the <u>Strickland</u> test," as counsel's performance is not deficient and there is no prejudice).

    B. <u>Counsel had a strategic reason for their decision to allow the admission of the Burns's evidence in the guilt phase.</u>

Additionally, Basham's case does not present an instance where counsel was in any way ineffective.  There was a strategic reason to allow the admission of the evidence.  Counsel's testimony from the evidentiary hearing makes this abundantly clear.  This Court should make clear that counsel were not ineffective.

Basham argues in his motion to alter or amend that counsel were ineffective in failing to limit the extent and scope of the testimony regarding the abduction/disappearance of Samantha Burns in the guilt phase of the trial.  Memo in Support at 13.  Basham does not mention the fact that the Fourth Circuit determined that the evidence of Burns's abduction was admissible to prove intent.  <u>See</u> <u>United States v. Basham</u>, 561 F.3d 302, 329-30 (4th Cir. 2009).  This Court noted the Fourth Circuit's opinion in ruling on Claim 15.  <u>See</u> Order at 123-24.  Not only was the evidence regarding Burns's disappearance admissible but a strategic reason supports the decision to allow the admission of this evidence in the

guilt phase of the trial.

Trial counsel's apparent strategy for allowing all the evidence related to Burns's disappearance, abduction and killing in the guilt phase was straight forward--to "front" or "front load" the Burns evidence in the guilt phase. Both trial counsel testified that there was no doubt that Basham would be convicted at the guilt phase of the trial. See e.g., Evidentiary Hearing Tr. at 366 (Harris: "Oh, he was going to be convicted. There was no doubt in my mind about that."), p. 610 (Swerling: "And I don't think there was ever any question or could be any question that Mr. Basham was going to be found guilty of those offenses."). Because of the certainty that Basham was going to be convicted in the guilt phase, counsel knew they needed to prepare for the penalty phase. Id. at 468 (Swerling: "we were going to go into a second phase of the trial, the penalty phase."). No one disputes that all the evidence Basham claims should have been kept out of the *guilt* phase of the trial would have been admissible in the *sentencing* phase. Knowing this, Swerling testified that he "probably was thinking that at that point [guilt phase] about letting that kind of evidence in and not objecting to it would have been get it all in to desensitize the jury . . . try and get it up front so that we could come in later during the sentencing phase and try to argue that they should spare his life." Evidentiary Hearing Tr. at 610. Swerling later expounded on this "front loading" strategy: "[W]e . . . let a lot of evidence come in in the guilt or innocence

15

phase trying to let the jury know what they were going to be - - what was going to be coming [in] anyway. So sort of trying to desensitize them to what we knew was going to be coming in the penalty phase of the trial, front loaded in the guilt or innocence phase. For example, the Samantha Burns kinds of stuff. It was coming in." Evidentiary Hearing Tr, at 680. Furthermore, Swerling was certain that such a strategy to allow this evidence in without limitation in the guilt phase did not harm Basham. Evidentiary Hearing Tr, at 689 ("I did not think that any of the evidence that came in on the, still don't think, that any of the evidence that came in about Samantha Burns affected the verdict" in guilt phase.).[5]

This strategic explanation for allowing the admission of evidence related to Burns's disappearance, abduction and killing in the guilt phase (and the fact that it did not impact the verdict in the guilt phase) reveals that trial counsel were not constitutionally ineffective and Basham suffered no prejudice. Under the first prong of Strickland, a reviewing court applies a strong presumption that a trial counsel's conduct falls "within the wide range of reasonable professional assistance." Strickland, 466 U.S. at 689; Harrington v. Richter, 131 S.Ct. 770, 790 (2011) (holding that courts must not "insist counsel confirm every aspect of the strategic basis for his or her actions" because there is "a 'strong presumption' that

---

[5]The fact that Basham was going to be convicted at the guilt phase no matter what further supports the conclusion that he cannot demonstrate the necessary prejudice to succeed in an ineffective assistance claim.

counsel's attention to certain issues to the exclusion of others reflects trial tactics rather than 'sheer neglect'") (quoting Yarborough v. Gentry, 540 U.S. 1, 8 (2003) (per curiam)).  A court should not "second-guess" defense counsel's performance. Strickland, 466 U.S. at 689; Roach v. Martin, 757 F.2d 1463, 1476 (4th Cir. 1985). Instead, the Court must determine what is "constitutionally compelled," not just what might appear "prudent or appropriate" in the "the artificial light of hindsight." United States v. Giannone, 2011 WL 1576198, at *2 (D.S.C. Apr. 26, 2011) (citations omitted).

