**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**

|  |  |  |
|---|---|---|
| | * | |
| **UNITED STATES OF AMERICA** | | **Crim. No. 4:02-cr-992-2** |
| | * | |
| **v.** | | **Prior Civil No. 4:11-cv-70779** |
| | * | |
| **BRANDON LEON BASHAM** | | |
| | * | |

**\* \* \* \* \***

## MOTION TO VACATE CONVICTION UNDER 28 U.S.C. § 2255

Petitioner, Brandon Leon Basham, through undersigned counsel, hereby files a motion to set aside the judgment in this case on Count 6 pursuant to 28 U.S.C. § 2255. As explained below, Mr. Basham's conviction under 18 U.S.C. § 924(c), must be vacated in light of the Supreme Court's recent decisions in *Johnson v. United States*, 135 S. Ct. 2551 (2015), and *Welch v. United States*, 136 S. Ct. 1257 (2016). Furthermore, Mr. Basham's sentences on the remaining counts must be vacated and Mr. Basham must be resentenced by a jury. *Hurst v. Florida*, 136 S. Ct. 616 (2016).

### INTRODUCTION

On September 30, 2004, Mr. Basham was convicted of one count of using a firearm during and in relation to a "crime of violence" in violation of 18 U.S.C. § 924(c)(1)(A) (Count 6). The count alleged two underlying "crimes of violence" for the § 924(c) charge: carjacking resulting in death, in violation of 18 U.S.C. § 2119,

1

and kidnapping resulting in death, in violation of 18 U.S.C. § 1201. However, post-*Johnson*, carjacking and kidnapping resulting in death both categorically fail to qualify as a "crime of violence." Therefore, Mr. Basham's § 924(c) conviction is invalid.

The relevant portion of § 924(c) defining a "crime of violence" has two clauses. The first clause – § 924(c)(3)(A) – is commonly referred to as the force clause. The other – § 924(c)(3)(B) – is commonly referred to as the residual clause.[1] The § 924(c) residual clause is materially indistinguishable from the Armed Career Criminal Act ("ACCA") residual clause (18 U.S.C. § 924(e)(2)(B)(ii)) that the Supreme Court in *Johnson* struck down as void for vagueness. It follows that the § 924(c) residual clause is likewise unconstitutionally vague. Hence, a carjacking or kidnapping offense cannot qualify as a "crime of violence" under the § 924(c) residual clause. Likewise, both carjacking and kidnapping resulting in death categorically fail to qualify as a

---

[1] Under § 924(c)(3), "crime of violence" is defined as follows:

> (3)    For purposes of this subsection, the term "crime of violence means an offense that is a felony and –
>
> (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

"crime of violence" under the remaining § 924(c) force clause. Therefore, the "crime of violence" element of § 924(c) cannot be satisfied here, and a conviction cannot be constitutionally sustained under the statute.

As a result, Mr. Basham's § 924(c) conviction 1) violates due process, 2) results in a fundamental miscarriage of justice, and 3) was entered in excess of this Court's jurisdiction. Mr. Basham is entitled to relief under 28 U.S.C. § 2255(h)(2) because *Johnson* established a "new rule of constitutional law" that has been "made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

Mr. Basham's petition is timely under 28 U.S.C. § 2255(f)(3) because he filed it within one year of the Supreme Court's decision in *Johnson*, a ruling that established a "newly recognized" right that is "retroactively applicable to cases on collateral review." Therefore, Mr. Basham respectfully requests that this Court grant his § 2255 motion, vacate his conviction under 18 U.S.C. § 924(c), as well as his sentence on all remaining counts, and order that he be resentenced by a jury on all capital counts.

As grounds for this motion, Mr. Basham states as follows:

## STATEMENT OF FACTS

### A.    Conviction and Sentencing

On September 30, 2004, Mr. Basham was convicted of eight counts,

including carjacking resulting in death (Count 1), kidnapping resulting in death (Count 2) and possession of a firearm in furtherance of those crimes (Count 6).[2] The district court sentenced Mr. Basham to death by lethal injection on Counts 1 and 2, and to various terms totaling 660 consecutive months on the remaining counts, including 84 months on Count 6, use of a firearm during and in relation to a "crime of violence" under § 924(c).

### B.    Direct Appeal

On February 15, 2005, Mr. Basham filed a notice of appeal to the Fourth Circuit Court of Appeals. The Fourth Circuit affirmed Mr. Basham's convictions and sentences. *United States v. Basham*, 561 F.3d 302 (4th Cir. 2009). The Supreme Court of the United States denied Basham's subsequent petition for writ of certiorari on June 1, 2010. *Basham v. United States*, 130 S. Ct. 3353 (2010).

### C.    Previous § 2255 Motion

On May 31, 2011 Mr. Basham filed his first motion under 28 U.S.C. § 2255. On June 1, 2011, Mr. Basham an amended motion under 28 U.S.C. § 2255. This motion was substantively identical to the motion filed on the previous day, but included but included the certification required pursuant to Rule 2(b)(5) of the

---

[2] Mr. Basham was also convicted of interstate transportation of a stolen vehicle, in violation of 18 U.S.C. § 2312 (Count 3); conspiracy, in violation of 18 U.S.C. § 371 (Count 4); conspiracy, in violation of 18 U.S.C. § 924(o) (Count 5); felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count 7); and possession of stolen firearms, in violation of 18 U.S.C. § 922(j) (Count 8).

Rules Governing Section 2255 Proceedings.  In this motion, Mr. Basham raised 34 claims for relief. On June 5, 2013, this court denied Mr. Basham's § 2255 motion. The Fourth Circuit affirmed the district court's order denying relief on June 15, 2015. *United States v. Basham*, 789 F.3d 358 (4th Cir. 2015). Mr. Basham's petition for certiorari to the Supreme Court of the United States was denied on March 21, 2016. *Basham v. United States*, __ S. Ct. __, 2016 WL 1079042 (U.S. March 21, 2016).

### D.    *Johnson v. United States*

On June 26, 2015, the Supreme Court issued its decision in *Johnson v. United States*, 135 S. Ct. 2551. In that case, the Court overruled *Sykes v. United States*, 131 S. Ct. 2267 (2011), and *James v. United States*, 550 U.S. 192 (2007), and invalidated the ACCA's residual clause as unconstitutionally vague under the Due Process Clause. In *Johnson*, the Supreme Court held that imposing an increased sentence under the residual clause of the ACCA violates the Constitution's guarantee of due process. Specifically, the Court concluded that "the indeterminacy of the wide-ranging inquiry required by the residual clause both denies fair notice and invites arbitrary enforcement by judges," and "[i]ncreasing a defendant's sentence under the clause denies due process of law." *Johnson*, 135 S. Ct. at 2257. Finding the residual clause "vague in all its applications," the Court overruled its contrary decisions in *Sykes* and *James. Id.* at 2562-63. On April 18,

2016 the Supreme Court held in *Welch v. United States*, 136 S. Ct. 1257 (2016), that *Johnson* announced a substantive new rule, and therefore applied retroactively to cases on collateral appeal.

On _____, the Fourth Circuit authorized Mr. Basham to file this motion under § 2255.

