**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF SOUTH CAROLINA**
**FLORENCE DIVISION**

| | | |
|---|---|---|
| _____ | : | 4:02-CR-992-JFA |
| THE UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent, | : | Hon. Joseph F. Anderson |
| | : | United States District Judge |
| | : | |
| v. | : | **CAPITAL CASE** |
| | : | |
| CHADRICK E. FULKS, | : | |
| | : | |
| Petitioner. | : | |
| _____ | : | |

_____

**MOTION TO VACATE CONVICTIONS AND SENTENCE**
**PURSUANT TO 28 U.S.C. § 2255**

_____

Peter Williams
Assistant Federal Defender
Federal Community Defender Office for the
 Eastern District of Pennsylvania
601 Walnut Street, Suite  545 West
Philadelphia, PA   19106
(215) 928-0520

Counsel for Petitioner

Dated: May 23, 2016

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................ 1

PROCEDURAL HISTORY................................................................................... 2

STATUTES INVOLVED ..................................................................................... 3

CLAIMS FOR RELIEF ....................................................................................... 4

I.   PURSUANT TO *JOHNSON*, § 924(c)(3)(B)'S RESIDUAL CLAUSE IS
     UNCONSTITUTIONALLY VAGUE. ...................................................... 4

   A.  *Johnson* Expressly Rejected the "Ordinary Case" Approach to Determining Whether a
       Crime Is Intrinsically Violent. ............................................................... 5

   B.  *Johnson* Renders § 924(c)(3)(B) Unconstitutionally Vague. ............................ 6

II.  KIDNAPPING UNDER § 1201 AND CARJACKING UNDER § 2119 DO NOT
     QUALIFY AS CRIMES OF VIOLENCE UNDER THE FORCE CLAUSE OF
     § 924(c)(3)(A). ....................................................................................... 9

   A.  Introduction...................................................................................... 9

   B.  Kidnapping Under § 1201 Does Not Qualify as a Crime of Violence Under the Force
       Clause of § 924(c)(3)(A)..................................................................... 12

   C.  Carjacking Under 18 U.S.C. § 2119 Does Not Qualify Under the Force Clause of
       § 924(c)(3) Because It Does Not Require the Use, Attempted Use, or Threatened Use of
       Violent Physical Force........................................................................ 14

   D.  Carjacking Does Not Satisfy the Force Clause Under § 924(c)(3)(A) Because It Does Not
       Require the *Intentional* Use, Attempted Use, or Threat of Physical Force. .................... 18

III. MR. FULKS'S CONVICTIONS UNDER 28 U.S.C. §§ 924(C) AND 924(O) SHOULD BE
     VACATED. ......................................................................................... 18

IV.  MR. FULKS IS ENTITLED TO A NEW CAPITAL PENALTY PHASE. ...................... 20

   A.  The Legal Standard. ........................................................................... 20

   B.  The Jury's Consideration of Mr. Fulks's §§ 924(c) and (o) Convictions Undermined the
       Validity of the Penalty Phase of His Capital Trial.......................................... 21

      1.  The Jury Considered and Found Extensive Mitigation. .............................. 21

      2.  Because the Jurors Found a Wealth of Mitigating Factors, the Jurors' Consideration
          of the Invalid Convictions at the Penalty Phase Was Not Harmless. .................. 27

V.   MR. FULKS'S § 2255 MOTION SATISFIES THE REQUIREMENTS OF 28 U.S.C.
     § 2255(H)(2). ...................................................................................... 28

CONCLUSION................................................................................................ 29

i

Chadrick E. Fulks, a prisoner in the custody of the United States sentenced to death and housed at the United States Penitentiary, Terre Haute, Indiana, respectfully moves this Court to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. In support of this motion, Mr. Fulks states the following:

### INTRODUCTION

1.     In *Johnson v. United States*, 135 S. Ct. 2551 (2015), the Supreme Court ruled that the residual clause of the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)(2)(B)(ii), was unconstitutionally vague because its definition of a violent felony "required courts to assess the hypothetical risk posed by an abstract generic version of the [underlying] offense." *Welch v. United States*, 136 S. Ct. 1257, 1262 (2015). While leaving undisturbed the "many laws that 'require gauging the riskiness of conduct in which an individual defendant engages *on a particular occasion*,'" *id*. (quoting *Johnson*, 135 S. Ct. at 2561 (emphasis in *Johnson*)), the Court found the clause impermissibly vague because it required courts to envision conduct that a crime involved in the "ordinary case" and "to judge whether that abstraction presents a serious risk of potential injury," *Johnson*, 135 S. Ct. at 2557.

2.     Mr. Fulks's convictions included having or using a firearm for a crime of violence and conspiracy to commit the same under 18 U.S.C. §§ 924(c) and (o). The underlying crimes of violence upon which these two § 924 convictions were based were the federal kidnapping and carjacking statutes. To qualify as a crime of violence, these underlying offenses must fall under either 18 U.S.C. § 924(c)(3)(A)'s "force clause" or under § 924(c)(3)(B)'s "residual clause." Mr. Fulks's §§ 924(c) and (o) convictions cannot be upheld under the residual clause of § 924(c)(3)(B) because that section's definition of a crime of violence requires the same

1

"ordinary case" approach that the Supreme Court deemed unconstitutional in *Johnson*. Mr. Fulks's §§ 924(c) and (o) convictions likewise cannot be upheld under § 924(c)(3)(A)'s force clause because kidnapping and carjacking may each be committed without the use of the intentional violent physical force that § 924(c)(3)(A) requires. Accordingly, these convictions are void for vagueness in violation of the Fifth Amendment's guarantee of due process.

3.    *Johnson* also entitles Mr. Fulks to a new penalty phase. The jury was informed of Mr. Fulks's invalid §§ 924(c) and (o) convictions during his penalty phase and considered them when determining his sentence. Because the convictions considered by the jury were invalid, the jury based its penalty determination on incorrect and unreliable information that provided no legitimate support for the death penalty and unbound the sentencing package. Accordingly, a new sentencing is warranted.

## PROCEDURAL HISTORY

4.    In 2004 in the District of South Carolina, Mr. Fulks pled guilty to possessing or using a firearm during or in relation to a crime of violence as defined by 18 U.S.C. § 924(c), conspiracy to carry or use a firearm during or in relation to a crime of violence as defined by 18 U.S.C. § 924(o), carjacking as defined by 18 U.S.C. § 2119, kidnapping as defined by 18 U.S.C. § 1201(a), and other charges. A contested sentencing hearing took place before a jury after Mr. Fulks's guilty plea was entered and the jury sentenced Mr. Fulks to death. The Court of Appeals affirmed. *United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006). The Supreme Court denied certiorari review. *Fulks v. United States*, 551 U.S. 1147 (2006).

