IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:02-CR-00992-JFA |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CHADRICK FULKS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO FULKS'S SUCCESSIVE
§ 2255 MOTION AND IN SUPPORT OF MOTION TO DISMISS OR, IN THE
ALTERNATIVE, FOR SUMMARY JUDGMENT**

Respectfully submitted,

SHERRI A. LYDON
UNITED STATES ATTORNEY

*/s/Robert F. Daley, Jr.*
Robert F. Daley, Jr. (ID # 6460)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel.:    (803) 929-3054
Fax:    (803) 929-3135
Email:  Bob.Daley@usdoj.gov

**TABLE OF CONTENTS**

                                                                    **PAGE(S)**

TABLE OF AUTHORITIES..................................................................................iv

I.  INTRODUCTION AND SUMMARY OF ARGUMENT ............................2

II.  PROCEDURAL BACKGROUND ................................................................4

  A.  Indictment..................................................................................4
  B.  Guilty Plea ................................................................................5
  C.  Sentencing Phase.......................................................................8
    1. Initial Jury Instructions........................................................8
    2. Government's Opening Statement.........................................9
    3. Government's Case ...............................................................10
    5. The Court provided only Counts 1 and 2 of the
       Superseding Indictment to the jury for deliberation .....................12
    6. Final Jury Instructions ........................................................12
    7. Jury Verdicts .......................................................................13
    8. Sentence................................................................................14
  D.  Subsequent Proceedings.............................................................15

III.  LEGAL BACKGROUND ...........................................................................16

  A.  Section 924(c)'s residual and force clauses.........................................16
  B.  Section 2255 Proceedings ...........................................................17

IV.  ARGUMENTS .............................................................................................18

  1.  Fulks's §§ 924(c) and (o) convictions remain valid even
      after *Davis* because both predicates - carjacking resulting
      in death and kidnapping resulting in death - are crimes of
      violence under the force clause of § 924(c)(3)(A)..............................18

  2.  Even if kidnapping resulting in death is no longer a crime
      of violence, carjacking is a crime of violence which alone
      supports Fulks's § 924(c) and (o) convictions even after
      Davis.......................................................................................24

ii

3.     Even if the court were to vacate Fulks's §§ 924(c) and (o) convictions, no vacating of Fulks's death sentences on Counts 1 and 2 would be warranted ......................................................29

CONCLUSION ..............................................................................................34

CERTIFICATE OF SERVICE ......................................................................37

# TABLE OF AUTHORITIES

**CASES**                                                                    **PAGE(S)**

*Atkins v. Virginia*,
  536 U.S. 304 (2002) ................................................................................ 16
*Beeman v. United States*,
  871 F.3d 1215 (11th Cir. 2017) ............................................................. 18
*Bennett v. United States*,
  119 F.3d 468 (7th Cir. 1997) ................................................................. 18
*Bousley v. United States,*
  523 U.S. 614 (1998) ................................................................................ 36
*Boyce v. United States*,
  2019 WL 4016193 (D.S.C. 2019) ..................................................... 27, 29
*Burrage v. United States*,
  571 U.S. 204 (2014) .......................................................................... 20, 21
*Connally v. Gen. Constr. Co.*,
  269 U.S. 385 (1926) ................................................................................ 36
*Davila v. United States*,
  843 F.3d 729 (7th Cir. 2016) ................................................................. 27
*Dugger v. Adams*,
  489 U.S. 401 (1989) ................................................................................ 36
*Engle v. Isaac*,
  456 U.S. 107 (1982) ................................................................................ 36
*Estell v. United States*,
  924 F.3d 1291 (8th Cir. 2019) ............................................................... 26
*Ford v. Wainwright*,
  447 U.S.  (1986) ...................................................................................... 16
*Fulks v. United States*,
  551 U.S. 1147 (2007) .............................................................................. 16
*Fulks v. United States*,
  571 U.S. 941 (2013) ................................................................................ 16
*Fulks v. United States*,
  875 F.Supp.2d 535 (D.S.C. 2010) ...................................... 11, 14, 15, 16
*Gonzales v. Duenas-Alvarez*,
  549 U.S. 183 (2007) ................................................................................ 24
*Higa v. United States*,
  2019 WL 4143289 (D.Haw. 2019) .................................................... 27, 29
*In re Hubbard*,
  825 F.3d 225 (4th Cir. 2016) ................................................................. 18
*In re Irby*,
  858 F.3d 231 (4th Cir. 2017) ................................................... 21, 22, 23, 26
*In re Moore*,
  830 F.3d 1268 (11th Cir. 2016) ......................................................... 18, 30

*In re Navarro*,
931 F.3d 1298 (11th Cir. 2019) ...................................................................... 27, 28, 29

*In re Williams*,
330 F.3d 277 (4th Cir. 2003) ...................................................................... 18

*Jacobs v. United States*,
350 F.2d 571 (4th Cir. 1965) ...................................................................... 18, 29

*Johnson v. Mississippi*,
486 U.S. 578 (1988) ...................................................................... 33

*Johnson v. Unit*ed States,
135 S. Ct. 2551 (2015) ...................................................................... 1, 36

*Johnson v. United States*,
559 U.S. 133 (2010) ...................................................................... 20

*Madison v. Alabama*,
139 S. Ct. 718 (2019) ...................................................................... 16

*Massaro v. United States,*
538 U.S. 500 (2003) ...................................................................... 36

*Mathis v. United States*,
136 S. Ct. 2243 (2016) ...................................................................... 19

*McCarthy v. United States*,
394 U.S. 459 (1969) ...................................................................... 26

*Miller v. United States*,
261 F.2d 546 (4th Cir.1958) ...................................................................... 18, 29

*Moncrieffe v. Holder*,
569 U.S. 184 (2013) ...................................................................... 23

*Murray v. Carrier,*
477 U.S. 478 (1986) ...................................................................... 36

*Penry v. Johnson*,
532 U.S. 782 (2001) ...................................................................... 33

*Richmond v. United States*,
2016 WL 6462074 (S.D.Fla. 2016) ...................................................................... 27, 28, 29

*Schlup v Delo*,
513 U.S. 298 (1995) ...................................................................... 36

*Sessions* v. Dimaya,
138 S. Ct. 1204 (2018) ...................................................................... 1

*Skilling v. United States*,
561 U.S. 358 (2010) ...................................................................... 29

*Stokeling v. United States*,
139 S. Ct. 544 (2019) ...................................................................... 21

*Taylor v. United States*,
495 U.S. 575 (1990) ...................................................................... 19

*United States v. Battle*,
927 F.3d 160 (4th Cir. 2019) ...................................................................... 21, 24, 26

*United States v. Bell*,
704 F. App'x 297 (4th Cir. 2017) ...................................................................... 23

*United States v. Brown*,
161 F.3d 256 (5th Cir. 1998) ........................................................................ 35

*United States v. Cammorto*,
859 F.3d 311 (4th Cir. 2017) ........................................................................ 24

*United States v. Castleman*,
572 U.S. 157 (2014) ...................................................................................... 26

*United States v. Causey*,
185 F.3d 407 (5th Cir. 1999) ........................................................................ 33

*United States v. Covington*,
880 F.3d 129 (4th Cir. 2018) ........................................................................ 19

*United States v. Cruz-Rivera*,
904 F.3d 632018 (1st Cir. 2018) ................................................................... 25

*United States* v. Davis,
139 S. Ct. 2319 (2019) .................................................................. 1, 6, 17, 25

*United States v. Doctor*,
842 F.3d 306 (4th Cir. 2016) ................................................................... 24, 25

*United States v. Evans*,
848 F.3d 242 (4th Cir. 2017) ........................................................... 25, 26, 36

*United States v. Fike*,
82 F.3d 1315 (5th Cir. 1996) ........................................................................ 35

*United States v. Fulks*,
454 F.3d 410 (4th Cir. 2006) ................................................................. *passim*

*United States v. Fulks*,
683 F.3d 512 (4th Cir. 2012) ........................................................................ 16

*United States v. Gillon*,
704 F.3d 284 (4th Cir. 2012) ................................................................... 33, 34

*United States v. Gutierrez*,
876 F.3d 1254 (9th Cir. 2017) ...................................................................... 26

*United States v. Hadden*,
475 F.3d 652 (4th Cir. 2007) ........................................................... 30, 31, 32

*United States v. Hayes*,
589 F.2d 811 (5th Cir. 1979) ........................................................................ 21

*United States v. Hill*,
890 F.3d 51 (2d Cir. 2018) ...................................................................... 24, 28

*United States v. Hillary*,
106 F.3d 1170 (4th Cir. 1997) ...................................................................... 30

*United States v. Hornsby*,
666 F.3d 296 (4th Cir. 2012) ........................................................................ 34

*United States v. Hudgins*,
120 F.3d 483 (4th Cir. 1997) ........................................................................ 29

*United States v. Jackson*,
918 F.3d 467 (6th Cir. 2019) ........................................................................ 26

*United States v. Jefferson*,
674 F.3d 332 (4th Cir. 2012) ........................................................................ 29

*United States v. Jones*,
854 F.3d 737 (5th Cir. 2017)..................................................................................... 26

*United States v. Lawson*,
677 F.3d 629 (4th Cir. 2012)..................................................................................... 29

*United States v. Lee*,
697 F. App'x 175 (4th Cir. 2017).............................................................................. 23

*United States v. Lentz*,
524 F.3d 501 (4th Cir. 2008)..................................................................................... 20

*United States v. Livingston*,
63 F. App'x 106 (4th Cir. 2003)................................................................................ 34

*United States v. Louthain*,
771 F. App'x 208 (4th Cir. 2019).............................................................................. 30

*United States v. Maxwell*,
823 F.3d 1057 (7th Cir. 2016)................................................................................... 23

*United States v. McNeal*,
818 F.3d 141 (4th Cir. 2016)..................................................................................... 24

*United States v. Nguyen*,
829 F.3d 907 (8th Cir. 2016)..................................................................................... 35

