# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
## FLORENCE DIVISION

_____  
                           :

THE UNITED STATES OF AMERICA,    :

                           :

          Respondent,    :

                            :

          v.                :

                            :

CHADRICK E. FULKS,    :

                            :

          Petitioner.    :

_____    :

|  |  |
|---|---|
| 4:02-CR-992-JFA | |
| | |
| Hon. Joseph F. Anderson | |
| United States District Judge | |
| | |
| **CAPITAL CASE** | |

## PETITIONER'S RESPONSE TO THE GOVERNMENT'S
## MOTION TO DISMISS OR, IN THE ALTERNATIVE,
## FOR SUMMARY JUDGMENT

CLAUDIA VAN WYK  
PETER WILLIAMS  
Assistant Federal Defenders  
Federal Community Defender Office  
for the Eastern District of Pennsylvania  
601 Walnut Street, Suite 545 West  
Philadelphia, PA 19106  
Tel: 215.928.0520  
Fax: 215.928.0826  
pete_williams@fd.org  
claudia_vanwyk@fd.org  

*Counsel for Petitioner*

Dated: November 29, 2019

**PRELIMINARY STATEMENT**

Petitioner Chadrick Fulks shall be referred to as Mr. Fulks or Petitioner. Mr. Fulks's 2016 Motion to Vacate Conviction and Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. No. 1618) shall be referred to as the "Successive § 2255 Motion" and cited as "§ 2255 Motion" followed by the relevant page number. Fulks's October 1, 2019 Supplemental Brief in Support of Motion to Vacate Conviction and Sentence Pursuant to 28 U.S.C. § 2255 (Dkt. No. 1664) shall be cited as "FSB" followed by the relevant page number. The government's October 1, 2019 Supplemental Memorandum in Opposition to Fulks's Successive § 2255 Motion and in Support of Motion to Dismiss or, in the Alternative, for Summary Judgment (Dkt. No. 1666) shall be cited as "MTD" followed by the relevant page number.

Citations to the transcript from Mr. Fulks's guilty plea and trial level proceedings shall be cited as "TT" followed by the relevant date and page number.

All other citations are self–explanatory or will be explained.

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ........................................................................................... i

TABLE OF CONTENTS.................................................................................................... ii

INTRODUCTION ............................................................................................................. 1

PROCEDURAL HISTORY................................................................................................. 3

I. KIDNAPPING IS NOT A CRIME OF VIOLENCE UNDER THE FORCE CLAUSE OF § 924(c)(3)(A). MR. FULKS IS ENTITLED TO RELIEF FROM HIS §§ 924(C) AND (O) CONVICTIONS ON THE BASIS OF THE KIDNAPPING STATUTE ALONE................... 4

    A. The "Resulting in Death" Component of Mr. Fulks's Convictions Does Not Establish the Use of Violent Physical Force. ....................................................................... 5

    B. The "Resulting in Death" Section Does Not Involve the Knowing or Intentional Use of Violent Physical Force.................................................................................... 6

    C. Offenses Involving Unlawful Killings Do Not Categorically Satisfy the Force Clause. ... 8

    D. The Gateway Factors for Capital Cases Do Not Meet the Requirements of the Force Clause.................................................................................................................. 10

    E. Mr. Fulks's Claim for Relief Is Not Hypothetical. ........................................... 11

    F. Mr. Fulks Is Entitled to Relief from His Convictions under §§ 924(c) and (o) on the Basis of the Kidnapping Statute Alone............................................................... 13

II. MR. FULKS IS ENTITLED TO A NEW CAPITAL PENALTY PHASE............................ 20

III. MR. FULKS'S *JOHNSON* CLAIM IS NOT PROCEDURALLY DEFAULTED ................ 27

CONCLUSION............................................................................................................... 29

Chadrick E. Fulks, a prisoner in the custody of the United States sentenced to death and housed at the United States Penitentiary, Terre Haute, Indiana, respectfully offers this Response to the government's Motion to Dismiss or, in the Alternative, for Summary Judgment ("Motion to Dismiss" or "MTD").

## INTRODUCTION

In 2016, Mr. Fulks filed a successive § 2255 motion arguing that his 18 U.S.C. §§ 924(c) and (o) convictions, which criminalize the use of firearms in crimes of violence, should be vacated pursuant to *Johnson v. United States*, 1325 S. Ct. 2551 (2015). To qualify as a crime of violence under §§ 924(c) and (o), the underlying offenses must fall under either § 924(c)(3)(A)'s "force clause" or under § 924(c)(3)(B)'s "residual clause." Because *Johnson* invalidated § 924(c)'s residual clause and Mr. Fulks's convictions cannot be sustained under the force clause, he is entitled to relief from his §§ 924(c) and (o) convictions.[1] Moreover, as the invalid convictions likely affected the outcome of the penalty phase, Mr. Fulks's death sentence should also be reversed. Since 2016, *Sessions v. Dimaya*, 138 S. Ct. 1204 (2018), *United States v. Davis*, 139 S. Ct. 2319 (2019), and *United States v. Simms*, 914 U.S. 229 (4th Cir. 2019), have confirmed that § 924(c)'s residual clause is unconstitutionally vague. Given these new developments, Mr. Fulks respectfully requests that this Court vacate his convictions under §§ 924(c) and (o) and grant him a new penalty phase.

On October 1, 2019, the government filed its Motion to Dismiss and asked this Court to reject Mr. Fulks's claims in their entirety. The government, which had previously confined its

---

[1] Section 924(c) prohibits the use of a firearm during the course of a crime of violence. Section 924(o) prohibits conspiracy to use firearms in a crime of violence. As the arguments raised in Mr. Fulks's successive § 2255 proceedings apply equally to both offenses, §§ 924(c) and (o) shall be referred to collectively throughout this pleading.

challenges to the applicability of *Johnson* to the residual clause of § 924(c) and the timeliness of

Mr. Fulks's § 2255 motion, has abandoned these arguments, conceded that the residual clause is

invalid and Mr. Fulks's § 2255 motion is timely filed, and is now contending that Mr. Fulks's §

924 convictions can be sustained under the force clause.  It argues that both of the predicate

offenses for Mr. Fulks's § 924 convictions – kidnapping resulting in death and carjacking

resulting in death – constitute crimes of violence under the force clause.  The government further

contends that, even if the kidnapping statute does not satisfy the force clause, Mr. Fulks's § 924

convictions should still be upheld because, according to the government, both offenses must be

shown not to be crimes of violence before relief can be granted.  Finally, the government argues

that Mr. Fulks's death sentence should not be overturned even if the § 924 convictions were

invalid because the jury's verdict was unaffected by the presence two invalid convictions.

