IN THE UNITED STATES DISTRICT COURT FOR THE
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:02-CR-00992-JFA |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| CHADRICK FULKS, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## GOVERNMENT'S REPLY TO FULKS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS

Respectfully submitted,

A. LANCE CRICK
ACTING UNITED STATES ATTORNEY

*/s/Robert F. Daley, Jr.*
Robert F. Daley, Jr. (ID # 6460)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel.:    (803) 929-3054
Fax:    (803) 929-3135
Email:  Bob.Daley@usdoj.gov

January 15, 2020

1

**TABLE OF CONTENTS**

                                                                                    **PAGE(S)**

TABLE OF AUTHORITIES ............................................................................... ii

I.      CAPTIAL KIDNAPPING RESULTING IN DEATH IS A
        CRIME OF VIOLENCE ....................................................................1

II.     EVEN IF CAPITAL KIDNAPPING RESULTING IN DEATH
        DOES NOT QUALIFY AS A § 924(c) CRIME OF VIOLENCE,
        PREDICATE CARJACKING IS A CRIME OF VIOLENCE
        THAT, ALONE, SUPPORTS FULKS' §§924(c) AND (o)
        CONVICTIONS EVEN AFTER DAVIS .........................................5

III.    EVEN IF COURT WERE TO DETERMINE FULKS'S §§ 924(C)
        AND (O) CONVICTIONS WERE INVALID, SUCH FINDING
        SHOULD HAVE NO IMPACT ON FULKS'S TWO SEPARATE
        DEATH SENTENCES FOR KIDNAPPING RESULTING IN
        DEATH AND CARJACKING RESULTING IN DEATH ...........................12

IV.     THE COURT SHOULD DISMISS THE § 2255 MOTION
        BECAUSE FULKS PROCEDURALLY DEFAULTED HIS
        DAVIS CLAIM ...............................................................................15

V.      CONCLUSION...............................................................................17

CERTIFICATE OF SERVICE ........................................................................18

# TABLE OF AUTHORITIES

## CASES

*Adams v. United States*,
2019 WL 4735407 (D.Md. Sept. 27, 2019) ............................................................... 6, 9

*Apprendi v. New Jersey*,
530 U.S. 466 (2000) ..................................................................................................... 10

*Beeman v. United States*,
871 F.3d 1215 (11th Cir. 2017) ...................................................................................... 8

*Blakely v. Washington*,
542 U.S. 296 (2004) ...................................................................................................... 10

*Bousley v. United States,*
523 U.S. 614 (1998) ...................................................................................................... 15

*Brown v. United States*,
942 F.3d 1069 (11th Cir. 2019) ...................................................................................... 6

*Burrage v. United States*,
571 U.S. 204 (2014) .................................................................................................... 1, 2

*Class v. United States*,
138 S. Ct. 798 (2018) .................................................................................................... 10

*Davila v. United States*,
843 F.3d 729 (7th Cir. 2016) .......................................................................................... 6

*Davis v. United States,*
139 S. Ct. 2319 (2019) ........................................................................................ *passim*

*Descamps v. United States*,
570 U.S. 254 (2013) ........................................................................................................ 9

*Higa v. United States*,
2019 WL 4143289 (D.Haw. Aug. 30, 2019) .................................................................. 6

*Hurst v. Florida*,
136 S. Ct. 616 (2016) .................................................................................................... 10

*In re Irby*,
858 F.3d 231 (4th Cir. 2017) ............................................................................. 3

*In re Moore*,
830 F.3d (11th Cir. 2016) ................................................................................... 8

*In re Navarro*,
931 F.3d 1298 (11th Cir. 2019) .......................................................................... 6

*Johnson v. United States*,
2019 WL 1790218 (C.D.Cal. April 23, 2019).................................................... 7

*Massaro v. United States*,
538 U.S. 500 (2003) .......................................................................................... 15

*Schlup v Delo*,
513 U.S. 298 (1995) .......................................................................................... 15

*Shepard v. United States*,
544 U.S. 13 (2005).............................................................................................. 9

*Simmons v. United States*,
2019 WL 6051443 (S.D.N.Y. Nov. 15, 2019)................................................... 6

*United States v. Allred*,
942 F.3d 641, 2019 WL 5792489 (4th Cir. Nov. 7, 2019) ................................ 4

*United States v. Bennerman*,
785 F. App'x 958 (4th Cir. 2019) ..................................................................... 16

*United States v. Cannon*,
778 F. App'x 259 (4th Cir. 2019) ....................................................................... 6

*United States v. Causey*,
185 F.3d 407 (5th Cir. 1999) ............................................................................ 13

*United States v. Chapman*,
666 F.3d 220 (4th Cir. 2012) .............................................................................. 8

*United States v. Evans*,
848 F.3d 242 (4th Cir. 2017) ........................................................................ 5, 15

*United States v. Frady,*
456 U.S. 152 (1982) .......................................................................................... 15

iii

*United States v. Francies*,
   2019 WL 4120444 (N.D.Ill. Aug. 28, 2019) ................................................................. 7

*United States v. Haight*,
   892 F.3d 1271 (D.C. Cir. 2018) ................................................................. 4

