# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF SOUTH CAROLINA
### FLORENCE DIVISION

| | | |
|---|---|---|
| _____ | : | 4:02-CR-992-JFA |
| THE UNITED STATES OF AMERICA, | : | |
| | : | |
| Respondent, | : | Hon. Joseph F. Anderson |
| | : | United States District Judge |
| | : | |
| v. | : | **CAPITAL CASE** |
| | : | |
| CHADRICK E. FULKS, | : | |
| | : | |
| Petitioner. | : | |
| _____ | : | |

## PETITIONER'S REPLY IN SUPPORT OF HIS SUPPLEMENTAL MEMORANDUM OF LAW REGARDING *UNITED STATES V. TAYLOR*, *UNITED STATES V. OGUN*, AND *UNITED STATES V. DICKERSON*

PETER WILLIAMS
Assistant Federal Defender
Federal Community Defender Office
for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
Tel: 215.928.0520
Fax: 215.928.0826
pete_williams@fd.org

*Counsel for Petitioner*

Dated: November 10, 2022

**TABLE OF CONTENTS**

TABLE OF CONTENTS.................................................................................................................. i

INTRODUCTION ...................................................................................................................... 1

ARGUMENT .............................................................................................................................. 3

I.  MR. FULKS'S § 924(C) CONVICTION IS INVALID BECAUSE CARJACKING IS NOT A CRIME OF VIOLENCE UNDER *TAYLOR*......................................................................... 3

   A.  Carjacking as Defined by 18 U.S.C. § 2119 Is Not a Crime of Violence............................ 3

   B.  *Taylor* Undermines the Fourth Circuit's Determination in *Evans* that Carjacking Was a Crime of Violence........................................................................................................... 8

II.  FEDERAL CARJACKING IS NOT A CRIME OF VIOLENCE UNDER *BORDEN*. ......... 11

CONCLUSION...................................................................................................................... 17

**INTRODUCTION**

Petitioner Chadrick Fulks has shown that his convictions under 18 U.S.C. §§ 924(c) and

(o), which criminalize the use of firearms in crimes of violence, should be vacated pursuant to

*Johnson v. United States*, 576 U.S. 591 (2015); *Davis v. United States*, 139 S. Ct. 2319 (2019);

*Borden v. United States*, 141 S. Ct. 1817 (2021); and *United States v. Taylor*, 142 S. Ct. 2015

(2022).[1] To qualify as a crime of violence, a predicate offense must require the use, attempted

use, or threatened use of physical force, and a purposeful or knowing mens rea when that force is

used, threatened, or attempted. The Government has argued that Mr. Fulks's § 924 convictions

were based on both his kidnapping resulting in death and carjacking resulting in death

convictions. Dkt. No. 1728 at 16-21. After *Borden* was issued, the Government presumed

without conceding that kidnapping resulting in death was not a crime of violence, Dkt. No. 1698

at 3, leaving only carjacking's status as a crime of violence in dispute.

Mr. Fulks has shown that carjacking resulting in death is not a crime of violence under

either *Taylor* or *Borden*. Because federal carjacking under 18 U.S.C. § 2119 can be achieved

through an attempted threat (as opposed to an actual threat), carjacking is not a crime of violence

under *Taylor*.[2] Because carjacking requires only *conditional* intent, i.e., the intent to use force

should it become necessary to take the car, federal carjacking can be established through the

reckless or negligent use of force or intimidation and is not a crime of violence under *Borden*.

---

[1] Section 924(c) prohibits the use of a firearm during the course of a crime of violence. Section 924(o) prohibits conspiracy to use firearms in a crime of violence. As the arguments raised in Mr. Fulks's successive 28 U.S.C. § 2255 proceedings apply equally to both offenses, §§ 924(c) and (o) shall be referred to collectively throughout this pleading.

[2] In relevant part, § 2119 defines carjacking as follows: "[w]hoever, with the intent to cause death or serious bodily harm takes a motor vehicle . . . from the person or presence of another by force and violence or by intimidation, or attempts to do so . . . ."