In this case, counsel provided an obvious strategic reason for not objecting to the evidence in the guilt phase.  This Court did not commit clear error in rejecting Claim 15 because "indulg[ing] a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," Roach v. Martin, 757 F.2d at 1476, at a minimum "under the circumstances, the challenged action, might be considered sound trial strategy." Strickland, 466 U.S. at 689.[6]  The decision to front load the Burns evidence in the guilt phase certainly falls within the wide range of reasonable professional assistance.

---

[6] The Fourth Circuit goes so far as to presume that challenged acts are likely the result of a sound trial strategy.  See e.g., Spencer v. Murray, 18 F.3d 229, 233 (4th Cir. 1994).

17

C. The Court was correct in concluding that the admission of the evidence related to Burns's disappearance, abduction and killing was not error.

1. Basham raises this argument for first time in his motion.

As an initial matter, Basham's claim in his motion to alter or amend, Memo in Support at 13-15, that the admission of the Burns evidence was error because the voluntariness of Burns's disappearance was never at issue (and, therefore, it was unnecessary for the government to establish that her disappearance was involuntary) was never raised in his §2255 motion. Rule 59(e) is not to be used to relitigate old matters or raise arguments that could have been raised prior to the entry of judgment. Exxon Shipping Co. v. Baker, 554 U.S. 471, 485 n.5 (2008). This argument could have been raised below and, therefore, should not be allowed to be raised in this Rule 59(e) motion.

2. The Evidence was admissible.

Furthermore, such a claim is without merit. In Basham's trial, there was never a formal stipulation or concession that Basham kidnapped and killed Burns or that Burns was dead. At most, the defense never contested Burns's kidnapping and murder. Memo in Support at 15 ("never contested by the defense"). Therefore, any claim that the government did not have to prove that Burns's disappearance was involuntary is not correct.

Additionally, even if Basham had stipulated that he killed Burns or that she was dead, such a stipulation would not have precluded the admission of the

18

evidence at issue.  The Supreme Court and the Fourth Circuit have both held that such a stipulation does not render evidence tending to prove the underlying stipulation irrelevant. See Old Chief, 519 U.S. 172, 178–79 (1997); United States v. Dunford, 148 F.3d 385, 394–95 (4th Cir.1998).  "[T]he prosecution[,] with its burden of persuasion[,] needs evidentiary depth to tell a continuous story." Old Chief, 519 U.S. at 190.  "[T]he prosecution is entitled to prove its case by evidence of its own choice," and "a criminal defendant may not stipulate or admit his way out of the full evidentiary force of the case as the Government chooses to present it." Id. at 186-87.

Furthermore, the challenged testimony would not have been precluded pursuant to Rule 403.  "Rule 403 only requires suppression of evidence that results in unfair prejudice—prejudice that damages an opponent for reasons other than its probative value." United States v. Mohr, 318 F.3d 613, 619–20 (4th Cir.2003).  As this Court noted in it Order, this evidence was admissible for several reasons, including to show the use of a similar *modus operandi* and to show intent.  Order at 124.  It also was admissible to provide enough details regarding Burns's disappearance to disabuse the jury of any notion that Burns disappeared for reasons of her own. Id. at 125.  The testimony concerning Burns made up a very small portion of the government's overall guilt phase and there is no reason to think that the jury gave it undue weight.

19

IV.   Conclusion

For the reasons stated herein, Basham is not entitled to pursue relief pursuant to Rule 59(e).  As Basham has failed to meet the requirements of Rule 59(e), the Court should deny his motion.   His arguments and evidence are the same as those argued in his § 2255 petition and at his evidentiary hearing or new ones that could have been raised.   As Basham has failed to show that the Court Order denying his § 2255 petition rested on a clear error of law, or that it resulted in a manifest injustice, the Court should deny Basham's Motion pursuant to Rule 59(e).

Respectfully submitted,

WILLIAM N. NETTLES
UNITED STATES ATTORNEY


By:  s/Robert F. Daley, Jr.
Robert F. Daley, Jr. (#6460)
Jimmie Ewing (#7292)
Assistant United States Attorneys
1441 Main Street, Suite 500
Columbia, SC 29201
(803) 929-3000

July 31, 2013

20