For the reasons stated below, after *Johnson* Mr. Basham's § 924(c) conviction also cannot be sustained.

### ARGUMENT

**I.     In light of *Johnson*, Mr. Basham's conviction cannot be sustained under 18 U.S.C. § 924(c) because carjacking and kidnapping fail to qualify as "crimes of violence."**

Mr. Basham's § 924(c) conviction for use of a firearm in relation to a "crime of violence" is void because the "crime of violence" element cannot be satisfied here. The predicate offenses of carjacking and kidnapping resulting in death do not qualify as "crimes of violence" as a matter of law.

Under § 924(c)(3), "crime of violence" is defined as follows:

> (3)     For purposes of this subsection, the term "crime of violence" means an offense that is a felony and –
>
> > (A)     has an element the use, attempted use, or threatened use of physical force against the person or property of another, or
> >
> > (B)     that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

The first clause – § 924(c)(3)(A) – is the force clause. The other – §

924(c)(3)(B) – is the residual clause. As discussed in the next sections, both carjacking and kidnapping categorically fail to qualify as a "crime of violence" under the residual clause because it is void for vagueness under *Johnson*. In *Johnson*, the Supreme Court struck down the ACCA's residual clause (18 § 924(e)(2)(B)(ii)) as unconstitutionally vague. 135 S. Ct. 2551, 2557 (2015). Under *Johnson*, § 924(c)'s materially indistinguishable residual clause (§ 924(c)(3)(B)) must similarly be stricken as unconstitutional.

Likewise, carjacking and kidnapping both categorically fail to qualify as a "crime of violence" under the remaining force clause (§ 924(c)(3)(A)) because 1) neither has as an element the use, attempted use, or threatened use of violent physical force, and 2) both can be accomplished without the *intentional* use, attempted use, or threatened use of the same. Therefore, Mr. Basham's conviction on Count 6 under § 924(c) cannot constitutionally be sustained.

### A.    Section 924(c)'s residual clause is unconstitutionally vague.

Neither a carjacking offense nor a kidnapping offense can qualify as a "crime of violence" under § 924(c)(3)'s residual clause because the clause is void for vagueness under *Johnson*. In *Johnson*, the Supreme Court decided that the ACCA's residual clause ("otherwise involves conduct that presents a serious potential risk of physical injury to another") is unconstitutionally vague. The decision equally applies to the parallel "crime of violence" definition in §

924(c)(3)'s residual clause. Section 924(c)(3)(B) suffers from the same two flaws that compelled the Supreme Court to declare the ACCA residual clause void for vagueness. Using § 924(c)(3)(B) to categorize a predicate conviction as a "crime of violence," therefore, violates due process.

Indeed, the Ninth Circuit in *Dimaya v. Lynch*, 803 F.3d 1110 (9th Cir. 2015) and the Seventh Circuit in *United States v. Vivas-Ceja*, 808 F.3d 719 (7th Cir. 2015) recently struck down an identical residual clause – 18 U.S.C. § 16(b) – as unconstitutionally vague in light of *Johnson*. The rationale of *Dimaya* and *Vivas-Ceja* equally applies to the determination of whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c). Relying on the same reasoning of *Dimaya* and *Vivas-Ceja*, two district courts recently found that the § 924(c) residual clause was void for vagueness. *See United States v. Lattanaphom*, __F. Supp. 3d __, 2106 WL 393545 (E.D. Cal. 2016); *United States v. Edmundson*, __F. Supp. 3d __, 2015 WL 9311983 (D. Md. Dec. 30, 2015). This Court should do the same.

    **1.**    ***Johnson* expressly overruled the "ordinary case" approach to determining whether a felony qualifies as a "crime of violence."**

In *Johnson*, the Supreme Court "began its analysis of the vagueness question by noting that the [ACCA] residual clause mandates the use of a two-step framework [under the categorical approach], to determine whether a crime is a violent felony." *Vivas-Ceja,* 808 F.3d at 721 (citing *Johnson,* 135 S. Ct. at 2557,

2562). "In the first step, the court must determine 'the kind of conduct that the crime involves in the ordinary case' as opposed to the facts on the ground in the defendant's prior case." *Id.* (quoting *Johnson*, 135 S. Ct. at 2557). The second step is also dependent on the ordinary case. Specifically, the "court must gauge whether that ordinary case of the crime presents a serious potential risk of physical injury." *Id.*

The Supreme Court held that these "two features of the residual clause conspire to make it unconstitutionally vague." *Johnson*, 135 S. Ct. at 2557. To begin with, the Court held that it is impossible for a sentencing court to even get past the first step because there is too much uncertainty about what constitutes the ordinary case of a crime. *Id.* The Court concluded that the "the residual clause offers no reliable way to choose between [] competing accounts of what 'ordinary' . . . involves." *Id.* at 2558. Specifically, the Court explained that a statistical analysis of reported cases, expert evidence, Google, and gut instinct are all equally unreliable in determining the "ordinary case." *Id.* at 2557 (quoting *United States v. Mayer*, 560 F.3d 948, 952 (9th Cir. 2009) (Kozinski, C.J., dissenting from denial of rehearing en banc)).

The Court then held that the second step of the residual clause is equally flawed because there is too much "'uncertainty about how much risk it takes' [i.e., the quantum of risk] before a court can conclude that the 'ordinary case' of a crime

is serious enough to be a violent felony." *Vivas-Ceja*, 808 F.3d at 722 (citing *Johnson,* 135 S. Ct. at 2558). To be clear, the Court's reasoning on the second step did not turn on the type of risk, i.e. "serious potential risk of physical injury." Rather, like the first step, it also turned on the doomed "ordinary case" inquiry: "It is one thing to apply an imprecise 'serious potential risk' standard to real-word facts; it is quite another to apply it to a judge-imagined [ordinary case] abstraction." *Johnson*, 135 S. Ct. at 2558. The Court explained that it was not doubting the constitutionality of any statute which "require[s] gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion.*" *Johnson* at 2561 (emphasis added). However, because under the ACCA residual clause the quantum of risk had to be assessed based on the ordinary case, the clause was constitutionally doomed. The Court held that such indeterminacy, unpredictability, and arbitrariness inherent in the "ordinary" case analysis is more than the "Due Process Clause tolerates." *Id.* at 2558.

Thus, *Johnson* not only invalidated the ACCA residual clause, but also invalidated the "ordinary case" analysis and statutory provisions that compel such an analytical framework. In other words, the only way to apply the residual clause is to use the "ordinary case" analysis, and the "ordinary case" analysis is impossible to apply in a constitutional manner.