5.    Mr. Fulks filed a motion to vacate the convictions and sentence and for a new trial pursuant to 28 U.S.C. § 2255, which was denied. *Fulks v. United States*, 875 F. Supp. 2d 535

2

(D.S.C. 2010).  The denial was affirmed on appeal.  *United States v. Fulks*, 683 F.3d 512 (4th

Cir. 2012).  The Supreme Court denied certiorari review.  *Fulks v. United States*, 134 S. Ct. 52

(2013).

6.     Mr. Fulks now applies to file a second or successive motion under § 2255(h)(2).

Pursuant to §§ 2255(f) & (h), this application is timely as it is filed within one year of the date

that *Johnson* was decided.

## STATUTES INVOLVED

### 18 U.S.C. § 1201

7.     Section 1201(a), in pertinent part, provides:

Whoever unlawfully seizes, confines, inveigles, decoys, kidnaps, abducts, or
carries away and holds for ransom or reward or otherwise any person, except in
the case of a minor by the parent thereof, when - . . .

> (1) The person is willfully transported in interstate or foreign
> commerce, regardless of whether the person was alive when
> transported across a State boundary, or the offender travels in
> interstate or foreign commerce or uses the mail or any means,
> facility, or instrumentality of interstate or foreign commerce in
> committing or in furtherance of the commission of the offense;
> …

shall be punished by imprisonment for any term of years or for life and, if the
death of any person results, shall be punished by death or life imprisonment.

### 18 U.S.C. § 2119

8.     Section 2119, in pertinent part, provides:

Whoever, with the intent to cause death or serious bodily harm[,] takes a motor
vehicle that has been transported, shipped, or received in interstate or foreign
commerce from the person or presence of another by force and violence or by
intimidation, or attempts to do so, shall-

3

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both, or sentenced to death.

## 18 U.S.C. § 924

9.      Section 924(c)(1)(A), in pertinent part, provides:

[A] person who, during and in relation to a crime of violence . . . for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence [be punished in accordance with this statute].

10.     Section 924(c)(3) defines "crime of violence" as follows:

(3) For purposes of this subsection the term "crime of violence" means an offense that is a felony and-

      (A) has an element the use, attempted use, or threatened use of physical force against the person or property of another, or

      (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.

11.     Section 924(o), in pertinent part, provides:

A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both . . . .

## CLAIMS FOR RELIEF

**I.      PURSUANT TO *JOHNSON*, § 924(C)(3)(B)'S RESIDUAL CLAUSE IS UNCONSTITUTIONALLY VAGUE.**

12.     In *Johnson*, the Supreme Court analyzed the ACCA residual clause, 18 U.S.C. § 924(e)(2)(B)(ii) (defining a violent felony as one that "involves conduct that presents a serious potential risk of physical injury to another"), which parallels in all material respects § 924(c)(3)(B)'s residual clause (defining a crime of violence as one that "by its nature, involves a

4

substantial risk that physical force against the person or property of another may be used"). As §

924(c)(3)(B) suffers from the same flaws that compelled the Supreme Court to declare § 924(e)

unconstitutionally vague, § 924(c)(3)(B) is unconstitutional as well.

**A.      *Johnson* Expressly Rejected the "Ordinary Case" Approach to Determining Whether a Crime Is Intrinsically Violent.**

13.      In *Johnson*, the Supreme Court held that the residual clause of § 924(e)(2)(B)(ii)

was unconstitutionally vague because the process by which courts categorize convictions as

violent was unacceptably "wide-ranging" and "indetermina[te]." *Johnson*, 135 S. Ct. at 2557.

The Court began by reaffirming that, under *Taylor v. United States*, 495 U.S. 575 (1990), the

residual clause requires the categorical approach to determine whether a particular statute is a

crime of violence. *Johnson*, 135 S. Ct. at 2557, 2562. Courts must therefore assess whether a

crime is a violent felony "'in terms of how the law defines the offense and not in terms of how an

individual might have committed it on a particular occasion.'" *Id.* at 2557 (quoting *Begay v.

United States*, 553 U.S. 137, 141 (2008)).

14.      The Court observed that, under its precedents, the residual clause "requires a court

to picture the kind of conduct that the crime involves 'in the ordinary case,' and to judge whether

that abstraction presents a serious potential risk of physical injury." *Johnson*, 135 S. Ct. at 2557

(citation omitted). But the *Johnson* Court found that "grave uncertainty" abounded in

determining "how to estimate the risk posed by a crime" in the "judicially imagined 'ordinary

case'" because "[t]he residual clause offers no reliable way to choose between . . . competing

accounts of what 'ordinary' . . . involves." *Id*. at 1257-58. The Court thus concluded that the

process of determining what is embodied in the "ordinary case" was fatally flawed and

unconstitutionally vague. *Id*.

5

15.    This flaw alone established the residual clause's unconstitutional vagueness, but a closely related defect exacerbated the problem. *Id*. The residual clause lacked a meaningful gauge for determining when the quantum of risk under the "ordinary case" of a particular statute was enough to constitute a "serious potential risk of physical injury." *Id.* at 2558. Although the level of risk required under the residual clause could arguably be similar to that of the enumerated offenses (burglary, arson, extortion, or crimes involving use of explosives), *Johnson* rejected the notion that comparing the risk posed by an "ordinary case" to the risk posed by enumerated offenses would cure the constitutional problem. *Id.* The Court held that the indeterminacy, unpredictability, and arbitrariness inherent in the ordinary case analysis was more than the "Due Process Clause tolerates." *Id.* Thus, *Johnson* not only invalidated the ACCA residual clause; it invalidated the "ordinary case" analysis in determining the violence inherent in crimes. *See id.*

**B.     *Johnson* Renders § 924(c)(3)(B) Unconstitutionally Vague.**

16.    The residual clause in § 924(c) suffers the same defects as the ACCA residual clause in § 924(e). The language of the provisions is similar; federal courts treat the provisions the same; and both provisions depend on the now-abrogated "ordinary case" analysis.

17.    Section 924(e) defines a "violent felony" to include those that involve "a serious potential risk" of "physical injury" to another person. Section 924(c) defines a "crime of violence" to include those that involve "a substantial risk" that "physical force" may be used against a person or property. Both provisions thus define violent crimes according to their intrinsic risk that they may involve physical force or injury. Although the risk at issue in § 924(e) is a risk of physical injury, and the risk in § 924(c) is that physical force will be used, this

6

difference is immaterial under *Johnson*'s rationale. The Supreme Court's holding did not turn on the type of risk at issue but rather on how courts assess and quantify the risk intrinsic in a crime.