*United States v. Parrish*,
767 F. App'x 440 (4th Cir. 2019).............................................................................. 23

*United States v. Reyes-Contreras*,
910 F.3d 169 (5th Cir. 2018)..................................................................................... 22

*United States v. Ruiz-Hernandez*,
890 F.3d 202 (5th Cir. 2018)..................................................................................... 20

*United States* v. Simms,
914 F.3d 229 (4th Cir. 2019).................................................................... 1, 13, 14, 17

*United States v. Taylor*,
2019 WL 4018340 (E.D.Va. 2019) ..................................................................... 27, 29

*United States v. Torres-Miguel*,
701 F.3d 165 (4th Cir. 2012)..................................................................................... 26

*United States v. Vasquez*,
672 F. App'x 56 (2d Cir. 2016).................................................................................. 28

*United States v. Ventura*,
864 F.3d 301 (4th Cir. 2017)..................................................................................... 31

*United States v. Walker*,
934 F.3d 375 (4th Cir. 2019)..................................................................................... 20

*United States v. Willis*,
992 F.2d 489 (4th Cir. 1993)..................................................................................... 26

*United States v. Wills*,
346 F.3d 476 (4th Cir. 2003)..................................................................................... 21

*Williams v. United States*,
2018 WL 806659 (D.S.C. 2018) ............................................................................... 23

## STATUTES

18 U.S.C. § 242 ........................................................................................................... 21

18 U.S.C. § 371 ............................................................................................................. 5

18 U.S.C. § 922(g) ........................................................................................................ 5

18 U.S.C. § 922(j) ......................................................................................................... 5

18 U.S.C. § 922(o) ........................................................................................................ 5

18 U.S.C. § 924(c) ................................................................................................. *passim*

18 U.S.C. § 924 ........................................................................................................... 28

18 U.S.C. § 924(c)(1)(A) ............................................................................................ 17

18 U.S.C. § 924(c)(3)(A) ............................................................................................ 17

18 U.S.C. § 924(c)(3)(B) ............................................................................................ 17

18 U.S.C. § 924(o) ................................................................................................... 3, 17

18 U.S.C. § 1201 .................................................................................................. 2, 5, 35

18 U.S.C. § 1201(a) .................................................................................................... 20

18 U.S.C. § 2119 ......................................................................................................... 35

18 U.S.C. § 2119(3) ............................................................................................. 2, 4, 20

18 U.S.C. § 2312 ........................................................................................................... 5

18 U.S.C. § 3591(a)(2) ............................................................................................... 22

21 U.S.C. § 841(b) ...................................................................................................... 20

28 U.S.C. § 2244(b) .................................................................................................... 18

28 U.S.C. § 2255 ................................................................................................... 18, 30

## OTHER

United States Sentencing Guidelines, § 4B1.2(a) ...................................................... 23

Fulks was granted permission to file a successive § 2255 motion attacking his §§ 924(c) and (o) convictions in light of *Johnson v. United States*, 135 S. Ct. 2551 (2015). Dkt. #s 1617 & 1618.[1]  The United States moved to dismiss the motion based on the statute of limitations, reserving the right to raise additional procedural defenses and merits arguments.  Dkt. # 1626. Proceedings were held in abeyance pending decisions in *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018); *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc); and *United States v. Davis*, 139 S. Ct. 2319 (2019).  Dkt. #s 1642, 1649, 1652.  In *Davis* and S*imms*, the supreme court and fourth circuit concluded that the residual clause of § 924(c)(3)(b) is unconstitutionally vague and therefore void.  The court has ordered the parties to file supplemental briefing in light of *Davis* and *Simms*.  Dkt. # 1654.

In light of *Davis* and *Simms*, the United States no longer asserts that Fulks's § 2255 motion is untimely.  Instead, the United States provides this supplemental memorandum explaining why the court should deny Fulks's § 2255 motion and enter judgment in favor of the United States.[2] First, both carjacking and kidnapping resulting in death remain crimes of violence under the force clause of § 924(c)(3)(A) even after *Davis*.  Second, even if kidnapping resulting in death were to no longer qualify as a crime of violence predicate for § 924(c), carjacking alone still supports Fulks's §§ 924(c) and (o) convictions.  Finally, even if this court were to find that Fulks's §§ 924(c) and (o) convictions were invalid in light of *Davis*, the appropriate result would be to vacate only

---

[1] Recently, Fulks filed a "motion for hearing by satellite video" in which he seeks to "forgo further proceedings," explaining that "[t]here is no reason why I cannot be executed now that federal executions have been resumed." Dkt. # 1656, at pp. 1, 3.  The court may wish to conduct a hearing to determine whether Fulks wishes to discontinue this proceeding.

[2] The United States is filing simultaneously with this memorandum a new motion to dismiss or, in the alternative, for summary judgment based on the reasons set forth in this memorandum.

the sentence for those counts and leave the rest of the sentences, including the death sentences, in place. For these reasons, Fulks's § 2255 motion is without merit.

## I. INTRODUCTION AND SUMMARY OF ARGUMENT

Fulks was sentenced to two death sentences for carjacking resulting in death in violation of 18 U.S.C. § 2119(3) and kidnapping resulting in death in violation of 18 U.S.C. § 1201. Dkt. #s 648 & 649 (special verdict forms). The court also sentenced Fulks to an additional 744 consecutive months' imprisonment for various other crimes. Dkt. # 853 (judgment). Two of these additional crimes were: (1) conspiracy to use and carry a firearm during and in relation to, and to possess a firearm in furtherance of a crime of violence, in violation of 18 U.S.C. § 924(o) (Count 5), and (2) using and carrying a firearm during and in relation to, and possessed in furtherance of, a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 6). The predicate crimes of violence for the §§ 924(c) and (o) charges were the carjacking resulting in death and kidnapping resulting in death charges set forth in Counts 1 and 2 of his superseding indictment. Fulks was sentenced to 240 months imprisonment for Count 5 and 84 months imprisonment for Count 6.

Fulks claims his §§ 924(c) and (o) convictions are invalid. He claims that the residual clause of § 924(c)(3)(B) is unconstitutionally vague, and the charged predicate "crimes of violence" for his §§ 924(c) and (o) counts—carjacking resulting in death and kidnapping resulting in death—categorically fail to qualify as "crimes of violence" under the force clause of § 924(c)(3)(A). Dkt. # 1618, pp. 9-18. Fulks further claims the alleged invalidity of his §§ 924(c) and (o) convictions requires the reversal of his death sentences. *Id.* at pp. 21-27.

Fulks's arguments fail, and the court should grant the government's motion to dismiss or for summary judgment, for several reasons. First, both carjacking and kidnapping resulting in

2

death remain crimes of violence under the force clause of § 924(c)(3)(A) after *Davis*: they have as an element the use, attempted use, or threatened use of physical force against the person or property of another. Therefore, Fulks's §§ 924(c) and (o) convictions are still valid.

Second, even if kidnapping resulting in death were to no longer qualify as a crime of violence predicate for §§ 924(c) and (o), carjacking alone still supports Fulks's §§ 924(c) and (o) convictions. Fulks pleaded guilty to the §§ 924(c) and (o) counts, each of which included carjacking as one of the predicate crimes of violence. Fourth Circuit law makes clear that carjacking is a crime of violence under the force clause of § 924(c)(3)(A). Therefore, because carjacking is a valid crime of violence predicate under the force clause of § 924(c)(3)(A), Fulks's §§ 924(c) and (o) convictions are still valid.

Finally, even if the court were to vacate Fulks's §§ 924(c) and (o) convictions, this court must leave in place Fulks's death sentences under Counts 1 and 2. The jury returned independent verdicts of death on Counts 1 (carjacking resulting in death) and 2 (kidnapping resulting in death), and the district court imposed concurrent death sentences on those counts that were independent of the sentences on the other non-capital offenses, including Counts 5 and 6. Additionally, the court instructed the jury that only Counts 1 and 2 were the basis for a possible death sentence. Furthermore, the §§ 924(c) and (o) counts did not result in the admission of any additional prejudicial evidence against Fulks because the § 924 charges arose from the same set of facts as the carjacking resulting in death and kidnapping resulting in death charges. The exact same evidence would have been presented against Fulks even if he had not been charged with violations of §§ 924(c) and (o). In short, the §§ 924(c) and (o) charges caused no additional evidence to be

3

introduced in Fulks's sentencing phase.  For all these reasons, Fulks's § 2255 must be denied and dismissed.

## II.  PROCEDURAL BACKGROUND

### A.  Indictment

This case arose out of the carjacking, kidnapping and murder of Alice Donovan on November 14, 2002, and other offenses committed by Chadrick Fulks and Brandon Basham after they escaped from a detention center in Kentucky.  On April 23, 2003, Fulks and Basham were charged in a superseding indictment with the following charges:

Count 1: Carjacking resulting in death, in violation of 18 U.S.C. § 2119(3);

Count 2: Kidnapping resulting in death, in violation of 18 U.S.C. § 1201;

Count 3: Interstate transportation of a stolen motor vehicle, in violation of 18 U.S.C. § 2312;

Count 4: Conspiracy to commit the offense charged in Counts 1-3 and 7-8, in violation of 18 U.S.C. § 371;

Count 5: Conspiracy to use and carry firearms during and in relation to crimes of violence, in violation of 18 U.S.C. § 922(o);

Count 6: Using a firearm during and in relation to a crime of violence, in violation of 18 U.S.C. § 924(c);

Count 7: Possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g); and

Count 8: Possession of stolen firearms, in violation of 18 U.S.C. § 922(j).

*See* Superseding Indictment, filed on April 23, 2003 (copy attached).