All of the government's arguments lack merit.  Kidnapping resulting in death does not

satisfy the force clause as it does not require the use of physical force and, even if it did, it would

still not qualify as a crime of violence as it has no mens rea requirement and does not require the

knowing or intentional use of force.[2]  Furthermore, because Mr. Fulks's indictment did not

specify which predicate offense formed the basis of his § 924(c) conviction, that conviction is

invalid on the basis of the kidnapping statute alone as reviewing courts must consider only the

least serious conduct when determining the validity of convictions in procedural postures such as

this.  Finally, Mr. Fulks's death sentence should be reversed because the government relied

---

[2] As set forth in Mr. Fulks's Supplemental Brief, the Fourth Circuit has found carjacking to be a crime of violence under the force clause.  *See United States v. Evans*, 848 F.3d 242 (4th Cir. 2017); FSB at 12-13. While Mr. Fulks maintains that *Evans* should be reversed, he acknowledges the binding nature of that precedent here.  As he need only establish that kidnapping is invalid to merit relief, *see* Section I(F), *infra*, the force clause arguments in this pleading address that offense only.

extensively on the firearms offenses at the penalty phase and it is likely that the presence of invalid convictions affected the outcome of the sentencing.

## PROCEDURAL HISTORY

In 2004, Mr. Fulks pled guilty to possessing or using a firearm during or in relation to a crime of violence as defined by 18 U.S.C. § 924(c), conspiracy to carry or use a firearm during or in relation to a crime of violence as defined by 18 U.S.C. § 924(o), carjacking as defined by 18 U.S.C. § 2119, kidnapping as defined by 18 U.S.C. § 1201, and other charges. A contested sentencing hearing took place before a jury after Mr. Fulks's guilty plea was entered, and the jury sentenced Mr. Fulks to death. The Court of Appeals affirmed. *United States v. Fulks*, 454 F.3d 410 (4th Cir. 2006). The Supreme Court denied certiorari review. *Fulks v. United States*, 551 U.S. 1147 (2006).

Mr. Fulks filed a motion to vacate the convictions and sentence and for a new trial pursuant to 28 U.S.C.A. § 2255, which was denied. *Fulks v. United States*, 875 F. Supp. 2d 535 (D.S.C. 2010). The denial was affirmed on appeal. *United States v. Fulks*, 683 F.3d 512 (4th Cir. 2012). The Supreme Court denied certiorari review. *Fulks v. United States*, 134 S. Ct. 52 (2013).

In 2016, Mr. Fulks filed a second or successive motion under § 2255(h)(2) based on *Johnson*. This Court stayed these proceedings pending the outcome of *Dimaya*, *Davis*, and *Simms*. Dkt. Nos. 1642, 1652. After *Davis* and *Simms* were decided, both parties submitted supplemental briefing on October 1, 2019, which included the government's Motion to Dismiss. Mr. Fulks now submits this Response to the government's Motion to Dismiss.

**I. KIDNAPPING IS NOT A CRIME OF VIOLENCE UNDER THE FORCE CLAUSE OF § 924(C)(3)(A). MR. FULKS IS ENTITLED TO RELIEF FROM HIS §§ 924(C) AND (O) CONVICTIONS ON THE BASIS OF THE KIDNAPPING STATUTE ALONE.**

To determine whether a predicate offense qualifies as a crime of violence under § 924(c), reviewing courts must use the categorical approach. *Descamps v. United States*, 570 U.S. 254, 260-61 (2013); *United States v. Fuertes*, 805 F.3d 485, 498 (4th Cir. 2015). This approach requires that courts "look only to the statutory definitions – i.e., the elements – of a defendant's [offense] and not to the particular facts underlying [the offense]" in determining whether the offense qualifies as a crime of violence. *Descamps*, 570 U.S. at 260-61 (citation omitted). Under this approach, courts can only "look to whether the statutory elements of the offense [of conviction] necessarily require the use, attempted use, or threatened use of physical force." *Simms*, 543 U.S. at 233. "This approach is 'categorical' because the courts consider only the crime as defined, not the particular facts in the case." *Id.*

Physical force in this context "means *violent* force – i.e., force capable of causing physical pain or injury to another person." *Johnson (Curtis) v. United States*, 559 U.S. 133, 140 (2010) (emphasis in original). This physical force must also be intentionally applied. *Leocal v. Ashcroft*, 543 U.S. 1, 11 (2014) (holding that the force clause of 18 U.S.C. § 16(a) – which is identical to the force clause of § 924(c) – requires "a higher *mens rea* than [] merely accidental or negligent conduct"). Kidnapping is not a crime of violence because it does not require the use, attempted use, or threatened use of physical force and because it lacks the requisite element of mens rea. Furthermore, because his indictment and guilty plea did not specify *which* of the predicate offenses formed the basis for his §§ 924(c) and (o) convictions, these convictions should be vacated based on the fact that kidnapping resulting in death does not satisfy the force clause. FSB at 5-13.

4

The government concedes that federal kidnapping is not a crime of violence, but argues that kidnapping resulting in death is. Ignoring binding Fourth Circuit precedent differentiating between causation and force and requiring that physical force be knowingly or intentionally used for the force clause to be satisfied, the government maintains that the "death results" element of the Mr. Fulks's kidnapping conviction necessarily requires the use of force "whether or not the force was direct or intentional." MTD at 19-20, 22. The government further argues that the capital kidnapping charge satisfies the force clause because the gateway factor needed for a capital case necessarily involves the use of physical force. MTD at 21-22. The government claims that Mr. Fulks is not entitled to relief because he must point to a specific case where the death-results element of kidnapping was satisfied absent application of physical force. MTD at 23-24. Finally, the government argues that, even if kidnapping resulting in death is not a crime of violence under the force clause, Mr. Fulks's §§ 924(c) and (o) convictions should still be upheld. MTD at 24-29.

The government errs on all counts.

### A. The "Resulting in Death" Component of Mr. Fulks's Convictions Does Not Establish the Use of Violent Physical Force.

The government's claim that the "causal connection" involved in a crime resulting in death necessarily establishes the use of violent force, MTD at 19-20, has been rejected by the Fourth Circuit. In *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018), the Fourth Circuit held that "*[o]f course, a crime may result in death or serious bodily injury without involving the use of physical force.*" *Id.* at 491 (citations omitted) (emphasis in original). For this reason, when considering the scope of the force clause, *Middleton* rejected the government's attempt to "erroneously conflate[] the *use* of violent force with the *causation* of injury," and to "erroneously argue[] that causing injury categorically means violent force was used." *Id.* at 490 (emphasis in

5

original).  The Fourth Circuit has long held that "a crime may *result* in death or serious injury without involving *use* of physical force."  *United States v. Torres-Miguel*, 701 F.3d 165 (4th Cir. 2012) (emphasis in original) (abrogated on other grounds by *United States v. Castleman*, 572 U.S. 157 (2014)).[3]  *Battle*, which the government relies on in its briefing, reaffirmed that "a crime may result in death or serious injury without involving the use of physical force."  *United States v. Battle*, 927 F.3d 160, 166 (4th Cir. 2019); *see also United States v. Allred*, --- F.3d --- 2019 WL 5792489 (4th Cir. Nov. 7, 2019) ("*Castleman* did not . . . abrogate the causation aspect of *Torres-Miguel* that a crime may *result* in death or serious bodily injury without involving the *use* of physical force.") (internal citations and quotations omitted).  The government's argument ignores precedent set forth by *Middleton*, *Torres-Miguel*, *Battle*, and *Allred*.