*United States v. Hayes*,
   589 F.2d 811 (5th Cir. 1979) ................................................................. 2

*United States v. Hornsby*,
   666 F.3d 296 (4th Cir. 2012) ................................................................. 14

*United States v. Horse Looking*,
   828 F.3d 744 (8th Cir. 2016) ................................................................. 11

*United States v. Kennedy*,
   881 F.3d 14 (1st Cir. 2018) ................................................................. 11, 13

*United States v. Lentz*,
   524 F.3d 501 (4th Cir. 2008) ................................................................. 1

*United States v. Lessend*,
   898 F.3d 115 (1st Cir. 2018) ................................................................. 15

*United States v. Livingston*,
   63 F. App'x 106 (4th Cir. 2003) ................................................................. 14

*United States v. Middleton*,
   883 F.3d 485 (4th Cir. 2018) ................................................................. 4

*United States v. Reyes-Contreras*,
   910 F.3d 169 (5th Cir. 2018) ................................................................. 3

*United States v. Steward*, ___ F. App'x ___,
   2019 WL 6875294 (4th Cir. Dec. 17, 2019) ................................................................. 7

*United States v. Vann*,
   660 F.3d 771 (4th Cir. 2011) ................................................................. 8, 9

*United States v. Vasquez*,
   672 F. App'x 56 (2d Cir. 2016) ................................................................. 7

*United States v. Walker*, ___ F. App'x ___,
  2019 WL 4896839 (2d Cir. Oct. 4, 2019) ................................................................ 7

*United States v. Wills*,
  346 F.3d 476 (4th Cir. 2003) ................................................................ 2

*Vilar v. United States*,
  2020 WL 85505 (S.D.N.Y. Jan. 3, 2020) ................................................................ 9, 16

## **STATUTES**

18 U.S.C. § 242................................................................................................ 2
18 U.S.C. § 924(c) ........................................................................................ passim
18 U.S.C. § 924(c)(3)(A) ................................................................................ 4
18 U.S.C. § 1201(a) ........................................................................................ 1
18 U.S.C. § 3591 ............................................................................................ 3, 4
18 U.S.C. § 3591(a)(2)..................................................................................... 3
18 U.S.C. § 3591(a)(2)(D) ............................................................................... 3, 5
21 U.S.C. § 841(b) .......................................................................................... 1

The United States files this reply in opposition to Fulks's response and in further support of its motion to dismiss or grant summary judgment. Fulks's motion to vacate must be denied and judgment entered in favor the United States for the following reasons: (1) both kidnapping and carjacking resulting in death remain crimes of violence under the force clause of § 924(c)(3)(A); (2) even if kidnapping resulting in death does not qualify as a crime of violence predicate for § 924(c), carjacking alone supports Fulks's §§ 924(c) and (o) convictions because, at a minimum, Fulks cannot satisfy his burden of proving that when he pleaded guilty on his §§ 924(c) and (o) charges he only pleaded to kidnapping resulting in death as the sole predicate crime of violence, particularly when he pleaded without limiting the predicate offense to support the §§ 924(c) and (o) charges; (3) even if the court were to determine that Fulks's §§ 924(c) and (o) convictions were invalid, the court should vacate these convictions and leave intact the remaining convictions and sentences; and (4) the court should find that Fulks procedurally defaulted his *Davis* claim and cannot overcome that default.

## I.     CAPITAL KIDNAPPING RESULTING IN DEATH IS A CRIME OF VIOLENCE.

Kidnapping resulting in death, particularly in the capital context, is a crime of violence under the force clause. The death-results provision of the kidnapping statute triggers an enhanced penalty, 18 U.S.C. § 1201(a) (increasing sentencing range if "the death of any person results"), and, therefore, is an element of the aggravated offense of kidnapping resulting in death. *See Burrage v. United States*, 571 U.S. 204, 210 (2014) ("Because the 'death results' [penalty] enhancement [in 21 U.S.C. § 841(b)] increased the minimum and maximum sentences to which Burrage was exposed, it is an element that must be submitted to the jury and found beyond a reasonable doubt."); *United States v. Lentz*, 524 F.3d 501, 512 (4th Cir. 2008) ("death resulted" is

an essential element of the offense of kidnapping resulting in death). As a result, the kidnapping statute is divisible into two offenses: kidnapping that does not result in death and kidnapping that does result in death. Fulks was unquestionably charged with and pleaded guilty to the latter, kidnapping resulting in death. Dkt. # 570.

Fulks claims kidnapping resulting in death does not meet the requirements of the force clause because (1) it does not require the "use of violent force," (2) it can be accomplished recklessly, and (3) it does not require the necessary causation. *See* Dkt. #1677, at pp. 5-11. Fulks is mistaken. Capital kidnapping resulting in death requires the necessary causation, use of force, and intent.