1

While the Fourth Circuit previously found carjacking to be a crime of violence in *United States v. Evans*, 848 F.3d 242 (4th Cir. 2017), the *Evans* court's analysis is abrogated by *Taylor* and *Borden*.[3] Whether under *Taylor*, *Borden*, or a combination of the two, Mr. Fulks's §§ 924(c) and (o) convictions should be vacated.

The Government argues that carjacking by attempt is divisible from carjacking by actual taking and, as a result, they are different offenses that can be considered separately under the modified categorical approach. Dkt. No. 1728 at 5-12. The Government errs. These two components of the carjacking statute are not divisible. The Government's argument to the contrary employs an analysis that is inconsistent with *Taylor* and *Mathis v. United States*, 579 U.S. 500 (2016).

The Government further contends that carjacking's conditional intent requirement satisfies *Borden*'s mens rea requirement, that carjacking's status as a crime of violence has already been decided by *Evans*, and that neither *Borden* nor *Taylor* abrogates *Evans*. *Id.* at 5-16.

Conditional intent, however, does not satisfy *Borden*, as it does not require that force or intimidation be knowingly or purposefully employed. *Evans* was based on a line of precedent that was undermined by both *Taylor* and *Borden,* and that did not consider whether conditional intent satisfied *Borden*'s mens rea requirement. For the reasons set forth below, the Government's position on these issues, and the other arguments it advances against Mr. Fulks's claim for relief, should be rejected.

---

[3] *See, e.g.,* Dkt. No. 1722 at 3-17. Mr. Fulks has also alleged that kidnapping, and not carjacking, formed the basis for his § 924(c) convictions. Mr. Fulks relies on the arguments he has made on this issue in prior submissions and focuses this reply on the *Taylor* and *Borden* issues.

**ARGUMENT**

**I.      MR. FULKS'S § 924(C) CONVICTION IS INVALID BECAUSE CARJACKING IS NOT A CRIME OF VIOLENCE UNDER *TAYLOR*.**

**A.      Carjacking as Defined by 18 U.S.C. § 2119 Is Not a Crime of Violence.**

*Taylor* held that attempted Hobbs Act robbery was not a crime of violence because an attempted threat does not require the use, attempted use, or threatened use of force. 142 S. Ct. at 2020-26. Mr. Fulks argued that the federal carjacking statute, like attempted Hobbs Act robbery, can be satisfied by an attempted threat. Dkt. No. 1722 at 6-9. Because an attempted threat would not require the use, attempted use, or threatened use of force, Mr. Fulks's carjacking resulting in death conviction is not a valid predicate offense for his § 924(c) conviction under *Taylor*. *Id.*

In response, the Government argues that Mr. Fulks's carjacking resulting in death conviction should not be assessed under the categorical approach. Dkt. No. 1728 at 7-8. Instead, the Government contends that the modified categorical approach should be employed as to Mr. Fulks's carjacking resulting in death conviction because carjacking under § 2119 is a divisible statute and carjacking and attempted carjacking are separate crimes. *Id.* This is so, the Government argues, because the statute is phrased in the disjunctive and because "prosecutors universally charge defendants with a specific alternative version of the statute—either attempted or completed carjacking—and courts instruct juries they must unanimously find the defendant guilty of the charged alternative." *Id.* at 8-10. Using the modified categorical approach, the Government argues that Mr. Fulks pled guilty to carjacking by actual taking, which the Government contends is a crime of violence. *Id.* at 10.