### 2.    *Johnson* means that § 924(c)(3)(B) is unconstitutionally vague.

The statutory phrase at issue in this case is essentially the same as the ACCA residual clause.[3] To be sure, 18 U.S.C. § 924(e)(2)(B)(ii) and 18 U.S.C. § 924(c)(3)(B) are not identical.[4] But the differences have no impact on the constitutional analysis. Although the risk at issue in the ACCA is a risk of injury, and the risk at issue in § 924(c) is a risk that force will be used, this difference is immaterial to the due process problem and has no impact on the *Johnson* decision.[5]

---

[3] Courts regularly compare the similarities between the residual clause in the ACCA and the clause at issue here. Although the comparison tends to specifically address 18 U.S.C. § 16(b), that statute is identical to § 924(c)(3)(B). *See, e.g.*, *Chambers v. United States*, 555 U.S. 122, 133 n.2 (2009) (citing circuit splits on § 16(b) in the context of a residual clause case because § 16(b) "closely resembles ACCA's residual clause") (Alito, J., concurring); *United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on an ACCA case to interpret the definition of a crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (same); *United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA's residual clause and § 16(b) as "analogous"); *Roberts v. Holder*, 745 F.3d 928, 930-31 (8th Cir. 2014) (using both ACCA cases and § 16(b) cases to define the same "ordinary case" analysis); *United States v. Sanchez-Espinal*, 762 F.3d 425, 432 (5th Cir. 2014) (despite the fact that the ACCA talks of risk of injury and § 16(b) talks of risk of force, "we have previously looked to the ACCA in deciding whether offenses are crimes of violence under § 16(b)").

[4] In pertinent part, the ACCA residual clause defines a "violent felony" as an offense that "otherwise involves conduct that presents a serious potential risk of physical injury to another." 18 U.S.C. § 924(e)(2)(B)(ii). Section 924(c)(3)(B) defines a crime of violence as one that "by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

[5] *See Vivas-Ceja*, 808 F.3d at 722 ("§ 16(b) substitutes 'substantial risk' for the

11

The Court's holding did not turn on the type of risk, but rather how a court assesses and quantifies the risk.[6]

The two-step process is the same under both the ACCA and § 924(c). Both statutes require courts first to picture the "ordinary case" embodied by a felony,[7]

---

residual clause's 'serious potential risk.' Any difference between the two phrases is superficial. Just like the residual clause, § 16(b) offers courts no guidance to determine when the risk involved in the ordinary case of a crime qualifies as 'substantial.'"); *Jimenez-Gonzales v. Mukasey*, 548 F.3d 557, 562 (7th Cir. 2008) (noting that, "[d]espite the slightly different definitions," the Supreme Court's respective analyses of the ACCA and § 16(b) "perfectly mirrored" each other). *See also United States v. Gomez-Leon,* 545 F.3d 777 (9th Cir. 2008); *United States v. Coronado-Cervantes*, 154 F.3d 1242, 1244 (10th Cir. 1998); *United States v. Kirk*, 111 F.3d 390, 394 (5th Cir. 1997); *United States v. Bauer*, 990 F.2d 373, 374 (8th Cir. 1993) (describing the differences between the statutes as "immaterial" and holding that U.S.S.G. § 4b1.2, which uses the ACCA language, "is controlled by" a decision that interprets § 16(b)).

[6] Of course, many federal and state criminal laws include "risk" standards that employ adjectives similar to those in the ACCA and § 924(c), such as "substantial," "grave," and "unreasonable." The Supreme Court in *Johnson* stated it did not mean to call most of these into question. As Justice Scalia's majority opinion observed, however, that is because the vast majority of such statutes require gauging the riskiness of conduct in which an individual defendant engages on a particular occasion; in other words, applying such a standard to "real-world conduct." By contrast, the ACCA's residual clause and § 924(c)(3) require it to be applied to "an idealized ordinary case of the crime," an "abstract inquiry" that "offers significantly less predictability." *Johnson*, 135 S. Ct. at 2558.

[7] Both the ACCA and § 924(c)(3)(B) require courts to discern what the ordinary case of a crime is by using the categorical approach. *See, e.g., United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015); *United States v. Butler*, 496 Fed. Appx. 158, 161 n.4 (3d Cir. 2012); *Evans v. Zych*, 644 F.3d 447, 453 (6th Cir. 2011); *United States v. Serafin*, 562 F.3d 1104, 1108 (10th Cir. 2009); *United States v. Green*, 521 F.3d 929, 932 (8th Cir. 2008); *United States v. Acosta*, 470 F.3d 132, 134 (2d Cir. 2006); *United States v. Amparo*, 68 F.3d 1222, 1225 (9th Cir. 1995).

and then decide if it qualifies as a crime of violence by assessing the quantum of

risk posed by the "ordinary case." The Fourth Circuit held as much in *United*

*States v. Avila*, 770 F.3d 1100, 1107 (4th Cir. 2014), in construing § 16(b):

> [E]very set of conceivable facts covered by first-degree burglary does not have to present a serious risk of injury for it to qualify as a crime of violence. It is sufficient if "the conduct encompassed by the elements of the offense, in the ordinary case, presents a serious potential risk of injury to another." *James*, 550 U.S. at 208, 127 S. Ct. 1586. As long as an offense is of a type that, by its nature, presents a substantial risk that physical force against the person or property of another may be used, it satisfies the requirements of 18 U.S.C. § 16(b).

*Id.*

*Avila* controls here because § 16(b) and § 924(c)(3)(B) are identical.[8]

Consistent with *Avila*, in *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir.

2015), the Fourth Circuit directly applied the "ordinary case" inquiry to the §

924(c) residual clause. *Id.* at 500 n.6. *See also United States v. Naughton*, 621 Fed.

Appx. 170, 178 (4th Cir. Sept. 2, 2015) (applying the ordinary case inquiry to §

---

Courts may not consider the factual means of committing any given offense, but must consider the nature of the offense in the "ordinary case," regardless of whether the ACCA, § 924(c)(3)(B), or § 16(b) is at issue.

[8] Other courts likewise require the ordinary case analysis when the statutory language of § 16(b) (and thus § 924(c)(3)(B)) is at issue. *See*, *e.g.*, *Keelan*, 786 F.3d at 871 (adopting "ordinary case" analysis for § 16(b)); *United States v. Ramos-Medina*, 706 F.3d 932, 938 (9th Cir. 2012) (citing *James* as the source of the "ordinary case" analysis required by § 16(b)); *Van Don Nguyen v. Holder*, 571 F.3d 524, 530 (6th Cir. 2009) (considering § 16(b) and concluding that "[t]he proper inquiry is one that contemplates the risk associated with the proscribed conduct in the mainstream of prosecutions brought under the statute."); *United States v. Sanchez-Garcia*, 501 F.3d 1208, 1213 (10th Cir. 2007)(same).

13

924(c)(3)(B)). Thus, as the court explained in *Edmundson*, the "§ 924(c) residual clause suffers from exactly the same double indeterminacy as the ACCA residual clause." *Edmundson*, 2015 WL 9311983, at *4. Moreover, the Seventh and Ninth Circuits recognized the same in invalidating § 16(b), which is identical to § 924(c)(3)(B), as void for vagueness under *Johnson*. *See Vivas-Ceja,* 808 F.3d at 723; *Dimaya*, 803 F.3d at 1117.

It is also noteworthy that in litigating *Johnson*, the Government, through the Solicitor General, agreed that the phrases at issue in *Johnson* and here pose the same problem. Upon recognizing that the definitions of a "crime of violence" in both § 924(c)(3)(B) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that force will be used rather than that injury will occur, it is equally susceptible to petitioner's central objection to the residual clause: Like the ACCA, Section 16 requires a court to identify the ordinary case of the commission of the offense and to make a commonsense judgment about the risk of confrontations and other violent encounters.