18. Federal courts have recognized that § 924(e)'s residual clause is similar to § 924(c)(3)(B) and to 18 U.S.C. § 16(b), which is identical to § 924(c)(3)(B).[1] *See, e.g.*, *United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on ACCA case to interpret the definition of crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993) (relying on ACCA case to interpret crime of violence under § 16(b)); *see also Chambers v. United States*, 555 U.S. 122, 133 n.2 (2009) (Alito, J., concurring) (§ 16(b) "closely resembles ACCA's residual clause"); *United States v. Keelan*, 786 F.3d 865, 871 n.7 (11th Cir. 2015) (describing the ACCA residual clause and § 16(b) as "analogous"); *Roberts v. Holder*, 745 F.3d 928, 930 (8th Cir. 2014) (ACCA's definition of a violent felony is "virtually identical to § 16(b)"); *United States v. Williams*, 537 F.3d 969, 971 (8th Cir. 2008) ("The present case involves the term 'crime of violence' whereas the Supreme Court in *Begay* interpreted the term 'violent felony.' We have never recognized a distinction between the two.").

19. Under § 924(c), just as under § 924(e), a court must first picture the "ordinary case" and then decide if it categorically qualifies as a crime of violence by assessing the intrinsic risk posed. *See United States v. Fuertes*, 805 F.3d 485, 498-99 (4th Cir. 2015) (explaining that,

---

[1] 18 U.S.C. § 16 defines a crime of violence as "(a) an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or (b) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense."

to determine whether a predicate offense qualifies as a crime of violence under § 924(c), courts

must use the categorical approach and look to the statutory definition of the offense).[2]

20.    Indeed, in litigating *Johnson*, the United States agreed that the residual clauses in

§ 924(e) and § 924(c) posed the same problem.  After noting that the definitions of crime of

violence in the residual clauses of § 924(c) and § 16(b) are identical, the Solicitor General stated:

> Although Section 16 refers to the risk that *force* will be used rather than that
> *injury* will occur, it is equally susceptible to petitioner's central objection to the
> residual clause: Like the ACCA, Section 16 requires a court to identify the
> ordinary case of the commission of the offense and to make a commonsense
> judgment about the risk of confrontations and other violent encounters.

Supplemental Brief for the United States, *Johnson v. United States*, 135 S. Ct. 2551, 2015 WL

1284964, at *22-23 (Mar. 20, 2015) (emphasis in original).  The Solicitor General's analysis was

correct.  The residual clauses in both § 924(c) and § 924(e) require an "ordinary case" analysis to

assess the predicate offense, and both require speculation about how risky that ordinary case is.

21.    Because this is the same defect that rendered § 924(e) unconstitutional, the

residual clause in § 924(c) is also unconstitutional, as various federal courts have recognized.[3]

---

[2]*Accord United States v. Serafin*, 562 F.3d 1105, 1107-08 (10th Cir. 2009) (explaining the court
employs a "categorical approach" when determining whether a crime qualifies as a crime of
violence for purposes of § 924(c), and does not consider the particular facts of conviction);
*United States v. Acosta*, 470 F.3d 132, 135 (2d Cir. 2006) (same); *United States v. Jennings*, 195
F.3d 795, 797-98 (5th Cir. 1999) (same); *United States v. Amparo*, 68 F.3d 1222, 1224 (9th Cir.
1995) ("This circuit has adopted a categorical approach to determining which offenses are
included under section 924(c) as 'crimes of violence'… ."); *United States v. Moore*, 38 F.3d 977,
980 (8th Cir. 1994) *abrogated on other grounds by United States v. Torres-Villalobos*, 477 F.3d
978, 986 (2007) (explaining, when analyzing whether a predicate crime falls within the residual
clause of § 924(c), "the question is not whether the particular facts constitute a crime of violence,
but whether [the predicate crime itself] is a crime of violence," and in making this determination,
courts must look to the elements of the crime, not the particular facts of the crime, to determine
whether "by its nature" there is a "substantial risk that physical force will be used").

*E.g.*, *United States v. Bell*, No. 15-00258, 2016 WL 344749, at *11-13 (N.D. Cal. Jan. 28, 2016);

*United States v. Lattanaphom*, No. 99-CR-00433, 2016 WL 393545, at *3-6 (E.D. Cal. Feb. 2,

2016); *United States v. Edmundson*, No. 13-CR-15, 2015 WL 9311983, at *2-6 (D. Md. Dec. 23,

2015); *see also Freeman v. United States*, No. 15-3687 (2d Cir. Jan. 26, 2016) (authorizing

successive § 2255 motion based on *Johnson*'s applicability to § 924(c)) (unpublished); *Ruiz v.

United States*, No. 16-1193 (7th Cir. Feb. 19, 2016) (same) (unpublished).

## II.    KIDNAPPING UNDER § 1201 AND CARJACKING UNDER § 2119 DO NOT QUALIFY AS CRIMES OF VIOLENCE UNDER THE FORCE CLAUSE OF § 924(C)(3)(A).

### A.    Introduction.

22.    Because the residual clause of § 924(c) is unconstitutionally vague, the validity of

Mr. Fulks's §§ 924(c) and (o) convictions depends on whether his carjacking and kidnapping

convictions satisfy § 924(c)(3)(A)'s force clause.  To determine whether a predicate offense

qualifies as a crime of violence under § 924(c), reviewing courts must use the categorical

approach.  *See Descamps v. United States*, 133 S. Ct. 2276, 2283 (2013); *Fuertes*, 805 F.3d at

498.  This approach requires that courts "look only to the statutory definitions – i.e., the elements

– of a defendant's [offense] and not to the particular facts underlying [the offense]" in

determining whether the offense qualifies as a crime of violence.  *Descamps*, 133 S. Ct. at 2283

(citation omitted); *Fuertes*, 805 F.3d at 498 ("[W]hen a statute defines an offense using a single,

---

[3]The Fifth, Seventh, and Ninth Circuits have also held that the residual clause of § 16, which is identical to the residual clause in § 924(c), is sufficiently similar to the residual clause in § 924(e) to be unconstitutionally vague. *See United States v. Gonzalez-Longoria*, 813 F.3d 225, 235 (5th Cir. 2016); *United States v. Vivas-Cejas*, 808 F.3d 719, 720 (7th Cir. 2015); *Dimaya v. Lynch*, 803 F.3d 1110, 1120 (9th Cir. 2015).

9

indivisible set of elements that allows for both violent and nonviolent means of commission, the offense is not a categorical crime of violence.").