Count 1 specifically charged: "That on or about November 14, 2002 . . . [Fulks and Basham] with intent to cause death and serious bodily harm, by force, violence, and intimidation did take from the person and presence of another, to wit Alice Donovan, a motor vehicle that had been transported in interstate and foreign commerce, that is a 1994 BMW 318i, and Alice Donovan's death resulted." Count 2 specifically charged: "On or about November 14, 2002 . . . [Fulks and Basham] willfully and unlawfully did kidnap and carry away Alice Donovan, and did willfully transport Alice Donovan in interstate from Conway, South Carolina to North Carolina, and did hold her for ransom, reward and otherwise, and Alice Donovan's death resulted." The underlying "crimes of violence" for the §§ 924(c) and (o) charges were the crimes charged in Counts 1 and 2 of the superseding indictment, carjacking resulting in death and kidnapping resulting in death. *Id.* at pp.1, 2, and 11. The superseding indictment alleged aggravating factors and special findings supporting the imposition of the death penalty for the offenses charged in Counts 1 and 2.

### B. Guilty Plea

On May 4, 2004, Fulks tendered a guilty plea to all charges. Dkt. # 547. The district court requested supplemental briefing prior to accepting the guilty plea. The court reconvened the change of plea hearing on May 7, 2004, and accepted the plea. Dkt. #s 555, 556 & 570 (transcript of change of plea hearing). For the factual basis for his plea, Fulks relied upon and adopted a statement he gave to the FBI, which was recorded in an FBI 302.

At the change of plea hearing, the court went through the FBI 302 with Fulks to assure itself of the sufficiency of the factual basis. In the FBI 302, Fulks admitted that on November 14,

2002, the eleventh day of his crime spree[3] with Basham, Fulks was driving a white pick-up stolen from Oleita Hyman with Basham as the passenger.

Fulks stated that "both Fulks and Basham knew that they needed to steal another vehicle, and Fulks drove into the Walmart parking lot" in Conway, South Carolina. Dkt. #570, at p. 85. "As Fulks drove the pick-up truck into the parking lot, they noticed a BMW pulling down one of the aisles looking for a space. Fulks drove the pick-up truck behind the BMW and as the BMW pulled into a space, Basham jumped out of the still moving pick-up." *Id.* Fulks claimed he "assumed that Basham was going to steal an unoccupied vehicle." *Id.* After Fulks traveled down the aisle and "turned and began traveling down the adjacent aisle," Fulks "noticed that Basham was waving his hand signaling Fulks to drive over to his location." *Id.* at 85-86. "Basham was leaning into the driver's side of the BMW sitting on the female driver. Fulks pulled the pick-up in front of the BMW and watched Basham fall over to the front passenger's seat." *Id.* at 86. With Fulks following in the pick-up, "Donovan drove the BMW from the parking space to a location near the rear area of the parking lot." *Id.*

Fulks "parked the pick-up, and entered the BMW in the rear seat." *Id.* Donovan drove out of the parking lot toward Myrtle Beach. She was "ordered to stop the vehicle in an area believed to be the Conway City maintenance facility." *Id.* Donovan was moved to the back seat and "Fulks began driving the BMW." *Id.* Basham, who "was armed with a .22 revolver," sat "on the passenger's side of the back seat with Donovan sitting behind Fulks." *Id.*

---

[3] This was three days after Fulks and Basham carjacked Samantha Burns resulting in death in West Virginia. *United States v. Fulks*, 454 F.3d 410, 415-16 (4th Cir. 2006).

Eventually, Fulks drove to a bank ATM machine and took out $200 using Donovan's stolen ATM card. Fulks then drove to a gas station where Fulks purchased soda, gum, black tape, and radiator repair tape. Fulks then drove to a remote area where both he and Basham raped Donovan. *Id.* at pp 87-89. Fulks then said:

> Donovan remained naked in the back seat and was told by BASHAM that she could not put any of her clothes back on. At some point Donovan put her panties and tennis shoes on ... BASHAM wanted FULKS to begin looking for dirt roads off of Highway 90. FULKS turned down the first dirt road he came to, but quickly turned around after seeing several houses and barking dogs. FULKS turned down several other dirt roads but found that they all had houses on them. FULKS continued to drive down Highway 90 when he recalled seeing a wildlife sign on the side of the road. FULKS passed the dirt road which the wildlife sign pointed to and turned around at a small grocery store, possibly an IGA. FULKS drove back and turned right onto a dirt road. It was dark at this time and FULKS noticed that Donovan's wrists were tied together....
> FULKS continued driving down the dirt road and recalled seeing a long, wooden dock with a green security fence. FULKS turned the BMW around just after passing the dock and pulled up to the right side of the road....
> BASHAM told Donovan that he did not intend to harm her, but only tie her up and leave her in the woods. BASHAM got out of the car. While BASHAM was out of the car, Donovan asked BASHAM to leave the gun in the car since he was only going to tape her up. BASHAM would not leave the gun in the car. BASHAM signaled FULKS to back up the BMW and shut the headlights off. BASHAM took Donovan out of the car and walked to the front of the BMW. BASHAM was holding Donovan by the elbow and had a gun in her side. BASHAM began walking to the right side but for some reason quickly walked back to the left.... FULKS did not see BASHAM holding any tape when he got out of the car.... FULKS last saw BASHAM and Donovan walking into the woods, possibly to the left side. BASHAM returned approximately twenty minutes later and appeared by the front of the BMW. BASHAM was holding Donovan's panties and tennis shoes. BASHAM ... told FULKS to get out of there…. BASHAM told FULKS that he had killed Donovan by choking/strangling her and taping her to a tree.

*Id.* at pp. 90-95.

Fulks admitted the statement he made to the FBI was accurately summarized in the FBI 302 and was made freely and voluntarily. *Id.* at 99. The trial court then stated it was "prepared to accept the plea ... I'm prepared to conclude that there's a factual basis for the plea . . ." *Id.* at 100.

At the change of plea hearing, Fulks was informed by the court that Counts 5 and 6 charged him with: (1) conspiracy to use and carry a firearm during and in relation to, and to possesses a firearm in furtherance of crimes of violence, "as charged in Counts 1 and 2 of the superseding indictment"; and (2) using and carrying a firearm during and in relation to, and possessing a firearm in furtherance of crimes of violence, "as charged in Counts 1 and 2 of the superseding indictment." Dkt. # 570, at pp. 46-47. Fulks confirmed he understood the charges. *Id.* Eventually, Fulks pleaded guilty to Counts 5 and 6 as charged. *Id.* at pp. 165-67. Fulks also pleaded guilty to all the other charges. *Id.* at 190-91.

### C.     Sentencing Phase

#### 1.     Initial Jury instructions

Fulks's sentencing trial began on June 1, 2004. Dkt. # 676 (transcript). Prior to opening statements, the court instructed the jury that any death sentence would be based on convictions under Count 1 and Count 2 alone:

> Mr. Fulks has been charged by the government with violation of federal law. There are eight counts or charges contained in the indictment against him. Mr. Fulks has pled guilty to all eight counts. **For purposes of your participation in this proceeding, however, we need focus only on the first two counts. The first two counts charge Mr. Fulks with offenses for which the penalty is either death or life imprisonment without the possibility of parole. These two offenses are: Count One, carjacking, resulting in death; and Count Two, kidnapping, resulting in death**.

*Id.* at pp. 21-22 (emphasis added); *see also id*. at 31 ("You may decide to impose a sentence of death for either one of the two crimes Mr. Fulks pled guilty to."). The initial instructions further discussed in detail what was required before the jury could decide Fulks should receive the death penalty.

The court explained that after the jury decided upon the aggravating and mitigating factors present, the law required the jury to weigh those factors and to decide whether they were unanimously persuaded that the aggravating factors sufficiently outweighed any mitigating factors to justify imposition of a death sentence. The court instructed the jury: "You should do this with regard to each of the two counts of the indictment." *Id.* at p. 44; *see also id.* at p. 45 ("In carefully weighing the various factors at issue in this case, you are called upon to make a unique, individualized judgment about the appropriateness of imposing the death penalty or life without parole on the defendant for each count."); *id.* at 45-46 ("You are called upon to make a reasoned, moral judgment based upon all of the evidence before you as to whether the death penalty or life without parole is the appropriate punishment for the defendant for each offense in the counts of conviction. "); *id.* at p. 46 ("Separate considerations must be given to aggravating and mitigating factors in each count.").

### 2. Government's opening statement

The government's opening statement explicitly noted the jury's decision regarding the death penalty was based on Fulks's carjacking resulting in death and kidnapping resulting in death convictions. The government noted that although "Chad Fulks actually pled guilty to eight separate charges," "only the first two counts are under consideration for you during this trial

because those are the counts that make him eligible for the death penalty due to certain findings that you may make."  Dkt. # 676 (transcript), at p. 85.

3.      **Government's case**

The presentation of evidence during the sentencing phase was exhaustive but did not include any discussion about Fulks's §§ 924(c) and (o) convictions.   The government presented evidence about Fulks's life prior to and during the 17-day crime spree with Basham.  The evidence included the following:

> -Fulks's abusive marriage with Amber Fowler;
> -Fulks's subsequent abusive relationship with Heather Goodman;
> -Fulks's tricking a fellow inmate's mother into letting him borrow her truck which he stole, and for which he was eventually charged with and convicted of interstate theft of stolen motor vehicle, burglary, theft and evading arrest;
> -Fulks's conviction for aggravated assault, attempted forgery and passing worthless checks;
> -Fulks's conviction for second degree burglary;
> -Fulks's abusive relationship/marriage with Veronica Evans, including his repeated brutal beatings of Evans;
> -Fulks's 110 miles per hour police chase in 2002;
> -Fulks's impersonation of an FBI agent when he robbed at gunpoint young men broken down on Interstate 65;
> -Fulks's subsequent impersonation of an FBI agent in an attempted armed robbery of truck driver Billy Minton on Interstate 65;
> -Fulks's various charges (fraudulent use of credits cards, possession of firearm by a felon, theft of vehicle registration plate, providing false name to police) that led to his arrest and his housing in the Hopkins County, Kentucky, Detention Center;
> -Fulks and Basham's escape from the Hopkins County Detention Center;
> -Fulks and Basham's kidnapping of James Hopkins, the theft of his truck, and the tying him to a tree;
> -Fulks and Basham's theft of firearms from Robert Talsma with the help of Tina Severance and Andrea Roddy;
> -Fulks and Basham's use of various drugs, including marijuana and methamphetamine;
> -Fulks and Basham's carjacking, kidnapping, raping and murder of Marshall University student Samantha Burns;

-Fulks and Basham's burning of Samantha Burns' car;
-Fulks and Basham's robbery of Carl Jordan's son's house and their subsequent shooting at Jordan when he confronted them as they were stealing guns from the house;
-Fulks and Basham's theft of the truck in the front yard of Oleita Hyman's house;
- Fulks and Basham's carjacking, kidnapping, raping and murder of Alice Donovan in her BMW in South and North Carolina, including Fulks admitting to raping Alice Donovan;
-Fulks and Basham's subsequent travels to North Carolina and West Virginia, where they smoked marijuana and crack;
-the attempted carjacking of Andrea Francis at the Ashland, Kentucky, Mall;
-Fulks's later escape from police in Ohio by driving 130 miles per hour;
-Fulks's eventual arrest in Indiana.[4]

During the sentencing phase case presented by the United States, there was no discussion or mention of Fulks's §§ 924(c) or (o) convictions.