**B.      The "Resulting in Death" Section Does Not Involve the Knowing or Intentional Use of Violent Physical Force.**

The government's reliance on the "resulting in death" clause also fails because this clause contains no mens rea requirement and § 924(c)'s force clause cannot be satisfied by the negligent or reckless use of force.  *Leocal*, 543 U.S. at 11 (holding that the force clause of 18 U.S.C. §

---

[3] Citing *Battle* and *In re Irby*, 858 F.3d 231 (7th Cir. 2017), the government criticizes Mr. Fulks's reliance on *Torres-Miguel*, arguing that it has been abrogated by *Castleman*.  MTD at 25 n.10.  The government misconstrues the ruling in *Castleman*, the holding in *Battle*, and the current state of *Torres-Miguel* in the Fourth Circuit.  *Torres-Miguel* had two significant holdings that are relevant to force clause analyses: (1) "a crime may result in death or serious injury without involving the use of physical force," *Torres-Miguel*, 701 F.3d at 167; and (2) force that is applied indirectly, such as poisoning, does not constitute physical force, *id.  Castleman* held that physical force included both direct and indirect applications of force, but left undisturbed *Torres-Miguel*'s holding that "a crime may result in death or serious injury without involving the use of physical force."  *See Battle*, 927 F.3d at 166 (noting that *Castleman* did not abrogate the "causation aspect" of *Torres-Miguel*); *Allred*, *supra* (same).  As set forth above, *Middleton*, *Battle*, and *Allred* have all reaffirmed the distinction set forth by *Torres-Miguel* between causation and the use of force.

16(a) – which is identical to the force clause of § 924(c) – requires "a higher *mens rea* than []
merely accidental or negligent conduct").

The Fourth Circuit has repeatedly found that the force clause requires the knowing or
intentional use of force – a higher degree of mens rea than recklessness or negligence. *See
Battle*, 927 F.3d at 166 (finding that "the requisite mens rea is crucial in the force clause
analysis" and that Maryland's assault with intent to murder statute satisfies force clause because
it requires knowing and intentional infliction of injury); *United States v. Simmons*, 917 F.3d 312,
321 (4th Cir. 2019) (North Carolina conviction for assault with deadly weapon on government
official was not a qualifying offense under force clause because it could be violated by "culpable
negligence"); *Middleton*, 883 F.3d at 497 (Floyd, J., concurring, joined by Harris, J.) (18 U.S.C.
§ 924(e) force clause requires higher degree of mens rea than recklessness; therefore South
Carolina involuntary manslaughter statute was not qualifying offense under force clause); *United
States v. Townsend*, 886 F.3d 441, 444-45 (4th Cir. 2018) ("'[u]se' of force means to act with
mens rea more culpable than negligence or recklessness") (citations omitted); *United States v.
McNeal*, 818 F.3d 141, 155 (4th Cir. 2016) (recklessness not enough to qualify under the
§ 924(c) force clause); *Garcia v. Gonzales*, 455 F.3d 465, 468 (4th Cir. 2006) (holding that
"recklessness, like negligence, is not enough to support a determination that a crime is a 'crime
of violence'" under the force clause of 18 U.S.C. § 16(b)) (citations omitted); *Bejarano-Urrutia
v. Gonzales*, 413 F.3d 444, 444-47 (4th Cir. 2005) (finding use of force as defined by § 16(b)'s
force clause to require more than "a recklessness disregard for human life").

Here, even assuming, *arguendo*, that the "resulting in death" clause established the use of
physical force, it would still fail to satisfy the force clause because it does not involve the
*knowing or intentional* use of physical force. Resulting in death imposes only "a requirement of

but-for causation," and not any requirement of intent or – as noted above – force.  *Burrage v. United States*, 571 U.S. 204, 889 (2014); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) ("No matter how you slice it, 'if death results' does not mean 'if death was intended.'").  Kidnapping resulting in death in particular has been interpreted "broadly" and "requires only that the death of any person results in the course of the kidnapping."  *United States v. Montgomery*, 635 F.3d 1074, 1087 (8th Cir. 2011) (internal citations and quotations omitted) (equating kidnapping resulting in death to felony murder); *United States v. Barraza*, 576 F.3d 798, 807 (8th Cir. 2009) (kidnapping resulting in death "does not require that the deaths result from voluntary and intentional conduct, only that 'the death of any person results' in the course of the kidnapping.").  Indeed, as this Court noted in 2002, kidnapping resulting in death has "no mens rea requirement."  *Fulks*, 875 F. Supp. 2d at 588-89.

C. **Offenses Involving Unlawful Killings Do Not Categorically Satisfy the Force Clause.**

The government relies on *In re Irby*, 858 F.3d 231 (4th Cir. 2017), *United States v. Reyes-Contreras*, 910 F.3d 169 (5th Cir. 2018) (en banc), and a number of other nonbinding opinions in support of its argument that all cases involving unlawful killings necessarily satisfy the force clause.[4]  GB at 20-21.  This reliance is misplaced as *Irby* is no longer binding precedent.

To the extent that *Irby* held that unlawful killings necessarily involve the use of physical force, this holding has been overturned.  In *Middleton*, which post-dates *Irby*, a unanimous panel

_____

[4] The government also relies on *United States v. Parrish*, 767 F. App'x 440 (4th Cir. 2019), *United States v. Bell*, 704 F. App'x 297 (4th Cir. 2017) (Mem), *United States v. Lee*, 697 F. App'x 175 (4th Cir. 2017) (Mem), and *Williams v. United States*, No.  3:13-1039-MBS, 2018 WL 806659 (D.S.C. Feb. 9, 2018), all of which are unreported and non-precedential opinions.

found that South Carolina's involuntary manslaughter statute – an offense involving an unlawful killing – was not a crime of violence under the force clause. *Middleton*, 883 F.3d at 493, *id.* at 500 (Floyd, J., conc., & Harris, J.). The *Middleton* majority noted the *Irby* court's opinion, but held that *Torres-Miguel*'s ruling that "a crime may result in death or serious bodily injury without involving the use of bodily physical force" remained binding precedent and that to the extent *Irby* conflicted with this precedent, it was not binding. *Id.* at 491-92. The Fourth Circuit subsequently reaffirmed that the "causation aspect" of *Torres-Miguel* remains precedential. *Battle*, 927 F.3d at 166; *Allred*, *supra*.

To the extent *Reyes-Contreras* and the unreported opinions contradict *Battles*, *Middleton*, and the other Fourth Circuit authorities on this issue, then these opinions should also be rejected as contrary to binding Fourth Circuit precedent.

Additionally, *Irby*, *Reyes-Contreras*, and *Williams* involve statutes requiring the *intentional* causation of injury. *See Battle*, 927 F.3d at 166 (*Irby* addressed "retaliatory murder, which "makes it an offense to intentionally kill another person in retaliation"); *Reyes-Contreras*, 910 F.3d at 174 (addressing whether "[k]nowingly assist[ing] another in the commission of self-murder" under Missouri's voluntary manslaughter statute satisfied the force clause); *Williams*, 2018 WL 806659 at *3 (addressing South Carolina's voluntary manslaughter statute, which "involves intent on the part of the perpetrator").