To prove kidnapping resulting in death, the government must prove the victim was subjected to "physical force" within the meaning of § 924(c)(3)(A): The requirement that "death results" from the kidnapping requires a causal connection between the offense and the death; it would not be sufficient, therefore, to show the victim died of natural causes during the course of a kidnapping. *See Burrage*, 571 U.S. at 214 ("a phrase such as 'results from' imposes a requirement of but-for causation"); *United States v. Hayes*, 589 F.2d 811, 821 (5th Cir. 1979) ("death results" provision of 18 U.S.C. § 242 incorporates general principles of causation and noting that death would not "result" from a § 242 violation if the victim is struck by lightning while being detained pursuant to an illegal arrest); *United States v. Wills*, 346 F.3d 476, 500 (4th Cir. 2003) (upholding jury instruction for kidnapping resulting in death charge in which jury was instructed it must determine "whether [victim's] death resulted from the willful and intentional conduct of the defendant"). Establishing that connection will, as in this case, require proof that force capable of causing physical pain or injury or of overcoming a victim's resistance was used during the course

of the commission of the offense—whether or not the force was direct or intentional. *See Irby*, 858 F.3d at 236 ("unlawfully killing another human being requires the use of force capable of causing physical pain or injury to another person"); *United States v. Reyes-Contreras*, 910 F.3d 169, 180-84 (5th Cir. 2018) (en banc).

Indeed, where, as here, kidnapping resulting in death is charged as a capital offense, the jury must find that the defendant engaged in one of four intentional acts that caused the death of a victim. *See* 18 U.S.C. § 3591(a)(2); Superseding Indictment, filed April 23, 2003, at pp. 14-15; Dkt. #s 648 & 649 (special verdict forms). And despite the argument raised by Fulks that § 3591(a)(2) "require[s]—at most—recklessness," Dkt. #1677, at p.11, that assertion is not supported by the statutory language because each requires a defendant to "intentionally" engage in a prohibited act. 18 U.S.C. § 3591.[1]

More specifically, in Fulks's case, the jury found he had the specific intent to engage in an act of violence that created "a grave risk of death to a person, other than one of the participants in the offense," and that the act itself "constituted a reckless disregard for human life" that directly caused the death of the victim, Alice Donovan. 18 U.S.C. § 3591(a)(2)(D); Dkt. #649, at p. 2. This type of conduct rises above the minimum threshold for establishing a crime of violence under the

---

[1] Fulks argues that the threshold factors set forth in 18 U.S.C. § 3591(a)(2) cannot be used to make *capital* kidnapping resulting in death a crime of violence because the factors are not elements of the crime. Dkt. #1677, at pp. 10-11. This argument must be rejected because it ignores the reality that *capital* kidnapping resulting in death is a separate crime that has separate elements (the § 3591(a)(2) factors), one of which must be found by the jury beyond a reasonable doubt. Under the categorical approach, even the least culpable § 3591(a)(2) factor requires a defendant to have "*intentionally* and specifically engaged in an act of violence," knowing that the act constituted a reckless disregard for human life, and "the victim died as a direct result of the act." 18 U.S.C. § 3591(a)(2)(D). Therefore, the least culpable type of *capital* kidnapping resulting in death is a crime of violence.

force clause, 18 U.S.C. § 924(c)(3)(A), because it goes beyond intentionally using force, threatening physical force, or attempting to use physical force—it requires a defendant to intentionally engage in an act that constitutes a "reckless disregard for human life" and that death result from that intentional act. 18 U.S.C. § 3591.

Because all statutory aggravating factors of § 3591(a)(2) entail intentional conduct that caused a victim's death, capital kidnapping resulting in death categorically has as an element— imported from § 3591(a)(2)—the use, attempted use, or threatened use of physical force against the person or property of another because no defendant can be found guilty of those offenses without a finding that he used force capable of causing physical pain or injury against another person. Fulks argues—relying primarily on *United States v. Middleton*, 883 F.3d 485 (4th Cir. 2018)—that kidnapping resulting in death does not qualify as a "crime of violence" under § 924(c)(3)(A) because it does not require the necessary causation and can be committed with a mens rea of recklessness. Dkt. # 1677, at pp. 5-9. As noted above, capital kidnapping resulting in death requires, at a minimum, the defendant *intentionally* engage in an act of violence that causes the death of the victim.[2] Importantly, the jury in Fulks's case specifically found that he

---

[2] If this Court were to determine that capital kidnapping resulting in death can be accomplished by mere recklessness, the government still asserts that recklessness alone is sufficient under the force/elements clause. The courts of appeals have split on this issue with the Fourth Circuit recently confirming that a recklessness mens rea would be disqualifying under the force/elements clause of the career-offender guideline or ACCA. *United States v. Allred*, 942 F.3d 641, 2019 WL 5792489, *7 (4th Cir. Nov. 7, 2019). But *United States v. Haight*, 892 F.3d 1271, 1281 (D.C. Cir. 2018) (Kavanaugh, J.), and the majority of other circuits have the better view that recklessness alone is sufficient under the force/elements clause. The United States notes its agreement with *Haight*, which adopts the majority view on the recklessness issue, and preserves the government's right to further review. The United States preserves its position pending the Supreme Court's ruling in *Walker v. United States*, No. 19-373 (cert. granted Nov. 15, 2019). The Supreme Court recently granted certiorari in *Walker* to decide whether an offense that can be committed with a mens rea

4

"*intentionally* and specifically engaged in an act of violence . . . and Alice Donovan died as a direct result of the act." Dkt. # 649, at p. 2.[3] Even this § 3591(a)(2) factor requires a defendant to have "intentionally and specifically engaged in an act of violence," knowing that the act constituted a reckless disregard for human life, and "the victim died as a direct result of the act." 18 U.S.C. § 3591(a)(2)(D). Therefore, the least culpable type of capital kidnapping resulting in death is a crime of violence.