The Government's argument is contrary to *Mathis v. United States*, 579 U.S. 500 (2016). Under *Mathis*, the divisibility of a statute is determined by whether the contested aspects of a statute are alternate elements of a crime or alternate means of satisfying the same element. *See*

Dkt. No. 1722 at 4 (discussing *Mathis*, 579 U.S. at 504, 517, and *Descamps v. United States*, 570 U.S. 254, 2787 (2013)). If the contested passages in a statute are alternate means, then the statute or subsection thereof is not divisible. *Mathis*, 579 U.S. at 504. If the contested passages are alternate elements, then the statute or subsection is divisible. *Id.* Elements as used this context are statutory phrases that a jury is *required* to unanimously agree upon to convict the defendant. *Id.* (defining elements as items the "prosecution *must* prove to sustain a conviction," what "the jury *must* find beyond a reasonable doubt to convict the defendant," and "what the defendant *necessarily* admits when he pleads guilty") (emphasis added). Nothing in § 2119 requires a jury to agree unanimously as to whether there was an attempt or an actual taking before convicting the defendant of carjacking.

The Government's reliance on how carjacking has been charged and how juries have been instructed is contrary to *Taylor*. When considering whether attempted Hobbs Act robbery was a crime of violence, the *Taylor* court rejected the Government's argument that Taylor had to provide an example of an attempted Hobbs Act robbery that was prosecuted in a way that supported Taylor's proposed interpretation of the statute. *Taylor*, 142 S. Ct. at 2024. *Taylor* determined that this was an attempt to require an "empirical study" of the defendant and that imposing such a requirement would create the "oddity of placing a burden on the defendant to present empirical evidence about the government's own prosecutorial habits." *Id. Taylor* also determined that such an approach would present "practical challenges . . . in a world where most cases end in plea agreements, and not all of those cases make their way into easily accessible commercial databases." *Id.* More fundamentally, *Taylor* rejected the Government's argument as contrary to the language of the statute, holding that § 924(c) required no empirical analysis but instead "tasked the courts with a much more straightforward job: Look at the elements of the

underlying crime and ask whether they require the government to prove the use, attempted use, or threatened use of force." *Id.* at 2025.

Here, the Government, in essence, tasks Mr. Fulks with conducting an "empirical study" of how carjacking is charged and instructed in the United States. Just as in *Taylor*, if accepted, the Government's position would create the "oddity of placing a burden on the defendant to present evidence about the government's own prosecutorial habits." *Taylor*, 142 S. Ct. at 2024. Just as in *Taylor*, the Government's argument would also create "practical challenges," *id.*, in data collection where the majority of the indictments issued by the Government end in plea agreements that do not "make their way into easily accessible commercial databases" *id.*, and where Mr. Fulks has no way of surveying the complete universe of indictments and jury instructions for carjacking cases.

Moreover, just as in *Taylor*, empirical evidence on how the Government structures its indictments and how judges charge juries does not address what is required by the carjacking statute. *Id.* at 2025 (rejecting the use of examples of prosecutions because they have no relevance to whether the statutory elements "*require* the government to prove the use, attempted use, or threatened use of force.") (emphasis added).

Rather, the Government's examples merely establish that, in some cases, the prosecutor *chose* to charge the defendant with just one part of the carjacking statute or that the trial court *chose* to instruct the jurors on just one part of the statute. All of these examples are irrelevant under *Mathis* and *Taylor* because none of the examples establish that the Government or the courts were *required* to do.

Citing *United States v. Marshall*, 747 F. App'x 139, 150 (4th Cir. 2018), the Government argues that the Fourth Circuit "has also considered how prosecutors charge the offenses, the

elements on which juries are instructed, and the manner in which courts treat convictions" when determining if a statute is divisible. Dkt. No. 1728 at 7-8. But *Marshall*, an unpublished, non-precedential opinion, was issued before *Taylor* and did not address the *Taylor* Court's rejection of using an empirical analysis when interpreting a statute. *Id.* at 140. Additionally, *Marshall* addressed a South Carolina statute and not the federal carjacking statute before this Court. *Id.* As the Government concedes, the difference between a state conviction and a federal one is significant in this context as the reviewing federal court refers to state authority in determining how the contested portions of the statute are interpreted under state law. *See* Section II, *infra*; Dkt. No. 1728 at 15. The *Marshall* court's one-sentence notation of how South Carolina juries were "typically" instructed on the contested statute is placed in a larger discussion of how South Carolina courts interpret that statute. *Marshall*, 747 F. App'x at 150. Here, because *Taylor*'s holding is based, in part, on the fact that the predicate offense was a federal statute, there was no need to refer to state authority as to how to interpret the elements of a state law and the analysis in *Marshall* is inapplicable. *Id.*