*Johnson v. United States*, S. Ct. No. 13-7120, Supplemental Brief of Respondent United States at 22-23 (available at 2015 WL 1284964 at *22-*23) (March 30, 2015). The Solicitor General was right. Section 924(c)(3)(B) and the ACCA are essentially the same and contain the same flaws. This Court should hold the government to that concession.

Section 924(c)(3)(B), like the ACCA residual clause, thus requires the "ordinary case" analysis to assess the risk involved in a predicate offense, and how

14

risky that ordinary case is. *Fuertes*, 805 F.3d at 500 n.6; *Avila*, 770 F.3d at 1107; *Ayala*, 601 F.3d at 267; *Van Don Nguyen*, 571 F.3d at 530; *Sanchez-Garcia*, 501 F.3d at 1213. Since these are the identical analytical steps that led the Supreme Court to invalidate the ACCA residual clause, § 924(c)(3)(B) cannot survive constitutional scrutiny under the due process principles reaffirmed in *Johnson*. As a result, the residual clause cannot be used to support a conviction under § 924(c).

> **B.  Carjacking resulting in death and Kidnapping resulting in death categorically fail to qualify as "crimes of violence" under the force clause.**
>
> **1.  The categorical approach applies in determining whether an offense qualifies as a "crime of violence" under the "force" clause.**

In determining whether an offense qualifies as a "crime of violence" under the "force" clause, sentencing courts must employ the categorical approach. *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *United States v. Royal*, 731 F.3d 333, 341 (4th Cir. 2013).[9] This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a "crime of violence." *Descamps*, 133 S. Ct. at 2283 (citation omitted); *Royal*, 731 F.3d at 341-42. In addition, under the categorical approach, an offense

---

[9] Although *Descamps* involved the categorical approach as applied to the ACCA, this same categorical approach applies in determining whether an offense qualifies as a "crime of violence" under 18 U.S.C. § 924(c). *See United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015).

can only qualify as a "crime of violence" if all of the criminal conduct covered by the statute – "including the most innocent conduct" – matches or is narrower than the "crime of violence" definition. *United States v. Torres-Miguel*, 701 F.3d 165, 167 (4th Cir. 2012). If the most innocent conduct penalized by a statute does not constitute a "crime of violence," then the statute categorically fails to qualify as a "crime of violence."

As a result, for an offense to qualify as a "crime of violence" under the "force" clause, the offense must have as an element the use, attempted use, or threatened use of "physical force" against another person. 18 U.S.C. § 924(c)(3)(A). And "physical force" means *violent* force – that is "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original).[10]

As further detailed below, under these terms, Mr. Basham's offenses of carjacking and kidnapping resulting in death categorically fail to qualify as a §

---

[10] Courts of Appeals have consistently held that 18 U.S.C. § 16(a) (which is almost the same as § 924(c)(3)(A)) contemplates "destructive," "violent force" – not *de minimis* force. *United States v. Landeros-Gonzales*, 262 F.3d 424, 426 (5th Cir. 2001); *see also Flores-Lopez v. Holder*, 685 F.3d 857, 864 (9th Cir. 201) (requiring "use of violent, physical force"); *United States v. Serafin*, 562 F.3d 1105, 1109 (10th Cir. 2009); *Jobson v. Ashcroft*, 326 F.3d 367, 373 (2d Cir. 2003); *Bazan- Reyes v. INS*, 256 F.3d 600, 611 (7th Cir. 2001) ("[T]erm 'physical force' in 18 U.S.C. § 16(b) refers to actual violent force."). Indeed, the Supreme Court in *Johnson* cited lower court opinions defining "physical force" under § 16 when defining "physical force" in the ACCA, 18 U.S.C. § 924(e). 559 U.S. at 140 (citing *Flores*, 350 F.3d at 672).

924(c) "crime of violence under the force clause.

> **2.**     **Carjacking resulting in death under 18 U.S.C. § 2119 does not qualify as a "crime of violence" under the force clause of § 924(c)(3).**

Carjacking resulting in death, as defined by 18 U.S.C. § 2119, categorically fails to qualify as a "crime of violence" because it can be accomplished by "intimidation," which 1) does not require the use, attempted use, or threatened use of *violent physical force* and 2) does not require the *intentional* use, attempted use, or threatened use of the same. This is true even where, as here, the carjacking resulted in the death of the victim.

As defined by Merriam-Webster, "intimidation" is "to make timid or fearful; to compel or deter by or as if by threats." *See* http://www.merriam-webster.com/dictionary/intimidation. Federal cases interpreting the federal bank robbery statute (18 U.S.C. 2113(a)) – which has an identical intimidation element – are also instructive here. These cases uniformly hold that intimidation occurs when "an ordinary person in the [victim's position] reasonably could infer a threat of *bodily harm* from the defendant's acts." *United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) (emphasis added); *see also United States v. Pickar*, 616 F.2d 821, 825 (2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (2005) (same); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same). No reason exists why

this same definition of "intimidation" should not apply here. In fact, Modern Federal Jury Instruction 53A-5 uses this very definition upon noting that "this instruction is adapted from the bank robbery statute, 18 U.S.C. § 2113, which uses the same phrase in an analogous situation." Modern Federal Jury Instructions, Sand and Siffert (2014). Applying this intimidation definition here, carjacking can never qualify as a "crime of violence."

> **i.      Carjacking resulting in death does not require the use, attempted use, or threatened use of violent physical force.**

To begin with, the act of placing another in fear of bodily harm, at best, constitutes a threat of physical injury to another, which plainly does not require the use or threatened use of "violent force" against another. The Fourth Circuit's decision in *United States v. Torres-Miguel,* 701 F.3d 165, 167 (4th Cir. 2012) is directly on point. In that case, the Fourth Circuit unequivocally held that the threat of *any physical injury*, even "serious bodily injury or death," does not necessarily require the use of physical force – let alone "violent force."

At issue in *Torres-Miguel* was the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "will result in death or great bodily injury to another." 701 F.3d at 168 (citing Cal. Penal Code § 422(a)). The specific question in the case was whether the statute had an element equating to a threat of "violent force" under the force clause of U.S.S.G. § 2L1.2 –

18

a clause that is identical in all relevant respects to the § 924(c)(3)(A) force clause. *Id.* Despite the "death or great bodily injury" element in the California statute, the Fourth Circuit found that the offense was missing a "violent force" element, and thus could never qualify as a "crime of violence" under the force clause. *Id.* at 168-69. The Court held that "[a]n offense that *results* in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of crime of violence." *Id.* at 168. The Court proclaimed that "of course, a crime may *result* in death or serious injury without involving *use* of physical force." *Id.*

The Court, relying on several appellate decisions from various Circuits, reasoned that there are many ways in which physical injury – even death – can result without use of "violent force." *Id.* at 168-69. "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force." *Torres-Miguel*, 701 F.3d at 168-69 (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

In reaching its decision, the *Torres-Miguel* Court also relied on the Second Circuit's decision in *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003). At issue in that case was whether a prior Connecticut conviction for third degree assault qualified as a "crime of violence" under the force clause. The Connecticut

19

statute "require[s] the state to prove that the defendant had intentionally caused physical injury." *Chrzanoski*, 327 F.3d at 193. Nonetheless, the "Second Circuit [] held that [the statute] does not constitute a crime of violence . . . because there is a difference between causation of an injury, which is all that the Connecticut statute [] required, and an injury's causation by the use of physical force." *Torres-Miguel*, 701 F.3d at 169 (citing *Chrzanoski*, 327 F.3d at 194) (internal quotation marks omitted).