23.    Under the categorical approach, to satisfy the force clause of § 924(c), the offense in question must have "as an element the use, attempted use, or threatened use of physical force against the person or property of another . . . ."  18 U.S.C. § 924(c)(3)(A).  An offense does not satisfy § 924(c)(3)(A) under the categorical approach if it can be achieved without the use or threat of violent physical force.  *See, e.g.*, *Johnson (Curtis) v. United States*, 559 U.S. 133, 140 (2010) (physical force in the context of § 924 "means *violent* force - *i.e.*, force capable of causing physical pain or injury to another person"); *see also United States v. Jordan*, 812 F.3d 1183, 1186 (8th Cir. 2016) (a crime "does not qualify as a violent felony under the force clause" if "the government need not prove violent physical force . . . . This is what separates the force clause from the residual clause.").[4]

24.    Additionally, an offense can only constitute a crime of violence under the force clause if it requires that the use of force be intentional or a "means to an end in the commission of the crime … ."  *Garcia v. Gonzales*, 455 F.3d 465, 469 (4th Cir. 2006) (interpreting the categorical crime of violence component of 18 U.S.C. § 16(b), which is identical to that of § 924 (c)).  *See also id.* at 468 (holding that § 16(a) also requires the "intentional employment of physical force").  Thus, for instance, in *United States v. Vargas-Duran*, the Fifth Circuit held that a statute criminalizing "intoxication assault," which may be committed by means of accidentally causing serious bodily injury to another while intoxicated, is not a crime of violence under a

---

[4]In *Jordan*, the Eighth Circuit analyzed the force clause under § 924(e), which is materially identical to the force clause found in § 924(c).

provision of the Sentencing Guidelines that is the material equivalent of § 924(c)(3)(a). *United States v. Vargas-Duran*, 356 F.3d 598, 602-05 (5th Cir. 2004) (en banc). In reaching this conclusion, the Fifth Circuit stressed that the definition of crime of violence requires that the offense have, *as an element*, the "use, attempted use, or threatened use of physical force." *Id.* at 602. It then concluded that the "plain meaning of the word 'use' requires intent," and that the same is true when the word "use" is modified by "attempted" or "threatened":

> Were we to interpret "use of force" inconsistently with its plain meaning – that is, as capable of being performed without intent – we would effectively nullify the state of mind required by "attempted use" and "threatened use." For how could one intentionally attempt to unintentionally use force, or intentionally threaten to unintentionally use force? The force, so to speak, of this rhetorical question only bolsters our belief that "use" requires intent.

*Id.* at 603. Similarly, in *United States v. King*, the Tenth Circuit expressly held that the intent requirement of the force clause applies not only to the use of force, but also to the threatened use of force. *United States v. King*, 979 F.2d 801, 803 (10th Cir. 1992). There, the court determined that conspiracy does not constitute a violent felony because the "threatened use of physical force" means "both an intent to use force and a communication of that intent." *Id.* (citing Black's Law Dictionary 1480 (6th ed. 1990)).

25.    For the reasons outlined below, because the federal kidnapping and carjacking statutes do not require the government to prove that the defendant used violent physical force or that he or she did so intentionally, they do not qualify as crimes of violence under the force clause of § 924(c)(3)(A).

11

**B.      Kidnapping Under § 1201 Does Not Qualify as a Crime of Violence Under the Force Clause of § 924(c)(3)(A).**

26.      Kidnapping under § 1201 does not qualify as a crime of violence under the force clause of § 924(c)(3)(A) because it may be accomplished without the use of violent physical force.  The federal kidnapping statute does not categorically require "*violent* force – that is, force capable of causing physical pain or injury to another person," *Johnson (Curtis)*, 559 U.S. at 140. Instead, the crime may be accomplished through non-physical means, such as by "inveigling" or "decoying." § 1201(a); *United States v. Hughes*, 716 F.2d 234, 239 (4th Cir. 1983) (noting that a kidnapper may "use[] deceit and trickery to accomplish his purpose rather than overt force"); *see also United States v. Wills*, 234 F.3d 174, 177 (4th Cir. 2000) ("By its terms, § 1201(a) criminalizes kidnappings accomplished through physical, forcible means and also by nonphysical, nonforcible means.").

27.      Because a violation of § 1201 may be committed by means of fraud or deception instead of by force, it does not categorically include the element of physical force necessary to qualify as a crime of violence under § 924(c)(3)(A).  *See Fuertes*, 805 F.3d at 498-99 (concluding that sex trafficking by force, fraud, or coercion is not a crime of violence under either the force clause or the residual clause of § 924(c) because it does not categorically involve physical force).[5]

---

[5]*See also United States v. Montes-Flores*, 736 F.3d 357, 368-69 (4th Cir. 2013) (holding South Carolina offense of assault and battery of a high and aggravating nature does not qualify as crime of violence because it does not categorically require physical force as an element); *United States v. Aparicio-Soria*, 740 F.3d 152, 157-58 (4th Cir. 2014) (en banc) (reasoning, because Maryland offense of resisting arrest may be committed by either violent or nonviolent means, it does not qualify as a crime of violence under U.S.S.G. § 2L1.2, the reentry Guideline); *United States v. Royal*, 731 F.3d 333, 341-42 (4th Cir. 2013) (reasoning, because Maryland offense of second-

12

28.     In addition, § 1201's requirement that the kidnapper "hold" the victim for ransom or reward does not categorically require physical force.  As the Supreme Court has explained, "[t]he act of holding a kidnapped person for a proscribed purpose necessarily implies an unlawful physical *or mental restraint* for an appreciable period against the person's will and with a willful intent so to confine the victim." *Chatwin v. United States*, 326 U.S. 455, 460 (1946) (emphasis added).  Moreover, the victim need not even be aware of such restraint: "If the victim is of such an age or mental state as to be incapable of having a recognizable will, the confinement then must be against the will of the parents or legal guardian of the victim." *Id.*  As such, a kidnapper who lures a child across state lines may "seize" and "hold" the child by means of enticement (for example, through toys, games, or other amusement) without any use of physical force, as long as such actions were against the will of the parents or legal guardian. Indeed, a common kidnapping scenario – the kidnapping of a newborn from a hospital – need not involve any violent physical force, because such force would be unnecessary.

29.     This conclusion is not altered by the fact that Mr. Fulks pled guilty to kidnapping resulting in death as this component of § 1201 has neither a force nor an intent requirement. That a kidnapping resulted in death does not mean that the defendant used, threatened to use, or attempted to use violent force under § 924(c).  S*ee* Section C, *infra* (describing the difference between *force* and *injury*).  In addition, as this component of the kidnapping statute has "no mens rea requirement," *Fulks*, 875 F. Supp. 2d at 588-89, no criminal intent is needed for this clause to

degree assault may be committed by either violent or nonviolent means, it does not qualify as a violent felony under § 924(e)(1)).

13

be satisfied.  Accordingly, the "resulting in death" component of the kidnapping statute does not satisfy the force clause.

### C.    Carjacking Under 18 U.S.C. § 2119 Does Not Qualify Under the Force Clause of § 924(c)(3) Because It Does Not Require the Use, Attempted Use, or Threatened Use of Violent Physical Force.