### 4. <u>Government's closing argument</u>

In closing arguments, the prosecution summarized the voluminous evidence presented in the sentencing phase. Dtk. #739, at pp. 18-132, 219-38. The prosecution's summary of the carjacking and kidnapping was a full, straightforward description of the way Alice Donovan was carjacked, kidnapped, raped and killed by Fulks and Basham. Dkt. # 739, at pp. 60-65.

---

[4] This brief summary is derived from the Fourth Circuit opinion involving Fulks's direct appeal, *United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006), this court's order denying Fulks's first § 2255 motion, *Fulks v. United States*, 875 F.Supp.2d 535 (D.S.C. 2010), and from the relevant trial transcripts. Dkt. #s 677-83, 686, 687, 699-701, 730-34, 740 (June 2, 2004 through June 22, 2004 trial transcripts). Additionally, a more complete summary of the United States's sentencing phase presentation is set forth in the government's direct appeal brief. *See United States v. Fulks*, Appeal No. 04-33, Dkt. # 82 (4th Cir. Feb 3, 2006).

**5.** **The court provided only Counts 1 and 2 of the Superseding Indictment to the jury for deliberations**

The court, with agreement of the parties, submitted only the first two counts of the indictment (carjacking resulting in death and kidnapping resulting in death) to the jury for deliberations:

>THE COURT: One quick question. The indictment goes to the jury for their deliberation. Should I submit the entire indictment or just Counts 1 and 2? What is the government's position?
>
>MR. SCHOOLS: Whatever defense wants.
>
>MR. BLUME: I think Counts 1 and 2. Those are the ones he is being sentenced on.
>
>THE COURT: All right. Very good.

Dkt. # 739, at pp. 93-94.

**6.** **Final Jury Instructions**

In the court's final jury instructions, it reminded the jurors their verdict as to life imprisonment or death was as to Counts 1 and 2:

>As you know, the defendant has pleaded guilty to two offenses: carjacking, resulting in death, and kidnapping, resulting in death. You will have to decide the appropriate punishment and return individual verdicts for each of the two counts. The instructions I give you today apply, equally, to both counts.

Dkt. # 739, at p. 249. The court additionally explained to the jury it had prepared "two verdict forms that detail special findings that you are asked to make, and the possible decisions you can render as to each of the offenses to which the defendant has previously entered a plea of guilty." *Id.* at p. 250. The court then instructed the jury regarding its determination of the threshold intent:

"You may only consider evidence, including testimony, documents, and stipulations between the parties received in this courtroom, in making your determination." *Id.*

The court provided a detailed explanation of the process the jury needed to follow to reach a verdict. The court explained all the steps required by the special verdict forms. *Id.* at pp. 255-284. At the end of the instructions, the court emphasized to the jury it would reach decisions on the appropriate sentences for Counts 1 and 2: "In addition, I advise you that you may recommend one sentence for Count one, and a different sentence for Count two. In other words, you are not obligated to impose the same sentence for both counts." *Id.* at 284. The court explained that was the reason for separate special verdict forms for Count 1 and Count 2. *Id.* at 284-85 ("As noted earlier, there are two verdict forms because you must return a verdict or punishment for each of the two counts."). Finally, the court repeated the verdict "must be based on the evidence presented in the courtroom in accordance with my instructions." *Id.* at 285.

Importantly, the court never mentioned Fulks's §§ 924(c) and (o) convictions during the jury instructions in the sentencing phase.

### 7. <u>Jury Verdicts</u>

After approximately four hours of deliberation, Dkt. # 741 at p. 16, the jury unanimously returned separate verdicts of death against Fulks on Counts 1 and 2. Dkt. #s 648 & 649 (special verdict forms). *See also* Dkt. # 741, at pp. 16-36 (trial transcript). The jury unanimously found the government proved beyond a reasonable doubt Fulks intentionally and specifically engaged in an act of violence, knowing the act created a grave risk of death to Alice Donovan, such that participation in the act constituted a reckless disregard for human life, and Alice Donovan died as a direct result of the act. Dkt. #s 648 & 649, at p. 2.

The jury also unanimously found the government proved beyond a reasonable doubt the statutory aggravating factor that Alice Donovan's death, and the injury resulting in her death, occurred during Fulks's commission or attempted commission of, or during the immediate flight from, his commission of a kidnapping. Dkt. #s 648 & 649, at p. 3.  It also found the following non-statutory aggravating factors beyond a reasonable doubt:  (1) Fulks committed the offense after he escaped from the Hopkins County, Kentucky, detention facility on November 4, 2002, while awaiting trial on serious charges; (2) Fulks, subsequent to his escape, participated in a carjacking and kidnapping that resulted in the death of 19-year-old Samantha Burns in Huntington, West Virginia; (3) Fulks, subsequent to his escape, participated in a first-degree burglary and other criminal conduct that resulted in the assault with intent to kill Carl Jordan in Conway, South Carolina; (4) Fulks, subsequent to his escape, participated in a carjacking and kidnapping of James Hawkins; (5) Fulks, subsequent to his escape, participated in a high-speed vehicle chase that resulted in endangering the lives of Ohio State Police Officers; (6) Fulks would be a danger in the future to the lives and safety of other persons, including, but not limited to, inmates and correctional officers; and (7) the effect of the death of Alice Donovan on her family, including the extent and scope of the injuries and losses suffered by Alice Donovan and her family, as an aggravating factor.  Dkt. #s 648 & 649, at pp. 4-5.

### 8. <u>Sentence</u>

The district court imposed concurrent sentences of death as to Counts 1 and 2.  The court also sentenced Fulks to a consecutive 744 months imprisonment for his various other crimes.  Dkt. # 853 (judgment). Fulks was sentenced to 240 months imprisonment on Count 5 (§ 924(o)) and 84 months imprisonment for Count 6 (§ 924(c)). *Id.*

**D.** **Subsequent proceedings**

Fulks appealed his death sentences. The Fourth Circuit affirmed the death sentences. *United States v. Fulks*, 454 F.3d 410 (4th Cir.2006). The Supreme Court denied Fulks's certiorari petition. *Fulks v. United States*, 551 U.S. 1147 (2007). Fulks next filed an exhaustive § 2255 motion, which this court denied after holding an evidentiary hearing. *Fulks v. United States*, 875 F.Supp.2d 535 (D.S.C. 2010). Fulks appealed this order. The Fourth Circuit affirmed the denial of the § 2255 motion. *United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012). The Supreme Court denied Fulks's certiorari petition. *Fulks v. United States*, 571 U.S. 941 (2013).

Fulks was granted permission by the Fourth Circuit to file a successive § 2255 motion attacking his §§ 924(c) and (o) convictions in light of *Johnson v. United States*. Dtk. # 1617. Fulks filed his § 2255 motion on June 17, 2016. Dkt. # 1618. The United States moved to dismiss based on the statute of limitations, reserving the right to raise additional procedural defenses and merits arguments if the motion to dismiss were denied. Dkt. # 1626. The proceedings were then held in abeyance pending decisions in *Dimaya*, *Simms*, and *Davis*. Dkt. #s 1642, 1649, 1652. The court has now ordered the parties to file supplemental briefing in light of *Davis* and *Simms*. Dkt. # 1654.[5]

---

[5] Fulks also has a § 2241 petition in the Southern District of Indiana. *Fulks v. Warden*, No. 2:15cv33-JRS (S.D.Ind.). Fulks filed an amended petition on March 19, 2019, raising an intellectual disability claim under *Atkins v. Virginia*, 536 U.S. 304 (2002), and a claim pursuant to *Ford v. Wainwright*, 447 U.S. 399 (1986), and *Madison v. Alabama*, 139 S. Ct. 718 (2019). Extensive briefing on Respondent's motion to dismiss was completed in the middle of August. On September 20, 2019, the district court dismissed Fulks's § 2241 petition with prejudice. *Fulks v. Warden*, No. 2:15cv33-JRS (S.D.Ind.), at Dkt. # 73.

**III.** **LEGAL BACKGROUND**

    **A.** **Section 924(c)'s residual and force clauses**

Section 924(c) provides in relevant part that "any person who, during and in relation to any crime of violence . . ., uses or carries a firearm" shall be sentenced "in addition to the punishment provided for such crime of violence." 18 U.S.C. § 924(c)(1)(A). Section 924(c) defines "crime of violence" through two alternative provisions. The first provision states a "crime of violence" is a felony that "has as an element the use, attempted use, or threatened use of physical force against the person or property of another." 18 U.S.C. § 924(c)(3)(A).  This provision is referred to as the "force clause." The second provision states a "crime of violence" is a felony "that[,] by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 924(c)(3)(B).  This provision is referred to as the "residual clause."[6]

In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court struck as unconstitutionally vague § 924(c)(3)(B)'s residual clause definition of "crime of violence." *Id.* at 2336.  The Fourth Circuit came to the same conclusion a few months earlier in *United States v. Simms*, 914 F.3d 229 (4th Cir. 2019) (en banc). *Davis* and *Simms*, however, do not affect § 924(c)(3)(A)'s force clause definition of "crime of violence."