The presence of an intent requirement is significant as the "use" of force necessarily requires the knowing or intentional use of violent physical force. *See* Section I(B)(2), *supra*. It is also significant in determining when physical force is required. On the one hand, "a crime requiring 'intentional causation' of injury requires of the use of physical force" while, on the other, "'a crime may result in death or serious bodily injury without involving the use of physical

9

force'" where that crime "does not have as an element the intentional causation of death or injury." *Battle*, 927 F.3d at 166 (quoting *Castleman*, 572 U.S. at 169, and *Middleton*, 883 F.3d at 491).

Here, as set forth in the Supplemental Brief and *supra*, kidnapping resulting in death does not require the knowing or intentional use of force. *See* Section I(B), *supra*. *Fulks*, 875 F. Supp. 2d at 588-89. None of the authorities relied on by the government contradict Mr. Fulks's position.

**D.     The Gateway Factors for Capital Cases Do Not Meet the Requirements of the Force Clause.**

The government's reliance on the threshold factors set forth in 18 U.S.C. § 3591(a)(2) to maintain Petitioner's §§ 924(c) and (o) convictions is meritless for a number of reasons. First, as the government has conceded, under the categorical approach, a court "'focus[es] solely' on 'the elements of the *crime of conviction*,' not 'the particular facts of the case.'" MTD at 18 (quoting *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016)) (emphasis added). The threshold factors are related to death-eligibility. They are not "elements of the crime." For kidnapping resulting in death to be established – either at a guilty plea or a trial – the government did not have to prove, and Mr. Fulks did not have to admit, that any the threshold factors were present. Put another way, had the penalty phase jurors found that none of the gateway factors had been established beyond a reasonable doubt, Mr. Fulks's kidnapping conviction would not have been retrospectively vacated. As the gateway factors are irrelevant to the *elements* of the crime, they are irrelevant here and the government's attempt to invoke them violates *Mathis* and *Descamps*.

Second, the jury voted on the gateway factor it found to be established *after* the penalty phase was over and *after* the now-invalid convictions had been introduced and relied on by the prosecution during the sentencing hearing. *See* Section II, *infra*. Because the integrity of the

10

jury's determination as to whether the gateway factors were present has been undermined by the presence of unlawful convictions, the government cannot rely on that tainted determination now to defend the invalid conviction.

Third, even assuming *arguendo* that the gateway factor is appropriately considered here (and it is not), satisfying a gateway factor does not establish the knowing or intentional use of physical force. The jury found one gateway factor: that the defendant "intentionally and specifically engaged in an act of violence, knowing that the act created a grave risk of death to a person, other than one of the participants in the offense, such that participation in the act constituted a reckless disregard for human life and the victim died as a direct result of the act." 18 U.S.C. § 3591(a)(2)(D). This factor does not define, and the jury did not find, that the "act of violence" that the defendant engaged in involved the knowing or intentional use of physical force. Similarly, § 3591(a)(2)(D) only requires that the defendant know that the act "created a grave risk of death to a person," that the defendant showed a "reckless disregard for human life," and that death resulted from that act. As with the "resulting in death" statutes, these clauses require causation only and do not establish the use of physical force. Furthermore, these clauses require – at most – recklessness and fail to establish the force clause's mens rea requirement.

### E. Mr. Fulks's Claim for Relief Is Not Hypothetical.

Citing *Gonzales v. Duenas*, 549 U.S. 183 (2007), *United States v. Doctor*, 842 F.3d 306 (4th Cir. 2016), *United States v. Hill*, 890 F.3d 51 (2d Cir. 2018), *Battle*, and *United States v. Cammorto*, 859 F.3d 311 (4th Cir. 2017), the government argues defendants may not engage in "fanciful hypotheticals that could support a conviction," MTD at 23 & n.9, and that Mr. Fulks must cite a case where a kidnapping resulting in death has occurred without the use of physical force, MTD at 23-24.

11

This argument misconstrues the nature of the categorical approach and the authorities upon which it relies. There is no requirement that the defendant cite an example of a conviction under the relevant statute being upheld when physical force was not used, only that the "minimum conduct" necessary to obtain a conviction for the crime encompass actions that do not include physical force. *Doctor*, 842 F.3d at 308. Although prior decisions are consulted, courts "look to state court decisions to determine the minimum conduct needed to commit an offense and to identify the elements of a state common law offense." *Id.* (internal citations omitted) (addressing the categorical approach as it relates to state convictions). Examples are only required if the defendant is arguing that a given statute is applied in a "nongeneric" way and that "the State would apply its statute to conduct that falls outside of the generic definition of a crime." *Gonzales v. Duenas*, 549 U.S. 183, 193 (2007) (addressing the categorical approach as it relates to state court convictions in the context of an immigration statute). Consistent with the structure of this analysis, the *Doctor*, *Battle*, and *Cammorto* courts do not impose a requirement that defendants cite examples. To the contrary, they refer to the defendant's failure to cite state court decisional law as evidence that the defendant's characterization of the elements of the predicate offense is unsupported, make this reference after conducting their own analyses of the elements of the predicate offense, and do so only in the context of the defendant's suggestion that the statutory elements of a state crime include a nontraditional element of that crime. *See Battle*, 927 F.3d at 166-67; *Cammorto*, 859 F.3d at 317-18; *Doctor*, 842 F.3d at 312.

Although *Hill* appears to require an example, *Hill*, 890 F.3d at 56, this is out-of-circuit authority. It also appears to be based on a misreading of *Duenas*, and omits that examples are only required when the litigant is seeking to address conduct that goes beyond the generic definitions of the crime. *Id.* at 59 n.11.

Here, as set forth above and in prior pleadings, Mr. Fulks is not arguing that a nontraditional interpretation of the federal kidnapping statute should apply. He is arguing that the traditional, generic elements of the federal statute can be satisfied without physical force. Indeed, as the government has conceded and the Fourth Circuit has found, kidnapping does not satisfy the force clause and is not a crime of violence as it can be committed through deception and inveiglement. MTD at 19 n.7 (citing *United States v. Walker*, 934 F.3d 375 (4th Cir. 2019)). Similarly, the "resulting in death" aspect of this conviction fails to satisfy the force clause as, by definition, it requires only causation; has "no mens rea requirement," *Fulks*, 875 F. Supp. 2d at 588-89; and encompasses a death that was caused by the defendant and/or involved the recklessly, negligent, or otherwise unintentional/unknowing use of force. This is not a "fanciful hypothetical," but conduct that is squarely within the definition of the kidnapping resulting in death statute. Mr. Fulks has done far more than establish that there is a "realistic probability" that the conduct in question falls within the definition of the offense.