## II. EVEN IF CAPITAL KIDNAPPING RESULTING IN DEATH DOES NOT QUALIFY AS A § 924(C) CRIME OF VIOLENCE PREDICATE, CARJACKING IS A CRIME OF VIOLENCE THAT, ALONE, SUPPORTS FULKS'S §§ 924(C) AND (O) CONVICTIONS EVEN AFTER *DAVIS*.

Even if this court were to determine that kidnapping resulting in death were no longer a valid predicate crime of violence for § 924(c) purposes after *Davis*, carjacking is a crime of violence under § 924(c)(1)(A)'s force clause, *see United States v. Evans*, 848 F.3d 242, 247-48 (4th Cir. 2017), which continues to support Fulks's §§ 924(c) and (o) convictions. Fulks pleaded guilty to §§ 924(c) and (o) charges that listed *both* carjacking resulting in death *and* kidnapping resulting in death as predicate offenses. Additionally, Fulks pleaded guilty to the separate substantive offenses of kidnapping resulting in death and carjacking resulting in death. Therefore, Fulks's §§ 924(c) and (o) convictions remain valid after *Davis*.

---

of recklessness can qualify as a "violent felony" under the Armed Career Criminal Act's force/elements clause.

[3] *Middleton* is distinguishable because it involved a crime, involuntary manslaughter, that can be accomplished recklessly and requires very attenuated causation. Capital kidnapping resulting in death does not suffer from these problems. Therefore, Fulks's argument that kidnapping resulting in death does not meet the requirements of the force clause fails.

When Fulks pleaded guilty to the §§ 924(c) and (o) charges, he did not attempt to limit his guilty plea to only one of the predicate "crimes of violence" charged in the indictment. *See e.g., Brown v. United States*, 942 F.3d 1069, 1073-74 (11th Cir. 2019) (noting that the "parties repeatedly specified that Brown was pleading to . . . conspiracy to commit Hobbs Act robbery" but not to drug trafficking predicate also charged in indictment). Instead, Fulks pleaded to all charges without reservation. Furthermore, the facts set forth as the basis for his guilty plea (in the FBI 302) made clear Fulks and Basham used firearms in connection with *both* the carjacking and kidnapping of Alice Donovan. *See e.g., United States v. Cannon*, 778 F. App'x 259, 260-61 (4th Cir. 2019) ("The § 924(c) count to which he pled guilty was predicated not only on conspiracy but also on substantive Hobbs Act robbery that Cannon committed on April 27, 2015; and his stipulated statement of facts established that he committed that substantive offense."); *In re Navarro*, 931 F.3d 1298 (11th Cir. 2019) ("although Navarro pled guilty only to conspiracy to commit Hobbs Act robbery and a § 924(c) violation, his plea agreement and the attendant factual proffer more broadly establish that his § 924(c) charge was predicated both on conspiracy to commit Hobbs Act robbery and drug-trafficking crimes"); *Davila v. United States*, 843 F.3d 729, 731 (7th Cir. 2016) ("When stating the factual basis of his plea, Davila admitted to a substantive drug offense that made him eligible for conviction under § 924(c), no matter how the Hobbs Act conspiracy is best classified . . . ."); *Simmons v. United States,* 2019 WL 6051443, at * 4-5 (S.D.N.Y. Nov. 15, 2019); *Adams v. United States*, 2019 WL 4735407, at * 2 (D.Md. Sept. 27, 2019); *Higa v. United States*, 2019 WL 4143289, at *2-3 (D.Haw. Aug. 30, 2019).

As noted in the government's original memorandum, Dkt. 1666, at p. 27 n. 12, the carjacking resulting in death and kidnapping resulting in death of Alice Donovan were inextricably

intertwined and coextensive with one another. The kidnapping and carjacking were continuing once Fulks and Basham abducted Donovan in the Wal-Mart parking lot and drove her through South Carolina and North Carolina. It would be inconceivable to conclude that when Fulks pleaded guilty to his §§ 924(c) and (o) counts, he was pleading guilty only to using a firearm during and in furtherance of kidnapping and not also pleading guilty to doing so during and in furtherance of the carjacking.