Furthermore, assuming *arguendo* that jury instructions used in other cases are relevant to the analysis, federal courts *have* issued instructions that did not require the jury to agree on whether carjacking was committed by attempted or actual taking. In *United States v. Harris*, No. 4:16-CR-25(2), 2017 WL 10058075 (E.D. Tex. May 24, 2017) (Dkt. No. 185) (Jury Instruction), the jurors were instructed that they "must be convinced that the government has proved … that the defendant intentionally took *or attempted to take* from a person a motor vehicle described in the First Superseding Indictment," among the other elements. *Id.* (emphasis added). Likewise, in *United States v. Ware*, No. 2:09-CR-113-WKW, 2009 WL 6446092 (M.D. Ala. Oct. 1, 2009) (Dkt. No. 36) (Jury Instruction), the jurors were instructed that the defendant could be found

6

guilty if the Government established that he "took *or attempted to take* a motor vehicle from the person or presence of another." *Id.* (emphasis added). So the practice of instructing juries on carjacking varies. The fact that courts have instructed juries to consider actual taking and attempted taking as alternate means of committing carjacking supports the conclusion that the statute is indivisible.

Citing *United States v. Jackson*, 32 F.4th 278 (4th Cir. 2022), *cert. pending*, No. 22-5982 (U.S. filed Nov. 2, 2022), the Government argues that "[w]hile not dispositive," the fact that the taking/attempted taking portion of the carjacking statute is phrased in the disjunctive is an "indicia of divisibility" that "serves as a signal" that the carjacking statute "may well be divisible." Dkt. No. 1728 (quoting *Jackson*, 32 F.4th at 286.). The Government's reliance on *Jackson* for this proposition is misplaced. *Mathis* itself explained that means as well as elements can be listed in the disjunctive and "a statute's listing of disjunctive does nothing to mitigate the possible unfairness of basing an increased penalty on something not legally necessary to a prior conviction." *Mathis*, 579 U.S. at 512-13. Consistent with this holding, the *Mathis* Court considered a burglary statute that was phrased in the disjunctive and found that the statute was not divisible. *Id.*

Furthermore, the Government ignores the rest of *Jackson*'s analysis. When considering whether premeditated murder was divisible from felony murder, the *Jackson* court based its ruling predominantly on its belief that felony murder and murder with intent rested on "different formulations" and that "each formulation of the crime involves a different type of conduct." 32 F.4th at 286 (internal citations and quotations omitted). Premeditated murder required the intent to kill the victim, while felony murder only required proof of perpetration or attempted perpetration of a listed crime. *Id.* Because these different formulations "differ[ed] quite

significantly," the *Jackson* court held that they "should be treated as separate crimes warranting the use of the modified categorical approach." *Id.* (internal citations and quotations omitted). Here, carjacking by actual taking and carjacking by attempt are not "different formulations" that each involve "a different type of conduct." *Id.* They require the same level of intent and otherwise have the nearly the same formulation of the crime. *See* § 2119.

> **B.**     ***Taylor* Undermines the Fourth Circuit's Determination in *Evans* that Carjacking Was a Crime of Violence.**

While *Evans* held that carjacking was a crime of violence in 2016, Mr. Fulks has argued that *Taylor* undermined the *Evans* court's analysis in two ways. First, as noted above, *Taylor* established that carjacking by attempt does not require the use, attempted use, or threatened use of force, and thus, carjacking is not a crime of violence under § 924(c)'s force clause. Second, *Taylor* rejected the requirement that a defendant had to provide an empirical example of someone being prosecuted for conduct under the challenged predicate offense that would not constitute a crime of violence. Dkt. No. 1722 at 8-9. Because the Fourth Circuit in *Evans* followed *United States v. McNeal*, 818 F.3d 141 (4th Cir. 2016), which employed the empirical analysis rejected in *Taylor*, the Fourth Circuit's holding in *Evans* is no longer valid. Dkt. No. 1722 at 9.