The Second Circuit explained that "an individual could be convicted of intentional assault in the third degree for injury caused not by physical force, but by guile, deception, or even deliberate omission." 327 F.3d at 195. The Court elaborated that "human experience suggests numerous examples of intentionally causing physical injury without the use of force, such as a doctor who deliberately withholds vital medicine from a sick patient" or someone who causes physical impairment by placing a tranquilizer in the victim's drink. *Id.* at 195-56.

The Fourth Circuit also embraced the Tenth Circuit's decision in *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005). In that case, the Tenth Circuit "explained that although the Colorado [third degree assault] statute required [an act causing] bodily injury, imposing that injury does not necessarily include the use or threatened use of physical force as required by the Guidelines and so the Colorado crime was not categorically a crime of violence under

U.S.S.G. § 2L1.2." *Torres-Miguel*, 701 F.3d at 169 (citing *Perez-Vargas*, 414 F.3d at 1287) (internal quotation marks omitted). The Tenth Circuit reasoned that "several examples [exist] of third degree assault that would not use or threaten the use of physical force: . . . intentionally placing a barrier in front of a car causing an accident, or intentionally exposing someone to hazardous chemicals." *Perez-Vargas*, 414 F.3d at 1286.

*Torres-Miguel* and the other cases discussed above direct that carjacking, which can be accomplished by putting another in fear of bodily harm, does not require "violent force." If threat of serious bodily injury or death do not equal violent force, then certainly, "bodily harm" does not. Indeed, a defendant can place another in fear of bodily harm by threatening to *poison* that person if he does not turn over his car to the defendant, to release hazardous chemicals into the car, to place a barrier in front of the car if the person attempts to drive off, or to lock the person up in the car on a hot day – some of the very examples that the Fourth Circuit and the other courts mentioned above held do not constitute "violent force."

The additional element that "death results," 18 U.S.C. § 2119(3), from the carjacking does not change the analysis. As the Fourth Circuit noted in *Torres-Miguel*, "of course, a crime may *result* in death or serious injury without involving *use* of physical force." *Torres-Miguel*, 701 F.3d at 168 (4th Cir. 2012)

21

(emphasis in original). *See also United States v. Martinez-Bermudez*, 387 F.3d 98, 101 (1st Cir. 2004) (sustaining conviction for carjacking resulting in death in violation of 18 U.S.C. § 2119(3) where defendants forced victim to surrender his car at gunpoint, then later struck and killed a pedestrian police officer during flight from police and finding that a death "results" from a carjacking "if that death was caused "'at any point during [the carjacker's] retention of the vehicle.'" (quoting *United States v. Vazquez-Rivera*, 135 F.3d 172, 178 (1st Cir. 1998)).

Because "the full range of conduct" covered by the carjacking statute does not require "violent force," it simply cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. *Torres-Miguel*, 701 F.3d at 171. Even if the possibility of violating the carjacking statute without violent physical force is slim, because the possibility exists, this Court cannot legally find that carjacking is a "crime of violence." Indeed, in *Torres-Miguel*, the Court did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other non-violent force; yet, the Fourth Circuit still found that because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." *Id.* at 171. This Court should find the same here with respect to the carjacking statute, which leaves open the same possibility.

### ii.    Intimidation does not require an *intentional* threat of violent force necessary under the § 924(c)(3)(A) force clause.

"Intimidation" as defined under the carjacking statute does not constitute a "crime of violence" under the force clause because it does not require an *intentional* threat of physical force. In *Garcia v. Gonzales*, 455 F.3d 465 (4th Cir. 2006), the Fourth Circuit held that an offense can only constitute a "crime of violence" under the force clause if it has an element that requires an "*intentional* employment of physical force [or threat of physical force]." *Id*. at 468 (emphasis added).

Federal cases interpreting the "intimidation" element in the federal bank robbery statute (18 U.S.C. § 2113(a)) are instructive here. As referenced above, federal bank robbery may be accomplished by "intimidation," which means placing someone in fear of bodily harm – the same action required under carjacking. *See United States v. Woodrop*, 86 F.3d 359, 364 (4th Cir. 1996) ("intimidation" under federal bank robbery statute means "an ordinary person in the [victim's position] reasonably could infer a threat of bodily harm from the defendant's acts"); *see also United States v. Pickar*, 616 F.2d 821, 825 (2010) (same); *United States v. Kelley*, 412 F.3d 1240, 1241 (2005) (same); *United States v. Yockel*, 320 F.3d 818, 824 (8th Cir. 2003) (same); *United States v. Higdon*, 832 F.3d 312, 315 (5th Cir. 1987) (same).

It is plain that the "intimidation" element of bank robbery is missing this

necessary intentional mens rea required under *Garcia*. "Intimidation" is satisfied under the bank robbery statute "whether or not the defendant actually intended the intimidation," as long as "an ordinary person in the [victim's] position reasonably could infer a threat of bodily harm from the defendant's acts." *Woodrup*, 86 F.3d at 36. *See also United States v. Yockel*, 320 F.3d 818, 821 (8th Cir. 2003) (upholding bank robbery conviction even though there was no evidence that defendant intended to put teller in fear of injury: defendant did not make any sort of physical movement toward the teller and never presented her with a note demanding money, never displayed a weapon of any sort, never claimed to have a weapon, and by all accounts, did not appear to possess a weapon); *United States v. Kelley*, 412 F.3d 1240, 1244 (11th Cir. 2005) ("Whether a particular act constitutes intimidation is viewed objectively, . . . and a defendant can be convicted under [federal bank robbery] even if he did not intend for an act to be intimidating."); *United States v. Foppe*, 993 F.2d 1444, 1451 (9th Cir. 1993) (same).

In other words, a defendant may be found guilty of federal bank robbery even though he did not intend to put another in fear of injury. It is enough that the victim reasonably feared injury from the defendant's actions – whether or not the defendant actually intended to create that fear. Due to the lack of this intent, federal bank robbery criminalizes conduct that does not require an intentional threat of physical force. Therefore, bank robbery squarely fails to qualify as a

24

"crime of violence" under *Garcia*. Because the federal bank robbery "intimidation" element is defined the same as the carjacking "fear of injury" element, it follows that carjacking also fails to qualify as a "crime of violence" under *Garcia*.

### iii. Because the "full range of conduct" covered by carjacking does not require "violent force," it cannot qualify as a "crime of violence" under § 943(c)(3)'s force clause.