30.    That a conviction involves the threatened, attempted, or actual infliction of injury does not satisfy the force clause.  In *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), the United States Court of Appeals for the Fourth Circuit considered whether the defendant's prior conviction for the California offense of willfully threatening to commit a crime which "*will result in death or great bodily injury to another*" had an element equating to a threat of violent force under the under the force clause of U.S.S.G. § 2L1.2 – a clause that is identical in all relevant respects to the § 924(c)(3)(A) force clause.  *Id.* at 168 (citing Cal. Penal Code § 422(a)) (emphasis added).  The Fourth Circuit differentiated between threatening a crime that would result in *injury* and the use, attempted use, or threatened use of *force*.  *Id.* at 168 ("[O]f course, a crime may result in death or serious injury without involving *use* of physical force.").  The Court reasoned that there are many ways in which physical injury – even death – can result without the use of "violent force."  *Id.* at 168-69.  "For example, as the Fifth Circuit has noted, a defendant can violate statutes like § 422(a) by threatening to poison another, which involves no use or threatened use of force."  *Id.* (citing *United States v. Cruz-Rodriguez*, 625 F.3d 274, 276 (5th Cir. 2010)).

31.    Even though the California statute in *Torres-Miguel* required the defendant to have threatened to commit a crime that would result in "death or great bodily injury," the Fourth Circuit found that the California statue was missing a "violent force" element, and thus, could

14

never qualify as a "crime of violence" under the force clause. *Id.* The *Torres-Miguel* court held

that "[a]n offense that results in physical injury, but does not involve the use or threatened use of

force, simply does not meet the Guidelines definition of a crime of violence." *Id.* at 168.

32.     Other circuits have reached similar conclusions regarding the distinction between

injury and force. In *Chrzanoski v. Ashcroft*, 327 F.3d 188, 194 (2d Cir. 2003), which the Fourth

Circuit cited in *Torres-Miguel*, the Second Circuit considered whether a prior Connecticut

conviction for third degree assault qualified as a crime of violence under the force clause. Even

though the Connecticut statute "require[s] the state to prove that the defendant had intentionally

caused physical injury," *Chrzanoski*, 327 F.3d at 193, the "Second Circuit . . . held that [the

statute] does not constitute a crime of violence . . . because there is a difference between

causation of an injury, which is all that the Connecticut statute . . . required, and an injury's

causation by the use of physical force." *Torres-Miguel*, 701 F.3d at 169 (citing *Chrzanoski*, 327

F.3d at 194) (internal quotation marks omitted). The Second Circuit explained that "an

individual could be convicted of intentional assault in the third degree for injury caused not by

physical force, but by guile, deception, or even deliberate omission." *Chrzanoski*, 327 F.3d at

195. "[H]uman experience suggests numerous examples of intentionally causing physical injury

without the use of force, such as a doctor who deliberately withholds vital medicine from a sick

patient" or someone who causes physical impairment by placing a tranquilizer in the victim's

drink. *Id.* at 196.

33.     Likewise, in *United States v. Perez-Vargas*, 414 F.3d 1282 (10th Cir. 2005),

which the Fourth Circuit also cited in *Torres-Miguel*, the Tenth Circuit "explained that, although

the Colorado [third degree assault] statute required [an act causing] bodily injury, imposing that

15

injury does not necessarily include the use or threatened use of physical force as required by the

Guidelines, and so the Colorado crime was not categorically a crime of violence under U.S.S.G.

§ 2L1.2." *Torres-Miguel*, 701 F.3d at 169 (citing *Perez-Vargas*, 414 F.3d at 1287) (internal

quotation marks omitted).  The Tenth Circuit reasoned that "several examples [exist] of third

degree assault that would not use or threaten the use of physical force: . . . intentionally placing a

barrier in front of a car causing an accident, or intentionally exposing someone to hazardous

chemicals." *Perez-Vargas*, 414 F.3d at 1286.

34.    Here, carjacking, as defined by 18 U.S.C. § 2119, can be accomplished by

intimidation.  The Modern Federal Jury instructions on carjacking indicate that, to find

intimidation:

> The government does not have to prove that the defendant's behavior caused or
> could have caused great terror or panic, but it must show that an ordinary person
> would have feared bodily harm because of defendant's behavior.  The government
> also does not have to prove that the defendant made explicit threats of bodily
> harm.  If you find that the defendant confronted [the victim] in such a way that it
> would reasonably create a fear of bodily harm, that is sufficient.
>
> Evidence that an unusually timid victim was actually intimidated by the
> defendant's conduct is not, by itself, proof that the defendant engaged in
> intimidating conduct, although you may take evidence that [the victim] was
> actually placed in fear of bodily harm as evidence of how a reasonable person
> would have reacted.  The government must prove, beyond a reasonable doubt,
> that an ordinary person not just the unusually timid victim – would have
> experienced fear of bodily harm because of what the defendant did or said.

Modern Federal Jury Instruction 53A-5, Sand and Siffert (2014).

35.    Accordingly, as intimidation does not have any intent requirement and can be

found absent "explicit threats of bodily harm" from the defendant, the intimidation element of

the carjacking statute fails to satisfy § 924(c)'s force clause.  Intimidation requires that the victim

reasonably infer a threat of *harm* and § 924(c)(3)(A) requires the use, attempted use, or threat of

16

*force*. If, as in *Torres-Miguel*, the threat of "death or great bodily injury" did not satisfy the force clause, then "bodily harm" does not either. Because "[a]n offense that results in physical injury, but does not involve the use or threatened use of force, simply does not meet the Guidelines definition of a crime of violence," *Torres-Miguel*, 701 F.3d at 168, carjacking by intimidation does not satisfy the force clause.

36.    This conclusion is not altered by the language in the carjacking statute requiring "the intent to cause death or serious bodily harm," 18 U.S.C. § 2119. As discussed above, causing or intending to cause *injury* is distinct from using, attempting to use, or threatening to use *force*. As a defendant can intentionally cause harm or injury without using, attempting to use, or threatening to use violent force, § 2119's "death or serious bodily injury" element does not satisfy § 924(c)(3)(A).

37.    That Mr. Fulks pled guilty to carjacking resulting in death does not satisfy § 924(c)(3)(A) either. Just as it does with the kidnapping statute, this component of the carjacking statute does not require that the defendant use violent force or that he do so intentionally. It requires only that death result from the carjacking, regardless of the cause.

38.    Because "the full range of conduct" covered by the federal carjacking statute does not require "violent force," it cannot qualify as a crime of violence under § 924(c)(3)'s force clause. *Torres-Miguel*, 701 F.3d at 171. Even if the possibility of violating the carjacking statute without violent physical force is slim, because the possibility exists, a carjacking conviction does not satisfy the force clause. Indeed, in *Torres-Miguel*, the Fourth Circuit did not cite to a single case in which an offense under the California threat statute was violated with the threat of poisoning or some other non-violent force; yet the *Torres-Miguel* court still found that

17

because the elements of the offense left open the possibility that one could be prosecuted under the statute for the use of non-violent force, the prior offense categorically failed to qualify as a "crime of violence." *Id.* Because the federal carjacking statute offers the same possibility, Mr. Fulks's carjacking conviction does not satisfy § 924(c)(3)(A).