---

[6] Fulks is also challenging his conviction under 18 U.S.C. § 924(o), which incorporates § 924(c): "A person who conspires to commit an offense under subsection (c) shall be imprisoned for not more than 20 years, fined under this title, or both; and if the firearm is a machine gun or destructive device, or is equipped with a firearm silencer or muffler, shall be imprisoned for any term of years or life." Therefore, any analysis of the constitutionality and appropriate interpretation of § 924(c) applies equally to § 924(o).

16

**B.      Section 2255 Proceedings**

To obtain authorization to file a successive motion to vacate, a prisoner need only make a prima facie showing that his motion satisfies the requirements of 28 U.S.C. § 2244(b)—that is, "'a sufficient showing of possible merit to warrant a fuller exploration by the district court.'" *In re Williams*, 330 F.3d 277, 281 (4th Cir. 2003) (quoting *Bennett v. United States*, 119 F.3d 468, 469-70 (7th Cir. 1997)).  The successive authorization inquiry, however, does not ask whether the movant "will ultimately prevail on his claim." *In re Hubbard*, 825 F.3d 225, 229 (4th Cir. 2016). And if there were any doubt, the *Hubbard* court explicitly concluded that "it is for the district court to determine whether the new rule [in *Johnson*] extends to the movant's case, not for [the Fourth Circuit] in this [authorization] proceeding." *Id.* at 231. Accordingly, the Fourth Circuit's preliminary decision authorizing a successive petition does not relieve the district court of the duty to independently review a § 2255 motion and rule on any applicable procedural and merits arguments.

Additionally, Fulks, as movant, has the burden of demonstrating by a preponderance that he is entitled to relief. *See Jacobs v. United States*, 350 F.2d 571, 574 (4th Cir. 1965); *Miller v. United States*, 261 F.2d 546, 547 (4th Cir.1958) (per curiam) ("Because the proceeding under 28 U.S.C. § 2255 is a civil collateral attack upon the judgment of conviction, the burden of proof is upon petitioner to establish [his claim] by a preponderance of evidence."); *see Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (*Johnson* § 2255 movant "bears the burden to prove the claims in his § 2255 motion"); *In re Moore*, 830 F.3d 1268, 1272 (11th Cir. 2016) ("a movant has the burden of showing that he is entitled to relief in a § 2255 motion—not just a prima facie

17

showing that he meets the requirements of § 2255(h)(2), but a showing of actual entitlement to relief on his *Johnson* claim").

## IV.   <u>ARGUMENTS</u>

**Argument 1:** **Fulks's §§ 924(c) and (o) convictions remain valid even after *Davis* because both predicates—carjacking resulting in death and kidnapping resulting in death—are crimes of violence under the force clause of § 924(c)(3)(A).**

Fulks's §§ 924(c) and (o) convictions remain valid after *Davis* because carjacking resulting in death and kidnapping resulting in death qualify as "crimes of violence" under § 924(c)(3)(A)'s force clause: they have as an element the use, attempted use, or threatened use of physical force against the person or property of another.

To determine whether an offense falls within § 924(c)(3)(A), courts generally apply a "categorical approach." *See, e.g., Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (describing categorical approach in context of Armed Career Criminal Act); *Taylor v. United States*, 495 U.S. 575, 602 (1990) (same). Under that approach, a court "focus[es] solely" on "the elements of the crime of conviction," not "the particular facts of the case." *Mathis*, 136 S. Ct. at 2248. If the statute of conviction lists multiple alternative elements, as opposed to alternative means of committing a single element, it is "divisible" into different offenses. *Id.* at 2249. To classify a conviction under a divisible statute, a court may "look[ ] to a limited class of documents (for example, the indictment, jury instructions, or plea agreement and colloquy) to determine what crime, with what elements, [the] defendant was convicted of." *Id.*; *see United States v. Covington*, 880 F.3d 129, 132 (4th Cir. 2018).

Carjacking resulting in death and kidnapping resulting in death are crimes of violence under the force clause. The death-results provisions of the carjacking and kidnapping statutes

trigger an enhanced penalty, 18 U.S.C. § 2119(3) (increasing sentencing range "if death results"); 18 U.S.C. § 1201(a) (increasing sentencing range if "the death of any person results"), and therefore are elements of the aggravated offenses of carjacking resulting in death and kidnapping resulting in death.[7] *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *United States v. Lentz*, 524 F.3d 501, 512 (4th Cir. 2008) ("death resulted" is an essential element of the offense of kidnapping resulting in death); *United States v. Ruiz-Hernandez*, 890 F.3d 202, 210 (5th Cir. 2018) ("resulting-in-death element" in 8 U.S.C. § 1324(a)(1)(B)(iv) "increases the applicable statutory maximum sentence and thus must be submitted to the jury and found beyond a reasonable doubt"). The carjacking and kidnapping statutes are, therefore, divisible into different offenses—carjacking that does not result in death and carjacking that does result in death, and kidnapping that does not result in death and kidnapping that does result in death—and Fulks was unquestionably charged with and pled guilty to the offenses of carjacking resulting in death and kidnapping resulting in death. Dkt. # 570.

Carjacking resulting in death and kidnapping resulting in death have as an element the use, attempted use, or threatened use of physical force against the person or property of another. "Physical force" in this context means "force capable of causing physical pain or injury to another person," *Johnson v. United States*, 559 U.S. 133, 140 (2010) (interpreting analogous provision of

---

[7] The government concedes that federal kidnapping <u>not</u> resulting in death does not qualify as a crime violence under the force clause of § 924(c). *See United States v. Walker*, 934 F.3d 375 (4th Cir. 2019). However, because the predicate at issue in this case is "kidnapping resulting in death," *Walker* is not controlling.

the Armed Career Criminal Act), including any "amount of force necessary to overcome a victim's resistance," *Stokeling v. United States*, 139 S. Ct. 544, 555 (2019). The force may be indirect. *See United States v. Battle*, 927 F.3d 160, 166-67 (4th Cir. 2019) ("As this Court noted in *In re Irby*, . . . the "distinction we drew in *Torres-Miguel* between indirect and direct applications of force and our conclusion that poison involves no use or threatened use of force, no longer remains valid in light of *Castleman*'s explicit rejection of such a distinction.' *In re Irby*, 858 F.3d 231, 238 (4th Cir. 2017).").

To prove the offenses of carjacking resulting in death and kidnapping resulting in death, the government has to prove the victim was subjected to "physical force" within the meaning of § 924(c)(3)(A). The requirement that "death results" from the carjacking or kidnapping requires a causal connection between the offense and the death; it would not be sufficient, for example, to show the victim happened to die of natural causes during the course of a carjacking or kidnapping. *See Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for causation"); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) (holding that the "death results" provision of 18 U.S.C. § 242 incorporates general principles of causation and noting that death would not "result" from a § 242 violation if the victim is struck by lightning while being detained pursuant to an illegal arrest); *United States v. Wills*, 346 F.3d 476, 500 (4th Cir. 2003) (upholding jury instruction for kidnapping resulting in death charge in which jury was instructed it must determine "whether [victim's] death resulted from the willful and intentional conduct of the defendant"). Establishing that connection will, as in this case, require proof that force capable of causing physical pain or injury or of overcoming a victim's resistance was used during the course of the commission of the offense—whether or not the force was direct or intentional. *See*

*Irby*, 858 F.3d at 236 ("unlawfully killing another human being requires the use of force capable of causing physical pain or injury to another person")[8]; *United States v. Reyes-Contreras*, 910 F.3d 169, 180-84 (5th Cir. 2018) (en banc).

Indeed, where, as here, carjacking resulting in death and kidnapping resulting in death are charged as capital offenses, to return a verdict of death the jury necessarily must find that the defendant intentionally killed his victim; intentionally inflicted serious bodily injury that resulted in his victim's death; intentionally participated in an act, contemplating that the life of a person would be taken or intending that lethal force would be used in connection with a person and the victim died as a result of the act; or intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act. *See* 18 U.S.C. § 3591(a)(2); Superseding Indictment, filed April 23, 2003, at pp. 14-15 (indictment importing into Counts 1 and 2 the statutory aggravating factors in § 3591(a)); Dkt. #s 648 & 649 (special verdict forms).

All statutory aggravating factors of § 3591(a)(2) entail intentional conduct that caused a victim's death. Capital carjacking resulting in death and kidnapping resulting in death, therefore, categorically have as an element—imported from 18 U.S.C. § 3591(a)(2)—the use, attempted use, or threatened use of physical force against the person or property of another because no defendant

---

[8] In *In re Irby*, the Fourth Circuit was faced with a request to file a successive habeas petition. The petitioner argued that second-degree retaliatory murder was not categorically a crime of violence. To deny the petition in *In re Irby*, the Fourth Circuit necessarily had to conclude that the petitioner's argument lacked merit. To reach this conclusion, the court found that even though no means were specified, the ends specified—the unlawful killing of another—required the use of physical force.

can be found guilty of those offenses without a finding that he used force capable of causing physical pain or injury against another person.

It is clear that carjacking resulting in death and kidnapping resulting in death are unlawful killings of a person.  Therefore, they qualify as crimes of violence under the force clause.  *See Irby*, 858 F.3d at 238  ("one cannot unlawfully kill another human being without a use of physical force capable of causing physical pain or injury to another"); *United States v. Parrish*, 767 F. App'x  440, 443 (4th Cir. 2019) ("Because North Carolina second-degree murder requires the unlawful killing of a human being, we conclude that it qualifies as a crime of violence under USSG § 4B1.2(a)."); *United States v. Lee*, 697 F. App'x 175 (4th Cir. 2017) (same); *United States v. Bell*, 704 F. App'x 297, 298 (4th Cir. 2017) (same); *Williams v. United States*, 2018 WL 806659, at *3 (D.S.C. 2018) (Seymour, J.) (holding that South Carolina voluntary manslaughter requires the intentional killing of another and, therefore, necessarily has, as an element, the intentional use of physical force against another).