**F.**     **Mr. Fulks Is Entitled to Relief from His Convictions under §§ 924(c) and (o) on the Basis of the Kidnapping Statute Alone.**

The government argues that, even if kidnapping resulting in death is not a crime of violence under the force clause, Mr. Fulks's §§ 924(c) and (o) convictions should still be upheld as his § 924 convictions were based, according to the government, on the carjacking. Citing a number of nonbinding authorities,[5] the government contends that, because Mr. Fulks's

---

[5] The government relies on *Davila v. United States*, 843 F.3d 729 (7th Cir. 2016), *In re Navarro*, 931 F.3d 1298 (11th Cir. 2019), *Higa v. United States*, CR No. 06-00395 DKWCV, Civ. No. 16-00211 DKW-WRP, 2019 WL 4143289 (D. Hawai'i Aug. 30, 2019), *United States v. Boyce*, 2019 WL 4016193 (D.S.C. Aug. 26, 2019), *United States v. Taylor*, 2019 WL 4018340 (Aug. 26, 2019), and *Richmond v. United States*, 2016 WL 6462074 (Oct. 31, 2016), all of which are either out-of-circuit authority or district court decisions.

indictment invokes both carjacking and kidnapping as predicate offenses and the 302 report that formed the factual basis for the guilty plea included admissions to both carjacking and kidnapping, then this necessarily establishes carjacking as the predicate offense for the convictions under §§ 924(c) and (o).  MTD at 24-29.

Both of these arguments lack merit and run contrary to established Supreme Court and Fourth Circuit precedent.  To start, the government's argument is, in essence, that because Mr. Fulks's indictment alleged that both carjacking and kidnapping were the predicate crimes for his §§ 924(c) and (o) convictions, then his guilty plea amounted to an admission to all allegations charged conjunctively.  This runs contrary to Fourth Circuit law.  As discussed in Mr. Fulks's Supplemental Brief, "[a] plea of guilty admits only to the elements of the charge necessary for a conviction."  *United States v. Vann*, 660 F.3d 771, 774 (4th Cir. 2011) (en banc) (quoting *Malta-Espinoza v. Gonzales*, 478 F.3d 1080, 1082 n.3 (9th Cir. 2007).  Accordingly, "when a defendant pleads guilty to a formal charge in an indictment which alleges conjunctively the disjunctive components of a statute, *the rule is that the defendant admits to the least serious of the disjunctive statutory conduct*."  *United States v. Chapman*, 666 F.3d 220, 227-28 (4th Cir. 2012) (emphasis added); *see also Vann*, 660 F.3d at 775 ("The formal legal charge . . . *is nothing more than the least serious of the disjunctive statutory conduct, not the entirely of the conduct alleged in the conjunctive*.") (emphasis added).

In *Vann*, the Fourth Circuit considered whether the defendant's prior conviction was a crime of violence under 18 U.S.C. § 924(e) (the Armed Career Criminal Act, "ACCA")[6] where

---

[6] As the residual and force clauses of ACCA and § 924(c) are similar, the precedent interpreting one statute is equally applicable to the other.  *See, e.g.*, *United States v. Ayala*, 601 F.3d 256, 267 (4th Cir. 2010) (relying on ACCA case to interpret the definition of crime of violence under § 924(c)(3)(B)); *United States v. Aragon*, 983 F.2d 1306, 1314 (4th Cir. 1993)

14

the defendant had pled guilty to the predicate offense and the statute had two sections that were divisible. *Id.* at 774-76. Because the indictment alleged both sections of the statute in the conjunctive and the charging documents failed to clarify which section of the statute formed the predicate offense, the *Vann* court determined that the predicate offense did not establish a conviction for a crime of violence. *Id.*

Similarly, the *Chapman* court considered a case where the defendant was raising a constitutional challenge to his conviction and had pled guilty to two disjunctive sections of 18 U.S.C. § 922(g)(8)(C) that had been alleged in the conjunctive. *Chapman*, 666 F.3d at 227-28. Holding "the rule is that the defendant admits to the least serious of the disjunctive statutory conduct" to which he pleads, the Fourth Circuit applied the constitutional claim to "the least serious of the statutory conduct set forth in § 922(g)(8)(C)." *Id. See also In re Gomez*, 830 F.3d 1225, 1227-28 (11th Cir. 2016) (granting permission to proceed with a successive § 2255 petition on a *Johnson* claim where the defendant was convicted of § 924(c) based on four predicate offenses, one of which (conspiracy to commit Hobbs Act Robbery) was not a crime of violence: "a general verdict of guilty does not reveal any unanimous finding by the jury that the defendant was guilty of conspiring to carry a firearm during one of the potential predicate offenses, all of the predicate offenses, or guilty of conspiring during some and not others"); *United States v. Horse Looking*, 828 F.3d 744, 748-49 (8th Cir. 2016) (applying least serious conduct in crime of violence determination where defendant pled guilty to two disjunctive sections alleged in the conjunctive).

---

(relying on ACCA case to interpret crime of violence under 18 U.S.C. § 16(b), which is almost identical to § 924(c)).

Here, just as in *Vann* and *Chapman*, Mr. Fulks's charging documents and colloquy charged disjunctive conduct in the conjunctive. His superseding indictment charged him conjunctively with violating §§ 924(c) and (o) by using and conspiring to use firearms in two crimes of violence "as charged in Counts 1 and 2" (kidnapping and carjacking). Dkt. No. 73. Mr. Fulks's oral and written guilty plea colloquy referred to the predicate offenses for the § 924(c) conviction as "crimes of violence . . . as charged in counts 1 and 2 of the superseding indictment." Tr. 5/4/04 and 5/7/04 at 47-48. As to § 924(o), the colloquy indicated that the conspiracy had to be "to use and carry firearms during and in relation to a crime of violence," without specifying a particular crime of violence. *Id.* at 46. Just as in *Vann* and *Chapman*, because only one of these offenses is necessary for the conviction, it must be presumed that the less serious of the two elements – the kidnapping count – was the basis for the "crime of violence" element of the §§ 924 (c) and (o) convictions. Because the federal kidnapping statute does not satisfy the force clause, Mr. Fulks's §§ 924(c) and (o) convictions must be vacated.

The government's reliance on the 302 report is similarly invalid. As the Supreme Court and Fourth Circuit confirmed most recently in *Davis* and *Simms*, the validity of Mr. Fulks's §§ 924(c) and (o) convictions must be determined with the categorical approach. *Davis*, 139 S. Ct. at 2328; *Simms*, 914 F.3d at 233, 239, 241. Under this approach, courts can only "look to whether the statutory elements of the offense [of conviction] necessarily require the use, attempted use, or threatened use of physical force." *Simms*, 543 U.S. at 233. "This approach is 'categorical' because the courts consider only the crime as defined, not the particular facts in the case." *Id.* By arguing that Mr. Fulks's convictions should be upheld based on the facts that are set forth within the 302 report, the government contravenes *Davis* and *Simms* and asks this Court

16

to delve into the facts of this case when making a determination on the validity of Mr. Fulks's §§ 924(c) and (o) convictions.

Indeed, it is not appropriate to consult with the plea documents at all for this determination. The Supreme Court has only authorized courts to "consult a limited class of documents," under what it has described as the "modified categorical approach," when considering separate sections of divisible statutes. *Descamps*, 570 U.S. at 257-58. A statute is divisible when it "sets out one or more elements of the offense in the alternative – for example, stating that burglary involves entry into a building *or* an automobile." *Id.* at 257. Statutes of this type should not be confused with offenses that define alternative ways of satisfying the same element, which are not divisible and where review of supplemental documents is not permissible. *Mathis*, 136 S. Ct. at 2253-54. Divisible statutes and indivisible statutes containing alternate ways of satisfying the same element are differentiated based on what is needed for a conviction: if the factfinder must agree on one of the alternatives, then the statute is divisible; if no agreement is necessary, then the statute is not divisible and it is merely setting out alternative ways of satisfying the same element. *Id.* at 2250-54.