In such an instance, where both valid and invalid predicate offenses support a § 924(c) conviction, the § 924(c) conviction (whether by guilty plea or trial) remains valid. *See e.g., United States v. Steward*, ___ F. App'x ___, 2019 WL 6875294 (4th Cir. Dec. 17, 2019) (§ 924(c) predicates of conspiracy to commit Hobbs Act robbery and substantive Hobbs Act robbery were "coextensive"); *United States v. Vasquez*, 672 F. App'x 56, 61-62 (2d Cir. 2016) (§ 924(c) predicates of conspiracy to commit Hobbs Act robbery and narcotics crime were "inextricably intertwined"); *United States v. Walker*, ___ F. App'x ___, 2019 WL 4896839 (2d Cir. Oct. 4, 2019) ("The § 924(c) conviction of each Defendant rested on convictions for both conspiracy and substantive Hobbs Act robbery as the predicate crimes of violence.") *Johnson v. United States*, 2019 WL 1790218 (C.D.Cal. April 23, 2019) (§ 924(c) predicates of conspiracy to commit Hobbs Act robbery *and* substantive Hobbs Act robbery were "inextricably intertwined"); *United States v. Francies*, 2019 WL 4120444, at *7 (N.D.Ill. Aug. 28, 2019) (§ 924(c) predicates of civil rights conspiracy and Hobbs Act robbery). Because of this, Fulks cannot meet his burden of proving the likelihood that he based his guilty pleas to the §§ 924(c) and (o) charges solely on the kidnapping resulting in death predicate, and not also on the other valid predicate offense identified—carjacking resulting in death.

Fulks, as the movant, bears the burden of proving the likelihood that he based his guilty plea to §§ 924(c) and (o) solely on the kidnapping resulting in death predicate and not also on the other valid predicate offense identified in the count (carjacking). *See Beeman v. United States*, 871 F.3d 1215, 1222 (11th Cir. 2017) (*Johnson* § 2255 movant "bears the burden to prove the claims in his § 2255 motion"); *In re Moore*, 830 F.3d at 1272 (11th Cir. 2016) ("a movant has the burden of showing that he is entitled to relief in a § 2255 motion—not just a prima facie showing that he meets the requirements of § 2255(h)(2), but a showing of actual entitlement to relief on his *Johnson* claim"). Fulks cannot meet this burden in the face of his guilty plea and the factual basis upon which it rested.

Fulks responds that, because the §§ 924(c) and (o) counts charged both kidnapping resulting in death and carjacking resulting in death as predicates, the record does not identify the particular offense that underlay his plea to those counts. Fulks claims the predicate offense for both the §§ 924(c) and (o) counts could have been solely kidnapping. This argument ignores context.[4] This was not a case involving a plea to one count with disjunctive elements. This was a plea to separate counts—both to kidnapping resulting in death and carjacking resulting in death—and to §§ 924(c) and (o) counts that built upon those two, separately admitted counts.

That fact distinguishes this case from the cases Fulks cites. *See* Dkt. # 1677, at pp. 14-16. *United States v. Chapman*, 666 F.3d 220 (4th Cir. 2012), involved an indictment that charged disjunctive clauses of § 922(g)(8)(C)(i) and (ii), which describe the kinds of restraining orders. Id. at 224, 227. The kind of restraining order was not charged anywhere else or pleaded to, and thus, the court had to use the less serious clause. *Id.* at 227. Likewise, in *United States v. Vann*, 660 F.3d

---

[4] It also incorrectly places the burden on the government.

8

771, 774 (4th Cir. 2011), the defendant was charged "in a single charging document alleging alternative types of conduct in the conjunctive," and he did not plead guilty, separately, to the alternatives. Thus, the alternative carrying the lesser punishment was presumed to have been the subject of his plea. *Id.* Unlike those cases, there is no danger here that the elements of both predicates were not established. The indictment separately charged kidnapping resulting in death and carjacking resulting in death in counts 1 and 2, and Fulks separately pleaded guilty to each crime. He then admitted the additional charges of §§ 924(c) and (o). Accordingly, all the elements of each underlying crime were established.

Fulks correctly asserts that courts use the categorical approach to determine whether a prior conviction qualifies as a § 924(c) predicate crime of violence. But he then asks the court to make unprecedented use of the categorical approach by holding that it prevents courts from determining what specific predicate offense (or offenses) was used to sustain a § 924(c) conviction. Dkt. # 1677, at pp 16-19. Fulks's argument attempts to avoid the burden he must meet and place it on the government.

Moreover, Fulks's attempt to require the application of the categorical approach misapplies opinions analyzing the divisibility of a defendant's prior convictions used to enhance his sentence under the Armed Career Criminal Act, *see, e.g., Descamps v. United States*, 570 U.S. 254 (2013); *Shepard v. United States*, 544 U.S. 13 (2005), and improperly attempts to extend them to situations where a § 924(c) conviction rests on a valid predicate offense. No court has adopted this application of the categorical approach. *See e.g., Adams*, 2019 WL 4735407, at *2 (rejecting application of categorical approach in § 2255 attack of one of two § 924(c) predicates); *Vilar v. United States*, 2020 WL 85505, at *2 (S.D.N.Y. Jan. 3, 2020) (same).