The Government argues that *Taylor* did not undermine *Evans* because *Evans* addressed a completed carjacking only. Citing the Fourth Circuit's opinion in *United States v. Taylor*, 979 F.3d 203 (4th Cir. 2020), *aff'd*, 142 S. Ct. 2015 (2022), the Government asserts that "*Taylor* embraced *Evans*'s holding that completed carjacking is a crime of violence; it merely distinguished between attempt offenses." Dkt. No. 1728 at 11. The Government concedes that *Taylor* rejected reliance on actual examples of how cases were actually prosecuted but argues that *Evans* did not employ such an analysis. *Id.* at 12. The Government also concedes that

*McNeal* "did note" that the defendant had not provided an example support his point but maintains that the holding in *McNeal* was based on *Carter v. United States*, 530 U.S. 255 (2000), and not the lack of illustrative examples. *Id.* at 12.

The Government's argument lacks merit on both of these points. While the Fourth Circuit's *Taylor* decision acknowledged—as Mr. Fulks argues here—that carjacking by attempted threat is not a crime of violence, the Fourth Circuit did not address divisibility or whether *Evans* remained valid. *Taylor*, 979 F.3d at 209-10. The issue before the Fourth Circuit in *Taylor* was whether attempted Hobbs Act robbery was a crime of violence, not whether § 2119 was divisible or whether *Evans* continued to be viable. The *Taylor* court was not in a position to make a determination on either of these other issues and did not do so. *Id.*

The Government's argument that "the fact that the [*Evans*] court did not address *attempted* carjacking further establishes that carjacking and attempted carjacking are separate offenses," Dkt. No. 1728 at 11 n.3, is meritless. The *Evans* court did not address this issue because Evans did not raise it. *See Evans*, 848 F.3d at 246-47. For this same reason, the *Evans* court did not focus on carjacking by intimidation because it was the "least culpable conduct" encompassed by the carjacking statute, Dkt. No. 1728 at 11, n.3, but because this was the only ground the defendant advanced in support of his argument. Evans challenged carjacking's potential status as a crime of violence on one ground—his belief that intimidation did not require the use, attempted use, or threatened use of force. *Evans*, 848 F.3d at 246-47. *Evans* cannot be read as an adjudication of the carjacking statute's divisibility.

Furthermore, the Supreme Court's rejection in *Taylor* of any empirical component in a crime of violence analysis undermines *Evans*. While *Evans* did not require the defendant to produce examples of prosecutions in support of his argument, *McNeal* did. *See* Dkt. No. 1722 at

9. Because the *Evans* court based its ruling on its belief that its "analysis whether the crime of carjacking is a crime of violence for purposes of Section 924(c) is governed directly by our recent decision in *McNeal*," *Evans*, 848 F.3d at 246, the Supreme Court's ruling in *Taylor* invalidates both *Evans* and *McNeal*. Dkt. No. 1722 at 9.

The Government's reliance on *McNeal*'s discussion of *Carter* is similarly misplaced. *Carter* held that the federal bank robbery statute required "that the defendant possessed knowledge with respect to the *actus reus* of the crime (here, the taking of property of another by force and violence or intimidation)," but did not hold that the defendant had to know what the effects of his actions were. 530 U.S. at 268-69 (the presumption in favor of scienter only "requires a court to read into a statute only that mens rea which is necessary to separate wrongful conduct from otherwise innocent conduct.") (internal citations and quotations omitted). So, while *Carter* held that the defendant needed to know what he was saying or doing, it did not hold that the defendant needed to know his actions were intimidating or know that his actions would result in force and violence being imposed. *Id.* In concluding that *Carter* applied a mens rea requirement to the intimidation component of bank robbery, the *McNeal* court relied on the fact that the defendant did not produce an example of a prosecution where the defendant had been prosecuted for bank robbery without having the necessary mens rea. 818 F.3d at 156. Because *McNeal* relied on this now-rejected practice when making its crime-of-violence determination, *McNeal* is invalid after *Taylor*.