Because "the full range of conduct" covered by the carjacking statute does not require "violent force" for all the reasons discussed above, it cannot qualify as a "crime of violence" under § 924(c)(3)'s force clause. *Torres-Miguel*, 701 F.3d at 171. This is so even if the conduct results in death. *Id*. at 168. Even if the possibility of violating the carjacking statute without violent force and without an intentional mens rea is small, the result is the same.

The Court in *Torres-Miguel* made this clear. The government in that case argued that there was no "realistic probability" that the defendant could have violated the California terroristic threats statute in question without threatening violent physical force. *Id*. at 170-71. The Fourth Circuit, however, held that the "realistic probability" test did not apply to the force clause; therefore, the defendant had no burden to show a "realistic probability" that the terroristic threats statute could be violated without a threat of violent physical force. *Id*. Because a possibility – no matter how slim – existed that one could be prosecuted under the statute without a threat of violent force, the Fourth Circuit found that the prior

offense categorically failed to qualify as a "crime of violence." *Id.* This Court should find the same with respect to the carjacking statute, which leaves open an even greater possibility that the offense can be violated absent violent force against a person or property and absent an intentional mens rea for all the above-discussed reasons.

In sum, federal carjacking, including carjacking resulting in death, fails to qualify as a "crime of violence" under the § 924(c)(3)(A) force clause for two independent reasons. First, the statute does not require a threat of *violent force*. Second, the statute does not require the *intentional* threat of violent force.

### 3. Kidnapping under 18 U.S.C. § 1201 does not categorically qualify as a crime of violence under the "force" clause.

Under the categorical approach, federal kidnapping also does not qualify as a crime of violence, because the offense can be committed through non-forceful means. As the Fourth Circuit has explained, "[a]fter *Descamps*, when a statute defines an offense using a single, indivisible set of elements that allows for both violent and nonviolent means of commission, the offense is not a categorical crime of violence." *Fuertes*, 805 F.3d at 498. For federal kidnapping to qualify as a crime of violence under the force clause, the offense must categorically have as an element the use, attempted use, or threatened use of "physical force." "Physical force" means "*violent* force" – that is "strong physical force," which is "capable of causing physical pain or injury to another person." *Johnson v. United States*, 559

U.S. 133, 140 (2010) (emphasis in original).

Federal kidnapping does not categorically require violent force. Instead, the crime may be accomplished through non-physical means, such as by "inveigling" or "decoying." 18 U.S.C. § 1201(a); *United States v. Hughes*, 716 F.2d 234, 239 (4th Cir. 1983) (noting that a kidnapper may "use[] deceit and trickery to accomplish his purpose rather than overt force"); *see also United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) ("By its terms, § 1201(a) criminalizes kidnappings accomplished through physical, forcible means and also by nonphysical, nonforcible means.").

Because a violation of § 1201 can be committed by means of fraud or deception instead of by force, it does not categorically include the "physical force" as an element of the offense necessary to qualify kidnapping as a "crime of violence" under § 924(c)(3)(A). *See Fuertes*, 805 F.3d at 498-99 (concluding that sex trafficking by force, fraud or coercion does not categorically involve physical force); *Montes-Flores*, 736 F.3d at 368 (holding South Carolina offense of assault and battery of a high and aggravating nature does not have physical force as an element); *cf. United States v. Aparicio-Soria*, 740 F.3d 152, 157-58 (4th Cir. 2014) (en banc) (reasoning that, because the Maryland offense of resisting arrest has a single and indivisible set of elements that may be committed by either violent or nonviolent means, it does not qualify categorically as a crime of violence under

27

U.S.S.G. § 2L1.2, the reentry Guideline); *Royal*, 731 F.3d at 341-42 (reasoning that, because the Maryland offense of second-degree assault has an indivisible set of elements that may be committed by either violent or nonviolent means, it does not qualify categorically as a "violent felony" under 18 U.S.C. § 924(e)(1)). The Ninth Circuit has specifically noted that although the federal kidnapping statute carries a risk of force, it "has no force requirement." *Delgado-Hernandez v. Holder*, 697 F.3d 1125, 1127 (9th Cir. 2012) (; *see also United States v. Moreno-Florean*, 542 F.3d 445, 450-52 (5th Cir. 2008) (determining that California kidnapping statute did not include physical force as an element because the crime could be accomplished through non-physical means).

Likewise, the requirement that the kidnapper "hold" the victim for ransom or reward does not categorically require physical force. As the Supreme Court has explained, "the act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical *or mental* restraint for an appreciable period against the person's will and with a willful intent so to confine the victim." *Chatwin v. United States*, 326 U.S. 455, 460 (1946) (emphasis added). Thus, the element of "holding" may be fulfilled through non-forceful means such as "mental restraint." More notably, the victim need not even be aware of such restraint: "[i]f the victim is of such an age or mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or

legal guardian of the victim." *Id.* As such, a kidnapper who lures a child across state lines may "seize" and "hold" the child by means of enticement (for example, through toys, games, or other amusement) without any use of physical force, as long as such actions were against the will of the parents or legal guardian. Indeed, a common kidnapping scenario—the kidnapping of a newborn from a hospital—need not involve any "violent" force, because such force would be unnecessary to restrain an infant.

The analysis is unchanged in the case of "kidnapping resulting in death." Section 1201(a) allows the imposition of a death sentence "if the death of any person results" from the kidnapping. 18 U.S.C. § 1201(a). The statute contains no requirement that the death result from the use of any physical force, let alone violent force, nor does it even require that it be the victim of the actual kidnapping whose death results. Again, an analogy the federal bank robbery statute (18 U.S.C. § 2113(e)), which contains a similar provision, is instructive.[11] In *United States v.*

---

[11] The provision in the federal bank robbery statute provides:

> Whoever, in committing any offense defined in this section, or in avoiding or attempting to avoid apprehension for the commission of such offense, or in freeing himself or attempting to free himself from arrest or confinement for such offense, kills any person, or forces any person to accompany him without the consent of such person, shall be imprisoned not less than ten years, or if death results shall be punished by death or life imprisonment.

18 U.S.C. § 2113(e)

29

*Parks*, 700 F.3d 775 (6th Cir. 2012), the Sixth Circuit upheld a conviction for bank robbery resulting in death where the defendant crashed his car in the course of fleeing a bank robbery, killing one of his co-defendants who was a passenger in the car. *Id.* at 776-77.   Similarly, in *United States v. Jackson*, the defendant was convicted of bank robbery resulting in death for the accidental deaths of two women who were killed when Jackson lost control of his vehicle while fleeing the scene and crashed into another car, killing the women. 736 F.3d 953, 955 (10th Cir. 2013) (overturning conviction on other grounds). *See also United States v. Whitfield*, 695 F.3d 288 (4th Cir. 2012) (defendant found guilty of "forced accompaniment resulting in death" under § 2113(e) where victim died of a heart attack in the course of defendant's flight from a bank robbery; conviction overturned due to insufficient indictment, later upheld on resentencing, *United States v. Whitfield*, 548 Fed. Appx. 70 (4th Cir. 2013)).