**D.  Carjacking Does Not Satisfy the Force Clause Under § 924(c)(3)(A) Because It Does Not Require the *Intentional* Use, Attempted Use, or Threat of Physical Force.**

39.    In addition to the grounds outlined *supra*, regarding violent physical force, another ground on which carjacking fails to satisfy the force clause is that the intimidation element of the carjacking statute does not require an *intentional* threat of physical force. As discussed above, under *Garcia v. Gonzales*, 455 F.3d 465, for the force clause to be satisfied, the use of violent physical force required by the statute must be intentional. *See* Section A, *supra*. Intimidation does not require intent or even an explicit threat, but is focused on whether a reasonable person would be placed in fear of injury by the defendant's actions, regardless of his intent. *See* Section C, *supra*. As a defendant may be found guilty of carjacking even though he did not intend to put another in fear of injury, carjacking fails to qualify as a crime of violence under *Garcia*.

**III.  MR. FULKS'S CONVICTIONS UNDER 28 U.S.C. §§ 924(C) AND 924(O) SHOULD BE VACATED.**

40.    Mr. Fulks's convictions under 28 U.S.C. §§ 924(c) and (o) should be vacated. A conviction must be vacated when subsequent court rulings establish that the conduct charged is no longer criminal. *See, e.g.*, *United States v. Adams*, 814 F.3d 178 (4th Cir. 2016) (vacating the defendant's conviction where a subsequent decisional law rendered his conduct non-criminal); *Miller v. United States*, 735 F.3d 141, 146-47 (4th Cir. 2013) (same). Indeed, in *Adams*, the

18

defendant pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C. § 922(g) and, as a component of his plea agreement, waived all post-conviction claims that were not related to counsel's ineffectiveness. *Id.* at 180. After the guilty plea was entered and a sentence imposed, the Fourth Circuit ruled in a separate case that the convictions upon which the Government relied for the § 922(g) conviction did not constitute prior felony convictions. *Id.* As the conduct to which he had pled guilty no longer constituted the crime charged, the Fourth Circuit vacated his § 922(g) conviction because he was actually innocent of the crime charged. *Id.* at 183.

41.     Here, Mr. Fulks's §§ 924(c) and (o) convictions relied on the proposition that carjacking under 28 U.S.C. § 1201 and kidnapping under 28 U.S.C. § 2119 were crimes of violence under § 924(c)(3)(A). His indictment and guilty plea explicitly relied on the carjacking and kidnapping statutes as the predicate crimes of violence for his §§ 924(c) and (o) charges. As carjacking under 28 U.S.C. § 1201 and kidnapping under 28 U.S.C. § 2119 cannot satisfy either clause of § 924(c)(3), Mr. Fulks was therefore prosecuted on an indictment that failed to state offenses under §§ 924(c) and (o) and convicted of conduct that is no longer criminal under these two statutes. This is precisely the type of error that is cognizable under § 2255. *See Davis v. United States*, 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal," "such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255"). Accordingly, just as in *Adams* and *Miller*, Mr. Fulks's convictions for §§ 924(c) and (o) should be vacated.

19

## IV.    MR. FULKS IS ENTITLED TO A NEW CAPITAL PENALTY PHASE.

### A.    The Legal Standard.

42.    The Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a "need for reliability in the determination that death is the appropriate punishment in a specific case." *Woodson v. North Carolina*, 428 U.S. 280, 305 (1976). Accordingly, capital sentencing decisions cannot be made on "factors that are constitutionally impermissible or totally irrelevant to the sentencing process." *Zant v. Stephens*, 462 U.S. 862, 884-85 (1983). In *Johnson v. Mississippi*, 486 U.S. 578 (1988), the Supreme Court ruled that a death sentence must be reversed if it was based "on a reversed conviction." *Id.* at 585. In *Johnson v. Mississippi*, the defendant had been sentenced to death based, in part, on a prior conviction for assault which was overturned after the defendant was sentenced to death. *Id.* at 581. Even though there were aggravating circumstances unrelated to the assault conviction that remained undisturbed, the Supreme Court held that a new sentencing was constitutionally required because the jury considered the subsequently invalidated prior conviction, this conviction "provided no legitimate support for the death sentence imposed on Petitioner," and there was "a possibility that the jury's belief that petitioner had been convicted of a prior felony would be 'decisive' in the 'choice between a life sentence and a death sentence." *Id.* at 586 (internal citations omitted).

43.    The need for a resentencing when a prior conviction is subsequently invalidated is reinforced by the sentencing package doctrine. Under sentencing package theory, courts have recognized that convictions cannot be viewed in isolation for the purposes of sentencing, but as an entire "sentencing package." *See United States v. Watkins*, 147 F.3d 1294, 1297 (11th Cir. 1998) (listing cases). Accordingly, under the sentencing package doctrine, when a defendant has

20

been convicted and sentenced on a number of convictions simultaneously and one of those convictions is vacated, the defendant should be resentenced on all of the convictions as they are part of one sentencing package. The sentencing package doctrine has been largely accepted by federal courts, *Watkins*, 147 F.3d at 1295 n.3, and was adopted by the Fourth Circuit. *See United States v. Hillary*, 106 F.3d 1170 (4th Cir. 1997) (holding that where a defendant had successfully attacked his § 924(c) conviction in collateral proceedings, the district court had the authority to resentence him on the remaining charges, as the sentence must be viewed in the "aggregate"); *see also, United States v. Smith*, 115 F.3d 241, 245 (4th Cir. 1997) (same, and explicitly endorsing "sentencing package theory").

**B.     The Jury's Consideration of Mr. Fulks's §§ 924(c) and (o) Convictions Undermined the Validity of the Penalty Phase of His Capital Trial.**

**1.     The Jury Considered and Found Extensive Mitigation.**

44.     The jury considered compelling mitigating evidence during Mr. Fulks's capital sentencing proceeding. Through ten lay witnesses, the jury considered "a compelling and empathetic picture of a young Chad Fulks growing up in poor, crowded, filthy, and deplorable living conditions, raised by violently abusive, sexually deviant, emotionally neglectful, and alcoholic parents who did not appear to care at all about their children's well being." *Fulks*, 875 F. Supp. 2d at 568.

45.     In addition to the lay witness evidence, the jury heard what this Court found to be "a substantial mental health case," that "emphasize[d] that the criminal acts related to Fulks's brain damage, as evidenced by hard evidence such as diagnostic tests including CAT scans, PET scans, and EEGs" of brain damage, and included extensive evidence of Mr. Fulks's cognitive

21

and mental health impairments. *Fulks*, 875 F. Supp. 2d at 556, 561.[6]  At Mr. Fulks's trial, six experts provided opinions regarding Mr. Fulks's mental health and cognitive abilities: behavioral neurologist David Bachman, M.D.; biostatistics and morphometrics expert Fred Bookstein, Ph.D.; cognitive neuroscientist Ruben Gur, Ph.D.; psychologist James Evans, Ph.D.; Fetal Alcohol Spectrum Disorder ("FASD") expert Howard Becker, Ph.D.; and child development and family history expert Arlene Andrews, Ph.D.