The existence of a fanciful hypothetical scenario in which death might result from a kidnapping or carjacking without the use of "physical force" does not change the categorical analysis under § 924(c)(3)(A).  *See United States v. Maxwell*, 823 F.3d 1057, 1062 (7th Cir. 2016) (defendant cannot "rely on fanciful hypotheticals not applicable in real world contexts (apart from law school exams)" to show categorical overbreadth).  The Supreme Court and Fourth Circuit have repeatedly cautioned against using "legal imagination" to treat an offense as categorically overbroad. *See Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013) ("there must be 'a realistic probability, not a theoretical possibility, that the State would apply its statute to conduct that falls

outside the generic definition of a crime'") (quoting *Gonzales v. Duenas-Alvarez*, 549 U.S. 183, 193 (2007));[9] *see also Battle*, 927 F.3d at 164 (quoting *Moncrieffe).*

Fulks must point to at least one case in which a court found the death-results element of carjacking resulting in death or kidnapping resulting in death where there was no application of "physical force*."* The court must look to the "minimum conduct" required to obtain a conviction for the crime, but it also must ensure there is "a realistic probability, not a theoretical possibility, that a state would actually punish that conduct." *United States v. Doctor*, 842 F.3d 306, 308, 317 (4th Cir. 2016); *United States v. Hill*, 890 F.3d 51, 56 (2d Cir. 2018) (noting that "to show that a particular reading of the statute is realistic, a defendant must at least point to his own case or other cases in which the courts in fact did apply the statute in the manner for which he argues"). Fulks has cited no such case, and the government is not aware of one. This fact is fatal. *See Battle*, 927 F.3d at 167 (noting that "Battle cannot point to any Maryland [assault with intent to murder] case to support the notion that AWIM may be committed by an act of mere omission"); *Doctor*, 842 F.3d at 310 ("Doctor has not 'identified a single [ ] robbery prosecution where the victim feared bodily harm'—that is, was intimidated—by 'something other than violent physical force.'") (quoting *United States v. United States v. McNeal*, 818 F.3d 141, 156 (4th Cir. 2016)); *Cammorto*, 859 F.3d at 317-18 ("Like the defendant in *Duenas–Alvarez*, Cammorto provides us with no Georgia case, including his own, suggesting 'a realistic probability' that Georgia would treat a defendant as a principal where that defendant would not be principal under federal law."). And as explained above, no such case could exist in the capital context, where carjacking resulting in

---

[9] The Fourth Circuit has noted that the Supreme Court "declined to explore fanciful hypotheticals that could support a conviction" in *Duenas-Alvarez. United States v. Cammorto*, 859 F.3d 311, 317 (4th Cir. 2017).

death or kidnapping resulting in death must always include the additional element of intentional violence. *See Doctor*, 842 F.3d at 317.

For these reasons, Fulks's §§ 924(c) and (o) convictions remain valid even after *Davis* because carjacking resulting in death and kidnapping resulting in death still qualify as "crimes of violence" under § 924(c)(3)(A)'s force clause: they have as an element the use, attempted use, or threatened use of physical force against the person or property of another.

|  | |
|---|---|
| **Argument 2:** | **Even if kidnapping resulting in death is no longer a crime of violence, carjacking is a crime of violence which alone supports Fulks's §§ 924(c) and (o) convictions even after *Davis*.** |

Even if this court were to determine kidnapping resulting in death is no longer a valid predicate crime of violence for §§ 924(c) and (o) purposes after *Davis*, federal carjacking (even if death does <u>not</u> result) is a crime of violence under § 924(c)(1)(A)'s force clause which continues to support Fulks's §§ 924(c) and (o) convictions. Fulks pleaded guilty to the §§ 924(c) and (o) counts and both the underlying predicate crimes of violence—carjacking resulting in death and kidnapping resulting in death. Therefore, Fulks's §§ 924 (c) and (o) convictions remain valid, and this court should deny Fulks's § 2255 motion.

As noted above, in *Davis*, the Court struck as unconstitutionally vague the § 924(c)(3)(B) definition of "crime of violence." 139 S. Ct. at 2336. The decision does not affect § 924(c)(3)(A)'s force clause definition of "crime of violence." The law is well settled that carjacking (even when it does <u>not</u> result in death) is a crime of violence under § 924(c)(3)(A)'s force clause. *United States v. Evans*, 848 F.3d 242, 247-48 (4th Cir. 2017) ("Evans' crime of conviction, carjacking resulting in bodily injury in violation of Section 2119(2), is categorically a crime of violence under the

24

force clause of Section 924(c)(3)")[10]; *Estell v. United States*, 924 F.3d 1291 (8th Cir. 2019); *United States v. Jackson*, 918 F.3d 467, 486 (6th Cir. 2019); *United States v. Cruz-Rivera*, 904 F.3d 632018 (1st Cir. 2018); *United States v. Gutierrez*, 876 F.3d 1254 (9th Cir. 2017) (per curiam); *United States v. Jones*, 854 F.3d 737, 740–41 (5th Cir. 2017). Because Fulks' §§ 924(c) and (o) convictions rests on the clearly qualifying carjacking resulting in death predicate, it does not matter whether kidnapping resulting in death qualifies as a crime of violence after *Davis*.

Counts 5 and 6 of the superseding indictment charged Fulks with using and carrying a firearm during and in relation to carjacking resulting in death, as charged in Count 1 of the indictment, and kidnapping resulting in death, as charged in Count 2 of the indictment. *See* Superseding Indictment. Fulks pleaded guilty to all the counts of the superseding indictment and, in doing so, admitted all the elements of the charges and all material facts alleged in them *See United States v. Willis*, 992 F.2d 489, 490 (4th Cir. 1993).[11] A voluntary and intelligent plea of guilty "is an admission of all the elements of a formal criminal charge." *McCarthy v. United States*, 394 U.S. 459, 466 (1969).

Moreover, Fulks's factual basis for his guilty plea to all eight counts set forth in his 302 interview undeniably established that he pleaded guilty to the crime of using and carrying a firearm during and in relation to carjacking and kidnapping resulting in death. He therefore cannot now

---

[10] Fulks's extended reliance on *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012), *see* Dkt. 1618, at pp. 14-18, to argue that carjacking does not meet the force clause is misplaced. *Torres-Miguel* has been abrogated by the United States Supreme Court decision in *United States v. Castleman*, 572 U.S. 157 (2014). *See Battle*, 927 F.3d at 165-67; *see also In re Irby*, 858 F.3d at 838. More importantly, *Evans* was decided five years after *Torres-Miguel* and the Fourth Circuit in *Evans* rejected the identical argument Fulks makes here. *See Evans*, at 848 F.3d at 247.

[11] Furthermore, a guilty plea constitutes a waiver of all nonjurisdictional defects, including the right to contest the factual merits of the charges. *Id.*

claim carjacking fails to support his §§ 924(c) and (o) convictions. *See Davila v. United States*, 843 F.3d 729, 731 (7th Cir. 2016) ("When stating the factual basis of his plea, Davila admitted to a substantive drug offense that made him eligible for conviction under § 924(c), no matter how the Hobbs Act conspiracy is best classified"); *In re Navarro*, 931 F.3d 1298, 1302 (11th Cir. 2019) (denying authorization for successive § 2255 seeking to attack a § 924(c) conviction based on *Davis* because defendant's factual basis for guilty plea established that defendant committed drug trafficking offenses and conspiracy to commit Hobbs Act robbery: "Navarro's § 924(c) conviction is fully supported by his drug-trafficking crimes, and it therefore is outside the scope of *Davis*, which invalidated only § 924(c)(3)(B)'s residual clause relating to crimes of violence. Even assuming Navarro's companion offense of conspiracy to commit Hobbs Act robbery no longer qualifies as a crime of violence in light of *Davis*, he would not be entitled to relief."); *Boyce v. United States*, 2019 WL 4016193, at * 3-5 (D.S.C. 2019) (Currie, J.) (court rejected § 2255 *Davis* attack on § 924(c) conviction because defendant pleaded guilty to § 924(c) offense with alternative predicate crimes—Hobbs Act robbery conspiracy and drug trafficking crimes—where one predicate was still valid); *United States v. Taylor*, 2019 WL 4018340, at * 3-5 (E.D.Va. 2019) (court rejected § 2255 *Davis* attack on § 924(c) conviction because defendant pleaded guilty to § 924(c) offense with alternative predicate crimes—Hobbs Act robbery conspiracy and attempted Hobbs Act robbery—where one predicate was still valid); *Higa v. United States*, 2019 WL 4143289, at * 2 (D.Haw. 2019) (court rejected § 2255 *Davis* attack on § 924(c) conviction because defendant pleaded guilty to § 924(c) offense with alternative predicate crimes—Hobbs Act robbery and Hobbs Act conspiracy—where one predicate was still valid); *Richmond v. United States*, 2016 WL 6462074, at *2 (S.D.Fla. 2016) (court rejected § 2255 attack on § 924(c) conviction because

defendant pleaded guilty to § 924(c) offense with alternative predicate crimes—Hobbs Act robbery conspiracy and drug trafficking crime—where one predicate was still valid).