Here, the carjacking and kidnapping statutes are not two separate parts of a divisible statute, but two separate statutes. Similarly, the factfinder need not agree on *which* offense formed the predicate for the 924(c). Accordingly, to the extent the 302 report constitutes one of the "limited class of documents," *Descamps*, 570 U.S. at 257, that could be considered under the modified categorical approach, it should not be considered here.

Even assuming that the 302 report is appropriately considered, this report does nothing to undermine Mr. Fulks's claim for relief. To the extent any documents other than the elements of the crime are consulted under the modified categorical approach, it is only so that the reviewing

17

court may determine "what crime, with what elements, a defendant was convicted of." *Mathis*, 136 S. Ct. at 2249. "In other words, the modified approach serves – and serves solely – as a tool to identify the elements of the crime of conviction when a statute's disjunctive phrasing renders one (or more) of them opaque." *Id.* at 2253. Nothing recited by the government establishes what the *elements* of Mr. Fulks's guilty plea were, only the factual basis for that plea.

Additionally, the Supreme Court has emphasized the "narrow scope" within which *Shepherd*[7] materials can be used. The *Descamps* court made clear that the purpose of *Shepherd* documents was not to determine what the defendant and trial court "must have understood as the factual basis of the prior plea." *Descamps*, 570 U.S. at 262-63 (citations omitted). Similarly, in *Mathis*, the Supreme Court reaffirmed that the modified categorical approach is not to be "repurposed" to determine if the predicate offense "rested on facts" that would satisfy the statutory requirements for a crime of violence. *Mathis*, 136 S. Ct. at 2254. Indeed, "[h]ow a given defendant actually perpetrated the crime – what we have referred to as the 'underlying brute facts or means' of commission – makes no difference." *Id.* at 2251 (internal citation omitted). By relying on the "factual basis (the FBI 302)" the government attempts to do just what *Mathis*, *Descamps*, and the modified categorical approach prohibit. It urges this Court to go far beyond "narrow scope" of the modified categorical approach and use *Shepherd* materials to determine what the defendant and this Court "must have understood as the factual basis of the prior plea." *Id.*

The government's claim that "the FBI 302 setting forth Fulks's statement is a clear admission by Fulks that at least carjacking was a predicate crime of violence which supported his

---

[7] The limited class of documents cited by *Descamps* are typically referred to as *Shepherd* documents, in reference to *Shepherd v. United States*, 544 U.S. 13 (2005).

18

§ 924 convictions," MTD at 27, has no basis.  That Mr. Fulks admitted to facts that would establish a carjacking and a kidnapping does nothing to identify kidnapping or carjacking as the particular predicate conviction upon with his guilty plea was based.  The issue is not whether the carjacking *could have been* the predicate offense, the issue is whether it *was* the predicate offense.  *See, e.g., Horse Looking*, 828 F.3d at 749 (finding that the defendant "*could have been*" convicted of the more serious conduct did not establish what that the defendant "*was convicted*" of that conduct) (emphasis in original).  Indeed, the defendants in both *Vann* and *Chapman could have been* convicted of the more serious offenses, but the Fourth Circuit considered the least serious conduct because it did not know that they *were convicted* of the more serious conduct.  Here, just as in *Vann* and *Chapman*, "the rule is that the defendant admits to the least serious of the disjunctive statutory conduct."  *Chapman*, 666 F.3d at 227-28.  Accordingly, Mr. Fulks's § 924 convictions should be overturned.

The government's argument as to harmless error similarly fails.  In cases, like this one, which involve convictions arising from a guilty plea, the Fourth Circuit has rejected the argument that the defendant "necessarily admits all allegations charged conjunctively" and found that "[a] plea of guilty admits only the elements of the charge necessary for a conviction."  *Vann*, 660 F.3d at 774.  Even if Mr. Fulks's convictions arose from a jury trial, "in trials by jury, it has been established that a defendant convicted under a conjunctively charged indictment cannot be sentenced – in the absence of a special verdict identifying the factual bases for conviction – to a term of imprisonment exceeding the statutory maximum for the 'least punished' of the disjunctive statutory conduct."  *Id.*

Finally, the government's claim that Mr. Fulks has not met his burden under § 2255 of showing that his plea was invalid is similarly meritless.  Under *Vann* and *Chapman*, a guilty plea

to a conjunctively phrased indictment establishes only the least serious of the options. The government fails to address this. Mr. Fulks has established that his §§ 924(c) and (o) convictions are invalid and should be granted relief.

## II. MR. FULKS IS ENTITLED TO A NEW CAPITAL PENALTY PHASE.

Mr. Fulks's invalid convictions under §§ 924(c) and (o) require a new penalty phase because of their probable impact on the jurors' sentencing deliberations. In his Supplemental Brief and Successor § 2255 Motion, he argues that the Eighth Amendment requires the reversal of a death sentence based in part on a conviction later ruled invalid, and that the sentencing package doctrine reinforces his entitlement to a retrial of his penalty phase. *See* FSB at 13-15; § 2255 Motion at 20-27. The government's attempts to distinguish the relevant authorities fall short.

First, the government argues that the §§ 924(c) and (o) convictions had no effect on the jurors because the Court instructed them that they should impose sentence only on the capital counts – carjacking resulting in death (Count One) and kidnapping resulting in death (Count Two) – and never instructed them to consider the §§ 924(c) and (o) convictions. According to the government, the convictions "had no spillover effect" on the jurors. MTD at 33.

The record demonstrates, however, that the gun convictions likely had a strong influence, because the prosecution's case for death prominently included both the gun convictions and the underlying conduct. The Court instructed the jurors that Mr. Fulks had pled guilty to eight charges. TT 6/1/04 at 21-22. The prosecutor, in his opening statement, told the jurors that these eight counts included "conspiracy to possess firearms and use them in a crime of violence," and "using a firearm during a crime of violence." TT 6/1/04 at 85-86. The prosecutor went on, in summation, to rely heavily on the guns to portray Mr. Fulks as the crime spree's ringleader, who

20

acted jointly with his co-defendant and had the necessary intent to establish his eligibility for the death penalty, arguing:

- "Who is the one who immediately starts asking James Hawkins if he has any guns or money? Who is the one who frantically starts looking around the cab for guns and money? . . . Who is doing all of these things? Chad Fulks." TT 6/29/04 at 33.

- "That Thursday in the Sands Motel, the knife is not good enough. Who is the person asking Tina Severance where he can get guns? Who is the person asking Tina Severance where he can get guns? Chad Fulks." TT 6/29/04 at 36.

- "Chad Fulks is asking for guns. Ask yourself this, ladies and gentlemen, what does Chad Fulks need guns for? What does an escaped convict need guns for? There is only one reason why Chad Fulks will need guns, and that is to kill . . . He is the one who brought it up to Tina. He is the one who said, what about that guy who has been teaching you to shoot that you work with. Chad Fulks chose to get the guns. Chad Fulks chose the victim . . . . The plan works. They lure Robert Talsma out. Chad Fulks goes with Brandon Basham and the end results, two .45 caliber revolvers, one of which we have never recovered; .22 revolver; and, a semiautomatic .45 caliber, semiautomatic. Four handguns are the results of the burglary of Robert Talsma. So, now they are armed." TT 6/29/04 at 37.