Fulks invokes *Vann* and *Chapman* to support this attempt to require the use of the categorical approach to determine what predicate offense supported a § 924(c) conviction. Dkt. # 1677, at pp. 16-18. This reliance is misplaced. There is no question that a single § 924(c) conviction can be supported by multiple predicate offenses. In *Vann*, the Fourth Circuit contemplated that when a defendant was convicted at trial after being charged conjunctively in an indictment, courts may look to a special verdict form to identify the factual bases for the conviction. So when a defendant is convicted of a § 924(c) based on multiple predicates following a trial, the categorical approach would not prevent a court from looking to the special verdict form to determine what specific predicate (or predicates) the jury determined was the basis for the conviction.[5]

In Fulks's case, there was a guilty plea rather than a jury verdict, and there was a factual basis for the guilty plea rather than a special verdict form. There is no basis to Fulks's argument

---

[5] Fulks overlooks the fact that cases like *Vann* do not address a scenario where the defendant's express admission of guilty in an accompanying statement of facts shows his guilty plea supported two distinct theories of guilt. To take a simple example, if a defendant expressly admitted to conspiring to distribute both a kilogram of crack cocaine and a kilogram of marijuana, the defendant would have, under *Vann*, made factual admissions that are the equivalent of a "special verdict," establishing defendant's guilt for the higher statutory penalty range for the crack cocaine. The United States, in drafting a plea agreement, does not have to omit the marijuana from the factual admissions to prevent the plea from being reduced by operation of law to the lower marijuana penalty range. Under *Apprendi v. New Jersey*, 530 U.S. 466 (2000), "a judge may impose any sentence authorized 'on the basis of the facts reflected in the jury verdict or admitted by the defendant.'" *Hurst v. Florida*, 136 S. Ct. 616, 623 (2016) (quoting *Blakely v. Washington*, 542 U.S. 296, 303 (2004)). *Cf. Class v. United States*, 138 S. Ct. 798, 804-05 (2018) (a guilty plea waives "case-related constitutional defects that occurred prior to the entry of the guilty plea" and that could "have been cured through a new indictment."). In short, *Vann* did not deal with a scenario where a defendant admitted in pleading guilty to conspiring to distribute both the kilogram of marijuana and the kilogram of crack, and likewise, *Vann* did not address a scenario where a defendant expressly admitted the facts supporting a valid § 924(c) predicate and then claims that the § 924(c) lacks a valid predicate.

that the categorical approach prohibits the court from looking to the factual basis for the plea – just as it would a special verdict form – to determine what predicate offense (or offenses) sustained Fulks' § 924(c) conviction. In relying on the FBI 302, the government is not asking the court to look to the facts of Fulks' underlying offense in violation of the categorical approach; it is sensibly asking the court to determine what the underlying predicate offense is before determining whether that offense is a crime of violence under § 924(c).[6]

The cases that Fulks invokes do not reject these points. *See, e.g., United States v. Kennedy*, 881 F.3d 14, 23 (1st Cir. 2018) ("We can look to the plea colloquy ... [and] we are looking for something that resembles what we would find in a charging document or jury verdict in a tried case."); *United States v. Horse Looking*, 828 F.3d 744, 749 (8th Cir. 2016) ("He was charged in the alternative with a non-qualifying assault, and the state court did not specify which alternative was the basis for conviction.").

Moreover, Fulks's theory makes no sense in the context of this case. He argues that a court must assume he admitted the "least-serious" alternative predicate offense. Dkt. # 1677, at pp. 14-16, 19. But Fulks offers no basis for saying that kidnapping resulting in death is less serious than carjacking resulting in death. Both offenses have the same statutory penalty range and, in the context of this case, deal with the same offense conduct. In characterizing the kidnapping resulting

---

[6] Fulks argues the factfinder need not agree on which offense formed the predicate for the § 924(c) conviction and that consideration of the 302 as a *Shepard* document is therefore inappropriate. Dkt. 1677 at 17. This argument is off target. First, the modified categorical approach is inapplicable here, where the court is not being asked to consider a divisible statute, and *Shepard* is therefore irrelevant. Second, the fact that a jury does not *have* to agree on a predicate offense does not mean the categorical approach requires courts to disregard a jury's finding where it *did* agree, as reflected in a special verdict form. More to the point here, the categorical approach does not require the court to disregard the fact that Fulks pleaded guilty in open court to two separate predicate offenses.

in death as the supposedly "least offense," Fulks apparently seeks to rely on the invalidation of § 924(c)(3)(B), not anything that makes the kidnapping resulting in death offense itself less serious to admit. But Fulks identifies no authority that supports such reasoning for deeming the kidnapping offense less serious. Fulks also seeks to characterize by fiat his plea as being limited to kidnapping resulting in death. But he did not enter a guilty plea to only count one. He also entered a guilty plea to count two. In short, it strains credulity to think that his guilty plea to the §§ 924(c) and (o) charges relied upon only kidnapping resulting in death. Nothing in the record supports such a conclusion. For this reason, Fulks cannot meet his burden and his motion to vacate is without merit.

**III.     EVEN IF COURT WERE TO DETERMINE FULKS'S §§ 924(C) AND (O) CONVICTIONS WERE INVALID, SUCH FINDING SHOULD HAVE NO IMPACT ON FULKS'S TWO SEPARATE DEATH SENTENCES FOR KIDNAPPING RESULTING IN DEATH AND CARJACKING RESULTING IN DEATH.**

Even if this Court were to determine Fulks's §§ 924(c) and (o) convictions were invalid, that finding would have no impact on Fulks's separate death sentences for his convictions for kidnapping resulting in death and carjacking resulting in death. No additional evidence was admitted as a result of Fulks's §§ 924(c) and (o) convictions in the sentencing phase of Fulks's trial. The jury did not consider Fulks's §§ 924(c) and (o) convictions in deciding to impose the death sentences for his kidnapping resulting in death and carjacking resulting in death offenses.