Finally, *Carter* and *McNeal* hinge on the fact that federal bank robbery is a general intent statute. *See McNeal*, 818 F.3d at 155 ("however, the Supreme Court ruled in *Carter v. United States* that bank robbery under § 2113(a) requires 'general intent'"). For this reason, *McNeal* held that "to secure a conviction of bank robbery by intimidation, the government must prove

10

that the accused knowingly took property, but also that he knew that his actions were objectively intimidating." *Id.* (citations omitted). But general intent is only applied to an offense when the statute requires it or if the statute "contain[s] no specific *mens rea* requirement of any kind." *Carter*, 530 U.S. at 267-68. Here, as explained in Section II, *infra*, carjacking requires conditional intent, which does not require the purposeful or knowing use or threatened use of force. Because *Carter* and *McNeal* address a different mens rea requirement than *Evans*, they do not support *Evans*'s continued validity.

## II.     FEDERAL CARJACKING IS NOT A CRIME OF VIOLENCE UNDER *BORDEN*.

Mr. Fulks has also shown that his carjacking resulting in death conviction is not a valid predicate offense because it does not meet *Borden*'s mens rea requirement. For a predicate offense to qualify as a crime of violence under *Borden*, it must require the knowing or purposeful use of force. Federal carjacking does not satisfy this criterion because it only requires *conditional* intent, i.e., "that the defendant would have at least attempted to seriously harm or kill the driver *if the action had been necessary to complete the taking of the car*" *Holloway v. United States*, 526 U.S. 1, 12 (1999) (emphasis added). *See also United States v. Foster*, 507 U.S. 233, 247 (4th Cir. 2007) ("The government need not prove that the defendant actually intended to cause harm; it is sufficient that the defendant was conditionally prepared to act if the person failed to relinquish the vehicle."). Because conditional intent under *Holloway* and its progeny does not require the purposeful or knowing use of force, carjacking under § 2119 does not satisfy *Borden*'s mens rea requirement. *See* Dkt. No. 1722 at 9-12.

Citing *Evans*, *McNeal*, and *Vaughan v. United States*, 2021 WL 4993537 (D.S.C. Oct. 27, 2021), the Government argues that carjacking remains a crime of violence under *Borden* because the Fourth Circuit already applied a knowing or purposeful mens rea requirement when it issued *Evans* and *McNeal*. Dkt. No. 1728 at 13-14. The Government further argues that conditional

intent under *Holloway* satisfies *Borden* and claims that "[i]n attempting to argue otherwise, Fulks conflates the *Borden* and *Taylor* issues." *Id.* at 14. As the Government puts it, "intent and use of force are two different things, and the absence of one does not equate to the absence of the other." *Id.*

But the Government's argument actually *strengthens* Mr. Fulks's position. The fact that "[o]ne can intend to use force without actually using it," and "one can use force without intending to use it" *id.*, is precisely Mr. Fulks's point. For *Borden* to be satisfied, the potential predicate offense must require: (1) the use, attempted use, or threatened use of force; *and* (2) that the use, attempt, or threat of force be knowing or purposeful. *Borden* addressed the force clause of the Armed Career Criminal Act ("ACCA"), which is nearly identical to the force clause of § 924(c). *See* Dkt. No. 1699 at 5-6. ACCA's force clause defines a violent felony as a crime that "has as an element the use, attempted, use, or threatened use of physical force against the person of another." § 924(e)(2)(B)(1). The four-justice plurality concluded that ACCA's use of the phrase "'against another,' when modifying the 'use of force,' demands that the perpetrator direct his action at, or target, another individual" and that a person must be the "conscious object (not the mere recipient) of the force." *Borden*, 141 S. Ct. at 1825-26. For this reason, ACCA "covers purposeful and knowing acts, but excludes reckless conduct." *Id.*