Because kidnapping under § 1201 may be accomplished without the use of any physical force, federal kidnapping under § 1201(a) does not categorically include "physical force" as an element of the crime. 18 U.S.C. § 924(c)(3)(A). *See Fuertes*, 805 F.3d at 498-99 (concluding that sex trafficking by force, fraud or coercion did not categorically involve physical force). As a result, federal kidnapping does not categorically qualify as a crime of violence under 18 U.S.C. §

924(c)(3)(A).

> **C.    If either of Mr. Basham's predicate offenses are found not to qualify as a crime of violence, his conviction under § 924(c) cannot be sustained.**

In the Superseding Indictment, Count 6 alleged use of a firearm in furtherance of crimes of violence "as charged in Counts 1 and 2 of this Superseding Indictment." Dkt. 73. The jury's verdict, however, did not specify whether it found use of a firearm in furtherance of Count 1, Count 2, or both. Nor did the court instruct jurors that they must be unanimous as to which predicate offense they found. Tr. 9/29/04 at 207-210. The verdict form does not specify whether jurors based their verdict on Count 6 on the offenses alleged in Count 1, Count 2, or both. Dkt. 766. Under these circumstances, if this court finds that either carjacking resulting in death or kidnapping resulting in death is not categorically a crime of violence, then Mr. Basham's conviction under §924(c) must be void.

**II.    Mr. Basham is entitled to relief under 28 U.S.C. § 2255 because his claim under *Johnson* is cognizable, it satisfies the successive petition requirements of § 2255(h)(2), and it is timely.**

**A.    Mr. Basham's claim is cognizable under § 2255(a).**

Under 28 U.S.C. § 2255(a), a petitioner is entitled to relief when his original conviction "was imposed in violation of the Constitution or laws of the United States," or is in excess of this Court's jurisdiction. 28 U.S.C. § 2255(a). Mr. Basham is entitled to relief on all these grounds.

First, based on all the reasons noted above, Mr. Basham's § 924(c) conviction violates due process because it was dependent upon an unconstitutionally vague residual clause.

Second, because post-*Johnson* carjacking resulting in death under 18 U.S.C. § 2119 and kidnapping resulting in death under 18 U.S.C. § 1201 categorically fail to satisfy the "crime of violence" element under § 924(c), the indictment failed to state an offense under § 924(c), and Mr. Basham has now been convicted of an offense that is no longer criminal. This means his conviction violates the United States laws and results in a miscarriage of justice. The Supreme Court has held that this is exactly the type of error that is cognizable under 28 U.S.C. § 2255(a). *See Davis v. United States*, 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice and presents exceptional circumstances' that justify relief under § 2255" (quoting *Hill v. United States*, 368 U.S. 424, 428 (1962)); *see also United States v. Adams*, 814 F.3d 178, 183-84 (4th Cir. 2016) (finding petitioner legally and factually innocent of felon in possession conviction under 18 U.S.C. §922(g), where prior convictions were later held not to be felonies).

Third, Mr. Basham's conviction has been entered in excess of this Court's jurisdiction because not only did the indictment fail to state a § 924(c) offense, but

32

it affirmatively alleged conduct that is outside of the sweep of § 924(c). Specifically, Count 6 of the indictment alleged the use of a firearm during and in relation to carjacking and kidnapping, but as discussed above, under the categorical approach, neither carjacking nor kidnapping can ever qualify as a § 924(c) "crime of violence." In turn, a § 924(c) conviction can *never* be sustained based on the underlying offense of carjacking or kidnapping, no matter what the facts are. Count 6 therefore fails to state a § 924(c) offense. Thus, Mr. Basham's conviction is a legal nullity that was entered in excess of this Court's jurisdiction and must be vacated. *See United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014) (a jurisdictional defect exists "when the indictment affirmatively alleges conduct that does not constitute a crime at all because that conduct falls outside the sweep of the charging statute."); *United States v. Barboa*, 777 F.3d 1420, 1423 n.3 (10th Cir. 1985) ("If Barboa pled guilty to something which was not a crime, he is not now precluded from raising this jurisdictional defect, which goes 'to the very power of the States to bring the defendant into court to answer the charge brought against him." (quoting *Blackledge v. Perry*, 417 U.S. 21, 30 (1974))).

**B.    Mr. Basham's successive petition satisfies the requirements of 28 U.S.C. § 2255(h)(2) because *Johnson* announced a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was previously unavailable.**

Mr. Basham files this successive motion pursuant to 28 U.S.C. § 2255(h)(2) after receiving authorization from the Fourth Circuit. That section requires that,

33

before this Court can consider a successive motion, the appropriate court of appeals must certify, as provided in 28 U.S.C. § 2244(b)(3)(C), that a successive motion contains a claim based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court that was previously unavailable." Pursuant to § 2244(b)(3)(C), the Fourth Circuit authorized this motion upon concluding that Mr. Basham has made a prima facie showing that he may be entitled to relief. But Mr. Basham now demonstrates that he fully satisfies the requirements of § 2255(h)(2).

### 1.   *Johnson* announced a previously unavailable new rule of constitutional law that is retroactive to cases on collateral appeal.

The Supreme Court recently held in *Welch v. United States*, 136 S. Ct. 1257 (2016), that "*Johnson* announced a substantive rule that has retroactive effect in cases on collateral review." *Welch*, 136 S. Ct. at 1268; *see also id.* at 1264 ("It is undisputed that *Johnson* announced a new rule."); *Johnson*, 135 S. Ct. at 2563 ("Our contrary holdings in *James* and *Sykes* are overruled"). The Court reasoned that "*Johnson* affected the reach of the underlying statute rather than the judicial procedures by which the statute is applied. *Johnson* is thus a substantive decision and so has retroactive effect under Teague in cases on collateral review." *Welch*, 136 S. Ct. at 1265. Therefore, *Johnson* is substantive, and in turn, retroactive.

The result in *Johnson* was not previously available to Mr. Basham. In both *James*, 550 U.S. at 210 n.6, and *Sykes*, 131 S. Ct. 2267, the Court rejected

34

suggestions by the dissenting Justices that the residual clause was unconstitutionally vague. Until *Johnson* was decided, any successive collateral attack was foreclosed.

### 2. The holding in *Johnson* applies to convictions under 18 U.S.C. § 924(c).

Not only does *Johnson* narrow the scope of the ACCA residual clause, but as relevant here, it also narrows the scope of 18 U.S.C. § 924(c) and "necessarily carr[ies] a significant risk that a defendant stands convicted of an act that the law does not make criminal." *Summerlin*, 542 U.S. at 352. Section 924(c) criminalizes carrying a firearm during a "crime of violence." *Johnson* establishes that certain convictions cannot be considered "crimes of violence" consistent with due process, and thus alters what conduct § 924(c) makes criminal. A defendant stands convicted of an act that the law does not make criminal, where, as here, the defendant has been convicted under § 924(c) for using a firearm in connection with some crime that, under *Johnson*, cannot constitutionally be considered a "crime of violence." *See Bousley*, 523 U.S. at 620 (decision narrowing the elements of 18 U.S.C. § 924(c) is substantive, and thus retroactive, because it "hold[s] that a substantive federal criminal statute does not reach certain conduct, [and] plac[es] conduct beyond the power of the criminal law-making authority to proscribe[.]") (internal quotations and citations omitted).