46.     Dr. Bachman testified that Mr. Fulks suffered from FASD, a condition which encompasses neurological impairments resulting from fetal alcohol exposure. *Fulks*, 875 F. Supp. at 557; TT 6/24/04 at 31.  Dr. Bachman reviewed brain imaging, including an MRI, a PET scan, and an EEG.  Consistent with Mr. Fulks's diagnosis of FASD, all of these studies revealed that Mr. Fulks had an abnormal brain.  More specifically, Mr. Fulks had a cyst where an area of his brain had failed to develop and had "diffuse abnormality throughout the entire brain."  TT 6/24/04 at 19-24.  Dr. Bachman also testified that his neurological testing reflected that Mr. Fulks was in the borderline range of intellectual functioning, that he had frontal lobe impairment, and that the frontal lobe was the part of the brain that controlled decision making and behavior. TT 6/24/04 at 14, 18, 48.  Dr. Bachman explained that Mr. Fulks's brain impairments were "exacerbated by Fulks's life of alcohol and drug abuse starting at a young age, which, together with his multiple head injuries, significantly impacted his cognitive ability."  *Fulks*, 875 F. Supp. 2d at 557.

---

[6] For ease of reference, the transcript from Mr. Fulks's June 2004 penalty phase trial will be cited by "TT" followed by the date of the relevant transcript and the page number.

22

47.    Dr. Bookstein examined "brain imaging studies [which] help[ed] confirm the FASD diagnosis." *Id.* at 556.  These brain scans revealed that Mr. Fulks had an abnormal corpus callosum, which is highly correlated to FASD.  TT 6/24/04 at 93-111.  Based on his review of these scans, Dr. Bookstein confirmed that Mr. Fulks's brain was affected prenatally by exposure to alcohol, and that the odds that he had FASD were 600 to 1.  TT 6/24/04 at 111-12.

48.    Dr. Gur reviewed scans of Mr. Fulks's brain, analyzed neuropsychological testing conducted of Mr. Fulks, and concluded that Mr. Fulks had a "highly abnormal brain." *Fulks*, 875 F. Supp. 2d at 557.  Dr. Gur confirmed the presence of a cyst where a portion of Mr. Fulks's brain had failed to develop, and indicated that Mr. Fulks's entire brain was misshapen.  TT 6/16/04 at 40, 70-80.  Consistent with FASD, the nature of Mr. Fulks's brain abnormalities indicated that his brain had not properly developed while *in utero*.  TT 6/16/04 at 77-78.  Dr. Gur also observed brain damage above and beyond what would be expected from FASD, which was likely caused by head injuries and substance abuse occurring later in Mr. Fulks's life.  TT 6/23/04 at 135.  The area of Mr. Fulks's brain that was most impaired governs his executive functioning, which includes judgment and impulse control.  TT 6/16/04 at 137.

49.    Dr. Gur further testified that "the abnormality in [Mr. Fulks's] brain structure and function explain a lot about the behaviors, and the cognitive and emotional deficits that have been documented in [Mr. Fulks's] case," that the abnormalities observed reflected impairments in his frontal lobe, and that these impairments caused Mr. Fulks to make poor decisions. *Fulks*, 875 F. Supp. 2d at 557.

50.    Regarding his intellectual functioning, Dr. Gur testified that Mr. Fulks was "clearly not a bright individual," that his IQ testing reflected intellectual functioning that was

23

"slightly above the cut of retardation," and that many of the measures in Mr. Fulks's IQ testing were "well below that threshold." *Fulks*, 875 F. Supp. 2d at 558.

51.    Dr. Evans conducted a battery of psychological testing on Mr. Fulks, as well as a quantitative EEG. TT 6/23/04 at 5-22. Dr. Evans indicated that Mr. Fulks had borderline intellectual functioning, reflecting a full scale IQ that ranged from 75 to 79. *Id.* at 32. Dr. Evans also gauged Mr. Fulks's reading ability, which was at the 6th to 7th grade level and in line with the IQ findings. TT 6/23/04 at 10. Dr. Evans confirmed that Mr. Fulks had a "damaged frontal lobe, which caus[ed] him to act impulsively, learn slowly, fail to plan ahead, and puts him at higher risk for criminal behavior." *Fulks*, 875 F. Supp. 2d at 558.

52.    Dr. Becker, an expert in FASD, testified that individuals such as Mr. Fulks with brain damage and FASD diagnoses have functional cognitive and intellectual impairments, such as lower IQ's, "learning and memory deficits," "impulsivity," "deficits in executive functioning," and "impaired social communication and social etiquette." TT 6/23/04 at 135-38. Consistent with Mr. Fulks's reported IQ of 75 to 79, FASD sufferers typically have IQ's in the 70's. *Id.* at 138. Moreover, FASD sufferers do not learn from experience, have difficulty engaging in abstract reasoning, "don't understand what they are doing right now might have some impact on what might occur later on," and "tend to be impulsive." TT 6/23/04 at 144-45.

53.    Dr. Andrews conducted interviews with Mr. Fulks, his family, and other people who knew him; reviewed records relating to his life; and testified to Mr. Fulks's life history. Dr. Andrews "found the major theme in Fulks's life to be chaos, with his parents constantly drinking and fighting and his lacking any proper supervision and care givers." *Fulks*, 875 F. Supp. 2d at 570. Mr. Fulks was "beaten by his father," exposed to "inappropriate sexual activity including

24

graphic pornography on the walls and ceilings" of his house, and "molested by an older man when he [Fulks] was a child." *Id.* at 570-71, 559. "Dr. Andrews surmised that Fulks was inflicted with multiple stressors and deprived of emotional attention, that he did not have the resiliency or intellect to handle them, so he turned to alcohol, drugs, and other negative behavior to cope with the anxiety." *Id.* at 571.

54.    In its submissions during the original § 2255 proceedings, the Government itself acknowledged that the  jury heard mitigating evidence about Mr. Fulks's life history which was "exhaustive," "compelling," "emotionally powerful and humanizing," Gov. Opp'n to § 2255 Mot. at 36, 62, 157-58, and which showed that Mr. Fulks grew up in "horrendous conditions" in an atmosphere of "neglect and abuse, which resulted in a childhood permeated with filth, violence, alcohol and substance abuse, and sexual depravity," *id.* at 35-42, 61-67, 157-59.

55.    "The record reflects, and the jury found, that trial counsel . . . presented evidence that Petitioner's childhood was one of physical abuse, emotional neglect, sexual abuse, and self-medication with drugs and alcohol." *Id.* at 573. Indeed, at least one juror found twenty-two mitigating circumstances and nine or more jurors found twenty-five mitigating circumstances. *Id.* at 573, n.25.

56.    The jury unanimously found the following mitigating circumstances:

- Mr. Fulks's mother abused alcohol while she was pregnant with him.