In his factual basis (the FBI 302), Fulks pleaded guilty to the §§ 924(c) and (o) charges in which carjacking resulting in death and kidnapping resulting in death were predicate offenses. In his statement, Fulks was clear that as he and Basham pulled into the Wal-Mart parking lot in Conway, South Carolina, they were going to steal a car. Fulks also admitted he actively participated in the carjacking of Alice Donovan, including driving the stolen BMW with Basham "armed with a .22 revolver" sitting "on the passenger's side of the back seat with Donovan sitting behind Fulks." Dkt. # 570, at p. 86. Fulks stated he then drove the BMW to a remote area where both he and Basham raped Donovan. *Id.* at pp 87-89. Fulks then said: "Donovan remained naked in the back seat and was told by BASHAM that she could not put any of her clothes back on." *Id.* The FBI 302 setting forth Fulks's statement is a clear admission by Fulks that at least carjacking was a predicate crime of violence which supported his § 924 convictions.[12]

---

[12] Additionally, it is clear that the carjacking and kidnapping of Alice Donovan were inextricably intertwined. *Cf. United States v. Vasquez*, 672 F. App'x 56, 61 (2d Cir. 2016) (holding that a § 924 conviction "undoubtedly rest[ed] on a valid drug-trafficking predicate" where the crime of violence and drug conspiracy were "inextricably intertwined" and the jury convicted on the underlying drug conspiracy offense). The kidnapping and carjacking were continuing once Fulks and Basham had abducted Donovan and driven her through South Carolina and North Carolina. It would be inconceivable to conclude that when Fulks pleaded guilty to his 924(c) and (o) counts, he was pleading guilty only to using a firearm during and in furtherance of kidnapping and not also pleading guilty to doing so during and in furtherance of the carjacking. *See Navarro*, 931 F.3d at 1302 n.2 (noting that "it is difficult to imagine how Navarro could have admitted facts supporting conspiracy to commit Hobbs Act robbery without simultaneously admitting facts supporting one or both of the drug-trafficking crimes. The three predicate crimes identified in the indictment seem inextricably intertwined, given the planned robbery underlying the charge for conspiracy to commit Hobbs Act robbery was the robbery of a drug stash house"). There is nothing in the record to support such a conclusion.

The supposed invalidity of the kidnapping resulting in death as a § 924(c) crime of violence predicate has no impact on the validity of Fulks's §§ 924(c) and (o) convictions. Because Fulks pleaded guilty to carjacking (resulting in death) and his guilty plea factual basis clearly set forth facts that admitted that carjacking was a predicate for his §§ 924(c) and (o) convictions, he cannot now claim his §§ 924(c) and (o) convictions are invalid. *See In re Navarro*, 931 F.3d at 1302.

Even in a jury trial, where only one of two theories of liability is erroneous, the conviction is sustained where the error is harmless. *See Skilling v. United States*, 561 U.S. 358, 414 & n.46 (2010); *United States v. Jefferson*, 674 F.3d 332, 361 (4th Cir. 2012). Here, Fulks pleaded guilty and admitted his legal and factual guilt of the still valid predicate of carjacking (resulting in death). There is thus no possibility his §§ 924(c) and (o) convictions rest on an invalid predicate alone, and any error would be necessarily harmless. *See, e.g., United States v. Lawson*, 677 F.3d 629, 655 (4th Cir. 2012); *United States v. Hudgins*, 120 F.3d 483, 487 (4th Cir. 1997).

In the context of a successive § 2255 motion, Fulks cannot meet his burden before this court of demonstrating by a preponderance he is entitled to relief. *Jacobs*, 350 F.2d at 574; *Miller*, 261 F.2d at 547. Regardless of whether Fulks's kidnapping resulting in death categorically qualifies as a crime of violence under § 924(c)(3)(A)'s elements clause, his other charged predicate—carjacking resulting in death—does not raise residual clause issues and remains a valid § 924(c) predicate after *Davis*. Therefore, Fulks's §§ 924(c) and (o) convictions remain predicated on a valid carjacking offense. *See Boyce*, 2019 WL 4016193, at *5; *Taylor*, 2019 WL 4018340, at * 3-5; *Higa*, 2019 WL 4143289, at * 2; *Richmond*, 2016 WL 6462074, at *2. Fulks, as the movant, bears the burden of proving by a preponderance he pled guilty to §§ 924(c) and (o) solely on the kidnapping resulting in death predicate, and not also on the other valid predicate offense identified

in the counts (carjacking resulting in death).  *See Beeman*, 871 F.3d at, 1222; *In re Moore*, 830 F.3d at 1272.  Fulks cannot meet this burden, and his § 2255 must be denied.

> **Argument 3:** **Even if the court were to vacate Fulks's §§ 924(c) and (o) convictions, no vacating of Fulks's death sentences on Counts 1 and 2 would be warranted.**

Finally, even if this court were to find Fulks's §§ 924(c) and (o) convictions were invalid in light of *Davis*, the appropriate result would be to vacate only the sentences for those counts and leave the rest of the sentences, including the death sentences, in place.  *See United States v. Hadden*, 475 F.3d 652, 661 (4th Cir. 2007) ("[T]he goal of § 2255 review is to place the defendant 'in exactly the same position he would have been' had there been no error in the first instance").

The Fourth Circuit has made clear that a district court, in granting relief and vacating a § 924(c) conviction and sentence in a § 2255 proceeding, may strike the § 924(c) sentence and leave the remaining sentence intact.  *Id.* at 669 ("the district court itself—by striking the § 924(c) sentence and reentering the remaining sentence—indicated that it was satisfied with the resulting sentence").  That is what this court should do if it were to find Fulks's §§ 924(c) and (o) convictions invalid.   The court has broad and flexible power under § 2255 to determine the nature and scope of the remedial proceedings in the first instance, and nothing forbids it from doing what the text of § 2255 clearly permits: "'correct[ing]' a prisoner's unlawful sentence without conducting a formal "resentenc[ing].'" *Id.* (internal citation omitted) (quoting *United States v. Hillary*, 106 F.3d 1170, 1171 (4th Cir. 1997)); *see also United States v. Louthain*, 771 F. App'x  208, 209 (4th Cir. 2019) (finding no abuse of discretion in § 2255 proceeding when district court left unchanged the sentences on the remaining counts "not impacted by the armed career criminal designation").

Fulks claims the "sentencing package doctrine" requires he receive a full resentencing if his §§ 924(c) and (o) convictions are vacated. *See* Dkt. # 1618, at pp. 20-21. Fulks is incorrect for at least two reasons. First, even if this court were to vacate the §§ 924(c) and (o) convictions, there is no basis for such a ruling to warrant amendment of Fulks's death sentences or his other sentences. Pursuant to § 2255, the appropriate approach would be a correction of Fulks's sentence by vacating the §§ 924(c) and (o) portions of the sentence consecutive to the death sentences and leaving the remainder of the sentences (including the death sentences) intact. *Hadden*, 475 F.3d at 669. This is not an instance where there is a strong likelihood the district court crafted a disposition in which the sentences on the various counts formed part of an overall plan that would come unraveled with the vacating of the § 924 convictions. *See United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017). The district court simply imposed the maximum sentences it could under the law and ran them all consecutive. *See* Dkt. 884 (sentencing transcript), at pp. 31 (noting that court needed "to march ahead and sentence on three through eight because the law requires it"); *id*. at p. 37 ("As is obvious, I have sentenced to the maximum sentences provided by law for each of the counts of conviction and run all consecutively."). Thus, the sentencing package doctrine has no application in the present case.

Second, the sentencing package doctrine typically applies when a court of appeals vacates a sentence and remands to the district court for resentencing. Ventura, 864 F.3d at 309. Where, as here, the district court itself would be exercising its discretion to correct a sentence pursuant to § 2255, rather than being mandated to do so by an appellate court on review, it does not apply. In *Hadden*, the Fourth Circuit noted this distinction:

> We do not deny that the sentence-package theory has support in our case law. The sentence-package theory, however, does not

30

> help Hadden. Here, we -- the appellate court -- did not conclude that Hadden's original sentence was unlawful, vacate that sentence, and remand to the district court; instead, the district court itself -- by striking the § 924(c) sentence and reentering the remaining sentence -- indicated that it was satisfied with the resulting sentence.

475 F.3d at 669. In short, the sentencing package doctrine is of no help to Fulks.

Even if this court were to determine the §§ 924(c) and (o) convictions were invalid, the court should vacate only the §§ 924(c) and (o) convictions and sentences and leave the remainder of his sentence undisturbed because the §§ 924(c) and (o) <u>convictions</u> had no impact on the imposition of the death sentences. In Fulks's penalty phase the jury returned independent verdicts of death against Fulks on both Counts 1 (carjacking resulting in death) and 2 (kidnapping resulting in death), and the district court imposed independent, concurrent death sentences on those counts. Dkt. #s 648 and 649 (special verdict forms); Dkt. # 853 (judgment).

Fulks argues "the jury's consideration of Fulks's §§ 924(c) and (o) convictions undermined the validity of the penalty phase of his capital trial." *See* Dkt. # 1618, at pp. 21-27. Fulks is mistaken when he asserts the jury considered Fulks's §§ 924(c) and (o) convictions in deciding to impose the death penalty. As noted above, the district court instructed the jury that any death sentence would be based on the convictions under Count 1 and Count 2 alone:

> There are eight counts or charges contained in the indictment against him. Mr. Fulks has pled guilty to all eight counts. **For purposes of your participation in this proceeding, however, we need focus only on the first two counts. The first two counts charge Mr. Fulks with offenses for which the penalty is either death or life imprisonment without the possibility of parole. These two offenses are: Count One, carjacking, resulting in death; and Count Two, kidnapping, resulting in death.**

Dkt. # 676, at pp. 21-22 (emphasis added); *see also id*. at 31 ("You may decide to impose a sentence of death for either one of the two crimes Mr. Fulks pled guilty to."). There is a strong presumption

jurors follow their instructions. *See Penry v. Johnson*, 532 U.S. 782, 799 (2001); *United States v. Gillon*, 704 F.3d 284, 297 (4th Cir. 2012). There is no reason to stray from the presumption here.[13]

No evidence was admitted regarding Fulks's §§ 924(c) and (o) convictions in the sentencing phase. Rather, Fulks's death sentences on his carjacking resulting in death and kidnapping resulting in death counts were rendered by the sentencing jury without reference to Fulks's other counts of conviction. At no point was the jury instructed to consider the §§ 924(c) and (o) convictions in deciding whether to impose the death penalty.[14] In short, there is no basis for Fulks's argument that the "jury's consideration of Fulks's §§ 924(c) and (o) convictions undermined the validity of the penalty phase." Dkt. # 1618, at p. 21.[15]

---

[13] The special verdict forms, moreover, required the jury to weigh the aggravating and mitigating factors separately for Counts 1 and 2 and to impose separate sentences on each death-eligible count. The jury, therefore, necessarily determined that a death sentence was warranted on Count 1 without regard for the Count 2 conviction and certainly without regard to the §§ 924(c) and (o) counts. *Cf. United States v. Causey*, 185 F.3d 407, 423 (5th Cir. 1999) (remand for resentencing required because "[t]he jury did not make separate recommendations concerning the appropriate penalties for each count of conviction" and therefore it was "impossible to say that the jury's penalty phase recommendations of the death penalty were not influenced by the fact that [defendants] had received three death eligible convictions, rather than two").