- "I saw him with the two .45's. His own brother. Chad Fulks is armed with these two .45's that Friday." TT 6/29/04 at 38.

- "I am Carl Jordan sitting in my pickup truck, and that van comes right here. What else did he see? . . . The next thing he knows, when his attention is to the front, his back window, within a foot of his head, is shattered. He hears an explosion. The

21

only person that could have fired that gun, the only person is Chad Fulks." TT 6/29/04 at 56.

- "Is it unbelievable, with all the cars they break-in to [sic], they couldn't find a gun? . . . He breaks into people's cars, homes, he steals, gets guns. Is it hard to imagine he may have gotten another gun and gotten rid of that gun?" TT 6/29/04 at 73-74.

- "He tries to break into a house right there. . . . He flees. He is, ultimately, apprehended. Certainly, no guns found on him. He had every opportunity in the world after that high-speed chase. He got Ohio license plate after that chase. Think about all the rivers, creeks, dumpsters everywhere he could have gotten rid of these guns. As you know, he can pick up guns any time he wants to." TT 6/29/04 at 92.

- Look at [threshold intent factor] number 4. It is absolutely a fact he has pled guilty to it. Chad Fulks intentionally and specifically engaged in acts of violence. He has admitted to the armed kidnaping and the armed carjacking of Alice Donovan. By definition, those are acts of violence. And he has also admitted to raping Alice Donovan while, in his words, Brandon Basham had a gun. TT 6/29/04 at 103-04.

- "The government submits to you, ladies and gentlemen, you jurors, can find also, [threshold intent factor] number one, through circumstantial evidence. What are the circumstances? What is the state of mind? What is Chad Fulks's character? What has been proven to you to show, circumstantially, he and Brandon Basham, themselves, both would have intentionally participated in the intentional killing of

Alice Donovan? What do you have in the record? I will not go over all of the testimony with you again. I will highlight three or four things . . . You have got Chad Fulks trying to shoot Carl Jordan in the head." TT 6/29/04 at 105-06. Furthermore, the prosecution illustrated the importance of the guns to the case for death by introducing a number of firearms as trial exhibits. The court sent them into the jury room, where their physical presence dramatically and tangibly reminded the jurors of the key role they had played. TT 6/30/04 at 2.

Because of the importance the prosecution placed on the §§ 924(c) and (o) convictions and underlying conduct, the sentence might have been different if the jury had never known about them. The Supreme Court has held that, when the government obtains a sentence partly on the basis of invalid convictions, the "real question" is "whether the sentence [on the valid convictions] might have been different" if the jury had known the others were "unconstitutionally obtained." *United States v. Tucker,* 404 U.S. 443, 448 (1972).

In *Tucker,* a non-capital case, the Supreme Court affirmed the judgment of the Ninth Circuit ordering resentencing on a federal bank robbery conviction after two prior convictions known to the sentencer were later invalidated. *Id.* at 449, 593. Finding that the 25-year federal sentence was imposed "at least in part on misinformation of constitutional magnitude," the Court declared that it would be "callous to assume, now that the constitutional invalidity of the respondent's previous convictions is clear, that the [sentencer] will upon reconsideration 'undoubtedly' impose the same sentence." *Id.* at 447, 449 n.8.

It is irrelevant that the invalidated convictions and resulting sentence in Mr. Fulks's case were rendered at the same trial. The determinative factor is whether the invalidated convictions were known to, and were likely considered by, the sentencer. Thus, when a defendant is

23

convicted and sentenced on multiple counts and one or more convictions are later invalidated, the defendant must be resentenced on the remaining counts unless the government establishes that the sentencer did not rely on the invalid count(s) in reaching the sentence.

Relying upon *Tucker,* federal appeals courts have held that a defendant must be resentenced on valid convictions where it "appear[s] *possible* that [the sentencer] might have relied in part on an unconstitutional conviction[.]" *James v. United States*, 476 F.2d 936, 937 (8th Cir. 1973) (citing *Tucker*) (emphasis supplied). *See also Bourgeois v. Whitley,* 784 F.2d 718, 721 (5th Cir. 1986) (holding that resentencing was required "unless it can be ascertained from the record that a [jury's] sentence on a valid conviction was not affected" by invalid convictions); *Jerkins v. United States,* 530 F.2d 1203, 1204 (5th Cir. 1976) ("[U]nless it can be ascertained from the record . . . that the District Court's sentence on a valid conviction was not affected by a subsequently invalidated conviction on another count of the indictment, the defendant must be resentenced on the valid conviction."); *United States v. Pickney,* 551 F.2d 1241, 1246 n.37 (D.C. Cir. 1976) ("Where the appellate court could only speculate as to what sentence the [sentencer] would have imposed absent consideration of a count upon which the conviction or sentence is later vacated, a remand for resentencing on the remaining valid counts is appropriate.").

That standard is heightened in a capital case. Here, "[t]he fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special 'need for reliability in the determination that death is the appropriate punishment[.]'" *Johnson v. Mississippi,* 486 U.S. 578, 584 (1988) (citations omitted). That is because "[t]he decision to exercise the power of the State to execute a defendant is unlike any other decisions citizens and public officials are called upon to make." *Mills v. Maryland,* 486

24

U.S. 367, 383-84 (1988). And the Supreme Court has made clear that "[t]he *possibility* that [a defendant's] jury conducted its task improperly certainly is great enough to require resentencing." *Id.* at 384 (emphasis added).

Significantly, under this standard, resentencing is required when there is a possibility that an invalid conviction influenced even a *single* juror to recommend death. *See Johnson*, 486 U.S. at 586; *Kubat v. Thieret,* 867 F.2d 351, 373 (7th Cir. 1989) (finding violation of petitioner's Eighth and Fourteenth Amendment rights based on "substantial possibility that one or more" jurors was influenced by erroneous jury instruction).

In this case, the record lacks any support for finding that the jury's verdict in favor of death on Mr. Fulks's capital counts was "not affected" by the §§ 924(c) and (o) convictions. *See Whitley,* 784 F.2d at 721. In other words, the record fails to eliminate, as it must, the "possibility" that the "jury conducted its task improperly." *Mills,* 486 U.S. at 383. It is difficult to imagine that the jurors' knowledge of the heavily stressed gun crimes did not affect a single juror's decision to impose a death sentence.

The government seeks to distinguish *Johnson*, 486 U.S. 578, principally on the grounds that the jury there learned only the fact of the prior conviction and not the underlying evidence, and that the jurors found the prior conviction as an independent aggravating factor. It argues that the §§ 924(c) and (o) convictions in Mr. Fulks's case, in contrast, did not serve as aggravating factors. MTD at 31-32 & n.15. In this case, though, the convictions formed an important foundation for the government's argument that Mr. Fulks possessed the necessary intent for death-eligibility. It is more than "possible" that the convictions caused at least one juror to find Mr. Fulks death-eligible and vote for death.