First, each of Fulks's death sentences were based on counts 1 and 2 without reference to the §§ 924(c) and (o) convictions. Fulks is mistaken when he asserts the jury considered Fulks's §§ 924(c) and (o) convictions in deciding to impose the death penalty. The court instructed the jury that any death sentence would be based on the convictions under count 1 and count 2 alone:

> There are eight counts or charges contained in the indictment against him. Mr. Fulks has pled guilty to all eight counts. **For purposes of your participation in this proceeding, however, we need focus only on the first two counts. The first two counts charge Mr. Fulks with offenses for which the penalty is either death or life imprisonment without the possibility of parole. These two offenses are: Count One, carjacking, resulting in death; and Count Two, kidnapping, resulting in death.**

Dkt. # 676, at pp. 21-22 (emphasis added); *see also id*. at 31 ("You may decide to impose a sentence of death for either one of the two crimes Mr. Fulks pled guilty to.").

The special verdict forms, moreover, required the jury to weigh the aggravating and mitigating factors separately for counts 1 and 2 and impose separate sentences on each death-eligible count. The jury, therefore, necessarily determined that a death sentence was warranted on count 1 without regard for the count 2 conviction and certainly without regard to the §§ 924(c) and (o) counts. *Cf. United States v. Causey*, 185 F.3d 407, 423 (5th Cir. 1999) (remand for resentencing required because "[t]he jury did not make separate recommendations concerning the appropriate penalties for each count of conviction" and therefore it was "impossible to say that the jury's penalty phase recommendations of the death penalty were not influenced by the fact that [defendants] had received three death eligible convictions, rather than two").

In short, no evidence was admitted regarding Fulks's §§ 924(c) and (o) convictions in the sentencing phase. Rather, Fulks's death sentences on his carjacking resulting in death and kidnapping resulting in death counts were rendered by the sentencing jury without reference to Fulks's other counts of conviction. At no point was the jury instructed to consider the §§ 924(c) and (o) convictions in deciding whether to impose the death penalty.

Second, there was no evidence admitted in Fulks's sentencing, particularly the use of guns throughout his crime spree, that would have been excluded if §§ 924(c) and (o) had not been

13

charged. In other words, all evidence related to the use of guns by Fulks and Basham would have been admitted in Fulks's trial even if the government had not charged violations of §§ 924(c) and (o). Fulks's recitation of the various evidence and arguments about the use of firearms during the crime spree, see Dkt.# 1677, pp. 21-23, does not change this fact.

This is not a case where supposedly invalid convictions resulted in the admission of additional prejudicial evidence against the defendant. There is no question that the evidence supporting the §§ 924 (c) and (o) convictions had no spillover effect on the jury's determination to impose the death penalty on counts 1 and 2. This is so because the evidence introduced by the government supporting the imposition of the death sentence in the penalty phase would not have changed if the §§ 924 (c) and (o) counts had not existed. In fact, **Fulks has failed to point to any evidence, gun-related or otherwise, admitted in the penalty phase that would have been inadmissible if §§ 924(c) and (o) had not been charged.** *See United States v. Hornsby*, 666 F.3d 296, 311 (4th Cir. 2012) (no spillover prejudicial effect caused by reversed counts because defendant "has not pointed this Court to any specific evidence admitted at his trial that would be inadmissible at a trial only for the [valid] counts"); *United States v. Livingston*, 63 F. App'x 106, 107 (4th Cir. 2003) (finding the defendant's remaining convictions should not be vacated because there was no prejudicial spillover from evidence supporting the dismissed counts: "The evidence in support of the reversed counts and the remaining counts was identical."). Therefore, the §§ 924 (c) and (o) convictions did not result in the admission of additional prejudicial evidence against Fulks. For these reasons, the court should not vacate Fulks's death sentences.

**IV. THE COURT SHOULD DISMISS THE § 2255 MOTION BECAUSE FULKS PROCEDURALLY DEFAULTED HIS *DAVIS* CLAIM.**

The court should dismiss the § 2255 motion because Fulks procedurally defaulted his *Davis* claim. A defendant must raise a claim on direct appeal or the claim is procedurally defaulted, *Massaro v. United States,* 538 U.S. 500, 504 (2003), unless he can overcome the default by demonstrating both cause for failure to raise the claim and actual prejudice from the alleged error. *See United States v. Frady,* 456 U.S. 152, 167-68 (1982). The "prejudice" standard requires that the alleged error "worked to [Fulks's] *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady,* 456 U.S. at 170. Thus, "to obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on direct appeal" under the plain error standard of review. *Id.* at 166. If a prisoner cannot show both cause for his procedural default and actual prejudice, a court should not consider his challenge unless he can demonstrate "actual innocence." *Bousley v. United States,* 523 U.S. 614, 620-24 (1998).