While disagreeing with the plurality on the specific aspect of ACCA's force clause that required a purposeful or knowing mens rea, Justice Thomas concurred because the "use of physical force" has a "well-understood meaning applying only to intentional acts designed to cause harm." *Id.* at 1835 (Thomas, J., concurring). For this reason, Justice Thomas determined that ACCA's elements clause could not be satisfied by recklessness. *Id.*

Under either the rationale embraced by the plurality—which relied on the combination of "use of physical force" and "against"—or that embraced by the concurrence—which relied only on the presence of "use of physical force"—a predicate offense does not satisfy § 924(c)'s force clause under *Borden,* unless it requires: (1) the use, attempted use, or threatened use of force; *and* (2) the requisite mens rea when any of these force-based acts are taken.

Under *Holloway* and its progeny, the federal carjacking statute only requires the conditional intent to use force "if that action had been necessary to complete the taking of the car." 526 U.S. at 12. A defendant can take a car from the person or presence of another, be prepared to use force if needed to complete the taking, refrain from knowingly or intentionally using or threatening force during the taking, but still injure or intimidate the victim by accident during the course of the taking. This would satisfy all of the elements of the carjacking statute—including, e.g., conditional intent, a taking by force and violence, or intimidation—but would not involve the intentional use or threatened use of force. As the Government concedes, "[o]ne can intend to use force without actually using it. And one can use force without intending to use it." Dkt. No. 1728 at 14. Because the only level of intent *Holloway* requires is a *conditional* one, federal carjacking does not satisfy *Borden* because it does not require that force be used or threatened knowingly or purposefully.

The Government's reliance on *Evans*, *McNeal*, and *Vaughan* is similarly misplaced. As set forth above, the *Evans* court believed itself to be governed by the holding in *McNeal*, and *McNeal* faulted the defendant for failing to provide an example that was consistent with his interpretation of the predicate offense—a practice that was later rejected by *Taylor*. *See* Dkt. No. 1722 at 8-9. Furthermore, the only issue addressed by the *Evans* court was whether carjacking by intimidation was a crime of violence under the "threat of force" element of the force clause. *Id.*

13

at 10 (citing *Evans*, 848 F.3d at 247-48). Neither *Evans* nor *McNeal* addressed whether carjacking was not a crime of violence because the statute could be violated through the negligent or reckless use (as opposed to threat) of force. Dkt. No. 1722 at 8-9. And *Evans* did not address whether carjacking could be a crime of violence after *Taylor*, as carjacking can be committed through an attempted threat. *Id.*

The Government's contention that Mr. Basham's trial occurred "well before the Fourth Circuit held in *McNeal* that a conviction for robbery committed 'by intimidation' requires proof that the defendant knew his actions were objectively intimidating," Dkt. No. 1728 at 13 n.4, strengthens Mr. Fulks's position. Mr. Fulks's guilty plea occurred shortly before Mr. Basham's trial. If, as the Government asserts, Fourth Circuit precedent did not require the requisite mens rea at that time, then Mr. Fulks did not plead guilty to a crime that would satisfy *Borden* and his convictions under § 924 are invalid.

*Vaughan* similarly provides no support for the Government's position. While *Vaughan* discusses *Holloway*, *Vaughan* did not appear to acknowledge the difference between the *conditional* intent to use force should it become necessary and the actual use or threatened use of force with the same mens rea. 2021 WL 4993537 at *3-4. In this way, *Vaughan* did not consider the fact that a defendant could commit a carjacking with the conditional intent to harm, while only accidentally using force on or intimidating the victim. The *Vaughan* court also assumed, without deciding, that *Evans* and *McNeal* remain intact. *Id.* at *4-5. As set forth above, both of those decisions have been abrogated by *Taylor* and *Borden*. *Vaughan* also based its holding on its belief that the mens rea for intimidation under bank robbery and carjacking are the same. *Id.* As discussed above, this is not the case; carjacking requires only conditional intent and bank robbery requires general intent.