**C.    This motion is timely under 28 U.S.C. § 2255(f)(3).**

This motion is timely under 28 U.S.C. § 2255(f)(3), which provides for a one-year limitations period to run from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."

The Supreme Court decided *Johnson* on June 26, 2015, and Mr. Basham filed his claim within a year of that date. As discussed above, the Supreme Court recognized a new right in *Johnson*, and announced a substantive rule that is therefore retroactive to cases on collateral review. *Welch*, 136 S. Ct. at 1268.

**III.   Mr. Basham's invalid § 924(c) conviction also invalidates his death sentences on Counts 1 and 2, as well as his sentences on the remaining counts.**

In addition to his conviction and sentence under § 924(c), Mr. Basham was convicted of carjacking resulting in death (Count 1) and kidnapping resulting in death (Count 2). Mr. Basham was sentenced to death under 18 U.S.C. § 2119 on Count 1, and under 18 U.S.C. § 1201 on Count 2. Following *Johnson*, the invalidation of Mr. Basham's conviction under § 924(c) requires that he be resentenced on Counts 1 and 2, as well as on the additional convictions.[12]

When a defendant has been convicted and sentenced on multiple charged

---

[12] Mr. Basham's sentences on Counts 3, 4, 5, 7, and 8 currently total 576 months.

offenses, one of which subsequently is invalidated, he must be resentenced on the valid conviction "unless it can be ascertained from the record that a trial court's sentence on a valid conviction was not affected" by the invalid conviction. *Bourgeois v. Whitley*, 784 F.2d 718, 721 (5th Cir. 1986) (citing *Jerkins v. United States*, 530 F.2d 1203, 1204 (5th Cir. 1976); *see also United States v. Fowler*, 749 F.3d 1010, 1015 (11th Cir. 2014) ("[S]entencing on multiple counts is an inherently interrelated, interconnected and holistic process[.]"). Unless "the sentencing judge can say with certainty that the prior allegedly invalid convictions did not influence the sentence that he imposed . . . there must be resentencing or further proceedings to determine the validity of the prior convictions." *Strader v. Troy*, 571 F.2d 1263, 1267 (4th Cir. 1978); *see also United States v. Hawthorne*, 94 F.3d 118, 121-22 (4th Cir. 1996) (vacating invalid conviction under § 924(c), upholding other convictions, and finding that the "nullification of the appellants' convictions under § 924(c)(1) necessitates that we also vacate their sentences" on the remaining convictions).

This principle applies with even greater force in the case of jury sentencing where the court can never determine with certainty what factors influenced the jury. *See Wren v. United States*, 540 F.2d 643, 644 (4th Cir. 1975) ("In short, to terminate further inquiry, the district judge must be able to say either from recollection or reconstruction that had he known at the time of sentencing that the

earlier convictions were invalid, he would have nevertheless imposed the same sentence."). The record in Mr. Basham's case shows at least a reasonable likelihood that the inclusion of the unconstitutional § 924(c) conviction influenced the jury's decision to sentence him to death. In closing argument the prosecutor urged jurors to find the statutory aggravating factors existed, and thereafter sentence Mr. Basham to death, based only on the evidence and convictions from the guilt phase. (Tr. 11/01/04 Vol. 29 at 53.) What's more, in instructing jurors on the § 924(c) charge, the court told jurors unequivocally that both carjacking resulting in death and kidnapping resulting in death "are crimes of violence." [Tr. 9.29.04 Vol. 12 at 208]. The court's statement to jurors that the offenses on which the government sought the death penalty unequivocally constituted "crimes of violence" may have influenced at least one juror to vote for death.

The Supreme Court has held that the heightened need for reliability in capital cases requires a death sentence to be overturned in such circumstances. In *Johnson v. Mississippi*, the Supreme Court invalidated the petitioner's death sentence where the prosecutor urged the jury to give weight to an invalid conviction in determining whether death was the appropriate punishment. 486 U.S. 578, 586 (1988). Importantly, the Court noted that "[e]ven without that express argument [by the prosecutor], there would be a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice

between a life sentence and a death sentence." *Johnson v. Mississippi*, 486 U.S. 578, 586 (1988).

Under the circumstances in Mr. Basham's case, it is not possible for this Court to find "with certainty" that Mr. Basham's invalid § 924(c) conviction did not influence the jury's decision to impose a death sentence. *Strader*, 571 F.2d at 1267. Because the Court cannot say with certainty that the invalid conviction on Count 6 did not influence the jury's sentencing verdict on the remaining counts, the Court should order that Mr. Basham be resentenced by a jury. As the Supreme Court recently made clear in *Hurst v. Florida*, the Sixth Amendment requires that a jury, and not the court, determine whether a defendant should be sentenced to death. 136 S. Ct. 616, 619, 624 (2016).[13]

The Supreme Court has made clear that capital cases impose a "high requirement of reliability on the determination that death is the appropriate penalty in a particular case." *Mills v. Maryland*, 486 U.S. 367, 383-84 (1988). Therefore,

---

[13] To the extent prior Supreme Court decisions, including *Brown v. Sanders,* 546 U.S. 212, 224-25 (2006), *Stringer v. Black,* 503 U.S. 222, 237 (1992), or *Clemons v. Mississippi,* 494 U.S. 738, 745-46 (1990), authorized such judicial refashioning of a compromised death sentence, *Hurst* necessarily overrules them. *Compare Hurst*, 136 S. Ct. at 619 ("The Sixth Amendment requires a jury, not a judge, to find each fact necessary to impose a sentence of death.") with *Clemons*, 494 U.S. at 745 ("Any argument that the Constitution requires that a jury impose the sentence of death or make the findings prerequisite to imposition of such a sentence has been soundly rejected by prior decisions of this Court."). Furthermore, the Court in *Hurst* explicitly overruled *Spaziano v. Florida*, 468 U.S. 447 (1984), and *Hildwin v. Florida*, 490 U.S. 638 (1989), on which *Clemons* relied. *Hurst*, 136 S. Ct. at 623.

"[t]he *possibility* that petitioner's jury conducted its task improperly certainly is great enough to require resentencing." *Id*. at 384 (emphasis added). Mr. Basham's unconstitutional conviction under § 924(c) influenced jurors' sentencing decisions on all counts and undermines confidence in his death sentences on Counts 1 and 2. Accordingly, this Court should vacate Mr. Basham's sentence and order that he be resentenced by a jury.

## CONCLUSION

For the reasons set forth above, Mr. Basham respectfully asks this Court to vacate his conviction on Count 6, the invalid charge under 18 U.S.C. § 924(c). In addition, Mr. Basham further requests the following relief:

1) That this Court vacate his sentences on Counts 1 and 2 and order a new penalty phase trial on the capital charges.

2) That this Court vacate the sentences on Mr. Basham's remaining convictions and order that he be resentenced.

3) That this Court grant Mr. Basham leave to amend this motion, including by submitting a supplemental memorandum of law to support it.

4) Any other relief that may be necessary to correct Mr. Basham's invalid conviction and sentence.

Respectfully submitted,

JON M. SANDS
Federal Public Defender

s/Lindsey Layer
LINDSEY LAYER
Counsel for Brandon Basham