- Mr. Fulks suffered from learning disabilities as a child.

- Mr. Fulks was neglected by both of his parents.

- Mr. Fulks lived in a house that was often filthy and infested with roaches and rats.

- Mr. Fulks's parents did not provide him with adequate clothing or school supplies.

25

- Mr. Fulks's parents sold food stamps to get money for beer.

- Mr. Fulks was often left without supervision.

- Mr. Fulks was permitted to roam the streets as a young child.

- A principal, a police officer, and a probation officer all recommended that Mr. Fulks be removed from his home when he was nine years old, but he was not removed.

- Mr. Fulks's parents gave him little attention or affection.

- Mr. Fulks was subjected to emotional abuse as a child.

- Mr. Fulks was subjected to physical abuse as a child.

- Mr. Fulks grew up seeing his parents frequently fighting each other.

- Mr. Fulks grew up seeing heavy drinking and frequent fighting by other adults in his own house.

- Mr. Fulks grew up seeing graphic photographs of naked women papering the walls and ceiling of his basement.

- Mr. Fulks's father showed him pornographic movies as a young child.

- Mr. Fulks started drinking alcohol at age nine and using marijuana at eleven or twelve, and his parents made no effort to stop him.

- Mr. Fulks's brother taught him to inhale gasoline and paint as a young teenager.

- Mr. Fulks's mother ignored his stealing.

- Mr. Fulks's brothers taught him to steal, fight, and break into cars.

- Mr. Fulks attempted suicide at age thirteen.

- Mr. Fulks pleaded guilty to kidnaping and carjacking resulting in death.

Dkt. 1090-29 (verdict form).

26

57. Eleven jurors found true the mitigating factor that Mr. Fulks frequently went hungry or was uncertain whether he would get food as a child. *Id*.

58. Ten jurors found the following two additional mitigating factors:

- Mr. Fulks's parents cared so little for his education that they never helped him with homework, and even left him at school with soiled pants.

- Mr. Fulks was diagnosed with depression, substance abuse, and possible sociopathic tendencies at age fourteen.

*Id*.

### 2. Because the Jurors Found a Wealth of Mitigating Factors, the Jurors' Consideration of the Invalid Convictions at the Penalty Phase Was Not Harmless.

59. Mr. Fulks is entitled to a new penalty phase. The jury credited and weighed the mitigating evidence they heard when determining his sentence. The mitigating factors found by the jury were numerous and powerful. As a part of their weighing process, however, the jury also considered and weighed Mr. Fulks's invalid convictions under §§ 924(c) and (o). Because these convictions are invalid, the jurors were exposed to, and improperly considered, information which "provided no legitimate support for the death sentence imposed on Petitioner." *Johnson v. Mississippi*, 486 U.S. at 586. Moreover, the universe of factors upon which the jury relied in imposing the death penalty has dramatically shifted; that is, the sentencing package that Mr. Fulks's jury considered has unraveled. There is "a possibility that the jury's belief that petitioner had been convicted of a prior felony was 'decisive' in the 'choice between a life sentence and a death sentence.'" *Id.* at 586 (internal citations omitted). Accordingly, Mr. Fulks is entitled to a new sentencing proceeding.

27

**V.    MR. FULKS'S § 2255 MOTION SATISFIES THE REQUIREMENTS OF 28 U.S.C. § 2255(H)(2).**

60.    The gatekeeping provision of the Antiterrorism and Effective Death Penalty Act of 1996 allows a federal prisoner to apply for leave to file a successive § 2255 motion based on "a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable." 28 U.S.C. § 2255(h)(2).

61.    Mr. Fulks has satisfied this standard. A case announces a new rule if its result was not "dictated by precedent existing at the time the defendant's conviction became final." *Chaidez v. United States*, 133 S. Ct. 1103, 1107 (2013) (quoting *Teague v. Lane*, 489 U.S. 288, 301 (1989)). "The explicit overruling of an earlier holding no doubt creates a new rule." *Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (citation omitted). In *Johnson*, the Supreme Court expressly overruled its prior decisions, which had held that ACCA's residual clause was not void for vagueness, and created a new rule of substantive constitutional law. *See Johnson*, 135 S. Ct. at 2563.

62.    New rules apply retroactively if they are either substantive or "watershed rules of criminal procedure." *Schriro v. Summerlin*, 542 U.S. 348, 351 (2004); *Saffle v. Parks*, 494 U.S. 484, 495 (1990). "A rule is substantive rather than procedural if it alters the range of conduct or the class of persons that the law punishes." *Shriro*, 542 U.S. at 353. Here, *Johnson* invalidated the ordinary case analysis. *See* Section I, *supra*. In so doing, *Johnson* invalidated all convictions relying on that type of analysis. As this "alter[ed] the range of conduct or the class of persons that the law punishes," *Shriro*, 542 U.S. at 353, *Johnson* was a new substantive rule of constitutional law, and thus, retroactive.

28

63.    The Supreme Court put to rest any possible dispute on this front in *Welch*, which announced that "[i]t is undisputed that Johnson announced a new rule," that this rule was one of substantive constitutional law, and that it has "retroactive effect in cases on collateral review." *Welch*, 136 S. Ct. at 1264-65, 1268.

64.    Through Sections I-IV, *supra*, Mr. Fulks has stated a claim for relief based on *Johnson*, which overruled prior precedent and was not previously available.  He has met his burden and his application for relief should be granted.

## **CONCLUSION**

65.    Mr. Fulks's convictions for §§ 924 (c) and (o) are unconstitutional in light of the Supreme Court's holding in *Johnson*.  The offenses of kidnapping and carjacking are not categorical crimes of violence under the force clause of 18 U.S.C. § 924(c)(3)(A), and the residual clause of § 924(c)(3)(B) is void for vagueness in light of *Johnson*.  This undermined both his convictions under §§ 924(c) and (o) and his death sentence.  Because Mr. Fulks's claims for relief are properly based on a new rule of constitutional law that has been made retroactive by the Supreme Court and was previously unavailable, Mr. Fulks's convictions for the use of a firearm during a crime of violence under 18 U.S.C. §§ 924(c) and 924(o) must be set aside and his death sentence must be vacated.

**REQUEST FOR RELIEF**

Wherefore, based on the foregoing, Mr. Fulks respectfully requests that the Court grant

him the following relief:

(1) Leave to amend this motion, if necessary;

(2) Leave to file a Memorandum of Law in support of this motion;

(3) Should it assist the Court, a status conference to discuss the timing of the above; and

(4) An order vacating Mr. Fulks's convictions under 18 U.S.C. §§ 924 (c) and (o) and his

death sentence.

Respectfully Submitted,

/s/ Peter Williams
Peter Williams
Assistant Federal Defender
Federal Community Defender Office
 for the Eastern District of
Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

Counsel for Petitioner

Dated:  May 23, 2016

30