[14] In fact, the court, with agreement of the parties, submitted only the first two counts of the indictment (carjacking resulting in death and kidnapping resulting in death) to the jury for deliberations. Dkt. # 739, at pp. 93-94.

[15] Fulks's reliance on *Johnson v. Mississippi*, 486 U.S. 578 (1988), is misplaced. In *Johnson*, the Supreme Court invalidated a death sentence where the "sole evidence" supporting one of the aggravated circumstances that led to the imposition of the death sentence was a prior felony conviction that was later reversed. *Id.* at 581. In *Johnson*, no facts regarding the underlying conviction were introduced. Only a certified copy of the state court conviction was introduced. Additionally, in *Johnson*, at the sentencing hearing the prosecutor repeatedly referred to the certified conviction document that had officially committed the defendant to prison in New York. *Johnson* is not applicable to petitioner's case for at least the following reasons: (1) Fulks's § 924 convictions were not presented to the jury for consideration as evidence or otherwise; (2) the § 924 convictions were not a basis to support any of the statutory or non-statutory aggravating factors

Likewise, the <u>facts</u> supporting the § 924 convictions did not taint the jury's death sentences. The jury was instructed: "You may only consider evidence, including testimony, documents, and stipulations between the parties received in this courtroom, in making your determination." Dkt. # 739, at p. 250; *see also id.* at p. 285 (noting that the verdict "must be based on the evidence presented in the courtroom in accordance with my instructions").

This is not a case where supposedly invalid convictions resulted in the admission of additional prejudicial evidence against the defendant. There is no question evidence supporting the §§ 924 (c) and (o) convictions had no spillover effect on the jury's determination to impose the death penalty on Counts 1 and 2. This is so because the evidence introduced by the government supporting the imposition of the death sentence in the penalty phase would not have changed if the §§ 924 (c) and (o) counts had not existed. Fulks has not pointed to any specific evidence admitted in the penalty phase that would have been inadmissible if Counts 5 and 6 were not charged. *See United States v. Hornsby*, 666 F.3d 296, 311 (4th Cir. 2012) (on direct appeal, court found no spillover prejudicial effect caused by reversed counts because defendant "has not pointed this Court to any specific evidence admitted at his trial that would be inadmissible at a trial only for the [valid] counts"); *United States v. Livingston*, 63 F. App'x 106, 107 (4th Cir. 2003) (finding the defendant's remaining convictions should not be vacated because there was no prejudicial spillover from evidence supporting the dismissed counts: "The evidence in support of the reversed counts

---

found by the jury; (3) the prosecution did not repeatedly refer to Fulks's § 924 convictions like the prosecutor did in *Johnson*; and (4) the government presented overwhelming evidence regarding the carjacking and kidnapping resulting in Alice Donovan's death and that evidence would have been introduced even if Fulks's had never been charged or convicted of his § 924 charges.

and the remaining counts was identical."). Clearly, the §§ 924 (c) and (o) convictions did not result in the admission of additional prejudicial evidence against Fulks.

Additionally, the carjacking statute, 18 U.S.C. § 2119, and the kidnapping statute, 18 U.S.C. § 1201, do not use the phrase "crime of violence," and *Davis* has no bearing on convictions under those statutes. Accordingly, regardless of the post-*Davis* validity of Fulks's §§ 924(c) and (o) convictions, the court should leave intact Fulks's death sentences on Counts 1 and 2. *See United States v. Nguyen*, 829 F.3d 907, 922 (8th Cir. 2016) (remand for resentencing unnecessary where district court imposed concurrent sentences on other properly obtained counts of conviction); *United States v. Fike*, 82 F.3d 1315, 1328 (5th Cir. 1996) (remand for resentencing unnecessary after vacatur of one count where defendant received separate life sentence on another count), overruled on other grounds by *United States v. Brown*, 161 F.3d 256 (5th Cir. 1998) (en banc).

Fulks cannot meet his burden to show his §§ 924(c) and (o) convictions had any impact on his death sentences. Therefore, even if this court were to vacate Fulks's §§ 924(c) and (o) convictions in light of *Davis*, no resentencing is warranted. At most, the court should vacate the § 924(c) and (o) convictions and sentences and leave the rest of the sentences, including the death sentences, intact.

## V. <u>CONCLUSION</u>

The court should deny Fulks's § 2255 motion and enter judgment in favor of the United States. First, both carjacking resulting in death and kidnapping resulting in death remain crimes of violence under the force clause of § 924(c)(3)(A) even after *Davis*. Second, even if kidnapping resulting in death were to no longer qualify as a crime of violence predicate for §§ 924(c) and (o),

34

carjacking alone still supports Fulks's §§ 924(c) and (o) convictions.  Finally, even if this court

were to find Fulks's §§ 924(c) and (o) convictions were invalid in light of *Davis*, the appropriate

result would be to vacate only the sentences for those counts and leave the rest of the sentences,

including the death sentences, in place.[16]  For these reasons, Fulks's § 2255 motion is without

merit.

**[SIGNATURE FOLLOWING]**

---

[16]Alternatively, the court should also dismiss the § 2255 motion because Fulks procedurally defaulted his *Davis* claim by failing to raise a constitutional vagueness objection to his §§ 924(c) and (o) convictions at sentencing and on direct appeal. *See Massaro v. United States,* 538 U.S. 500, 504 (2003); *Murray v. Carrier,* 477 U.S. 478, 490-92 (1986). If a prisoner cannot show both cause for his procedural default and actual prejudice, a court should not consider his challenge unless he can demonstrate "actual innocence." *Bousley v. United States,* 523 U.S. 614, 620-24 (1998).

Fulks has no cause to excuse his default. A vagueness challenge to § 924(c)(3)(B), while perhaps unexpected before *Johnson v. United States*, 135 S. Ct. 2551 (2015), was not "novel." *See, e.g.*, *Dugger v. Adams*, 489 U.S. 401, 409-410 (1989) (finding that a claim was not novel where "the legal basis for a challenge was plainly available"). The foundational principle undergirding *Davis*—vague criminal laws violate due process—existed for nearly a century before that case was decided. *See, e.g.*, *Connally v. Gen. Constr. Co.*, 269 U.S. 385, 391 (1926). Fulks clearly had all of "the tools to construct" a constitutional vagueness challenge to § 924(c)(3)(B) before *Davis*. *See Engle v. Isaac*, 456 U.S. 107, 133 (1982). Furthermore, even if a claim is futile based upon prior binding precedent, that does not constitute cause. *See Bousley,* 523 U.S. at 623.

Finally, Fulks cannot establish actual prejudice or actual innocence. In the context of the procedural bar, "[t]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v Delo*, 513 U.S. 298, 327-28 (1995)). Fulks's § 924 convictions were predicated on carjacking resulting in death and kidnapping resulting in death. Carjacking clearly qualifies as a crime of violence under the still valid force clause of § 924(c)(3)(A). *See United States v. Evans*, 848 F.3d 242 (4th Cir. 2017).  Because the carjacking resulting in death offense was inextricably intertwined with the kidnapping resulting in death, Fulks cannot establish actual prejudice or actual innocence.

35

Respectfully submitted,

SHERRI A. LYDON
UNITED STATES ATTORNEY

*/s/Robert F. Daley, Jr.*
Robert F. Daley, Jr. (ID # 6460)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel.:    (803) 929-3054
Fax:     (803) 929-3135
Email:   Bob.Daley@usdoj.gov

October 1, 2019

IN THE UNITED STATES DISTRICT COURT
FOR THEDISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

UNITED STATES OF AMERICA,    )    Criminal No. 4:02-CR-00992-JFA

    )

    Plaintiff,    )

    v.    )    **<u>CERTIFICATE OF SERVICE</u>**

    )

CHADRICK FULKS,    )

    )

    Defendants.    )

    )

The undersigned assistant united states attorney hereby certifies that he has caused service of the **<u>SUPPLEMENTAL MEMORANDUM IN OPPOSITION TO FULKS'S SUCCESSIVE § 2255 MOTION AND IN SUPPORT OF MOTION TO DISMISS OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT</u>** by a paralegal specialist employed in the office of the United States Attorney for the District of South Carolina who is a person of such age and discretion as to be competent to serve papers**.**

That on October 1, 2019, my Paralegal served a copy of the foregoing documents by ECF on the following:

Claudia Van Wyk, Esquire
Peter K. Williams, Esquire
Federal Community Defender Office
601 Walnut Street, Suite 545, West
Philadelphia, PA 19106
Email: Claudia_Vanwyk@fd.org
Email: Pete_Williams@fd.org

Respectfully submitted,

SHERRI A. LYDON
UNITED STATES ATTORNEY

*/s/Robert F. Daley, Jr.*
Robert F. Daley, Jr. (ID # 6460)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel.:    (803) 929-3054
Fax:    (803) 929-3135
Email: Bob.Daley@usdoj.gov