The government also argues that 28 U.S.C. § 2255 empowers a judge to "correct" an invalid sentence without undertaking "resentencing" on all the counts of conviction. It maintains that the sentencing package doctrine does not apply when "the district court itself would be exercising its discretion to correct a sentence pursuant to § 2255, rather than being mandated to do so by an appellate court[.]" MTD at 29-30. These arguments take aim at the wrong target, however, because the jury, not this Court, imposed Mr. Fulks's capital sentence.

The underlying principle of the sentencing package doctrine, moreover, applies to a jury's decision in a capital case. The doctrine acknowledges that a criminal sentence is a holistic determination that accounts for all of the evidence presented and each offense of conviction. *United States v. Ventura*, 864 F.3d 301, 309 (4th Cir. 2017) ("The sentencing package doctrine accounts for the holistic approach that a district court should employ when sentencing a defendant convicted of multiple offenses."); *United States v. Brown*, 879 F.3d 1231, 1239 (11th Cir. 2018) ("If there is a chance that the erroneous sentence on one count of conviction influenced the sentencing judge's decisions on other counts, then merely excising the mistaken sentence for one count won't put the defendant in the same position as if no error had been made.").

The jury's decision on life or death in a capital case is similarly holistic. Just as a judge must consider multiple convictions to fashion a complete sentence, the jury in a capital case must consider, interdependently, all the evidence before it to determine whether death is an appropriate sentence. The situations are thus closely related: the possibility that an invalid § 924(c) conviction affected a judge's sentencing decision is no different than the possibility that Mr. Fulks's invalid §§ 924(c) and (o) convictions affected the decision of at least one juror in deciding whether he should live or die. If anything, a court reviewing a capital case must assess

26

that possibility with heightened rigor. "The fundamental respect for humanity underlying the Eighth Amendment's prohibition against cruel and unusual punishment gives rise to a special need for reliability in the determination that death is the appropriate punishment in any capital case." *Johnson*, 486 U.S. at 584 (internal citation and quotations omitted).

For all these reasons and those in Mr. Fulks's Supplemental Brief and Successive § 2255 Motion, the Court should order resentencing on Counts One and Two.

## III. MR. FULKS'S *JOHNSON* CLAIM IS NOT PROCEDURALLY DEFAULTED.

In a footnote, the government argues that Mr. Fulks "procedurally defaulted his *Davis* claim by failing to raise a constitutional vagueness objection to his §§ 924(c) and (o) convictions at sentencing and on direct appeal." MTD at 35 n.16. It maintains that he cannot establish cause for the default because he should have anticipated *Johnson*. *Id.* (citing *Bousley v. United States*, 523 U.S. 614, 620-24 (1998)). The Fourth Circuit, following the lead of several other circuits in precedential opinions, has rejected this argument in a non-precedential opinion:

> [W]e reject the government's alternative argument that Bennerman's force clause argument is subject to procedural default because he failed to raise it on direct appeal. True, Bennerman didn't argue before that Connecticut robbery committed by a principal fails to satisfy the force clause. However, this doesn't prevent him from doing so now, because his argument (which depends on a favorable result on both the force clause and the residual clause) wasn't reasonably available before the change in law wrought by *Johnson II*. Our sister circuits have entertained procedurally defaulted *Johnson II* claims due to their previous unavailability, and we conclude that this approach is applicable here. *See Lassend v. United States*, 898 F.3d 115, 122–23 (1st Cir. 2018); *Cross v. United States*, 892 F.3d 288, 294–96 (7th Cir. 2018); *United States v. Snyder*, 871 F.3d 1122, 1127 (10th Cir. 2017).

*United States v. Bennerman*, No. 17-6544, 2019 WL 4200974, at *4–5 (4th Cir. Sept. 5, 2019); *see also United States v. Douglas*, No. 3:13CR114-HEH, 2019 WL 4647256, at *3–5 (E.D. Va. Sept. 24, 2019) (finding cause and prejudice excused default of *Johnson* claim).

The government also argues that Mr. Fulks cannot establish prejudice to excuse the default because "carjacking clearly qualifies as a crime of violence under the still valid force

clause[.]" MTD at 35 n.16. Mr. Fulks has explained above why, by itself, the fact that kidnapping is not a crime of violence invalidates his convictions under §§ 924(c) and (o). *See* Section I(F), *supra*.

Furthermore, even assuming that Mr. Fulks's claim is procedurally defaulted, he should still be given merits review of his claim because he is actually innocent of the crimes charged under §§ 924(c) and (o). A prisoner may have a federal constitutional claim considered on the merits regardless of procedural bars if the prisoner makes a convincing showing of actual innocence. *Schlup v. Delo*, 513 U.S. 298 (1995); *Herrera v. Collins*, 506 U.S. 390, 404 (1993). A compelling case for innocence has been established if "it is more likely than not that no reasonable juror would have convicted [the petitioner]." *Schlup*, 513 U.S. at 329.

"[A]ctual innocence, if proved, serves as a gateway through which a petition may pass whether the impediment is a procedural bar . . . or . . . expiration of the statute of limitations." *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1928 (2013); *Bousley v. United States*, 523 U.S. 614, 622 (1998) (applying the actual innocence gateway to § 2255 proceedings); *United States v. Jones*, 758 F.3d 579, 584-87 (4th Cir. 2014) (declining to extend *McQuiggin* to sentencing challenges, but acknowledging that *McQuiggin* excuses failures to comply with § 2255(f) on challenges to convictions).

Here, as set forth in his Successive § 2255 Motion, his Supplemental Brief, and Section I, *supra*, Mr. Fulks has made far more than a compelling claim that he is actually innocent of § 924(c) and § 924(o) violations and that he was convicted of conduct that is no longer criminal under these two statutes. This is precisely the type of error that is cognizable under § 2255. *See Davis v. United States*, 417 U.S. 333, 346-47 (1974) (holding that when an intervening decision establishes that a prisoner was convicted of "an act that the law [no longer] make[s] criminal,"

"such a circumstance 'inherently results in a complete miscarriage of justice' and 'present(s) exceptional circumstances' that justify collateral relief under § 2255"). As Mr. Fulks has made a compelling case that he is actually innocent of the crimes charged under §§ 924(c) and (o), he has established a gateway claim of actual innocence and is entitled to merits review of his § 2255 motion.

## CONCLUSION

For the foregoing reasons as well as those set forth in his § 2255 motion, Mr. Fulks respectfully requests that the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment be denied, Mr. Fulks's convictions under §§ 924(c) and (o) and his death sentence be vacated, and a new penalty phase ordered.

Respectfully Submitted,

/s/ Peter Williams
Peter Williams
Claudia Van Wyk
Assistant Federal Defenders
Federal Community Defender Office
 for the Eastern District of
Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

Counsel for Petitioner

Dated: November 29, 2019

## CERTIFICATE OF SERVICE

I, Peter Williams, hereby certify that, on this day, I served the foregoing document by ECF filing on the following party:

Robert F. Daley, Esq.
Office of the United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201


/s/ Peter Williams
Peter Williams


Dated: November 29, 2019