Fulks cannot establish actual prejudice or actual innocence. His § 924(c) conviction was predicated on carjacking resulting in death *and* kidnapping resulting in death. Carjacking clearly qualifies as a crime of violence. *See Evans*, 848 F.3d at 247. In the context of a procedural bar, "[t]o establish actual innocence, petitioner must demonstrate that, 'in light of all the evidence,' 'it is more likely than not that no reasonable juror would have convicted him.'" *Bousley*, 523 U.S. at 623 (quoting *Schlup v Delo*, 513 U.S. 298, 327-28 (1995)). As noted in Sections I, II, and III above, Fulks cannot establish actual prejudice or actual innocence. *See United States v. Lessend*, 898 F.3d 115, 123 (1st Cir. 2018)("[I]f Lassend's challenge fails on the merits, there cannot be actual prejudice because there would be no error from which such prejudice would flow. While we have

15

found little law on the topic of prejudice, we think that the prejudice inquiry dovetails with the merits inquiry, and is not satisfied by mere argument.").

Fulks's reliance on *United States v. Bennerman*, 785 F. App'x 958 (4th Cir. 2019), in arguing that he can overcome procedural default, Dkt. #1677, at p. 27-28, must fail. First, *Bennerman* is an unpublished decision which is not binding on this Court. Second, any discussion about the merits of the procedural default argument in *Bennerman* was dicta. As the *Bannerman* panel[7] noted, "procedural default is an affirmative defense that the government failed to raise before the district court" and, therefore, the government waived the argument. *Bennerman*, 785 F. App'x at 963. Finally, *Bennerman* cites to *Lessend* approvingly. *Id.* As noted by the *Lessend* court, the procedural default "prejudice inquiry dovetails with the merits inquiry, and is not satisfied by mere argument." *Id.* Because Fulks fails to succeed on the merits, as explained above, he cannot meet the prejudice requirement to overcome his procedural default. *See Vilar*, 2020 WL 85505, at *2 ("the jury surely would have convicted Petitioner under § 924(c) if properly instructed, he can show neither prejudice nor actual innocence [and] because on this record it is plain that the improper instruction could not have affected the outcome, the trial was not seriously infected by the error and the facts still support the conviction" and there was "thus no prejudice or actual innocence to excuse the procedural default").

---

[7] Only two of the judges on the panel reached the procedural default issue. *See Bennerman*, 785 F. App'x at 964 (Richardson, J., concurring) ("As for the alternative procedural arguments (statute of limitations and procedural default), I would not reach out to decide those questions. The district court would be just as well equipped as we are to address those issues in the first instance on remand.").

**V.    CONCLUSION.**

The court should deny Fulks's § 2255 motion and enter judgment in favor of the United States.   First, both carjacking resulting in death and kidnapping resulting in death remain crimes of violence under the force clause of § 924(c)(3)(A) even after *Davis*.  Second, even if kidnapping resulting in death were to no longer qualify as a crime of violence predicate for § 924(c), carjacking alone still supports Fulks's §§ 924(c) and (o) convictions.  Third, even if this court were to find that Fulks's §§ 924(c) and (o) convictions were invalid in light of *Davis*, the appropriate result would be to vacate only those counts and leave the rest of the sentences, including the death sentences, in place.  Finally, the court should also dismiss the § 2255 motion because Fulks procedurally defaulted his *Davis* claim by failing to raise a vagueness objection to his §§ 924(c) and (o) convictions at sentencing and on direct appeal. For these reasons, Fulks's § 2255 motion is without merit.

Respectfully submitted,

A. LANCE CRICK
UNITED STATES ATTORNEY

*/s/Robert F. Daley, Jr.*
Robert F. Daley, Jr. (ID # 6460)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel.:    (803) 929-3054
Fax:    (803) 929-3135
Email:  Bob.Daley@usdoj.gov

January 15, 2020

IN THE UNITED STATES DISTRICT COURT
FOR THEDISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal No. 4:02-CR-00992-JFA |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | **CERTIFICATE OF SERVICE** |
| | ) | |
| CHADRICK FULKS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

The undersigned assistant united states attorney hereby certifies that he has caused service of the **GOVERNMENT'S REPLY TO FULKS' RESPONSE IN OPPOSITION TO MOTION TO DISMISS** by a paralegal specialist employed in the office of the United States Attorney for the District of South Carolina who is a person of such age and discretion as to be competent to serve papers**.**

That on January 15, 2020, my Paralegal served a copy of the foregoing documents by ECF on the following:

Claudia Van Wyk, Esquire
Peter K. Williams, Esquire
Federal Community Defender Office
601 Walnut Street, Suite 545, West
Philadelphia, PA 19106
Email:  Claudia_Vanwyk@fd.org
Email:  Pete_Williams@fd.org

Respectfully submitted,

A. LANCE CRICK
UNITED STATES ATTORNEY

*/s/Robert F. Daley, Jr.*
Robert F. Daley, Jr. (ID # 6460)
Assistant United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201
Tel.:    (803) 929-3054
Fax:    (803) 929-3135
Email:  Bob.Daley@usdoj.gov

18