Finally, Mr. Fulks has shown that the Government's past reliance on *United States v. Doctor*, 842 F.3d 306 (4th Cir. 2016), is also mistaken following *Taylor.* Dkt. No. 1722 at 11-12. *Doctor* ruled that a South Carolina carjacking statute was a crime of violence, in part, because Doctor cited no examples where a defendant was convicted of carjacking in South Carolina while only demonstrating a negligent or reckless mens rea. 942 F.3d at 311. The Government argued that "[i]n like manner, Fulks can point to no carjacking conviction where a defendant negligently or recklessly used force in the commission of a carjacking, or where a defendant negligently or recklessly intimidated a victim to commit a carjacking." Dkt. No. 1703 at 4. Because *Taylor* rejected a force clause analysis that compelled the defendant to provide an empirical example, the Government's reliance on *Doctor* is misplaced. Dkt. No. 1722 at 11-12.

The Government withdraws its argument that "Fulks must point to a case in which kidnapping resulting in death or carjacking resulting in death was prosecuted despite there being no use, attempted use, or threatened use of force." Dkt. No. 1728 at n.7. The Government still maintains that the categorical approach "'is not an invitation to apply legal imagination' to an offense," Dkt. No. 1728 at 15 (quoting *Doctor*, *supra*), that the analysis in *Doctor* is still appropriately employed in cases involving state convictions, and that "*Doctor*'s observation that the *intentional* taking of property by force and violence or by intimidation cannot be committed by accidental, negligent, or reckless conduct remains good law." Dkt. No. 1728 at 16. But these arguments are either are either not responsive to Mr. Fulks's arguments or contrary to *Taylor*.

*Taylor* makes clear that the force clause analysis begins and ends on an examination of the elements of the predicate offense as set forth by the statute. 142 S. Ct. at 2025 ("Congress tasked the courts with a much more straightforward job: Look at the elements of the underlying crime and ask whether they require the government to prove the use, attempted use, or threatened

use of force."). To the extent *Doctor*'s commentary on "legal imagination" requires anything other than looking at the elements of the statute and determining if those elements require the knowing or purposeful use, attempted use or threatened use of force, this portion of *Doctor* has been overturned by *Taylor*. Because Mr. Fulks's case involves a federal statute as a potential predicate offense, it does not matter if portions of *Doctor* regarding the application of the categorical approach to state convictions are still valid. And the Government's claim that the "*intentional* taking of property by force and violence or by intimidation cannot be committed by accidental, negligent, or reckless conduct remains good law," Dkt. No. 1728 at 16, fails in the face of *Borden*. As discussed above, *Borden* requires that the use, attempted use, or threatened use of force *itself*—rather than simply the taking—be knowingly or purposefully employed for an offense to constitute a crime of violence. Because federal carjacking fails to meet this threshold, Mr. Fulks's § 924 convictions must be reversed.

**CONCLUSION**

For the reasons set forth above as well as those set forth in his prior pleadings, Mr. Fulks respectfully requests that the Government's Motion to Dismiss or, in the Alternative, for Summary Judgment be denied, and that Mr. Fulks's convictions under §§ 924(c) and (o) and his death sentence be vacated.[4]

<div style="margin-left:50%">

Respectfully Submitted,

/s/ Peter Williams
Peter Williams
Assistant Federal Defender
Federal Community Defender Office
 for the Eastern District of Pennsylvania
601 Walnut Street, Suite 545 West
Philadelphia, PA 19106
(215) 928-0520

Counsel for Petitioner

</div>

Dated: November 10, 2022

---

[4] Mr. Fulks has previously addressed the effect of invalid §§ 924(c) and (o) convictions on the outcome of his capital sentencing proceeding. *See* Dkt. No 1664 at 13-15; Dkt. No. 1677 at 20-27. To avoid repetition, he does not restate those arguments here.

**CERTIFICATE OF SERVICE**

I, Peter Williams, hereby certify that, on this day, I served the foregoing document by ECF

filing on the following party:

Kathleen Stoughton, Esq.
Office of the United States Attorney
1441 Main Street, Suite 500
Columbia, SC 29201


/s/ Peter Williams
Peter Williams


Dated:  November 10, 2022